UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| CHRISTOPHER E. DORWORTH, | |
| *Plaintiff*, | |
| v. | Case No.: 6:23-cv-871-CEM-DCI |
| JOEL MICAH GREENBERG, ANDREW W. GREENBERG, SUSAN GREENBERG, ABBY GREENBERG, AWG, INC., GREENBERG DENTAL ASSOCIATES, LLC, GREENBERG DENTAL & ORTHODONTICS, P.A., GREENBERG DENTAL SPECIALTY GROUP, LLC, and A.B., | |
| *Defendants*. | |

**DEFENDANTS ANDREW W. GREENBERG,
SUSAN GREENBERG, AND AWG, INC.'S MOTION TO DISMISS**

## PRELIMINARY STATEMENT

"No Florida decision has imposed liability upon the parents of an adult child for intentional acts simply because the child may be financially dependent on . . . his or her parents." *Carney v. Gambel*, 751 So. 2d 653, 654 (Fla. 4th DCA 1999). This is because the law does not penalize parents for filling a common role—supporting their children. *See K.G. v. S.B.*, 259 Cal. Rptr. 3d 818, 823–24 (Cal. Ct. App. 2020) (finding no "duty" and "no moral blame attached to Father's conduct as a father financially supporting his son" and "[p]ublic policy does not support imposing liability on a parent for providing financial support for an adult child.").

But past the noise of his 100-plus-page Complaint—decrying episodes scattered over decades—Plaintiff faults Andrew Greenberg, Susan Greenberg, and AWG, Inc. ("Greenbergs") only for financial support to their son, Joel Greenberg ("Joel"). From Joel's crimes and alleged lies, Plaintiff accuses the Greenbergs of RICO violations, aiding and abetting, and civil conspiracy for contributing to Joel's 2016 election campaign and for allegedly paying for Joel's legal defense and restitution debts in or after 2020. Nothing Plaintiff alleges shows the Greenbergs knew of Joel's crimes, nor benefited from those crimes in any way. The Greenbergs' alleged parental support is hardly even consistent with—let alone suggestive of—the crimes or torts Plaintiff asserts; and mere consistency is not enough to state a claim.

Plaintiff's overwrought allegations read more like ill-advised public relations than a serious attempt to recoup losses from his "forced" exit from Ballard Partners over two years ago in March 2021. Indeed, suggestive of a preemptive PR campaign,

1

the Complaint comes just a few months after a December 30, 2022 demand letter conveying A.B.'s intent to sue Plaintiff for child sex trafficking. Doc. 1-1 ¶ 696. This case is not about the Greenbergs, and they should be dismissed from this case.

## BACKGROUND

Plaintiff's near-1,000 paragraph Complaint should not be confused with quality: "[a] complaint can be long-winded, even prolix, without pleading with particularity. Indeed, such a garrulous style is not an uncommon mask for an absence of detail." *D.H.G. Props., LLC v. Ginn Cos., LLC*, No. 3:09-CV-735-J-34JRK, 2010 WL 5584464, at *6 (M.D. Fla. Sept. 28, 2010) (cleaned up). Here, extraneous allegations riddle Plaintiff's Complaint—from needless and cruel aspersions at Abby Greenberg,[1] Doc. 1-1 ¶¶ 634, 641–42, and A.B., *see, e.g.*, *id.* ¶ 371, to claims that Donald Trump loved Congressman Matt Gaetz "like a son," *id.* ¶ 376. But his Complaint only alleges specific wrongdoing by Joel. The Greenbergs are swept into a deficient shotgun pleading that fails to satisfy even Rule 8's minimum standard. *See Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1273–74 (M.D. Fla. 2009) (finding "group pleading" a basis to dismiss). To see why Plaintiff fails to state a claim, first consider his narrative arc, then his *specific* factual allegations about the Greenbergs.

## I.   Plaintiff's allegations generally.

Plaintiff, a former politician and lobbyist, Doc. 1-1 ¶ 6, claims that, after Joel's

---

[1] Plaintiff has since filed a notice purporting to "withdraw" some of the scandalous allegations about Abby. Doc. 36. But it is unclear whether such notice has any practical effect, since Plaintiff has not filed an amended complaint omitting those allegations, which remain visible to the public.

well-publicized indictment and conviction, Joel falsely accused him of participating in Joel's crimes—allegedly costing Plaintiff his job and reputation. He alleges that Joel was not acting alone but in "the Greenberg Racketeering Enterprise." *E.g.*, *id.* ¶¶ 6,10.

Into that supposed "enterprise" Plaintiff groups Joel's parents Andrew and Susan, Joel's ex-wife Abby, and business entities associated with Joel's parents—AWG, Inc., Greenberg Dental Associates, LLC, Greenberg Dental & Orthodontics, P.A., and Greenberg Dental Specialty Group, LLC. *Id.* ¶¶ 10–17. Plaintiff generalizes that "[f]or years, Joel Greenberg, his parents, spouse, and family business entities have sought to enrich themselves through a pattern of racketeering activities." *Id.* ¶ 2.

"[O]ne or more of" Defendants' "racketeering enterprises," he says, extorted him either to seek a pardon for Joel or to have the federal prosecutor investigating Joel reassigned. *Id.* ¶ 3. And, after he allegedly refused to aid Joel, Plaintiff says, "the racketeering enterprise[] falsely accused [Plaintiff] of being involved in, among other things, child sex trafficking and an illegal ghost candidate scheme." *Id.* ¶ 4. But while heavy on group pleading about an alleged *enterprise's* conduct, the Complaint cites nothing *the Greenbergs* did that, if true, suggests any involvement in such an enterprise.

