United States District Court
Middle District of Florida
Orlando Division

CHRISTOPHER E. DORWORTH,

     *Plaintiff,*

v.                                          NO. 6:23-00871

JOEL MICAH GREENBERG,
ANDREW W. GREENBERG, SUSAN
GREENBERG, ABBY GREENBERG,
AWG, INC., GREENBURG DENTAL
ASSOCIATES, LLC, GREENBERG
DENTAL & ORTHODONTICS, P.A.,
GREENBERG DENTAL SPECIALTY
GROUP, LLC, and A.B.,

     *Defendants.*

_____

### DEFENDANT A.B.'S MOTION TO DISMISS
_____

### INTRODUCTION

Defendant A.B. is a victim of child sex trafficking.  As set forth in detail in Joel

Greenberg's guilty plea, A.B. was still a minor when Mr. Greenberg trafficked her for

commercial sex acts for himself and his friends.  *See* Plea Agreement at 28-32, United

States v. Greenberg, No. 6:20-cr-0009 (M.D. Fla. May 14, 2021), ECF No. 105.[1]

During the course of Mr. Greenberg's criminal prosecution, A.B. cooperated with

---

[1] "Courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage."  *Harvey v. Soto*, 2016 WL 6275766, at *1 n.1 (M.D. Fla. Oct. 27, 2016) (quoting *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 n.4 (11th Cir. 2015)).

authorities by detailing the abuse she suffered and Mr. Greenberg's attempts to obfuscate his conduct.

In the present Complaint, Mr. Dorworth seeks to recast A.B. as Mr. Greenberg's partner in crime and a participant in a conspiracy to destroy Mr. Dorworth's reputation as revenge for Mr. Dorworth's refusal to assist with Mr. Greenberg's legal defense.  The vast majority of the Complaint concerns complicated plots bearing no relation to A.B., including financial schemes and political machinations to install Mr. Greenberg as the Seminole County tax collector.

To the extent that A.B. was allegedly involved, it was only through her statements to law enforcement implicating Mr. Dorworth in Mr. Greenberg's crimes against her.  But the 115-page Complaint does not even bother to detail these supposed statements and does not allege a single instance when A.B. made a statement to any third party.  Nor does the Complaint allege that A.B. agreed to assist Mr. Greenberg's conspiracy to minimize his criminal culpability.  Even if it had, such allegations would not be facially plausible in light of A.B.'s role in supporting charges against Mr. Greenberg.

Additionally, the Complaint improperly seeks to preempt any claims A.B. may have against Mr. Dorworth for raping and trafficking her by making a threadbare request for expansive declaratory judgment.  This claim bears no relation to the rest of the disputes set forth in the Complaint and is both procedurally and prudentially inapt for resolution through the present action.

A.B. had no role in the various plots set forth in the Complaint, and any separate disputes between herself and Mr. Dorworth are more properly resolved outside of this expansive RICO action.

## **LEGAL STANDARD**

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding such a motion, a court must "accept[] the factual allegations in the complaint as true and construe[] them in a light most favorable to the non-moving party." *Jones v. Coors Brewing Co.*, 378 F. Supp. 3d 1132, 1134 (M.D. Fla. 2019) (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009)). However, a court need not accept as true legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although the scope of review in deciding a motion to dismiss is typically limited to the four corners of the complaint, a court may expand its view if the evidence presented is "central to the plaintiff's claim, and . . . its authenticity is not challenged," if

"documents [are] incorporated into the complaint by reference," or if there are "matters of which a court may take judicial notice." *Uys v. Harris*, 2021 WL 2458698, at *2 (M.D. Fla. May 11, 2019) (quoting *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010), and *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013)).

## ARGUMENT

Although the Complaint alleges a widespread conspiracy with no fewer than four enterprises, Mr. Dorworth's claims against A.B. are simple: supposedly, she agreed to defame Mr. Dorworth by offering false testimony to prosecutors in furtherance of a plot to punish him spearheaded by Mr. Greenberg.  However, outside of conclusory statements, the Complaint fails to actually allege this behavior.  Mr. Dorworth does not identify any statements A.B. made to a third party, only claiming that "someone" said he had sex with her and she was "asked questions" about his house.  As for conspiracy (both under Florida law and under RICO), the Complaint pleads no facts suggesting that A.B. knew of the conspiracy, much less agreed to it. Given that Mr. Dorworth neglects to allege any actual conduct by A.B., it appears that the true purpose for including her in this lawsuit was to tack on a request for declaratory judgment relating to his participation in raping and trafficking A.B.  This request is both procedurally inappropriate under the Declaratory Judgment Act and prudentially out of place in this broader litigation.  Because Mr. Dorworth fails to identify any right to relief against A.B., A.B. respectfully requests that this Court dismiss all claims against her.

