UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHRISTOPHER E. DORWORTH,

     *Plaintiff*,

v.

JOEL MICAH GREENBERG,
ANDREW W. GREENBERG, SUSAN
GREENBERG, ABBY GREENBERG,
AWG, INC., GREENBERG DENTAL
ASSOCIATES, LLC, GREENBERG
DENTAL & ORTHODONTICS, P.A.,
GREENBERG DENTAL SPECIALTY
GROUP, LLC, and A.B.,

     *Defendants*.

Case No.: 6:23-cv-00871-CEM-DCI

## GREEENBERG DENTAL DEFENDANTS' MOTION TO DISMISS

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants

Greenberg Dental Associates, LLC, Greenberg Dental & Orthodontics, P.A., and

Greenberg Dental Specialty Group, LLC (collectively, "Greenberg Dental"), move

to dismiss Plaintiff's Complaint (Doc. 1-1) for failure to state a cause of action.

### I.    INTRODUCTION

Greenberg Dental owns and operates dental and orthodontic clinics. Plaintiff

is a former state legislator who alleges that Greenberg Dental was part of a

widespread racketeering conspiracy that abetted the well-publicized crimes

committed by Joel Greenberg, the disgraced former Seminole County tax collector

and son of Andrew Greenberg, one of the founders of Greenberg Dental.

O4219261.v3

Plaintiff alleges that he had a personal and professional relationship with Joel Greenberg that lasted nearly four years. Plaintiff claims that after Joel Greenberg was indicted, he implicated the Plaintiff in some of his crimes—including child sex trafficking—allegedly to cooperate with the government and obtain leniency for himself. Plaintiff claims that he lost his lobbying job and professional reputation because of his association with Joel Greenberg.

However, Plaintiff now claims that Joel Greenberg did not act alone, but as part of a criminal racketeering enterprise that allegedly included: (1) Joel's parents, Andrew and Susan Greenberg, and their "family" company, AWG, Inc.; (2) Joel's ex-wife, Abby Greenberg; (3) Greenberg Dental; and (4) A.B., an adult film actress (per Plaintiff, the "Greenberg Racketeering Enterprise"). Plaintiff alleges that "the Greenberg Racketeering Enterprise conspired to defame Dorworth and falsely accuse Dorworth of crimes associated with [Joel]." Compl. ¶¶ 39. The Complaint asserts three violations of the RICO statutes, aiding and abetting defamation, and civil conspiracy, and seeks treble damages. *See id.* ¶¶ 819, 828, 865.

Plaintiff's Complaint does not come close to stating any plausible cause of action against Greenberg Dental. The Complaint offers lurid details about Joel Greenberg's personal life, bases many of its more salacious allegations either "upon information and belief" or outright speculation, and impermissibly groups the Defendants together without any semblance of differentiation. Undoubtedly, the 115-page Complaint is a shotgun pleading prohibited by Rule 8 of the Federal Rules of

Civil Procedure, which requires a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R Civ. P. 8(a)(2).

Plaintiff's primary grievance is that Joel Greenberg relied on financial support from his parents to live a lavish lifestyle while committing crimes. *See, e.g.,* Compl. ¶¶ 25-27, 29, 30, 57, 78, 108, 164, 205. Even if this is true, though, it would not sustain a cause of action because parents in Florida (and most other states) are not liable for their adult children's tortious acts merely because they provide them with financial support. *See Knight v. Merhige*, 133 So. 3d 1140, 1146-47 (Fla. 4th DCA 2014) (holding that "parents 'may not be held legally responsible for the conduct of their emancipated, adult child'") (quoting *Carney v. Gambel*, 751 So. 2d 653, 654 (Fla. 4th DCA 1999)). Joel's parents are not responsible for Joel's crimes just because they supported him financially.

Plaintiff's claims against Greenberg Dental are even more implausible than his claims against Joel Greenberg's parents. Plaintiff claims that the parental support provided to Joel was only made possible by the financial success of Greenberg Dental. But that allegation does not support an inference that Greenberg Dental, a popular dental and orthodontic practice established more than a decade before Joel Greenberg was born, was a knowing participant in Joel's crimes. The Complaint puts forth no allegations to show that Greenberg Dental ever participated in, was aware of, or benefitted in any way from Joel's criminal behavior. Nor are there any allegations to suggest that Joel has ever been authorized to speak or act on Greenberg

3

Dental's behalf. Indeed, there is not one plausible fact alleged in the Complaint which even remotely supports Plaintiff's slanderous allegation that Greenberg Dental is, behind the façade of its thriving dental practice, a racketeer. For these reasons, detailed more below, the claims against Greenberg Dental should be dismissed.

