UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| CHRISTOPHER E. DORWORTH,<br><br>     Plaintiff,<br><br>v.<br><br>JOEL MICAH GREENBERG, ANDREW W. GREENBERG, SUE GREENBERG, ABBY GREENBERG, AWG, INC., GREENBERG DENTAL ASSOCIATES, LLC, GREENBERG DENTAL & ORTHODONTICS, P.A., GREENBERG DENTAL SPECIALTY GROUP, LLC, and A.B.,<br><br>     Defendants. | **JURY TRIAL DEMANDED**<br><br>Case No.: 6:23-CV-00871 |

**VERIFIED AMENDED COMPLAINT**

1.    Plaintiff, Christopher E. Dorworth ("Dorworth"), sues Defendants and states and alleges as follows:

2.    Joel Greenberg is a convicted felon and current federal prisoner. He became one of the most corrupt politicians in Florida history by using his position as a county tax collector to steal more than $1.3 Million Dollars through cryptocurrency theft, bribery of public officials, and kickbacks. Greenberg also committed misconduct with a minor.

3.    Greenberg's parents and their companies continued to support Greenberg's racketeering activities throughout and beyond the tenure of his term in office.

4.    After Greenberg was indicted and resigned, he attempted to threaten and extort his way to a preemptive presidential pardon and commutation of criminal charges, and later resorted to extorting Plaintiff and others to seek the termination of the Assistant US Attorney investigating Joel Greenberg.

5.     Joel's wife Abby Greenberg helped to threaten and extort Plaintiff Chris Dorworth by luring his wife to a resort where Joel first broached a pardon for Joel Greenberg's criminal activities to his wife.

6.     When the Greenbergs were unable to extort and bribe Joel's way out of trouble, Defendants turned to numerous acts of perjury, lies, obstruction, false statements, witness tampering, and bribery to induce state and federal prosecutors to falsely charge Plaintiff and other prominent current and former government officials with crimes, all in an attempt to mitigate Joel Greenberg's prison sentence, exact revenge on Dorworth and others for failing to assist their improper activity, and for other improper purposes.

7.     For a period of years, from at least 2020 through 2023, Joel and Abby Greenberg and A.B. provided false testimony and allegations about Dorworth and others to the authorities to obtain cooperation credit for Joel Greenberg.

8.     When Dorworth refused to partake in these unlawful schemes, Defendants falsely accused Dorworth of being involved in, among other things, child sex trafficking, sex with a minor, prostitution, obstruction of justice, and an illegal ghost candidate scheme.

9.     Upon information and belief, the rest of the Defendants supported these activities through payments designed to induce or facilitate this wrongdoing.

10.     All of these falsehoods were thoroughly investigated by Department of Justice ("DoJ"), the FBI, and state prosecutors and investigators over several years, but Dorworth was not charged with anything because he did not commit any misconduct.

11.     As a result of Defendants' actions, Dorworth lost his job, reputation, and business opportunities, incurred expenses in defending himself, suffered distraction of rebutting the charges to the authorities, media, and others, and suffered severe damage to his relationships.

12.     Particularly once Joel Greenberg violated terms of his federal bail and was remanded into custody pending sentencing, he relied upon assistance from the other Defendants in carrying out the acts discussed in this pleading.

13.     Utilizing the money and accumulated power of the Greenbergs and their companies to seek to reduce the prison sentence of Joel Greenberg for criminal acts he conducted, the Defendants sought to damage the reputation of innocent, uninvolved parties who would not participate in illegal efforts to obstruct justice, and also in order to obtain sentencing reductions.

## PARTIES, JURISDICTION AND VENUE

14.     Dorworth is a citizen of Seminole County, Florida. He is a former State Representative, Majority-Leader Designate and Speaker-Designate of the Florida House of Representatives, a prominent businessman, and served as a lobbyist.

15.     Defendant Joel Micah Greenberg is a citizen of Seminole County, Florida. He is the former elected constitutional officer and tax collector of Seminole County, Florida, and is presently an inmate incarcerated by the United States Bureau of Prisons. He is serving an 11-year sentence after pleading guilty to crimes including Underage Sex Trafficking, Wire Fraud, Stalking, Producing a Fake ID Card, and Bribery. Unless the context requires otherwise, "Greenberg" refers to Joel Greenberg.

16.     Defendant Andrew W. Greenberg is an individual and resident of Seminole County, Florida. He is the father of Joel Greenberg and President of Greenberg Dental Associates, LLC, President of Greenberg Dental & Orthodontics, P.A., and principal of AWG, Inc.

17.     Defendant Sue Greenberg is a citizen of Seminole County, Florida. She is the wife of Andrew W. Greenberg and mother of Joel Greenberg.

18.     Defendant Abby Greenberg is a citizen of Seminole County, Florida. She is the current ex-wife of Joel Greenberg, with their divorce filed October 15, 2021, and finalized April 25, 2022, but continues to be compensated by the Greenbergs in exchange for her continued participation in attempts to extort and defame Plaintiff.

19.     Defendant AWG, Inc., is a Florida corporation with its principal address located in Forest City, Seminole County, Florida. AWG, Inc., is the business enterprise of the Greenberg family.

20.     Defendant Greenberg Dental Associates, LLC, is a Florida Limited Liability Company with its principal address in Altamonte Springs, Seminole County, Florida.

21.     Defendant Greenberg Dental & Orthodontics, P.A., is a Florida Professional Association with its principal address in Altamonte Springs, Seminole County, Florida.

22.     Defendant Greenberg Dental Specialty Group, LLC, is a Florida Limited Liability Company with its principal address in Altamonte Springs, Seminole County, Florida.

23.     Herein, Greenberg Dental Associates, LLC, Greenberg Dental & Orthodontics, P.A., and Greenberg Dental Specialty Group, LLC, are collectively referred to as "Greenberg Dental."

24.     The "Greenbergs" refers to Joel Greenberg, Andrew Greenberg, Sue Greenberg, AWG, and Greenberg Dental, unless the context requires otherwise.

25.     When referring to acts performed by Joel Greenberg, Andrew Greenberg, or Sue Greenberg, any funding required for those acts came from AWG and/or Greenberg Dental with the knowledge of what the funding would be used for.

26.     Defendant A.B. is an individual and, upon information and belief, is a resident of the State of Colorado. Upon information and belief, she now works as a porn star.

27.     Upon information and belief, A.B. was compensated by the Greenbergs to provide false testimony for compensation in furtherance of false allegations against Dorworth.

28.     In particular, Dorworth was told in person and via text message by Joel Greenberg that he was paying her attorney's fees.

29.     Upon information and belief, A.B. received other compensation from Joel Greenberg and/or other members of the Greenberg Enterprise.

30.     This Honorable Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims under the Racketeer Influenced Corrupt Practices Act, 18 U.S.C. § 1964, arise under the laws of the United States.

31.     This Honorable Court also has subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

32.     This Court has general jurisdiction over the business entity defendants because they are headquartered in the Middle District of Florida.

33.     This Court has general jurisdiction over all of the defendants because they reside in Florida or, in the case of A.B., resided in Florida at the time of the acts at issue in this case.

34.     This Court also has personal jurisdiction over Defendants because they performed acts in, and caused damages in, the Middle District of Florida.

35.     Venue is proper in this judicial district pursuant to 18 U.S.C. § 1965 and 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in this district and the vast majority of the acts and occurrences complained of occurred in this district.

36.     Venue is also proper in this district because one or more Defendants reside in, or are headquartered in, Seminole County, Florida, and because the cause of action accrued in Seminole County, Florida as set forth throughout this Complaint.

## **GENERAL ALLEGATIONS**

37.     Joel Greenberg committed dozens of crimes, both RICO predicates and non-predicates.

38.     Greenberg systematically abused the resources available to him and the Seminole County Tax Collector's office ("SCTC") and committed dozens of felonies while in office.

39.     Joel Greenberg's full criminal conduct is adequately alleged in four indictments issued in *United States of America v. Joel Micah Greenberg*, Case No. 6:20-cr-97-GAP-LHP-1 (M.D. Fla., June 17, 2020) (Presnell, J.) (Docs. 1, 28, 51, 90).

40.     Unless otherwise indicated, citations to docket entries herein are to filings in either this case or Greenberg's criminal case captioned above.

41.     Each allegation in this pleading is based upon documents, admissions by a party, news reports, information from third party sources, or is inferred from the surrounding circumstances and is likely to have evidentiary support after a reasonable opportunity for further investigation, discovery, and public records requests, some of which is currently pending.

42.     Federal grand jury proceedings relevant to the matters of Greenberg and/or others, were pending or contemplated, beginning in June 2020 or before, and continuing through at least early 2023, when the authorities announced Dorworth would not be prosecuted.

43.     Greenberg's federal criminal proceeding occurred between June 2020, when he was first charged, and December 2022, when Greenberg was sentenced.

44.     Defendants all knew of the grand jury proceedings by the time Joel Greenberg was indicted, when they also learned of Greenberg's criminal proceeding.

45.     Defendants also knew of continuing investigations and grand jury proceedings because several of them had been called to testify, they discussed the same between and amongst themselves, and the press coverage was continuous and extensive, including leaks and discussions of grand jury testimony and proceedings, from 2020 on.

46.     Other criminal proceedings have continued through 2023, including the trial of Michael Shirley, a Greenberg consultant, in July 2023.

47.     At all times relevant, federal investigators were attempting to obtain information for use in federal grand jury proceedings to pursue any possible charges against persons that Greenberg claimed he could help implicate, particularly against high-value targets, such as Dorworth.

48.     As to Dorworth, Greenberg's criminal misconduct began in 2019 and continued through 2023, as alleged below.

### The RICO Pattern Of Racketeering Activity

### Greenberg Engages in a Defamation Campaign Against His Political Opponent, with Dorworth as Collateral Damage

49.     Joel Greenberg was up for reelection in 2020.

50.     Brian Beute filed to run against Greenberg for reelection in October 2019.

51.     Greenberg, posing as a "very concerned student," then sent letters to the school where Beute worked claiming Beute had engaged in sexual misconduct. Original Federal Criminal Indictment, Doc. 1.

52.     Greenberg also created a fake Facebook page of a "very concerned teacher" that claimed Beute was engaged in sexual misconduct with a student. Doc. 1, id.

53.     Greenberg also created a fake Twitter account using the name and photo of the Beute that was then used to express support for white supremacy. Doc. 1, id.

54.     At this time, Dorworth was involved in attempts to develop a piece of land in Seminole County.

55.     Beute opposed this proposed development.

56.     Notwithstanding this disagreement, Dorworth and Beute did not have any personal animosity.

57.     Dorworth was engaged in litigation with Seminole County over the proposed development.

58.     Dorworth claimed that Seminole County's opposition to the proposed development violated the Fair Housing Act, due to a "segregative effect," by excluding racial minorities who might live in the proposed development.

59.     Because the Twitter handle referred to Beute as a "segregationist," Dorworth was suspected by Beute and others as the originator of the defamation and impersonation of Beute.

60.     Greenberg's false posting regarding white supremacy was thus designed to deflect suspicion from himself and create the appearance that all the derogatory information about Beute was being disseminated by Dorworth.

61.     Greenberg was well aware of the lawsuit and its racial themes and later discussed it in a Jailhouse Interview. June 2022 Jailhouse Interview, Exhibit 1 at 99:13-36.

62.     In fact, in late October 2019, a lawyer for Beute wrote lengthy emails to Detective Tirado with the Seminole County Sheriff's Office accusing Dorworth of being involved in the false posts concerning Beute. See October 2019 Emails from Beute Attorney, attached hereto as Exhibit 2.

63.     As a result of Greenberg's actions, Dorworth was investigated for the defamation and false posts against Beute.

64.     As a result, Dorworth and the development project's reputation were hurt, impairing the project's chances of approval.

65.     On June 17, 2020, Greenberg was charged with stalking and unlawful use of means of identification of another person for the crimes arising from the Beute defamation. Doc. 1., id.

