**Exhibit A**

IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
IN AND FOR SEMINOLE COUNTY, FLORIDA,
CIVIL DIVISION

CHRISTOPHER E. DORWORTH,

      Plaintiff,

v.

JOEL MICAH GREENBERG, ANDREW W.
GREENBERG, SUE GREENBERG, ABBY
GREENBERG, AWG, INC., GREENBERG
DENTAL ASSOCIATES, LLC, GREENBERG
DENTAL & ORTHODONTICS, P.A.,
GREENBERG DENTAL SPECIALTY GROUP,
LLC, and A.B.,

      Defendants.

**JURY TRIAL DEMANDED**

Case No.: 2023-CV-_____

**VERIFIED COMPLAINT**

COMES NOW the Plaintiff, Christopher E. Dorworth ("Dorworth"), by and through counsel, and for his Complaint against Defendants states and alleges as follows:

1.     Joel Greenberg is a convicted felon and current federal prisoner. He became one of the most corrupt politicians in Florida history by using his position as a county tax collector to steal more than One Million Dollars from the taxpayers of Seminole County through cryptocurrency theft, bribery of public officials, and kickbacks. He also used the power of his office to engage in a child sex trafficking scheme.

2.     For years, Joel Greenberg, his parents, spouse, and family business entities have sought to enrich themselves through a pattern of racketeering activities.

3.     Plaintiff Chris Dorworth is a victim of one or more of these racketeering enterprises, having been threatened and extorted by the enterprise to pursue (1) a pardon for Joel

1

Greenberg's criminal activities and/or (2) termination or reassignment of the Assistant United States Attorney handling the investigation.

4.        When Dorworth refused to partake in these unlawful schemes, the Greenberg family, through the racketeering enterprise, falsely accused Dorworth of being involved in, among other things, child sex trafficking and an illegal ghost candidate scheme. As a result of the Enterprise's actions, Dorworth lost his job, reputation, and more.

5.        Joel Greenberg is a predator, not just of women, as his conviction for human trafficking reflects, and not just for alleging that his political opponent was a child molester. Greenberg preyed on the taxpayers of Seminole County, enriching himself via racketeering activities.   When Joel Greenberg's illegal behavior was finally exposed, he then turned his predatory power on former "friends," including Plaintiff Dorworth, when Dorworth was unwilling to participate in a scheme to obtain a preemptive pardon to avoid facing future charges, and later when Dorworth refused to participate in having the Assistant United States Attorney that was investigating Greenberg fired.

## PARTIES, JURISDICTION AND VENUE

6.        Dorworth is an individual and resident of Seminole County, Florida. He is a former State Representative, Majority-Leader Designate and Speaker-Designate of the Florida House of Representatives, a prominent businessman, and served as a lobbyist prior to leaving the profession in March 2021 because of the Greenberg Racketeering Enterprise described herein.

7.        Dorworth has retained undersigned counsel and is obligated to pay a reasonable fee for his services.

8.        Defendant Joel Micah Greenberg is an individual and resident of Seminole County, Florida. He is the former elected constitutional officer and tax collector of Seminole County,

Florida, and is presently an inmate incarcerated by the United States Bureau of Prisons. He is serving an 11-year sentence after pleading guilty to crimes including Underage Sex Trafficking, Wire Fraud, Stalking, Producing a Fake ID Card, and Bribery.

9.     Defendant Joel Greenberg is a participant in the Greenberg Racketeering Enterprise.

10.    The Greenberg Racketeering Enterprise is also comprised of members of Joel Greenberg's family and two associated business entities, described below.

11.    Defendant Andrew W. Greenberg is an individual and resident of Seminole County, Florida. He is the father of Joel Greenberg and serves as President of Greenberg Dental Associates, LLC, President of Greenberg Dental & Orthodontics, P.A., and principal of AWG, Inc.

12.    Defendant Sue Greenberg is an individual and resident of Seminole County, Florida. She is the wife of Andrew W. Greenberg and mother of Joel Greenberg.

13.    Defendant Abby Greenberg is an individual and resident of Seminole County, Florida. She is the current ex-wife of Joel Greenberg, with their divorce filed October 15, 2021, and finalized April 25, 2022.

14.    Defendant AWG, Inc. is a Florida corporation with its principal address located in Forest City, Seminole County, Florida. AWG, Inc., is the business enterprise of the Greenberg family.

15.    Defendant Greenberg Dental Associates, LLC, is a Florida Limited Liability Company with its principal address in Altamonte Springs, Seminole County, Florida.

16.    Defendant Greenberg Dental & Orthodontics, P.A., is a Florida Professional Association with its principal address in Altamonte Springs, Seminole County, Florida.

17.     Defendant Greenberg Dental Specialty Group, LLC, is a Florida Limited Liability Company with its principal address in Altamonte Springs, Seminole County, Florida.

18.     Herein, Greenberg Dental Associates, LLC, Greenberg Dental & Orthodontics, P.A., and Greenberg Dental Specialty Group, LLC, are collectively referred to as "Greenberg Dental."

19.     Defendant A.B. is an individual and, upon information and belief, is a resident of the State of Colorado. A.B. is now a porn star.

20.     Upon information and belief, A.B. was compensated by the Greenberg Racketeering Enterprise to provide false testimony for compensation in furtherance of Greenberg Racketeering Enterprise's extortion of, and retaliation against, Dorworth.

21.     This is an action for damages exceeding fifty thousand dollars, exclusive of attorney fees, interest, and costs.

22.     This Court has general jurisdiction over the individual defendants pursuant to Section 48.193(1) and (2), Florida Statutes, because they reside in Florida and/or engage in business in the State of Florida.

23.     This Court has general jurisdiction over the business entity defendants pursuant to 48.193(2) because they are headquartered in Florida.

24.     Venue is proper in this Circuit pursuant to Section 47.011, Florida Statutes, because one or more Defendants reside in, or are headquartered in, Seminole County, Florida, and because the cause of action accrued in Seminole County, Florida as set forth throughout this Complaint.

## ALLEGATIONS COMMON TO ALL COUNTS

25.     None of Joel Greenberg's misconduct could have been committed without support from his parents, Sue and Andrew Greenberg, and the dental chain they founded and co-own, Greenberg Dental.

26.     Despite his history of mental health issues, drug addiction and socially abnormal behavior, Greenberg Racketeering Enterprise directly and indirectly supplied Joel Greenberg with $246,000 in funds to seek election to the Seminole County Tax Collector's Office.

27.     The Greenberg Racketeering Enterprise is directly responsible for 97.1% of the campaign resources used in Joel Greenberg's successful campaign for the Office of the Tax Collector for Seminole County.

28.     From his first day in office in January 2017 until his indictment three and a half years later, Greenberg committed dozens of felonies involving a wide-ranging variety of crimes including, among other things, human trafficking of a minor for sex purposes, stalking, bribery, theft from the tax collector's office, and fraud against the government, and as is reflected in his 33-count felony indictment and subsequent guilty pleas.

29.     Joel Greenberg used funds obtained through the Greenberg Racketeering Enterprise to procure sex in exchange for money and traffic a minor for sex.

30.     As the Greenbergs were aware of Joel's ongoing criminal enterprise, they utilized resources derived from Greenberg Dental, which then flowed through AWG, Inc., to sustain Greenberg in office, allow him to escape detection for his crimes, and to mitigate his exposure, both during and after his time in office.

31.     Upon information and belief, the Greenberg Racketeering Enterprise underwrote a massive effort to falsely implicate Plaintiff and others in misconduct, either in retaliation for their

5

failure to aid Greenberg in escaping accountability, or in a misguided attempt to obtain a further reduction in his sentence for "cooperating" with the Government.

32.     The Greenberg Racketeering Enterprise also paid all fines and restitution necessary to minimize the prison sentence of Joel Greenberg, including $1.355 million to Seminole County, Florida and $590,000 to the federal government.

33.     As an elected official, Joel Greenberg was required to file financial disclosure forms. These forms reveal that the Greenberg family, through the Greenberg Racketeering Enterprise, provided 100% of the financial support permitting Greenberg's massive racketeering efforts.

34.     Once it appeared inevitable that Joel Greenberg would receive a prison sentence for his crimes, the Greenberg Racketeering Enterprise began seeking a federal pardon from then-President Donald J. Trump.

35.     In furtherance of that effort, the Greenberg Racketeering Enterprise identified Dorworth as the key to obtaining said pardon, due to Dorworth's friendship with Congressman Matt Gaetz and Dorworth's employment at Ballard Partners, an international public affairs and lobbying firm with close ties to the Trump Administration.

36.     Joel Greenberg first threatened Rebekah Dorworth, Dorworth's wife, then threatened Mr. Dorworth orally and by text message that unless Dorworth undertook all necessary efforts obtain a pardon from President Trump, that Greenberg would embroil Dorworth in Greenberg's criminal investigation.

37.     After Dorworth refused to acquiesce to such threats, the Greenberg Racketeering Enterprise conspired to defame Dorworth and falsely accuse Dorworth of crimes.

38.     The Greenberg Racketeering Enterprise also demanded, via threat of prosecution, that Dorworth use all available means to have then-Assistant U.S. Attorney (and current U.S. Attorney) Roger Handberg fired from his position to stop the prosecution and conviction of Joel Greenberg.

39.     After Dorworth refused to acquiesce to these additional threats, Joel Greenberg, in concert with the Greenberg Racketeering Enterprise, conspired to defame Dorworth and falsely accuse Dorworth of crimes associated with Greenberg.

**A.     The Greenberg Racketeering Enterprise Sets Sights on the Tax Collector's Office**

40.     Florida Tax Collector laws date back to the foundation of Florida as a state.

41.     In Florida, there are five types of Constitutional Officers as designated by the Florida Constitution: Sheriffs, Tax Collectors, Property Appraisers, Supervisors of Election and Clerks of Court.

42.     Tax Collectors are the only Constitutional Officers in the state of Florida not subject to budgetary approval and supervision by their respective county commissions.

43.     Each Tax Collector submits a budget for approval by the Florida Department of Revenue.

44.     The Department of Revenue approves or rejects the budget of the Seminole County Tax Collectors.

45.     All other constitutional officers are funded through and subject to budgetary oversight of the Board of County Commissioners.

46.     Florida Statute defers to individually elected tax collectors the establishment of branch offices. Florida Statute 197.332(2).

47.     Due to the constitutional status of Tax Collectors, they are not required to competitively bid services. 197.332(1).

48.     Thus, the tax collector determines who to hire and what to pay them without input from the local county.

49.     A tax collector has the option of turning over excess tax collections to the county if the tax collector determines they will no longer need the resources for the collection of taxes.

50.     The previous Seminole County Tax Collector, Ray Valdes, served in the capacity of Tax Collector for 28 years.

51.     Mr. Valdes turned over large sums of excess tax collections to Seminole County:

| Fiscal Year | Amount |
|---|---|
| 2003 | $4,785,029 |
| 2004 | $4,386,389 |
| 2005 | $4,867,964 |
| 2006 | $5,550,462 |
| 2007 | $6,641,325 |
| 2008 | $3,454,391 |
| 2009 | $6,138,562 |
| 2010 | $6,035,543 |
| 2011 | $5,415,796 |
| 2012 | $4,116,517 |
| 2013 | $2,638,617 |
| 2014 | $4,184,558 |
| 2015 | $3,819,873 |
| 2016 | $7,422,492 |

52.     Over these 14 years, Valdes turned over an average of $4,961,251.29 per year.

53.     Joel Greenberg observed an opportunity with up to $7 million and an average of almost $5 million per year in entirely discretionary dollars with limited oversight, and embarked upon taking control of the entity for racketeering purposes.

54.     Over Joel Greenberg's four years as Seminole County Tax Collector, he turned over $2,910,151 in 2017, $2,697,504 in 2018, $2,859,947 and $2,896,551 in 2020, substantially smaller amounts than his predecessor.

55.     As elected Tax Collector, Greenberg averaged $2,841,038.25 in returned excess taxes to Seminole County, a reduction of $2,120,213.04 per year from the Valdes average.

56.     On average, Joel Greenberg turned in 42.73% less excess revenue to Seminole County than this predecessor did over the preceding 13-year period.

57.     Despite a life full of failure, addiction, mental health issues and criminal activity, Joel Greenberg lived a life of privilege that few people could imagine because of the financial support of the Greenberg Racketeering Enterprise.

58.     Joel Greenberg's serious behavioral problems began when he was a child.

59.     On May 30, 2000, Orlando Sentinel Columnist Brian Schmitz wrote an article entitled "Life Lessons" in which Joel Greenberg's mother, Sue Greenberg, explains the challenges she experienced parenting Joel Greenberg.[1]

60.     Joel Greenberg was 16 years old when the article was published.

61.     Sue Greenberg is quoted as saying: "Joel is my shining star that needs more polishing, more buffing. He's the one who keeps me on my knees. It was a belligerent, defiant, rebellion-type of thing at home."[2]

---

[1] https://www.orlandosentinel.com/news/os-xpm-2000-05-30-0005300222-story.html
[2] *Id.*

9

62.     Schmitz, the article's author, continues: "Susan said Joel has been a handful ever since he was diagnosed with attention deficit disorder as a toddler. While taking Ritalin, he developed Tourette's syndrome. Behavior problems escalated, and by the seventh grade, Joel was stealing money from his parents. He then stole from a store. He wound up in Operation Right Track in Orlando, a boot-camp counseling program for troubled juveniles."[3]

63.     Joel's problems were aptly summed up by Joel's own counsel during his sentencing:

> If you read the family section of the PSR, Mr. Greenberg's mother details his struggles with self-worth and self-esteem throughout his childhood, his struggles in school, his struggles with mental illness in school.

December 1, 2022 Sentencing Trans. at 11:25-12:3. Thus, Greenberg's mother admits she was aware of his limitations yet still helped him become Tax Collector.

64.     Joel Greenberg was expelled from Orangewood Christian School and Florida Air Academy.

65.     Only through Andrew and Sue Greenberg's "directed philanthropy" was Joel Greenberg able to complete high school.

66.     Joel Greenberg spent seven years taking classes at Rollins College between 2005-2012 but never graduated.

67.     At the age of 18, Joel Greenberg's name appeared in a burglary report.

68.     Joel Greenberg was involuntarily committed for psychiatric care at the age of 21 after taking LSD.

69.     While involuntarily committed, Joel Greenberg accused an orderly of grabbing his penis while Greenberg was confined to a chair. No evidence supported Greenberg's claim.

---

[3] *Id.*

10

70.     This is the beginning of Joel Greenberg's pattern of utilizing allegations of sexual assault to damage those he wishes to harm.

71.     Joel Greenberg's sole professional endeavor was a short-lived sports radio show.

72.     After the indictment and conviction of Joel Greenberg and his co-host Joe "Big Joe" Ellicott, Orlando Sentinel Sports Columnist Mike Bianchi addressed the radio career of Joel Greenberg.

73.     In his column, Bianchi stated that he knew that when he saw that Joel Greenberg had been elected Tax Collector for Seminole County, it would end in negative consequences.[4]

74.     He wrote:

You see, I used to know Joel Greenberg. I didn't know him very well, but I knew him from when he was a wannabe sports radio host at the station (FM 96.9 and AM 740) where I have been doing my Open Mike morning radio show for more than a decade. I'm not going to say I predicted Greenberg would someday be arrested and charged with theft of public funds, sex trafficking, cryptocurrency fraud and a variety of other crimes, but I knew when he was somehow elected as the Seminole County Tax Collector in 2016 that it would be a disaster.

How did I know? Because a few years before that, Greenberg's career goal was to be a sports radio entrepreneur, and he persuaded station management to let him, and a couple of his pals do a one-hour early morning radio show — The Morning Blitz — that would start at 5 a.m. and serve as a lead-in to my 6 a.m. show. I remember warning Greenberg at the time, "You know it's a total lifestyle change and a grind to get up every morning at 3 or 4 a.m. to prepare and do a radio show." Of course, Greenberg was all gung-ho for the first day or two, but by the end of Week 1 he was straggling into the station bleary-eyed right before 5 a.m., and you could tell he did absolutely no show prep. Just turned on the microphones and started babbling. By the end of Week 2 or 3, Greenberg quit coming into the station altogether and that was pretty much the end of his sports radio career. I haven't seen him since.[5]

---

[4] https://www.orlandosentinel.com/sports/mike-bianchi-commentary/os-sp-joel-greenberg-seminole-county-tax-colletor-mike-bianchi-column-20220127-227ucik2hjcdvkyjjdwztkcori-story.html
[5] *Id.*

11

75.     The Greenberg Racketeering Enterprise underwrote Joel's short radio host plan financially by purchasing blocks of advertising time for Joel Greenberg to sell.

76.     Greenberg failed to perform the tasks necessary to run a radio station through mismanagement and neglect.

77.     The Greenberg Racketeering Enterprise had the opportunity to observe Joel Greenberg's mental health problems, addiction problems, criminal activities and near pathological irresponsibility at school and in business ventures yet they continued to underwrite 100% of his luxurious life.

**B.      The Sole Source of Joel Greenberg's Wealth, Income and Assets Came from the Greenberg Racketeering Enterprise**

78.     Joel Greenberg disclosed to Dorworth that he received $100,000 a quarter from his parents via disbursements from AWG, Inc, which received its value and income from Greenberg Dental, and received total payments of $400,000 per year.

79.     Joel Greenberg advised Dorworth that he provided strategic advice and counsel to Greenberg Dental and was a part owner of the company.

80.     As an elected official in Florida, Joel Greenberg is responsible for filing a Form 6 with the Florida Commission on Ethics, which is a statutorily mandated disclosure for elected officials in Florida that receive compensation for their service that must be filed on an annual basis.

81.     Greenberg filed financial disclosures for 2016, when he was first elected, 2017, 2018, 2019 and 2020.

82.     On these disclosures, Greenberg was obligated to disclose his income, his net worth, assets, and liabilities.

83.     According to these disclosures, 100% of Joel Greenberg's income came from his parents, Sue and Andrew Greenberg, as well as AWG, Inc, which received its income from Greenberg Dental.

84.     It is both unethical and criminal violation to lie or misrepresent information on a Form 6.

85.     On July 5, 2017, Joel Greenberg filed a Form 6 with the Florida Commission on Ethics for the Calendar Year 2016.

86.     On Joel Greenberg's 2016 Form 6, he lists a total salary of $400,000, all from AWG, Inc.

87.     No other income came to Joel Greenberg in 2016 according to his Form 6.

88.     On the same 2016 Form 6, Joel Greenberg listed a net worth of $6,038,000, of which $5,500,000 was stock in AWG, Inc, AWG FLP and JMG LLC. A search of Sunbiz.org shows that organizational papers for JMG, LLG were filed on April 13, 2006.

89.     On April 13, 2006, Joel Greenberg was 22 years old.

90.     At the time, there was another JMG, LLC organized and operational in Florida.

91.     The Joel Greenberg-controlled JMG, LLC never filed an annual report with the Florida Department of State and was listed as Inactive Pending Reinstatement on January 28, 2015.

92.     A possible explanation for the administrative termination of JMG, LLC is the existence of another company unaffiliated with Joel Greenberg's JMG, LLC that was organized and operational when Joel Greenberg attempted to organize his JMG, LLC, which prohibited him from registering JMG, LLC successfully.

93.     As Joel Greenberg did not own or control JMG, LLC, any representation of it having a value would be incorrect.

13

94.     The Joel Greenberg-managed JMG, LLC did not exist in 2016, and as such could not have had any value of stock.

95.     Form 6 requires assets valued at over $1,000 to be individually listed.

96.     Upon information and belief, the Form 6 lumps the three companies together in an attempt to conceal the fact that all of Greenberg's purported wealth was from AWG, Inc.

97.     The remaining two stocks were AWG, LLC, and AWG FLP.

98.     The $5.5 million in value attributed to AWG INC, AWG FLP, and JMG LLC, represent 91% of the total $6,038,000 net worth listed by Joel Greenberg during the entirety of his campaign to take control of the Seminole County Tax Collector's Office for racketeering purposes.

99.     In 2016, AWG, Inc. represented 100% of Joel Greenberg's $400,000 income and 91% of his net worth was derived from AWG, Inc. and AWG FLP.

100.    On December 5, 2017, Joel Greenberg filed an Amended Form 6.

101.    Both the Amended Form 6 and the originally-filed Form 6 list February 28, 2017, as an effective date.

102.    Only two changes appear between the original and Amended Form 6.

103.    On the original Form 6, under "Automobile," Joel Greenberg claimed, "Range Rover, Jeep" and listed a total value of $115,000.

104.    On the amended Form 6, "Jeep" is removed, but the $115,000 value remains.

105.    On the amended report, both AWG FLC and JMG, LLC are removed as stocks with value.

106.    By reporting the three companies as stock holdings in one line item, Joel Greenberg misled the public into believing that he had income or employment outside of his parents.

