UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| CHRISTOPHER E. DORWORTH,<br><br>    *Plaintiff*,<br><br>v.<br><br>JOEL MICAH GREENBERG,<br>ANDREW W. GREENBERG,<br>SUSAN GREENBERG, ABBY<br>GREENBERG, AWG, INC.,<br>GREENBERG DENTAL<br>ASSOCIATES, LLC, GREENBERG<br>DENTAL & ORTHODONTICS, P.A.,<br>GREENBERG DENTAL<br>SPECIALTY GROUP, LLC, and A.B.,<br><br>    *Defendants*. | Case No.: 6:23-cv-871-JA-DCI |

**DEFENDANTS ANDREW GREENBERG, SUSAN GREENBERG, AND
AWG, INC.'S MOTION TO DISMISS VERIFIED AMENDED COMPLAINT**

## PRELIMINARY STATEMENT

"No Florida decision has imposed liability upon the parents of an adult child for intentional acts simply because the child may be financially dependent on . . . his or her parents." *Carney v. Gambel*, 751 So. 2d 653, 654 (Fla. 4th DCA 1999). This is because the law does not penalize parents for filling a common role—supporting their children. *See K.G. v. S.B.*, 259 Cal. Rptr. 3d 818, 823–24 (Cal. Ct. App. 2020) (finding no "duty" and "no moral blame attached to Father's conduct as a father financially supporting his son," and "[p]ublic policy does not support imposing liability on a parent for providing financial support for an adult child.").

All the same, based on lawful parental support, Plaintiff once again accuses Andrew and Susan Greenberg, with their closely held entity, AWG, Inc. ("Greenbergs"), of a vast RICO conspiracy tied to the legal defense of their son, Joel Greenberg ("Joel"). In Plaintiff's initial 100-plus-page Complaint, he accused Joel, Defendant A.B., the minor child who Joel trafficked for sex, and Joel's then-wife, Defendant Abby Greenberg, of falsely accusing Plaintiff of crimes. Plaintiff then recasts the Greenbergs' parental support to Joel—like contributing to his campaign and allegedly paying for Joel's legal defense—as facilitating his later crimes. Plaintiff also accused the Greenbergs and the dentistry practices that employed Joel's father, Andrew, of running a pill mill and conspiring with the other Defendants to defame Plaintiff to mitigate Joel's criminal liability.

Now, conceding his original Complaint's inadequacy, Plaintiff amends his Complaint to drop certain allegations but also add a bevy of new allegations as to the Greenbergs. Yet scarcely few are *factual allegations*. Rather, Plaintiff—extrapolating from conclusory allegations of mundane parental activity—offers only *ipse dixit* declarations that the Greenbergs acted with conspiratorial intent before accusing them of RICO conspiracy,[1] aiding and abetting defamation, and civil conspiracy.

So threadbare are Plaintiff's allegations that he felt compelled to promise the Court that he had a fair basis for them and—if the Court will only let him have some discovery—he could back them up. *Id.* ¶ 41 ("Each allegation in this pleading is . . . likely to have evidentiary support after a reasonable opportunity for further investigation, discovery, and public records requests, some of which is currently pending."). But as this Court well knows, the pleading standard requires that Plaintiff "allege facts, not unsubstantiated conclusions, *before* engaging in discovery." *Broaders v. Polk Cnty. Sch. Bd.*, 8:10-CV-2411-T-27EAJ, 2011 WL 2604793, at *2 (M.D. Fla.

---

[1] This is based on the Greenbergs' best reading. While the Amended Complaint drops all substantive RICO claims (18 U.S.C. § 1962(a), (b)) against the Greenbergs, the Original Complaint—which spanned over 100 pages and for which Plaintiff's incorporation by reference is not limited to factual allegations—still contains them. Doc. 62 ¶ 348. The Greenbergs (and this Court) are thus left to guess as to what claims Plaintiff now asserts against them.

The Court should reject Plaintiff's attempt to incorporate by reference Plaintiff's earlier Complaint into his Amended Complaint, because such voluminous incorporation results in a shotgun pleading and injects needless confusion and inconsistencies into this already complex matter. *Bryant v. Norfolk S. R.R.*, No. 5:20-CV-00225-TES, 2020 WL 5521044, at *1 (M.D. Ga. Sept. 14, 2020); *cf. Zurich Am. Ins. Co. v. S.-Owners Ins.* Co., 314 F. Supp. 3d 1284, 1303 n.10 (M.D. Fla. 2018) ("Not only does [incorporation by reference] violate the Local Rules, but it puts the onus on the Court (and opposing party) to slog through . . . voluminous material to glean support for [the incorporator's] argument." (citation omitted)); *Mobile Shelter Sys. USA, Inc. v. Grate Pallet Sols., LLC*, 845 F. Supp. 2d 1241, 1253 (M.D. Fla. 2012) (recognizing that incorporating by reference improperly "foists upon the Court the burden of sifting through irrelevant materials to find the materials referenced").