## II.    Plaintiff's allegations about the Greenbergs.

Broadly, Plaintiff claims Joel's allegedly false accusations about him stem from the Greenbergs' financial support to Joel, despite his troubled past. In epic fashion, Plaintiff starts against the Greenbergs *in media res*—after Joel's election to public office—alleging "[a]s the Greenbergs were aware of Joel's ongoing criminal enterprise,

3

they utilized resources derived from Greenberg Dental, which then flowed through AWG, Inc., to sustain Greenberg in office [as Seminole County Tax Collector], allow him to escape detection for his crimes, and to mitigate his exposure, both during and after his time in office." *Id.* ¶ 30. Yet, in over 100 pages, Plaintiff alleges no factual support for that conclusion—only the following disparate episodes from Joel's past: When Joel was age 16—16 years before his election—the *Orlando Sentinel* quoted his mother as saying, "Joel is my shining star that needs more polishing, . . . . It was a belligerent, defiant, rebellion-type of thing at home." *Id.* ¶¶ 59–61. Then, when he was 18—14 years before his election—a burglary report mentioned Joel. *Id.* ¶ 67.

Next, between 2005 and 2012, Joel allegedly took classes at Rollins College but never graduated. *Id.* ¶ 66. And in 2005 or early 2006, Joel "was involuntarily committed for psychiatric care at the age of 21 after taking LSD." *Id.* ¶ 68. While committed, Joel allegedly accused an orderly of sexual assault, with "[n]o evidence" apparently other than Joel's word. *Id.* ¶ 69. Finally, before his election, Joel's "sole professional endeavor was a short-lived sports radio show," *id.* ¶ 71, as though such events herald the Greenbergs' foreknowledge that Joel would commit crimes in public office.

As for the Greenbergs' specific acts, Plaintiff alleges that the Greenbergs along with "AWG Family Limited Partnership" and Joel's two brothers each contributed $1,000 to Joel's 2016 election campaign. *Id.* ¶¶ 132–37. Otherwise, Plaintiff cites Joel's financial disclosure forms filed while in public office as "reveal[ing] that the Greenberg family, through the Greenberg Racketeering Enterprise, provided 100% of the financial support permitting" Joel's crimes. *Id.* ¶ 33.

Ironically, to accuse the Greenbergs of knowingly aiding Joel in *falsely* accusing Plaintiff of criminal conduct, Plaintiff relies solely on Joel's alleged words, while also calling Joel a "pathological" liar. *Id.* ¶ 683. So dubious are Joel's alleged statements about the Greenbergs and Greenberg Dental entities that Plaintiff is careful to caveat that he "has no first-hand knowledge of the finances, operations and policies of Greenberg Dental and makes these pleadings upon information and belief based upon the representations of Joel Greenberg." *Id.* ¶ 278.

The above lays bare the implausibility and irrelevance of the salacious tidbits about the Greenbergs scattered across Plaintiff's near-1,000 paragraph Complaint. Those tidbits include that: Joel said he had "spoken to his father about the need for Greenberg Dental to have a "Ray Donovan" type "fixer," and Joel said, "that would be f----ing awesome, wouldn't it?," which Plaintiff assumed was a joke, *id.* ¶¶ 251–60; Joel supposedly told Plaintiff a racist "long-time family joke," *id.* ¶ 269; Joel "would make frequent jokes about Greenberg Dental's reputation as a 'pill mill,'" *id.* ¶ 270; Joel "would say jokingly to [Plaintiff] that 'the reason my parents are so rich is that they figured out how to make Medicaid pay for people's opioids instead of cash at a pill mill," *id.* ¶ 271; and Joel said that "he had, in previous years, been in an out of rehab to deal with an oxycontin addiction," "had obtained oxycontin by using prescription drug pads from Greenberg Dental," and his parents were aware he was stealing prescription drug pads, *id.* ¶¶ 274–76.

Notwithstanding those statements—which Joel allegedly said between October 2016 (when Plaintiff first met Joel, *id.* ¶ 211) and shortly after June 9, 2020 (allegedly

when Plaintiff last spoke to Joel before Joel was indicted, *id.* ¶¶ 241, 243)—Plaintiff says he was "unaware of … any of the official misbehavior that led to Greenberg's 33 felony charges and six convictions," *id.* ¶ 244. Indeed, even after Joel had arrived unannounced at Plaintiff's home in April 2019, *id.* ¶ 237; showed him a "lengthy subpoena for records from the United States Secret Service," *id.* ¶ 238; and Plaintiff had quickly referred Joel to a criminal defense attorney, *id.* ¶ 240; Plaintiff still claims that "on June 9, 2020," he found Joel's "retrospectively obvious lie"—that federal prosecutors had cleared and would not charge Joel—"plausible," *id.* ¶¶ 241–42.

Thus, despite casting himself as Joel's close confidant and hired by Joel as the Seminole County Tax Collector's lobbyist from March 9, 2017 to the end of Florida's 2019 legislative session, *id.* ¶¶ 222, 236, Plaintiff professes no knowledge of the official misconduct leading to Joel's indictment on June 28, 2020, *id.* ¶¶ 244, 246.