## I.   Defamation

Under Florida law, in order to state a claim for defamation, a plaintiff must allege "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla. 2008) (citing Restatement (Second) of Torts §§ 558B, 580A-580B); *accord Zimmerman v. Buttigieg*, 521 F. Supp. 3d 1197, 1211 (M.D. Fla. 2021).  Importantly, "[b]ecause the publication of a statement is a necessary element in a defamation action, only one who publishes can be subject to this form of tort liability." *Doe v. Am. Online, Inc.*, 783 So.2d 1010, 1017 (Fla. 2001).  In turn, "[p]ublication requires that the statement be communicated to a third person." *Zimmerman*, 521 F. Supp. 3d at 1212 (citation and internal quotation marks omitted).  Although it is "not necessarily require[d] that [the allegedly defamatory] statements be set out verbatim" in a pleading, where "the cause of action for defamation is based on oral statements," a plaintiff still must "set out the substance of the spoken words with sufficient particularity to enable the court to determine whether the publication was defamatory." *Lipsig v. Ramlawi*, 760 So.2d 170, 184-85 (Fla. Dist. Ct. App. 2000) (quoting *Edward L. Nezelek, Inc. v. Sunbeam Television Corp.*, 413 So.2d 51, 55 (Fla. Dist. Ct. App 1982)).

As an initial matter, A.B. maintains that she has never provided any false information to prosecutors or the public relating to her experiences being trafficked and statutorily raped by Mr. Greenberg and others, much less at the behest of Mr.

Greenberg.  Mr. Greenberg's prosecution and guilty plea for these crimes clearly demonstrates this fact.  However, even taking the contrary allegations within the Complaint as true for purposes of the present Motion, Mr. Dorworth fails to adequately allege a single instance on which A.B. committed the tort of defamation.

Most strikingly, Plaintiff does not identify even one false statement published to a third party.  In Count Six of the Complaint, Mr. Dorworth alleges that "Defendant A.B. also made false statements regarding Dorworth, including: [(1)] Falsely averring Dorworth was involved in the scheme to sex traffic minors; [and (2)] Falsely averring Dorworth had sex with an underage A.B."[2] *Compl.* ¶ 884.  But a review of each specific factual allegation that even potentially supports Plaintiff's claim clearly shows that Mr. Dorworth does not allege any defamatory statements on the part of A.B.

### A. "Someone Claimed Mr. Dorworth Engaged in Sexual Activity with A.B."

Mr. Dorworth first alleges that, at some point in 2021, his attorney was told by an Assistant United States Attorney "that **someone** claimed Mr. Dorworth engaged in sexual activity with A.B. prior to her 18th birthday."  *Compl.* ¶ 466 (emphasis added).  Plaintiff does *not* allege that A.B. made this claim, and earlier in this section he even specifies, "Incarcerated pending sentencing, Joel Greenberg began offering false testimony against Dorworth and Gaetz."  *Compl.* ¶ 459.  To state a claim for

---

[2] In subheading S immediately preceding ¶ 494 of the Complaint, Mr. Dorworth also states that "Greenberg and A.B. Falsely Allege Dorworth Participated in Attempts to Obstruct Justice." *Compl.* At 59.  This section includes <u>no</u> allegations regarding statements made by A.B. to anyone, and A.B. takes the absence of allegations regarding obstruction of justice from Count Six to mean that Mr. Dorworth does not pursue any such claim against A.B.

defamation relating to A.B.'s alleged statements to prosecutors, Plaintiff must, at a minimum, describe the substance of a statement made *by A.B.* with sufficient particularity that a court might determine it is defamatory. *Lipsig*, 760 So.2d at 184-85. Here, where Mr. Dorworth fails even to identify who made the alleged statement, it cannot support a defamation claim against A.B.

In an effort to gloss over this pleading deficiency, Mr. Dorworth repeatedly refers to a conversation he held with Mr. Greenberg in which Mr. Greenberg claimed that he would offer to pay A.B.'s attorney fees so that she would "not testify," *Compl.* ¶ 367, and "do what I tell her to," *id.* ¶ 369. Plaintiff seems to imply (but not directly allege) that, as a result of this purported arrangement,[3] any incriminating statements made against him to prosecutors must have come from A.B. Needless to say, such implicit suggestions are not enough to state a claim in the absence of factual allegations to support them. *See, e.g.*, *Game Craft, LLC v. Vector Putting, LLC*, 2015 WL 13791138, at *3 (M.D. Fla. Apr. 15, 2015) (declining to accept inferential allegation as true where "Plaintiffs have not provided sufficient allegations in the Amended Complaint to make this rather tenuous connection").

Even if Mr. Dorworth had explicitly set out his apparent reasoning, moreover, it would not meet the bedrock plausibility pleading standard. *Iqbal*, 556 U.S. at 678. To paraphrase an allegation from elsewhere in the Complaint, Mr. Dorworth "is fully

---

[3] Although mindful that, for purposes of the present Motion, all allegations in the Complaint must be taken as true, undersigned counsel believes it important to state on the record that they have received no payments or other consideration from Mr. Greenberg or any other member of the "Greenberg Racketeering Enterprise" for legal services rendered to A.B., at any point.

aware that [Mr. Greenberg] has a history of pathological lying tendencies . . . yet relies upon" Mr. Greenberg's statements about paying A.B.'s attorneys "as if it is entirely truthful." *Compl.* ¶ 683.  Indeed, Plaintiff even elaborates at length on Mr. Greenberg's false statements concerning the need for Plaintiff to secure legal counsel of his own. *See Compl.* ¶¶ 392-409.  Meanwhile, his alleged reliance on Mr. Greenberg's claim of control over A.B.'s testimony is unavoidably inconsistent with later developments in Mr. Greenberg's criminal prosecution.  It simply beggars belief that, if Mr. Greenberg had the influence he claimed over A.B.'s statements to the FBI, Mr. Greenberg would have been charged for or pled guilty to sex trafficking A.B.  Surely, Mr. Greenberg would have used such influence to directly undermine or prevent his own prosecution, rather than to insufficiently threaten Mr. Dorworth—who has not been prosecuted for sex trafficking—for having refused to take actions to undermine or prevent the prosecution.  In short, Mr. Greenberg's fate shows that his claims to control A.B.'s testimony cannot plausibly be read as anything more than empty bluffing.  Given that these statements form the entire basis for Plaintiff's claims against A.B. for defamation (not to mention RICO and civil conspiracy), they are entirely implausible.