## II.    FACTUAL ALLEGATIONS

Greenberg Dental is a Florida-based dental chain co-owned by Andrew and Sue Greenberg (the "Greenbergs"), the parents of Joel Greenberg ("Joel"). Compl. ¶¶ 11, 15-18, 25. According to the Complaint, the Greenbergs have enjoyed significant wealth as a result of the success of Greenberg Dental, earning millions of dollars per year. *Id.* ¶ 730. The Greenbergs in turn used the income derived from Greenberg Dental to support their son, Joel, personally and professionally during his campaign for Seminole County Tax Collector. *Id.* ¶¶ 78, 83. Based only on what Plaintiff says he heard from Joel, Joel received $100,000 a quarter from his parents via disbursements from AWG, which allegedly derived its value from Greenberg Dental. *Id.* ¶¶ 78, 83. Plaintiff then leaps to the unsubstantiated conclusion that "[a]s the Greenbergs were aware of Joel's ongoing criminal enterprise, they utilized resources derived from Greenberg Dental, which then flowed through AWG, Inc., to sustain Greenberg in office [as Seminole County Tax Collector], allow him to escape detection for his crimes, and mitigate his exposure, both during and after his time in office." *Id.* ¶ 30.

To implicate Greenberg Dental in the alleged RICO enterprise, Plaintiff ironically relies on conversations in which Joel allegedly told him that Greenberg

4

Dental was illegally trafficking opioids. *See id.* ¶¶ 270-72, 274-76, 731. Plaintiff claims that Joel "would make frequent jokes about Greenberg Dental's reputation as a 'pill mill,'" *id.* ¶ 270; and "would say jokingly to [Plaintiff] that 'the reason my parents are so rich is that they figured out how to make Medicaid pay for people's opioids instead of cash at a pill mill,'" *id.* ¶ 271. Plaintiff claims that Joel once told him that "[p]eople really want opioids and Greenberg Dental is happy to give them the maximum amount of opioids that they can and somebody else pays for it," *id.* ¶ 272; and confided that "he had, in previous years, been in and out of rehab to deal with an oxycontin addiction," "had obtained oxycontin by using prescription drug pads from Greenberg Dental," and that his parents were aware he was stealing prescription drug pads, *id.* ¶¶ 274–76. Plaintiff then assumes from these alleged conversations that Greenberg Dental "violated numerous state and federal laws" by prescribing "painkillers without sufficient medical history, physical examination, diagnosis, medical monitoring, or documentation." *Id.* ¶¶ 270, 273–76, 683, 731.

Yet Plaintiff distances himself from his highly scandalous allegations against Greenberg Dental by admitting he "has no first-hand knowledge of the finances, operations and policies of Greenberg Dental and makes these pleadings upon information and belief based upon the representations of Joel Greenberg." *Id.* ¶ 278. Thus, the only "information" upon which Plaintiff bases his "belief" that Greenberg Dental is actually an illegal opioid dealer is offhand and "joking[]" (*id.* ¶ 271) comments made by Joel Greenberg—who he refers to in the Complaint as "one of the most corrupt politicians in Florida history" and a "pathological [liar]"—rather

5

than any actual facts indicating that Joel's comments were true.  *Id.* ¶¶ 1, 683.

## III.   LEGAL STANDARD

To survive a motion under Rule 12(b)(6), a "plaintiff must plead more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). As the Eleventh Circuit has instructed, courts first "identify conclusory allegations and then discard them—not 'on the ground that they are unrealistic or nonsensical' but because their conclusory nature 'disentitles them to the presumption of truth.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). Having done so, the court is then to "assume any remaining factual allegations are true and determine whether those factual allegations 'plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). "That is, a complaint must contain factual allegations that are enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Neither "bald assertions" nor "unwarranted deductions of fact" are sufficient to overcome a motion to dismiss. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). In addition to the pleading requirements under Rule 12(b)(6), parties alleging RICO claims based on fraud must "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). *See also American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

## IV.   ARGUMENT

### A.  The Complaint Fails To State A RICO Claim

RICO makes it unlawful for (1) "any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity"; (2) "any person through a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in [or affects] interstate or foreign commerce"; (3) "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt"; and (4) any person to conspire to violate (1)-(3) mentioned above. *See* 18 U.S.C. §§ 1962(a)-(d).

The RICO statute authorizes a civil cause of action for any person "injured in his business or property by reason of a violation" of RICO. *Id.* § 1964(c). "A private plaintiff suing under the civil provisions of RICO must plausibly allege six elements: that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211 (11th Cir. 2020); *accord Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1311-12 (11th Cir. 2000).

RICO is "an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996), *aff'd*, 113 F.3d 1229 (2d Cir. 1997). RICO claims are frequently dismissed at the pleading stage because the overused RICO statute is not intended to

remedy "garden variety fraud claims." *DeBoskey v. SunTrust Mortgage, Inc.*, No. 8:14-cv-1778-MMS-TGW, 2017 WL 4083557, at *8 (M.D. Fla. Sep. 14, 2017). For that reason, "courts have an obligation to scrutinize civil RICO claims early in the litigation—to separate the rare complaint that actually states a claim for civil RICO and should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Id.* (citation and internal quotations omitted).