66.     The unlawful means of identification of another person charge, 18 U.S.C. § 1028(a)(7), Count Two of the Original Indictment, Doc. 1, is a RICO predicate. See 18 U.S.C. § 1961(1).

67.     The entirety of Greenberg's initial federal charges involved his attempt to implicate Beute in sexual misconduct with a student.

68.     Greenberg later pleaded guilty to this particular conduct.

69.     Greenberg pleaded guilty to Count 24 of the Third Superseding Indictment, which alleges the fake Twitter handle referring to white supremacy, which had the effect of making it appear that Dorworth had created the fake Twitter handle to defame Beute. Doc. 105, Pages 70-74.

70.     Greenberg's response to his initial indictment set in motion a further scheme which targeted Dorworth and others as Greenberg attempted to avoid his own liability by using improper means to obtain pardons, firings of prosecutors, cooperation credit for himself, and to mitigate any exposure for his family.

**Greenberg Presses Dorworth and Others for a Pardon or other Mitigation of his Exposure**

71.     Shortly after the original charges, on July 19, 2020, Joel Greenberg's wife, Abby Greenberg, lured Dorworth's wife, Rebekah Dorworth, to a resort under the false pretense of a pool day for the wives and children only.

72.     In doing so, Abby Greenberg specifically represented to Rebekah Dorworth that Joel Greenberg would not be present with Rebekah and her daughter.

73.     However, while Rebekah Dorworth was on her way to the JW Marriott, Abby Greenberg revealed Joel would be coming to the hotel, but stated he would be golfing.

74.     Abby again assured Rebekah that Joel would not be present with the wives and children.

75.     Upon arrival at the JW Marriott, Rebekah Dorworth and her daughter were to meet Abby at the hotel pool.

76.     However, when the Dorworths arrived, Abby asked Rebekah to come upstairs to the suite.

77.     Contrary to Abby Greenberg's prior assurances, Joel Greenberg was in the penthouse hotel suite and greeted Rebekah Dorworth.

78.     When Rebekah Dorworth asked Abby Greenberg how she was coping, Abby Greenberg smiled and stated seriously to Rebekah, "[her] marriage had never been better."

79.     Abby Greenberg referenced the spending money, vacations, and gifts Joel Greenberg's parents were "taking care of" since Joel's indictment.

80.     In particular, Abby Greenberg told Rebekah Dorworth that Joel's parents were paying for the trip to the resort.

81.     In other words, Susan and Andrew Greenberg and the companies were paying Abby Greenberg and compensating her in exchange for her cooperation in performing improper acts to mitigate Greenberg's liability, as described herein.

82.     Later, while Abby Greenberg and Rebekah Dorworth were at the pool, Joel Greenberg cornered Rebekah Dorworth away from the others and issued a series of threats.

83.     Joel Greenberg demanded that Rebekah Dorworth convince Congressman Matt Gaetz ("Gaetz") and Dorworth to pursue and obtain a preemptive pardon from President Trump for Joel Greenberg's crimes.

84.     At the time, Joel Greenberg had only been indicted for only two felonies, but Defendants were aware of pending investigations and grand jury proceedings that would lead to a total of 33 felony counts.

85.     Greenberg told Rebekah Dorworth that "it would be better for everyone if I (Joel Greenberg) got a pardon."

86.     Joel Greenberg stated that he was concerned that his father, Andrew Greenberg, had criminal exposure because of Andrew's financial involvement in an illegal scheme involving bitcoin investments and the SCTC.

87.     Joel Greenberg stated that Gaetz should know that investigators were looking through his Venmo records and that "he didn't know what any of them would say."

88.     Joel Greenberg indicated that Dorworth, Gaetz, and others would be falsely implicated by Greenberg if Dorworth and Gaetz did not help Joel mitigate his liability by obtaining a pardon.

89.     Joel Greenberg also indicated that he was concerned that Abby Greenberg's participation in misconduct would be revealed if the investigation proceeded.

90.     When informed of Greenberg's demand and threats, Gaetz responded to Rebekah Dorworth that, "it appears Greenberg is trying to make his (Greenberg's) problems everybody else's problems."

91.     In a subsequent conversation with Plaintiff Dorworth shortly thereafter, Joel Greenberg said that he was concerned about his exposure for sexual misconduct with A.B.

92.     Greenberg told Dorworth that he was paying for A.B.'s attorney's fees in an attempt to shape her testimony so that he could avoid charges.

93.     Greenberg also told Dorworth that he and his parents would seek A.B.'s cooperation by "paying her off" and that he had determined that A.B. would accept such inducement.

94.     Greenberg told Dorworth that his family and their businesses would pay any amount necessary to obtain a pardon.

95.     Dorworth explained to Greenberg that Dorworth could not and would not help him with the pardon.

96.     Greenberg then demanded that Dorworth lobby for the prosecutor investigating Greenberg to be fired.

97.     Dorworth again refused to participate in Greenberg's scheme.

98.     Greenberg again threatened to "make this a problem for everyone" by falsely claiming that Dorworth, Congressman Matt Gaetz, and others were involved in Greenberg's criminal actions.

99.     Abby Greenberg lured Rebekah Dorworth to the resort on the false pretense that Joel Greenberg would not be present and interacting.

100.    By doing so, Abby Greenberg acted to assist with Joel Greenberg's scheme of covering up and mitigating Joel Greenberg and others' criminal liability through threats, and later false accusations of impropriety by Dorworth, Gaetz, and others.

101.    Joel Greenberg and Abby Greenberg agreed to cooperate to lure Rebekah Dorworth to the resort to issue a threat that they intended to back up by falsely implicating Dorworth and others in crimes as retaliation for Dorworth and Gaetz' failure to help mitigate the Greenbergs' exposure.

102.    According to Greenberg, Andrew and Sue Greenberg and Greenberg Dental and AWG also agreed with Joel Greenberg and Abby Greenberg to pay any amounts necessary to obtain the pardon or firing of the prosecutor that Joel Greenberg was attempting to extort Dorworth and Gaetz to seek on his behalf.

103.    According to Greenberg, Andrew and Sue Greenberg and their companies wanted to mitigate Joel Greenberg's liability and the scope of the investigation both to assist Greenberg's scheme and also in order to mitigate their own liability and prevent themselves from being drawn into the investigation.

104.    All of the process crimes that Defendants later committed were in furtherance of these original threats to Dorworth and others to enlist them in mitigating the Greenbergs' criminal liability.

105.    Upon information and belief, and according to Greenberg, he had agreed with his parents that they would fund, through their companies, any lobbying, bribes, payments, or legal fees necessary to obtain A.B.'s cooperation in reporting or testifying falsely, or to fund any effort to obtain a pardon.

106.    Greenberg threatened Rebekah Dorworth, Chris Dorworth, and Matt Gaetz in order to induce Chris Dorworth and Matt Gaetz to intercede on his behalf to provide lobbying services in connection with pardon and/or the firing of a prosecutor in order to mitigate his criminal liability.

107.    Although Greenberg has lied about many things, each of Greenberg's threats to Dorworth materialized: among other things, Greenberg's problems became everybody's problems, Dorworth, Gaetz, and others were implicated, and A.B. has said (and continues to say) what Greenberg wants and falsely accuses Dorworth and others. The Greenbergs apparently provided extensive support to Joel Greenberg's efforts, as he indicated they would.

108.    Greenberg's conduct in threatening Dorworth to obtain lobbying services for a pardon or firing of a prosecutor, which Dorworth did not wish to provide, violated many laws, including extortion in violation of Florida Statute 836.05.

**Greenberg and A.B. Attempt to Thwart the Investigation into Greenberg's Misconduct**

109.    On August 14, 2020, Greenberg claimed in a text to Dorworth that A.B. did not wish to speak to the authorities. See Texts Between Greenberg and Dorworth, attached hereto as Exhibit 3.

110.    At this time, Joel Greenberg was aware that the grand jury was investigating him for misconduct with A.B.

111.    Indeed, at this time, the grand jury was about to indict Greenberg for offenses involving A.B.

112.    According to Greenberg, authorities learned of Greenberg's misconduct with A.B. from electronic and other records, and not from A.B. Id.

113.    Greenberg had previously stated that A.B. would do what Greenberg wanted in exchange for material support and attorney fees.

114.    In the texts with Dorworth, Greenberg claimed he was paying for A.B.'s lawyer. Id.

115.    In these texts, Greenberg also acknowledged that Dorworth had "done nothing wrong." Id.

116.    Upon information and belief, when Greenberg stated that A.B. did not wish to speak to the authorities he also meant that he did not wish A.B. to speak to the authorities and had induced her or attempted to induce her to not speak to the authorities or testify before the grand jury. Id.

117.    Greenberg's corrupt attempt to stop A.B. from speaking to federal investigators and testifying before the grand jury violated numerous statutes, including but not limited to, 18 U.S.C. § 1503(a) (corruptly influencing, obstructing, and impeding due administration of justice), 18 U.S.C. § 1510(a) (bribery to obstruct, delay, or prevent communication of information relating to violation of federal law to criminal investigator), and 18 U.S.C. § 1512(b) (corruptly persuading or attempting to persuade another to influence, delay, or prevent testimony in official proceeding).

**Greenberg, Abby, A.B. and others Conspire and Cooperate to Frame Dorworth, Gaetz, and Others**

118.    Greenberg was indicted for misconduct with A.B. shortly thereafter on August 19, 2020. Second Superseding Indictment, Doc. 51.

119.    Once Greenberg's sexual misconduct with A.B. was detected by the authorities and Greenberg was charged, Greenberg corruptly enlisted A.B. in his scheme to frame others, including persons who had not committed any misconduct with A.B. or otherwise.

120.    Upon information and belief, in Fall 2020, at the behest of Joel Greenberg, A.B. and her friend went before a grand jury and falsely implicated Dorworth, Gaetz, and others in sexual impropriety.

121.    Upon information and belief, A.B. and her friend testified before the federal grand jury at the behest of AUSA Todd Gee in Fall 2020.

122.    Upon information and belief, beginning late Summer 2020, Joel Greenberg, A.B. and Abby Greenberg began speaking with federal prosecutors to frame Dorworth, Gaetz, and others.

123.    Greenberg, A.B. and Abby agreed that they would provide false information to the authorities and the federal grand jury regarding Dorworth, Gaetz and others.

124.    Abby Greenberg was particularly concerned about the fact that her husband was the only person being prosecuted and wanted others within their circle to be prosecuted as well.

125.    To this end, Abby agreed to provide, and agreed to assist others in providing, false testimony to the federal grand jury to induce indictment of other persons.

126.    Andrew and Sue Greenberg, as well as AWG and Greenberg Dental, agreed to provide funding to compensate Abby Greenberg and A.B. for providing false reports and testimony to the authorities and the federal grand jury.

127.    Andrew and Sue Greenberg, as well as AWG and Greenberg Dental, also agreed to provide funding for expenses in connection with providing false reports and testimony to the authorities and the grand jury, including legal, investigative, and other expenses.

128.    Defendants' actions violated, among other laws, including but not limited to, 18 U.S.C. §
201(b) and/or (c) (bribery of witness), 18 U.S.C. § 1503 (influencing administration of justice), 18
U.S.C. § 1510(a) (obstruction of investigations through bribery), 18 U.S.C. § 1512(b)(1)
(influencing testimony) and (c)(2) (otherwise influencing proceeding), 18 U.S.C. § 1512(k)
(conspiracy to violate 1512), and  Florida Statutes 817.49 (false report), 837.012 (perjury when
not in an official proceeding), 837.02 (perjury in official proceedings), 837.05 (false reports to law
enforcement authorities), 837.06 (false official statements), 837.055 (false information to law
enforcement during investigation), 914.22 (tampering with a witness).

129.    Here and elsewhere, Dorworth is only alleging that the federal predicates are violated as to
the conduct regarding the federal investigation and grand jury proceeding. As to the state
predicates, they are violated by conduct that impacted both federal and state investigations and
proceedings.