107.    Nonetheless, the Amended Form 6 clearly denotes that AWG, Inc. and only AWG, Inc. provided income to Joel Greenberg during the campaign to take control of the Seminole County Tax Collector's Office for racketeering purposes.

108.    Joel Greenberg utilized his initial Form 6 to suggest that some of his net worth of millions might have come from something other than the Greenberg Racketeering Enterprise and corrected the report to show that 100% of his income, valuables and wealth came from AWG, Inc, a member of the Greenberg Racketeering Enterprise.

109.    The 2016 Amended Form 6 reveals that the only stock with value - $5,500,000 - is AWG, LLC.

110.    In 2017, Joel Greenberg reported a net worth of $6,208,800 in net worth, of which $5,665,000, or 91% of his net worth, came from a jointly reported AWG, Inc. and JMG Ventures.

111.    According to Sunbiz.org and the Florida Division of Corporations, JMG Ventures LLC was organized in 2015 and disbanded in 2018.

112.    No income is ever attributed to JMG Ventures.

113.    On the 2017 Form 6, Joel Greenberg reports $400,000 in salary from AWG, Inc. and $149,253 in salary from the Seminole County Tax Collector's Office.

114.    On the 2018 Form 6, Joel Greenberg lists a net worth of $5,857,135, of which $5,500,000, or 93.9% of its total, is AWG, Inc. stock.

115.    JMG Ventures from the 2017 Form 6 has no mention.

116.    Across all of Joel Greenberg's filed Form 6's, all of his wealth is derived from AWG, Inc. stock, income from AWG, Inc. salary as Seminole County Tax Collector that was effectively purchased for him by AWG, Inc. and homes, furniture and jewelry acquired via resources given by AWG, Inc.

15

117. Joel Greenberg took control of the Seminole County Tax Collectors office via election.

118. Joel Greenberg and the Greenberg Racketeering Enterprise funded the election of Joel Greenberg.

119. On the day Sue Greenberg was advised her son was going to run for Seminole County Tax Collector utilizing money given to him by the Greenberg Racketeering Enterprise, she cried and stated, "he's going to wind up in prison."

120. Abby Greenberg, Joel's wife, also cried and stated her belief that his time in elected office would result in him going to prison.

## C. The Greenberg Racketeering Enterprise Takes Control of the Seminole County Tax Collector's Office

121. The decision of the Greenberg Racketeering Enterprise to finance the historically expensive campaign of Joel Greenberg to become tax collector despite being aware of his history of theft (i.e. stealing from his parents, stealing from a store, appearing in a burglary report), mental health and drug addiction, failed businesses, never completing college after seven years of attending Rollins, appearances in drug rehab and failed radio shows demonstrates a reckless disregard for the well-being of the taxpayers of Seminole County.

122. The Greenberg Racketeering Enterprise facilitated the fraud and crime spree of Joel Greenberg by paying for 97.1% of the money spent for his historically expensive campaign.

123. In 2016, Joel Greenberg filed to run for Seminole County Tax Collector.

124. The Greenberg Racketeering Enterprise knew that Joel Greenberg would be paid $149,253 in pre-tax income as the tax collector of Seminole County for what is considered full-time employment.

125. According to the Seminole County Supervisor of Elections website, Greenberg received a total of $248,512.52 in monetary contributions, in-kind contributions, and loans that were not repaid from members of the Greenberg Racketeering Enterprise and his two brothers.

126. Joel Greenberg loaned the campaign $100,000 on May 16, 2016.

127. Joel Greenberg donated $1,000.00 to his campaign on May 16, 2016.

128. Between May 16, 2016, and May 31, 2016, Joel Greenberg contributed $3,415.81 in kind to his campaign.

129. On May 13, 2016, Joel Greenberg repaid $27,323.25 in loans to the campaign.

130. Joel Greenberg repaid $7,000 of the loan on June 16, /2016.

131. Joel Greenberg on June 29, 2016, loaned the campaign $5,000.

132. Sue Greenberg, Joel's mother, donated $1,000 on July 8, 2016.

133. Andrew Greenberg, Joel's father, donated $1,000 on July 8, 2016.

134. Martin Greenberg, Joel's brother, donated $1,000 on July 8, 2016.

135. Adam Greenberg, Joel's brother, donated $1,000 on July 8, 2016.

136. AWG, Inc. donated $1,000 on July 8, 2016.

137. AWG Family Limited Partnership donated $1,000 on July 8, 2016.

138. The addresses of Sue Greenberg, Andrew Greenberg, Martin Greenberg, Adam Greenberg, AWG, Inc. and AWG Family Limited Partnership are all 3129 Cecelia Drive, Apopka, Florida 32703.

139. After June 27, 2016, Joel Greenberg in-kind contributed another $6,625.42.

140. On July 5, 2016, Joel Greenberg repaid himself $1,000 of the loan he made to the campaign.

141.    All told, totaling Joel Greenberg's loans, contributions and in-kind contributions while factoring in repayment of loans, Greenberg spent $235,591.52 to win the primary to become the Seminole County Tax Collector and take control of the enterprise.

142.    Joel Greenberg and his family enterprise paid $241,591.52 to obtain control of the Seminole County Tax Collector that position because he intended, conspired, and did immediately begin a pattern of racketeering with the unique constitutional prerogative of tax collectors in Florida and with full knowledge that he would have control over millions of dollars every year in excess tax collections that he could deploy for racketeering purposes.

143.    Comparatively, Ray Valdes, the 28-year incumbent Joel defeated spent a combined $46,000 towards his election.

144.    Despite spending 5.4 times what the incumbent spent, Joel Greenberg received just over 52% of the vote in a two-way race.

145.    Constitutional officers like Tax Collectors, Sheriffs, Supervisors of Elections, Clerks of the Court and Property Appraisers positions are considered full-time positions.

146.    The decision to spend amounts equal to two years of after-tax pay for the election of Seminole County Tax Collector that would require Joel Greenberg to work for two years just to recoup his initial investment was a poor financial decision, particularly when Greenberg supposedly earned $400,000 per year from Greenberg dental.

147.    There is no evidence that any of the Greenbergs were civic minded so as to justify such an expenditure.

148.    Joel Greenberg and the Greenberg Racketeering Enterprise spent after tax amounts equal to 1.6 years of pre-tax salaries because they were aware of lax state oversight of Tax

Collectors and the existence of $5-7 million a year of available discretionary capital to feed their racketeering enterprise.

149. Facing only a write-in opponent, Greenberg was formally elected tax collector in November of 2016 and officially took control of the office on January 1, 2017.

150. The resources expended by the Greenberg Racketeering Enterprises surpasses any amount ever spent in the history of Seminole County Tax Collector elections and far surpasses what was spent in substantially larger counties in the 2016 election cycle anywhere else in the state of Florida.

151. The Greenberg Racketeering Enterprise paid a total of $241,591.52 in unrepaid campaign loans, campaign donations and direct compensation.

152. For context, Volusia County held its first-ever election for tax collector in 2020.

153. Volusia adjoins Seminole County to the north and is larger in terms of overall population than Seminole County.

154. In the Republican Primary for tax collector, one Republican candidate raised $45,193, none of which came from himself, and the winning candidate raised $33,072.12, of which $8,000 was a loan from the candidate.

155. According to the various Supervisors of Elections websites across the state of Florida, Joel Greenberg spent more than any candidate in a primary for Tax Collector than any other tax collector in the state of Florida dating back to the 2012 election cycle.

156. Greenberg's complete unsuitability for the job meant that the Greenberg Racketeering Enterprise had to spend a disproportionate amount to win the election.

157. Given the disproportionate amounts spent by Joel Greenberg, both in relation to the amount others spent, as well as to the legitimately accruing benefits of the position, it is clear that

the Greenberg Racketeering Enterprise spent these sums to acquire control over the Seminole County Tax Collector's Office intending to use the position for illegal and improper purposes.

**D.      The Greenberg Racketeering Enterprise Continues Its Pattern of Racketeering through the Tax Collector's Office**

158.    Criminal wrongdoing in the Seminole County Tax Collector's Office started the first day Joel Greenberg was in office and continued even after his resignation. As stated in the government's sentencing memorandum:

> Greenberg's criminal conduct began prior to his 2016 election as the Tax Collector for Seminole County. In November 2015, after purchasing a boat from an individual, R.Z., Greenberg used R.Z.'s personal information to change R.Z.'s mailing address and obtain a replacement license in R.Z.'s name, without R.Z.'s consent or knowledge. PSR ¶ 49. Greenberg's election then fueled a fire that began a pervasive and wide-spread crime-spree, for which he used his position, and instrumentalities of the Tax Collector's office, to fund and facilitate.
>
> On the very day that Greenberg took office, January 3, 2017, Greenberg used his position to access the Florida Driver and Vehicle Information Database (DAVID) and search for R.Z. *Id.* at ¶ 52. He then reverted R.Z.'s mailing address back to R.Z.'s actual residence. R.Z. never knew what Greenberg had done. *Id.* In November 2017, Greenberg searched for R.Z. again in DAVID, and using a badge-making machine that he had purchased with Tax Collector funds, produced a fake driver's license containing R.Z.'s information and Greenberg's picture. *Id.* at ¶¶ 53-54.
>
> Doc. 162 at 1-2, see also Counts 7, 9 of 3rd superseding indictment.

159.    The amount of and variety of crimes committed by Joel Greenberg is so far ranging that it led to then-NBC National News correspondent Mark Caputo calling Greenberg "one of the most corrupt Florida politicians of all time."[6]

160.    With control of the government office for unlawful and racketeering purposes, Greenberg undertook actions that resulted in him being charged with thirty-three different felonies.

---

[6] https://twitter.com/MarcACaputo/status/1394351835159408649

161.    As part of a plea deal, 27 charges were dropped, and Greenberg plead guilty to the remaining six.

162.    Greenberg also committed additional uncharged felonies, such as perjury, false statement, and obstruction of justice, all each of which impacted Dorworth.

163.    In addition to using the Tax Collector's Office for unlawful and racketeering purposes, Joel Greenberg unnecessarily spent millions of dollars on employees, contractors and legal fees that deprived the taxpayers of use of the tax money paid for legitimate purposes.

164.    The Greenberg Racketeering Enterprise had long funded Joel Greenberg's sex addictions through payments from AWG, Inc. used to pay women for sex via websites.

165.    AGW's payments to women on behalf of Joel Greenberg predated his election to Seminole County Tax Collector but continued afterward.

166.    The Greenberg Racketeering Enterprise's assistance to Greenberg in being elected allowed Joel Greenberg to utilize privileged government resources for human trafficking.

167.    The U.S. Department of Justice alleged Joel Greenberg used the state's driver's license system (D.A.V.I.D.) to obtain the photograph and license number of the minor victim for sex trafficking purposes.

168.    According to an Orlando Sentinel news article, Joel Greenberg also looked up Dorworth on the D.A.V.I.D. system for non-business purposes.[7]

169.    Joel Greenberg utilized his position as a constitutional officer and Seminole County Tax Collector to traffic an underaged woman for sex and elude detection.

---

[7] https://www.orlandosentinel.com/news/seminole-county/os-prem-joel-greenberg-britney-spears-david-database-20210810-kwxql5pkrzelpgxililsgrawpe-story.html

170.    According to the indictment, Joel Greenberg used customers' discarded licenses at the tax office to make the fake licenses, which were done to facilitate commercial sex acts.

171.    Between September 2018 to June 2020, Greenberg produced a false Puerto Rico driver's license containing Greenberg's photo but the name and personal info of E.J.C.C. (Counts 8, 10 of 3rd superseding indictment).

172.    From October to November 2019 Greenberg, posing anonymously as a "very concerned student," allegedly sent letters to Trinity Preparatory School, where his political opponent Brian Beute ("Beute") worked, claiming the employee had engaged in sexual misconduct, created a fake Twitter account using the name and photo of the political opponent that was then used to express support for the school teacher's white supremacy, and created a fake Facebook page of a "very concerned teacher" that claimed the political opponent was engaged in sexual misconduct with a student. (Counts 24, 25 of 3rd superseding indictment).

173.    Greenberg searched D.A.V.I.D. records for individuals with whom he was engaged in "sugar daddy" relationships.

174.    A "sugar daddy" is a rich older man who lavishes gifts upon one or more young women in return for sex.

175.    Without the resources of the Greenberg Racketeering Enterprise, Greenberg would have lacked either resources to recruit women for sex or the governmental tools necessary to aid and abet his human trafficking operation.

**E.**    **The Greenberg Racketeering Enterprise Begins a Fraudulent Cryptocurrency Theft Scheme Using the Seminole County Tax Collector's Office**

176.    The Greenberg Racketeering Enterprise directly paid 97.1% of the cost of obtaining control of the organization for criminal purposes including theft and embezzlement of cryptocurrency.

177.    In November 2017, Greenberg allegedly used a Tax Collector Office credit card to buy $1,500 in cryptocurrency (Count 11 of 3rd superseding indictment).

178.    In December 2017, Greenberg transferred $100,000 to a cryptocurrency exchange (Count 21 of 3rd superseding indictment).

179.    In December 2017 and December 2018, Greenberg allegedly transferred 8.1583 Bitcoin (valued at more than $20,000) to his personal accounts (Counts 22, 23 of 3rd superseding indictment).

180.    From September to October 2018, Greenberg transferred $20,000 from Government Blockchain Systems to a cryptocurrency account he controlled. (Counts 15, 16, 17, 18 of 3rd superseding indictment)

181.    December 2018, Greenberg transferred $200,000 from Tax Collectors Office to a cryptocurrency exchange (Count 14).

182.    In December 2017 and December 2018, Greenberg transferred 8.1583 Bitcoin (valued at more than $20,000) to his personal accounts (Counts 22, 23 of 3rd superseding indictment)

183.    The Greenberg Racketeering Entity's theft and misappropriation of bitcoin was then used to fund Joel Greenberg's re-election campaign.

184.    On September 26, 2019, Greenberg in-kind donated $240,340 in bitcoin to his reelection campaign. The bitcoin was valued at $8,078 per coin.

185.    According to campaign finance reports, Joel Greenberg had not moved any of the bitcoin on December 31, 2019.

186.    Joel Greenberg's initial Form 6 lists no bitcoin assets on December 31, 2019.

187. Joel Greenberg's Amended Form 6 lists $100,000 in Bitcoin on December 31, 2019.

188. Under either circumstance, Greenberg did not have personal possession of $240,340 of Bitcoin that he claims to have in-kinded.

189. It is not known if the Bitcoin in-kinded belonged to Andrew Greenberg specifically, the Greenberg Racketeering Entity or was the property of the Seminole County Tax Collector's office.

190. The Bitcoin was either stolen, misreported, or donated in excess of campaign contribution limits, or a combination thereof.

191. Either way, the stolen and/or misreported Bitcoin was invested into the Greenberg Campaign, part of the Greenberg Racketeering Enterprise in an attempt to keep Joel Greenberg in control of the Seminole County Tax Collector's Office.

192. On January 27, 2020, Greenberg in-kind donated $194,000 in bitcoin to his reelection campaign. The bitcoin was valued at $9,700 per coin.

193. On the Form 6 Financial Disclosure as to his net worth on December 31, 2019, Joel Greenberg lists no cryptocurrency assets, $224,000 in a Merrill Lynch/Bank of America and $52,000 in a Fairwinds account.

194. Upon information and belief, Greenberg utilized $194,000 in stolen bitcoin to maintain control of the Seminole County Tax Collector's to continue the Racketeering Enterprise.

195. Greenberg's two deposits totaled $434,000 in Bitcoin, but Joel Greenberg only had $276,000 between his two bank accounts.

196. Even if he emptied both of his bank accounts of $276,000, Joel Greenberg would still be $158,000 short of the $434,000 in Bitcoin he claims to have donated.

24

197.   Sale of AWG, Inc. stock, use of stolen cryptocurrency or use of Bitcoin owned by other members of the Greenberg Racketeering Enterprise are viable explanations, and all continue to evidence the perpetual support of the Greenberg Racketeering Enterprise.

198.   It is unclear whether the source of the cryptocurrency was the resources of AWG Inc, Greenberg Dental and Andy Greenberg or if it was taxpayer owned cryptocurrency that Greenberg was later stolen by Greenberg.

199.   Theft of cryptocurrency and campaign finance irregularities were just the start of the criminal activities undertaken by the Greenberg Racketeering Entity's efforts to retain control of the Seminole County Tax Collector's Office for racketeering purposes.

200.   Greenberg performed the foregoing actions in an attempt to maintain control of the Seminole County Tax Collector's Office in an attempt to continue the Greenberg Racketeering Enterprise.

F.    **Joel Greenberg's Indictment and Resignation Do Not Stop the Greenberg Racketeering Enterprise.**

201.   On June 17, 2020, Greenberg was indicted by a grand jury on the first indictment.

202.   On the same day, Joel Greenberg resigned from the Seminole County Tax Collector's Office.

203.   Greenberg was bailed out post arrest with funds from AWG, Inc., Greenberg Dental, and Andy Greenberg shortly after he is arrested on June 23, 2020.

204.   All legal bills associated with the racketeering and criminal enterprise of Joel Greenberg were paid by the Greenberg Racketeering Enterprise.

205.   Having resigned his job as Seminole County Tax Collector, the Greenberg Racketeering Enterprise was now sole source of revenue to support Joel Greenberg and his family.

206.     Three days after Joel Greenberg's resignation, on June 20, 2020, according to the federal indictment, Joel Greenberg filed false EIDL applications to receive $132,900 in funding on behalf of himself through a fraudulent loan from the Small Business Administration that offered relief during the pandemic.

207.     On June 28, 2020, according to the federal indictment, Greenberg allegedly filed a false EIDL application on behalf of his former company, DG3 Network, and later received $149,900 from the Small Business Administration with the intent to steal from the Small Business Administration. (Counts 29, 32 of 3rd superseding indictment).

208.     On July 17, 2020, Greenberg allegedly bribed a Small Business Administration employee by sending her payments for her assistance preparing and processing the loan applications. (Counts 26, 27 of 3rd superseding indictment)

209.     The resources utilized to bribe the Small Business Administration employee were provided either directly by the Greenberg Racketeering Enterprise or through proceeds therefrom.

210.     On July 21, 2020, Greenberg allegedly filed a false EIDL application on behalf of his former company, Greenberg Media, and later received $149,900. (Counts 30, 33 of 3rd superseding indictment).

**G.     The Personal and Professional History of Dorworth and Joel Greenberg**

211.     Dorworth met Joel Greenberg in October of 2016 at a fundraiser for Donald Trump at the home of Robert de la Russo being mutually introduced by their wives, Rebekah Dorworth and Abby Greenberg.

212.     Dorworth was not any part of the campaign to elect Joel Greenberg as Tax Collector.

213.    Dorworth was not a friend of Joel Greenberg prior to his election and was unaware of his history of mental health, addiction, gambling, legal troubles and business and academic failings.

214.    Despite being an active donor in local political races, Dorworth did not contribute to the campaign of Joel Greenberg or his Republican primary opponent in 2016.

215.    Prior to meeting Joel Greenberg, Dorworth had represented other Tax Collectors before the State of Florida legislative and executive branches.

216.    On November 5, 2015, Dorworth registered via his employer Ballard Partners to represent the Orange County Tax Collector.

217.    The Orange County Tax Collector was Scott Randolph, a registered Democrat and former State Representative and chairman of the Orange County Democratic Party.

218.    On behalf of the Orange County Tax Collector's office, Dorworth advocated before the legislature on a wide variety of tax collector related issues, including fees, private license tag agencies and legislation that impacted the ability of independently elected tax collectors to do their jobs.

219.    Dorworth represented the Orange County Tax Collector's Office for the entirety of the time he represented the Seminole County Tax Collector's Office.

220.    Dorworth represented other government entities at the same time, including the Hernando County (Florida) School Board.

221.    After Joel Greenberg became aware that Dorworth had experience in representing Tax Collectors, Joel Greenberg asked Dorworth to represent him and the interests of the Seminole County Tax Collector in a similar manner to his representation of the Orange County Tax Collector's Office.

222.    On March 9, 2017, Dorworth and Ballard Partners registered to represent the Seminole County Tax Collector's Office.

223.    During the 2017 Florida legislative session, the agendas of both tax collectors closely mirrored each other.

224.    During the 2018 Florida legislative session, the Orange County Collector's legislative priorities remained key to the mission of collecting taxes.

225.    On January 28, 2019, Dorworth registered to represent another Orange County Constitutional Officer, the Orange County Property Appraiser.

226.    Despite earlier assurances that Greenberg pursue an agenda that would create conflicts in Dorworth's practice, Greenberg on multiple occasions attempted to push issues that Dorworth had informed him he could not handle, despite his previous agreement and knowledge of Dorworth's conflict.

227.    During their time working together, Joel Greenberg demonstrated an almost comical absence of understanding as to how the process of advocacy before the government worked.