July 1, 2011) (emphasis added). Because this Court must cast such conclusory allegations aside, as to the Greenbergs, Plaintiff's Amended Complaint effectively piles nothing onto nothing.[2]

Still, extrapolating from his conclusory allegations, Plaintiff stacks inference upon inference. And each of Plaintiff's inferential leaps lacks the factual support needed to plead a plausible claim, particularly of the vast criminal conspiracy he envisions. Plaintiff's insufficient "information and belief" allegations reflect at best that the Greenbergs provided financial support to their son and the mother of their grandchildren. These facts—even if sufficiently alleged—just as plausibly reflect innocent conduct by the Greenbergs: that the Greenbergs funded Joel's legal defense because he is their son—without knowing of Joel's statements against Plaintiff, and without knowing if they were true or false; that Joel's father, Dr. Andrew Greenberg, simply received compensation from the Greenberg Dental entities as an employee— as normally paid without any conspiracy; that the Greenbergs supported Joel's ex-wife, Abby Greenberg, because they wanted to support their grandchildren; and that any payment from Joel to A.B. or her counsel was made without any knowledge on the part of the Greenbergs, much less knowing A.B.'s identity or what A.B. would say

---

[2] Instead, the pleadings in this case further reveal this lawsuit's real purpose: "Plaintiff improperly seeks to preempt any claims A.B. may have against [him] for raping and trafficking her." Doc. 46 at 2. Indeed, Plaintiff complains that A.B. sent him a demand letter announcing her intention to sue him for sex trafficking. Doc. 62 ¶ 479. And most significantly, Plaintiff asks for a declaration that "he has not had sexual contact with A.B. at any time." *Id.* ¶ 478. This case is really about Plaintiff, A.B., and Plaintiff's desire to preempt her impending lawsuit—the Greenbergs are just stuck in the middle.

about Plaintiff. Plaintiff's Amended Complaint offers no facts ruling out these—and many other—innocent alternatives to Plaintiff's overwrought conspiracy theories.[3]

Because, for a second time, Plaintiff has failed to plead an actionable claim against the Greenbergs, this Court must dismiss.

## BACKGROUND[4]

After the Greenbergs—and other Defendants—moved to dismiss his original Complaint, *see* Doc. 45, Plaintiff filed an Amended Complaint, Doc. 62. Essentially conceding the Greenbergs were not involved in Joel's crimes, as he had originally alleged, *see* Doc. 1-1 ¶¶ 270, 770–71, 778–79, Plaintiff now only accuses them of conspiracy—specifically federal and Florida RICO conspiracy (Counts II and IV), aiding and abetting defamation (Count VI), and civil conspiracy (Count VII). According to Plaintiff—largely through conclusory allegations and based upon "information and belief"—the Greenbergs financed Joel's attempts to evade liability for his many crimes by framing Plaintiff for child sex trafficking, obstruction of justice, and participating in "ghost candidate" schemes. *See, e.g.*, Doc. 62 ¶¶ 8, 155.

---

[3] Similarly, Dorworth's allegations that Joel, Abby Greenberg, and A.B. made various false statements about him also reflect conduct that could just as well occur without any Defendants conspiring, let alone the Greenbergs. For instance, Joel—as criminal defendants of modest means do every day—could well have implicated Dorworth on his own in an effort to gain government leniency; without agreeing to defame Dorworth, Abby Greenberg could have supported Joel's defense believing his claims against Dorworth; and A.B., who accuses Dorworth of raping her while she was a minor, may well have implicated Dorworth for her own sake, without any agreement with any other Defendant.

[4] The following background is from Plaintiff's original and Amended Complaint. To the extent these allegations extend beyond threadbare conclusions, the Greenbergs accept them as true for the purpose of this motion, but do not concede their accuracy.

Indeed, Plaintiff's Amended Complaint weaves a fantastical tale in which Joel, A.B., Joel's ex-wife, Joel's parents, and his parents' business entities conspired together over a roughly three-year period to implicate Plaintiff. Even setting aside that he offers no factual allegations showing that the Greenbergs have engaged in any unlawful activity—let alone a vast conspiracy—a close chronological reading of Plaintiff's allegations shows that his entire theory is implausible and teeming with internal inconsistencies. Roughly speaking, Plaintiff breaks his allegations into a description of the alleged bad acts and a description of the alleged conspiracy that carried them out, with a description of the alleged defamation tacked on. For ease of reading, the Greenbergs follow the same structure here.

## I.    Plaintiff's alleged "pattern of racketeering."

Though some of Plaintiff's allegations stretch back as far as Joel's adolescence, *see* Doc. 62 ¶ 204, the substance of Plaintiff's story begins in January 2017, when Joel entered office as Seminole County Tax Collector. Doc. 1-1 ¶ 28. While in office, between 2017 and 2020, Joel committed a bevy of crimes. Eventually, on July 19, 2020, federal prosecutors charged Joel with stalking a political opponent. Doc. 62 ¶ 71. Soon after—Plaintiff does not say how soon—Joel cornered Plaintiff and demanded that Plaintiff help him secure a preemptive pardon. *Id.* ¶¶ 72–90. The requested pardon's contours are unclear. Then, again some unidentified time "shortly thereafter," Joel allegedly told Plaintiff that "he was [also] concerned about his exposure for sexual misconduct with A.B." *Id.* ¶ 91. As part of this interaction, Joel

5

allegedly claimed that "he and his parents would seek A.B.'s cooperation by 'paying her off'" and that he was paying A.B.'s attorney's fees. *Id.* ¶¶ 92–93.

Despite Joel's claims that he would pay A.B. off, in August 2020, A.B. testified about Joel before a grand jury. *Id.* ¶¶ 152, 235.[5] During the same grand jury session or in one soon after, A.B. and *another girl* allegedly implicated Plaintiff. *Id.* ¶ 120 ("Upon information and belief, in Fall 2020, at the behest of Joel Greenberg, A.B. and her friend went before a grand jury and falsely implicated Dorworth, Gaetz, and others in sexual impropriety."). Plaintiff does not allege that Joel or the Greenbergs offered this second girl anything in exchange for her testimony.