Yet Plaintiff now looks back decades to infer knowledge and accuse the Greenbergs of intentional misconduct based on their financial support to Joel, starting before his election to office in 2016. For instance, Plaintiff claims Joel owns "$5,500,000 in AWG, Inc. stock, whose value is derived from ownership of Greenberg Dental," *id.* ¶ 277; "AWG, Inc., is the business enterprise of the Greenberg family," *id.* ¶ 14; in 2016—that is, before his election—"100% of Joel Greenberg's $400,000 income" came from AWG, Inc., *id.* ¶ 99; and, after Joel was indicted, he amended his public disclosure to remove his share interest in AWG, Inc. among other assets, *id.* ¶ 313, 320–21. Indeed, Plaintiff makes much of these distributions from AWG, Inc., as if yearly

distributions to Joel from a company in which he owned $5,550,000 in stock are an endorsement by the Greenbergs of any action Joel later takes. *See id.* ¶¶ 78, 88, 411.[2]

Plaintiff's final swipe at the Greenbergs again rests, once again, on something Joel allegedly said—that "Andrew Greenberg and Sue Greenberg [would] . . . 'pay [A.B.] off to make that problem go away.'" *Id.* ¶ 424. A.B. enters this tale through Plaintiff's conclusory "information and belief" allegation that, the "Greenberg Racketeering Enterprise" paid A.B. "to provide false testimony . . . in furtherance of [its] extortion of, and retaliation against, [Plaintiff]." *Id.* ¶ 20. His next allegation about A.B. comes 345 paragraphs later—after Joel's first indictment on June 23, 2020, *id.* ¶ 279, when Joel allegedly, "in mental or nervous breakdown," *id.* ¶ 348, confronted Plaintiff's wife at a resort, *id.* ¶¶ 322–24, 361–62—after which Plaintiff says he met with Joel, and Joel revealed himself to be "under investigation for having sex with A.B. when she was under the age of 18," *id.* ¶ 365. Most telling, however, is what Plaintiff does not say: Plaintiff *never* says that the Greenbergs actually paid or even agreed to pay A.B.'s legal fees, or that they were even aware of A.B.'s existence. All Plaintiff can muster is allegations that the "Greenberg Racketeering Enterprise" compensated A.B. *Id.* ¶¶ 20, 412. Worse still, Plaintiff later admits that Joel actually "stated *he* was paying A.B.'s legal bills," not Joel's parents. *Id.* ¶ 507 (emphasis added); *see also id.* ¶ 408.

---

[2] Plaintiff also suggests, without stating, that the Greenbergs paid Joel's $1.25 million restitution to obtain a lower sentence for Joel. Doc. 1-1 ¶¶ 714–25. Generally, Plaintiff claims that Joel did not have $1.25 million, and so the money *must* have come from the Greenbergs.

At bottom, Plaintiff's story (wherein he vacillates from ignorant to knowing) is vague, self-contradictory, and implausible. He professes ignorance of Joel's crimes—committed while Plaintiff knew and worked for Joel, *id.* ¶¶ 213–21—and ignorance of the Greenberg entities—while now calling them a vast criminal enterprise, and despite allegedly meeting with Andrew Greenberg to possibly lobby for them, *id.* ¶¶ 247–49, 278. Plaintiff then invites the Court to infer the Greenbergs knowingly abetted Joel in years-long criminal enterprises, ultimately to defame Plaintiff. Not because they were in any way involved in Joel's conduct in public office—as Plaintiff was—but because they knew Joel had behavioral issues as a youth. This Court should not accept such strained and stacked inferences; the law calls for dismissal.

## ARGUMENT

Civil RICO claims "are notoriously difficult to plead plausibly and . . . are rarely successfully pleaded." *Cao v. Landco H & L, Inc.*, No. 1:20-CV-01180, 2022 WL 3997746, at *2 (E.D.N.Y. Aug. 25, 2022). And for good reason: "mere invocation of the [RICO] statute has such an *in terrorem* effect that it would be unconscionable to allow it to linger in a suit" without "some articulable factual basis which, if true, would warrant recovery under the statute." *Taylor v. Bear Stearns & Co.*, 572 F. Supp. 667, 682 (N.D. Ga. 1983). The same is true for Plaintiff's conspiracy-related state claims—all of which lack the requisite factual basis. This Court should dismiss.

### I.   Legal standard.

Groundless claims should be exposed "at the point of minimum expenditure of

time and money by" all involved. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Thus, though this Court takes all well-pleaded factual allegations as true, those allegations must be plausible to be well-pleaded. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[3] "[F]ormulaic recitations" of the elements of a claim and legal conclusions without adequate factual support are to be disregarded. *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1310 (11th Cir. 2022) (dismissing RICO conspiracy claim based on formulaic recitations). And "allegations that are merely consistent with liability stop short of the line between possibility and plausibility." *Doe v. Samford Univ.*, 29 F.4th 675, 688 (11th Cir. 2022) (cleaned up). If permitting "obvious alternative explanations . . . [that] suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer," a complaint fails to state a claim. *Id.* at 689.

## II.   Plaintiff has not sufficiently alleged any RICO claim.

Each civil claim under RICO, 18 U.S.C. § 1962(a)-(d) ("1962"), though varied, requires: (1) racketeering activity and (2) statutory standing. Plaintiff has failed to allege either against the Greenbergs. *First*, rather than alleging any racketeering activity by the Greenbergs, Plaintiff alleges that Joel *said* the Greenbergs would do things—without being so bold as to say they *actually did* or *agreed to do* those things—and he

---

[3] Courts in the Eleventh Circuit are split on whether non-fraud RICO claims must meet Rule 9(b)'s heightened pleading requirement. *Compare Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1233 n.20 (S.D. Fla. 2017) (subjecting "Plaintiff's entire RICO claim to the heightened specificity required by Rule 9(b) and the applicable Eleventh Circuit case law"), *with Lewis v. Mercedes-Benz USA, LLC*, 530 F. Supp. 3d 1183, 1214 n.7 (S.D. Fla. 2021) (holding "Rule 9's heightened requirement only [applied] to the plaintiff's allegations of predicate RICO acts sounding in fraud"). The better view is that—because they engender "unfavorable opinion" if allowed to linger and "the concepts within the statute are so nebulous"—RICO claims must "be pled with the same particularity that is required in the pleading of fraud." *Taylor*, 572 F. Supp. at 682. But under any standard, Plaintiff's Complaint falls short.

draws a nefarious inference from lawful and largely long-past filial support. Such allegations fail basic plausibility. *Second*, for civil RICO standing, Plaintiff must show "injur[y] in his business or property by reason of a violation of section 1962." 18 U.S.C. § 1964(c). But Plaintiff identifies such injury only in Count III (against Joel alone). There, he says "[o]nce [Joel's] unlawful activity was known to . . . the entire world, the Greenberg Racketeering Enterprise acted unlawfully to cause the extortion and defamation of [Plaintiff]," Doc. 1-1 ¶ 846, solely through statements of Joel, *see, e.g.*, *id*. ¶ 835 (b)–(e). Plaintiff has not tied that alleged injury to the Greenbergs, or even to the "enterprises" he attributes to them. Consider each RICO count against the Greenbergs in sequence.