## B. "A.B. Had Been Asked Questions by Investigators About . . . Dorworth's House"

The second set of allegations insufficiently posited for A.B.'s defamation liability are even more threadbare.  According to the Complaint, in September 2021, Mr. Dorworth learned "that A.B. had been asked questions by investigators about both Dorworth and Gaetz." *Compl.* ¶ 503.  When Mr. Dorworth sought more information,

he learned from Gaetz's ex-girlfriend that "she believed it had something to do with Dorworth's house." *Compl.* ¶ 506. Notably, Mr. Dorworth does not allege *any* statement by A.B. in response to this questioning. Nor does he claim that any future investigation centered on his home, nor on whether he had sex with or participated in sex trafficking A.B. Indeed, Mr. Dorworth clearly states that "none of Greenberg's accusations against any of the 'political' names [including Mr. Dorworth] were charged." *Compl.* ¶ 537.

Given that one of the elements of defamation is that the statement in question be false, a plaintiff must allege a statement that could be deemed to have a truth value. Here, Mr. Dorworth simply claims that A.B. was *asked* questions regarding a topic— here, his "house." He does not identify any statements by A.B. in response to questions about his house. As far as the Complaint goes, A.B. may have declined to answer these questions entirely. It is clear that an individual does not commit defamation simply by being asked questions, but that is all Plaintiff alleges here.

## C. Mr. Dorworth—Not A.B.—Publicized Allegations that He Was Involved in Sex Trafficking and Rape

Finally, Mr. Dorworth recounts a series of settlement communications between A.B.'s counsel and his own attorney, wherein A.B. notified Mr. Dorworth of legal claims against him and offered to discuss them privately prior to and in lieu of commencing a public lawsuit. *See Compl.* ¶¶ 696-713. These claims relate to A.B.'s experiences being sex trafficked and statutorily raped by Plaintiff. Mr. Dorworth

describes these communications as Mr. Greenberg "continu[ing] his vendetta" against Mr. Dorworth and "part of a coordinated attack" against him. *Compl.* ¶¶ 711, 713.

These statements by A.B. are categorically not defamation because they were not publicized to a third-party. Statements made directly to the subject of the statement are per se not defamatory, even if false and malicious, because the subject will not be misled by the statements nor will their estimation of themselves be meaningfully affected. *See Zimmerman*, 521 F. Supp. 3d at 1212 ("Since the interest protected is that of reputation, it is essential to tort liability for either libel or slander that the defamation be communicated to some one other than the person defamed" (citation omitted)). A.B.'s communication with Mr. Dorworth through his attorney does not change this analysis, as the rules of legal ethics require that such communications take place through appointed counsel. *See, e.g.*, Model R. Prof. Conduct 4.2. By reaching out to Plaintiff prior to initiating any legal process, A.B. offered the opportunity to resolve any legal disputes without publication of her allegations. Meanwhile, A.B.'s allegations were proliferated by Mr. Dorworth himself in the form of this lawsuit. Based on the Complaint, there is no indication that A.B. made any statement about her claims to any third party, and therefore Mr. Dorworth has failed to allege the publication element of defamation.

### D. Damages

Even if A.B. had made false and defamatory statements to prosecutors (which the Complaint fails to allege), Plaintiff has not established any damages resulting from such statements within the statutory period. Mr. Dorworth has alleged that he was

forced to leave his highly remunerative job as a result of A.B.'s defamation, but the Complaint reveals that any damages relating to his profession are outside of the statute of limitations.  Specifically, the Complaint was filed on April 7, 2023, and the statute of limitations for defamation in Florida is two years.  Fla. Stat. 95.11(4)(g).  Thus, any injury from prior to April 7, 2021 is unrecoverable.  In that vein, the Complaint clearly states that Mr. Dorworth "served as a lobbyist prior to leaving the profession in **March 2021**."  *Compl.* ¶ 6 (emphasis added).  Because the alleged harm occurred more than two years before filing, Mr. Dorworth cannot base his damages on his separation from Ballard Partners.