This is not one of the "rare cases" that states a claim for civil RICO. Plaintiff's federal RICO claims allege the "Greenberg Racketeering Enterprise," purportedly made up of Greenberg Dental, Andrew and Susan Greenberg, AWG, Joel Greenberg, Abby Greenberg, and A.B, conspired to defame Dorworth and falsely accused him of partaking in crimes committed by Joel Greenberg. In a shoddy attempt to establish his RICO claim, Dorworth alleges he heard from Joel that Greenberg Dental acts as a "pill mill," that the Greenbergs' income derives from Greenberg Dental, and that the income from Greenberg Dental was used to support Joel, fund his campaign for Seminole County Tax Collector, and enable his crimes. But Plaintiff's allegations against Joel have no fathomable ties to Greenberg Dental for purposes of RICO. His conclusory allegations that Greenberg Dental participated in unlawful conduct because he "heard" Greenberg Dental is a "pill mill" are insufficient to state a civil cause of action under RICO. Plaintiff's fanciful RICO claims against Greenberg Dental should be dismissed with prejudice.

### 1.    Plaintiff does not plausibly allege a RICO enterprise

For starters, Plaintiff fails to plausibly allege that Greenberg Dental did anything other than operate a successful dental practice that enriched its owners. Plaintiff's conclusory allegation that "[t]he Greenberg Racketeering Enterprise functioned as a continuing unit and has a common purpose, to advance Joe Greenberg's interests through unlawful activity," Compl. ¶ 845, is an unfounded legal conclusion that falls woefully short of pleading the existence of a RICO enterprise. What Plaintiff is trying to do, but fails miserably to do, is plead that the Defendants formed an association-in-fact RICO enterprise.

"An 'association-in-fact' enterprise is a continuing unit that functions with a common purpose.'" *Cisneros*, 972 F.3d at 1211 (quoting *Boyle v. United States*, 556 U.S. 938, 948 (2009)). To plead an association-in-fact enterprise, a plaintiff must allege facts establishing at least three structural features: (1) a common purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit the associates to pursue the enterprise's purpose. *Boyle*, 556 U.S. at 946; *see also First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174-75 (2d Cir. 2004) (enterprise requirement not met where plaintiff did not allege "solid information regarding the hierarchy, organization, and activities of this association-in-fact enterprise, from which the court could conclude that its members functioned as a unit"). Here, no distinctness, cohesiveness, or coordination between the members of the alleged Greenberg Racketeering Enterprise has been alleged. Plaintiff has not alleged any facts whatsoever to show the existence of an enterprise as

9

opposed to loving parents providing financial support to their son using income derived from the legitimate business operations of Greenberg Dental.

For example, Plaintiff fails to plead any facts that show the Defendants acted with a common purpose to engage in illegal activity. Other than speculating that these entities and individuals, lazily grouped together as the "Greenberg Racketeering Enterprise," "acted for several common purposes, one of which was the extortion and defamation of Dorworth," Compl. ¶ 862, there are no allegations that explain how Greenberg Dental and the other Defendants shared a common purpose to engage in illegal activity or how each associated together for that illegal purpose.

To satisfy the "common purpose" requirement for a RICO enterprise, a plaintiff must establish "not only that there was some commonly shared purpose among [the alleged associates], but also that they *associated together* for that purpose." *Aim Recycling of Fla., LLC v. Metals USA, Inc.*, 18-CV-60292, 2020 WL 209860, at *15 (S.D. Fla. Jan. 13, 2020) (citing *Lockheed Martin Corp. v. Boeing Co.*, 357 F. Supp. 2d 1350, 1362 (M.D. Fla. 2005)). Merely reciting a purported connection between each alleged member of the Greenberg Racketeering Enterprise is not enough. To prove sufficient relationships for an associated-in-fact enterprise, **"the group must function as a continuing *unit*,"** not merely through independent, parallel conduct. *Id.* (citing *Boyle*, 556 U.S. at 948 (emphasis added); *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1068 (11th Cir. 2017)).

10

Plaintiff's allegations do not come close to meeting this requirement. Greenberg Dental's independent conduct of running a successful dental business—which is all that has been alleged—does not in any way infer that it associated with the other Defendants for an unlawful purpose. Nor do Plaintiff's allegations that the Greenbergs "have enjoyed significant wealth as a result of the success of the dental clinics, earning millions of dollars per year," Compl. ¶ 730, and used that wealth to provide financial support to their son support such an inference. Where a business is alleged to be involved in a RICO enterprise, there must be some conduct that goes beyond general, self-interested business activity. *See Cisneros*, 341 F. Supp. 3d at 1373-74 (citing *Parm v. Nat'l Bank of Cal. N.A.*, 242 F. Supp. 3d 1321, 1347 (N.D. Ga. 2017) (finding that the allegations were "more consistent with [the] Defendant conducting its own business initiatives" and were therefore "not sufficient to plead a RICO enterprise"); *Singh v. NYCTL 2009-A Tr.*, 14 Civ. 2558, 2016 WL 3962009, at *10 (S.D.N.Y. July 10, 2016) ("the mere existence of routine business relationships among the defendants is insufficient to establish an 'enterprise' under RICO")). Greenberg Dental conducting self-interested business activities, and making a profit while doing so, is not indicative of a RICO enterprise and may not be treated as such on a motion to dismiss.