**Greenberg Decides to Redouble and Intensify His Action Against Dorworth and Others
After Trump Leaves Office**

130.    During the time between the November 2020 election and January 2021, Greenberg
continued to press for a pardon through Roger Stone. Joel Greenberg Letter Written for Roger
Stone Says Matt Gaetz Paid for Sex With Minor (thedailybeast.com)

131.    On January 30, 2021, Stone told Greenberg that Gaetz had supposedly opposed
Greenberg's pardon. Id.

132.    With any hope of a pardon off the table, Greenberg's only solution was to implicate others
and pursue cooperation credit, whether or not his victims had actually done anything wrong.

133.    Greenberg therefore determined to redouble his efforts to frame Gaetz, Dorworth, and other
high-value targets.

134.    In late 2020 or early 2021, Congressman Matt Gaetz and Florida Department of Business and Professional Regulation Secretary Halsey Beshears received federal grand jury subpoenas.

135.    It was apparent from these subpoenas that Joel Greenberg was attempting to frame them with the assistance of A.B. and others.

136.    Greenberg and A.B. claimed to the federal grand jury and others that Gaetz, Dorworth, and others had participated in sexual misconduct with A.B.

137.    These grand jury subpoenas were issued based upon statements to the federal grand jury issued by Greenberg, A.B. and/or others at the behest of Greenberg and other members of the Greenberg Enterprise.

138.    During this time period alone, a nonexclusive listing of Greenberg's proffers with the government is as follows: 8/24/2020, 9/14/2020, 9/23/2020, 3/23/2021, 4/1/2021 (two), 4/12/2021, 4/19/2021, 5/3/2021, 6/10/2021.

139.    Greenberg's proffers continued into late 2022; the above list is simply a subset list obtained from an exhibit list in *United States v. Shirley*, 22-CR-123-GAP-DCI (M.D. Fla. July 27, 2023) (Doc. 82).

140.    For example, on October 5, 2021, Greenberg's counsel represented that "Mr. Greenberg will participate in additional proffers," and requested a continuance through March 2022 for that purpose. Doc. 121, Page 2, Para. 5.

141.    Because the filing referred to "sensitive matters concerning ongoing investigations," and Dorworth and others were being investigated at the time, it appears that Greenberg was continuing to proffer against Dorworth and others. Id. at n.1.

142.    Upon information and belief, Greenberg provided false statements, at least in part, during all or most of these proffers, including that Dorworth and others were guilty of crimes with A.B.

143.    All or most of these proffers were in preparation for federal grand jury testimony that Greenberg later provided, wherein he also asserted that Dorworth and others were guilty of crimes with A.B.

144.    In April 2021, Dorworth took a polygraph which showed he did not commit any sexual misconduct. A copy of the April 2021 polygraph is attached hereto as Exhibit 4.

145.    Dorworth supplied the April 2021 polygraph to the DoJ.

146.    Greenberg and A.B. have not recanted or ceased their false allegations against Dorworth after Dorworth supplied the polygraph to the DoJ, and based upon recent statements, apparently maintain their position.

147.    However, with the sexual misconduct charge rebutted by the polygraph, Joel Greenberg and A.B. concocted a second narrative where Dorworth and Gaetz had engaged in obstruction of justice regarding the sexual misconduct charge.

148.    Upon information and belief, Joel Greenberg, A.B., and/or others acting at their behest, sat for interviews with the DOJ and/or in front of the grand jury in Summer 2021 in order to advance the obstruction of justice theory.

149.    However, in September 2021, Dorworth sat for a second polygraph which showed he did not commit any obstruction. A copy of the September 2021 polygraph is attached hereto as Exhibit 5.

150.    Dorworth supplied the September 2021 polygraph to the DoJ.

151.    Meanwhile, upon information and belief, A.B. continued to falsely accuse Dorworth of sexual impropriety to federal and state prosecutors, the federal grand jury and the media, all with the intent of causing Dorworth to be prosecuted, to both assist Greenberg and to pave the way for a shakedown of Dorworth.

152. Upon information and belief, A.B. met with prosecutors several times, including as early as August 2020, and continuing into 2021 and beyond.

153. Upon information and belief, A.B. testified or was requested to testify before the federal grand jury multiple times, including at least once in 2020 regarding Greenberg, again in Fall 2020, and again in 2021 and/or 2022 regarding Dorworth, Gaetz, Beshears, and others.

154. Further, upon information and belief, Andrew and Sue Greenberg agreed, at Joel Greenberg's behest, to provide money and other valuable consideration to Abby Greenberg and A.B. in exchange for their cooperation, and Abby Greenberg and A.B. agreed to participate, at Joel Greenberg's behest, in exchange for that consideration.

155. When they did not immediately procure charges against Dorworth, Joel Greenberg and Abby Greenberg agreed to implicate Dorworth in the "ghost candidate" scandal in Seminole County.

156. On June 23, 2022, Joel Greenberg sat for a transcribed interview with state prosecutors, including Stacey Salmons and Special Agent Supervisor Louis Negret, and Inspector Troy Cope, for an interview at the Orange County Jail. See June 23, 2022 Transcript of Joel Greenberg Interview, attached hereto as Exhibit 1.

157. During that investigation, Joel Greenberg falsely claimed that Dorworth had illegally paid $25,000 to Ben Paris to run against Lee Constantine. Id. at 37:33-40.

158. Lee Constantine is an opponent of Dorworth's proposed development.

159. Joel Greenberg claimed that his wife, Abby Greenberg, had supplied this information to him. Id at 23:29-36.

160.    According to Greenberg, these allegations arose six months prior to the June 2022 interview, and Abby conveyed this information to Greenberg on the phone while he was incarcerated. Id. at 38:6-39:2.

161.    Upon information and belief, the authorities contacted Abby Greenberg, who corroborated Joel Greenberg's accusation, and/or sat before a state grand jury. Id. at 39:18-29, 40:22-41:18 (Cope asking Joel if Abby would speak to them, later asking if Abby was represented and asking that Greenberg not speak to her so as to "taint any future interview.")

162.    In fact, it appears from the dialogue that Abby Greenberg had already sat with the authorities or provided information in the investigation. Id. at 39:18-33 (Joel indicating that Abby had already "come in on" some redacted issue.)

163.    Greenberg also falsely tried to implicate Dorworth in ghost candidate scandals involving Seminole County legislative races, including in the July 23, 2022 transcribed interview with State Prosecutors. Id. 8:14-42, 50:23-24,

164.    During the jailhouse interview, Greenberg also falsely claimed that Dorworth borrowed large quantities of cash from a business associate of his to finance illegal transactions involving drugs and women. Id. at 27:33-49.

165.    On September 12, 2022, Dorworth sat for a third polygraph, which showed he did not borrow cash from the business associate or participate in any ghost candidate scandal. A copy of the September 2022 Polygraph is attached hereto as Exhibit 6.

166.    Dorworth supplied this polygraph to the state authorities to rebut the accusations against him by Joel and Abby Greenberg.

167.    Defendants' actions violated, among other laws, 18 U.S.C. § 201(b) and/or (c) (bribery of witness), 18 U.S.C. § 1503 (influencing administration of justice), 18 U.S.C. § 1510(a)

(obstruction of investigations through bribery), 18 U.S.C. § 1512(b)(1) (influencing testimony) and (c)(2) (otherwise influencing proceeding), 18 U.S.C. § 1512(k) (conspiracy to violate 1512), and  Florida Statutes 817.49 (false report), 837.012 (perjury when not in an official proceeding), 837.02 (perjury in official proceedings), 837.05 (false reports to law enforcement authorities), 837.06 (false official statements), 837.055 (false information to law enforcement during investigation), 914.22 (tampering with a witness).

### Greenberg's Pattern of Racketeering Continues Into at Least Late 2022 and Involves Numerous Other Victims

168.    Joel Greenberg and Abby Greenberg, and upon information and belief, A.B. and others, continued to attempt to frame Dorworth and others throughout 2022.

169.    Greenberg's eagerness to cause other people to be charged was described by his counsel in December 2022:

> **Greenberg lawyer wants others charged**
>
> After the sentencing, Greenberg's attorney Fritz Scheller said he was "disappointed" that the Justice Department hasn't charged anyone else as part of the sex-trafficking investigation, which includes Gaetz.
>
> Scheller previously said in court that Greenberg gave investigators information about seven or eight other men as it pertains to the illegal sexual contact with a minor.
>
> "We expect the federal government to take on the hard cases and not just the easy convictions," Scheller said, urging prosecutors to "pursue others."
>
> "That's what they're there for," Scheller added, saying the Justice Department should hold "higher-level" figures accountable for the sake of democracy.
>
> Scheller said he and Greenberg communicated "fairly recently ... in the past few months" with prosecutors as part of his cooperation in the sex-trafficking investigation.

Joel Greenberg sentenced to 11 years after cooperating with federal probe into Matt Gaetz - CNNPolitics.

170.    First, Greenberg wished to cause Gaetz and others such as Dorworth to be charged for crimes. Id.

171.    As stated elsewhere, Joel Greenberg knew that Gaetz and others were innocent and yet he was trying to frame them.

172.    According to his lawyer, Greenberg gave information about "seven or eight" other men, alleging that they had illegal sexual contact with a minor.

173.    According to his lawyer, and upon information and belief, none of these men were charged with any wrongdoing.

174.    According to his lawyer, Greenberg's accusations against other men were "hard cases" and not just "easy convictions."

175.    Through his counsel's remarks on his behalf and otherwise, Greenberg was continuing to attempt to procure criminal charges against Dorworth and others as of December 2022.

176.    Dorworth is innocent of Greenberg's allegations against them.

177.    Upon information and belief, at least several of the other men that Greenberg accused were also innocent.

178.    Further, and most important, none of the "high level" persons that Greenberg's lawyer referred to, or that Greenberg and A.B. accused, were culpable or charged with anything.

179.    These were "hard cases" and not "easy convictions" because there was no corroborating evidence because Dorworth, for one, was indeed innocent of the allegations Greenberg and A.B. leveled against him.

180.    According to his counsel, Greenberg had met with prosecutors and repeated these false allegations as recently as late 2022.

181.    Greenberg's sentencing had to be continued numerous times over several years to accommodate continued "cooperation." Docs. 117, 121, 125, 137, 141, 147.

182.    As reported by many sources, the reasons for the delays were the investigation into Gaetz, Dorworth, and others.

183.    Cooperation resulting in prosecution of Gaetz, Dorworth, or other high-profile persons would have substantially mitigated Greenberg's sentence, which is why the Government and Greenberg delayed the sentencing and why Greenberg aggressively targeted Dorworth and Gaetz.

184.    Greenberg's decisions to falsely implicate Dorworth and others caused delay and hampered both his own proceeding and proceedings against others.

185.    While Greenberg sent the government on wild goose chases against innocent men, guilty defendants and suspects also had their cases delayed or ignored.

186.    As described by Judge Presnell:

> One of the problems that I have, of course, is that this proceeding has been going on for a considerable period of time. The Government has had a lot of time to -- it seems to me, with the resources available to the Government, they've had a lot of time to conclude some of these other investigations and proceed with them, and they haven't. Why they haven't, I don't know. I'm not privy to that, and I'm really not entitled to that. But it is concerning to me that notwithstanding a long period of cooperation, we still have, admittedly, extensive investigations still ongoing with no end in sight.

Doc. 178, November 30, 2022 Sentencing Transcript 15:8-17.

187.    Thus, according to a Federal District Judge, these inconclusive investigations against Dorworth and others extended over "a considerable period of time." Id.

188.    Further, according to the Federal District Judge, the investigations at Greenberg's behest were, as of late 2022, "still ongoing with no end in sight." Id.

189.    These delays caused primarily by Greenberg, to his own sentencing, to investigation of Dorworth and others, and to other legitimate prosecutions as resources were shifted to Dorworth

and innocent subjects and away from other guilty parties, were enough to concern and frustrate a United States District Judge.