228.    Joel Greenberg would often demand that Dorworth, in his capacity as lobbyist for the Seminole County Tax Collector's Office, call various elected officials and threaten them with various political consequences at the hand of Joel Greenberg if they did not do what he requested.

229.    This behavior Greenberg demanded and expected is unprofessional and the results of it would be disastrous for both the client and any lobbyist who followed said directions.

230.    Numerous members of the legislature and lobbyists advised Joel Greenberg that advocacy did not ever work like that.

28

231.    At the conclusion of the 2019 Florida legislative session, Dorworth and Greenberg agreed that future representation of the Seminole County Tax Collector's office by Dorworth was no longer wise and prudent and Dorworth was therefore withdrawn as the lobbyist for the Seminole County Tax Collector's Office.

232.    When Joel Greenberg tried to rehire Dorworth in September 2019, Dorworth declined the opportunity to work with the Seminole County Tax Collector's office.

233.    Instead Dorworth referred Joel Greenberg to another firm.

234.    On October 21, 2019, the Seminole County Tax Collector's Office retained another firm.

235.    Dorworth was consistently offered and consistently rejected opportunities to do business with the Seminole County Tax Collector's Office.

236.    After Dorworth withdrew from representation at the end of the 2019 Session, neither Dorworth nor any of his family members had business or financial dealings with Joel Greenberg, the Seminole County Tax Collector's Office, or any other members of the Greenberg Racketeering Enterprise.

237.    In April of 2019, Greenberg arrived unannounced at the personal residence of Dorworth.

238.    In Joel Greenberg's possession was a lengthy subpoena for records from the United States Secret Service.

239.    Joel Greenberg came to Dorworth to seek advice as to who to hire as legal representation.

240.    Dorworth read the subpoena and advised Greenberg to hire Vincent Citro "Citro", to represent him in the investigation.

241. Fourteen months later, on June 9, 2020, Joel Greenberg advised Dorworth that he had received clearance from the Department of Justice for the cryptocurrency transactions and he would not be charged.

242. Joel Greenberg's retrospectively obvious lie was plausible at the time because he had faced other investigations and emerged unscathed with letters from the State Attorney exonerating him.

243. Shortly thereafter, Joel Greenberg advised Dorworth that because he had resolved all the criminal legal issues pertaining to his federal subpoena, he would pursue a second term as Tax Collector.

244. Dorworth was unaware of looming stalking investigations and unlawful use of another person's identity investigations or any of the official misbehavior that led to Greenberg's 33 felony charges and six convictions.

245. Joel Greenberg claimed that his experience being investigated by the federal government had given him new perspective, and that he wanted to serve a second term to make things right.

246. Greenberg would be indicted less than two weeks later.

**H.    Joel Greenberg's Comments and Conversations with Dorworth about Greenberg Dental**

247. On numerous occasions before, during and after his representation of the Seminole County Tax Collectors Office, Joel Greenberg contacted Dorworth about helping Greenberg Dental in various business capacities.

248. The conversations originated from the suggestion by Joel Greenberg that Greenberg Dental retain Dorworth as a lobbyist to pursue certain changes to Florida's Medicaid reimbursement laws.

30

249.    Dorworth, Joel Greenberg, Andrew Greenberg and others met to discuss some of the goals of potential law changes.

250.    Dorworth and Andrew Greenberg never finalized an agreement.

251.    On other occasions, Joel Greenberg called Dorworth and informed him that he spoken to his father about the need for Greenberg Dental to have a "fixer."

252.    Dorworth inquired as to what Joel Greenberg precisely meant when he said "fixer."

253.    Joel Greenberg said, "somebody like Ray Donovan."

254.    Ray Donovan is a Showtime original TV show starring "Liev Schreiber."

255.    Ray Donovan is a fixer for Hollywood's elite.

256.    Dorworth had not then seen Ray Donovan and was unfamiliar with the plot of the show Ray Donovan.

257.    The character Ray Donovan regularly kills people and exacts violence to cover up unlawful behavior.

258.    Dorworth inquired with others who had watched the show and ascertained that Ray Donovan regularly killed people.

259.    Dorworth called Joel Greenberg to inform him that asking for a Ray Donovan-styled fixer could be interpreted as an attempt to hire an assassin, to which Greenberg responded, "that would be fucking awesome, wouldn't it?"

260.    Dorworth assumed then that Greenberg was joking.

261.    Greenberg did not limit his actions on behalf of Greenberg Dental to the procurement of those willing to conduct violent acts on behalf of Greenberg Dental.

262.    Flouting the profound wealth of the Greenberg Racketeering Enterprise was of great importance to Joel Greenberg.

263.     Greenberg would often make casual jokes about the size, market value, political and legal strength of Greenberg Dental when expressing his ability to effectuate change and exact revenge against those Joel Greenberg deemed to be an enemy.

264.     Projecting wealth, status and power were key to Joel Greenberg's persona.

265.     Once, when discussing a female legislator who had sharply criticized Greenberg, Joel Greenberg said to Dorworth she "has never been fucked by a $900 million cock. She will soon find out how that feels."

266.     The "$900 million cock" was Greenberg's way of saying the that the resources of the Greenberg Racketeering Enterprise would be weaponized against his critic.

267.     The entity that Joel Greenberg referred to as being worth $900 million is Greenberg Dental.

268.     Joel Greenberg would also make comments about the nature of the Greenberg Dental business.

269.     Joel Greenberg would make statements about the race and income brackets of the customers interspersed with racist rhetoric, once telling Dorworth that a long-time family joke had been "Greenberg Dental fixes black kids' teeth because the government pays them very well to do so. If the government paid this much for making black people stop smelling so bad, we would have Greenberg Perfume, not Greenberg Dental."

270.     Joel Greenberg would make frequent jokes about Greenberg Dental's reputation as a "pill mill," a term for an illegal facility that resembles a pain clinic, but regularly prescribes painkillers without sufficient medical history, physical examination, diagnosis, medical monitoring, or documentation.

271.     For example, Joel Greenberg would say jokingly to Dorworth that "the reason my parents are so rich is that they figured out how to make Medicaid pay for people's opioids instead of cash at a pill mill."

272.     Joel Greenberg once said to Dorworth that "the formula for Greenberg Dental's success is really quite straightforward. People really want opioids and Greenberg Dental is happy to give them the maximum amount of opioids that they can and somebody else pays for it."

273.     Prescribing unnecessary painkillers and charging the same to government or private insurance is wire fraud, mail fraud, health care fraud, false claim, and/or false statement, among other crimes.

274.     Joel Greenberg told Dorworth on several occasions that he had, in previous years, been in and out of rehab to deal with an oxycontin addiction.

275.     Joel Greenberg told Dorworth that he obtained the oxycontin by using prescription drug pads from Greenberg Dental.

276.     Joel Greenberg told Dorworth that Andrew and Sue Greenberg were fully aware that Greenberg was stealing the prescription pads because their thinking was that at least pharmaceutical grade Oxycontin would be safer than Oxycontin obtained on the streets for their addict son.

277.     Joel Greenberg owns $5,500,000 in AWG, Inc., stock, whose value is derived from ownership of Greenberg Dental.

278.     Dorworth has no first-hand knowledge of the finances, operations and policies of Greenberg Dental and makes these pleadings upon information and belief based upon the representations of Joel Greenberg.

33

## I.    Greenberg Stalks a Political Opponent and Unlawfully Uses His Identity.

279.    On June 23, 2020, an indictment was unsealed charging Joel Greenberg with two felony charges. Joel Greenberg was accused of stalking a political opponent and unlawful use of another person's identity.

280.    Before dawn, law enforcement officers raided the home of Joel and Abby Greenberg.

281.    Joel Greenberg wrote and mailed anonymous letters to the administration of Trinity Preparatory School about his political opponent, Brian Beute.[8]

282.    Brian Beute is a resident of Seminole County, Florida.

283.    Beute was the President of Save Rural Seminole, a nonprofit that focused on stopping growth in the rural area of Seminole County.

284.    Plaintiff Dorworth was an applicant for a Future Land Use and Zoning Change for a mixed-use project "River Cross" in the rural area of Seminole County in 2018.

285.    In August of 2018, the Seminole County Commissioners voted unanimously to reject River Cross.

286.    Dorworth then filed via counsel a Fair Housing Act Segregative Effect Disparate Impact lawsuit in the Middle District of Florida.

287.    In all the exchanges regarding River Cross, despite being on different sides of an issue, Beute and Dorworth never had any personal conflict.

288.    Dorworth bore no ill will in any way to Beute.

---

[8] https://www.orlandosentinel.com/news/crime/os-ne-joel-greenberg-case-stalking-charge-envelopes-20210408-d6lwf56qfzgt7nsqgtq2owg4mq-story.html

34

289.   An FHA Segregative Effect lawsuit is statistic and expert driven and does not suggest or conclude that those who oppose it are segregationists.

290.   At no point did Dorworth ever accuse anyone, Beute or otherwise, of being a segregationist.

291.   In the bio section for the fake Brian Beute twitter page for which Joel Greenberg was charged, he listed "Segregationist" as a description of Brian Beute.

292.   In placing "Segregationist," Joel Greenberg implied to all concerned that Dorworth was behind the post.

293.   There is no other reason known to Dorworth or others why Brian Beute would be called a segregationist.

294.   Despite fourteen months having passed between the River Cross vote and the letters to Trinity Preparatory School with no confrontation between Beute and Dorworth, lawyers for Beute offered Dorworth to the authorities as the most likely culprit due to the inclusion of the word "segregationist."

295.   Joel Greenberg sought to misdirect others into thinking Dorworth led an unprovoked attack on a private school music teacher over a disagreement over a land deal fourteen months before, and not because Beute had just filed to run in the Republican primary against Joel Greenberg the week before.

296.   Joel Greenberg sent letters to Trinity Preparatory School alleging that a young male student was aware of sexual relations taking place between Brian Beute and the unnamed statement, but chose to put "Segregationist" for the purpose of convincing others that it was Dorworth and not Joel Greenberg responsible for the attacks.

**J.      Post-Indictment and Resignation, Greenberg Racketeering Enterprise Takes Illegal Steps to Conceal Joel Greenberg's Ownership of, and Involvement in, AWG, LLC, while Continuing to Finance Greenberg's Unlawful Activities**

297.      On June 9, 2020, three days before his indictment was unsealed and he was arrested, Joel Greenberg filed his Form 6 for the 2019 year in compliance with Florida election law requirements that candidates for office file a Form 6 as part of their qualification process.

298.      However, the Greenberg Racketeering Enterprise magically made $5.5 million of AWG, Inc. stock and $251,513 retroactively disappear in an amended report in a ham-handed effort to conceal the source of resources utilized to conduct the Greenberg Racketeering Enterprise.

299.      On the June 9, 2020 Form 6, Joel Greenberg again lists his net worth on the specific date of December 31, 2019 at $5,857,135, the identical amount of his 2018 Form 6.

300.      On the June 9, 2020, Form 6, Joel Greenberg again lists the value of his AWG, Inc. stock at $5,500,000, or 93.9% of his net worth.

301.      On his June 9, 2020, Form 6, Joel Greenberg states that he earned $140,263 from Seminole County and $391,776 from AWG, Inc.

302.      On his June 9, 2020, Form 6, Joel Greenberg utilizes the date of December 31, 2019.

303.      On his June 9, 2020, Form 6, Joel Greenberg claims that as of December 31, 2019, over five months before, the aggregate value of his household goods and personal effects was $149,350.

304.      On his June 9, 2020, Form 6, Joel Greenberg claims that as of December 31, 2019, over five months before, the value of his jewelry and furniture was $85,500.

305.      On his June 9, 2020, Form 6, Joel Greenberg claims that as of December 31, 2019, over five months before, that he had $224,000 in a Merrill Lynch Bank Account.

306.   On his June 9, 2020, Form 6, Joel Greenberg claims that as of December 31, 2019, over five months before, he had $52,000 cash in an account at Fairwinds Credit Union.

307.   On his June 9, 2020, Form 6, no ownership of a primary residence or mortgage for a primary residence was reported.

308.   On June 23, 2020, the Department of Justice unsealed an indictment against Joel Greenberg, his home was raided at dawn, and he was arrested.

309.   After posting bail, Joel Greenberg resigned from the office of tax collector.

310.   On September 3, 2020, Greenberg submitted an amended Form 6 for 2019 in which he retroactively strips assets and income.

311.   The amended Form 6 still stated that the effective date for the information provided was December 31, 2019.

312.   On the amended Form 6 dated September 3, 2020, Greenberg's stated net worth from December 31, 2019, decreased from $5,857,135 to $322,030, a retroactive reduction of 94.5%.

313.   On the amended Form 6 dated September 3, 2020, Greenberg's stated ownership of AWG, Inc.stock was removed.

314.   On the amended Form 6 dated September 3, 2020, Greenberg's stated income from AWG retroactively from the previous calendar was reduced from $391,776 to $175,000.

315.   On the amended Form 6 dated September 3, 2020, Greenberg's cash in a Merrill Lynch bank account on December 31, 2019, was reduced from $224,000 to zero.

316.   On the amended Form 6 dated September 3, 2020, Greenberg's cash in a Fairwinds account on December 31, 2019, was reduced from $52,000 to $18,030.

317.    On the amended Form 6 dated September 3, 2020, Joel Greenberg's Jewelry, Furniture and Household Items on December 31, 2019, decreased from $85,500 on the June Form 6 to $60,000.

318.    On the amended Form 6 dated September 3, 2020, Joel Greenberg lists a primary residence with a value of $624,000 and a mortgage of $480,000.

319.    On the amended Form 6 dated September 3, 2020, Joel Greenberg lists $100,000 of previously unreported Bitcoin.

320.    After Joel Greenberg's misconduct came to light, the Greenberg Racketeering Enterprise sought to conceal the total assets of Joel Greenberg to keep the assets for itself.

321.    The reductions demonstrate that the Greenberg Racketeering enterprise had control over the resources allocated to Joel Greenberg through his ascent into the Tax Collector's Office in 2016, throughout his criminal enterprise in 2017 to 2020 and afterwards, in paying for the fines and restitution and wrongdoing of Joel Greenberg from the assets of the Greenberg racketeering exercise.

## K.    Abby Greenberg Facilitates Joel Greenberg Threatening Rebekah Dorworth and Demanding a Pardon

322.    Rebekah Dorworth and Abby Greenberg remained friends after the first arrest of Joel Greenberg, though they had not been close for quite some time.

323.    Abby Greenberg vacationed at the JW Marriott Orlando Grande Lakes, paid for by Greenberg's parents, while she processed the criminal status of her then-husband days after her home was raided.

324.    Abby Greenberg extended an invite to Rebekah Dorworth to visit the resort pool with her daughter. Abby Greenberg and Rebekah Dorworth's daughters are close in age.

325.    Abby Greenberg proactively informed Rebekah Dorworth that Joel Greenberg would not be present.

326.    Rebekah Dorworth agreed to support Abby Greenberg because her husband had just been arrested for stalking a political opponent.

327.    While Rebekah Dorworth was on her way to the JW Marriott, Abby Greenberg revealed Joel would be coming to the hotel, but stated he would be golfing. Abby insisted Joel would not be present with the wives and children.

328.    Despite two felony charges pending and no job, the Greenberg Racketeering Enterprise continued its support and provided a penthouse golf and pool weekend for Abby and Joel Greenberg.

329.    Rebekah Dorworth expected to find a burdened and distraught Abby Greenberg, given the current circumstances of her husband.

330.    Instead, Abby Greenberg was in a positive and giddy mood.

331.    When asked how she was coping, Abby Greenberg smiled and stated seriously to Rebekah, "[her] marriage had never been better" and referenced the spending money, vacations, and gifts Joel Greenberg's parents were "taking care of" since Joel's indictment and the Greenbergs' resulting fear that Abby would move away with their two grandchildren.

332.    Abby Greenberg consistently used the children to exact sums of money and favors from Sue and Andrew Greenberg. When pregnant with their second child, son Micah, Abby often gloated that the power would be shifting now to her because she had the Greenberg family's male heir.

333.    Upon arrival at the JW Marriott, Rebekah Dorworth and her daughter were to meet Abby at the hotel pool, but were asked to come upstairs while Abby finished changing.

334.    Yet again, Abby Greenberg's warranties regarding the presence and intentions of Joel Greenberg proved to be untruthful.

335.    Joel Greenberg was in the penthouse hotel suite and greeted Rebekah Dorworth.

336.    Joel Greenberg initially and in earshot of his wife, informed Rebekah Dorworth that the charges were silly and that he was confident he would beat them.

337.    Later, while Abby Greenberg and Rebekah Dorworth were at the pool, Joel Greenberg arrived and cornered Rebekah Dorworth, where his demeanor and tone changed considerably with a series of threats.

338.    Joel Greenberg demanded that Rebekah Dorworth convince Congressman Matt Gaetz ("Gaetz,") and Dorworth to pursue and obtain a preemptive pardon for Joel Greenberg for his crimes.

339.    Gaetz and Dorworth served in the Florida House of Representatives together from 2010-2012 and are close friends.

340.    In 2016, Gaetz ran for and was elected congressman from the First District of Florida.

341.    In office, Gaetz became a staunch ally in Congress of President Donald Trump ("Trump").

342.    Gaetz and Trump were known to be close political allies. As President of the United States, Trump could pardon or commute sentences at his discretion.

343.    Joel Greenberg was currently indicted of two felonies but was aware of pending investigations that would lead to a total of 33 felony counts against Joel Greenberg.

344.    Greenberg told Rebekah Dorworth that "it would be better for everyone if I (Joel Greenberg) got a pardon."

40

345.   He stated that Donald Trump should want to give him a pardon because Joel Greenberg triggered the release of WikiLeaks by posting a message on a billboard that triggered a release by hackers in the intelligence community.

346.   Joel Greenberg suggested that due to his alleged involvement in this release, he was owed a preemptive pardon.

347.   Dorworth has no knowledge of any involvement of Joel Greenberg in any way involving WikiLeaks, and lacks understanding as to how this could create some debt to Greenberg.

348.   Rebekah Dorworth considered the comments and the overall demeanor of Joel Greenberg reflective of someone in mental or nervous breakdown.

349.   Joel Greenberg stated that he was concerned that his father, Andrew Greenberg, had criminal exposure because of Bitcoin investments, which Rebekah Dorworth assumed was related to allegations in Joel Greenberg's indictment."

350.   Joel Greenberg stated that Gaetz should know that investigators were looking through his Venmo records and that "he didn't know what any of them would say."

351.   "He didn't know what any of them would say" was a common refrain from Joel Greenberg when suggesting why Dorworth and Gaetz should be helpful.

352.   If Joel Greenberg had any knowledge of information or testimony that would have been damaging to Dorworth or Gaetz, he would have presented the information in an attempt to exert power over Dorworth and Gaetz.

353.

354.

355.

356.    On the drive home, Rebekah Dorworth phoned Gaetz and informed him of Greenberg's threats, mental state, delusion-of-grandeur intensive allegations of involvement in wider political events, and to ask him what all this meant and what was going on, being previously unaware of anything Joel Greenberg referenced.

357.    Gaetz responded to Rebekah Dorworth that, "it appears Greenberg is trying to make his (Greenberg's) problems everybody else's problems."

358.    Gaetz further expressed disbelief that, "Joel Greenberg would attempt to extort a pardon from a U.S. Congressman."

359.    Rebekah Dorworth concluded the phone conversation and returned home to recount the bizarre behavior to Chris Dorworth.

360.    The resources used to procure the hotel suite utilized by Joel Greenberg come from the Greenberg Racketeering Enterprise.

361.    Dorworth, having heard that Greenberg had attempted to extort and blackmail Dorworth and Gaetz via Dorworth's wife, requested an in-person meeting with Joel Greenberg to confront him.

**L.     Greenberg again Extorts Dorworth for a Pardon**

362.    Shortly thereafter, Dorworth and Joel Greenberg met for breakfast at "Another Broken Egg" restaurant in Heathrow, Florida.

363.    Dorworth was, at this time, only aware of Greenberg's charges related to stalking and false twitter page .

364.    Dorworth confronted Joel Greenberg about the threatening words and manner he had used towards Dorworth's wife, Rebekah Dorworth.

365.    Joel Greenberg then alerted Dorworth that his personal situation had grown more dire as he was under investigation for having sex with A.B.when she was under the age of 18.

366.    Dorworth asked what exposure Joel Greenberg had in the looming investigations.

367.    Like Greenberg conveyed to Rebekah Dorworth, he told Chris Dorworth he was optimistic that the issue could be handled because he was paying for A.B.'s attorneys and anticipated that the Greenberg Racketeering Enterprise could make her not testify by paying her off in exchange for her support and cooperation.

368.    At first, Greenberg made jokes belittling A.B., calling her "a porn star with braces" and lamenting that "she's already proven she will do literally anything for money."