Then, on August 14, 2020, Joel texted Plaintiff—still pushing for a pardon—and claimed "that A.B. did not wish to speak to the authorities." *Id.* ¶ 109. Apparently around the same time—the most Plaintiff offers is "late summer 2020"—Joel, A.B., and Abby began speaking with federal prosecutors to frame Plaintiff. *Id.* ¶ 122. Finally,

---

[5] Plaintiff claims that, "[a]ccording to [Joel] Greenberg, authorities learned of Greenberg's misconduct with A.B. from electronic and other records, not from A.B." Doc. 62 ¶ 112. For this proposition, Plaintiff cites texts attached as Exhibit 3 to his Amended Complaint Doc. 62-3. But, therein, Greenberg says only that A.B. does not want to talk and that he thinks "Venmo was the link" before saying, in reference to A.B., "my only concern is that I don't know what could possibly come out of their mouths." *Id.* at 2.

Further, from Plaintiff's allegations that A.B. testified before the grand jury about Greenberg "at least once in 2020 . . . and again in Fall 2020" (*id.* ¶153) and Joel being convicted of sex trafficking (*id.* ¶15), one can readily surmise that A.B. implicated and testified against Joel—rather than being paid not to testify against Joel or to testify in some roundabout effort to mitigate Joel's criminal liability.  Indeed, Joel's was charged with sex trafficking A.B (*id.* ¶118) and pleaded guilty to that crime (*id.* ¶15), after A.B. testified to the grand jury about Joel Greenberg (*id.* ¶153). *See id.* ¶¶ 341, 372 (incorporating Joel's sentencing hearing transcript, which reflects he pleaded guilty to sex trafficking in May 2021 and was sentenced for that crime in December 2022, in *United States v. Joel Micah Greenberg*, Case No. 6:20-cr-97-GAP-LHP-1, Doc. 180 at 4:3-6, 42:23-43:5, 48:8-17 (M.D. Fla., Dec. 1, 2022)). *See Saunders v. Duke*, 766 F.3d 1262, 1270 (11th Cir. 2014) ("[D]ocuments attached to a complaint or incorporated in the complaint by reference can generally be considered by a federal court in ruling on a motion to dismiss under Rule 12(b)(6).").

on August 19, 2020, a federal grand jury returned a superseding indictment accusing Joel of sexual conduct with A.B. *Id.* ¶ 118.

Plaintiff next claims that Joel falsely accused him in other law enforcement interviews of (1) participating in a scheme to sex traffic minors, (2) having sex with A.B. when she was underage, (3) obstructing justice, (4) participating in a ghost candidate scheme, (5) having an extramarital affair, and (6) borrowing money from an acquaintance to buy prostitutes and drugs. *Id.* ¶ 378.[6]

Worse still, Plaintiff then claims that the Greenbergs must have knowingly supported Joel in making these allegedly defamatory statements because, "[u]pon information and belief," they were paying his lawyers. *Id.* ¶¶ 324–25. But these conclusory allegations—accompanied by no supporting factual allegations—do not even plausibly allege that the Greenbergs paid for Joel's defense, much less that the Greenbergs knew what Joel or others would say about Plaintiff, knew any such statements were false, or agreed to any unlawful scheme.

In sum, according to Plaintiff's muddled allegations, Joel controlled A.B.'s testimony, yet she testified about him before a grand jury—leading to his indictment, later conviction in 2021, and eventual sentencing in 2022 for sex trafficking A.B.  *See* ¶¶ 15, 118; *supra* fn. 5. *Before* being indicted on August 19, 2020 for sex trafficking A.B., however, Joel supposedly demanded that Plaintiff help him secure a pardon, *see id.*

---

[6] Though Plaintiff claims that Joel made these allegations to try to secure a lighter sentence, many of Plaintiff's allegations about these statements concern alleged interviews with state authorities—without jurisdiction to help Joel with his federal charges. *See, e.g.*, *id.* ¶¶ 156, 161.

¶¶ 71, 83, 118, and Joel said he would be "paying her [A.B.] off" and had induced her not to speak to the authorities, *id.* ¶¶ 93, 116.  Yet, in the same "late summer 2020" period, Joel, Abby, and A.B. all began implicating Plaintiff in conversations with the federal authorities, *id.* ¶ 122—thus simultaneously contradicting his claims A.B. would not speak to authorities and destroying any leverage Joel would have to allegedly extort Plaintiff to help with a pardon. Undaunted, and supposedly in conspiracy with his victim and apparent accuser, A.B., Joel falsely implicated Plaintiff to secure leniency in his federal case.

On top of all this, Plaintiff contends, though "information and belief" allegations, that the Greenbergs must have known what Joel was saying—and that his statements were false—because they were (upon information and belief) paying Joel's lawyers, and thus all of Joel's knowledge is imputed to them. Truly, "[o]ne need not do more than restate" Plaintiff's theory of the case "to demonstrate its lack of merit." *Hopkins v. Hosemann*, No. 19-60662, 2023 WL 4990543, at *12 (5th Cir. Aug. 4, 2023).

## II.    Plaintiff's allegations of "RICO Enterprise" and defamation.

After his run of "general allegations," Plaintiff ascribes all the bad acts set out above to one RICO enterprise [7]—the "Greenberg Enterprise"—made up of the Greenberg family, their businesses, and A.B., and operating with the intent to lessen Joel's criminal sentence by defaming Plaintiff and falsely implicating him in crimes. *Id.* ¶¶ 264–90. Yet as elaborated below, for each alleged "enterprise" member but Joel,

---

[7] Or several, it is not clear if Dorworth still alleges the sundry enterprises set out in his original Complaint. *See* Doc. 62 ¶ 348 (incorporating complaint); Doc. 1-1 ¶ 726 (listing alleged enterprises).

Plaintiff offers only conclusory allegations that they agreed at some unspecified time to join the alleged conspiracy. *See, e.g.*, *id.* ¶¶ 105, 126, 127, 154, 214, 294.