**A. Plaintiff fails to plead "acquisition" or "use" standing—Counts I & II**.

Plaintiff alleges, in Counts I and II, respectively, that all "Defendants," except A.B., acquired an interest in an enterprise (a) using income from racketeering acts in violation of 1962(a), *id*. at ¶¶ 812, 815–18, or (b) using racketeering acts themselves in violation of 1962(b). Yet Plaintiff skips the necessary predicates of alleging facts showing (i) that each of the Greenbergs engaged in illegal use or acquisition activity and (ii) that he was proximately harmed by that specific acquisition activity.

1962(a) and (b) prohibit acquiring a lawful enterprise through unlawful means. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1398 (9th Cir. 1986) ("[1962](a) prohibits the use of money derived from racketeering to acquire an interest in an enterprise, [1962](b) prohibits engaging in racketeering activity to acquire or maintain an interest in or control of an enterprise."). Both require alleging an injury

tied to the acquisition itself. *See Lockheed Martin Corp. v. Boeing Co.*, 357 F. Supp. 2d 1350, 1369 (M.D. Fla. 2005) (cleaned up) (1962(a) requires harm specifically from "the use or investment of the racketeering income"); *Myers v. Provident Life & Accident Ins. Co.*, 564 F. Supp. 3d 1157, 1177 (M.D. Fla. 2021) (1962(b) requires an "acquisition injury beyond the injury allegedly incurred as a result of the predicate acts").

Here, Plaintiff alleges that the Greenbergs obtained control of the Tax Collector's Office through funds obtained from illicit sources.[4] Doc. 1-1 ¶¶ 814–17, 824. But he fails to allege any injury tied to the alleged acquisition, such as using ill-gotten gains to buy stock, and thus injuring the acquired entity—who is the real victim. *See Lockheed*, 357 F. Supp. 2d at 1368. Instead, his alleged injuries—loss of reputation and income—stem from other alleged defamation activities unmoored from the alleged electoral takeover. *Id.* ¶¶ 485–93. For this reason, Plaintiff's 1962(a) and (b) claims fail.

**B. Plaintiff fails to plead a RICO enterprise or conspiracy—Counts IV & V.**

Plaintiff's remaining RICO counts against all "Defendants"—except Joel and A.B.—allege that Defendants conducted an enterprise through racketeering acts in violation of 1962(c) (Count IV), *id.* ¶¶ 854, and knowingly conspired in a scheme involving racketeering acts in violation of 1962(d) (Count V), *id.* ¶ 870. For both, Plaintiff fails to plausibly allege the necessary elements of any RICO violation.

---

[4] Plaintiff may claim that ill-gotten funds were invested in an enterprise that harmed him, but that does not state a 1962(a) injury (and if it did, it would render 1962(c) superfluous). *Lockheed*, 357 F. Supp. 2d at 1370. This is because 1962(a) is designed to punish *investing* ill-gotten gains, not making such gains from predicate acts. *Id.* at 1370–71. But Plaintiff's allegations against the "Greenberg Racketeering Enterprise" on this count are simply that the enterprise fueled itself using illicitly obtained monies and then later harmed Plaintiff. Doc. 1-1 ¶¶ 814–18. That is not enough to state an investment injury.

1962(c) prohibits "conduct[ing] or participat[ing], directly or indirectly, in the conduct of [a criminal enterprise's] affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). The elements of this claim are thus: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity; (5) which causes the plaintiff injury. *Cisneros v. Petland*, 972 F.3d 1204, 1211 (11th Cir. 2020). A conspiracy claim merely adds the further layer of an illicit agreement. *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1269 (11th Cir. 2004) ("RICO laws can be violated when defendants 'conspire to violate any of' the substantive provisions . . . .").

### 1.   Plaintiff fails to plead RICO "conduct" or an "enterprise."

Congress intended to penalize only those who "conducted or participated in the conduct of the 'enterprise's affairs,' not just their own affairs"; and so a plaintiff must show that each defendant engaged in "operation or management" of an enterprise to plead the necessary "conduct." *Reves v. Ernst & Young,* 507 U.S. 170, 185 (1993). To be sure, a defendant need not be "upper management," but *some* degree of control is necessary. *United States v. Starrett*, 55 F.3d 1525, 1542 (11th Cir. 1995).

Acting as a lender, bank, accountant, lawyer—or, as here, parent—is not conducting an enterprise. *See Reves*, 507 U.S. at 186 (accounting firm's work did not rise to RICO "conduct"); *Walter v. Drayson*, 538 F.3d 1244, 1249 (9th Cir. 2008) ("Simply performing services for the enterprise does not rise to the level of direction."); *Handeen v. LeMaire*, 112 F.3d 1339, 1348 (8th Cir. 1997) (an attorney "does not conduct an

12

enterprise's affairs through run-of-the-mill provision of professional services").[5] This is so even if the outsider's acts "furthered the enterprise's goal or where the [defendant] knew of the illicit nature of the enterprise's affairs." *Drummond v. Zimmerman*, 454 F. Supp. 3d 1210, 1219 (S.D. Fla. 2020); *see also Heffernan v. HSBC Bank USA*, 1:99CV07981, 2001 WL 803719, at *5–6 (E.D.N.Y. Mar. 29, 2001) (holding that a bank's act of "accepting . . . deposits while knowing that the funds were proceeds of criminal activity, in violation of the money laundering statutes" did not establish a RICO enterprise and "are at most allegations of assistance to an enterprise, not participation in its direction or operation").