Mr. Dorworth has also claimed damage to his reputation.  *See, e.g.*, *Compl.* ¶¶ 827, 889.  However, he has not described any such reputational harms or the manner in which they were caused.  In reality, it appears that the first public account of Plaintiff's involvement in the sex trafficking and rape of A.B. was primarily based on an interview of and documents provided **by Mr. Dorworth** to NBC News.[4]  *See* Marc Caputo, *The Justice Department's Sex Trafficking Investigation into Rep. Matt Gaetz Seems Stalled, Attorneys Say*, NBC News, https://www.nbcnews.com/politics/justice-department/justice-departments-sex-trafficking-investigation-rep-matt-gaetz-seems-rcna49229 (Oct. 8, 2022).  Two earlier articles mentioned Mr. Dorworth in connection

---

[4] While this and following news articles are not specifically cited in the Complaint, they are central to Mr. Dorworth's claims of reputational damage and several are referenced in the Complaint.  Further, this Court may "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," pursuant to Federal Rule of Evidence 201.  *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651 (11th Cir. 2020) (quoting Fed. R. Evid. 201(b)(2)).

with the investigation into Mr. Greenberg's crimes, but one noted explicitly that there was "no indication Dorworth has been linked by authorities to any of Greenberg's alleged crimes," Jason Garcia & Martin E. Comas, *Dorworth, Greenberg Maneuvered Behind the Scenes on Behalf of Controversial Housing Development*, Orlando Sentinel, https://www.orlandosentinel.com/2021/04/23/dorworth-greenberg-maneuvered-behind-the-scenes-on-behalf-of-controversial-housing-development (Apr. 23, 2021), and the other only discussed Mr. Dorworth's connection to an alleged ghost candidate scandal, Evan Perez et al., *Gaetz Probe Includes Scrutiny of Potential Public Corruption Tied to Medical Marijuana Industry*, CNN, https://www.cnn.com/2021/04/23/politics/gaetz-probe-public-corruption-medical-marijuana/index.html (Apr. 23, 2021). Outside of the October 2022 article, only this lawsuit itself ever caused the publication of these allegations against Mr. Dorworth.

With respect to statements about Mr. Dorworth's house, it is uncontested that any such testimony led to no criminal charges (and apparently no further criminal investigation other than for obstruction of justice arising from Mr. Dorworth's responses, *see Compl.* ¶¶ 494, 514). Plaintiff does not describe any injury he suffered as a result of A.B. being asked questions about his house, and it is not clear what injury *could* follow based on the statements as described.

In short, it appears that the only harm to Plaintiff's reputation has come from his own public statements regarding private allegations against him. If any statements made to prosecutors led to no criminal charges, and if the only damages suffered by

Mr. Dorworth were in response to his own public disclosures, then there is no causal link between any alleged defamatory statement and Mr. Dorworth's alleged injury.

Because Mr. Dorworth has not alleged even a single defamatory statement made by A.B. to a third party, much less one that is verifiably false or motivated by actual malice, he has failed to state a claim for defamation against A.B.  Plaintiff's failure to identify any actual damages resulting from any alleged defamation within the statutory period further undermines any right to relief.  For these reasons, A.B. respectfully asks the Court to dismiss Count Six for defamation against A.B.

## II.   Civil Conspiracy

"To state a cause of action for civil conspiracy, a plaintiff must plead (1) an agreement between two or more parties; (2) to do an unlawful act or a lawful act by unlawful means; (3) the execution of some overt act in pursuance of the conspiracy; and (4) damage to the plaintiff as a result of said acts." *Logan v. Morgan, Lewis & Bockius LLP*, 350 So.3d 404, 412 (Fla. Dist. Ct. App. 2022) (citation and internal quotation marks omitted).  In addition, because "[t]here is no freestanding cause of action in Florida for 'civil conspiracy,'" a plaintiff must also "allege an underlying independent tort." *Teiera v. Lincoln Lending Servs., LLC*, 271 So.3d 97, 103 (Fla. Dist. Ct. App. 2019). Although there is no requirement that each member of a conspiracy act in furtherance of the scheme, an alleged conspirator is not liable unless they "know of the scheme and assist in it in some way." *Gilison v. Flagler Bank*, 303 So.3d 999, 1004-05 (Fla. Dist. Ct. App. 2020).  Finally, while "a conspiracy may be proven by circumstantial evidence, this may be done 'only when the inference sought to be created by such

circumstantial evidence outweighs all reasonable inferences to the contrary.'" *Raimi v. Furlong*, 702 So.2d 1273, 1284 (Fla. Dist. Ct. App. 1997) (quoting *Diamond v. Rosenfeld*, 511 So.2d 1031, 1034 (Fla. Dist. Ct. App. 1987)).

The basis of Plaintiff's civil conspiracy claim is an alleged plot to "disseminate or assist in disseminating false information about Dorworth" in a defamatory manner. *Compl.* ¶ 902; *see also id.* ¶ 905 (alleged conspiracy violates Florida Statutes Chapter 836, governing defamation and similar claims).[5]   Under this theory, Mr. Dorworth alleges that the various parties agreed to spread false and damaging information about Mr. Dorworth.  However, the Complaint does not include any allegations that A.B. actually agreed to participate in this plot.  Plaintiff does not set forth any facts suggesting that A.B. ever spoke with Mr. Greenberg about Mr. Dorworth, much less the dates or approximate substance of such conversations.  At most, Plaintiff alleges that Mr. Greenberg stated that "he was paying for A.B.'s attorneys" and he "**anticipated** that the Greenberg Racketeering Enterprise could make her not testify." *Compl.* ¶ 367 (emphasis added).  In other words, the only time that Mr. Dorworth was ever informed about the alleged conspiracy, A.B. *had not agreed* to participate, and Mr. Greenberg only "anticipated" that she would.  Plaintiff relies solely on this speculative statement of Mr. Greenberg's to establish A.B.'s agreement, but it does no such thing.