Plaintiff has not alleged facts to show that Greenberg Dental conducted anything other than routine business initiatives. According to Plaintiff, "Joel Greenberg told [him] that the dental clinics were essentially run as "pill mills." Compl. ¶¶ 270-271, 731, 733, 814. The glaring issue with these allegations is that

Plaintiff is not alleging Greenberg Dental was, in fact, a "pill mill," but instead that he purportedly heard from Joel Greenberg that it was. Plaintiff concedes that he has no personal knowledge of any facts regarding the operations of Greenberg Dental, and that his allegations are based not on actual facts, but instead on "information and belief." *Id.* ¶ 278. This is not near enough to satisfy Plaintiff's pleading burden under *Twombly*. *See D. P. v. School Board of Palm Beach County*, No. 21-81099-CIV-CANNON/Reinhart 2023 WL 2178384, at *4 (S.D. Fla. Sep. 23, 2023) ("Factually unsupported allegations based 'on information and belief' are not entitled to the assumption of truth.") (quoting *Scott v. Experian Info. Sols., Inc.*, No. 18-CV-60178, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) ("allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.")).

Because Plaintiff failed to satisfy his burden to allege actual facts sufficient to demonstrate the existence of an association-in-fact RICO enterprise between the Defendants, his RICO claims (Counts I-II and IV-V) against Greenberg Dental must be dismissed.

### 2.    Plaintiff does not plausibly allege a pattern of racketeering activity

The Complaint fails to allege a "pattern of racketeering activity" by Greenberg Dental as required for a RICO claim. To establish a pattern of racketeering activity, a plaintiff must allege that "(1) the defendants committed two or more predicate acts within a ten-year time span; (2) the predicate acts were related to one another; and (3) the predicate acts demonstrated criminal conduct of a *continuing* nature." *Jackson*

O4219261.v3

*v. BellSouth Telecommunications*, 372 F.3d 1250, 1264 (11th Cir. 2004) (emphasis in original).

The only offenses which may serve as predicate acts under RICO are the ones listed in 18 U.S.C. § 1961. *See Omnipol, a.S. v. Worrell*, 421 F. Supp. 3d 1321, 1349-50 (M. D. Fla. 2019). "[I]n order to survive a motion to dismiss, a plaintiff must allege facts sufficient to support each of the statutory elements for at least two of the pleaded predicate acts*." Republic of Panama v. BCCI Holdings (Lux.) S.A.*, 119 F.3d 935, 949 (11th Cir. 1997).

The Complaint alleges five (5) predicate acts of purported racketeering activity against the "Greenberg Racketeering Enterprise," including Greenberg Dental. The alleged predicate acts are: (1) extortion in attempts to secure a pardon for Joel Greenberg; (2) violation of 18 U.S.C. § 1503 regarding obstruction of justice by seeking the firing of the Assistant U.S. Attorney handling Joel's criminal case; (3) violation of 18 U.S.C. § 1510 regarding obstruction of a criminal investigation by seeking the firing of the Assistant U.S. Attorney; (4) violation of 18 U.S.C. § 1512 regarding tampering with a witness by coercing A.B. to provide false statements; and (5) violation of 18 U.S.C. § 1512(c) by obstructing, influencing, or impeding the federal investigation by falsely accusing Plaintiff of misconduct. Compl. ¶¶ 855-60. But Plaintiff has not alleged that any Defendant other than *Joel Greenberg himself* actually committed, participated in, or authorized any of these acts. *See* Compl. ¶¶ 373-383, 392-395, 841, 861. Plaintiff failed to plead any facts which would establish

that Greenberg Dental engaged in at least two predicate acts of racketeering as required to state a cause of action under RICO.

Although it's unclear from the unwieldy 115-page Complaint, Plaintiff appears to assert other unlawful acts against Greenberg Dental specifically. *See* Compl. ¶¶ 736 (suggesting that Greenberg Dental violated "numerous state and federal laws", such as unlawfully distributing a controlled substance, conspiring to distribute a controlled substance, mail and wire fraud, and health care fraud).[1] These allegations are likewise insufficient to establish a pattern of racketeering activity because Plaintiff offers no facts to support them beyond what he was supposedly told by Joel Greenberg. Predicate acts of mail fraud and wire fraud under 18 U.S.C. § 1961 must be pled with specificity under Fed. R. Civ. P. 9(b). *See Cisneros*, 972 F.3d at 1216 (predicate acts of mail fraud and wire fraud "must satisfy the heightened pleading standards embodied in Federal Rule of Civil Procedure 9(b)"). Under this heightened standard, Plaintiff is required to allege, with particularity: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010).