190.    The authorities, especially the FBI and DoJ, wasted massive amounts of time investigating Dorworth and others based upon false allegations issued by Joel Greenberg, Abby Greenberg, and A.B.

191.    Greenberg's proffers continued through at least late 2022, by the admission of his own lawyer.

192.    In February 2023, the DoJ told Gaetz' attorneys that he would not be charged. See e.g. https://www.nbcnews.com/politics/congress/doj-decides-not-charge-rep-matt-gaetz-sex-trafficking-investigation-rcna70839.

193.    Dorworth received similar notice around the same time.

194.    Halsey Beshears was never charged with anything.

195.    Further, Greenberg's pattern of falsely implicating others involved numerous other victims, including at least 7 or 8 men in the federal investigation discussed by his counsel alone.

196.    Further, this pattern involved a similar method of commission of Greenberg lying to federal investigators and to the federal grand jury, and to other state investigators and in other proceedings, and procuring others to do so, all to falsely implicate other men in sex crimes to obtain leniency from the government, to avenge real or perceived slights, and for other improper purposes.

197.    By the time of the July 2023 trial of Mike Shirley, a consultant of the SCTC, the DoJ found Greenberg had lied and falsely implicated so many people that he could not be used as a witness in the trial of Shirley, who he had obtained bribes from.

198.    As suggested by Mike Shirley's lawyer, Greenberg has a history of framing others for crimes.    See    e.g    https://www.clickorlando.com/news/investigators/2023/07/25/80-child-pornography-images-found-in-ex-tax-collector-greenbergs-vehicle-attorney-claims/

199.    All told, the Greenberg Enterprise engaged in a pattern of racketeering acts that had the common theme of disparaging Dorworth and others.

200.    All told, Greenberg caused massive delays to his own case, as well as others, caused federal law enforcement to investigate numerous other persons, including Dorworth, Gaetz, Beshears, and others, and to call numerous witnesses before the grand jury and to delay Greenberg's sentencing repeatedly.

201.    All or nearly all of Greenberg's conduct was conducted for an improper purpose to cause the authorities and the grand jury to investigate innocent people, including Dorworth and others.

202.    This pattern started no later than 2019, when Greenberg falsely accused his political opponent of using a fake name, until 2023 when the investigation against Dorworth and Gaetz ended.

203.    Defendants actions violated, among other laws, 18 U.S.C. § 201(b) and/or (c) (bribery of witness), 18 U.S.C. § 1503 (influencing administration of justice), 18 U.S.C. § 1510(a) (obstruction of investigations through bribery), 18 U.S.C. § 1512(b)(1) (influencing testimony) and (c)(2) (otherwise influencing proceeding), 18 U.S.C. § 1512(k) (conspiracy to violate 1512), and  Florida Statutes 817.49 (false report), 837.012 (perjury when not in an official proceeding), 837.02 (perjury in official proceedings), 837.05 (false reports to law enforcement authorities), 837.06 (false official statements), 837.055 (false information to law enforcement during investigation), 914.22 (tampering with a witness).

**Greenberg's Continued Attempts to Frame Others Were Well Known to Members of the Greenberg Enterprise and Even the General Public, and Greenberg Discussed this Scheme Openly and He was Caught Framing Others During this Time**

204.   At one point, after being involuntarily committed for taking LSD, Joel Greenberg falsely accused an orderly of grabbing his penis while Greenberg was confined to a chair. No evidence supported Greenberg's claim.

205.   This was the beginning of Joel Greenberg's pattern of utilizing allegations of sexual assault to damage those he wishes to harm.

206.   In 2019, Greenberg falsely accused Beute of impropriety with students, as described above.

207.   Also in 2019, Joel Greenberg received a subpoena.

208.   Richard Sierra, an attorney at the SCTC and former uncle of Joel Greenberg, advised Greenberg to comply with the subpoena.

209.   Greenberg attempted to enlist Richard Sierra in covering up his crimes or failing to comply with the subpoena, but Richard Sierra insisted that Greenberg comply with the subpoena.

210.   In 2021, investigators found a thumb drive in Greenberg's car with child pornography.

211.   Greenberg told federal investigators he downloaded the child pornography to frame Sierra. https://www.gazettextra.com/news/nation_world/former-seminole-county-tax-collector-joel-greenberg-collected-child-pornography-to-frame-in-house-attorney/article_8cf77147-458b-53af-992c-c99d1fcfb955.html

212.   Upon information and belief, Greenberg retaliated against Richard Sierra because Sierra did not assist Greenberg in covering up his crimes in response to the subpoena.

213.   Upon information and belief, Andrew and Sue Greenberg learned of this attempt to frame a family member and Joel's attempt to enlist him in defying the subpoena.

214.   At this point, Andrew and Sue Greenberg still agreed to assist Greenberg financially and otherwise in implicating others, including Dorworth, Gaetz, and Beshears, in illegal activity even though they knew that Greenberg was involved in falsely implicating others, including through the illegal acts alleged herein.

215.   Greenberg shared his plans with his associates, people he encountered, the government, and the public, and did not keep secret his illegal scheme to falsely implicate and accuse others.

216.   For example, Greenberg telephoned his friend Joe Ellicott from jail on a recorded line and bragged and joked about Matt Gaetz being pulled into a child sex trafficking investigation.

217.   Joel Greenberg also bragged about his scheme to falsely implicate Matt Gaetz and Dorworth and others to inmate Vladimir St. Louis who he met in a holding cell and during transport between the Orange County Jail and the Federal Courthouse. See April 5, 2021 Letter from Vladimir St. Louis to Attorney Kirshner, Attached Hereto as Exhibit 7.

218.   Joel Greenberg bragged to St. Louis that he "fabricated numerous events" and told investigators that he arranged for A.B. to "hook up" with other people. Id. at 3-4.

219.   When asked by St. Louis what A.B. would say to investigators, Greenberg said that "the girl probably would go along with it." Id.

220.   Furthermore, Greenberg said that A.B. would "go along" with the allegations so that "she can file a lawsuit afterwards." Id. at 4.

221.   Indeed, at or around the time that federal authorities decided not to charge Dorworth and Gaetz, A.B. sent correspondence to Dorworth and Gaetz demanding compensation based upon her false allegations of impropriety and attempting to monetize a presuit settlement, presumably to avoid further publication of any allegations.

222.    Greenberg told St. Louis that he told investigators (falsely) that he arranged an encounter between A.B. and "a former lobbyist for Donald Trump." Id. at 4.

223.    Greenberg was referring to Dorworth as the "former lobbyist for Donald Trump" because Dorworth's firm, Ballard Partners, had lobbied for the Trump Organization.

224.    Greenberg told St. Louis that he was pointing the finger at Republicans because he thought that the prosecutors and investigators were Democrats. Id. at 3.

225.    Greenberg thought that law enforcement would be more likely to believe Greenberg's lies if they were directed toward Republicans. Id. at 3.

226.    When asked by St. Louis why Greenberg was fabricating lies about his colleagues, Greenberg said "that if they were the ones in his shoes, they would fabricate stuff about him as well just to get a time-cut." Id. at 5.

227.    According to the conversation between Greenberg and St. Louis, Greenberg would mitigate the vast majority of his prison sentence if he were able to help secure convictions of persons such as Gaetz and Dorworth. Id. at 3.

228.    Upon information and belief, Joel Greenberg also kept his coconspirators and others informed of his intent, as he spoke about it on recorded lines and openly to other inmates in confinement.

229.    Even after he was charged and disgraced, Joel Greenberg kept a close relationship with his coconspirators. See Jailhouse Interview, Exhibit 1 at 41:35-41 (indicating that he speaks to his mom and dad, has a friendly relationship with Abby).

230.    Greenberg kept a close relationship with Abby Greenberg, who was his former wife, and who knowingly corroborated many of his false allegations and who was kept in the fold through material support from his parents.

231.    Greenberg also kept a close relationship with A.B., who he previously had a sexual relationship with and who he claimed to be able to control by providing material support through his parents and their companies.

232.    Greenberg also kept a close relationship with his parents and their companies, who provided material support for his inducements to others, his attorney fees for his elaborate scheme, and even paid his restitution.

### Summary of RICO Predicates

233.    Through these actions, Defendants engaged and conspired to engage in the violation of numerous federal and state statutes, all through the Greenberg Enterprise, including but not limited to the following:

234.    18 U.S.C. § 1028(7), use of a false use of a means of identification in connection with the Beute defamation and creating an appearance that Dorworth committed the crime, as alleged in the First (and each succeeding) Indictment, Doc. 1, Count II, Page 4.

235.    18 U.S.C. § 1503(a) (corruptly influencing, obstructing, and impeding due administration of justice), 18 U.S.C. § 1510(a) (bribery to obstruct, delay, or prevent communication of information relating to violation of federal law to criminal investigator), and 18 U.S.C. § 1512(b) (corruptly persuading or attempting to persuade another to influence, delay, or prevent testimony in official proceeding), by Greenberg's corrupt attempt to stop A.B. from speaking to the authorities and testifying before the federal grand jury in or about August 2020.

236.    18 U.S.C. § 1503 and 18 U.S.C. § 1512(b)(1), by corruptly attempting to influence the federal grand jury testimony of A.B. to get her to implicate Dorworth and others.

237.    18 U.S.C. § 1503 and 18 U.S.C. § 1512(b)(1), to the extent that Abby Greenberg testified falsely before the federal grand jury in coordination with the other defendants including Joel Greenberg and A.B.

238.    18 U.S.C. § 1503, influencing or injuring officer, by seeking the firing of the Assistant U.S. Attorney handling Joel Greenberg's criminal case in retaliation for the prosecutor investigating and charging Greenberg, and to prevent further federal grand jury proceedings and further charges from the prosecutor.

239.    18 U.S.C. § 1510(a), obstruction of a criminal investigation, by seeking to obstruct the investigation by paying A.B.'s attorney fees and providing other material support in exchange for her false information, and failing to provide any information exculpatory to Dorworth and others that was known to A.B. and responsive to the inquiries and that would rebut the false allegations against him and others.

240.    18 U.S.C. § 201(b) and/or (c), for providing items of value to A.B., and for A.B. accepting the same, in connection with her testimony before the federal grand jury and in contemplation of any proceeding against Dorworth or others.

241.    18 U.S.C. § 1510(a), obstruction of a criminal investigation, by seeking to obstruct the investigation by providing Abby Greenberg material support in exchange for her false information, and failing to provide any information exculpatory to Dorworth and others that was known to Abby Greenberg and responsive to the inquiries and that would rebut the false allegations against Dorworth and others.

242.    18 U.S.C. § 201(b) and/or (c), for providing items of value to Abby Greenberg, and for Abby Greenberg accepting the same, in connection with any testimony before the federal grand jury and in contemplation of any proceeding against Dorworth or others.

243.   18 U.S.C. § 1512(b), regarding tampering with a victim, witness, or informant, by corruptly persuading and inducing A.B. and, upon information and belief, Abby Greenberg, to provide false statements to federal law enforcement.

244.   18 U.S.C. § 1512(c)(2), by obstructing, influencing, or impeding the federal investigation by falsely accusing Dorworth of misconduct in an attempt to punish Dorworth for failing to help Joel Greenberg, cause investigators to include Dorworth and other innocent persons in the investigation, and possibly obtain further cooperation for Joel Greenberg by attempting to induce the government to erroneously charge Dorworth and other persons.

245.   18 U.S.C. § 1512(c)(2), by obstructing, influencing, and impeding official proceedings, including both the grand jury proceedings, Joel Greenberg's own federal criminal case, and other pending matters, by providing false reports to the federal authorities and false testimony to the grand jury, all of which had the result of wasting vast amounts of federal investigative and grand jury time, and repeatedly delaying his own sentencing without the promised benefits of any continued "cooperation" based upon false information.