369.    Greenberg's then referred to deviant acts performed by A.B. on the internet for money and then said ". . . I'm pretty sure she'll do what I tell her to for legal fees."

370.    A.B., performing under stage name, is a porn star.

371.    The nature of the videos includes some of the more extreme elements of pornography.

372.    Dorworth asked Joel Greenberg if Dorworth had ever met the girl in question, to which Greenberg responded, "no I don't think so."

373.   Greenberg became insistent that Dorworth persuade Gaetz to obtain a pardon for Greenberg from President Donald Trump.

374.   When Dorworth explained that it neither could nor would not happen, Greenberg grew irritable and insistent that if a pardon was not issued, he faced extensive exposure and that he would seek vengeance on those who turned a blind eye to him at a time of need.

375.   Joel Greenberg stated repeatedly that he did not believe it would be very difficult for Gaetz to procure a preemptive pardon for Greenberg.

376.   Joel Greenberg insisted that if Gaetz wanted to persuade Trump to extend a pardon he could do so because Greenberg believed Trump "loved Gaetz like a son."

377.   Dorworth advised that he had spoken with Gaetz after Greenberg had attacked Rebekah and that Gaetz's direction to Dorworth to relay to Greenberg was, "you've done some very bad things and have some bad times ahead but there is nothing I can do to help you."

378.   Joel Greenberg then pivoted his strategy, stating that the Greenberg Racketeering Enterprise was "willing to pay any amount of money to Ballard Partners to get him (Joel Greenberg) pardoned and make this all go away."

379.   Dorworth informed Greenberg that due to the nature of the crime, human sex trafficking of a minor, that Dorworth was unwilling to accept that engagement or propose it to his superiors.

380.   Joel Greenberg emphasized the value of Greenberg Dental and the resources it could summon to exonerate Joel Greenberg from further responsibility for his racketeering crimes.

381.   Dorworth again declined and informed Joel Greenberg that irrespective of the wealth and resources of Greenberg Dental, nobody would be able to procure a preemptive pardon for the charges Greenberg faced.

382.   Joel Greenberg begged Dorworth to present the offer to Dorworth's boss, and Dorworth repeatedly refused.

383.   Joel Greenberg grew very angry that Gaetz and Dorworth were unwilling to participate in his pursuit of a pardon.

384.   Joel Greenberg evoked the name of Roger Stone, who had his sentence commuted by Trump, then received a pardon, as evidence that such activities were achievable.

385.   Dorworth responded that while Trump did not know Joel Greenberg at all, he had known Roger Stone for decades and had been personal friends with him.

386.   Dorworth further responded that Stone's alleged crimes stemmed from a later debunked investigation into whether Ukraine interfered in the 2016 presidential election and that Joel Greenberg's crimes were stalking and potentially human trafficking of a minor.

387.   Dorworth was unaware of the thirty other felonies that Joel Greenberg would be subsequently charged with at the moment of this conversation.

388.   Dorworth further elaborated that despite the decades of friendship between Roger Stone and Trump, Stone was charged, tried, convicted, and sentenced, and his appeal was filed and lost before Trump commuted Stone's sentence just before his surrender date to the Bureau of Prisons.

389.   Joel Greenberg seemed to accept the explanation that even if a pardon was to be miraculously issued, he would need to be sentenced, handle the appeal, and then possibly pursue a pardon, but that a preemptive pardon was not something he could reasonably expect given the Trump Administration handling of Roger Stone.

390.   Dorworth advised Greenberg that because of the nature of the crime he was facing and Dorworth having an adult daughter, Dorworth could no longer talk to or be associated with

someone accused of human trafficking because of the message it sent to Dorworth's adult daughter.

391.    That was the last time Dorworth saw Joel Greenberg or communicated with him via voice conversation.

**M.    Joel Greenberg Demands Dorworth Orchestrate the Firing of an Assistant U.S. Attorney, or else be Implicated in Greenberg's Criminal Endeavors**

392.    Joel Greenberg, having become convinced that the preemptive pardon was not viable, turned his attention to having the Assistant United States Attorney terminated to avoid future prosecution.

393.    Joel Greenberg incorrectly believed that Gaetz could effectuate the termination of the Assistant United States Attorney by lobbying Trump.

394.    Joel texted Dorworth to request that the prosecutor investigating him be fired.

395.    Copies of the screenshots were provided by Dorworth via counsel to the Government (Greenberg on Left, Dorworth on Right):



396.    Dorworth and Vincent Citro ("Citro"), had been acquaintances over the previous

16 years.

397.    Dorworth recommended Citro to Greenberg as a criminal defense attorney.

398.    Dorworth knew Citro independently of Greenberg.

399.    Per Greenberg's request, Dorworth called Citro.

400.    Citro responded via text:

47



401.    Joel Greenberg had just informed Dorworth that Citro had told him "everyone would need a lawyer."

402.    However, Citro's response that Joel Greenberg said that Dorworth might want a lawyer directly contradicts his own client's statement from 37 minutes before that "Vince says everyone is going to need a lawyer."

48

403. If Citro had warned that everyone was going to need a lawyer, he would have no need to be "super embarrassed tonight" or "very sorry."

404. Based on 16 years of friendship, if Citro had been aware of any accusations of wrongdoing against Dorworth, need for an attorney, he would have recommended counsel, not expressed embarrassment or remorse.

405. Had Dorworth been aware of any wrongdoing on his part that necessitated any attorney, he would have obtained an attorney.

406. Joel Greenberg lied to Dorworth about Citro's belief that everyone would need a lawyer to spur and motivate him to participate in getting the Assistant U.S. Attorney fired.

407. Dorworth did not retain an attorney at the time.

408. Greenberg's statement that he was paying the attorney fees for A.B. is consistent with his threat expressed to Dorworth from Another Broken Egg that "she (A.B.) would do whatever he said because he was paying her legal bills."

409. Dorworth's rejection of Greenberg's request for help spurred the efforts of Greenberg and the Greenberg Racketeering Enterprise to commence a character assassination on Dorworth, Gaetz and others.

410. Joel Greenberg also stated that he was paying the attorney's fees for A.B..

411. According to Joel Greenberg's final Form 6, all of Joel Greenberg's resources came from the Greenberg Racketeering Enterprises.

412. Thus, Greenberg Racketeering Enterprise was paying for A.B.'s legal fees, not Joel Greenberg.

**N.     Joel Greenberg Affirmatively States that Dorworth Has "Done Nothing Wrong."**

413. After Citro's 9:16pm text clarifying that it was Joel Greenberg and not Citro who was advising the need for attorneys, Dorworth confronted Greenberg in writing:

414. Dorworth texted Greenberg "I called Vince. I have nothing to do with any of this and think it is incredibly uncool you are trying to be part of it, Joel. Not. Fucking. Cool." (Supra)

415. The text exchange proceeded:



416.    Joel Greenberg states "I know you aren't" in response to Dorworth's assertions twice stated assertion that Dorworth is "not in involved in this in any way, shape or form."

417.    Throughout the totality of the text exchange, at no point does Greenberg suggest or push back that Dorworth did anything inappropriate, instead saying "You've done nothing wrong."

418.    As Greenberg was fabricating the accusations and executing the fraud paid for entirely by A.B., Dorworth could not be aware of the nature of the allegations that Greenberg was claiming.

419.    As Dorworth had never met A.B., he did not know her age, appearance, or any other characteristics about her.

420.    As Dorworth has never in his life been a member of any dating website, specifically seekingarrangement.com, he was unaware of her screen name "Vintage99".

421.    Joel Greenberg begins to reveal the nature of his allegations with the suggestion that "they may say the partied at your house or something."

422.    If Dorworth was aware of instances where a woman who was part of a human sex trafficking investigation who had "partied" at his home was about to give testimony about said parties, Dorworth would have been highly motivated to secure legal counsel as soon as possible.

423.    Dorworth never "partied" with A.B. at his house or anywhere else.

424.    Greenberg reveals that the Greenberg Racketeering Enterprise is paying for A.B.'s attorneys, confirming his statements from Another Broken Egg that he controlled her testimony because the Greenberg Racketeering Enterprise, specifically Andrew Greenberg and Sue Greenberg was going to "pay her off to make that problem go away."

425.    Dorworth has no Venmo or other financial app history with any woman in his entire life other than his college aged daughter.

426. Greenberg was asking Dorworth "I need help here" to assist in the termination of an Assistant United States Attorney, despite the ridiculousness and impossibility of the request.

427. If Greenberg was aware of ANY wrongdoing on any front conducted by Dorworth, he would have presented the information instead of saying "you've done nothing wrong."

428. Upon Dorworth's refusal to participate in the termination of then Assistant U.S. Attorney, Greenberg then followed through on this promise to Dorworth to "make this a problem for everyone" by claiming that Dorworth, Congressman Matt Gaetz and others were involved in his criminal actions.

429. The Greenberg Racketeering Enterprise resorted to accusing others of having sex with a minor in a fashion identical to the way they accused Brian Beute of having sex with a minor but instead of an anonymous note, they deployed lawyers paid for exclusively by the Greenberg Racketeering Enterprise.

430. Joel Greenberg knew Dorworth and "others" would need to lawyer up because he, through control of A.B.'s testimony by paying her attorney's fees, would offer untruthful testimony.

## O. Greenberg Is Indicted for the Human Trafficking of A.B., then a Minor; Greenberg Falsely Implicates Dorworth

431. On August 19, 2020, a superseding indictment added a single count of sex trafficking a 17 year-old girl. Greenberg subsequently pled guilty to this count.

432. A.B. is the woman Joel Greenberg pled guilty to human trafficking.

433. Joel Greenberg met A.B. on the website "SeekingArrangement.com," a website used to pair young women with "sugar daddies."[9]

---

[9] As described earlier in this Complaint, a "sugar daddy" is a rich older man who lavishes gifts upon one or more young women in return for sex.

434.     According to the Daily Beast, Joel Greenberg was a prolific user of www.seekingarrangement.com.

435.     A.B. claimed to be 19 years old on her registration on www.seekingarrangement.com.

436.     The minimum age for registration on www.seekingarrangement.com is 19 years old.

437.     A.B. was 17 when she registered and lied about her age.

438.     As described above, because Dorworth refused to be complicit in the unlawful actions of the Greenberg Racketeering Enterprise, Joel Greenberg followed through on his promise to implicate Dorworth as a sugar daddy to A.B..

439.     Dorworth has never, to the best of his recollection, met, interacted, communicated, or interacted in any way with A.B..

440.     Dorworth was aware of the existence of a person with the first name of A.B. via a tax collector employee and friend and former roommate of Joel Greenberg, who Dorworth knew to be dating a K.M..

441.     Dorworth did meet the K.M. in her capacity as the friend's girlfriend.

442.     On a couple of occasions, the friend asked if his girlfriend's roommate was welcome to join a social gathering.

443.     Dorworth agreed and said it would be fine, not knowing a single defining characteristic of A.B. other than her first name.

444.     Dorworth does not know if A.B. ever joined the girlfriend or the friend.

445.     Upon review of photographs of the person Dorworth now knows to be A.B., he does not believe he has ever met A.B..

53

446.    At no time did Dorworth ever have a friendship, sexual or non-sexual relationship with A.B..

447.    Since 2017, A.B. has gone on to be an active participant on "OnlyFans.com," a pornography website, and to star in numerous porn videos where she performs under stage name.

448.    In reporting on why the Department of Justice decided not to bring charges against Dorworth related to sex trafficking a minor, CNN quoted sources claiming that the untrustworthiness of Greenberg and A.B. resulted in the DOJ closing the investigation.

**P.    Joel Greenberg Engages in a Stand Off with Law Enforcement and Is Jailed Pending Sentencing**

449.    On February 28, 2021, Joel Greenberg broke terms of his pretrial release and traveled outside the Middle District of Florida to look for Abby Greenberg at her mother's home in Martin County, Florida, during his curfew hours.

450.    Joel Greenberg broke into the mother's home looking for Abby Greenberg, who was out getting coffee, startling a friend of Abby Greenberg's who was lying in bed.

451.    Abby Greenberg's mother called the police, who arrived on the scene.

452.    After the reporting officer was unable to contact Joel Greenberg's federal parole officer, he was allowed to leave.

453.    Joel Greenberg returned to his home in Heathrow, Florida.

454.    There he burned Abby Greenberg's clothing and handbags.

455.    Abby Greenberg contacted law enforcement, who arrested Joel Greenberg for violation of the terms of his pretrial release.

456.    Greenberg barricaded himself into his personal residence and made suicidal statements including "stating at various times that he would take pills, utilize firearms, and that he improvised explosive devices."[10]

457.    Joel Greenberg threatened to have explosive devices and expressed a willingness to harm himself while negotiating his surrender with deputy sheriffs.

458.    Finally, after hours of standoff and negotiation, Joel Greenberg turned himself into custody.

**Q.    With Joel Greenberg Incarcerated, the Greenberg Racketeering Enterprise Sets Out for Revenge against Dorworth**

459.    Incarcerated pending sentencing, Joel Greenberg began offering false testimony against Dorworth and Gaetz.

460.    Gaetz was and is known to be close ally and adviser to former President Donald J. Trump.

461.    Ballard Partners was known throughout the press and throughout the country to be a close ally to President Trump and his administration.

462.    Joel Greenberg believed that Gaetz and Dorworth could obtain relief for Greenberg.

463.    Joel Greenberg lacked the knowledge of civics to realize that a President of the United States cannot merely, at his or her own discretion, directly terminate an Assistant United States Attorney.

464.    Dorworth received an interview request from AUSA Todd Gee.

465.    Dorworth sat with two Assistant U.S. Attorneys and four agents of the Federal Bureau of Investigation.

---

[10] https://www.tampabay.com/news/2021/04/07/joel-greenberg-claimed-to-have-explosives-during-hours-long-negotiation-records-say/

466.     Dorworth's legal counsel, Richard Hornsby, spoke with Todd Gee and was advised that someone claimed Mr. Dorworth engaged in sexual activity with A.B. prior to her 18th birthday.

467.     Dorworth also provided the screen shots of Joel Greenberg's threat and demand to have the Assistant U.S. Attorney Roger Handberg fired, along with Joel's remark that the Greenberg Racketeering Enterprise were paying for A.B.'s attorney's fees.

468.     Dorworth also provided the text exchange with Citro showing that Greenberg had lied about Citro claiming everybody would need a lawyer.

469.     Dorworth voluntarily submitted himself to a polygraph administration to disprove the false allegations against him.

470.     On April 30, 2021, Dorworth was polygraphed at the Office of Richard Hornsby, Dorworth's legal counsel.

471.     A report was generated summarizing the results of the Dorworth Polygraph Report.

472.     In the Background section, the situation is described:

The Dorworths and the Greenbergs began socializing on a regular basis. Dorworth already knew Congressman Matt Gaetz, from their time serving together in the Florida legislatures. Greenberg was subsequently indicted on a wide array of federal charges. Dorworth advised that Greenberg has subsequently dragged Gaetz and himself into the federal probe, because Ballard Partners was closely affiliated with the Trump Campaign, and Greenberg though this would help him obtain favor with federal authorities. Dorworth advised he recently resigned from Ballard Partners due to the negative press involving Greenberg's allegations.

. . .

Dorworth advised that around ten couples would show up as the parties progressed and any girls that did show up "were usually attached to a guy." Dorworth as casual parties out by the pool with casual talking, food, and music. These parties would usually start out in the mid afternoon and progress into the early evening and were attended by friends, co-workers, politicians, business, and real estate professionals, etc.

Dorworth was asked regarding allegations that a minor female had performed oral sex at parties hosted by Dorworth at his home. The minor female was associated with Greenberg in early 2017, Greenberg learned the girl was under the age of 18. Dorworth identified the minor female as [A.B.]. Dorworth was asked whether he knew [A.B.] and he could not recall if he had met her. Dorworth advised [A.B.] was the roommate of K.M., who is the girlfriend of Joe Ellicot, who is Joel Greenberg's best friend and Chief Deputy in the Seminole County Tax Collector's Office.

Dorworth advised sometime in 2017, he was asked by Joe Ellicot if [A.B.] could come by for one of the parties at his house and he advised he had no recollection as to whether she ever showed up. Dorworth advised it is possible that she did come by, however, he does not recall her attendance at his home. Dorworth advised he subsequently looked up [A.B.] online and learned that she was in the porn industry. After seeing [A.B.] online, Dorworth has no recollection as to whether [A.B.] ever attended any of the parties at his home in 2017, or any other time.

Dorworth denied any inappropriate physical or sexual contact with [A.B.], or anyone else, during a party at his home in 2017. Dorworth likewise denied any physical contact with [A.B.], at any time, for sexual reasons.

473.    The questions and answers during the Polygraph Examination were as follows:

Question #1 – "In 2017, did you have any sexual contact with [A.B.]? Dorworth Answer: No"

Question #2 – "In 2017, did you have any contact with [A.B.] for sexual reasons? Dorworth answer: No"

Question #3 – "During parties at your house in 2017, have you had sexual contact with anyone other than your wife? Dorworth answer: No"

474.    The examination showed no deception in Dorworth's answers.

475.    Although the year was limited to 2017 because of A.B.'s age, Dorworth never had contact with A.B. for sexual reasons at any time.

476.    The polygraph report was conducted by Curtis Holleman, former FBI special agent and polygraph administrator who currently does polygraph work for U.S. Customs and Homeland Security.

477.    Holleman has administered polygraph examinations for over 35 years.

478.     The "Test Results" Section of the Report states simply that "[e]ach of the relevant questions was evaluated as NO DECEPTION INDICATED."

479.     The report states:

The charts were independently quality controlled utilizing a computer-scoring algorithm software package, "Objective Scoring System – Version 3 (OSS-3)" developed by Raymond Nelson, Mark Handler and Donald Krapohl and supplied by Lafayette which determined that there was NO SIGNIFICANT REACTIONS to the relevant questions and that there was less than a 0.001 probability this result was produced by a deceptive person…

The charts were again quality-controlled utilizing a computer-scoring algorithm software package developed by Johns Hopkins University Applied Physics Laboratory, "PolyScore for Windows Version 7.3" also supplied by Lafayette which determined that there was NO DECEPTION INDICATED to the relevant questions and that there was less than a .01 probability of deception.

480.     Dorworth did not have any contact, to say nothing of sexual contact, with A.B., and did not have any exchange of resources with someone who was, in the words of U.S. District Judge Gregory Presnell, "was essentially a prostitute." December 1, 2022 Sentencing Trans. at 43:1-2.

481.     Greenberg has previously pleaded guilty to falsely and anonymously accusing a political opponent of having sex with an underage student.

482.     Using the resources of the Greenberg Racketeering Enterprise, Greenberg did the same to Dorworth and Gaetz.

483.     Dorworth paid a total of $3,000 for the first polygraph to defend his reputation against the lies of Joel Greenberg.

484.     Dorworth presented to the Assistant U.S. Attorney a copy of the polygraph examination during his proffer interview.

**R.      Dorworth Is Forced to Exit Ballard Partners because of Greenberg Allegations**

485.     Dorworth was the Managing Partner of the Central Florida Office of Ballard Partners from 2012 until he was forced to leave in the wake of Greenberg's false allegations against him.

486.     Dorworth was a prominent member of the Ballard Firm's Tallahassee practice, lobbying the legislature and executive branches.

487.     Dorworth earned seven-figure compensation during his time at Ballard Partners.

488.     Dorworth had no other personnel issues or conflicts that would have led to his termination or resignation.

489.     Dorworth and his employer mutually agreed that the scrutiny of the allegations and subsequent federal investigation would spill onto clients and their issues and that it was not feasible for Dorworth to continue lobbying.

490.     Dorworth and Ballard amicably parted ways.

491.     Because of the defamatory statements of Joel Greenberg and the Greenberg Racketeering Enterprise, Dorworth is no longer employed in governmental relations.

492.     Upon information and belief, Greenberg deliberately leaked these allegations to the media to embarrass Dorworth.

493.     The lies and attacks set forth by Joel Greenberg and funded by the Greenberg Racketeering Enterprise came only because Dorworth was unwilling to threaten a U.S. Congressman on Joel Greenberg's behalf to obtain a pardon and because Dorworth was unwilling (and frankly totally unable) to procure termination of the prosecutor investigating Greenberg.

**S.      Greenberg and A.B. Falsely Allege Dorworth Participated in Attempts to Obstruct Justice**

494. Having passed a polygraph regarding any sexual behavior with A.B., the investigation progressed from allegations to sexual activity to allegations of obstruction of justice.