As to defamation, Plaintiff also claims, with no factual support, that "one of the Defendants in this action leaked false and derogatory information" about him to the *New York Times*. *Id.* ¶ 356. In turn, a *New York Times* reporter contacted Plaintiff on April 8, 2021. *Id.* ¶ 355. This forced Plaintiff to inform his employer, the lobbying firm Ballard Partners, of the investigation, and Plaintiff "was . . . compelled to resign his $1 million per year role with Ballard" on April 9, 2021. *Id.* ¶ 359.

Almost two years later, on December 30, 2022, counsel for A.B. sent a demand to Plaintiff accusing him of sexual misconduct, demanding payment, and threatening litigation. *Id.* ¶¶ 479, 487. In turn, on April 7, 2023, Plaintiff filed this action in Florida state court, which Defendants removed to this Court. *See* Doc. 1.

Through two successive complaints and roughly fifteen hundred paragraphs, the gist of Plaintiff's allegations has not changed: Plaintiff only offers supposition that the Greenbergs paid Joel's restitution and attorney's fee based on the fact that Joel allegedly lacked the resources to make such payments. *Id.* ¶ 397 ("Upon information and belief, and based upon Greenberg's amended financial disclosures, Greenberg lacked the funds to make this payment, and the Greenbergs covered it for him."). From that inference, Plaintiff simply declares that the Greenbergs gave that money to Joel, then further infer that the Greenbergs did so with knowledge and intent to harm Plaintiff. Such a claim, with no "articulable factual basis," should not be allowed to linger over the Greenbergs, all the while "generat[ing] suspicion and unfavorable

9

opinion" towards them. *Taylor v. Bear Stearns & Co.*, 572 F. Supp. 667, 682 (N.D. Ga. 1983). This Court must dismiss.

## ARGUMENT

This Court must dismiss Plaintiff's Amended Complaint for at least five related reasons. *First*, stripping conclusory allegations away, the Amended Complaint lacks any factual allegations of wrongdoing against the Greenbergs. *Second*, Plaintiff fails to allege an underlying RICO violation that would support his conspiracy claims. *Third*, Plaintiff insufficiently alleges that the Greenbergs agreed to violate RICO. *Fourth,* as to aiding and abetting, Plaintiff does not allege (other than in a conclusory fashion) that the Greenbergs either knew of any alleged defamatory statements or provided substantial assistance to further them. *Fifth*, and finally, Plaintiff's civil conspiracy claim fails because—among its other flaws—it fails to allege that the Greenbergs agreed to commit an unlawful act.

## I.     Plaintiff's Amended Complaint makes no non-conclusory allegations of wrongdoing against the Greenbergs.

The Supreme Court has recognized that groundless claims should be exposed "at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (quotation omitted). Discovery in complex federal cases can be enormously expensive, and courts must be conscious of this reality so as to avoid situations in which plaintiffs use the threat of such expense to push defendants "to settle even anemic cases." *Id.* at 559. Early resolution is

appropriate where a plaintiff's cause of action is simply not plausible. *Id.* at 570. That is the case here.

Plaintiff's claims against the Greenbergs all allege some species of the same conspiracy—a conspiracy to defame him. Stating a conspiracy claim [8] requires allegations that cross two related thresholds: the first between the conclusory and the factual, and the second between the factually neutral and the factually suggestive. *Id.* at 557 & n.5 (explaining that terms like "conspiracy" and "agreement" border on the side of legal conclusions, without more specific allegations identifying a written agreement or a basis for inferring tacit agreement). To survive a motion to dismiss, Plaintiff must plead sufficient facts to render his conspiracy claims "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In turn, plausibility requires Plaintiff to "go beyond pleading merely the 'sheer possibility' of unlawful activity" and plead specific "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *B-Smith Enters., LP v. Bank of Am., N.A.*, No. 22-11383, 2023 WL 2034419, at *1 (11th Cir. Feb. 16, 2023) (quoting *Iqbal*, 556 U.S. at 678). Factual "allegations that are merely consistent with liability" cannot render Plaintiff's claims plausible. *Doe v. Samford Univ.*, 29 F.4th 675, 688 (11th Cir. 2022) (quotation omitted). If permitting "obvious alternative explanations . . . [that] suggest lawful conduct rather than the

---

[8] Though the two claims are distinct, "liability for civil conspiracy is in substance the same thing as aiding and abetting liability." *K & S P'ship v. Cont'l Bank, N.A.*, 952 F.2d 971, 980 (8th Cir. 1991).

unlawful conduct the plaintiff would ask the court to infer," Plaintiff's Amended Complaint fails to state a claim. *Id.* at 689 (quotation omitted).

Based on the above, the Eleventh Circuit has explained time and again that the first step in evaluating a complaint under Federal Rule of Civil Procedure 12(b)(6) is to cast aside all conclusory statements—that is, "formulaic recitations" of the elements of a claim and legal conclusions without adequate factual support. *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1310 (11th Cir. 2022) (dismissing RICO conspiracy claim based on formulaic recitations); *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (on a motion to dismiss, the court "identif[ies] conclusory allegations and then discard[s] them"); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010) (explaining that, when "analyzing [a] conspiracy claim under the plausibility standard," the "first task is to eliminate any allegations in [the] complaint that are merely legal conclusions"). This Court also need not accept legal conclusions couched as factual allegations. *Diverse Power, Inc. v. City of LaGrange, Ga.*, 934 F.3d 1270, 1273 (11th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555).