Further, a RICO enterprise exists only "'where a group of persons associates, formally or informally, with the purpose of conducting illegal activity.'" *Jackson*, 372 F.3d at 1264 (quoting *United States v. Hewes*, 729 F.2d 1302, 1311 (11th Cir. 1984)). Here, Plaintiff alleges several "association-in-fact" enterprises, which are "simply a continuing unit that functions with a common purpose." *Cisneros*, 972 F.3d at 1211. Though the concept seems simple, pleading such an enterprise is "challenging." *Id.* (quotations omitted). Plaintiff must plead, among other elements, that the enterprise has an illicit purpose. *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1067 (11th Cir. 2017) (cleaned up). A generalized common purpose, like "making money," will not suffice. *Cisneros*, 972 F.3d at 1211. And, crucially, Plaintiff must "plausibly allege that

---

[5] *Cf. also*, *In re Sunpoint Secs., Inc.*, 350 B.R. 741, 747 n.6 (Bankr. E.D. Tex. 2006) ("[W]here there is no evidence to suggest any control or ownership interest in the RICO enterprise, loaning money to the RICO enterprise is insufficient to establish liability . . .").

the participants shared the purpose of enriching themselves through a particular *criminal* course of conduct"—not an innocent alternative. *Id.* (emphasis added). Thus, Plaintiff must allege sufficient "concrete facts"—not "sweeping, general, and conclusory" allegations—to rebut possible innocent and "obvious alternative" purposes. *Id.* at 1212 (cleaned up); *see also Tam v. Quick Box, LLC*, No. 3:20-CV-01082, 2020 WL 7226440, at *23 (S.D. Cal. Dec. 8, 2020) (explaining a RICO claim must contain "specific factual allegations that enable courts to rule out the innocent explanation in favor of plaintiff's fraudulent scheme hypothesis").

Here, Plaintiff alleges four interrelated criminal enterprises:

**The Greenberg Dental Enterprise**, through which the Greenberg family has unlawfully enriched itself by operating dental clinics as pill mills;

**The Greenberg Campaign Enterprise**, through which the Greenberg family acted to secure Joel Greenberg's election as Tax Collector;

**The Seminole County Tax Collector's Office**, during the period Joel Greenberg served as Tax Collector; and

**The Greenberg Racketeering Enterprise**, which supported the other three enterprises, and through which the Greenberg family has acted, and continues to act, to lessen Joel Greenberg's criminal liability and engage in extortion and defamation of persons such as Dorworth.

Doc. 1-1 ¶ 726 (emphasis added). None, as alleged, is an association-in-fact enterprise, nor does Plaintiff allege acts by the Greenbergs to show direction of such an enterprise.

**The Greenberg Dental Enterprise** is premised on self-described "jokes" made by Joel that the Greenbergs' dental business has a "reputation" as a "pill mill." *Id.* ¶ 270. Plaintiff then summarily draws the conclusion—based on the jokes of a person

14

who allegedly stole a prescription pad and produced fraudulent prescriptions himself—that the Greenbergs "violated numerous state and federal laws" by prescribing "pain-killers without sufficient medical history, physical examination, diagnosis, medical monitoring, or documentation." *Id.* ¶¶ 270, 273–76, 731, 736. But Plaintiff fails to identify *any* illegal prescription or fraudulent medical billing *by the Greenbergs* or by their dental practice to lend any factual heft to Joel's jokes.[6]

Plaintiff's sole specific allegation of opioid-related illegality—that Joel stole pre-scription pads with the Greenbergs' knowledge, *id.* ¶¶ 276, 735—fails to allege any action of the Greenbergs consistent with their "operation or direction" of an enterprise. Indeed, even "performing services for an enterprise[] with knowledge of the enter-prise's illicit nature[] is not enough to submit an individual to RICO liability"—never mind being victims of theft. *Slaney v. The Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 598 (7th Cir. 2001). Nor has Plaintiff rebutted the obvious, innocent alternative. Consider *Cisneros*, where the plaintiff failed to allege sufficient facts to show that Petland and its franchisees were operating with the common purpose to commit fraud, rather than the "obvious alternative explanation that they were simply trying to make money in pet sales." 972 F.3d at 1212 (quotations and citations omitted). So too here, Plaintiff offers nothing to rebut the obvious alternative that the Greenbergs and their businesses

---

[6] In truth, dental practices like the Greenbergs' prescribe few opioids; and when they do so for acute surgery recovery, they are logged on prescription drug monitoring program databases to avoid abuse. Prescription opioid drugs are heavily regulated and monitored by state and federal authorities. Had Plaintiff done the slightest investigation, he could have determined the falsity of his claim. *See* https://flhealthsource.gov/FloridaTakeControl/pdmp/ ("Dispensers of controlled substances are re-quired to report to the PDMP each time a controlled substance in schedules II, III, IV, and V are dispensed to a patient . . .").

operated with a common purpose of profit through lawful dentistry.[7] Plaintiff has not alleged a RICO enterprise, much less that the Greenbergs directed it.

**The Greenberg Campaign Enterprise**, allegedly "through which the Greenberg family acted to secure Joel Greenberg's election as Tax Collector," likewise fails for lacking a criminal purpose. Political contributions are legal and constitutionally protected. *See McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191 (2014) (noting the First Amendment guarantees "[t]he right to participate in democracy through political contributions"). If contributing to a political campaign qualifies the Greenbergs for RICO liability, "allegations like these could be made about countless" other law-abiding citizens. *Cisneros*, 972 F.3d at 1212. And, tellingly, Plaintiff does not even assign any crimes to this enterprise. *See* Doc. 1-1 ¶¶ 746–65.