---

[5] Count Eight of the Complaint for civil conspiracy appears to allege only the underlying tort of defamation as set forth in Count Six.  To the extent Plaintiff seeks to base his claim on an alternative underlying tort, he has failed to specify such.  *See Pierson v. Orlando Regional Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1297-98 (M.D. Fla. 2009).

Further, as set forth *supra*, the Complaint fails to allege even a single defamatory statement by A.B.  The only statements actually ascribed to her are her counsel's offers to privately discuss resolving her claims, which were delivered to Plaintiff through his attorney.  The Complaint does not describe any statement made by A.B., merely alleging that Plaintiff was told that "someone" said he had sex with A.B. and that prosecutors asked A.B. about his house.  *Compl.* ¶¶ 466, 495-506.  Therefore, because civil conspiracy is nothing more than a procedural mechanism to assign liability for an underlying tort, *Teiera*, 271 So.3d at 103, and A.B. made no defamatory statements, any claim for civil conspiracy based on A.B.'s statements must fail.

Even if properly alleged, the agreement Plaintiff suggests between Mr. Greenberg and A.B. fails to meet the plausibility standard.  The Complaint cannot ignore that Mr. Greenberg was prosecuted for and pled guilty to sex trafficking A.B., largely based upon her testimony against him.  Supposedly, then, Mr. Greenberg's efforts to pay for A.B.'s attorneys in order to control her testimony failed.  Put another way, under any plausible scenario, if Mr. Greenberg controlled A.B.'s testimony, he would have used that control to prevent himself from being convicted for sex crimes.  A much more plausible scenario is that Mr. Greenberg was simply lying about paying A.B.'s attorneys and controlling her testimony, while A.B. cooperated with prosecutors with total disregard for Mr. Greenberg's preferences.  While this Court must generally accept the allegations in the Complaint as true at this procedural stage, that does not require the Court to endorse wholly fanciful scenarios.  *See, e.g.*, *Fifth Third Bank v. Qureshi*, 2009 WL 10706060, at *1 ("Whether the non-conclusory facts

alleged state a plausible claim for relief depends on whether they allow the Court 'to infer more than the mere possibility of misconduct.' [*Iqbal*, 556 U.S. at 679.] The Court generally will not make such an inference if there is an 'obvious alternative explanation' for the alleged wrong. *Twombly*, 550 U.S. at 567.").

Finally, even if the Complaint did state a claim for civil conspiracy against A.B., the available damages are limited in just the same way as for defamation. Because civil conspiracy is not its own cause of action and is merely a manner of assigning liability for an underlying tort, it adopts the statute of limitations of the underlying tort, in this case two years for defamation. As Mr. Dorworth left his position with Ballard Partners more than two years prior to filing the Complaint, based on his own admission, no damages are available for professional injuries. And just as Mr. Dorworth failed to allege plausible reputational damage from any statements made by A.B., he has also failed to establish such injury as a result of the conspiracy. For these reasons, A.B. respectfully asks that the Court dismiss Count Eight against her.

## III. Civil RICO

Mr. Dorworth includes five RICO claims in the Complaint, alleging a wide variety of supposed racketeering conduct. A.B. is only named as a defendant in Count Five, which alleges a conspiracy to violate RICO under 18 U.S.C. § 1962(d).

In order to state a claim under § 1962(d), a plaintiff must allege "an illegal agreement to violate a substantive provision of the RICO statute." *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1269 (11th Cir. 2004). "If the underlying cause of action is not viable, the conspiracy claim must also fail." *Spain v. Brown & Williamson*

*Tobacco Corp.*, 363 F.3d 1183, 1199 (11th Cir. 2004) (citation and internal quotation marks omitted).  Further, a plaintiff must establish the RICO conspiracy claim itself in one of two ways: "(1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts."  *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010).

Mr. Dorworth's RICO claims are not the model of clarity, and it is difficult to divine the exact import of many of his allegations.  For instance, Mr. Dorworth appears to use "the Greenberg Racketeering Enterprise" and "Defendants" interchangeably, yet his definition of the Defendants who are part of that enterprise repeatedly excludes A.B.  *See, e.g.*, *Compl.* ¶¶ 844, 862.  He claims that the Greenberg Racketeering Enterprise (apparently one of at least four matryoshka enterprises, but the only one relevant to the present Motion) committed a variety of federal crimes.  *See, e.g.*, *Compl.* ¶ 800.  However, he fails to separate out the individual members of the enterprise and their supposed contributions to the enterprise's goals.  To the extent (if any) that Mr. Dorworth's RICO claims against A.B. extend beyond those acts specifically attributed to her, the Complaint fails to afford A.B. fair notice of the basis of the claims against her.  Where plaintiffs "lump[] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct," dismissal is appropriate under Federal Rule of Civil Procedure 8.  *See Pierson v. Orlando Regional Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1273 (M.D. Fla. 2009).  Mr. Dorworth's group pleading here similarly justifies dismissal.

To establish A.B.'s liability in connection with a RICO conspiracy, Plaintiff must show either that A.B. agreed to commit two predicate acts or that she agreed to the overall objective of the conspiracy. The Complaint alleges neither; there is no indication that A.B. agreed to *anything*, with *anyone*, much less that she agreed to one of these courses of action. In fact, A.B. has never even met any of the parties other than Mr. Greenberg and Mr. Dorworth.