---

[1] Assuming Plaintiff is relying on the list of alleged violated federal laws in paragraph 736 of his Complaint as the predicate acts to support his RICO claims, 18 U.S.C. § 1347, health care fraud, is not included in the definition of "racketeering activity" under 18 U.S.C. § 1691(1). Thus, it cannot be relied on in pleading a pattern of racketeering activity.

14

Plaintiff has not come close to meeting this standard in his Complaint. The Complaint does not identify a single purported instance of mail fraud or wire fraud, let alone provide the level of detail that would be required to meet Plaintiff's burden under Rule 9(b). The only allegation in the Complaint that even addresses wire and mail fraud as it relates to Greenberg Dental is the allegation that "Joel Greenberg would make frequent jokes about Greenberg Dental's reputation as a 'pill mill'" and "[p]rescribing unnecessary painkillers and charging the same to government or private insurance is wire fraud, mail fraud, health care fraud, false claim, and/or false statement, among other crimes." Compl. ¶¶ 270, 273. But these allegations are legal conclusions, not facts. The Complaint does not allege any use of the mails or wires by Greenberg Dental, identify the content of any actual statements made to Plaintiff, state when those statements were made or by whom they were made, describe how the statements were false or misleading, or allege how Plaintiff relied on the statements. Despite the seriousness of his claims and the highly punitive nature of the relief he seeks, Plaintiff has literally made no effort at all to allege any predicate acts of racketeering that might plausibly state a cause of action for RICO violations.

Plaintiff likewise has failed to allege that any acts committed by Greenberg Dental constituted a "pattern" of racketeering. "RICO targets ongoing criminal activity, rather than sporadic, isolated criminal acts." *Jackson*, 372 F.3d at 1264. The continuing nature of the criminal conduct has been dubbed the "continuity" element of a pattern of racketeering activity, which is "critical to a valid RICO claim." *Id.* at

15

1265. Continuity may be alleged through "closed-ended" continuity, a series of related predicates extending over a substantial period of time, or "open-ended continuity," a threat of continued repetition. *Id.* The Eleventh Circuit is clear that when RICO allegations concern only "a single scheme with a discrete goal," no closed-ended continuity exists even if "the scheme took place over longer periods of time." *Id.* at 1267; *see also Catano v. Capuano*, No. 18-20223-CIV-TORRES, 2019 WL 3035752, at *4 (S.D. Fla. July 11, 2019) (Torres, Mag. J.) ("[C]losed-continuity cannot exist in this case because the alleged racketeering was related to a *single* scheme with a discrete goal 'to embezzle, divide, and launder more than $2 million in funds that properly belong to the Estate of Mauricio Capuano[.]'").

Plaintiff's RICO allegations involve a single scheme of attempting to secure a pardon for Joel Greenberg, seeking to fire the Assistant U.S. Attorney handling Joel's criminal case, attempting to coerce A.B. to provide false statements, and accusing Plaintiff of misconduct. Compl. ¶¶ 855-60. This single scheme with a narrow scope, a singular objective, and one targeted victim (*i.e.*, Plaintiff) is insufficient to allege closed-ended continuity. *See Jackson*, 372 F.3d at 1267 (citing *Efron v. Embassy Suites (P.R.), Inc.*, 223 F.3d 12, 18 (1st Cir. 2000)). Even if the scheme occurred over several years, moreover, that is not enough to establish closed-ended continuity when the focus remained on a single scheme against a single alleged victim. *See id.*; *see also Daedalus Cap. LLC v. Vinecombe*, 625 F. App'x 973, 976 (11th Cir. 2015) ("[Appellants] cannot show closed-ended continuity because there is only one victim ... and 'only a single scheme with a discrete goal' connecting the

predicate acts." (quotation omitted)). Plaintiff does not allege that the alleged RICO enterprise expanded beyond a single scheme or was targeted at more victims, and thus it fails to allege closed-ended continuity.

Nor can Plaintiff establish open-ended continuity "because there is no *threat* of continuing criminal activity." *Daedalus*, 625 F. App'x at 976 (emphasis added); *see H.J. Inc. v. Nw. Bell Tele. Co.*, 429 U.S. 229, 241 (1989) (defining open-ended-continuity as "past conduct that by its nature projects into the future with a *threat* of repetition"). Here, Plaintiff alleges that Joel Greenberg is presently an inmate incarcerated by the United States Bureau of Prisons serving an 11-year sentence. Compl. ¶¶ 855-60. All of the criminal conduct Plaintiff accuses Joel Greenberg of committing occurred in the past with no threat of continued criminality. Plaintiff does not offer any allegations that the conduct he complains of will continue in the future as necessary to establish open-ended continuity. *See Catano*, 2019 WL 3035752, at *5 (granting summary judgment against plaintiff who failed to provide evidence showing future threat of defendant's alleged racketeering).