246.   18 U.S.C. § 1512(k), by conspiring to commit other violations of 18 U.S.C. § 1512.

247.   Florida Statute 836.05 (threats; extortion) by maliciously threatening to accuse Dorworth and others of a crime, or that he would be accused, or his reputation injured, or exposed to disgrace, or allegation of lack of chastity, with the intent to compel Dorworth to obtain a pardon for Greenberg or the firing of the prosecutor against his will.

248.   Florida Statute 817.49 (false report), by falsely alleging commission of crimes by Dorworth and others, when no such crimes had been committed.

249.     Florida Statute 837.012 (perjury when not in an official proceeding), by making false statements, which they did not believe to be true, under oath, including to the FBI, state investigators and prosecutors, and during the jailhouse interview, all in regard to material matters.

250.     Florida Statute 837.02 (perjury in official proceedings), by making false statements, which they did not believe to be true, under oath in official proceedings, including before the federal and state grand juries.

251.     Florida Statute 837.05 (false reports to law enforcement authorities), by providing false information to law enforcement officers concerning the alleged commission of crimes by Dorworth, including in numerous formal and informal interviews, as well as proceedings as described above.

252.     Florida Statute 837.06 (false official statements), by making false statements in writing, including in correspondence to President Trump to secure a Pardon, in the letter Joel Greenberg wrote about Beute, which Joel Greenberg intended to be disseminated to the police, in the jailhouse interview, which Joel Greenberg knew was being transcribed, and to the extent that Joel Greenberg signed any statements provided to him by prosecutors, investigators, or law enforcement.

253.     Florida Statute 837.055 (false information to law enforcement during investigation), by knowingly and willfully giving false information to law enforcement officers conducting a felony criminal investigation with intent to both mislead those offices and impede the investigation.

254.     Florida Statute 914.22 (tampering with a witness), by offering inducements to A.B. and Abby Greenberg, among others, with the intent to induce them to testify untruthfully in official investigations and official proceedings, including state and federal investigations and grand jury proceedings.

**Summary of the Pattern Elements**

255.    Of the racketeering acts, nearly all had the same or similar intent related to falsely implicating Dorworth and others, and/or reducing Joel Greenberg's criminal liability.

256.    Each of the racketeering acts had the similar result of damaging the reputation of Dorworth and others, causing Dorworth to lose his employment, and causing him to expend resources defending himself from investigation.

257.    Each of the racketeering acts had the same accomplices, to wit, the members of the Greenberg Enterprise.

258.    The methods of commission of each of the racketeering acts were similar in that they involved disseminating false information to the authorities to implicate Dorworth and others in crimes.

259.    Defendants' acts were interrelated by distinguishing characteristics of committing process crimes in order to mitigate Greenberg's liability and falsely implicate Dorworth and others.

260.    Defendants' predicate acts extended over a long period of time, beginning in 2019, or, for some, at the very least in 2020, and continuing through late 2022 or even 2023.

261.    Defendants' illegal acts were systematic and not isolated incidents.

262.    Defendant Joel Greenberg participated in all or nearly all of the above acts.

263.    As described herein, Dorworth has been substantially injured by Defendants' racketeering.

## Description of the RICO Enterprise

264. The Greenberg Enterprise is an association-in-fact enterprise as defined by 18 U.S.C. § 1961(4) and 772.102(3).

265. The Members of the Greenberg Enterprise shared a common purpose of mitigating Joel and others' criminal liability by falsely implicating others, were related to each other by family and financial ties as stated herein, and worked together for at least several years.

266. The Greenberg Enterprise is made up of each Defendant in this case: Joel Greenberg, Andrew Greenberg, Sue Greenberg, Abby Greenberg, AWG, Greenberg Dental, and A.B.

267. Joel and Andrew and Sue Greenberg were associated from 1984, when Joel was born to Andrew and Sue Greenberg.

268. The Greenbergs have been associated with Greenberg Dental continuously since the entities making up Greenberg Dental were incorporated between 2009 and 2012.

269. Andrew Greenberg has been associated with AWG, Inc. since 1977 when it was founded.

270. Later, and before the events at issue in this Complaint, Joel Greenberg obtained a significant stake in AWG. Inc.

271. Joel also worked with Greenberg Dental.

272. Sue also worked with and/or obtained stakes in AWG and Greenberg Dental.

273. Abby became associated with Joel and the rest of the Greenberg family when she met Joel and then married him in 2016.

274. A.B. became associated with Joel in 2017 and they conducted a personal relationship.

275. Upon information and belief, Abby and the Greenbergs knew about or became aware of Joel's relationship with A.B.

276. The Greenbergs used monies from Greenberg Dental and AWG to fund their lifestyle.

277.    The Greenberg Enterprise associated to further the Greenbergs' lifestyle.

278.    The Greenberg Enterprise also associated to enable Joel Greenberg's activities, such as running for Tax Collector, maintaining his office, and later, mitigating the consequences of his criminal activity as well as the liability of the other members.

279.    Defendants are related in that, except for A.B., they all are or were members of the Greenberg Family or were Greenberg family companies.

280.    A.B. was related to the Greenberg Enterprise in that she was Joel Greenberg's mistress.

281.    A.B. remained related to the Greenberg Enterprise as she assisted with obstruction crimes from at latest 2020 through at earliest 2022.

282.    Although the Greenberg Enterprise has existed in some form for decades, it had the same membership from 2017 forward and had the same membership at all times relevant to the acts in this Complaint and has remained largely intact until recently or through the present.

283.    Beginning in 2019 and 2020, and continuing through 2023, members of the Greenberg Enterprise all acted to assist with the plan to advance Greenberg's interests by, among other things, cooperating to falsely implicate Dorworth and others in crimes, as alleged above.

284.    Even after Joel Greenberg was charged and his misconduct was known to all, the members of the Greenberg Enterprise, including Abby Greenberg and A.B., continued to associate in order to accomplish the unlawful goals of the Greenberg Enterprise.

285.    Joel Greenberg is the protagonist of the Greenberg Enterprise and coordinated many of its activities.

286.    Andrew and Sue Greenberg control the Greenberg Enterprise by controlling the funding of Defendants' activities.

287.    Abby Greenberg first determined that other persons should be implicated in wrongdoing and directed racketeering activity toward that purpose, and also assisted with the operation of the Greenberg Enterprise.

288.    A.B. directed racketeering activity for the purpose of creating conditions for pursuing a civil recovery against Gaetz, Dorworth, and others, and also assisted with the operation of the Greenberg Enterprise.

289.    The Greenberg Enterprise functions as a continuing unit and acted for several common purposes, including the crimes alleged here which targeted Dorworth and others with false accusations for purposes of benefitting Joel Greenberg, mitigating exposure of Joel Greenberg and other members of the Enterprise, and in A.B.'s case, creating an opportunity for civil claims.

290.    Each of the Defendants is associated with the Greenberg Enterprise.

### The RICO Conspiracy

291.    Defendants conspired to conduct or participate in, directly or indirectly, the Greenberg Enterprise by engaging in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1), 1961(5), and 1962(c), all in violation of 18 U.S.C. §§ 1962(c) and (d).

292.    Joel Greenberg requested and received the support and help from each other Defendant in assisting with his pattern of racketeering activity.

293.    Each Defendant joined the conspiracy no later than Summer 2020 when the Defendants agreed to influence each other's testimony with the common purpose of falsely implicating others including Dorworth.

294.    Andrew and Sue Greenberg, and their companies Greenberg Dental and AWG agreed to provide, and Abby Greenberg and A.B. agreed to accept, compensation in exchange for participating in the process crimes intended to falsely implicate Dorworth and others.

295.    Given Greenberg's low six-figure personal wealth shown on his Amended 2019 Form 6, it would have been impossible for Greenberg to have covered the vast expenses he incurred himself.

296.    Further, Greenberg's access to funds was vastly reduced in 2020, after he was charged, as he lost his job, he was unable to continue stealing, and the Government began imposing restrictions on his activity.

297.    Greenberg could not have paid multimillion dollar restitution amounts, let alone his legal fees, without support from his parents and the companies.

298.    According to Greenberg, Greenberg's parents stood ready and agreed to pay any amount for a pardon or firing of the prosecutor, whether or not such pardon or firing of the prosecutor would be obtained legally or through bribery.

299.    Further, Greenberg certainly could not have provided material support to Abby Greenberg and A.B. without assistance from his parents and the companies.

300.    Upon information and belief, for example, when Joel Greenberg said that he was paying for A.B.'s lawyer, he was either referring to payments made by his parents or their companies, or he was referring to money he had obtained from them for that purpose and with their knowledge of how it would be used.

301.    According to Greenberg, he paid for AB's legal fees, to induce her to corroborate Greenberg's false allegations against others.

302.    Thus, Joel Greenberg required and received support from other members of the Greenberg Enterprise, including Andrew Greenberg, Sue Greenberg, AWG, and Greenberg Dental, both before and after his indictment.

303.    Nearly every act performed by Greenberg required support by the Greenberg Enterprise, which he received.

304.    Greenberg Dental and AWG funded all the activities of the Greenberg Enterprise.

305.    Upon information and belief, AWG is used by the Greenberg family, including Sue, Andrew, and Joel Greenberg, as an alter ego and personal piggy bank, to funnel funds from Greenberg Dental for numerous purposes, including illegal acts described in this Complaint and previous pleadings and in Greenberg's indictments.

306.    Andrew and Sue Greenberg coordinated the material support of the Greenberg Enterprise.

307.    As described more fully below, Andrew Greenberg funded coverups of Greenberg's misconduct.

308.    Upon information and belief, Andrew Greenberg caused Greenberg Dental and/or AWG to pay Joel Greenberg's attorney fees to facilitate Greenberg's defense, which largely consisted of his proffers in preparation for grand jury testimony against Dorworth and others.

309.    Andrew Greenberg and Greenberg Dental and/or AWG knew that Greenberg was using these proffers and his testimony to falsely implicate Dorworth and others.

310.    Knowledge by individual Defendants Andrew Greenberg, Sue Greenberg, and Joel Greenberg is imputed to AWG and Greenberg Dental, as they acted as agents for the companies.

311.    Further, the companies, by making payments under the circumstances, had knowledge of the wrongfulness of their conduct in enabling the racketeering alleged herein.

312.    Upon information and belief, each payment by AWG and/or Greenberg Dental was not a bona fide payment of salary, compensation, dividends, or distributions, but was a specific payment made for the benefit of Joel Greenberg, Abby Greenberg, or A.B. with knowledge that the payments were facilitating improper or illegal conduct.

313.    Upon information and belief, Sue Greenberg assisted Andrew Greenberg with all of his conduct herein.

314.   Upon information and belief, Sue Greenberg encouraged and conspired with Abby Greenberg to assist in the Greenberg Enterprise.

315.   Upon information and belief, in exchange, Sue Greenberg served as Abby Greenberg's paymaster, and provided funds, housing, vacations, and other material support to Abby Greenberg in connection with her assistance to the conspiracy.

316.   Abby Greenberg also agreed to assist in the Greenberg Enterprise because she was aggrieved by the fact that Greenberg was the only person in Central Florida political circles who had been charged, and she wanted others to be charged as well:

> Investigator: Was she at all upset about kind of this crumbling in on you guys, and other people are out there that are not --
> Joel: Yeah.
> Investigator: -- getting in trouble?
> Joel: Yeah.
> Investigator: So would she be friendly if there was something -- would she be friendly to talk to us?
> Joel: Yeah.
>
> . . .
>
> Joel: She has -- there's no love lost.
> Counsel: There's no -- there's no allegiance.
> Joel: There's no allegiance anymore. She -- she doesn't want anything to do with these people, anybody we've discussed.
> Investigator: Okay.
> Joel: She's furious that I'm the one that's taken the fall for a lot of this stuff.
> Counsel: She's very -- informed me that she'd be very receptive to any needs.

Jailhouse Interview, Exhibit 1, at 39:8-20; 40:4-17.