495. In September 2021, during dinner Dorworth received a phone call from Gaetz.

496. Gaetz told Dorworth he had been telephoned by his ex-girlfriend, Brianna Garcia ("Garcia").

497. Dorworth and his wife had socialized with Gaetz and Garcia while Gaetz and Garcia were dating.

498. Garcia knew A.B. from similar social circles.

499. Garcia was a recent graduate of the University of Central Florida.

500. Garcia had interned in the U.S. Congress and worked on a statewide gubernatorial campaign.

501. Garcia was employed as a policy analyst at the Florida Department of Education.

502. Dorworth considers Garcia a friend.

503. Gaetz advised that Garcia had spoken to A.B. and was informed that A.B. had been asked questions by investigators about both Dorworth and Gaetz.

504. Gaetz had no understanding of the context of how Dorworth or Gaetz were mentioned, just that they were mentioned.

505. Dorworth contacted Garcia to further understand the context of how Dorworth had been mentioned.

506. Garcia called Dorworth back the next morning and advised that she believed it had something to do with Dorworth's house.

507. In Dorworth's text exchange with Greenberg in which Greenberg stated, "I need help with this" and wherein he advised that the Assistant U.S. Attorney "needs to get fired" and

wherein he stated he was paying A.B.'s legal bills, he specifically said "I would think you'd want to at least have a heads up if some chick says she partied at your house or something."

508.    Dorworth knew that Greenberg was making good on his promise to involve others through perjury and false testimony via A.B., whose attorney fees were being paid by the Greenberg Racketeering Enterprise and who Greenberg asserted would be compensated by the Greenberg Racketeering Enterprise for her false testimony.

509.    Dorworth's first call was to his wife, Rebekah Dorworth, to advise her of the news, and his second call was to legal counsel.

510.    At no time did Dorworth obstruct or attempt to obstruct justice.

511.    Nor did Dorworth attempt to persuade anybody to say anything to anyone.

512.    Dorworth's phone call was purely informational, and revealed key information that further bolstered Dorworth's belief that Joel Greenberg was attempting to encourage A.B. to perjure herself.

513.    Dorworth's counsel Richard Hornsby reached out to U.S. Attorney Todd Gee to check on the status of any investigations involving Chris Dorworth.

514.    Assistant U.S. Attorney Todd Gee informed Hornsby that the scope of the investigation had turned to whether justice was obstructed over the course of a phone call between Dorworth and an ex-girlfriend of Gaetz.

**T.  Dorworth Undergoes Second Polygraph Relating to Obstruction of Justice**

515.    Recognizing that the Greenberg Racketeering Enterprise was fully engaged in defaming Dorworth and Gaetz, Dorworth sought a second polygraph to dispel any notion that he was involved directly or indirectly with any efforts to obstruct justice.

516.    The interview was conducted at the Law Offices of Richard Hornsby.

61

517.     Curtis Holleman, the retired FBI Special Agent of 35 years currently doing contract work for the U.S. Customs Authority and the Department of Homeland Security, conducted the examination.

518.     In the Background section, the situation is described:

On September 28, 2020, Dorworth was having dinner with (a friend) at Fishbones Seafood Restaurant in Lake Mary, Florida, when he received a phone call from US Congressman Matt Gaetz…. "Hey just to put it on your radar, that he (Gaetz) just talked to Bree (Brianna Garcia) and that she had called Gaetz to give him a heads up that a bunch of people were mentioned during a Federal Grand Jury and that you (Dorworth) were one of them.

Dorworth advised that he trusted Gaetz but wanted to verify this information, therefore, stepped away from the dinner table and called Briana Garcia to confirm whether or not he had been mentioned by the grand jury, as Gaetz had said. During their brief conversation, Briana said she could not provide any details, but "a bunch of people were mentioned and you were one of them." Briana could not provide any specifics when he (Dorworth) asked her "where he was at in this thing?" Dorworth advised it was Briana's feeling that Dorworth was not the subject of an investigation, therefore he was not concerned. Dorworth advised that he took a picture a few hours later at the restaurant which depicts him in a jovial mood.

The next day Briana called Dorworth back and told him that she forgot to mention "I think they asked questions about your house and displayed drivers licenses of Dorworth, Gaetz and others." Dorworth advised that he had an idea as to who the others might be, but did not know for sure. Briana told Dorworth that [A.B.] and K.M. had appeared before the Grand Jury.

Dorworth advised "he never asked anyone to say anything to these girls and that he was only in the mode of trying to obtain information." Dorworth advised he had no idea that anyone had appeared before a Federal Grand Jury until he received the phone call from Gaetz. Dorworth advised that he never asked that anyone relay any type of message to [A.B. or K.M.].

519.     As Dorworth had never met A.B., it is certainly understandable that Dorworth would want as much information as possible about why his name was being mentioned before a Federal Grand Jury.

520.     Garcia's revelation that "I think they asked questions about your house…," meshed perfectly with the language used by Joel Greenberg in his text exchange with Dorworth.

521.    During that exchange, Greenberg stated at 9:43pm, "Understood. My only concern is that I don't know what could possibly come out of their mouths, and if any of them where we met etc. I would think you'd want to at least have a heads up if some chick said she partied at your house or something."

522.    Greenberg also confirmed to Dorworth in that text exchange that "[y]ou've done nothing wrong."

523.    A polygraph administration was administered using the following relevant questions:

> Question Number One was "Did you ever make any effort to get K.M. or A.B. to lie to the Grand Jury (Dorworth) Answer: No"
>
> Question Number Two was "Did you ever do anything to get K.M. or A.B. to lie to the Grand Jury? (Dorworth) Answer: No"
>
> Question Number Three was "Did you ever ask Briana (Garcia) to discourage anyone from cooperating with the government? (Dorworth) Answer: No."

524.    Holleman determined there was "NO SIGNIFICANT REACTIONS to the relevant questions and that there was less than a .034 probability this report was a produced by a deceptive person."

525.    Dorworth paid $2,000 for the second polygraph examination.

526.    Dorworth sent the polygraph report to Todd Gee.

**U.    Joel Greenberg Gives False Testimony to the 18th Circuit State Attorney Falsely Accusing Dorworth of Illegal and Immoral Behavior through Resources Provided by The Greenberg Racketeering Enterprise**

527.    Joel Greenberg faced a minimum of 12 years in prison.

528.    Human Trafficking of a Child for Sex Purposes carried with it a ten-year minimum mandatory prison sentence.

529. Aggravated Identity theft carried a two-year minimum mandatory consecutive prison sentence.

530. The Greenberg Racketeering Enterprise thus channeled energy and resources into minimizing prison time for Joel Greenberg.

531. Joel Greenberg began cooperating with the authorities and provided substantial cooperation that led to the arrest of Michael Shirley, Joe Ellicott, Keith Ingersoll, and others.

532. Those charged with crimes and those convicted were all friends of Joel Greenberg's from before he was elected tax collector.

533. In other words, it was only the people that Joel brought into his schemes who were prosecuted.

534. The "political" names offered by Greenberg have not been charged with anything.

535. Federal investigators deeply probed all Greenberg testimony.

536. In fact, after the charges had pended for over a year before his plea, Greenberg's sentencing was further continued numerous times over nearly a year and a half from mid-2021 until late 2022.

537. Despite this, none of Greenberg's accusations against any of the "political" names were charged.

538. In other words, Greenberg did not help solve any crimes other than the crimes that he conducted.

539. The political names of Dorworth and Gaetz were offered by Joel Greenberg because he believed they could have procured him a pardon if they had tried hard enough.

540. Having pled guilty to six felonies, Joel Greenberg continued fulfilling his promise to drag Plaintiff Dorworth into his legal issues.

541.    Greenberg's failure to bring criminal prosecution through fraudulent testimonial perjury frustrated the Greenberg Racketeering Enterprise.

542.    Although Greenberg attempted to tie Dorworth to allegations regarding a Seminole County Campaign for the State Senate, Dorworth was not involved in the campaign of Jestine Iannotti, the candidate in question.

543.    Dorworth has never met Jestine Iannotti nor communicated with her directly or indirectly.

544.    Dorworth did not participate in the recruitment of Jestine Iannotti in any way.

545.    Dorworth did not contribute financially to Jestine Iannotti's campaign.

546.    The 18th Circuit State Attorney released redacted testimony of a jailhouse interview conducted with Greenberg by Stacey Sammons, Chief Assistant State Attorney for the 18th Circuit on June 23, 2022. ("Jailhouse Interview")

547.    In the 119-page document, Greenberg continuously lies about Dorworth and others in the community to spur investigation and to defame and libel the name of Dorworth and others.

548.    Salmons warned Greenberg to testify truthfully at the beginning of the interview:

Salmons: When an assistant state attorney puts an individual under oath, what you're doing is technically testifying before me, which means that this becomes an official proceeding for purposes of the perjury statute. If you lie to a prosecutor under oath in this type of environment, even though its somewhat relaxed – we're conducting an interview, and it's with regard to a material matter; you could be charged with a third-degree felony of perjury. Do you understand that?

Greenberg: I do.

Salmons: I say that not because I think you're going to lie to me, but because I want you to understand that although this is a somewhat relaxed environment by way of the interview, what you are doing is tantamount to testifying in court before a judge. Do you understand that?

Greenberg: I do.

65

Jailhouse Interview 2:23:43.

549.    At no point was Joel Greenberg privy to any conversation with Ben Paris, Foglesong, Dorworth and Jason Brodeur because no conversation with those people ever took place about the Florida Senate District 9 race.

550.    At no time did Dorworth ever converse with Greenberg about participating in the recruitment of a third-party candidate in the Senate District 9 race.

551.    Furthermore, at the time of the alleged conversations, Joel Greenberg was thought to be under investigation by the U.S. Secret Service and had faced numerous investigations from the State Attorney and Florida Department of Law Enforcement.

552.    Greenberg's scandal-intensive service made him unwanted in political conversations because she was viewed as reckless and irresponsible.

553.    While the conversations described above did not happen, they certainly would not have involved Joel Greenberg.

554.    Greenberg traces the idea that he would recruit a third-party candidate to run to a conversation at the 2019 Reagan Day dinner.

555.    Dorworth did not attend the 2019 Reagan Day dinner.

556.    Greenberg stated during the interview that:

I was -- was -- I was I'd planned to do the same thing. I did eventually have a third-party candidate get in. It was a -- a female. Their strategy was -- and this goes back to the conversation in 2000 – late 2019 at the Reagan Day dinner where it was myself, Bob Cortez (sic), um -- what was her name? The lady running against Val Demings last time.

Jailhouse Interview 9:30-37.

557.    Bob Cortes is a former city councilman and mayor of Longwood, Florida, who served as a State Representative from 2014-2018.

558.    Bob Cortes is the Senior Administrator for Community Affairs for the Seminole County Sheriff's Office and is the chairman of the Board of Trustees for Seminole State College.

559.    Dorworth was physically unable to participate in this conversation as he was not in attendance at the 2019 Reagan Day dinner.

560.    Nor was Frank Artiles present at the 2019 Seminole County Reagan Day Dinner.

561.    Dorworth, to the best of his recollection, has never met or communicated with Vennia Francois, the "lady running against Val Demings last time (in 2020)."

562.    Joel Greenberg states affirmatively that Bob Cortes would "corroborate what I'm saying."

563.    Greenberg's statement is false.

564.    Greenberg claims he was present in the presence of Dorworth, Jason Brodeur, Ben Paris and Foglesong during political conversations "at least a dozen times." Jailhouse Interview 14:40.

565.    Joel Greenberg claims to have been present at meetings with various members of the Seminole County community.

566.    At the time, Greenberg was under investigation by the U.S. Secret Service.

567.    Joel Greenberg had provided Dorworth a copy of the subpoena investigating numerous crimes.

568.    Joel Greenberg had been investigated by the 18th Circuit State Attorney for impersonating a law enforcement officer.

569.    Joel Greenberg had made national news with defamatory statements about Muslims.

570.    Joel Greenberg asserted that Richard Anderson, Jason Brodeur, Joel Greenberg, Eric Foglesong and Ben Paris participated "in as many as a dozen" conversations about political events, including the inclusion of a third-party candidate in the race against Brodeur.

571.    No conversations with those participants ever took place in the presence of Joel Greenberg or out of the presence of Joel Greenberg.

572.    Greenberg's 119 pages of testimony contain numerous fabricated allegations intended to harm Dorworth.

573.    Jason Brodeur ("Brodeur") is a member of the Florida State Senate and a resident of Seminole County.

574.    Ben Paris ("Paris") is a former city commissioner and mayor of Longwood, Florida.

575.    Eric Foglesong ("Foglesong") is a former national Democratic political consultant.

576.    Jonathan Alexander Setzer ("Setzer") is a Seminole County resident, community leader and owner of a governmental affairs firm.

577.    Greenberg asserted that Setzer and Anderson would corroborate conversations with Foglesong, Brodeur, Dorworth and Paris. Jailhouse Interview 15:23-18:12; 15:48 (Anderson); 17:34 (Setzer).

578.    Joel Greenberg's assertion that Setzer and Anderson would confirm these conversations took place is false.

579.    The reputation of Joel Greenberg at the time of these alleged conversations was not one of trusted advisor or confidante, but of reckless fool.

580.    The meetings referenced by Greenberg did not happen, with or without Greenberg.

581.    Greenberg's legal representation was paid for by the Greenberg Racketeering Enterprise.

582.     Greenberg's attempts to involve and smear Dorworth and others were part of an attempt to cause legal damage to Dorworth because Dorworth failed to procure a pardon.

583.     The State Attorney of the 18th Florida Circuit announced indictments against Foglesong and Paris as part of a 3rd party "ghost candidate campaign."

584.     After discussing alleged conversations involving Dorworth and others Greenberg describes "these guys" as a "mafia." Jailhouse Interview 8-10.

585.     Greenberg states "My humble opinion is it's absolutely connected. These guys are, for the most part, extremely organized with what they do. They're very intelligent. And they operate as a little – little mafia type…" Jailhouse Interview 10:18-22.

586.     The very next paragraph, upon information and belief, Greenberg describes meetings at Dorworth's house. Jailhouse Interview 10:29-37.

587.     Greenberg called the group a mafia to further encourage law enforcement investigation in line with the efforts of Joel Greenberg and the Greenberg Racketeering Enterprise efforts to continue to seek vengeance against Dorworth.

588.     A very intelligent, extremely organized "mafia" would not include in any improper conversation someone who was known to be under investigation by the U.S. Secret Service, Florida Department of Law Enforcement, and local State Attorney.

589.     The conversations that are described uniformly did not happen, but the suggestions that the people who had them were both (1) intelligent and (2) included troubled Joel Greenberg in any improper conversations, are contradictory.

590.     Greenberg also falsely alleged Dorworth had an extramarital affair. On two separate occasions during his interview, Joel Greenberg suggests Dorworth was having an extramarital affair with his female attorney. Jailhouse Interview at 31:32-41, 100:28-42. These statements

became part of Greenberg's discoverable file with the Florida Department of Law Enforcement and, as a result of discovery requests in other cases, have been placed into the public domain.

591.    At no time did Dorworth and his attorney have an extramarital affair.

592.    At no time did Dorworth suggest to Joel Greenberg any affair with his attorney.

593.    Joel Greenberg returns to his pattern of accusing his opponents of sexually scandalous behavior in an attempt to damage them.

594.    The only purpose in stating this was to cause harm to the reputation and marriage of Dorworth.

595.    Throughout the 119-page document, Joel Greenberg spews generalities falsely suggesting improper behavior by Dorworth.

596.    As referenced above, Dorworth has no history of any money transfers via PayPal, CashApp, Venmo, etc. to Joel Greenberg, Joe Ellicott, Matt Gaetz, or any females throughout.

597.    Joel Greenberg suggests that the absence of any money trail, be it cash withdrawals or transfers using money apps like Venmo, PayPal, Apple Cash, etc., is because Dorworth borrowed cash from James H. Stelling, III ("Stelling").

598.    Stelling is a former business partner and friend of Dorworth.

599.    Stelling is a former Vice-Chairman of the Republican Party of Florida.

600.    Stelling and his wife, Lorayne, are elderly and subside largely off their social security checks.

601.    At no time since Dorworth met Joel Greenberg in October 2016 to date has Stelling lent Dorworth any amount of money for any reason.

602.    Stelling is elderly and does not have the resources to lend.

603.   Greenberg's statement that an 80-year-old man has large sums of cash in his home with no evidence or knowledge that he does invites unnecessary danger on an elderly couple.

604.   Joel Greenberg had no reason to believe that Stelling lent Dorworth any money.

605.   Greenberg would have no knowledge of Stelling's cash reserves or willingness to loan money.

606.   At no time did Dorworth tell Joel Greenberg that he'd borrowed money from Stelling.

607.   Had Dorworth borrowed money from Stelling it would have been in no way illegal or improper.

608.   Greenberg's suggestion that Dorworth was borrowing cash from Stelling sought to explain why Dorworth had no money trail for the crimes and criminal activity that Joel Greenberg so desperately wishes Dorworth undertook.

609.   Joel Greenberg states that Dorworth borrowed cash from Stelling to avoid detection in acquiring, "females, drugs, fill in the blank." Jailhouse Interview 27:38-39.

610.   Greenberg's lies exist to defame the name of Dorworth and to suggest he participated in criminal activity he did not participate in.

611.   Stelling has never been arrested or convicted of any felony or misdemeanor.

612.   Stelling has never been accused of lying in any court matter.

613.   Greenberg entirely fabricated a history of Dorworth borrowing money from Jim Stelling, presumably because Greenberg knew that Dorworth had no history of transactions or withdrawals necessary to support Greenberg's extensive accusations against Dorworth.

614.   This lie, intended to hurt Dorworth's reputation, was entirely fabricated.

615. Most all the unredacted portions of the Greenberg testimony consist of broad generalities and no specific detail of any conversation, just Joel Greenberg's assertion that he was part of them.

616. Joel Greenberg has a series of excuses about why he can't remember things that range from his consumption of alcohol to "when you sit in 15 a cell for 23 hours a day your mind kind of goes to mush." Jailhouse Interview 32:15-16.

617. Greenberg also fabricated a link between Dorworth and the financing of the Senate District 9 race.

618. At no time did Foglesong ask Dorworth for money to contribute to the campaign and at no time Dorworth offer to give money to the campaign or to help pay a qualifying fee for Jestine Iannotti.

619. Dorworth did not give Ben Paris, his wife or any affiliated person or entity any money whatsoever for any purpose, to say nothing of $25,000, and certainly not in connection with any campaign for office.

## V. Abby Greenberg Remains an Active Part of the Greenberg Racketeering Enterprise despite Separation and Divorce from Joel Greenberg

620. The allegation that Dorworth gave Ben Paris or his wife $25,000 to run for Seminole County Board of County Commissioners was made by Abby Greenberg, who despite her divorce from Joel Greenberg, was and remains a member of the Greenberg Racketeering Enterprise.

621. Abby Greenberg continues to receive payments and compensation from the Greenberg Racketeering Enterprise.

622.

623. Abby Greenberg is the ex-wife of Joel Greenberg.

624. Dorworth met Joel Greenberg through his wife, Rebekah Dorworth, and Abby Greenberg.

625. Abby Greenberg and Rebekah Dorworth first met as members of the Junior League of Greater Orlando, a woman's philanthropic organization.

626. Abby Greenberg and Rebekah Dorworth met again at the Heathrow Modern Mom's Club, a neighborhood woman's organization consisting of mothers of newborn and young children.

627. Abby Greenberg and Rebekah Dorworth introduced Dorworth and Joel Greenberg at a political fundraiser.

628.

629.

630.

631.

632.

633.

634.

635.

636.     Abby and Joel Greenberg's divorce was finalized in April 2022, after filing in October 2021.

637.     According to Seminole County Supervisor of Elections Records, Abby Greenberg is registered to vote at 1253 Bella Vista Circle, Longwood, Florida.

638.     Abby Greenberg is charged no rent to live in her home, having been given a life estate in the property.

639.     The Greenberg Racketeering Enterprise spent over $100,000 on renovations at 1253 Bella Vista Circle prior to issuing a life estate to Abby Greenberg.

640.     The Greenberg Racketeering Enterprise continues to provide housing to Abby Greenberg as they have done since they met her.

641.

642.

643.

644.

645.

646.    Joel Greenberg was remanded to custody after violating the terms of pre-sentencing release because he drove to Abby Greenberg's mother's home to confront Abby Greenberg about moving into the Sue Greenberg's home.

647.    When law enforcement sent Joel Greenberg away, he returned to the family's home and burned Abby Greenberg's clothing and bags.

648.

649.

                        Abby Greenberg opted to keep the disgraced Greenberg last name instead of reverting to her maiden name and remains compensated financially by the Greenberg Racketeering Enterprise.

---

[11] https://www.thedailybeast.com/joel-greenberg-letter-written-for-roger-stone-says-matt-gaetz-paid-for-sex-with-minor east.com)

650.    Abby Greenberg is a frequent tool of the Greenberg Racketeering Enterprise's efforts to defame and slander political enemies of the Greenberg Racketeering Enterprise.