Further, this Court should not accept allegations "upon information and belief" as true if they lack sufficient facts to make the allegations plausible. *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (citing *Twombly*, 550 U.S. at 551); *Sellstate Realty Sys. Network, Inc. v. Black*, 220CV00414JLBNPM, 2021 WL 354169, at *2–*3 (M.D. Fla. Feb. 2, 2021) (concluding that allegation "upon information and belief" could not be accepted as true because, without other "well-pleaded facts to accept as true, the

Court has no idea how plausible [plaintiff's] 'belief' might be"); *Scott v. Experian Info. Sols., Inc.*, No. 18-cv-60178, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard." (quotation and citation omitted)). To be sure, "[t]he mere fact that someone believes something to be true does not create a plausible inference that it is true." *In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 931 (6th Cir. 2014).

In the RICO conspiracy context, examples of such conclusory claims include allegations that "the defendants 'intentionally conspired' and 'agreed to the commission of [the racketeering acts] to further the scheme' outlined in the complaint," *Omnipol*, 32 F.4th at 1309–10, or that "[e]ach Defendant and member of the conspiracy, with knowledge and intent, agreed to the overall objective of the conspiracy, agreed to commit acts of fraud . . . , and actually committed such acts," *Cigna Corp.*, 605 F.3d at 1293. Of the 498 paragraphs in Plaintiff's Amended Complaint, 57 mention the Greenbergs (many are merely introductory paragraphs explaining who each defendant is). And to the extent these paragraphs contain actual allegations, the majority (at least 29) contain conclusory allegations without independent factual support. Given their number, those conclusory allegations are

reproduced in **Appendix A,** attached to this motion.[9] This Court's first step should be to cast these allegations aside.

"After eliminating th[ose] wholly conclusory allegations of conspiracy," *id.,* Plaintiff is left with insufficient allegations of wrongdoing against the Greenbergs. All Plaintiff can muster is that "[Joel] Greenberg . . . told Dorworth that he and his parents would seek A.B.'s cooperation by 'paying her off' . . . [,] that he had determined that A.B. would accept such inducement," and that "[Joel] Greenberg told Dorworth that his family and their businesses would pay any amount necessary to obtain a pardon." Doc. 62 ¶¶ 93–94.[10] Neither allegation goes so far as to claim that the Greenbergs actually agreed to do *anything* (only that Joel said they would). And even accepting that the Greenbergs would somehow "pay off" A.B. (whatever that might mean) or would pay to get their son a pardon, neither fact suggests that the Greenbergs agreed to be party to a conspiracy to defame Plaintiff.

Plaintiff also offers allegations that Andrew Greenberg gave Joel $200,000 to repay money Joel had stolen from the Seminole County Tax Collector's Office. But while Plaintiff suggests that the Third Superseding Indictment against Joel accuses Andrew Greenberg of giving Joel $200,000 "with the specific intent that they would

---

[9] Note that Plaintiff defines the "Greenbergs" in the Amended Complaint to include Joel—in addition to Andrew, Susan, AWG. Inc., and the Grenberg Dental entities. Doc. 62 ¶ 24.

[10] It is worth noting that these allegations conflict with the exhibits Plaintiff attached to his Amended Complaint. In Vladimir St. Louis's letter, he reports that Joel stated that A.B. would implicate Dorworth "cause she don't know any better" and because she might think she could later sue him—not because the Greenbergs (or even Joel) were paying her. Doc. 62-7 at 6. When, as here, there is a conflict between the complaint and attached exhibits, the exhibit controls. *See, e.g., Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).

14

be used by Joel Greenberg to cover up theft of cryptocurrency," *id.* ¶ 335, the indictment says no such thing.[11] It states only that Joel used "funds obtained from a family member." *See* Case No. 6:20-cr-97-GAP-LHP-1, Doc. 90 ¶ 7(*o*). Indeed, the indictments against Joel do not identify this transaction as being among the many illegal transactions with which Joel is charged. Accepting Plaintiff's allegations as true, that Andrew Greenberg provided funds to his son, does not suggest that he was a knowing party to a civil or criminal conspiracy, let alone a conspiracy to defame Plaintiff at a different time and place.

Finally, Plaintiff relies on innocuous connections, between Joel and his family and between the Greenbergs and their businesses, as support to infer wrongdoing. For example, Plaintiff asks this Court to infer malfeasance from allegations that Joel "kept a close relationship with his coconspirators"—that is, his parents and the mother of his children. *Id.* ¶¶ 229–30. Indeed, the Greenbergs, as Plaintiff alleges, have been "associated" with Joel since he was born. *Id.* ¶ 267. And the Greenbergs have been associated with their own business entities since they were founded. *Id.* ¶¶ 267–70. Further, the Greenbergs apparently used monies derived from their business "to fund their lifestyle." *Id.* ¶ 276. And the Greenbergs increased their support for Abby Greenberg and their grandchildren after Joel was incarcerated. *Id.* ¶ 319.

---

[11] Plaintiff incorporated the Third Superseding Indictment into the Amended Complaint, *United States v. Joel Micah Greenberg*, Case No. 6:20-cr-97-GAP-LHP-1, Doc. 90 ¶ 7(*o*) (M.D. Fla., Mar. 30, 2021)); Doc. 62 ¶ 348 (incorporating indictment into complaint).

These "allegations are merely consistent with liability" and permit an "obvious alternative explanation[]": That the Greenbergs are Joel's parents, and that fact—rather than a scheme to defame Plaintiff—is why they associated with him since birth, why they provided him money, and why they continue to support their grandchildren after a parent was criminally prosecuted and incarcerated. *Samford Univ.*, 29 F.4th at 688. Thus, Plaintiff has not alleged *any* plausible claim against the Greenbergs.

Even ignoring this general problem, Plaintiff also fails to state a claim for reasons specific to each count, to which this motion now turns.

## II. Plaintiff's Florida and federal RICO claims fail to allege an underlying RICO enterprise or that the Greenbergs agreed to participate in a RICO enterprise.