As with Plaintiff's "pill mill" allegations, his allegations about contributions to Joel's election campaign are also open to "obvious alternative explanations." *Samford Univ.*, 29 F.4th at 688-89 (quotations omitted). The obvious alternative is that the Greenbergs loved and supported their son and wanted to see him succeed. All Plaintiff offers in rebuttal is that there is "no evidence" that the Greenbergs are "civic minded" and his supposition that nobody would spend so much money on an election in relation to the salary of the position sought unless they intended to commit crimes—in

---

[7] Plaintiff's exclusive reliance on Joel's lay jokes magnifies the flaws of the claim, because jokes often have multiple plausible interpretations. For instance, Joel's alleged jokes reflect a layman's view that a pill mill is simply a place that prescribes a lot of opioids.  Indeed, the statement "Greenberg Dental is happy to give [patients] the maximum amount [of opioids] *they can*," *id.* ¶ 732(b) (emphasis added), suggests that Greenberg Dental *only* prescribes what "they can"—i.e., what they can lawfully prescribe. Such an innocent, alternative interpretation is equally plausible, and shows that Plaintiff's claim cannot meet the threshold standard for stating a claim.

which case, nearly every federal elected official in the country (and their donors) must be criminals. Doc. 1-1 ¶¶ 147, 157.[8] In short, Plaintiff fails to allege that the Greenbergs acted with a criminal purpose in supporting Joel's campaign or otherwise directed the alleged "enterprise" in any way.

**The Seminole County Tax Collector's Office** similarly falls short as an alleged "enterprise." While Plaintiff appears to allege its purpose is for Joel's criminal personal gain, *see* Doc. 1-1 ¶ 766, Plaintiff "offer[s] no basis for inferring" that the Greenberg's shared that purpose or directed any crimes. *Cisneros*, 972 F.3d at 1212. Plaintiff does not allege the "substance of any . . . communication" about criminal activity between the Greenbergs and Joel. *Id.* And "the complaint is wholly devoid of factual allegations suggesting [the Greenbergs'] purposeful involvement in" Joel's criminal activities. *Id.* at 1213. For one, "the complaint contains no allegation that [the Greenbergs] received any money in connection with the alleged scheme" or benefited in any way from Joel's crimes. *Id.* Indeed, post-election, Plaintiff does not suggest that the Greenbergs had any involvement, "or even knowledge of" Joel's activities as tax collector— much less any involvement in the criminal activities for which Joel has been found guilty and sentenced, including sex trafficking a child, identity theft, stalking, and bribery. *Id.*; *see also* Doc. 1-1 ¶¶ 770–71, 778–79. In short, Plaintiff makes no plausible allegation the Greenbergs even knew of, much less engaged in or shared a common criminal purpose with, Joel's activities at the tax collector's office.

---

[8] It is all the more disturbing that this theory comes from the former Majority Leader-Designate and Speaker-Designate of the Florida House of Representatives. *Id.* ¶ 6.

**The Greenberg Racketeering Enterprise's** specific "purpose" is a bit of a mystery. *See, e.g.*, *id*. ¶ 726(d) (describing the "Greenberg Racketeering Enterprise" as the vehicle that supported the other enterprises). Yet even setting this aside, and assuming Plaintiff contends that the racketeering enterprise had the purpose of extorting him, *see id.*, he has not plausibly alleged that the Greenbergs joined in that purpose or directed that activity. Plaintiff generally alleges that Joel told Plaintiff that his parents would pay off A.B. (*id.* ¶ 424) and alleges that Andrew Greenberg could have been a source of bitcoins supporting Joel's activities (*id.* ¶ 189). But Plaintiff never actually alleges that the Greenbergs paid A.B., communicated with A.B.—or even about A.B.—or that Andrew had any involvement in Joel's activities.

Plaintiff also asks this Court to infer that the Greenbergs paid A.B. to provide false testimony against him. *See id.* ¶¶ 20, 800. But the facts pleaded are very different. Plaintiff claims Joel variously told Plaintiff that Joel could pay A.B. to "not testify," *id.* ¶ 367; and that the Greenbergs would pay her to "go away," *id.* ¶ 424. But Plaintiff also alleges that "he [Joel] was paying A.B.'s legal bills," *id.* ¶ 507; *see also id.* ¶ 430 (claiming Joel had "control of A.B.'s testimony by paying her attorney's fees").

So from allegations that Joel said the Greenbergs would pay A.B. *not to testify*, Plaintiff asks the Court to instead infer from contrary allegations—drawn from the statements of a "pathological l[iar]"—that the Greenbergs paid A.B. to testify falsely about Plaintiff. That leap is implausible. Plaintiff does not even allege the Greenbergs knew of A.B.'s existence. And plainly, the Greenbergs did not pay A.B. to "go away,"

18

as Joel pled guilty to trafficking A.B., who provided statements to prosecutors and before the grand jury. *Id.* ¶¶ 432, 503, 518, 884. Even assuming the Greenbergs paid A.B.—which, again, Plaintiff does not actually allege—Joel stated that they would pay her *not to* testify, *id.* ¶ 424, not to do the opposite—implicate Plaintiff.

Similarly implausible are Plaintiff's allegations about bitcoins, as the Complaint makes clear that the bitcoins' source is "not known" and alleges only that the Greenbergs are a "viable explanation[]." *Id.* ¶¶ 189, 197. Thus, his allegations do not raise his theory of a vast criminal conspiracy to the level of plausibility Rule 8 requires, and fall far short of Rule 9's standard. And even assuming enterprises of illegal purpose, the allegations do not show that the Greenbergs "directed" such enterprise in any way.