It is true that Mr. Dorworth need not provide direct evidence of A.B.'s agreement, but he must at least allege adequate facts regarding the conduct of participants to support an inference that the conspiracy exists. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010). But in connection with his RICO claims, Mr. Dorworth only alleges as to A.B. that she "knowingly falsified her testimony and statements to the government to implicate Dorworth, knowing those statements were false and only had an effect of hurting Dorworth, due to inducement provided by Greenberg." *Compl.* ¶ 876. On its own, this conclusory allegation does not contain enough factual detail to create a plausible right to relief; it does not identify any particular false testimony or statements, nor does it specify the number of such statements, the dates on which they were made, or their substance. As described above, the rest of the Complaint similarly fails to identify any false statements made by A.B. regarding Plaintiff. *See supra* pp. 5-10.

Nor does Mr. Dorworth allege any other facts supporting an inference that A.B. entered into a conspiracy with the enterprise. He does not provide anything more than a single conclusory statement that A.B. changed her testimony in exchange for Mr.

Greenberg's allegedly paying her attorney's fees; even if he did, such allegations would not be plausible in light of the fact that A.B. testified against Mr. Greenberg, leading to his conviction.  According to the Complaint, the enterprise's purpose was "reducing or eliminating Joel Greenberg's criminal liability."  *Compl.* ¶ 873.  A.B.'s actual conduct was in direct contravention of this goal.  The Complaint further does not allege that A.B. knew about the conspiracy at all, as her only alleged apparent contact with the conspiracy was through Mr. Greenberg.  Plaintiff does not allege with any specificity that A.B. sought to harm him with her testimony, much less that she sought to persuade Plaintiff to take actions such as seeking a pardon for Mr. Greenberg or facilitating the firing of an Assistant U.S. Attorney.  In fact, the Complaint details only two relevant acts regarding A.B.: that Mr. Greenberg stated that he would convince her not to testify by paying her attorney's fees, *Compl.* ¶ 367, and that she testified before a grand jury and was asked questions by investigators, *see, e.g.*, *Compl.* ¶¶ 503, 518.  According to the Complaint itself, A.B.'s conduct was inconsistent with the alleged conspiracy's aims, and there is no indication that anything A.B. said (whatever it may have been) furthered the conspiracy.  These threadbare allegations pointing directly to A.B.'s *lack* of cooperation with the enterprise certainly are not sufficient to sufficiently plead a conspiratorial plot against *Plaintiff*.[6]

---

[6] Even if A.B. did accept legal fees from Mr. Greenberg (though she did not), this allegation alone would not establish that she agreed to cooperate with the enterprise.  "[W]hen determining whether the complaint crosses the line between possibility and plausibility of entitlement to relief, courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer."  *Doe v. Samford Univ.*, 29 F.4th 675, 686 (11th Cir. 2022) (internal citations and quotation marks omitted); *see also Twombly,* 550 U.S. at 554 (allegations of wrongdoing were not plausible because the facts alleged

Even beyond the question of A.B.'s personal involvement, Count Five of the Complaint entirely fails to identify an underlying RICO violation. To the extent that this claim relies on predicate acts of defamation—and these are the only potential crimes that support Mr. Dorworth's alleged damages of reputational and professional harm—"it is firmly established that defamation and many other similar allegations do not provide the requisite predicate for RICO violations." *Kimm v. Lee*, 2005 WL 89386, at *5 (S.D.N.Y. Jan. 13, 2005); *see also Bela Vista Contractors, Inc. v. Tierra Del Mar Condominium Ass'n*, 2015 WL 10857529, at *4 (S.D. Fla. Oct. 2, 2015) ("[S]lander or libel under state law . . . are not predicate acts." (citing *Dowbenko v. Google Inc.*, 582 F. App'x 801, 806 (11th Cir. 2014) and *Rock v. BAE Sys., Inc.*, 556 F. App'x 869, 872 (11th Cir. 2014))). Perjury similarly is not a predicate act under RICO. *Trump v. Clinton*, 2022 WL 4119433, at *15 (S.D. Fla. Sept. 22, 2022) ("[P]erjury and falsifying documents are not RICO predicate acts." (citing 18 U.S.C. § 1961(1))). Because Mr. Dorworth has failed to state a claim for conspiracy to violate RICO, A.B. respectfully asks this Court to dismiss Count Five against her.

## IV.   Declaratory Judgment

Finally, Mr. Dorworth seeks a declaratory judgment from this Court that he has never had sexual contact with A.B., that he has not compensated A.B. for sexual acts,

---

were "consistent with [liability], but just as much in line with a wide swath of" lawful conduct). Unlike nearly every other player named in this lawsuit, A.B. was not a savvy and connected politician, nor did she have access to millions of dollars to protect her legal interests. Given her circumstances, there would be nothing inherently criminal about A.B. accepting help to pay for legal counsel, if the allegation were true.

and that he is not liable to A.B. for any allegations to that effect.  *Compl.* ¶ 911.  He bases his entitlement to such declaratory judgment solely on a letter from A.B.'s counsel offering to discuss a private resolution of claims she has against Mr. Dorworth for his having trafficked her.  *See Compl.* ¶¶ 912-16.