### 3.    Plaintiff has not plausibly alleged standing, causation, or damages

Plaintiff does not have standing to bring a RICO claim because he has not sufficiently pled that the claimed racketeering activity was the but-for and proximate cause of the alleged injuries to his "reputation and livelihood." RICO only confers standing on "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). Thus, a plaintiff only has standing if it sufficiently alleges an injury to its own business or property. *Sedima,*

17

*S.P.R.L. v. Imrex* ¶ *146.Co., Inc.*, 473 U.S. 479, 496 (1985); *Beck v. Prupis*, 162 F.3d 1090, 1095-96 (11th Cir. 1998) ("the racketeering activity must be more than simply the 'but for' cause of the injury; it must also be the proximate cause"); *Bivens Gardens Office Bldg., Inc. v. Barnett Banks of Florida, Inc.,* 140 F.3d 898, 906 (11th Cir. 1998) ("a plaintiff has RICO standing only if his injuries were proximately caused by the RICO violation").

The Complaint alleges that the "Greenberg Racketeering Enterprise" participated in extortion to secure a pardon for Joel Greenberg, obstructed justice and a criminal investigation by seeking to fire the Assistant U.S. Attorney, coerced A.B. to provide false statements to law enforcement, and falsely accused Plaintiff of misconduct. Compl. ¶¶ 855-60. Plaintiff provides no explanation whatsoever of how these alleged acts of racketeering activity served as the but-for and proximate cause of Plaintiff's alleged injuries to his reputation and livelihood. (Compl. ¶ 827). The same holds true for Plaintiff's allegations that he heard from Joel Greenberg that Greenberg Dental runs as a "pill mill". Plaintiff does not assert any allegations that he has personal knowledge of Greenberg Dental running a "pill mill," that he personally obtained an unlawful controlled substance from Greenberg Dental, or that he personally suffered damages as a result of the alleged conduct.

Plaintiff's idea of establishing causation is alleging he "was the Managing Partner of the Central Florida Office of Ballard Partners from 2012 until he was forced to leave in the wake of Greenberg's false allegations against him" and that Plaintiff "had no other personal issues or conflicts that would have led to his

18

termination or resignation." Compl. ¶¶ 485, 488. Based on Plaintiff's conclusory allegations, he has failed to show how any alleged act of racketeering committed by Defendants was the direct cause of his alleged damages. *See Ray v. Spirit Airlines, Inc.*, 836 F. 3d 1340, 1349 (11th Cir. 2016) ("The connection between the racketeering activity and the injury can be neither remote, purely contingent, nor indirect."); *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries.")). "Because proof of causation is a threshold statutory requirement in RICO cases, courts must scrutinize proximate causation at the pleading stage." *Feingold v. Budner*, Case No. 08-80539-CIV, 2008 WL 4610031, at *2 (S.D. Fla. Oct. 10, 2008). The Complaint does not allege a direct link—or, indeed, any link at all—between any accusation made by Joel Greenberg and Plaintiff's resignation from Ballard Partners, or, importantly, how Greenberg Dental is connected to these alleged accusations. Plaintiff pleads causation only at the highest order of abstraction and supports his RICO claims only with conclusory assertions. This is unacceptable for purposes of pleading standing, proximate cause, or damages as necessary to support Plaintiff's RICO claims.

### B.    Plaintiff's Shotgun Pleading Fails to Satisfy Rule 8

In his near-1,000 paragraph Complaint spanning over 100 pages, Plaintiff includes many superfluous and scandalous allegations that are impertinent to the causes of action alleged. *See, e.g.,* Compl. ¶¶ 58-69, 371, 376, 634, 641–42, 371. Plaintiff also lumps all the Defendants together without any fathomable direction as

19

to which allegations pertain to which claims or Defendants. In spite of its length, Plaintiff's Complaint should not be confused with quality: "[a] complaint can be long-winded, even prolix, without pleading with particularity. Indeed, such a garrulous style is not an uncommon mask for an absence of detail." *D.H.G. Props., LLC v. Ginn Cos., LLC*, No. 3:09-CV-735-J-34JRK, 2010 WL 5584464, at *6 (M.D. Fla. Sept. 28, 2010). The simple truth is that by filing such an unmanageable and sensational document, Plaintiff is attempting to use the Court as a medium to broadcast alleged wrongdoing committed by only one person: Joel Greenberg. As a result, Greenberg Dental is swept into a deficient shotgun pleading that fails to satisfy even Rule 8's minimum standard. *See Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1273–74 (M.D. Fla. 2009) (finding "group pleading" a basis to dismiss).