317.   For these reasons, Abby Greenberg has supported the Greenbergs' illegal scheme despite Joel Greenberg's misconduct, the divorce, and the poor situation that Joel Greenberg created for Abby and the children.

318.   Greenberg's parents purchased a home for Abby despite no obligation to do so in exchange for Abby agreeing to implicate others.

319.    As stated by Abby Greenberg to Rebekah Dorworth, the Greenbergs' support vastly increased after Joel Greenberg was charged, and the support provided by Andrew and Sue Greenberg vastly exceeded any support reasonably necessary for the grandchildren or their son's wife.

320.    This increased support was to reward and encourage Abby Greenberg's cooperation with the conspiracy.

321.    Even after Greenberg was jailed in 2021 for violating the conditions of his release, the racketeering activity continued, and Greenberg was able to effectuate his plan.

322.    For example, Greenberg could no longer travel to meetings or even conduct unmonitored telephone calls.

323.    Instead, Greenberg relied upon help from the individual members of the Greenberg Enterprise and on money from AWG and Greenberg Dental.

324.    In particular, Greenberg's family helped to direct others, including Abby Greenberg and A.B., in smearing Dorworth and others through false reports and false testimony to state and federal authorities.

325.    Upon information and belief, the Greenbergs received and paid the bills of the lawyers and therefore knew of all of the activity in the case.

326.    As such, the Greenbergs knew that Greenberg was disseminating false information about Dorworth and others to the authorities and the press.

327.    Upon information and belief, Sue Greenberg and Abby Greenberg helped Joel Greenberg effectuate his plan while he was incarcerated.

**Andrew Greenberg Assists Joel Greenberg in the Crypto Scheme and its Cover Up**

328.   Andrew Greenberg has previously provided material support to assist Joel Greenberg in avoiding responsibility for his crimes, and in some cases, acting as an accessory after the fact.

329.   Among other things, Joel Greenberg stole bitcoin from the Seminole County Tax Collector's office. Third Superseding Indictment, Doc. 90, Pages 10-20.

330.   Joel Greenberg also used Seminole County Tax Collector money to purchase bitcoin that was converted to Greenberg's own use. Third Superseding Indictment, Doc. 90, Pages 10-20.

331.   Greenberg's family, including his father, Andrew Greenberg, was aware of and involved in Greenberg's bitcoin scheme.

332.   As Greenberg had stated to Dorworth in Summer 2020, Andrew Greenberg himself had criminal exposure because of his financial involvement in the illegal scheme involving the bitcoin investments and the SCTC.

333.   According to the federal indictment, a family member later provided funds to Greenberg to  submit a cashier's check to cover Greenberg's theft from the SCTC and escape detection. Doc. 90, Page 14.

334.   Abby Greenberg had previously informed Rebekah Dorworth that the family member who provided Greenberg with the funds to cover the cryptocurrency theft was Defendant Andrew Greenberg.

335.   Defendant Andrew Greenberg provided these funds with the specific intent that they would be used by Joel Greenberg to cover up the theft of cryptocurrency and thereby evade detection by the Secret Service. Doc. 90, Page 14.

336.   Greenberg would have had to have provided a compelling justification to Andrew Greenberg to obtain $200,000, and Andrew Greenberg certainly knew the use of the funds was to aid the bitcoin scheme by helping evade detection and continue misconduct at the SCTC.

337.   According to the Third Superseding Indictment, these funds were used as "a further part of the scheme and artifice to defraud." Doc. 90, Page 14.

338.   These funds were submitted to the "[SCTC] with a cashier's check and a memorandum that falsely represented that "the $200,000 he had diverted had been used 'to provide liquidity for stablecoin project,' that the '[p]roject has been delayed until further notice,' and that the funds were returned." Doc. 90, Page 14.

339.   All this conduct violated 18 U.S.C. § 1343. Doc. 90, Pages 19-20.

### The Pattern of Racketeering in This Complaint Falls Within a Broader Pattern of Systematic, Outrageous, Extensive, Continued, and Unabated Criminality

340.   The particular misconduct alleged in this pleading, which most directly impacted Dorworth, although extensive in and of itself, and easily sufficient to establish each RICO element, falls within a much broader and even longer-term history of racketeering and illegal conduct.

341.   The Federal District Judge described Greenberg's conduct at sentencing:

> He was a public official. And the conduct that he engaged in undermines the public's trust in our governmental system. And all of us -- all of us are victims of a crime or crimes where public trust is abused. And as Mr. Handberg pointed out, Mr. Greenberg continued with his criminal conduct even after he knew he was under criminal investigation and violated the terms of his supervised release imposed by a magistrate judge of this court. It does indicate that Mr. Greenberg, just a year ago, showed no respect for the law because he violated the order of a magistrate judge that allowed him to retain his liberty during the process of this proceeding.

Doc. 180, December 1, 2022 Sentencing Trans. at 45:21-46:7.

342.   Thus, Greenberg committed a continuous and pervasive pattern of RICO acts, even after he was under investigation, and even after he was charged.

343.   Greenberg's misconduct began no later than the very first day he took office and did not end even after he was charged and left the Seminole County Tax Collector's Office, whereupon Greenberg submitted false claims just after obtaining release on bond.

344.    Even when Greenberg was incarcerated, Greenberg's misconduct continued as he enlisted others in process crimes directed at Dorworth and others, and bragged about his framing of others to strangers and friends alike.

345.    As noted by the Government at sentencing, Greenberg's misconduct lasted over four years and was elaborate:

> While that was going on, Mr. Greenberg decided to stalk a political opponent. One of the most terrible things I think you can do to someone who's a teacher is to falsely accuse them of engaging in sexual misconduct with a student. And that's what Mr. Greenberg did. And he did it publicly on Facebook. As I said, this case defies a short, easy summary. And each part of what I just summarized has many more details that I could go into. And each of those establishes that the crimes in this case are very serious. But there's moments, too, that also provide further information. I often think in any criminal case there's moments that are especially important. I'm going to talk about three of them. The first is one you -- I think you might be surprised I would actually reference, which is January 3rd of 2017. That's a date of significance for two reasons. That was the date that Mr. Greenberg assumed office as the Seminole County tax collector. It's also the date that we got the first indication of how he was going to use and abuse the trust he had been given. Prior to becoming tax collector, he had engaged in a transaction with an individual. As part of that, he got their personal information and ordered a driver's license for that person without their knowledge. And in the process of doing that, Mr. Greenberg changed where the driver's license went. He changed it to an address that he could then get the driver's license from. And on his very first day in office, one of the first things he did was he used the DAVID system, the Florida driver's license system, to go in and change that, to change it back to the person's actual address. So from the very beginning, what Mr. Greenberg, I think, showed was he had the intent to use his office in ways that benefited him from day one. And that's something that continued during the entire time that he was the Seminole County tax collector.

Doc. 180, December 1, 2022 Sentencing Trans. at 27:20-30:7.

346.    The Government noted that Joel Greenberg's misconduct continued unabated. Doc. 180, December 1, 2022 Sentencing Trans. at 31:6-24.

347.    Greenberg continued his misconduct even after he began pretending to cooperate with the authorities because he has lied to government investigators about Dorworth and others.

348.    Although the foregoing provides adequate detail to support the claims herein, further detail about these and other schemes by Greenberg and the other Defendants are set forth in the Original Complaint (Doc. 1), and in the Indictments in the Federal Criminal Case (Docs. 1, 28, 51, 90), which are all hereby incorporated herein by reference.

**Allegations Pertinent to Defamation Allegations**

349.    Upon information and belief, Joel Greenberg has defamed Dorworth at each interview with the authorities as set forth above by accusing him of crimes.

350.    Greenberg has also, individually, and through agents, including Defendants, caused these same allegations to be published in the media.

351.    Greenberg has even published such statements to President Trump.

352.    For example, according to the Daily Beast:

> In a pre-emptive 2020 pardon request to then President Donald Trump, the disgraced Seminole County tax collector wrote that Dorworth—identified as a "prominent lobbyist for Ballard Partners"—hosted parties at his home where a number of men, specifically including Gaetz, paid to have sex with young girls, including A.B.

GOP Lobbyist Chris Dorworth in Matt Gaetz Case Accused of Rape in Court Docs (thedailybeast.com)

353.    Upon information and belief, A.B. has defamed Dorworth by alleging to the authorities, before the grand jury, and to the media that Dorworth committed sexual misconduct.

354.    A.B.'s defamation to the authorities regarding Dorworth is set forth above and herein.

355.    On April 8, 2021, Dorworth was contacted by text by a New York Times reporter regarding allegations of sexual misconduct. See New York Times Texts, attached hereto as Exhibit 8.

356.    Upon information and belief, one of the Defendants in this action leaked false and derogatory information about Dorworth to the New York Times.

357.    Further, upon information and belief, A.B. falsely claimed to the New York Times, either directly or through an intermediary, that Dorworth had engaged in sexual misconduct with her.

358.    Upon information and belief, other Defendants here, including Abby Greenberg, Joel Greenberg, and possibly Andrew and Sue Greenberg, provided information to the New York Times reporter, which resulted in the Times reporter contacting Dorworth.

359.    When Dorworth informed his employer, Ballard Partners, that he had been falsely implicated in the investigation, he was nonetheless compelled to resign his $1 million per year role with Ballard.[1] Chris Dorworth, longtime associate of Matt Gaetz, resigns from Ballard Partners (floridapolitics.com)

360.    Dorworth's lobbying practice consisted of many Fortune-500 and government clients.

361.    Lobbyists must publicly disclose their clients, and government entities must generally disclose their expenditures on lobbyists.

362.    These clients are accountable to shareholders, citizens, and the public, and cannot employ a lobbyist who is being investigated for criminal wrongdoing, particularly of the nature alleged by Defendants.

363.    Given the highly competitive nature of lobbying, and the nature of Dorworth's practice and clientele, it would have been impossible for Dorworth to continue to lobby successfully after the allegations that were disseminated by Defendants were publicized.

364.    For these reasons, Ballard had no choice but to require Dorworth's resignation, lest it risk reputational harm and loss of clientele.

---

[1] Any implication from a previous draft of this pleading that Dorworth left Ballard prior to April 9, 2021, is incorrect and stems from a typographical or drafting error by Dorworth in the original pleading.

365.    In fact, Dorworth still suffers business injury from the defamation by Defendants and must further clear his name beyond the obtaining of a nonprosecution decision by the Government.

366.    A.B. and others at her behest continued to defame Dorworth and others with similar allegations for several years afterwards.

367.    For example, according to an article in late 2022, "[t]wo women who attended parties with Greenberg and Gaetz previously told CNN that the men also regularly socialized together at sex parties in the Orlando area that featured local political figures, young women, Venmo payments, alcohol, and drugs, including cocaine and ecstasy." Judge scolds Justice Department for its slow investigations at hearing for Rep. Matt Gaetz's convicted associate | CNN Politics.

368.    Upon information and belief, A.B. was one of the two women who were sources for the story above.

369.    Further, upon information and belief, A.B. also issued similar and false allegations about Dorworth to CNN.

370.    Upon information and belief, A.B. also defamed all persons who she accused of "sex trafficking," particularly to the extent she claimed she was underage.

371.    A.B.'s failure to disclose in all her communications that she had (1) lied about her age and (2) accepted payment for her own misconduct, was highly misleading and defamatory by implication, even if her story were true, which it was not.

372.    In fact, Judge Presnell found that even Greenberg's conduct on this issue was overstated by the Government and A.B. because she was "essentially a prostitute." Doc. 180, Sentencing Transcript 43:1-2.

373.     Abby Greenberg falsely accused Dorworth of being involved in the ghost candidate scheme described above.

374.     Upon information and belief, Abby Greenberg was the source for the New York Times story, which covered the allegation against Dorworth about the ghost candidate scheme.