651.    For example, Abby Greenberg was the source of the information that Dorworth had paid $25,000 to Ben Paris to run. Jailhouse Interview 23:29-32.

652.    When fallout from the scandal began, Abby Greenberg was upset that other people were not getting in trouble. Jailhouse Interview 39:8-25.

653.    Abby was "furious [Joel] had taken the fall" and "would be receptive to any [of the government's] needs" regarding testimony. Jailhouse Interview 40:14-18

654.    Joel Greenberg perpetrated a horrific series of personal and legal endeavors, leaving Abby Greenberg's children without a father for 11 years while he is incarcerated, yet he is highly confident that she will do or say whatever is needed of her.

655.    Nobody mentioned in this transcript did anything adverse or negative to Abby Greenberg other than Joel Greenberg.

656.    To the contrary, on the day Joel Greenberg was arrested, Abby and Sue Greenberg called Dorworth to determine what to do next.

657.    Dorworth, as a courtesy to the mother and wife of recently arrested Joel Greenberg, alerted Greenberg's office and coordinated a resignation letter.

658.    Rebekah Dorworth visited Abby Greenberg to check on her well-being after Joel Greenberg's initial arrest and, after being told by Abby Greenberg that Joel Greenberg would not be present, was surprised and threatened by Joel Greenberg.

659.    That Abby Greenberg believes Joel Greenberg has not harmed her and that others more than any other other person has makes no logical sense.

660.   Abby Greenberg is given access to a home valued at approximately $783,000 by the Greenberg Racketeering Enterprise.

661.   Abby Greenberg is a member of and compensated by the Greenberg Racketeering Enterprise.

662.   Abby Greenberg is angry that Dorworth and Gaetz would not, could not and did not pursue a preemptive pardon for Joel Greenberg nor would attempt to have Roger Handberg removed from his position for the purpose of obstructing justice.

663.   As a result of her compensation from the Greenberg Racketeering Enterprise, Abby Greenberg defamatorily states that Dorworth paid $25,000 to Ben Paris to run for the Seminole County Board of County Commissioners despite no knowledge that such action took place – because such events never took place.

664.   Abby Greenberg disclosed this information to Joel Greenberg knowing that he was continuing in ongoing conversations as an effort to incriminate Dorworth in wrongdoing that was entirely fictional.

665.   When Abby Greenberg shared this untrue information, she did so knowing that it would be used to further the goal of vengeance and retribution.

666.   For Abby Greenberg to transmit this information without doing any research as to the veracity of the statement is reckless and irresponsible.

**W.   Dorworth Voluntarily Submits to Third Polygraph to Dispel Brazen Greenberg Lies**

667.   On September 13, 2022, Dorworth submitted himself to the third polygraph examination to contradict the testimony given by Greenberg to seek his promised vengeance for not seeking the termination of an Assistant U.S. Attorney Roger Handberg and in not successfully procuring or attempting to attempt a pardon for Joel Greenberg.

668.    The Polygraph reads as follows:

Mr. Hornsby advised that Joel Greenberg has alleged that Dorworth was involved in a ghost candidate scheme regarding the 2020 Florida Senate District Nine election and paid sums of cash to various people involved with the ghost candidate. During a recent proffer, Greenberg alleged that Dorworth's former business partner Jim Stelling, kept large sums of cash at his home and would give it to Dorworth if asked.   Greenberg suggests that it was used for illegal campaign finance of the District 9 Senate race and whatever else, including, in the words of Greenberg, "for females, drugs, fill in the blank."

Greenberg also alleged that Dorworth gave Eric Foglesong cash to aid in the qualification of Jestine Iannotti in the District Nine Florida Senate race and Dorworth likewise denied this allegation.

Greenberg alleges his ex-wife Abby Greenberg told him that while she was at a Seminole County Republican Executive Committee Meeting, she heard Dorworth paid Ben Paris $25,000 to run for political office.

Dorworth was thereafter asked since meeting Joel Greenberg in September 2016, had Dorworth had ever received any cash from Jim Stelling for any reason and Dorworth denied this allegation.   Dorworth advised that Stelling is a neighbor, long-time friend, former business partner, and previously served as the chairman of the Seminole County Republican Party and as vice-chairman and chairman of the Rules Committee of the Republican Party of Florida.

Dorworth was asked regarding the allegation that Dorworth gave cash to Eric Foglesong to assist in the qualification of Jestine Ianotti (sic) in the District Nine Florida Senate race and Dorworth likewise denied this allegation.

Finally, Dorworth was asked whether he ever paid Ben Paris to run for political allegation, stating it was false.   Dorworth advised that Dorworth is a friend, the Mayor of Longwood, Florida, and current chairman of the Republican Party of Seminole County.

669.    In the Relevant Questions section, Dorworth was asked three questions:

Question #1 was "Since September 2016,[12] has Jim Stelling ever given you any cash for any reason? (Dorworth) Answer: No."

Question #2 "Did you ever give Eric Foglesong any money to aid any third-party candidates?  Answer: No."

---

[12] Dorworth met Joel Greenberg in September 2016.

Question #3 "Did you ever pay Ben Paris any money to run for office? (Dorworth) No."

670.  Under "TEST RESULTS", the report denotes "Each of the relevant questions was evaluated as NO DECEPTION INDICATED."

671.  The report continues:

The charts were independently controlled utilizing a computer-scoring algorithm software package, "Objective Scoring System – Version 3 (OSS-3) developed by Raymond Nelson, Mark Handler and Donald Krapohl and supplied by Lafayette which determined that there were NO SIGNIFICANT REACTIONS to the relevant question and that there was less than a .006 probability this result was produced by a deceptive person.

The charts were again quality utilizing a computer-scoring algorithm software package developed by Johns Hopkins University Applied Physics Laboratory "Polyscore for Windows Version 7.3" also supplied by Lafayette which determined that there was NO DECEPTION INDICATED to the relevant questions and there was less than a .01 probability of deception.

## X.  The Greenberg Racketeering Enterprise Attempts to Obstruct Justice by Implicating Others

672.  Fritz Scheller has represented Joel Greenberg since Citro and Greenberg parted ways.

673.  Fritz Scheller is open about his desire to incriminate as many other people as possible for the purpose of reducing his client's sentence.

674.  Fritz Scheller's legal bills were entirely funded by the Greenberg Racketeering Enterprise.

675.  In the courthouse transcript, Fritz Scheller tells investigators that he has created a "shadow investigation."

676.  Joel Greenberg had no resources of his own.

677.     The Greenberg Racketeering Enterprise funded Fritz Scheller's efforts on Joel Greenberg's behalf.

678.     On April 8, 2021, Scheller was quoted in many news publications, including the Orlando Sentinel, as saying "I am sure Matt Gaetz is not feeling very comfortable today."[13]

679.     Shadow investigations require extensive resources, which have been paid for by the Greenberg Racketeering Enterprise.

680.     The sole source of resources for the "independent investigation" was the Greenberg Racketeering Enterprise.

681.     In a December 7, 2022, WFTV ABC Channel 9 news story written by Doralene Jones, Scheller actively encourages the prosecution of others using the resources of the Greenberg Racketeering Entity even after the conviction and sentencing of Joel Greenberg.[14] Jones writes that:

> Former Seminole County Tax Collector Joel Greenberg's attorney is lashing out at the Department of Justice in Washington, pushing it to pursue charges against people his client implicated in other crimes during the investigation."
>
> "To emphasize to the public how important, how significant his cooperation was and also to set the table for him to get a sentence re-education (sic) under what's known as rule 35 (b)," attorney Fritz Scheller said of his motivation.
>
> . . .
>
> Federal rule, 35 (b), requires Greenberg's substantial assistance in investigating or prosecuting another person.
>
> Jones asked Scheller whether Greenberg deserves to have any more time taken off his sentence.

---

[13] https://www.politico.com/news/2021/04/08/key-figure-in-matt-gaetz-probe-likely-cooperating-with-federal-prosecutors-480289

[14] https://www.wftv.com/news/local/seminole-county/joel-greenbergs-attorney-pushing-more-prosecutions/UG3QR3TRRJBFPP64FFZH3HMT4A/

"He destroyed lives, but ultimately destroyed his own life. Yes he should serve his time, but if he can make a difference that's his only path toward redemption," Scheller said.

Greenberg is now serving 11 years, which is just a fraction of the 27 years he was facing for federal charges linked to sex trafficking, identity theft, public corruption involving taxpayer money and contracts, stalking and fraudulent SBA loans.

Scheller said he's concerned that Greenberg was an easy prosecution because his conduct was blatant, and he believes other people implicated are going to be a little bit tougher.

"Other than the SBA, there's a common thread — you can't look at them in isolation. You have oftentimes the same players involved in," he said. "What's really a threat to our democracy is the dark money that flows through elections and especially the ghost candidates that are being run."

Scheller refused to give up names. But he said there as many as 10 people connected to politics in Orange, Seminole, Broward and Leon counties who he believes should be charged with crimes based on the testimony and physical evidence Greenberg provided, including lobbyists, fundraisers, former candidates and more than a few current politicians at the state level.

"There's more than a few at the state level. There's this idea that Greenberg got kickbacks that he pocketed, and that's certainly true but some of those kickbacks didn't go into his pocket, they went into campaigns," Scheller said.

He said some of that was taxpayer money. He says while people should be concerned about the other crimes Greenberg committed, the bigger threat to the general public is the election crimes.

Joel Greenberg pled guilty to stealing cryptocurrency that he then used to obtain his reelection.

"You can always run third-party candidates, that's not illegal, but how they're funded, that's the crime. Instead of having a straightforward election, they're putting in candidates to tip the vote one way or another," Scheller said.

Id.

682.    Scheller's client Joel Greenberg admitted to putting a third-party candidate in his own re-election race.

683.    Scheller is fully aware that his client has a history of pathological lying tendencies and conviction for lying about others having sex with minors as a revenge yet relies upon the present testimony as if it is entirely truthful.

684.    Scheller's comments illustrate the desire of the Greenberg Racketeering Enterprise to incriminate others.

685.    Scheller is quoted in a Cnnpolitics.com article written by Marshall Cohen on December 1, 2022:

> After the sentencing, Greenberg's attorney Fritz Scheller said he was "disappointed" that the Justice Department hasn't charged anyone else as part of the sex-trafficking investigation, which includes Gaetz.
>
> Scheller previously said in court that Greenberg gave investigators information about seven or eight other men as it pertains to the illegal sexual contact with a minor.
>
> "We expect the federal government to take on the hard cases and not just the easy convictions," Scheller said, urging prosecutors to "pursue others."
>
> "That's what they're there for," Scheller added, saying the Justice Department should hold "higher-level" figures accountable for the sake of democracy.
>
> Scheller said he and Greenberg communicated "fairly recently … in the past few months" with prosecutors as part of his cooperation in the sex-trafficking investigation.
> . . .
>
> Scheller, Greenberg's attorney, said his client has lost everything, including his marriage and his kids. He said Greenberg's parents cut him out of their will, and that Greenberg sold his home so he could pay back the money he stole from Seminole County and the Small Business Administration.[15]

686.    The Greenberg Racketeering Enterprise is lying about who paid the restitution for Joel Greenberg.

---

[15] https://www.cnn.com/2022/12/01/politics/joel-greenberg-sentencing/index.html

687.    The Final Form 6 filed by Joel Greenberg discloses his home's worth of $624,000 against $480,000 owed in a mortgage, with approximately $144,000 of equity.

688.    Joel Greenberg's total net worth was listed at $322,000.

689.    Joel Greenberg and Abby Greenberg divorced and divided the remaining assets.

690.    Without the continued support of the Greenberg Racketeering Enterprise, Joel Greenberg would not have been able to pay restitution.

691.    Joel Greenberg paid a total of $1,340,000 via wire from Scheller's office, according to Seminole County Government records.

692.    Greenberg paid another $590,000 for federal restitution over theft from the Small Business Administration.

693.    Joel Greenberg did not have the financial resources to pay the restitution amounts to minimize the amount of jail time served by Joel Greenberg, but the Greenberg Racketeering exercise took responsibility for the purpose of minimizing the criminal sentence of Joel Greenberg.

694.    Joel Greenberg continues to lie to achieve a further sentencing reduction by suggesting that the restitution was paid for by his home, although his Form 6 declared equity in the home of $144,000.

695.    The Greenberg Racketeering Enterprise continues to perpetuate lies intended to defame Dorworth, Gaetz and others only for the benefit of Joel Greenberg and the Greenberg Racketeering Enterprise.

### Y. A.B. Continues to Use Greenberg Racketeering Enterprise Resources to Defame, Harass, and Retaliate against Dorworth

696.    On December 30, 2022, legal counsel representing A.B. wrote to Hornsby:

Dear Mr. Hornsby: Our firm represents Ms. [A.B.] who was the 17-year-old at issue in the attached article which references your client, Chris Dorworth. Ms. [A.B.] has hired us to pursue claims against your client and others including child sex

trafficking and rape. This letter is to inquire as to whether a private resolution of these claims is possible prior to commencing a lawsuit. If your client is interested in such a resolution, please, either yourself or someone else on his behalf, get back to me prior to January 6, 2023. If you would like to discuss this matter further before that date, let me know and we'll schedule a time to talk.

697.     The article forwarded by A.B.'s attorneys was a May 17, 2021, news article written by Mark Harper and published in the Daytona Beach News Journal.

698.     The article mentions Dorworth only once in the context of investigations into third party candidates in the SD 9 article and not in connection with the investigation regarding A.B..

699.     The only portion of the article references Dorworth is the following:

The New York Times has reported that federal investigators were looking into a conversation about the ghost candidate between Gaetz and Chris Dorworth, a Seminole County-based developer and former lawmaker who ran in the same Republican circles as Greenberg. Scheller was asked whether Greenberg was relaying any information about that race to investigators.[16]

700.     It is known from Joel Greenberg's jailhouse testimony that Joel Greenberg is the source of information that Dorworth was involved with any third-party candidate, a claim Dorworth and all accused parties steadfastly deny.

701.     Hornsby asked the attorneys representing A.B. for details pertaining to the alleged occurrence but did not receive any persuasive corroboration or details.

702.     During the meeting between Dorworth and Joel Greenberg at Another Broken Egg, Joel Greenberg told Dorworth he was paying for A.B.'s attorneys and that "she would do what he said."

703.     Dorworth submitted himself to a polygraph examination, with relevant questions concerning whether Dorworth had sexual contact with A.B. and whether Dorworth had any contact

---

[16] https://www.usatoday.com/story/news/politics/2021/05/17/joel-greenberg-rep-matt-gaetz-wingman-admits-child-sex-trafficking-cooperating-with-authorities/5129972001/

with A.B. for sexual purposes. The report concluded each response was evaluated as "no deception indicated" and that there was less than a .01 probability of deception.

704.    In the text message, Joel Greenberg confirmed that he was paying A.B.'s attorney fees.

705.    All of Joel Greenberg's resources and ability to pay for A.B.'s attorneys come from the Greenberg Racketeering Enterprise.

706.    Hornsby summarized the information he learned during the conversation with A.B.'s attorneys in a January 10, 2023, letter response:

> Based on our conversation, your client alleges on one occasion before her 18th birthday, she engaged in commercial sexual intercourse with Mr. Dorworth at a hotel in July 2017.
>
> You claim Joel Greenberg was present and would corroborate her allegation, although you have not independently spoken with him to confirm this. You also advise your client has no evidence of payment from Mr. Dorworth (i.e., Venmo, CashApp, PayPal, etc. but Mr. Greenberg must have paid on my client's behalf.
>
> Further, while not per se relevant to liability, but clearly relevant to damages, you postulate Mr. Dorworth knew your client was underage because Greenberg and "others" referred to her as "Vintage99," which is supposedly a fine-wine reference to her birth year.  However, you don't claim to possess actual evidence Mr. Dorworth knew her as "Vintage99" or referred to her as such.

707.    A.B. knows Greenberg will testify because Greenberg has paid for her attorneys and has been directed by Greenberg to undertake whatever activities are necessary to further damage and defame Dorworth, Gaetz and others.

708.    Joel Greenberg pled guilty to and is serving time for lying about a political opponent of his, Brian Beute, having sex with an underage person.

709.    Joel Greenberg pled guilty to human trafficking A.B. as a minor.

710.    The relationship between a defendant and a person they pled guilty to trafficking for sex purposes would not presumably have a guilty party in prison overly willing to testify.

711.    Joel Greenberg, through lawyers and resources provided by the Greenberg Racketeering Entity, attempts to continue his vendetta because Dorworth would not aid in obtaining a preemptive pardon and would not engage in Obstruction of Justice by attempting to tamper with the employment of the Assistant U.S. Attorney investigating Greenberg.

712.    Moreover, Joel Greenberg attempted to snare Dorworth into the investigation by utilizing a screen name to identify her, but Dorworth was not aware of her identity.

713.    The attempts of A.B.'s attorneys to cite Dorworth's knowledge of A.B. screen name is part of a coordinated attack first advanced by Joel Greenberg when he demanded the termination of Roger Handberg.

**Z.    The Greenberg Racketeering Enterprise Attempts to Distance Themselves from Joel Greenberg while Paying His Legal Bills, Restitution and Providing a Home for His Ex-Wife and Children**

714.    To minimize the fiscal impact and lower his sentence, the Greenberg Racketeering Enterprise paid restitution to Seminole County.

715.    The Greenberg Racketeering Enterprise paid $1.25 million via a wire initiated by Fritz Sheller on November 25, 2022, totaling $1.25 million.

716.    Joel Greenberg had been incarcerated for over a year on the date of the wire.

717.    Joel Greenberg was divorced at the time of the wire.

718.    According to Greenberg's Form 6's, 100% of Joel Greenberg's assets were provided by the Greenberg Racketeering Enterprise.

719.    A cashier's check from the U.S. Treasury for $109,786.12 was paid to the Seminole County Attorney's Office as restitution.

720.    Joel Greenberg was incarcerated and could not have physically obtained a cashier's check, even if he had the money to do so.

721.     According to the Orlando Sentinel, Joel Greenberg paid $590,000 to the Federal Government as restitution for his theft of SBA loan money.

722.     Joel Greenberg did not have $1.93 million.

723.     Upon information and belief, if Joel Greenberg had not come up with $1.93 million, he would have received a harsher prison sentence due to greater loss to the taxpayer.

724.     Assets of the Greenberg Racketeering Enterprise paid 100% of the restitution to the state and federal government for the criminal wrongdoing of Joel Greenberg.

725.     According to the government, the investigation into human trafficking and related issues has been closed with no charges for Dorworth, Gaetz or any other "political" person.

## ALLEGATIONS COMMON TO THE RICO COUNTS

### A.     THE ENTERPRISES

726.     The complex and far-reaching tentacles of the Greenberg family's unlawful exploits have involved multiple separate, but interconnected enterprises:

   a.     The Greenberg Dental Enterprise, through which the Greenberg family has unlawfully enriched itself by operating dental clinics as pill mills;

   b.     The Greenberg Campaign Enterprise, through which the Greenberg family acted to secure Joel Greenberg's election as Tax Collector;

   c.     The Seminole County Tax Collector's Office, during the period Joel Greenberg served as Tax Collector; and

   d.     The Greenberg Racketeering Enterprise, which supported the other three enterprises, and through which the Greenberg family has acted, and continues to act, to lessen Joel Greenberg's criminal liability and engage in extortion and defamation of persons such as Dorworth.

## B.   THE PARTIES TO EACH ENTERPRISE

727.   Each enterprise is comprised of the same actors: Joel Greenberg, Andrew Greenberg, Sue Greenberg, Abby Greenberg, Greenberg Dental, and AWG, Inc.

728.   Andrew Greenberg co-owns a chain of dental clinics, Greenberg Dental.

729.   Greenberg Dental holds itself out as having "90+ Florida offices."

730.   Andrew and Sue Greenberg have enjoyed significant wealth as a result of the success of the dental clinics, earning millions of dollars per year.

731.   Joel Greenberg told Dorworth that the dental clinics were essentially run as "pill mills," which are illegal facilities that regularly prescribe opioids without sufficient medical history, physical examination, diagnosis, medical monitoring, or documentation.

732.   Specifically, on various occasions, Joel Greenberg told Dorworth the following:

   a.   "The reason my parents are so rich is that they figured out how to make Medicaid pay for people's opioids instead of cash at a pill mill."

   b.   "The formula for Greenberg's Dental's success is really quite straightforward. People really want opioids and Greenberg Dental is happy give them the maximum amount they can."

733.   Joel Greenberg made frequent jokes to Dorworth about Greenberg Dental's reputation as a pill mill.

734.   Joel Greenberg also told Dorworth that he (Greenberg) obtained oxycontin by using prescription drug pads from Greenberg Dental.