Plaintiff's federal and Florida RICO claims also fail for two reasons: (1) his failure to plead the existence of an underlying enterprise and (2) his failure to plead that the Greenbergs agreed to join in a conspiracy to violate RICO.  This Court must evaluate all Plaintiff's RICO claims under the same standard. *See Omnipol*, 32 F.4th at 1308 ("[T]he analysis of both the federal and state RICO claims is the same.").

### A. Plaintiff has failed to plead an underlying enterprise.

Before Plaintiff can state a viable RICO conspiracy claim, he must state a viable underlying RICO claim. *See Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1220 (11th Cir. 2020) (declining to reach RICO conspiracy claim because underlying RICO claim failed). Here, Plaintiff alleges that Joel violated 18 U.S.C. § 1962(c). Section 1962(c) prohibits "conduct[ing] or participat[ing], directly or indirectly, in the conduct of [a

criminal enterprise's] affairs through a pattern of racketeering activity." 18 U.S.C.
§ 1962(c). The elements of this claim are thus: (1) conduct; (2) of an enterprise; (3)
through a pattern; (4) of racketeering activity; (5) which causes the plaintiff injury.
*Cisneros*, 972 F.3d at 1211 (breaking the same requirements into six factors).

Focusing on the enterprise element, "a one-man show" does not a RICO
enterprise make. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 283 (5th Cir. 1992). Rather,
a RICO enterprise exists only "where a group of persons associates, formally or
informally, with the purpose of conducting illegal activity." *Jackson v. BellSouth
Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004) (quoting *United States v. Hewes*, 729
F.2d 1302, 1311 (11th Cir. 1984)). In his Amended Complaint, Plaintiff alleges an
"association-in-fact" enterprise—in other words, an enterprise that is not itself a legal
entity. Instead, "[a]n association-in-fact enterprise is simply a continuing unit that
functions with a common purpose." *Cisneros*, 972 F.3d at 1211 (citation and quotation
omitted). Though the concept seems simple, pleading such an enterprise is
"challenging." *Id.* (quotations omitted). Plaintiff must plead, among other elements,
that the enterprise has an illicit purpose. *Id.* at 1211–12.

Thus, Plaintiff must "plausibly allege that the participants shared the purpose
of . . . [exonerating Joel] through a particular *criminal* course of conduct"—not an
innocent alternative. *Cisneros*, 972 F.3d at 1211 (emphasis added). That is where he
fails. Plaintiff has not alleged sufficient "concrete facts"—only "sweeping, general, and
conclusory" allegations—to rebut possible innocent and "obvious alternative"
purposes. *Id.* at 1212 (cleaned up); *see also Tam v. Quick Box, LLC*, No. 3:20-CV-01082,

17

2020 WL 7226440, at *23 (S.D. Cal. Dec. 8, 2020) (explaining a RICO claim must contain "specific factual allegations that enable courts to rule out the innocent explanation in favor of plaintiff's fraudulent scheme hypothesis").

In his Amended Complaint, Plaintiff has narrowed his allegations from several association-in-fact enterprises to one—"The Greenberg Enterprise." Doc. 62 ¶ 264. According to Plaintiff, the enterprise "shared a common purpose of mitigating Joel and others' criminal liability by falsely implicating others." *Id.* ¶ 265. But he offers no facts to support this conclusion. Indeed, as discussed above, the association of Joel Greenberg, Abby Greenberg, and the Greenbergs is self-evident—relations by blood or marriage.[12] And, as described above, an innocent explanation for their conduct is similarly obvious: the Greenbergs wanted to provide financial support for their son going through a criminal prosecution, and for their daughter-in-law who was raising their grandchildren alone. Plaintiff has pleaded no non-conclusory facts to allow this Court to rule out those innocent explanations (or infer any connection between the Greenbergs and A.B.). In short, all Plaintiff has alleged is that Joel committed RICO predicate acts—i.e, federal crimes—for Joel's benefit. Plaintiff has thus not pleaded an underlying RICO violation.

---

[12] Plaintiff also identifies an innocent alternative motive for the Greenbergs to—as he alleges—pay Joel's restitution: to protect themselves. *See* Doc. 62 ¶ 393 (alleging that the Greenbergs paid Joel's restitution because "the Greenbergs thought they had legal liability in connection with the misconduct."). Trying to avoid claims, costly litigation, and potential liability—even if you did nothing wrong—is common in civil litigation; and it is certainly not suggestive of a crime.

**B. Plaintiff has failed to plead an agreement to violate RICO.**

Even assuming Plaintiff sufficiently pleaded an underlying RICO enterprise (which he failed to do), he has not pleaded facts sufficient to show that the Greenbergs agreed to join in that enterprise. Section 1962(d) "makes it illegal for anyone to conspire to violate one of the substantive provisions of RICO, including § 1962(c)." *Cigna Corp.*, 605 F.3d at 1293. "A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts." *Id.* (quotation omitted). "Allegations that the defendants 'should have known' is not enough to establish conspiracy, which is a crime of specific intent." *Singh v. NYCTL 2009-A Tr.*, 14 CIV. 2558, 2016 WL 3962009, at *10 (S.D.N.Y. July 20, 2016), *aff'd*, 683 F. App'x 76 (2d Cir. 2017). Plaintiff does not appear to allege—much less provide any non-conclusory allegations—that the Greenbergs agreed to commit two predicate acts. Thus, Plaintiff must allege that the Greenbergs agreed to the overall objective of the conspiracy: "mitigating Joel and others' criminal liability by falsely implicating others." Doc. 62 ¶ 265.

Plaintiff offers no facts showing that the Greenbergs agreed to this objective. Rather, he offers only the conclusory claims compiled in **Appendix A**, generally claiming that the Greenbergs provided money to Joel and Abby Greenberg with the knowledge and desire that it be used to further the alleged scheme. As such, Plaintiff's Amended Complaint is a paradigm of how not to plead a RICO conspiracy claim.