### C. Plaintiff fails to allege the Greenbergs engaged in federal crimes.

Even assuming Plaintiff pleaded that the Greenbergs directed an enterprise, he must also "plead that *each* defendant engaged in the conduct of the affairs of the RICO enterprise through a pattern of racketeering activity involving at least two predicate criminal acts." *Cisneros*, 972 F.3d at 1208 (emphasis added). Thus, Plaintiff must plead that the Greenbergs—*each of them*—engaged in "at least two acts of racketeering activity the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." *McCaleb v. A.O. Smith Corp.*, 200 F.3d 747, 750 (11th Cir. 2000) (cleaned up). In other words, Plaintiff must plead "(1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a

*continuing* nature." *Jackson*, 372 F.3d at 1264. And in so alleging, Plaintiff must make a claim that "read[s] like a mini-indictment." *Lewis*, 530 F. Supp. 3d at 1219. That is not a turn of phrase: "[a] plaintiff must put forward enough facts with respect to each predicate act to make it independently indictable as a crime." *Cisneros*, 972 F.3d at 1215–16; *Lateral Recovery LLC v. Queen Funding, LLC*, No. 21-CV-9607, 2022 WL 2829913, at *2 (S.D.N.Y. July 20, 2022) ("A RICO claim must allege every essential element of each predicate act.").

Plaintiff does not allege that each of the Greenbergs committed multiple predicate crimes. That is, he does not identify the actual acts that he alleges Andrew, Susan, and AWG, Inc. committed. Indeed, the Complaint does not allege that they have committed *any* federal crimes—much less with the "particularity" necessary. *Cisneros,* 972 F.3d at 1217. True, Plaintiff identifies a host of federal crimes that he alleges the various "enterprises" have engaged in, *see, e.g.*, Doc. 1-1 ¶ 800; *see also id.* ¶¶ 736, 779, but Plaintiff cannot, by "blending the identities of the defendants" in this way, satisfy his pleading burden, *Cisneros*, 972 F.3d at 1217; *Pierson*, 619 F. Supp. 2d at 1273 ("lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct" falls short of even the Rule 8 standard).

And none of these undifferentiated, unsupported allegations approach the level necessary to support an indictment against any of the Greenbergs. *See United States v. Bobo*, 344 F.3d 1076, 1083 (11th Cir. 2003) (explaining that an indictment "must contain the elements of the offense intended to be charged, and sufficiently apprise the defendant of what he must be prepared to meet." (internal quotation marks omitted)).

Plaintiff offers no allegations showing how the Greenbergs supposedly engaged in fraud (With what patients? Against whom? When?), or illegally distributed narcotics (What substance(s)? To whom? When?). Nowhere does Plaintiff address the elements of any crime ascribed to the Greenbergs in Paragraphs 736, 770–71, 778–79, and 800.

Finally, to the extent Plaintiff alleges as a predicate that the Greenbergs conspired to defame him, "it is firmly established that defamation and many other similar allegations do not provide the requisite predicate for RICO violations." *Kimm v. Lee*, No. 04 CIV. 5724 (HB), 2005 WL 89386, at *5, 5 n.8 (S.D.N.Y. Jan. 13, 2005) (collecting cases); *see also Michalak v. Edwards*, No. 96-1970 & 96-1972, 1997 WL 561424, *4 (6th Cir. Sept. 9, 1997) ("[C]onspiracy to defame cannot serve as the predicate criminal act necessary for the imposition of civil RICO liability."). Simply put, Plaintiff has not alleged—either to Rule 8's or 9's standard—that the Greenbergs engaged in a pattern of racketeering activity.

### D. Plaintiff fails to allege causation.

Finally, causation is an essential element of any RICO claim. *See Holmes v. Secs. Inv'r Prot. Corp.*, 503 U.S. 258, 267 (1992). But as to the proffered dental, tax collector, and campaign enterprises, Plaintiff fails to show how the enterprise's alleged acts caused him harm; rather, he alleges only that the Greenberg Racketeering Enterprise extorted and defamed him—which cannot support a RICO claim. *See Kimm*, 2005 WL 89386, at *5–6 (rejecting "attempt to spin an alleged scheme to harm a plaintiff's professional reputation into a RICO claim," and holding that Hobbs Act extortion, wire fraud, and mail fraud are not satisfied by mere false statements and threats); *see also*

21

Doc. 1-1 ¶¶ 3–4, 31, 37, 39, 361, 409, 482, 493, 515, 547, 695, 711.

In sum, because Plaintiff has failed to adequately plead the existence of a rack-eteering enterprise or that the Greenbergs conducted it through a pattern of federal crime, this Court must dismiss Plaintiff's RICO claims—including Plaintiff's RICO conspiracy claim. *See Cisneros*, 972 F.3d at 1220 ("Because [Plaintiff] has failed to ad-equately allege an association-in-fact enterprise or a pattern of racketeering activity, [his] RICO conspiracy claim must also fail.").

### III.   Plaintiff's common-law claims also fail.

Plaintiff's state claims against the Greenbergs suffer from many of the same de-fects as Plaintiff's RICO claims: at best, alleging facts merely consistent with liability. Thus, like his RICO claims, Plaintiff's state claims must be dismissed.

#### A. Plaintiff has failed to plead aiding and abetting defamation.

To state a claim of aiding and abetting, Plaintiff must allege: "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying vio-lation by the alleged aider and abetter; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906 (11th Cir. 2012). Aiding-and-abetting liability is not "boundless," rather "courts have long recognized the need to cabin" such "liability to cases of truly culpable conduct." *Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206, 1220–21 (2023). Such "culpability . . . is necessary" or else "passive actors like banks [will] become liable for all their customers' crimes by virtue of carrying out routine transac-tions." *Id.* at 1222. Here, Plaintiff's aiding and abetting claims against the Greenbergs

fail because—assuming that Joel committed an underlying tort—Plaintiff has not (and cannot) allege that the Greenbergs were culpable by either knowing about Joel's alleged defamatory actions or by providing substantial assistance to advance those actions. The Complaint teems with allegations that the Greenbergs knew that Joel was troubled or had a difficult childhood. But Plaintiff does not allege that the Greenbergs knew about—or, rather, clairvoyantly foresaw—the defamatory statements Plaintiff alleges (all Plaintiff offers is a blanket allegation that "the Greenbergs were aware of Joel's ongoing criminal enterprise"). Doc 1-1 ¶ 30. And the mere fact that the Greenbergs supported their son financially does not impose strict liability upon them for any and all acts he commits.