Although this action was initially filed in Florida state court, because the Florida Declaratory Judgment Act is merely a "procedural mechanism rather than a substantive rule of decision," the federal Declaratory Judgment Act, 28 U.S.C. § 2201, applies to this claim following removal.  *Daytona Beach Riverhouse, Inc. v. Chubb Custom Ins. Co.*, 2014 WL 12611320, at *3 (M.D. Fla. Mar. 20, 2014) (internal quotation marks omitted).  "Like all claims, a request for declaratory relief is subject to the standing doctrine," which is established if an "actual controversy"—the same as Article III's "case or controversy" requirement—exists.  *Methelus v. Sch. Bd. of Collier Cty.*, 2017 WL 3421470, at *2 (M.D. Fla. Aug. 9, 2017).  To establish a case or controversy, "a party must show that '(1) [it] is likely to suffer a future injury; (2) [it] is likely to suffer the injury at the hands of the [opposing party]; and (3) the relief [it] seeks will likely prevent the injury from occurring.'"  *Id.* (quoting *Navellier v. Florida*, 672 F. App'x 925, 928 (11th Cir. 2016)).  In order to establish an injury in fact, a litigant "must point to a 'legally protected interest' that [the opposing party] ha[s] allegedly invaded.  *Methelus*, 2017 WL 3421470, at *3.  "No legally cognizable injury arises unless an interest is protected by statute or otherwise."  *Id.* (quoting *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 980 (11th Cir. 2005)).

Mr. Dorworth's claim for declaratory relief subverts the purposes of the Declaratory Judgment Act.  "The purpose of a declaratory judgment is to determine parties' rights and duties without having to resort to a tort or breach of contract as a prerequisite to a judicial determination." *Dimuccio v. D'Ambra*, 750 F. Supp. 495, 498 (M.D. Fla. 1990).  In other words, the purpose of the Act and its procedural mechanism is to allow parties to resolve ripe legal disputes without requiring litigants to "bet the farm" by potentially violating each other's rights in order to gain admission to court.  Then-Associate Justice Rehnquist explained in concurrence in *Steffel v. Thompson*, 415 U.S. 452 (1974), that "the declaratory judgment procedure is an alternative to pursuit of the arguably illegal activity" and opined that its legislative history showed "that its primary purpose was to enable persons to obtain a definition of their rights before an actual injury had occurred."  *Steffel*, 415 U.S. at 478-80.  Indeed, the report accompanying the Senate version of the bill elaborated: "The procedure has been especially useful in avoiding the necessity, now so often present, of having to act at one's peril or to act on one's own interpretation of his rights, or abandon one's rights because of a fear of incurring damages."  *Id.* at 480 (quoting S. Rep. No. 1005, 73d Cong., 2d Sess., 2-3 (1934)).  This history explains the primary usages of declaratory judgment in modern legal practice: resolving insurance, contract, and intellectual property disputes, or challenging governmental statutes or regulations, in a legally binding manner prior to the incurrence of significant damages.

Plaintiff, by contrast, seeks to resolve his legal liability for a tort that occurred years ago.  Declaratory judgment was not intended for tortfeasors to preemptively seek

absolution for their past actions, let alone at a time and in a forum of their choosing. Mr. Dorworth, moreover, does not even identify the specific case or controversy he seeks to resolve through his request, as he asks for a declaration that "he is not liable to [A.B.] for any allegations of the same" without specifying a particular theory of relief. *Compl.* ¶¶ 911, 917.  A.B. could potentially bring any number of claims against Mr. Dorworth were she to pursue her legal rights, but Mr. Dorworth asks this Court to canvass any possible source of liability without limitation.  The fact that Plaintiff is unable to specify the nature of the declaration he seeks to receive demonstrates that the parties' dispute is not yet ripe for determination. *Devs. Sur. & Indem. Co. v. Archer W. Contractors, LLC*, 2017 WL 6947785, at *3 (M.D. Fla. Apr. 17, 2017) ("Ordinarily, a controversy is not sufficiently immediate or real where the parties' dispute is only hypothetical and not yet ripe, has been rendered moot, or where the court's resolution of the matter would be purely academic" (citation omitted)).

Further, Mr. Dorworth has failed to identify any legally protected interest that would be violated by A.B. in the absence of a declaratory judgment, as is necessary to establish standing.  Simply put, Mr. Dorworth has no legal right not to be sued by A.B. for raping and trafficking her.  Admittedly, the prospect of future litigation often plays a role in justifying declaratory judgment actions.  However, those suits predominantly concern the established legal rights of potential litigants, such as are set forth in a contract or insurance policy.  Here, Mr. Dorworth appears to assume some right not to be civilly sued for his personal conduct where no such right exists.  In the absence of "an invasion of a legally protected interest" that is "concrete and particularized"

and "actual or imminent, not conjectural or hypothetical," Mr. Dorworth has not established standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Even if Mr. Dorworth properly stated a claim for declaratory judgment (though he did not), this Court has discretion not to hear this claim. *Ameritas Variable Life Ins. Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (the Declaratory Judgment Act "confers a discretion on courts" and "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so" (citation omitted)). This Court has many reasons before it to dismiss Mr. Dorworth's request. First, the declaratory judgment Count does not belong in this case. The rest of the allegations in the Complaint, including the other eight Counts, all concern an alleged scheme by Defendants to malign Mr. Dorworth and the supposed damages he suffered as a result. By contrast, Count 9 solely targets a potential tort suit by A.B. settling the rights between those two individual parties, without any relationship to the supposed Greenberg Racketeering Enterprise. Plaintiff cites no justification for this claim beyond A.B.'s mention of a potential future lawsuit against him. *See Compl.* ¶ 912. Put another way, resolution of the declaratory judgment claim would not meaningfully assist in determining issues in this broader litigation.