Federal courts have routinely dismissed exceedingly lengthy, prolix, and repetitive complaints comparable to Plaintiff's Complaint. *See, e.g., McHenry v. Renne*, 984 F.3d 1172, 1177-78 (9th Cir. 1006) (affirming dismissal with prejudice of 53-page third amended complaint that contained allegations that were "argumentative, prolix, replete with redundancy, and largely irrelevant" rather than "clear and concise averments stating which defendants are liable to plaintiffs for which wrongs"); *Al-Rayes v. Willingham*, 2016 WL 6080826, *3-4 (M.D. Fla. August 15, 2016) (dismissing 66-page second amended complaint that was "lengthy, repetitive, and confusing," and incorporated by reference the same "laundry list of detailed allegations" into each of its nine counts); *Feldman v. Jackson Memorial Hosp.,* 509 F.

20

Supp. 815, 817 (S.D. Fla. 1981) ("Plaintiff's original 54-page Complaint was dismissed without prejudice on the grounds that it was repetitious, redundant and violated Rules 8 and 10 of the Federal Rules of Civil Procedure").

Here, as in these cases, Plaintiff's 115-page Complaint is not a "short and plain" statement of anything, does not inform the Defendants or the Court of the factual basis for Plaintiff's claims, and fails to state any plausible cause of action. Plaintiff's verbose complaint is replete with immaterial allegations, redundancies, excessive detail, and legal conclusions. His indiscriminate overuse of incorporation by reference makes it almost impossible to determine which facts apply to each claim and each Defendant. Plaintiff's failure to follow the most basic rule of pleading has resulted in a complaint that is too difficult to understand and defies any rational response. Defendants should not have to depend on discovery and motion practice simply to decipher the factual basis for Plaintiff's claims. For these reasons, Plaintiff's Complaint must be dismissed for failure to comply with Rule 8.

### C.   The Plaintiff's State Law Claims Should be Dismissed

If the Court decides to accept supplemental jurisdiction over them, Plaintiff's state law claims against Greenberg Dental in Counts VII and VIII of the Complaint for aiding and abetting defamation and civil conspiracy also should be dismissed.

#### 1.   Plaintiff fails to plead aiding and abetting defamation

To state a claim of aiding and abetting, Plaintiff must allege: "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter; and (3) the rendering of

substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Id.* at 543–44 (quoting *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906 (11th Cir. 2012)). Aid-and-abetting liability is not "boundless," rather "courts have long recognized the need to cabin" such "liability to cases of truly culpable conduct." *Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206, 1220 (2023). Such "culpability . . . is necessary" or else "passive actors like banks [will] become liable for all their customers' crimes by virtue of carrying out routine transactions." *Id.* at 1215.

Plaintiff's aiding and abetting claims against Greenberg Dental fail because, assuming Joel or A.B. committed an underlying tort, Plaintiff has not (and cannot) allege that Greenberg Dental was culpable by either knowing about their alleged defamatory actions or by providing substantial assistance to advance those actions. Plaintiff's allegations that Greenberg Dental "provided substantial assistance to Joel Greenberg and A.B. by providing financial resources to enable the defamatory actions, among other actions" (Compl. ¶ 896) are too remote to state a claim. Other than alleging the Greenbergs knew that Joel was troubled or had a difficult childhood, Plaintiff does not allege the Greenbergs, or Greenberg Dental by extension, knew about or assisted in the defamatory statements Plaintiff alleges.[2]

In a hasty attempt to make a claim against Greenberg Dental, Plaintiff equates being a profitable, successful dental company, and providing a source of income to

---

[2] Further, and beyond failing even to allege the Greenbergs or Greenberg Dental knew A.B., Plaintiff's aiding and abetting allegations assume the Greenbergs, and therefore Greenberg Dental, knew and had to discount as falsehoods factual allegations in a demand letter only Plaintiff's counsel apparently received. *Id.* ¶¶ 513, 696.

22

its owners, as aiding and abetting defamation. Compl. ¶ 896. The mere fact that the Greenbergs used income derived from Greenberg Dental to support their adult son does not impose strict liability on the Greenbergs or Greenberg Dental for whatever torts Joel may have committed. Indeed, providing "any assistance of any kind" is not sufficient to create liability. *See Twitter*, 143 S. Ct. at 1220. For example, in *ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*, a developer alleged that the surety which issued a performance bond aided and abetted a bid-rigging scheme. 917 So. 2d 368, 369 (Fla. 5th DCA 2005). Rejecting this theory outright, the Fifth DCA held that the surety did not provide substantial assistance to advance the fraud because the surety simply did what sureties do—issue performance bonds—and did not have any duty to third parties to "look behind the contract" to determine if fraud was being committed. *Id.* at 373–75.