375.     Abby Greenberg also disseminated information about the false sexual misconduct allegations to the press.

376.     Upon information and belief, Abby Greenberg has disseminated information about the false sexual misconduct allegations to the Daily Beast on multiple occasions.

377.     The Daily Beast has republished false sexual misconduct allegations about Dorworth repeatedly, including most recently when it published such allegations on July 8, 2023. GOP Lobbyist Chris Dorworth in Matt Gaetz Case Accused of Rape in Court Docs (thedailybeast.com)

378.     Defendant Joel Greenberg issued numerous false statements about Dorworth, including, but not limited to the following:

    a.     Falsely averring Dorworth was involved in the scheme to sex traffic minors, as alleged in the RICO Section herein;

    b.     Falsely averring Dorworth had sex with an underage A.B., as alleged in the RICO Section herein;

    c.     Falsely averring Dorworth was involved in an attempt to obstruct justice through witness tampering, as alleged in the RICO Section herein;

    d.     Falsely averring Dorworth was involved in the ghost candidate scheme involving the 2020 Florida Senate District Nine election and incurred campaign finance violations in furtherance of the scheme, Jailhouse Interview, Exhibit 1 at 8:14-42, 50:23-24;

e. Falsely impersonating Dorworth in communications to the employer of Joel Greenberg's political opponent and creating social media accounts made to suggest Dorworth was behind them, as alleged in the RICO Section herein;

f. Falsely describing Dorworth and others as a "mafia" with a criminal agenda, Jailhouse Interview, Exhibit 1 at 10:20-22;

g. Falsely averring Dorworth was having an extramarital affair with his female attorney, Jailhouse Interview, Exhibit 1, Page 31:40-41, and

h. Falsely averring Dorworth borrowed money from Jim Stelling to avoid detection in acquiring prostitutes and drugs. Jailhouse Interview, Exhibit 1 at 27:33-49.

379. Each one of these statements was made by Greenberg, and/or repeated or corroborated by A.B. and Abby Greenberg, with an improper motive to harm Dorworth.

380. Greenberg knew each of these allegations were false, as he sent a text to Dorworth acknowledging that "[y]ou've done nothing wrong." Greenberg Texts, Exhibit 3.

381. Each Defendant acted with improper motive in issuing their respective false statements.

### The Assistance Rendered by the Greenbergs Vastly Exceeded and Varied in Kind from Any Normal or Lawful Assistance from Parents to a Son

382. The Greenberg Enterprise knew of Greenberg's propensity to commit crimes generally and to falsely accuse people of sex crimes in particular, and yet it systematically supported him in such conduct both before and after his indictment.

383. The Greenberg Enterprise has not just supported Joel Greenberg, it has gone far beyond merely keeping Joel Greenberg within the family circle and providing basic support.

384. In fact, the Greenberg Enterprise has supported Joel Greenberg's improper conduct to such an extent that it has repeatedly placed others within the zone of harm of acts that it enabled Greenberg to commit.

385.   Whatever limitations Greenberg had, or however much his parents loved him, they had no right to knowingly assist him in committing crimes.

386.   The Greenbergs were aware of Greenberg's propensity to commit crimes and acknowledged the same.

387.   Many people, including Greenberg's mother, knew that when he stepped into the public arena, he would inevitably commit crimes, as he did.

388.   Despite all of this, the Greenbergs provided extravagant aid to Greenberg, before, during, and most importantly, after his public role, knowing that this aid would be used to commit crimes, including those described herein.

389.   The extent and impropriety of the Greenbergs' aid to Joel Greenberg is shown by their efforts to deny or minimize the aid.

390.   For example, at sentencing, Greenberg's attorney claimed that "[a]s a result of his conduct, he lost his marriage. He lost his children. He was cut out of his parents' will completely. *He's lost all financial support.* And you'll see today his family is not here." Doc. 180, December 1, 2022 Sentencing Trans. at 14:1-4.

391.   However, a seven-figure payment had been made on Greenberg's behalf to Seminole County for Restitution just a week prior. See Settlement Agreement and Checks, attached hereto as Exhibit 9.

392.   Upon information and belief, Greenberg's parents had arranged through intermediaries including AWG and/or Greenberg Dental, to cover Greenberg's restitution before sentencing.

393.   The day before the $1.25 million payment, Greenberg's parents and their companies had negotiated to obtain release for Andrew Greenberg, Susan Greenberg, AWG, Inc. and other

affiliated entities, presumably because the Greenbergs thought they had legal liability in connection with the misconduct. Id.

394.    In fact, Greenberg's counsel had acknowledged in a filing with the federal court that "the restitution issue involves multiple parties." Doc. 117, Page 2, Para. 6.

395.    Based upon the payment and negotiation of the Settlement Agreement, Greenberg's counsel was presumably referring to some or all of the other Defendants here, even though Greenberg was the only person charged in his case.

396.    Two weeks after sentencing, another six-figure payment was made on Greenberg's behalf to Seminole County. Exhibit 9, id.

397.    Upon information and belief, and based upon Greenberg's amended financial disclosures, Greenberg lacked the funds to make this payment, and the Greenbergs covered it for him.

<u>**COUNT I**</u>
**Federal Civil RICO, 18 U.S.C. § 1962(c), Substantive RICO Violations**
**(Against Defendant Joel Greenberg)**

398.    Dorworth hereby incorporates herein the General Allegations above, in particular, "The RICO Pattern Of Racketeering Activity," and "Description of the RICO Enterprise."

399.    Defendant is a person as defined by 18 U.S.C. § 1961(3).

400.    The Greenberg Enterprise is an association in fact enterprise as defined by 18 U.S.C. § 1961(4) and 1962(c), of Joel Greenberg, Andrew Greenberg, Sue Greenberg, Abby Greenberg, Greenberg Dental, AWG, and A.B.

401.    Defendant Joel Greenberg is associated with, and benefits from, this enterprise.

402.    At all times material, Defendant Joel Greenberg and other members of the Greenberg Enterprise engaged in activities that affect interstate commerce, including, by way of example only, use of interstate communications and banking to effectuate the acts alleged in this pleading.

The activities of alleged herein impacted persons who frequently travel in interstate commerce, were directed in part at out-of-state actors (officials in Washington and elsewhere), and were reported in the national news.

403. Since at least 2019 and continuing to the present, Defendant Joel Greenberg conducted or participated in, directly or indirectly, such enterprise by engaging in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1), 1961(5), and 1962(c).

404. Defendant Joel Greenberg's pattern of racketeering activity consists of the various predicate acts set forth in the "Pattern of Racketeering Activity" section of this Complaint.

405. Defendant Joel Greenberg engaged in each of the acts described in the Third Superseding Indictment and set forth throughout this Complaint and incorporated herein by reference.

406. Of these incidents, at least two had the same or similar intent related to reducing or eliminating Joel Greenberg's criminal liability, the same or similar intent related to sex trafficking, results, accomplices, methods of commission, or were interrelated by distinguishing characteristics and were not isolated incidents. Defendant Joel Greenberg participated in all the above acts.

407. The Greenberg Enterprise functioned as a continuing unit and with a common purpose, to advance Joel Greenberg's and others' interests through unlawful acts targeted at damaging the reputation, and causing prosecution of, innocent persons including Dorworth and others.

408. Each above-mentioned crime victimized Dorworth by causing a substantial financial loss and impacting his reputation, business ventures, and marriage.

409. Dorworth's substantial loss and injury is directly and proximately caused by the violations listed above.

410. Pursuant to 18 U.S.C. 1964(c), Dorworth is entitled to treble damages, his costs of bringing this action, including attorney fees, and all other relief the Court deems just and proper.

## COUNT II
### Federal Civil RICO, 18 U.S.C. § 1962(d), RICO Conspiracy
### (Against all Defendants)

411.    Dorworth hereby incorporates herein the General Allegations above, in particular, "The RICO Pattern Of Racketeering Activity," "Description of the RICO Enterprise," and "The RICO Conspiracy."

412.    Defendants Joel Greenberg, Andrew Greenberg, Sue Greenberg, Abby Greenberg, A.B., Greenberg Dental, and AWG, Inc., are persons as defined by 18 U.S.C. § 1961(3).

413.    The Greenberg Enterprise is an enterprise as defined by 18 U.S.C. § 1961(4) and 1962(d). Each of the Defendants is associated with, and benefits from, the enterprise.

414.    At all times material, Defendants were engaged in activities that affect interstate commerce, including, by way of example only, use of interstate communications and banking to effectuate the acts alleged in this pleading. The activities of alleged herein impacted persons who frequently travel in interstate commerce, were directed in part at out-of-state actors (officials in Washington and elsewhere), and were reported in the national news.

415.    In violation of 18 U.S.C. § 1962(d), Defendants knowingly, willfully, and unlawfully conspired to facilitate a scheme that included engaging in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

416.    The conspiracy has been in effect since at least 2019 and remains ongoing.

417.    The conspiracy's purpose was to engage in a pattern of racketeering activity with an objective of reducing or eliminating Joel Greenberg's criminal liability through extortion, obstruction of justice, obstruction of a criminal investigation, and more.

418.    Defendant Joel Greenberg's pattern of racketeering activity consists of the various federal predicate acts set forth in the "Pattern of Racketeering Activity" section of this Complaint.

419.    Defendant Abby Greenberg participated in the extortion of Dorworth and making false representations when Dorworth did not yield to Joel Greenberg's threats.

420.    Abby Greenberg also engaged in the obstruction of justice by also seeking the firing of the Assistant U.S. Attorney handling Joel Greenberg's case.

421.    Defendant A.B. knowingly falsified her testimony and statements to the government to implicate Dorworth, knowing those statements were false and only had an effect of hurting Dorworth, due to inducement provided by Greenberg.

422.    The remaining Defendants knowingly and repeatedly provided substantial financial support for the unlawful activities and conspired to facilitate the scheme.

423.    Once Greenberg's unlawful activity was known to both all involved and the entire world, members of the Greenberg Enterprise agreed to and continued to commit the predicates acts set forth in this pleading to frame Dorworth as shown herein.

424.    Each Defendant agreed and conspired to commit the acts set forth in "The Pattern of Racketeering Activity" and the "Description of the Enterprise."

425.    Each Defendant helped to advance the overall objective of the conspiracy.

426.    The resulting harm to Dorworth was a reasonably foreseeable consequence of the conspiracy.

427.    Dorworth's substantial loss and injury is directly and proximately caused by the unlawful conduct of Defendants and their violation of 18 U.S.C. § 1962(d).

428.    Pursuant to 18 U.S.C. § 1964(c), Dorworth is entitled to treble damages, his costs of bringing this action, including attorney fees, and all other relief the Court deems just and proper.

## COUNT III
### Florida Civil RICO, Florida Statute 772.103(3), Substantive RICO Violations
### (Against Greenberg)

429.    Dorworth hereby incorporates herein the General Allegations above, in particular, "The RICO Pattern Of Racketeering Activity," and "Description of the RICO Enterprise."

430.    The Greenberg Enterprise is an association-in-fact enterprise within the meaning of Fla. Stat. 772.102(3).

431.    Joel Greenberg associated with the Greenberg Enterprise as described in the Description of the Enterprise section above.

432.    Joel Greenberg's conduct constituted a pattern of criminal activity against Dorworth within the meaning of Fla. Stat. 772.102(4), because each crime had the common intent of damaging Dorworth's reputation and subjecting him to investigation.

433.    Each above-mentioned crime victimized Dorworth by causing a financial loss.

434.    Dorworth's injury is directly and proximately caused by Greenberg's conduct and crimes against Dorworth.

435.    Pursuant to Fla Stat 772.104, Dorworth is entitled to treble damages and his costs of bringing this action, including attorney fees.

## COUNT IV
### Florida Civil RICO, Florida Statute 772.103(4), RICO Conspiracy
### (Against all Individual Defendants)

436.    Dorworth hereby incorporates herein the General Allegations above, in particular, "The RICO Pattern Of Racketeering Activity," "Description of the RICO Enterprise," and "The RICO Conspiracy."