735.   Joel Greenberg told Dorworth the use of Greenberg Dental's prescription pads was done with the full knowledge and consent of Andrew Greenberg and Sue Greenberg, who believed

88

it would be safer for Joel to use pharmaceutical grade oxycontin rather than the version obtainable on the streets.

736.    Joel Greenberg's statements suggest the Greenberg Dental Enterprise has violated numerous state and federal laws, including, but not limited to:

      a.    21 U.S.C. § 841, unlawful distribution or dispensing of a controlled substance;

      b.    21 U.S.C. § 846, conspiracy to unlawfully distribute or dispense a controlled substance; and

      c.    18 U.S.C. §§ 1341 and 1343, mail and wire fraud, specifically as to Medicaid, Medicare, and private insurance.

      d.    The Greenberg Dental Enterprise also violated 18 U.S.C. § 1347, health care fraud.

737.    Upon information and belief, some or all of Andrew Greenberg's income from Greenberg Dental flows to Andrew Greenberg's corporation, AWG, Inc. The principal address of AWG, Inc., is Andrew and Sue Greenberg's personal residence.

738.    AWG, Inc., is the vehicle through which Andrew and Sue Greenberg fund their son's activities, lifestyle, and, beginning in 2016, criminal exploits.

739.    Joel Greenberg told Dorworth that he (Greenberg) receives $400,000 per year to provide "strategic advice" to AWG, Inc.

740.    Dorworth has known Joel Greenberg since 2016 and has never seen or heard of Joel Greenberg performing activities for AWG, Inc. To the best of Dorworth's knowledge, Joel Greenberg had been continuously unemployed, save for employment at the radio station and Tax Collector's office.

741. Abby Greenberg, as Joel's former spouse has benefitted from Greenberg Dental, AWG, Inc., Andrew Greenberg, Sue Greenberg's funding of Joel's activities and lifestyle. She continues to benefit even though she and Joel Greenberg have divorced.

742. Andrew Greenberg, Sue Greenberg, and Abby Greenberg were aware of Joel Greenberg's history of drug abuse and theft dating to his teen years.

743. They were also aware of Joel Greenberg's long history of taking advantage of opportunities, such as only receiving a high school degree through the directed philanthropy of his parents, remaining in college for seven years without earning a degree, and living off his parents' money.

744. They were also aware of Joel Greenberg's use of unfounded allegations to achieve his goals. For example, while under an involuntary psychiatric commitment at age 21 as a result of taking LSD, Joel accused an orderly of grabbing his penis. No evidence supported the claim.

745. On the day Sue Greenberg learned Joel planned to run for the Seminole County Tax Collector's Office, she cried and stated, "he's going to wind up in prison."

## C. THE GREENBERG RACKETEERING ENTERPRISE SEES AN OPPORTUNITY TO ENRICH ITSELF THROUGH THE SEMINOLE COUNTY TAX COLLECTOR'S OFFICE.

746. Tax collectors are responsible for the collection of property taxes in their respective counties. They also issue driver's licenses and license plates.

747. In the State of Florida, tax collectors are county constitutional officers, meaning their position is designated in the Florida Constitution, along with sheriffs, property appraisers, supervisors of election, and clerks of court.

748. Tax collectors enjoy autonomy because of their county constitutional officer status, such as the ability to establish branch offices at their discretion. They are also not required to

competitively bid services, meaning the tax collector determines who to hire and what to pay them, without input from the local county.

749.    Whereas other county constitutional officers are funded through their respective Board of County Commissioners, tax collectors are funded through the Florida Department of Revenue.

750.    As a result, the tax dollars received by the county tax collector are first held by the Tax Collector's office. After the office's expenses are paid, the tax collector may, at his/her option, turn over excess tax collections to the county.

751.    Before Joel Greenberg assumed office in 2017, the prior Seminole County Tax Collector, Ray Valdes, served in the role for 28 years.

752.    For the fourteen years before Joel Greenberg's tenure, Mr. Valdes turned over to Seminole County, on average, $4,961,251.29 per year:

| Fiscal Year | Amount |
| --- | --- |
| 2003 | $4,785,029 |
| 2004 | $4,386,389 |
| 2005 | $4,867,964 |
| 2006 | $5,550,462 |
| 2007 | $6,641,325 |
| 2008 | $3,454,391 |
| 2009 | $6,138,562 |
| 2010 | $6,035,543 |
| 2011 | $5,415,796 |
| 2012 | $4,116,517 |
| 2013 | $2,638,617 |
| 2014 | $4,184,558 |
| 2015 | $3,819,873 |
| 2016 | $7,422,492 |

753.    Because a tax collector is not required to turn over any specific amount to the county, Joel Greenberg saw an opportunity to access millions of dollars per year with limited government oversight, through which he could not only enrich himself and his friends, but also fund his criminal endeavors and next election via cryptocurrency stolen from the office.

754.    Joel Greenberg knew he could not be elected on his own. He needed the help of the Greenberg Racketeering Enterprise. And despite the Greenberg Racketeering Enterprise's knowledge of Joel's long history of failure, addiction, skirting the law, and Sue Greenberg's belief that Joel would wind up in prison, the Greenberg Racketeering Enterprise stepped up to the plate.

755.    In other words, the Greenberg Racketeering Enterprise supported Greenberg's takeover of the Seminole County Tax Collector's Office even though it knew Greenberg would commit crimes using that office.

**D.    THE GREENBERG CAMPAIGN ENTERPRISE SEEKS TO TAKE OVER THE SEMINOLE COUNTY TAX COLLECTOR'S OFFICE.**

756.    In the primary, Joel Greenberg was facing the long-time incumbent, Ray Valdes.

757.    Andrew Greenberg, Sue Greenberg, AWG, Inc., AWG Family Limited Partnership, Martin Greenberg (Joel's brother), and Adam Greenberg (Joel's brother), each donated $1,000 to Joel's campaign.

758.    During this time, Defendant AWG, Inc., also continued providing Joel Greenberg quarterly $100,000 payments.

759.    Joel Greenberg used Andrew Greenberg and Sue Greenberg's funds from AWG, Inc., to finance another $235,591.52 for the campaign.

760.    The Greenbergs, their business entities and sons directly funded 97.21% of the $248,515.52 in total expenditures spent in the campaign, with only $6,924 coming from all other sources.

761.    In total, the Enterprise spent $241,591.52 on the <u>Republican primary</u> in the hope of competing in the general election for a position with a salary of $149,253 per year.

762.    In contrast, Mr. Valdes spent only $46,000 toward his election.

763.    According to Supervisors of Elections websites across the State of Florida, which contain histories dating to the 2012 election cycle, Joel Greenberg spent more than any other candidate in a primary election for Tax Collector.

764.    This historic spend secured Joel Greenberg a slim primary victory against the long-time incumbent, with 52% of the vote.

765.    Facing only a write-in opponent in the general election, Joel Greenberg was elected in November 2016 and took control of the Seminole County Tax Collector's Office on January 1, 2017.

**E.      THE OFFICE OF THE TAX COLLECTOR, AS AN ENTERPRISE, ENGAGES IN MULTIPLE FORMS OF RACKETEERING.**

766.    Joel Greenberg, with the support of the Greenberg Racketeering Enterprise, quickly began using his new title for personal gain.

767.    By the time of his 2020 indictment, he had racked up 33 federal crimes – all felonies – 29 of which occurred during his time in office.

768.    These charges ranged from stalking a political opponent, bribery of a federal employee, and identity theft, to sex trafficking a minor, wire fraud, and theft of cryptocurrency.

769.    A number of the 33 felony charges relate to his sex trafficking of A.B., who was a minor at the time the events occurred.

770.    Specifically, in addition to engaging in commercial acts with a minor, Joel Greenberg was charged with numerous counts related to procuring them both false identification

documents and misuse of the Florida driver's license database for purposes of procuring false identification documents.

   a.   Count One: Sex Trafficking of a Child, 18 U.S.C. § 1591(a), (b)(2) (c), and (e)(3).

   b.   Counts Two and Three: Driver's Privacy Protection Act Violations, 18 U.S.C. §§ 2722 and 2723.

   c.   Count Four: Unlawful Use of Means of Identification of Another Person, 18 U.S.C. §§ 1028(a)(7) and (b)(2).

   d.   Counts Seven and Eight: Production of Identification and False Identification Documents, 18 U.S.C. §§ 1028(a)(1) and (b)(1).

   e.   Counts Nine and Ten: Aggravated Identity Theft, 18 U.S.C. §§ 1028A(a)(1).

771.   In addition to sex trafficking a minor, Joel Greenberg also engaged in a scheme by which he embezzled $400,000 of money and property from the Seminole County Tax Collector's Office through a cryptocurrency scam and misuse of government credit cards for his personal benefit.

   a.   Counts Eleven through Twenty: Wire Fraud, 18 U.S.C. § 1343.

   b.   Counts Twenty-One through Twenty-Three: Illegal Monetary Transactions, 18 U.S.C. § 1957.

772.   According to page 14 of the Third Superseding Indictment, Joel Greenberg "would and did use funds obtained from a family member" in attempting to cover up the cryptocurrency scheme.

773.     Upon information and belief, the unnamed family member is Andrew Greenberg and/or Sue Greenberg, as they have been engaged in each of the Enterprises and have the financial capability of writing a $200,000 check.

774.     To retain office – and access to millions of dollars – Joel Greenberg began a campaign of stalking and defaming Brian Beute, his political opponent who worked as a teacher.

775.     Joel Greenberg sent anonymous letters to the opponent's school, posing as an anonymous student. In the letters, he claimed to have personal knowledge that the male opponent was engaged in a sexual relationship with a male student. These allegations were utterly false, which Joel Greenberg knew at the time he made them.

776.     Joel Greenberg also falsely set up a Twitter account using the name and image of the teacher, though which he published false tweets containing fascist and anti-Semitic language.

777.     He then set up a Facebook group under the false identity of a teacher, again publishing statements that the opponent was engaged in a sexual relationship with a male student.

778.     The Third Superseding Indictment included the following charges relating to these false allegations:

> a.     Count Twenty-Four: Stalking, 18 U.S.C. §§ 2261A(2) and 2261(b)(5).
>
> b.     Count Twenty-Five: Unlawful Means of Identification of Another Person, 18 U.S.C. §§ 1028(a)(7) and (b)(2).

779.     As a further means of using the Tax Collector's Office for his personal benefit, Joel Greenberg engaged in the bribery of a federal Small Business Administration employee in furtherance of a scheme to submit false claims for COVID-19 funds and defraud the government and taxpayers of $432,700.

Case 6:23-cv-00871   Document 1-1   Filed 05/10/23   Page 96 of 116 PageID 105

     a.      Count Twenty-Six: Conspiracy to Bribe a Public Official, Submission of a False Claim, Theft of Government Property, and Wire Fraud, 18 U.S.C. §§ 371 and 3147(1).

     b.      County Twenty-Seven: Bribery of a Public Official, 18 U.S.C. §§ 201(b)(1)(B) and 3147(1).

     c.      Counts Twenty-Eight through Thirty: Submission of a False Claim, 18 U.S.C. §§ 287 and 3147.

     d.      Counts Thirty-One through Thirty-Three: Theft of Government Property, 18 U.S.C. §§ 641 and 3147(1).

780.    The Greenberg Racketeering Enterprise participated in each of the above acts, directly or indirectly.

**F.    THE GREENBERG RACKETEERING ENTERPRISE ATTEMPTS A COVER UP.**

781.    Joel Greenberg was indicted on June 23, 2020, relating to the stalking and defamation of his political opponent.

782.    Shortly thereafter, Abby Greenberg invited Dorworth's wife, Rebekah, and daughter to join her at the pool at JW Marriott Orlando Grande Lakes for a weekend funded by the Enterprise. She assured Rebekah that Joel Greenberg would not be present at the pool, though he may be on the premises playing golf.

783.    While waiting in the Greenberg's penthouse suite for Abby to finish getting ready for the pool, Joel Greenberg was present. He told Rebekah Dorworth the charges were silly and that he would beat them.

784.    Joel Greenberg reappeared while Rebekah Dorworth was at the pool. He cornered Rebekah and used a tone and demeanor Rebekah felt was threatening.

785.    Joel Greenberg demanded that she and Plaintiff convince Congressman Matt Gaetz to pursue and obtain a pardon for not only the pending charges, but those remaining under investigation.

786.    Plaintiff and Congressman Gaetz are close friends and served together in the Florida House of Representatives from 2010 to 2012.

787.    Joel Greenberg was aware of Plaintiff and Congressman Gaetz's close friendship, as well as Congressman Gaetz's status as a staunch ally of then-President Donald Trump.

788.    Greenberg told Rebekah Dorworth that "it would be better for everyone if I got a pardon."

789.

790.    He also made a seeming threat against Congressman Gaetz, saying that the Congressman should be aware that investigators were reviewing Joel Greenberg's Venmo records and that "he didn't know what any of them would say."

791.    Upon hearing of Joel Greenberg's conversation with Rebekah Dorworth, Plaintiff requested a meeting with Joel. The two had a breakfast meeting shortly thereafter.

792.    During this breakfast meeting, Joel Greenberg expressed that he was hopeful no sex trafficking charges would be brought because he, through the Greenberg Racketeering Enterprise, was paying for the attorney for the victim, A.B.. He also stated he anticipated the Greenberg Racketeering Enterprise could seek her cooperation by paying her off.

793.    Despite this, Greenberg continued to press Dorworth to have Gaetz obtain a pardon from President Donald Trump.

794.    When Dorworth refused to participate in attempting to obtain a pardon, Greenberg changed tactics, seeking instead to have the Assistant United States Attorney investigating him fired.

795.    Joel Greenberg incorrectly believed that Gaetz could effectuate the termination by lobbying Trump.

796.    Joel texted Dorworth to request he convince Gaetz to have the prosecutor investigating him fired.

797.    Upon Dorworth's refusal to participate in the termination of the Assistant U.S. Attorney, Greenberg then followed through on this promise to Dorworth to "make this a problem for everyone" by claiming that Dorworth, Congressman Matt Gaetz and others were involved in his criminal actions.

798.    At sentencing, Greenberg's attorney claimed that "[a]s a result of his conduct, he lost his marriage. He lost his children. He was cut out of his parents' will completely. He's lost all financial support. And you'll see today his family is not here." December 1, 2022 Sentencing Trans. at 14:1-4.

799.    However, given Greenberg's low six-figure personal wealth of $322,030 shown on his Amended 2019 Form 6, it would have been impossible for Greenberg to have paid multimillion dollar restitution amounts, let alone his legal fees, without support from his family and the Greenberg Racketeering Enterprise.

800.    Through these actions, the Greenberg Racketeering Enterprise has engaged in the violations of numerous state and federal statutes, including but not limited to:

      a.    18 U.S.C. § 873, extortion directed toward Dorworth and others;

b. 18 U.S.C. § 1503, influencing or injuring officer, by seeking the firing of the Assistant U.S. Attorney handling Joel Greenberg's criminal case;

c. 18 U.S.C. § 1510, obstruction of a criminal investigation, by seeking to obstruct the investigation by paying A.B.'s attorney fees;

d. 18 U.S.C. § 1512(b) regarding tampering with a victim, witness, or informant, by coercing Defendant A.B. to provide false statements to law enforcement through communications and paying her attorney fees.

e. 18 U.S.C. § 1512(c) by obstructing, influencing, or impeding the federal investigation by falsely accusing Dorworth of misconduct in an attempt to punish Dorworth for failing to help him, cause investigators to include Dorworth in the investigation, and possibly obtain further cooperation by attempting to induce the government to charge Dorworth.

801. Greenberg showed a clear pattern of racketeering in every aspect of his life.

802. Greenberg used every opportunity he had to commit crimes to advance his own interests.

803. The Federal District Judge described Greenberg's conduct at sentencing:

> But I also have never seen a defendant who has committed so many different types of crime within a relatively short period like those crimes committed by Mr. Greenberg.

December 1, 2022 Sentencing Trans. at 42:18-20. The Court later continued:

> He was a public official. And the conduct that he engaged in undermines the public's trust in our governmental system. And all of us -- all of us are victims of a crime or crimes where public trust is abused. And as Mr. Handberg pointed out, Mr. Greenberg continued with his criminal conduct even after he knew he was under criminal investigation and violated the terms of his supervised release imposed by a magistrate judge of this court. It does indicate that Mr. Greenberg, just a year ago, showed no respect for the law because he violated

the order of a magistrate judge that allowed him to retain his liberty during the process of this proceeding.

December 1, 2022 Sentencing Trans. at 45:21-46:7.

804.    Thus, Greenberg committed a continuous and pervasive pattern of RICO acts, even after he was under investigation, and even after he was charged.

805.    Greenberg's misconduct began before he gained control and did not end even after he left the Seminole County Tax Collector's Office.

806.    As noted by the Government at sentencing, Greenberg's misconduct lasted over four years and was elaborate:

I think what Ms. Harrington did so well in the sentencing memo is she put it in chronological order so that everyone could see just the scope of the crimes that were being committed and also the continuous nature from 2017 through 2020. And that took a little bit of time in the sentencing memo to do. And that's not because the United States was focusing improperly or excessively on the offenses. It's because the crimes that Mr. Greenberg committed say a lot about what the sentence should be in this case. They talk to the seriousness of the offense. They also go to his history and characteristics as a person. In many of my cases, I like to try to find a short version of what I would tell someone the case was about. This one, it's difficult to do, to summarize quickly. Over the course of three years, Mr. Greenberg spent over $70,000 engaging in commercial sex acts, consisting of over 150 financial transactions. His commercial sex acts included seven where he paid a minor for sex. While that was going on, Mr. Greenberg was using his position as a Seminole County tax collector to defraud his office out of hundreds of thousands of dollars that he used to buy cryptocurrency, to buy and sell cryptocurrency machines, to basically operate, at the end of his tenure as a tax collector, a business out of the tax collector's office. Some of those machines he attempted to use to mine cryptocurrency for himself, which resulted in one of his offices catching on fire. In the course of that scheme, Mr. Greenberg lied to his chief financial officer and the auditors, individuals who were intended to be, you know, protections for the county that their money wasn't being misused. He made two false representation letters to the auditors. He had a secret bank account. He used another bank account controlled by him. He engaged in over 97 purchases of cryptocurrency, over a hundred transactions involving the purchase and sale of cryptocurrency machines, and transferred hundreds of thousands of dollars in layered financial transactions involving different financial accounts. He used a corporation for one part of his scheme as a front for his fraud and deposited hundreds of thousands of dollars of cryptocurrency into wallets that were controlled by him, all of which he did over the course of three years. That's not all. While that was going on, he was using his

position and the resources of his office to make fake driver's licenses for himself using stolen identities. And these weren't insignificant documents. Those two fake driver's licenses were found in Mr. Greenberg's wallet. That's not all. While that was going on, Mr. Greenberg decided to stalk a political opponent. One of the most terrible things I think you can do to someone who's a teacher is to falsely accuse them of engaging in sexual misconduct with a student. And that's what Mr. Greenberg did. And he did it publicly on Facebook. As I said, this case defies a short, easy summary. And each part of what I just summarized has many more details that I could go into. And each of those establishes that the crimes in this case are very serious. But there's moments, too, that also provide further information. I often think in any criminal case there's moments that are especially important. I'm going to talk about three of them. The first is one you -- I think you might be surprised I would actually reference, which is January 3rd of 2017. That's a date of significance for two reasons. That was the date that Mr. Greenberg assumed office as the Seminole County tax collector. It's also the date that we got the first indication of how he was going to use and abuse the trust he had been given. Prior to becoming tax collector, he had engaged in a transaction with an individual. As part of that, he got their personal information and ordered a driver's license for that person without their knowledge. And in the process of doing that, Mr. Greenberg changed where the driver's license went. He changed it to an address that he could then get the driver's license from. And on his very first day in office, one of the first things he did was he used the DAVID system, the Florida driver's license system, to go in and change that, to change it back to the person's actual address. So from the very beginning, what Mr. Greenberg, I think, showed was he had the intent to use his office in ways that benefited him from day one. And that's something that continued during the entire time that he was the Seminole County tax collector.

December 1, 2022 Sentencing Trans. at 27:2-30:7.

807.    The Government noted that his misconduct continued unabated:

And so what Mr. Greenberg did was he attempted to cover up what he had done, as acknowledged in the plea agreement and the PSR. And he continued on with his scheme. He was not deterred. We saw that again in the third date I'm going to talk about, which is June 23rd of 2020. On that date, early in the morning, federal agents went to Mr. Greenberg's house and executed a search warrant at his residence and arrested him. He was brought to this building for his initial appearance on a federal indictment. He had conditions of release set and was released. What would only be determined later was at the time that that happened, Mr. Greenberg had already started down the road of a false SBA claim. And after sitting in federal court and having a federal magistrate judge tell him that he is not to commit any further crimes or offenses and obey all of the conditions of release, the next day he finished up the paperwork to get his fake loan. And then he did it two other times.