For example, compare Plaintiff's allegations to those in *Parm v. National Bank of California, N.A.*, 242 F. Supp. 3d 1321 (N.D. Ga. 2017). There, among a raft of allegations, the plaintiff alleged a RICO conspiracy between a bank and an internet-based payday lending corporation. *Id.* at 1327, 1349. There, the plaintiff "simply contend[ed], in conclusory fashion, that Defendant and [the payday loan company] reached an agreement to use their respective roles within [the] Enterprise to profit by facilitating payday loans to borrowers residing in states that banned the practice" and that the "Defendant intentionally conspired and agreed with [the payday loan company] to use its gatekeeping role . . . to directly and indirectly conduct and participate in the conduct of the affairs of [the] Enterprise in violation of [the substantive RICO statute]." *Id.* at 1350. As the court held, such allegations, without "sufficient factual allegations to support," failed to state a claim. *Id.*

So too here, all Plaintiff offers against the Greenbergs is allegations like "Andrew and Sue Greenberg, as well as AWG and Greenberg Dental, agreed to provide funding to compensate Abby Greenberg and A.B. for providing false reports and testimony to the authorities and the federal grand jury" and "[e]ach Defendant joined the conspiracy no later than Summer 2020 when the Defendants agreed to influence each other's testimony with the common purpose of falsely implicating others including Dorworth." Doc. 62 ¶¶ 126, 293. These are nothing more than formulaic recitations. *See Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1068 (11th Cir. 2017) (explaining that "allegations [that] simply recite a legal conclusion—the existence of an agreement. . . . are inadequate for pleading purposes."); *Omnipol*, 32

20

F.4th 1309-10 (rejecting "simpl[e]" allegations of agreement); *O'Malley v. O'Neill*, 887 F.2d 1557, 1560 (11th Cir. 1989) (explaining that, to assert a RICO conspiracy claim, facts must be alleged "that would indicate that [defendants] were willing participants in a conspiracy"); *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 733 (7th Cir. 1998 ) ("It is well established that a complaint may be dismissed if it contains only conclusory, vague and general allegations of a conspiracy."); *see also Twombly*, 550 U.S. at 557 ("[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."). Because Plaintiff merely offers unadorned claims of agreement, his RICO conspiracy counts (Counts II and IV) must be dismissed.

### III.   Plaintiff has failed to state a claim for aiding and abetting defamation.

For similar reasons, Plaintiff has also failed to state a claim for aiding and abetting defamation. To state an aiding and abetting claim, Plaintiff must allege: "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906 (11th Cir. 2012). Aiding-and-abetting liability is not "boundless," rather "courts have long recognized the need to cabin" such "liability to cases of truly culpable conduct." *Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206, 1220–21 (2023). Such "culpability . . . is necessary" or else "passive actors like banks [will] become liable for all their customers' crimes by virtue of carrying out routine transactions." *Id.* at 1222. Here, Plaintiff's aiding and abetting claim against the Greenbergs fails because—assuming that Joel committed an underlying tort—

Plaintiff has not (and cannot) allege that the Greenbergs were culpable through either knowledge of Joel's alleged defamatory actions or through providing substantial assistance to advance those actions. Plaintiff does not allege facts showing that the Greenbergs knew about the defamatory statements Plaintiff alleges (the best he offers is that, "upon information and belief," the Greenbergs must have been paying Joel's lawyers, and so must have known about his alleged scheme to defame). Doc. 62 ¶ 325. And at bottom, the mere allegation that the Greenbergs supported their son financially, itself supported only by supposition, cannot impose strict liability upon the Greenbergs for any and all acts Joel commits.

Indeed, merely providing "any assistance of any kind" is not enough to create liability. *See Twitter*, 143 S. Ct. at 1220. For example, in *ZP No. 54 Limited Partnership v. Fiduciary & Deposit Co. of Maryland*, a developer alleged that its employee conspired with a contractor in a bid-rigging scam. 917 So. 2d 368, 370 (Fla. 5th DCA 2005). The developer then sued the surety that issued the contractor's performance bond, alleging that its bond issuance supported the contractor and had thus aided and abetted fraud. *Id.* The Fifth DCA rejected this theory, explaining that the surety did not provide substantial assistance to advance the fraud because the surety simply did what sureties do—issue performance bonds—and did not have any duty to third parties to "look behind the contract" to determine whether fraud was being committed. *Id.* at 373–75.

So too here, merely financially supporting a child does not carry a duty to ensure that support will never indirectly or incidentally contribute to later crime; nor does it constitute material assistance to all tortious action that a child might later commit. *See*

*Carney*, 751 So. 2d at 654; *Knight v. Merhige*, 133 So. 3d 1140, 1151 (Fla. 4th DCA 2014) (rejecting extension of liability of parent over adult child, holding that, as a public policy matter, "[f]amilies should be encouraged to include a troubled family member in the family circle" and that imposing a legal duty to the family of such children would "discourage families from providing a haven to troubled relatives for fear of civil liability"). Indeed, here, legal counsel (and not the Greenbergs) handled Joel's criminal defense, in which he allegedly implicated Plaintiff. In turn, by allegedly paying for that defense or for Joel's restitution debts, the Greenbergs did not assume a duty to protect others. Thus, Plaintiff's aiding and abetting claim (Count VI) fails.