Indeed, providing "any assistance of any kind" is not enough to create liability. *See Twitter*, 143 S. Ct. at 1220. For example, in *ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*, a developer alleged that its employee conspired with a contractor in a bid-rigging scam. 917 So. 2d 368, 370 (Fla. 5th DCA 2005). The developer then sued the surety that issued the contractor's performance bond, alleging that its bond issuance supported the contractor and had thus aided and abetted fraud. *Id.* The Fifth DCA rejected this theory, explaining that the surety did not provide substantial assistance to advance the fraud because the surety simply did what sureties do—issue performance bonds—and did not have any duty to third parties to "look behind the contract" to determine if fraud was being committed. *Id.* at 373–75.

So too here, merely supporting a child does not carry a duty to ensure the funds will never indirectly or incidentally contribute to later crime; nor does it constitute

material assistance to all tortious action that a child might later commit. *See Carney*, 751 So. 2d at 654; *Knight v. Merhige*, 133 So. 3d 1140, 1151 (Fla. 4th DCA 2014) (rejecting extension of liability of parent over adult child, holding that, as a public policy matter, "[f]amilies should be encouraged to include a troubled family member in the family circle" and that imposing a legal duty to the family of such children would "discourage families from providing a haven to troubled relatives for fear of civil liability"). Indeed, here, legal counsel handled Joel's criminal defense, in which he allegedly implicated Plaintiff. The Greenbergs did not handle Joel's defense—much less assume a duty to protect others—by allegedly paying their son's attorney or restitution debts. Thus, Plaintiff's aiding and abetting claim fails.

### B. Plaintiff has failed to plead civil conspiracy.

Plaintiff has likewise failed to plead a civil conspiracy to commit defamation, which requires pleading "a conspiracy between two or more parties . . . to do an unlawful act or to do a lawful act by unlawful means." *Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. 5th DCA 2006). To state that claim requires "clear, positive and specific allegations; general allegations of conspiracy are not sufficient." *Parisi v. Kingston*, 314 So. 3d 656, 661 (Fla. 3d DCA 2021). A plaintiff must allege the scope of the conspiracy, its participants, and when the agreement occurred. *See In re Chiquita Brands Int'l, Inc. Alien Tort Stat. & S'holder Deriv. Litig.*, 690 F. Supp. 2d 1296, 1311 (S.D. Fla. 2010). And, in pleading an agreement between parties to conspire, a bare assertion of an agreement, mere knowledge of the wrongful conduct, or the existence of an association with conspirators is insufficient to make that claim plausible. *See Honig v. Kornfeld*, 339

F. Supp. 3d 1323, 1345–46 (S.D. Fla. 2018). Even parallel conduct among parties cannot support a plausible inference of an agreement. *See Almanza,* 851 F.3d at 1068; *Honig,* 339 F. Supp. 3d at 1345 ("Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.").

Plaintiff's allegations are anything but clear, positive, and specific. He fails to allege that Defendants agreed to defame him. Knowledge and parallel conduct are not enough—and Plaintiff does not even allege that. Moreover, Joel's statement—that the Greenbergs would pay A.B., but failing to allege that the Greenbergs actually agreed to do so, and elsewhere alleging that *Joel* paid her—do not plausibly allege an agreement. These scant allegations cannot support a claim for conspiracy.[9]

## CONCLUSION

This Court should dismiss all counts of Plaintiff's Complaint against the Greenbergs with prejudice because repleading to state a claim is futile.

## LOCAL RULE 3.01(g) CERTIFICATION

On June 15, 2023, counsel for Andrew Greenberg, Susan Greenberg, and AWG, Inc. conferred with counsel for Plaintiff via Zoom on the issues raised in this motion. Plaintiff opposes the sought relief.

---

[9] Plaintiff's conspiracy claim also fails because his underlying defamation claim fails. *See Ovadia v. Bloom*, 756 So. 2d 137, 140 (Fla. 3d DCA 2000). First, Plaintiff does not identify the who, where, when, and what of the defamatory statements he alleges. *Jackson v. N. Broward Cty. Hosp. Dist.*, 766 So. 2d 256, 257 (Fla. 4th DCA 2000) (plaintiff must "specifically identify the persons to whom the allegedly defamatory comments were made"). Worse still, Plaintiff likely does so because those statements are either time barred, *see Ashraf v. Adventist Health Sys./Sunbelt, Inc.*, 200 So. 3d 173, 174–75 (Fla. 5th DCA 2016), or privileged, *see Fridovich v. Fridovich*, 598 So. 2d 65, 69 (Fla. 1992).

Respectfully submitted,

/s/ *Frederick S. Wermuth*
Frederick S. Wermuth (Lead Counsel)
Florida Bar No. 0184111
Dustin Mauser-Claassen
Florida Bar No. 0119289
Quinn Ritter
Florida Bar No. 1018135
KING, BLACKWELL, ZEHNDER &
WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com
dmauser@kbzwlaw.com
qritter@kbzwlaw.com

*Attorneys for Defendants Andrew Greenberg, Susan Greenberg, and AWG, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 16, 2023 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Dustin Mauser-Claassen*
Dustin Mauser-Claassen
Florida Bar No. 0119289

26