Moreover, there is no need for Plaintiff to litigate these issues in the present suit. He could alternatively file a motion to dismiss or motion for summary judgment in any potential future action by A.B. asserting the same arguments he anticipates making here. *See Angora Enterprises, Inc. v. Condominium Ass'n of Lakeside Village, Inc.*, 796 F.2d 384, 387-88 (11th Cir. 1986) (observing that a court may refuse declaratory

relief if an alternative remedy exists that is better or more effective); *Penn Tank Lines, Inc. v. Jackson*, 2018 WL 465977, at *4 (N.D. Ala. Jan. 18, 2018) ("The court finds that declaratory relief serves no useful purpose in this action because, as noted above, Plaintiffs can obtain the same relief by filing a motion to dismiss invoking immunity if Mr. Jackson brings his lawsuit against the estate.").  Plaintiff fails to offer any reason why this Court should expand this case's scope to litigate these issues *now* as opposed to litigating them, in the normal course, should a suit be filed later.  Plaintiff identifies no risk that he will be further harmed by waiting for A.B. to file her own lawsuit.  In the absence of any such showing, this Court should "decline[] to give [Plaintiff] a general shield to thwart future litigation."  *Methelus*, 2017 WL 3421470, at *3.

For the reasons set forth above, A.B. respectfully asks that this Court dismiss Count Nine for declaratory judgment against A.B.

## CONCLUSION

In light of the above, A.B. respectfully requests that the Court enter an Order dismissing Counts Five, Six, Eight, and Nine of the Complaint against A.B. with prejudice, as well as any further relief the Court deems just and appropriate.

## LOCAL RULE 3.01(g) CERTIFICATION

I hereby certify that on June 15, 2023, undersigned counsel conferred with counsel for Plaintiff via Zoom, who opposes the requested relief.

Dated: June 16, 2023

Respectfully submitted,

*s/ Laura B. Wolf*

Laura B. Wolf, Esq.* (Lead Counsel)
Colorado Bar #46833
Stephen Shaw, Esq.*
Colorado Bar #56720
Spark Justice Law LLC
1035 Osage Street, Suite 824
Denver, CO 80204
(303) 802-5390
laura@spark-law.com (primary)
steve@spark-law.com (primary)

Christopher W. Ford, Esq.*
Colorado Bar #28632
Jonathan Boonin, Esq.*
Colorado Bar #23113
Hutchinson Black and Cook, LLC
921 Walnut Street, Suite 200
Boulder, CO 80302
(303) 442-6514
chris.ford@hbcboulder.com (primary)
jonathan.boonin@hbcbolder.com
(primary)
ella.ford@hbcboulder.com (secondary)

Jesse Ian Unruh
Florida Bar No. 92121
Spire Law, LLC
2572 West State Road 426, Suite 2088
Oviedo, FL 32765
(407) 494-0135
jesse@spirelawfirm.com (primary)
marcela@spirelawfirm.com
(secondary)
filings@spirelawfirm.com (secondary)

*Attorneys for Defendant A.B.*

* *Pro hac vice* admission

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2023, a copy of the foregoing document was served on the following counsel of record:

Michael Paul Beltran
Beltran Litigation, P.A.
4920 West Cypress St. Suite 104 PMB 5089
Tampa, FL 33607
813-870-3073
mike@beltranlitigation.com

**Attorney for Plaintiff Christopher Dorworth**

Fritz J. Scheller
Fritz Scheller, PL
Suite 1150
200 E Robinson St
Orlando, FL 32801
407/792-1285
Fax: 407/513-4146
Email: fscheller@flusalaw.com

**Attorney for Defendant Joel Micah Greenberg**

Dustin Michael Mauser-Claassen
Frederick S. Wermuth
King, Blackwell, Zehnder & Wermuth, PA
P.O. Box 1631
Orlando, FL 32802-1631
407422-2472
Fax: 407-648-0161
Email: dmauser@kbzwlaw.com
Email: fwermuth@kbzwlaw.com
Quinn B. Ritter
25 East Pine Street
Orlando, FL 32801
407-422-2472
Fax: 407-648-0161
Email: qritter@kbzwlaw.com

**Attorneys for Defendants Andrew W. Greenberg, Susan Greenberg, AWG, Inc.**

Jason A. Perkins
Chelsey Joiner Clements
Carlton Fields Jorden Burt, PA
PO Box 1171
Orlando, FL 32802-1171
407/849-0300
Fax: 407/648-9099
Email: jperkins@carltonfields.com
Email: cclements@carltonfields.com
**Attorneys for Defendant Abby Greenberg**

Allison P. Barkett
Michael J. Furbush
Michaela Kirn
Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, PA
420 S. Orange Ave, Suite 700
Orlando, FL 32801
407-841-1200
Fax: 407-423-1831
Email: mfurbush@deanmead.com
Email: mkirn@deanmead.com
**Attorneys for Defendants Greenberg Dental Associates, LLC, Greenberg Dental & Orthodontics, P.A., Greenberg Dental Specialty Group, LLC**

*s/Laura B. Wolf*
Laura B. Wolf