Plaintiff makes identical allegations against the Greenbergs and Greenberg Dental that were rejected in *ZP No. 54 Ltd. P'ship*. Just as issuing performance bonds did not advance an alleged fraud, being a profitable dental practice did not advance an alleged defamation. Providing financial support for an adult child does not imply a duty to ensure the recipient of the funds will never commit a crime; nor does it constitute material assistance to all tortious action that they might later commit. *See Carney*, 751 So. 2d at 654; *Knight v. Merhige*, 133 So. 3d 1140, 1151 (Fla. 4th DCA 2014) (rejecting extension of liability of parent over adult child, holding that, as a public policy matter, "[f]amilies should be encouraged to include a troubled family member in the family circle" and that imposing a legal duty to the family of such

23

children would "discourage families from providing a haven to troubled relatives for fear of civil liability"). Greenberg Dental did not assume a legal duty to protect others by allegedly generating income that was used for Joel's defense or restitution. Thus, Plaintiff's aiding and abetting claim should be dismissed.

### 2.     Plaintiff fails to plead civil conspiracy

Plaintiff's claim for civil conspiracy against Greenberg Dental (Count VIII) should be dismissed because Plaintiff has not alleged facts sufficient to reasonably infer the existence of a conspiracy. A civil conspiracy only exists when two or more persons agree to commit a separately actionable underlying tort or wrong that injures the plaintiff. *Buckner v. Lower Fla. Keys Hosp. Dist.*, 403 So. 2d 1025, 1027 (Fla. 1981); *Cedar Hills Props. Corp. v. Eastern Federal Corp.*, 575 So. 2d 673, 676 (Fla. 1st DCA 1991). To state that claim requires "clear, positive and specific allegations; general allegations of conspiracy are not sufficient." *Parisi v. Kingston*, 314 So. 3d 656, 661 (Fla. 3d DCA 2021). A plaintiff must allege the scope of the conspiracy, its participants, and when the agreement occurred. *See In re Chiquita Brands Intern., Inc. Alien Tort Stat. & S'holder Deriv. Litig.*, 690 F. Supp. 2d 1296, 1311 (S.D. Fla. 2010). And, in pleading a conspiracy, a bare assertion of an agreement, mere knowledge of the wrongful conduct, or an association with conspirators is insufficient to make that claim plausible. *See Honig v. Kornfeld*, 339 F. Supp. 3d 1323, 1345–46 (S.D. Fla. 2018). Even parallel conduct among parties cannot support a plausible inference of an agreement. *Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1068 (11th Cir. 2017); *Honig*, 339 F. Supp. 3d at 1345 ("Without more, parallel conduct does not suggest

24

conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality.").

Contrary to this requirement, Plaintiff has not alleged any facts, much less clear, positive, and specific facts, that would infer the existence of an agreement between Greenberg Dental and any of the other Defendants to conspire to "create, finance, and disseminate false information about [Plaintiff]." Compl. ¶ 901. The Complaint is devoid of allegations related to the scope of the conspiracy, its participants, and when the agreement occurred. Plaintiff's allegation that Greenberg Dental was the source of income for the Greenbergs fall far short of supporting a civil conspiracy claim, Plaintiff's claims for civil conspiracy must be dismissed. [3]

## V.    CONCLUSION

For the foregoing reasons, Greenberg Dental requests an order dismissing, the RICO claims in Counts I-II and IV-V and state law claims in Counts VII-VIII for failure to state a cause of action.

## LOCAL RULE 3.01(g) CERTIICATION

Pursuant to Local Rule 3.01(g), I conferred with counsel for Plaintiff via phone on June 15, 2023, and Plaintiff opposes this Motion to Dismiss.

*/s/ Michael J. Furbush*

---

[3] Plaintiff's conspiracy claim also fails because his underlying defamation claim fails. *See Ovadia v. Bloom*, 756 So. 2d 137, 140 (Fla. 3d DCA 2000). First, Plaintiff does not identify the who, where, when, and what of the defamatory statements he alleges. *Jackson v. N. Broward Cnty. Hosp. Dist.*, 766 So. 2d 256, 257 (Fla. 4th DCA 2000). Plaintiff likely does so because those statements are either time barred, *see Ashraf v. Adventist Health Sys./Sunbelt, Inc.*, 200 So. 3d 173, 174–75 (Fla. 5th DCA 2016), or privileged, *see Fridovich v. Fridovich*, 598 So. 2d 65, 69 (Fla. 1992).

O4219261.v3

Dated:  July 19, 2023

/s/ Michael J. Furbush
Michael J. Furbush
Florida Bar No. 70009
Michaela N. Kirn
Florida Bar No. 1018863
Dean Mead, Egerton, Bloodworth,
CAPOUANO & Bozarth, P.A.
420 S. Orange Avenue, Suite 700
Orlando, FL 32801
Tel: 407-841-1200
Fax: 407-423-1831
mfurbush@deanmead.com (Primary)
mkirn@deanmead.com (Primary)
mgodek@deanmead.com (Secondary)

*Attorneys for Greenberg Dental Associates, LLC,*
*Greenberg Dental & Orthodontics, P.A., and*
*Greenberg Dental Specialty Group, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 19, 2023, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to all CM/ECF participants.

/s/ Michael J. Furbush
Michael J. Furbush