437.    The Greenberg Enterprise is an association-in-fact enterprise within the meaning of Fla. Stat. 772.102(3).

438.    Defendants associated with the Greenberg Enterprise, as described in the Description of the Enterprise section above.

439.    Defendants agreed and conspired to commit each of the predicate acts described in the Pattern of Racketeering Activity and Description of the Enterprise section above.

440.    Greenberg's conduct constituted a pattern of criminal activity against Dorworth within the meaning of Fla. Stat. 772.102(4), because each crime had the common intent of damaging Dorworth's reputation and subjecting him to investigation.

441.    Each above-mentioned crime victimized Dorworth by causing a financial loss.

442.    Dorworth's injury is directly and proximately caused by Defendants' conduct and crimes against Dorworth.

443.    Pursuant to Fla Stat 772.104, Dorworth is entitled to treble damages and his costs of bringing this action, including attorney fees.

### COUNT V
### Defamation
### (Against Defendants Joel Greenberg, A.B., and Abby Greenberg)

444.    Dorworth hereby incorporates herein the General Allegations above, particularly the "Allegations Pertinent to the Defamation Allegations."

445.    Defendants Joel Greenberg, Abby Greenberg, and A.B. made false and defamatory statements against Dorworth.

446.    Defendant Joel Greenberg made numerous false statements, including, but not limited to the following:

    a.    Falsely averring Dorworth was involved in the scheme to sex traffic minors;

    b.    Falsely averring Dorworth had sex with an underage A.B.;

c.      Falsely averring Dorworth was involved in an attempt to obstruct justice through witness tampering;

d.      Falsely averring Dorworth was involved in the ghost candidate scheme involving the 2020 Florida Senate District Nine election and incurred campaign finance violations in furtherance of the scheme;

e.      Falsely impersonating Dorworth in communications to the employer of Joel Greenberg's political opponent and creating social media accounts made to suggest Dorworth was behind them;

f.      Falsely describing Dorworth and others as a mafia with a criminal agenda;

g.      Falsely averring Dorworth was having an extramarital affair with his female attorney; and

h.      Falsely averring Dorworth borrowed money from Jim Stelling to avoid detection in acquiring prostitutes and drugs.

447.   Defendant A.B. also made false statements regarding Dorworth, including:

a.      Falsely averring Dorworth was involved in the scheme to sex traffic minors;

b.      Falsely averring Dorworth had sex with an underage A.B.

448.   Defendant Abby Greenberg also made false statements regarding Dorworth, including that Dorworth engaged in a ghost candidate scheme, and further disseminated sexual misconduct allegations regarding Dorworth to the media.

449.   Defendants each participated in the dissemination of information with either knowledge of its falsity or reckless disregard for the truth.

450.   The above-described statements convey a defamatory meaning. They were made with actual malice and for the express purpose of harming Dorworth.

451.    Defendants made these statements without privilege or justification.

452.    To the extent Defendants issued allegations to the government, they had an improper purpose in doing so because they knew the allegations were false and they were simply trying to harm or extort Dorworth or participate in a misguided attempt to mitigate Greenberg's sentence.

453.    The above statements directly injured Dorworth by diminishing his reputation and causing him to lose his job, and by causing anguish, distraction, and disruption of Dorworth's relationships.

454.    As a direct and proximate result of Defendants' false statements, Dorworth has been significantly injured, including, but not limited to, suffering a substantial financial loss and damage to his reputation and livelihood.

455.    Defendants acted with malice toward Dorworth because they knew their allegations were false and would harm Dorworth.

456.    Dorworth is entitled to a judgment for compensatory damages, costs of suit, and all other relief the Court deems just and proper.

<u>**COUNT VI**</u>
**Aiding and Abetting Defamation**
**(Against Andrew Greenberg, Sue Greenberg, Abby Greenberg,**
**Greenberg Dental, and AWG, Inc.)**

457.    Dorworth hereby incorporates herein the General Allegations above, particularly the "Allegations Pertinent to the Defamation Allegations."

458.    Defendants Joel Greenberg, Abby Greenberg, and A.B. repeatedly defamed Dorworth.

459.    Defendants Andrew Greenberg, Sue Greenberg, Abby Greenberg, Greenberg Dental, and AWG, Inc., each possessed knowledge of Joel Greenberg, Abby Greenberg, and A.B.'s defamation.

460.    Defendants each provided substantial assistance to Joel Greenberg and A.B. by providing financial resources to enable the defamatory actions, among other actions.

461.     Defendants provided these resources with the knowledge and intent that they would be used to harm Dorworth, among other things.

462.     Defendants also provided suggestions to each other to assist with the defamation. For example, Abby Greenberg provided the suggestion regarding the ghost candidate scandal to Joel Greenberg and others.

463.     As a result of Defendants' aiding and abetting defamation, Dorworth has been significantly injured, including, but not limited to, suffering a substantial financial loss and damage to his reputation and livelihood.

464.     Dorworth is entitled to a judgment for compensatory damages, costs of suit, and all other relief the Court deems just and proper.

**COUNT VII**
**Civil Conspiracy**
**(Against all Defendants)**

465.     Dorworth hereby incorporates herein the General Allegations Above, particularly "The RICO Conspiracy."

466.     Defendants conspired to create, finance, and disseminate false information about the Dorworth.

467.     Defendants agreed to, and knowingly did, disseminate or assist in disseminating false information about Dorworth.

468.     Each Defendant was aware of an overall plan to harm Dorworth's reputation, business, and livelihood.

469.     Each Defendant acted to further the plan to harm Dorworth's reputation.

470.     This activity violates Chapters 772 and 836, Florida Statutes.

471.     This activity also violates the Federal RICO predicates listed above.

472.    Defendants' activity also violates the RICO statutes itself, as set forth above.

473.    Defendants also committed false statement 18 U.S.C. § 1001, and defamation, Florida Statute 836.09 (communicating libelous matter to newspapers).

474.    As a direct and proximate result of the conspiracy, Dorworth has been significantly injured, including, but not limited to, suffering a substantial financial loss and damage to his reputation and livelihood.

475.    Defendants intentionally, willfully, and wantonly conspired and acted in concert with one another to disregard the rights of Dorworth.

476.    Dorworth is entitled to a judgment for compensatory damages, costs of suit, and all other relief the Court deems just and proper, against each Defendant, jointly and severally.

**COUNT VIII**
**Declaratory Relief**
**(Against A.B.)**

477.    Dorworth hereby incorporates herein the General Allegations above, particularly the "Allegations Pertinent to the Defamation Allegations."

478.    Dorworth seeks a declaration of this Court that Dorworth has not had sexual contact with A.B. at any time; that Dorworth has not solicited, paid, or otherwise compensated A.B. for sexual acts; and that he is not liable to her for any allegations of the same.

479.    At the end of 2022, A.B. sent a demand letter to Dorworth and falsely accused him of sexual misconduct and threatened to initiate litigation unless a payment was made.

480.    Dorworth's attorney promptly responded to A.B. and comprehensively refuted her allegations.

481.    Nonetheless, A.B. has not withdrawn her allegations or offered any assurance that they will not be repeated, either in criminal investigations, civil litigation, or to the media.

482.     In fact, during 2023 A.B. has continued to threaten Dorworth and others with litigation over her false claims.

483.     Further, A.B. has continued to disseminate these false claims and will continue to do so until they are adjudicated false.

484.     A.B. continues to issue accusations against Dorworth and/or brandish the threat of litigation against Dorworth as recently as June 2023 in court filings on this docket. See e.g. Doc. 46, Pages 2, 4, 9, 11, 23, 24, see also *GOP Lobbyist in Gaetz Case Accused of Rape in Court Docs,* Daily Beast, July 7, 2023, available at: GOP Lobbyist Chris Dorworth in Matt Gaetz Case Accused of Rape in Court Docs (thedailybeast.com)

485.     The asterisked footnote at Page 2 of the Case Management Report was added at the behest of A.B.'s counsel, who continue to announce their intent to bring counterclaims based upon A.B.'s allegations, which they claim are "mandatory." Doc. 49, Page 2.

486.     As stated in this Complaint and elsewhere, these allegations against Dorworth are false, defamatory, and damaging to Dorworth.

487.     The December 30, 2022, Letter from A.B.'s counsel threatening litigation demonstrates the existence of a bona fide, actual, and present dispute between A.B. and Dorworth.

488.     Despite brandishing the threat of litigation against Dorworth and others, A.B. fails to initiate any litigation because her claims are false.

489.     This entitles Dorworth to declaratory relief.

490.     The declaratory action deals with a present, ascertained, or ascertainable state of facts or present controversy as to a state of facts.

491.     Some immunity, power, privilege or right of Dorworth and/or A.B. is dependent upon the facts or the law applicable to the facts, that is whether he liable to A.B., whether A.B. is liable to

him, and whether A.B. is entitled to claim in the press or in legal documents that Dorworth is liable to her or committed misconduct.

492.    The relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.

493.    Instead, Dorworth's employment, peace of mind, and job and business prospects have been undermined by these baseless accusations by A.B. and her threats to initiate litigation and/or issue public accusations or cause dissemination of the same at any time.

494.    For example, Dorworth is hampered in any attempt to undertake efforts to resume lobbying with a large firm, engage government or public company clients, or engage in investment deals, only to have those ventures grind to a halt again if A.B. decides to initiate litigation or publicize false allegations against him.

495.    Thus, Dorworth is entitled to an adjudication of A.B.'s claims against him so that he may put the matter to rest, dispel allegations against him, and go on with his life.

496.    Dorworth respectfully requests this Court issue a Judgment declaring that Dorworth has not had sexual contact with A.B. at any time; that Dorworth has not solicited, paid, or otherwise compensated A.B. for sexual acts; and that he is not liable to her for any allegations described in this pleading, along with costs of suit, and all other relief the Court deems just and proper.

### GENERAL PRAYER FOR RELIEF

497.    WHEREFORE, Plaintiff Chris Dorworth respectfully requests an order of this Court entering judgment in his favor and awarding the following:

    a.    Compensatory damages in an amount to be determined at trial, against each defendant, jointly and severally;

b.      Treble damages as allowed by 18 U.S.C. § 1964(c) and Florida Statute 772.104, against each defendant, jointly and severally;

c.      A declaratory judgment order that Dorworth is not liable to A.B., consistent with the relief requested Count VIII immediately above;

d.      Reasonable attorney fees pursuant to 18 U.S.C. § 1964(c) and Florida Statute 772.104(1);

e.      Costs and expenses incurred in this litigation; and

f.      Such other and further relief as the Court deems just and warranted.

## JURY TRIAL DEMAND

498.    Plaintiff demands trial by jury as to all counts so triable.

Filed:  August 8, 2023.                    Respectfully Submitted,

/s/Michael Paul Beltran
Michael P Beltran
Fla. Bar No. 0093184
Beltran Litigation, P.A.
4920 West Cypress St. Suite 104 PMB 5089
Tampa, FL 33607
813-870-3073 (o)
mike@beltranlitigation.com
*Counsel for Dorworth*

## CERTIFICATE OF SERVICE

I will file a copy of the foregoing on the Court's electronic system, which will send a copy to all counsel of record.

/s/Michael Paul Beltran
Michael P Beltran

## VERIFICATION

Under penalties of perjury, I declare that I have read the Verified Amended Complaint, that I agree with the document, and that the facts stated therein are true.

Date: August 8, 2023.

Christopher E. Dorworth

Date: August 8, 2023.

Rebekah Dorworth

(Verification made pursuant to Fla. Stat. § 92.525(2); see *State v. Shearer*, 628 So.2d 1102 (1993) ("In addition to a notarized oath such as the one in rule 3.987, however, section 92.525, Florida Statutes (1991), provides that a signed declaration can substitute for a notarized oath if it contains the following language: 'Under penalties of perjury, I declare that I have read the foregoing [document] and that the facts stated in it are true.'"))