December 1, 2022 Sentencing Trans. at 31:6-24.

808.     Greenberg's misconduct threatened to continue indefinitely, and it has, where Greenberg submitted false claims even after his initial charge.

809.     Greenberg continued his misconduct even after he began pretending to cooperate with the authorities, as he has lied to government investigators about Dorworth.

810.     As described herein, Dorworth has been substantially injured by the Greenberg Racketeering Enterprise and its pattern of racketeering.

## COUNT ONE
### Federal Civil RICO, 18 U.S.C. § 1962(a)
### Acquiring/Maintaining Control in an Enterprise
### (Against all Defendants Except A.B.)

811.     Dorworth hereby incorporates herein all Allegations Common to All Counts and Allegations Common to RICO Counts.

812.     Defendants are persons as defined by 18 U.S.C. § 1961(3).

813.     The Greenberg Campaign and the Seminole County Tax Collector's Office are both Enterprises as defined by 18 U.S.C. § 1961(4) and 1962(a).

814.     The Greenberg Racketeering Enterprise acquired money from operating, in Greenberg's words, a "pill mill" in Florida, in violation of various federal laws.

815.     Upon information and belief, the Greenberg Racketeering Enterprise acquired money from unlawful cryptocurrency activity discussed by Greenberg.

816.     The Greenberg Racketeering Enterprise then used these proceeds to establish the Greenberg Campaign.

817.     The Greenberg Racketeering Enterprise also used these proceeds to help Greenberg acquire and maintain control of the Seminole County Tax Collector's Office.

818.     As a proximate result of Defendants' unlawful acts, Dorworth was injured.

819.    Pursuant to 18 U.S.C. 1964(c), Dorworth is entitled to treble damages, his costs of bringing this action, including attorney fees, and all other relief the Court deems just and proper.

## COUNT TWO
### Federal Civil RICO, 18 U.S.C. § 1962(b)
### Acquiring/Maintaining Control in the Seminole County Tax Collector's Office
### (Against all Defendants Except A.B.)

820.    Dorworth hereby incorporates herein all Allegations Common to All Counts and Allegations Common to RICO Counts.

821.    Defendants are persons as defined by 18 U.S.C. § 1961(3).

822.    The Greenberg Campaign and the Seminole County Tax Collector's Office are each an enterprise as defined by 18 U.S.C. § 1961(4) and 1962(b).

823.    Defendants associated with, operated, controlled, and benefitted from, each enterprise.

824.    Defendants acquired and maintained control in the Seminole County Tax Collector's Office through a pattern of racketeering activity, in violation of 18 U.S.C. § 1962(b).

825.    The Seminole County Tax Collector's Office is engaged in and its activities affect interstate commerce.

826.    Through their interest in, or control of, the Greenberg Racketeering Enterprise, Defendants committed numerous criminal acts, as set forth in the RICO Section above, and in the Counts below, constituting a pattern of racketeering activity.

827.    As a direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(b), Dorworth has been significantly injured, including, but not limited to, suffering a substantial financial loss and damage to his reputation and livelihood.

828.    Pursuant to 18 U.S.C. 1964(c), Dorworth is entitled to treble damages, his costs of bringing this action, including attorney fees, and all other relief the Court deems just and proper.

103

## COUNT THREE
### Federal Civil RICO, 18 U.S.C. § 1962(c)
### Substantive RICO Violations
### (Against Defendant Joel Greenberg)

829.    Dorworth hereby incorporates herein all Allegations Common to All Counts and Allegations Common to RICO Counts.

830.    Defendant is a as defined by 18 U.S.C. § 1961(3).

831.    The Greenberg Campaign, Seminole County Tax Collector's Office, and the Greenberg Racketeering Enterprise are each an enterprise as defined by 18 U.S.C. § 1961(4) and 1962(c). Defendant Joel Greenberg is associated with, and benefits from, each enterprise.

832.    At all times material, Defendant Joel Greenberg was engaged in activities that affect interstate commerce.

833.    Since at least 2016 and continuing to the present, Defendant Joel Greenberg conducted or participated in, directly or indirectly, such enterprise by engaging in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1), 1961(5), and 1962(c).

834.    Defendant Joel Greenberg's pattern of racketeering activity consists of the various predicate acts set forth below and in this Complaint.

835.    Defendant Joel Greenberg issued numerous false statements in furtherance of his scheme, including, but not limited to the following:

        a.      Falsifying Form 6 Disclosures filed with the Florida Commission on Ethics;

        b.      Falsely averring Dorworth was involved in the scheme to sex traffic minors;

        c.      Falsely averring Dorworth had sex with an underage A.B.;

        d.      Falsely averring Dorworth was involved in an attempt to obstruct justice through witness tampering;

e.      Falsely averring Dorworth was involved in the ghost candidate scheme involving the 2020 Florida Senate District Nine election and incurred campaign finance violations in furtherance of the scheme;

f.      Falsely impersonating Dorworth in communications to the employer of Joel Greenberg's political opponent and creating social media accounts made to suggest Dorworth was behind them.

g.      Falsely describing Dorworth and others as a mafia with a criminal agenda;

h.      Falsely averring Dorworth was having an extramarital affair with his female attorney; and

i.      Falsely averring Dorworth borrowed money from Jim Stelling to avoid detection in acquiring prostitutes and drugs.

836.    Defendant Joel Greenberg engaged in each of the acts described in the Third Superseding Indictment and set forth throughout this Complaint and incorporated herein by reference.

837.    Defendant Joel Greenberg engaged in a scheme of extortion in attempts to secure a pardon and the firing of the Assistant U.S. Attorney handling his criminal case.

838.    Defendant Joel Greenberg violated 18 U.S.C. §§ 1341 and 1346 (honest services fraud) by depriving Seminole County taxpayers of the intangible right to honest services through his schemes of theft, bribery, kickbacks, wire fraud, and other crimes committed while serving as the tax collector.

839.    Defendant Joel Greenberg violated 18 U.S.C. § 1503 (obstruction of justice) by seeking the firing of the Assistant U.S. Attorney handling his criminal case.

840.    Defendant Joel Greenberg violated 18 U.S.C. § 1510 (obstruction of a criminal investigation) by seeking the firing of the Assistant U.S. Attorney handling his criminal case.

841.    Defendant Joel Greenberg violated 18 U.S.C. § 1512 (tampering with a victim, witness, or informant) by coercing Defendant A.B. to provide false statements to law enforcement through communications and paying her attorney fees.

842.    Defendant Joel Greenberg violated 18 U.S.C. § 1512(c) by obstructing, influencing, or impeding the federal investigation by falsely accusing Dorworth of misconduct in an attempt to punish Dorworth for failing to help him, cause investigators to include Dorworth in the investigation, and possibly obtain further cooperation by attempting to induce the government to charge Dorworth.

843.    Of these incidents, at least two had the same or similar intent related to reducing or eliminating Joel Greenberg's criminal liability, the same or similar intent related to sex trafficking, results, accomplices, methods of commission, or were interrelated by distinguishing characteristics and were not isolated incidents. Defendant Joel Greenberg participated in all of the above acts.

844.    The Greenberg Racketeering Enterprise was an ongoing organization, formal or informal, of Joel Greenberg, Andrew Greenberg, Sue Greenberg, Abby Greenberg, Greenberg Dental, and AWG, Inc.

845.    The Greenberg Racketeering Enterprise functioned as a continuing unit and has a common purpose, to advance Joel Greenberg's interests through unlawful activity.

846.    Once Greenberg's unlawful activity was known to both all involved and the entire world, the Greenberg Racketeering Enterprise acted unlawfully to cause the extortion and defamation of Dorworth.

847.     Each above-mentioned crime victimized Dorworth by causing a substantial financial loss and impacting his reputation and marriage.

848.     Dorworth's substantial loss and injury is directly and proximately caused by the violations listed above.

849.     Pursuant to 18 U.S.C. 1964(c), Dorworth is entitled to treble damages, his costs of bringing this action, including attorney fees, and all other relief the Court deems just and proper.

**COUNT FOUR**
**Federal Civil RICO, 18 U.S.C. § 1962(c)**
**Substantive RICO Violations**
**(Against Defendants Andrew Greenberg, Sue Greenberg, Abby Greenberg,**
**Greenberg Dental, and AWG, Inc.)**

850.     Dorworth hereby incorporates herein all Allegations Common to All Counts and Allegations Common to RICO Counts.

851.     Defendants Andrew Greenberg, Sue Greenberg, Abby Greenberg, Greenberg Dental, and AWG, Inc., are persons as defined by 18 U.S.C. § 1961(3).

852.     The Greenberg Racketeering Enterprise is an enterprise as defined by 18 U.S.C. § 1961(4) and 1962(c). Each of the Defendants in this Count is associated with, and benefits from, the enterprise.

853.     At all times material, Dorworth and Defendants were engaged in activities that affect interstate commerce.

854.     Since at least 2016 and continuing to the present, Defendants conducted or participated in, directly or indirectly, such enterprise by engaging in a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1), 1961(5), and 1962(c).

855.     Defendants' pattern of racketeering activity consists of the various predicate acts set forth below.

856.     Defendants engaged in a scheme of extortion in attempts to secure a pardon and the firing of the Assistant U.S. Attorney handling Joel Greenberg's criminal case.

857.     Defendants violated 18 U.S.C. § 1503 regarding obstruction of justice by seeking the firing of the Assistant U.S. Attorney handling Joel Greenberg's criminal case.

858.     Defendants violated 18 U.S.C. § 1510 regarding obstruction of a criminal investigation by seeking the firing of the Assistant U.S. Attorney handling Joel Greenberg's criminal case.

859.     Defendants violated 18 U.S.C. § 1512 regarding tampering with a victim, witness, or informant, by coercing Defendant A.B. to provide false statements to law enforcement through communications and paying her attorney fees.

860.     18 U.S.C. § 1512(c) by obstructing, influencing, or impeding the federal investigation by falsely accusing Dorworth of misconduct in an attempt to punish Dorworth for failing to help him, cause investigators to include Dorworth in the investigation, and possibly obtain further cooperation by attempting to induce the government to charge Dorworth.

861.     Of these incidents, at least two had the same or similar intent related to reducing or eliminating Joel Greenberg's criminal liability, the same or similar intent related to sex trafficking, results, accomplices, methods of commission, or were interrelated by distinguishing characteristics and were not isolated incidents. Defendant Joel Greenberg participated in all the above acts.

862.     The enterprise was an ongoing organization, formal or informal, of Joel Greenberg, Andrew Greenberg, Sue Greenberg, Abby Greenberg, Greenberg Dental, and AWG, Inc. It functions as a continuing unit and acted for several common purposes, one of which was the extortion and defamation of Dorworth.

863.    Each above-mentioned crime victimized Dorworth by causing a substantial financial loss and impacting his reputation and marriage.

864.    Dorworth's substantial loss and injury is directly and proximately caused by the violations listed above.

865.    Pursuant to 18 U.S.C. 1964(c), Dorworth is entitled to treble damages, his costs of bringing this action, including attorney fees, and all other relief the Court deems just and proper.

### COUNT FIVE
### Federal Civil RICO, 18 U.S.C. § 1962(d), Conspiracy
### (Against all Defendants)

866.    Dorworth hereby incorporates herein all Allegations Common to All Counts and Allegations Common to RICO Counts.

867.    Defendants Joel Greenberg, Andrew Greenberg, Sue Greenberg, Abby Greenberg, A.B., Greenberg Dental, and AWG, Inc., are persons as defined by 18 U.S.C. § 1961(3).

868.    The Greenberg Racketeering Enterprise is an enterprise as defined by 18 U.S.C. § 1961(4) and 1962(d). Each of the Defendants is associated with, and benefits from, the enterprise.

869.    At all times material, Dorworth and Defendants were engaged in activities that affect interstate commerce.

870.    In violation of 18 U.S.C. § 1962(d), Defendants knowingly, willfully, and unlawfully conspired to facilitate a scheme that included engaging in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

871.    Each Defendant other than A.B. also acted to facilitate the schemes to control the Seminole County Tax Collector in violation of 18 U.S.C. § 1962(a) and (b).

872.    The conspiracy has been in effect since at least 2016 and remains ongoing.

873.    The conspiracy's purpose was to engage in a pattern of racketeering activity with an objective of reducing or eliminating Joel Greenberg's criminal liability through extortion, obstruction of justice, obstruction of a criminal investigation, and more.

874.    As is set forth in Counts 1 through 4, Joel Greenberg and the other Defendants engaged in a pattern of racketeering activity designed to reduce or eliminate his criminal liability.

875.    Defendant Abby Greenberg participated in the extortion of Dorworth and making false representations when Dorworth did not follow through on Joel Greenberg's threats. She also engaged in the obstruction of justice by seeking the firing of the Assistant U.S. Attorney handling Joel Greenberg's case.

876.    Defendant A.B. knowingly falsified her testimony and statements to the government to implicate Dorworth, knowing those statements were false and only had an effect of hurting Dorworth, due to inducement provided by Greenberg.

877.    The remaining Defendants knowingly and repeatedly provided substantial financial support for the unlawful activities and conspired to facilitate the scheme giving rise to each violation in Counts 1 through 4.

878.    Each Defendant helped to advance the overall objective of the conspiracy and the resulting harm to Dorworth was a reasonably foreseeable consequence of the conspiracy.

879.    Dorworth's substantial loss and injury is directly and proximately caused by the unlawful conduct of Defendants and their violation of 18 U.S.C. § 1962(d).

880.    Pursuant to 18 U.S.C. § 1964(c), Dorworth is entitled to treble damages, his costs of bringing this action, including attorney fees, and all other relief the Court deems just and proper.

## COUNT SIX
### Defamation
### (Against Defendants Greenberg and A.B.)

881.     Dorworth hereby incorporates herein all Allegations Common to All Counts.

882.     Defendants Joel Greenberg and A.B. made false and defamatory statements against

Dorworth.

883.     Defendant Joel Greenberg made numerous false statements, including, but not

limited to the following:

      a.     Falsely averring Dorworth was involved in the scheme to sex traffic minors;

      b.     Falsely averring Dorworth had sex with an underage A.B.;

      c.     Falsely averring Dorworth was involved in an attempt to obstruct justice

           through witness tampering;

      d.     Falsely averring Dorworth was involved in the ghost candidate scheme

           involving the 2020 Florida Senate District Nine election and incurred

           campaign finance violations in furtherance of the scheme;

      e.     Falsely impersonating Dorworth in communications to the employer of Joel

           Greenberg's political opponent and creating social media accounts made to

           suggest Dorworth was behind them.

      f.     Falsely describing Dorworth and others as a mafia with a criminal agenda;

      g.     Falsely averring Dorworth was having an extramarital affair with his female

           attorney; and

      h.     Falsely averring Dorworth borrowed money from Jim Stelling to avoid

           detection in acquiring prostitutes and drugs.

884.     Defendant A.B. also made false statements regarding Dorworth, including:

        a.      Falsely averring Dorworth was involved in the scheme to sex traffic minors;

        b.      Falsely averring Dorworth had sex with an underage A.B.;

885.    Defendants each participated in the dissemination of information with either knowledge of its falsity or reckless disregard for the truth.

886.    The above-described statements convey a defamatory meaning. They were made with actual malice and for the express purpose of harming Dorworth.

887.    Defendants made these statements without privilege or justification.

888.    To the extent Defendants issued allegations to the government, they had an improper purpose in doing so because they knew the allegations were false and they were simply trying to harm or extort Dorworth.

889.    The above statements directly injured Dorworth by diminishing his reputation and causing him to lose his job.

890.    As a direct and proximate result of Defendants' false statements, Dorworth has been significantly injured, including, but not limited to, suffering a substantial financial loss and damage to his reputation and livelihood.

891.    Defendants acted with oppression, fraud, and/or malice.

892.    Dorworth is entitled to a judgment for compensatory damages, costs of suit, and all other relief the Court deems just and proper.

**COUNT SEVEN**
**Aiding and Abetting Defamation**
**(Against Andrew Greenberg, Sue Greenberg, Abby Greenberg,**
**Greenberg Dental, and AWG, Inc.)**

893.    Dorworth hereby incorporates herein all Allegations Common to All Counts.

894.    Defendants Joel Greenberg and A.B. repeatedly defamed Dorworth.

895. Defendants Andrew Greenberg, Sue Greenberg, Abby Greenberg, Greenberg Dental, and AWG, Inc., each possessed knowledge of Joel Greenberg and A.B.'s defamation.

896. Defendants each provided substantial assistance to Joel Greenberg and A.B. by providing financial resources to enable the defamatory actions, among other actions.

897. Defendants provided these resources with the knowledge and intent that they would be used to harm Dorworth, among other things.

898. As a result of Defendants' aiding and abetting defamation, Dorworth has been significantly injured, including, but not limited to, suffering a substantial financial loss and damage to his reputation and livelihood.

899. Dorworth is entitled to a judgment for compensatory damages, costs of suit, and all other relief the Court deems just and proper.

### COUNT EIGHT
### Civil Conspiracy
### (Against all Defendants)

900. Dorworth hereby incorporates herein all Allegations Common to All Counts

901. Defendants conspired to create, finance, and disseminate false information about the Dorworth.

902. Defendants agreed to, and knowingly did, disseminate or assist in disseminating false information about Dorworth.

903. Each Defendant was aware of an overall plan to harm Dorworth's reputation, business, and livelihood.

904. Each Defendant acted to further the plan to harm Dorworth's reputation.

905. This activity violates Chapter 836, Florida Statutes.

906. Defendants' activity also violates the RICO statute, as set forth above.

907.    As a direct and proximate result of the conspiracy, Dorworth has been significantly injured, including, but not limited to, suffering a substantial financial loss and damage to his reputation and livelihood.

908.    Defendants intentionally, willfully, and wantonly conspired and acted in concert with one another to disregard the rights of Dorworth.

909.    Dorworth is entitled to a judgment for compensatory damages, costs of suit, and all other relief the Court deems just and proper.

**COUNT NINE**
**Declaratory Relief**
**(Against A.B.)**

910.    Dorworth hereby incorporates herein all Allegations Common to All Counts

911.    Dorworth seeks a declaration of this Court that Dorworth has not had sexual contact with A.B. at any time; that Dorworth has not solicited, paid, or otherwise compensated A.B. for sexual acts; and that he is not liable to her for any allegations of the same.

912.    The December 30, 2022, Letter from A.B.'s counsel threatening litigation demonstrates the existence of a bona fide, actual and present dispute between A.B. and Dorworth.

913.    At minimum, there exists the ripening seeds of a controversy or litigation, such that litigation in the immediate future appears unavoidable. This entitles Dorworth to declaratory relief.

914.    The declaratory action deals with a present, ascertained or ascertainable state of facts or present controversy as to a state of facts.

915.    Some immunity, power, privilege or right of Dorworth and/or A.B. is dependent upon the facts or the law applicable to the facts.

916.    The relief sought is not merely the giving of legal advice by the courts or the answer to questions propounded from curiosity.

917. Dorworth respectfully requests this Court issue an Judgment declaring that Dorworth has not had sexual contact with A.B. at any time; that Dorworth has not solicited, paid, or otherwise compensated A.B. for sexual acts; and that he is not liable to her for any allegations of the same, along with costs of suit, and all other relief the Court deems just and proper.

### GENERAL PRAYER FOR RELIEF

WHEREFORE, Plaintiff Chris Dorworth respectfully requests an order of this Court entering judgment in his favor and awarding the following:

a. Compensatory damages in an amount to be determined at trial;

b. Treble damages as allowed by 18 U.S.C. 1964(c);

c. A declaratory judgment order consistent with the relief requested in Count Nine, above;

d. Reasonable attorney fees;

e. Costs and expenses incurred in this litigation; and

f. Such other and further relief as the Court deems just and warranted.

### JURY TRIAL DEMAND

918. PLAINTIFF DEMANDS TRIAL BY JURY as to all counts so triable.

Filed: April 7, 2023.

Respectfully Submitted,

/s/Michael Paul Beltran
Michael P Beltran
Fla. Bar No. 0093184
Beltran Litigation, P.A.
4920 West Cypress St. Suite 104 PMB 5089
Tampa, FL 33607
813-870-3073 (o)
mike@beltranlitigation.com
*Counsel for Dorworth*

## VERIFICATION

Under penalties of perjury, I, Chris Dorworth, declare that I have read the Verified Complaint, that I agree with the document, and that the facts stated therein are true.

Date: April __, 2023.

Christopher E. Dorworth

(Verification made pursuant to Fla. Stat. § 92.525(2); see *State v. Shearer*, 628 So.2d 1102 (1993) ("In addition to a notarized oath such as the one in rule 3.987, however, section 92.525, Florida Statutes (1991), provides that a signed declaration can substitute for a notarized oath if it contains the following language: 'Under penalties of perjury, I declare that I have read the foregoing [document] and that the facts stated in it are true.'"))