### IV.   Plaintiff has failed to state a claim for conspiracy.

Finally, Plaintiff has failed to plead a civil conspiracy to commit defamation. Stating a successful civil conspiracy claim requires pleading "a conspiracy between two or more parties . . . to do an unlawful act or to do a lawful act by unlawful means." *Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. 5th DCA 2006). Plaintiff must provide "clear, positive and specific allegations; general allegations of conspiracy are not sufficient." *Parisi v. Kingston*, 314 So. 3d 656, 661 (Fla. 3d DCA 2021). Plaintiff must also allege the conspiracy's scope, its participants, and when the agreement occurred. *See In re Chiquita Brands Int'l, Inc. Alien Tort Stat. & S'holder Deriv. Litig.*, 690 F. Supp. 2d 1296, 1311 (S.D. Fla. 2010). And as with RICO, in pleading an agreement of parties to conspire, a bare assertion of an agreement is insufficient to make that claim plausible. *Almanza*, 851 F.3d at 1068; *Parisi*, 314 So. 3d at 661

Even parallel conduct among parties cannot support a plausible inference of an

23

agreement. *Almanza*, 851 F.3d  at 1068.  More than allegations of parallel conduct, a plaintiff must plead factually "suggestive" allegations—ones raising a *plausibility* that a preceding unlawful agreement was reached—in situations where parallel conduct could just as well reflect independent action. *Twombly*, 550 U.S. at 556–57. In other words, conclusory inferential allegations of conspiracy and agreement do not push a complaint over the thresholds necessary to state an "entitle[ment] to relief," under Rule 8(a), when describing independent actors acting in a way that could well be expected in the absence of a preceding unlawful agreement. *See id*. at 557.

Plaintiff's civil conspiracy claim fails for the same reason all his other claims fail: his allegations are anything but clear, positive, and specific. Despite multiple and lengthy efforts to meet his pleading burden, Plaintiff fails to allege facts supporting his claim that Defendants agreed to defame him. Plaintiff does not allege any meeting or gathering of the Defendants where they discussed their shared objective to minimize Joel's liability and defame Plaintiff. In fact, Plaintiff does not identify *any* communication between the members of the alleged conspiracy for any purpose at all. Likewise, there are no non-conclusory allegations that the Greenbergs, the Greenberg Dental entities, or Abby even knew of A.B.'s existence.

Even parallel conduct and knowledge thereof is not enough—and Plaintiff does not even (properly) allege that. A far more likely and plausible explanation for the conduct alleged (often upon information and belief) is independent and non-collusive acts of each alleged co-conspirator: (1) the Greenbergs merely provided funds to their son who was in legal jeopardy, and provided funds to their daughter-in-law after Joel

24

was indicted to support her and their grandchildren; (2) Abby Greenberg provided information for her husband's defense on topics of interest to the prosecutors; (3) the Greenberg Dental entities simply compensated their namesake founding shareholder and executive, Andrew; (4) A.B. falsely implicated Plaintiff to pursue claims against him for her own benefit; and (5) Joel falsely implicated Plaintiff in an effort to save himself from a longer prison sentence. In short, all of the "conspirators" conduct is equally suggestive of independent, parallel conduct without any collusion—and, indeed, innocent conduct on the part of the Greenbergs. Plaintiff's scant allegations cannot support a claim for conspiracy.[13] Thus, this Court must also dismiss Plaintiff's civil conspiracy claim (Count VII).

## CONCLUSION

This Court should dismiss all counts of Plaintiff's Amended Complaint against the Greenbergs with prejudice because repleading to state a claim is futile and because Plaintiff has already had one opportunity to fix his complaint's deficiencies. *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005) (explaining that, "[o]rdinarily, a party must be given at least one opportunity to amend before the district court dismisses the complaint," but that a court may dismiss with prejudice where amendment is futile).

---

[13] Plaintiff's conspiracy claim also fails because his underlying defamation claim fails. *See Ovadia v. Bloom*, 756 So. 2d 137, 140 (Fla. 3d DCA 2000). First, Plaintiff does not identify the who, where, when, and what of the defamatory statements he alleges. *Jackson v. N. Broward Cty. Hosp. Dist.*, 766 So. 2d 256, 257 (Fla. 4th DCA 2000) (plaintiff must "specifically identify the persons to whom the allegedly defamatory comments were made"). Worse still, Plaintiff likely does so because those statements are either time barred, *see Ashraf v. Adventist Health Sys./Sunbelt, Inc.*, 200 So. 3d 173, 174–75 (Fla. 5th DCA 2016), or privileged, *see Fridovich v. Fridovich*, 598 So. 2d 65, 69 (Fla. 1992).

**LOCAL RULE 3.01(g) CERTIFICATION**

On August 22, 2023, counsel for Andrew Greenberg, Susan Greenberg, and AWG, Inc. conferred with counsel for Plaintiff via telephone on the issues raised in this motion. Plaintiff opposes the sought relief.

Respectfully submitted,

*/s/ Frederick S. Wermuth*
Frederick S. Wermuth (Lead Counsel)
Florida Bar No. 0184111
Dustin Mauser-Claassen
Florida Bar No. 0119289
Quinn Ritter
Florida Bar No. 1018135
KING, BLACKWELL, ZEHNDER &
WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com
dmauser@kbzwlaw.com
qritter@kbzwlaw.com

*Attorneys for Defendants Andrew Greenberg, Susan Greenberg, and AWG, Inc.*

William E. Peters, Jr.
Florida Bar No. 50230
WICKER SMITH O'HARA MCCOY &
FORD, P.A.
515 E. Las Olas Boulevard
SunTrust Center, Suite 1400
Ft. Lauderdale, FL 33301
Telephone: (954) 847-4800
Facsimile: (954) 760-9353
WPeters@wickersmith.com
ftlcrtpleadings@wickersmith.com

*Attorney for Defendants Andrew Greenberg and Susan Greenberg*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 22, 2023 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Frederick S. Wermuth*
Frederick S. Wermuth
Florida Bar No. 0184111

27