UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHRISTOPHER E. DORWORTH,

     *Plaintiff,*

v.                                                              Case No.: 6:23-cv-871-JA-DCI

JOEL MICAH GREENBERG, *et al.*,

     *Defendants.*

---

## DEFENDANT, ABBY GREENBERG'S MOTION TO DISMISS VERIFIED AMENDED COMPLAINT (DOC. NO. 62)

## INTRODUCTION

Plaintiff's Amended Complaint (Doc. No. 62) asserts two theories of liability against Defendant, Abby Greenberg.  First, Plaintiff alleges that Abby Greenberg is derivatively liable for the tortious actions of her ex-husband, Joel Greenberg, and A.B. through participating in a federal civil RICO conspiracy (Count II); Florida civil RICO conspiracy (Count IV); aiding and abetting (Count VI); and common law civil conspiracy (Count VII).  Second, Plaintiff alleges that Abby Greenberg is directly liable for publishing false statements on her own about Plaintiff engaging in a ghost political candidate scheme and sexual misconduct (Count V).  As explained below, Plaintiff fails to state a claim against Abby Greenberg under either theory of liability.

### I.     Abby Greenberg's Derivative Liability

Joel and Abby Greenberg were married from 2016 until their divorce was finalized on April 25, 2022.  *See* Doc. No. 62 at ¶¶ 18, 273.  During that time, Joel Greenberg purportedly committed numerous crimes and tortious acts as delineated in the table below:

| Paragraph Number | Alleged Defamatory Statement Attributable to Defendant, Joel Greenberg |
|---|---|
| 378(a) | Falsely averring Dorworth was involved in the scheme to sex traffic minors. . . |
| 378(b) | Falsely averring Dorworth had sex with an underage A.B. . . . |
| 378(c) | Falsely averring Dorworth was involved in an attempt to obstruct justice through witness tampering. . . |
| 378(d) | Falsely averring Dorworth was involved in the ghost candidate scheme involving the 2020 Florida Senate District Nine election and incurred campaign finance violations in furtherance of the scheme. . . |
| 378(e) | Falsely impersonating Dorworth in communications to the employer of Joel Greenberg's political opponent and creating social media |

1

| | accounts made to suggest Dorworth was behind them . . . |
|---|---|
| 378(f) | Falsely describing Dorworth and others as a "mafia" with a criminal agenda . . . |
| 378(g) | Falsely averring Dorworth was having an extramarital affair with his female attorney. . . |
| 378(h) | Falsely averring Dorworth borrowed money from Jim Stelling to avoid detection in acquiring prostitutes and drugs. . . |

Though Plaintiff seeks to impute the knowledge and actions of Joel Greenberg to Abby Greenberg, the mere act of being married to Joel Greenberg from 2016 through 2022 is not sufficient to impose derivative liability on Abby Greenberg for these eight (8) actions. Instead, the general rule in Florida is that "neither the liability nor the knowledge of one spouse can be [] imputed to the other." *Boswell v. Russell*, 819 So. 2d 925, 927 (Fla. 5th DCA 2002). To overcome this general rule, Plaintiff must plead and prove that Abby Greenberg: (1) had knowledge of her ex-husband's tortious conduct; and (2) authorized and participated in her ex-husband's tortious conduct. *See Schryburt v. Olesen*, 475 So. 2d 715, 716 (Fla. 2d DCA 1985) ("Under Florida law, a wife is not liable for her husband's tort when she has no knowledge of this tortious conduct and does not authorize or participate in the act.").

Plaintiff has not adequately pled that Abby Greenberg knew of the eight (8) tortious actions attributed to her ex-husband. Moreover, Plaintiff has not adequately pled that Abby Greenberg authorized and participated in the eight (8) tortious actions. As a result, Plaintiff fails to state a claim for derivative liability on the part of Abby Greenberg for the actions of her ex-husband. *See Schryburt*, 475 So. 2d at 715 (fact that wife joined in sale of home by signing deed, standing alone, was insufficient to support

judgment against wife for fraudulent concealment and misrepresentation with regard to leaky roof, when there was no evidence that wife had any knowledge of condition or roof, or that she was present, participated in, or had any knowledge of any of the acts constituting the fraudulent concealment and misrepresentation); *Baird v. Johnson*, 235 So. 2d 538, 539-540 (Fla. 4th DCA 1970) (where wife delivered money given to her by bailor to husband in accordance with bailor's instructions and she did not have custody or control of funds after delivering same to husband, she was not liable for any conversation of funds by husband); *Boswell*, 819 So. 2d at 925 (wife could not be liable for the negligence of her husband in allowing bull to stray onto highway and injuring motorist).

Moreover, Plaintiff fails to state a claim for derivative liability for the actions of A.B. for falsely averring that Plaintiff was involved in a scheme to sex traffic minors and that Plaintiff had sex with an underage A.B. *See* Doc. No. 62 at ¶ 447. On that subject, the best Plaintiff can allege is that: "Upon information and belief, Abby . . . knew about or became aware of Joel's relationship with A.B." and that "Joel Greenberg and Abby Greenberg, and upon information and belief, A.B. and others, continued to attempt to frame Dorworth and others throughout 2022." *See* Doc. No. 62 at ¶¶ 168 & 275. These types of allegations based upon information and belief are insufficient to state a claim for relief. *See Scott v. Experian Info. Sols., Inc.*, No. 18-cv-60178, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and

allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard"); (internal citations omitted).

On August 8, 2023, Plaintiff amended his Complaint to include additional allegations about Abby Greenberg in an effort to establish derivative liability. *See generally id*. The Amended Complaint improperly incorporates by reference Plaintiff's Original Complaint. *See id*. at ¶ 348. Additionally, the allegations lodged against Abby Greenberg lack the factual specificity required to plead conspiratorial intent, in prelude to accusing her of federal RICO conspiracy, Florida RICO conspiracy, aiding and abetting defamation, and civil conspiracy.

Plaintiff's derivative liability allegations are so weak that he apparently felt the need to justify them to the Court. *Id.* at ¶ 41 ("Each allegation in this pleading . . . is likely to have evidentiary support after a reasonable opportunity for further investigation, discovery, and public records requests, some of which is currently pending.").

At bottom, all Plaintiff can muster against Defendant, Abby Greenberg, are allegations based on inference. And from inference-based allegations, Plaintiff asks this Court to take inferential leap after leap, to assume that Abby Greenberg: (1) knew who A.B. was; (2) knew what A.B. and Joel were saying about Plaintiff, and to whom; (3) knew the statements to be false; and (4) authorized and participated in their publication.

Each of Plaintiff's inferential leaps lacks the factual support necessary to plead a plausible claim for derivative liability on the part of Abby Greenberg. Further, rather

than suggesting a vast conspiracy among varied defendants, Plaintiff's allegations permit many innocent alternatives: that Joel Greenberg implicated Plaintiff on his own in an effort to gain government leniency; that Andrew and Susan Greenberg funded Joel Greenberg's legal defense because he is their son, without knowing of Joel Greenberg's claims against Plaintiff, without knowing if they were true or false, and without even knowing who A.B. is; that Joel Greenberg's father, Dr. Andrew Greenberg, received his available income from the Greenberg Dental entities as an employee—as normally paid without any conspiratorial intent; that Andrew and Susan Greenberg gave money to Abby Greenberg because they wanted to support their grandchildren, who have lost their father for over a decade; that Abby Greenberg supported Joel Greenberg's defense believing his claims against Plaintiff; and that A.B. may well have implicated Plaintiff for her own sake, without any agreement with any other Defendant. Plaintiff's Amended Complaint offers no facts ruling out these—and many other—innocent alternatives to Plaintiff's conspiracy theories.  Accordingly, Plaintiff's claims against Abby Greenberg based on derivative liability (Counts II, IV, VI, and VII) must be dismissed.

## II.    Abby Greenberg's Direct Liability

Plaintiff's theory of direct liability against Abby Greenberg is also fatally flawed. In Count V of the Amended Complaint, Plaintiff attempts to assert a direct claim against Abby Greenberg for defamation alleging: "Defendant Abby Greenberg also made false statements regarding Dorworth, including that Dorworth engaged in a

ghost candidate scheme, and further disseminated sexual misconduct allegations regarding Dorworth to the media."  Doc. No. 62 at ¶ 448.

To assert a cause of action for defamation, a plaintiff must "set out the substance of each allegedly defamatory statement. . . ; the date, place, and manner of publication; to whom the statement was made; and facts showing the damages flowing from each statement."  *See Bezeau v. Cable Equip. Servs., Inc.*, 2015 WL 3540009, at \*4 (S.D. Fla. May 27, 2015).  Here, Plaintiff fails to state the specific dates of publication, the place of publication, the manner of publication, the identity of the individuals who read, heard or saw the alleged statements, and any facts showing the damages flowing from each statement.  Plaintiff's claim, therefore, lacks the specificity required to state a claim.  Moreover, to the extent the alleged statements were published by Abby Greenberg to Joel Greenberg during their marriage, they are not actionable as communications between spouses and are absolutely privileged.  *See* Restatement (Second) of Torts § 592 ("A husband or a wife is absolutely privileged to publish to the other spouse defamatory matter concerning a third person.").  Further, to the extent the alleged statements were published in grand jury proceedings, they are absolutely privileged and cannot form the basis for a defamation claim.  *See Buchanan v. Miami Herald Pub. Co.*, 206 So. 2d 465, 467-68 (Fla. 3d DCA 1968); *State v. Tillet*, 111 So. 2d 716, 721-22 (Fla. 2d DCA 1959).

## **BACKGROUND**[1]

---

[1]  The following background is pulled from Plaintiff's original and Amended Complaint. To the extent these allegations extend beyond threadbare conclusions, the Defendant, Abby Greenberg, accepts them as true for the purpose of this motion, but does not concede their accuracy.

After various Defendants moved to dismiss Plaintiff's original Complaint, Plaintiff filed an Amended Complaint.  *See* Doc. No. 62.  In the Amended Complaint, Plaintiff accuses Abby Greenberg of federal RICO (Count II), Florida RICO (Count IV), defamation (Count V), aiding and abetting defamation (Count VI); and civil conspiracy (Count VII).   According to Plaintiff—largely through 42 separate "information and belief allegations"—Defendants, including Abby Greenberg, falsely accused Dorworth of being involved in, among other things, child sex trafficking, obstruction of justice, and participating in "ghost candidate" schemes. *See, e.g.*, Doc. 62 at ¶ 8.

Plaintiff's Amended Complaint accuses Defendants of conspiring together over a roughly three-year period to implicate Plaintiff.  Even setting aside that Plaintiff offers no factual allegations showing a vast conspiracy, a close chronological reading of Plaintiff's allegations shows that his entire theory is implausible and teeming with internal inconsistencies.

## I.     Plaintiff's alleged "pattern of racketeering."

The substance of Plaintiff's allegations begin in January 2017, when Joel entered office as Seminole County Tax Collector.  While in office, between 2017 and 2020, Joel committed a number of crimes.  Eventually, on June 17, 2020, federal prosecutors charged Joel with stalking a political opponent.  *See* Doc. 62 at ¶ 65. Soon after, Joel purportedly cornered Plaintiff and demanded that Plaintiff help him secure

a preemptive pardon. *See id.* at ¶¶ 72–90. Then, again some unidentified time "shortly thereafter," Joel allegedly told Plaintiff that "he was [also] concerned about his exposure for sexual misconduct with A.B." *Id.* at ¶ 91. As part of this interaction, Joel allegedly claimed that "he and his parents would seek A.B.'s cooperation by 'paying her off'" and that he was paying A.B.'s attorney's fees. *Id.* at ¶¶ 92–93.

Despite Joel's claims that he would pay A.B. off, in August 2020, A.B. testified about Joel before a grand jury. *See id.* at ¶¶ 152, 235. During the same grand jury session or in one soon after, A.B. and *another girl* allegedly implicated Plaintiff. *See id.* at ¶ 120 ("Upon information and belief, in Fall 2020, at the behest of Joel Greenberg, A.B. and her friend went before a grand jury and falsely implicated Dorworth, Gaetz, and others in sexual impropriety.").

Then, on August 14, 2020, Joel texted Plaintiff—still pushing for a pardon—claiming "that A.B. did not wish to speak to the authorities." *Id.* at ¶ 109. Apparently around the same time—the most Plaintiff offers is "late summer 2020"—Joel, A.B. and Abby began speaking with federal prosecutors to frame Plaintiff. *Id.* at ¶ 122. Finally, on August 19, 2020, a federal grand jury returned a superseding indictment accusing Joel of sexual conduct with A.B. *Id.* at ¶ 118.

The Amended Complaint next claims that Joel made eight (8) false statements about Dorworth, all of which are summarized in the table above. *Id.* at ¶ 378. Though Plaintiff claims that Joel made these eight (8) false statements to try to secure a lighter sentence from the federal authorities, some of these statements were purportedly made in interviews with *state* authorities—without jurisdiction to help Joel with his federal

charges. *See, e.g., id.* at ¶¶ 156, 161; *Gamble v. United States*, 139 S. Ct. 1960, 1964 (2019) ("We have long held that a crime under one sovereign's laws is not 'the same offence' as a crime under the laws of another sovereign.").

In sum, according to Plaintiff's muddled allegations, Joel controlled A.B.'s testimony, yet she testified about him before a grand jury—leading to his indictment. At the same time, Joel demanded that Plaintiff help him secure a pardon. Yet Joel simultaneously destroyed any leverage he would have over Plaintiff by implicating Plaintiff in conversations with federal authorities. Undaunted, Joel apparently decided that he could secure leniency in his federal case by falsely implicating Plaintiff. Yet Joel did so in interviews with state law enforcement—who did not control his federal case.  On top of all this, the Defendant, Abby Greenberg, must have known about all of Joel's statements—and that his statements were defamatory—because she was his wife at the time and mother of his children.  These "allegations are conclusory, without specific factual detail from which the reader can infer the substance of [Plaintiff's] conspiracy theories." *Ayers v. Gabis*, Case No. 20-11735, 2021 WL 4316853, at *7 (E.D. Mich. Sept. 23, 2021).

## II.    Plaintiff's allegations of "RICO Enterprise" and defamation.

Plaintiff ascribes the bad acts described above to one RICO enterprise—the "Greenberg Enterprise"—made up of the Greenberg family, their businesses, and A.B., and operating with the intent to lessen Joel's criminal sentence by defaming Plaintiff and falsely implicating him in crimes. Doc. No. 62 at ¶¶ 264–90. As elaborated below, however, as to every member of this "enterprise" except Joel, Plaintiff offers

nothing but threadbare, unadorned allegations that they agreed at some unspecified time to join the alleged conspiracy.

Plaintiff also claims, with no factual support, that "one of the Defendants in this action leaked false and derogatory information" about him to the New York Times. *Id.* at ¶ 356. In turn, a New York Times reporter contacted Plaintiff on April 8, 2021. *Id.* at ¶ 355. This forced Plaintiff to inform his employer, the lobbying firm Ballard Partners, and Plaintiff "was . . . compelled to resign his $1 million per year role with Ballard" on April 9, 2021. *Id.* at ¶ 359.

Almost two years later, on December 30, 2022, counsel for A.B. sent a demand to Plaintiff accusing him of sexual misconduct, demanding payment, and threatening litigation. *Id.* at ¶¶ 479, 487. In turn, on April 7, 2023, Plaintiff filed this action in Florida state court, which Defendants then removed to this Court. *See* Doc. 1.

Through his two successive complaints, the gist of Plaintiff's allegations has not changed: Plaintiff only offers supposition to support a theory of derivative liability as to Abby Greenberg.

## **ARGUMENT**

The Court must dismiss Plaintiff's Amended Complaint, in its entirety, for at least six (6) reasons. *First*, stripping the conclusory allegations away, the Amended Complaint lacks specific factual allegations to establish derivative liability against Abby Greenberg. *Second*, Plaintiff fails to allege an underlying Federal or Florida RICO violation that would support imposing derivative liability on Abby Greenberg

through a conspiracy. *Third*, Plaintiff insufficiently alleges that Defendant, Abby Greenberg, agreed to violate federal or Florida RICO to support imposing derivative liability on Abby Greenberg. *Fourth*, Plaintiff insufficiently alleges facts to support the elements of a direct claim against Abby Greenberg for defamation. Moreover, at least a portion of that claim is not actionable because it is absolutely privileged as a statement made to a spouse during the course of a marriage or a statement made to a grand jury. *Fifth,* as to aiding and abetting, Plaintiff does not allege (other than in a conclusory fashion) that Abby Greenberg knew of any alleged defamatory statements attributable to Joel Greenberg and/or A.B. and provided substantial assistance to advance those defamatory statements. *Sixth*, Plaintiff's common law conspiracy claim fails because—among its other flaws—it does not properly allege that Abby Greenberg agreed to commit an unlawful act. For all these reasons, this Court must dismiss Plaintiff's Amended Complaint as to Abby Greenberg in its entirety.

I.   **Plaintiff's Amended Complaint makes no non-conclusory allegations of wrongdoing against Defendant, Abby Greenberg.**

The United States Supreme Court has recognized that groundless claims should be exposed "at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007) (citations omitted). Discovery in complex federal cases can be enormously expensive, and courts must be conscious of this reality so as to avoid situations in which plaintiffs use the threat of such expense to push defendants "to settle even anemic cases." *Id.* at 559. Early

resolution is appropriate where a plaintiff's cause of action is simply not plausible. *Id.* at 570.

Further, stating a conspiracy claim requires allegations that cross two related thresholds: the first threshold between the conclusory and the factual, and the latter threshold between the factually neutral and the factually suggestive. *Twombly*, 550 U.S. at 557 & n.5 (citing *DM Rsch. Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 56 (1st Cir. 1990) for the holding that terms like "conspiracy" and "agreement" border on the side of legal conclusions, without more specific allegations identifying a written agreement or a basis for inferring a tacit agreement).

To survive a motion to dismiss, Plaintiff must plead sufficient facts to render his conspiracy claims "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In turn, plausibility requires Plaintiff to "go beyond pleading merely the 'sheer possibility' of unlawful activity" and plead specific "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *B-Smith Enters., LP v. Bank of Am., N.A.*, Case No. 22-11383, 2023 WL 2034419, at *1 (11th Cir. Feb. 16, 2023) (quoting *Iqbal*, 556 U.S. at 678). Factual "allegations that are merely consistent with liability" cannot render Plaintiff's claims plausible. *Doe v. Samford Univ.*, 29 F.4th 675, 688 (11th Cir. 2022) (cleaned up).

The Eleventh Circuit has explained time and again that the first step in evaluating a complaint under Federal Rule of Civil Procedure 12(b)(6) is to cast aside all conclusory statements—that is, "formulaic recitations" of the elements of a claim and legal conclusions without adequate factual support. *Omnipol, A.S. v. Multinational*

*Def. Servs., LLC*, 32 F.4th 1298, 1310 (11th Cir. 2022) (dismissing RICO conspiracy claim based on formulaic recitations); *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (on a motion to dismiss, the court "identif[ies] conclusory allegations and then discard[s] them"); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010) (explaining that, when "analyzing [a] conspiracy claim under the plausibility standard," the "first task is to eliminate any allegations in [the] complaint that are merely legal conclusions.").

In the RICO conspiracy context, examples of such conclusory claims include allegations that "the defendants 'intentionally conspired' and 'agreed to the commission of [the racketeering acts] to further the scheme' outlined in the complaint," *Omnipol*, 32 F.4th at 1309–10, or that "[e]ach Defendant and member of the conspiracy, with knowledge and intent, agreed to the overall objective of the conspiracy, agreed to commit acts of fraud . . . , and actually committed such acts," *Cigna Corp.*, 605 F.3d at 1293.

Of the 498 paragraphs in Plaintiff's Amended Complaint, 74 of the paragraphs specifically reference Defendant, Abby Greenberg; and the vast majority of those (at least 31 paragraphs) contain conclusory allegations. Given their number, the conclusory allegations lodged against Defendant, Abby Greenberg, are delineated in **Appendix A** to this Motion to Dismiss. This Court's first step should be to cast these conclusory allegations aside.

"After eliminating th[ose] wholly conclusory," *id.* at 1294, Plaintiff is left with insufficient allegations to support derivative liability against Defendant, Abby Greenberg.

For example, Plaintiff asks this Court to infer malfeasance from allegations that Joel "kept a close relationship with his coconspirators"—that is, his parents and the mother of his children. *Id.* at ¶¶ 229–30.  And that Andrew and Susan Greenberg increased their support for Abby Greenberg and their grandchildren after Joel was incarcerated. *Id.* at ¶ 319.

These "allegations are merely consistent with liability" and permit an "obvious alternative explanation[]": that the Greenbergs are Joel's parents, and—rather than a scheme to defame Plaintiff—their filial relationship is why they associated with him since birth, why they loaned him money, and why they continue to support their grandchildren and the mother of their grandchildren after the loss of a parent. *Samford Univ.*, 29 F.4th at 688.

Even ignoring this general problem, Plaintiff also fails to state a claim for reasons specific to each count, to which this motion now turns.

## II. Plaintiff's Federal and Florida RICO claims (Counts II and IV) fail to allege an underlying RICO enterprise or that Defendant, Abby Greenberg, agreed to participate in a RICO enterprise

Plaintiff's Federal and Florida RICO claims (Counts II and IV) fail for two reasons: (1) his failure to plead the existence of an underlying enterprise and (2) his failure to plead that Defendant, Abby Greenberg, agreed to join in a conspiracy to

violate RICO. *See Omnipol*, 32 F.4th at 1308 ("[T]he analysis of both the federal and state RICO claims is the same.").

### A. Plaintiff has failed to plead an underlying enterprise.

Before Plaintiff can state a viable RICO conspiracy claim, he must state a viable underlying RICO claim. *See Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1220 (11th Cir. 2020) (declining to reach RICO conspiracy claim because underlying RICO claim failed). Here, Plaintiff alleges that Joel violated 18 U.S.C. § 1962(c). Section 1962(c) prohibits "conduct[ing] or participat[ing], directly or indirectly, in the conduct of [a criminal enterprise's] affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). The elements of this claim are thus: (1) conduct; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity; (5) which causes the plaintiff injury. *Cisneros*, 972 F.3d at 1211.

Focusing on the enterprise element, "a one-man show" does not make a RICO enterprise. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 283 (5th Cir. 1992). Rather, a RICO enterprise exists only "where a group of persons associates, formally or informally, with the purpose of conducting illegal activity." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004) (quoting *United States v. Hewes*, 729 F.2d 1302, 1311 (11th Cir. 1984)). In his Amended Complaint, Plaintiff alleges an "association-in-fact" enterprise—in other words, an enterprise that is not itself a legal entity. *See* Doc. 62 at ¶ 264. Instead, an association-in-fact enterprise is "simply a continuing unit that functions with a common purpose." *Cisneros*, 972 F.3d at 1211. Though the concept

seems simple, pleading such an enterprise is "challenging." *Id.* (quotations omitted).
Plaintiff must plead, among other elements, that the enterprise has an illicit purpose.
*Almanza v. United Airlines, Inc.*, 851 F.3d 1060, 1067 (11th Cir. 2017) (cleaned up). That
is where Plaintiff fails.

Plaintiff must "plausibly allege that the participants shared the purpose of . . .
[exonerating Joel] through a particular *criminal* course of conduct"—not an innocent
alternative. *Cisneros*, 972 F.3d at 1211 (emphasis added). Thus, Plaintiff must allege
sufficient "concrete facts"—not "sweeping, general, and conclusory" allegations—to
rebut possible innocent and "obvious alternative" purposes. *Id.* at 1212 (cleaned up);
*see also Tan v. Quick Box, LLC*, Case No. 3:20-CV-01082, 2020 WL 7226440, at *23
(S.D. Cal. Dec. 8, 2020) (explaining a RICO claim must contain "specific factual
allegations that enable courts to rule out the innocent explanation in favor of plaintiff's
fraudulent scheme hypothesis.").

In his Amended Complaint, Plaintiff focuses on one association-in-fact
enterprise: "The Greenberg Enterprise." Doc. 62 at ¶ 264. According to Plaintiff, the
enterprise "shared a common purpose of mitigating Joel and others' criminal liability
by falsely implicating others." *Id.* at ¶ 265. But Plaintiff offers no facts that support this
conclusion. Indeed, as discussed above, the association between Joel Greenberg, Abby
Greenberg, and the Greenbergs is self-evident—they are or were related by blood or
marriage.  Plaintiff has pleaded no non-conclusory facts that would allow this Court
to rule out that innocent explanation. In short, all Plaintiff has alleged is that Joel

committed RICO predicate acts—that is, federal crimes—for Joel's benefit. Plaintiff has thus failed to plead an underlying RICO violation.

### B. Plaintiff has failed to plead an agreement to violate RICO.

Even assuming Plaintiff sufficiently pleaded an underlying RICO enterprise (which he failed to do), Plaintiff has not pleaded facts sufficient to show that Defendant, Abby Greenberg, agreed to join in that enterprise. Section 1962(d) "makes it illegal for anyone to conspire to violate one of the substantive provisions of RICO, including § 1962(c)." *Cigna Corp.*, 605 F.3d at 1293. "A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts." *Id.* (quotation omitted). Plaintiff does not appear to allege—much less provide any non-conclusory allegations—that Defendant, Abby Greenberg, agreed to commit two predicate acts. Thus, Plaintiff must allege Defendant, Abby Greenberg, agreed to the overall objective of the conspiracy: "mitigating Joel and others' criminal liability by falsely implicating others." Doc. 62 at ¶ 265.

Plaintiff offers no facts showing that the Defendant, Abby Greenberg, agreed to this objective. Rather, he offers only the conclusory claims compiled in **Appendix A** which are not sufficient to plead a RICO conspiracy claim. *Almanza*, 851 F.3d at 1068 (explaining that "allegations [that] simply recite a legal conclusion—the existence of an agreement. . . . are inadequate for pleading purposes."); *Omnipol*, 32 F.4th at 1309

(rejecting "simpl[e]" allegations of agreement); *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 733 (7th Cir. 1998 ) ("It is well established that a complaint may be dismissed if it contains only conclusory, vague and general allegations of a conspiracy."); *see also Twombly*, 550 U.S. at 557 ("[A] conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."). Because Plaintiff merely offers unadorned claims of agreement, his RICO conspiracy counts (Counts II and IV) must be dismissed.

### III. Plaintiff has failed to state a claim for defamation against Defendant, Abby Greenberg (Count V)

Through paragraphs 156-162; 373-376; and 448 of the Amended Complaint, Plaintiff attempts to assert a direct claim against Abby Greenberg for defamation:

| Paragraph Number | Allegation |
|---|---|
| 156 | On June 23, 2022, Joel Greenberg sat for a transcribed interview with state prosecutors, including Stacey Salmons and Special Agent Supervisor Louis Negret, and Inspector Troy Cope, for an interview at the Orange County Jail.  See June 23, 2022 Transcript of Joel Greenberg Interview, attached hereto as Exhibit 1. |
| 157 | During that investigation, Joel Greenberg falsely claimed that Dorworth had illegally paid $25,000 to Ben Paris to run against Lee Constantine.  Id. at 37:33-40. |
| 158 | Lee Constantine is an opponent of Dorworth's proposed development. |
| 159 | Joel Greenberg claimed that his wife, Abby Greenberg, had supplied this information to him.  Id. at 23:29-36. |
| 160 | According to Greenberg, these allegations arose six months prior to the June 2022 interview, and Abby conveyed this information to Greenberg on the phone while he was incarcerated. |
| 161 | Upon information and belief, the authorities contacted Abby Greenberg, who corroborated Joel Greenberg's accusation, and/or sat before a state grand jury. |

| 162 | In fact, it appears from the dialogue that Abby Greenberg had already sat with the authorities or provided information in that investigation.  Id. at 39:18-33 (Joel indicating that Abby had already "come in on" some redacted issue.) |
| 373 | Abby Greenberg falsely accused Dorworth of being involved in the ghost candidate scheme described above. |
| 374 | Upon information and believe, Abby Greenberg was the source for the New York Times story, which covered the allegation against Dorworth about the ghost candidate scheme. |
| 375 | Abby Greenberg also disseminated information about the false sexual misconduct allegations to the press. |
| 376 | Upon information and belief, Abby Greenberg has disseminated information about the false sexual misconduct allegations to the Daily Beast on multiple occasions. |
| 448 | Defendant Abby Greenberg also made false statements regarding Dorworth including that Dorworth engaged in a ghost candidate scheme, and further disseminated sexual misconduct allegations regarding Dorworth to the media. |

However, Plaintiff fails to identify the who, what, where, when, and how associated with each defamatory statement as required by applicable law.

First, with respect to the ghost political candidate scheme, Plaintiff does not identify the persons that Abby Greenberg purportedly published the defamatory statements to—other than Joel Greenberg and a grand jury. But those publications are insufficient to state a claim for defamation because statements made by one spouse to another spouse are absolutely privileged.  *See* Restatement (Second) of Torts § 592; *Laver v. Peal*, Case No. 21-cv-1061-JES-JEH, 2021 WL 3673810, at *3 (C.D. Ill. Aug. 18, 2021) (applying Illinois law and dismissing action for defamation based on absolute privilege afforded to publications between spouses); *Medcalf v. Walsh*, 938 F. Supp. 2d 478, 486 (S.D.N.Y. 2013) (applying New York law and dismissing action for

19

defamation because communications between spouses are absolutely privileged).[2] Likewise, statements made to a grand jury are absolutely privileged and cannot form the basis of a defamation clam. *See Miller v. Support Collection Unit Westchester Cnty.*, Case No. 8:09-CV-1898-T-27AEP, 2010 WL 767043, *8 (M.D. Fla. Mar. 5, 2010) (finding that plaintiff failed to state a claim for defamation because "affidavits submitted to the courts, and testimony given before the court or in a grand jury proceeding are absolutely privileged and cannot form the basis for a defamation claim by Plaintiff."). This is the case even if the "testimony is given maliciously and with knowledge of its falsity." *State v. Tillett*, 111 So. 2d 716, 720 (Fla. 2d DCA 1959).

Second, particularly with respect to the allegations of sexual misconduct, Plaintiff does not identify the specific substance of each of the defamatory statements that Abby Greenberg purportedly made.

Third, Plaintiff does not adequately describe the date, place, and manner of the publication made by Defendant, Abby Greenberg.

Finally, Plaintiff does not plead facts showing the damages flowing from each of the defamatory statements. *See Bezeau v. Cable Equip. Servs., Inc.*, Case No. 14–24538–CIV, 2015 WL 3540009, at *4 (S.D. Fla. May 27, 2015) ("If CES intends to plead a separate claim for defamation it must set out the substance of each allegedly

---

[2] Plaintiff alleges that Abby Greenberg was married to Joel Greenberg from 2016 until their divorce was finalized on April 25, 2022. *See* Doc. No. 62 at ¶ 18. Plaintiff further alleges that the defamatory statement made by Abby Greenberg to Joel Greenberg about the ghost political candidate took place six (6) months prior to June of 2022. Inasmuch as Abby Greenberg and Joel Greenberg were married at the time of this purportedly defamatory statement, the communication between Abby Greenberg and Joel Greenberg is absolutely privileged and not actionable.

defamatory statement on which it is proceeding; the date, place, and manner of publication; to whom each statement was made; and facts showing the damages flowing from each statement.").

To assert a viable claim for defamation, "the Plaintiff must allege certain facts such as the identity of the speaker, a description of the statement, and provide a time frame within which the publication occurred." *Fowler v. Taco Viva, Inc.*, 646 F. Supp. 152, 157-58 (S.D. Fla. 1986).  Given the absence of such allegations here, Plaintiff's claim for direct liability against Abby Greenberg for defamation fails.  *Id.* (internal citations omitted); *Woodhull v. Mascarella*, Case No. 1:08cv151–SPM/AK, 2009 WL 1790383, at *3 (N.D. Fla. June 24, 2009) ("Specific information must be provided to support" the elements of defamation "such as the identity of the speaker, the identity of the persons spoken to, the substance of the statements, and a time frame when the statements were made.") (internal citations omitted); *Jackson v. N. Broward Cnty. Hosp. Dist.*, 766 So. 2d 256, 257 (Fla. 4th DCA 2000) (dismissing defamation claim where plaintiff failed to "specifically identify the persons to whom the allegedly defamatory comments were made"); *Buckner v. Lower Fla. Keys Hosp.*, 403 So. 2d 1025, 1028 (Fla. 3d DCA 1981) (dismissing defamation-based claim where plaintiff merely alleged that the defamatory remarks were made to "numerous third parties on numerous occasions").

## IV. Plaintiff has failed to state a claim for aiding and abetting defamation against Defendant, Abby Greenberg (Count VI)

Plaintiff has also failed to state a claim for aiding and abetting defamation

against Defendant, Abby Greenberg.  To state an aiding and abetting claim, Plaintiff must allege: "(1) an underlying violation on the part of the primary wrongdoer; (2) knowledge of the underlying violation by the alleged aider and abetter; and (3) the rendering of substantial assistance in committing the wrongdoing by the alleged aider and abettor." *Lawrence v. Bank of Am., N.A.*, 455 F. App'x 904, 906 (11th Cir. 2012). Aiding-and-abetting liability is not "boundless," rather "courts have long recognized the need to cabin" such "liability to cases of truly culpable conduct." *Twitter, Inc. v. Taamneh*, 143 S. Ct. 1206, 1220–21 (2023). Such "culpability . . . is necessary" or else "passive actors like banks [will] become liable for all their customers' crimes by virtue of carrying out routine transactions." *Id.* at 1222. Here, Plaintiff's aiding and abetting claim against Defendant, Abby Greenberg, fails because—assuming that Joel Greenberg and/or A.B. committed the underlying tort of defamation which Plaintiff has not sufficiently pled—Plaintiff has not (and cannot) allege that Defendant, Abby Greenberg, is culpable through her knowledge of the alleged defamatory statements and providing substantial assistance to further the defamatory actions.

To be sure, Plaintiff does not allege facts showing that the Defendant, Abby Greenberg, knew about the alleged defamatory statements attributable to A.B and rendered substantial assistance to A.B. in advancing those statements.  Also, merely providing "any assistance of any kind" is not enough to create liability for aiding and abetting a tort. *See Twitter*, 143 S. Ct. at 1220; *see also ZP No. 54 Limited Partnership v. Fidelity & Deposit Co. of Maryland*, 917 So. 2d 368, 370 (Fla. 5th DCA 2005) (surety did not provide substantial assistance to advance fraud allegedly perpetrated by contractor

where surety simply did what sureties do by issuing performance bond to contractor).

Further, Plaintiff does not allege facts showing that Defendant, Abby Greenberg, knew about the alleged defamatory statements attributable to Joel Greenberg set forth in the table above and rendered substantial assistance in advancing those statements. On the contrary, the best Plaintiff offers is that "Greenberg kept a close relationship with Abby Greenberg, who was his former wife, and who knowingly corroborated many of his false allegations and who was kept in the fold through material support from his parents" and that "[e]ach one of the statements was made by [Joel] Greenberg, and/or repeated or corroborated by A.B. and Abby Greenberg, with an improper motive to harm Dorworth." *Id.* at ¶¶ 230 and 379. These allegations are insufficient to impose derivative liability on Abby Greenberg for the actions of her ex-husband. *See Boswell v. Russell*, 819 So. 2d 925, 927 (Fla. 5th DCA 2002) ("Under Florida law, neither the liability nor the knowledge of one spouse can generally be imputed to the other."); *Schryburt v. Olesen*, 475 So. 2d 715, 716 (Fla. 2d DCA 1985). For all these reasons, Plaintiff's aiding and abetting claim (Count VI) fails.

## V. Plaintiff has failed to state a claim for civil conspiracy against Defendant, Abby Greenberg (Count VII)

Plaintiff's civil conspiracy claim fails because the underlying tort of defamation against A.B., Abby Greenberg, and Joel Greenberg fails for lack of specificity and/or by virtue of an absolute privilege. *See Buckner*, 403 So. 2d at 1027 ("To support a cause of action for conspiracy to defame, it is . . . incumbent upon a plaintiff to properly allege those elements which would establish a defamation").

Turning to another issue, pleading a successful civil conspiracy claim requires pleading "a conspiracy between two or more parties . . . to do an unlawful act or to do a lawful act by unlawful means." *Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. 5th DCA 2006).  To satisfy that requirement, Plaintiff must provide "clear, positive and specific allegations; general allegations of conspiracy are not sufficient." *Parisi v. Kingston*, 314 So. 3d 656, 661 (Fla. 3d DCA 2021). Plaintiff must also allege the conspiracy's scope, its participants, and when the agreement occurred. *See In re Chiquita Brands Int'l, Inc. Alien Tort Stat. & S'holder Deriv. Litig.*, 690 F. Supp. 2d 1296, 1311 (S.D. Fla. 2010). And as with RICO, in pleading an agreement between parties to conspire, a bare assertion of an agreement is insufficient to make that claim plausible. *Almanza*, 851 F.3d at 1068.

Even parallel conduct among parties cannot support a plausible inference of an agreement. *See id.* at 1068.  More than allegations of parallel conduct, a plaintiff must plead factually "suggestive" allegations—ones raising a *plausibility* that a preceding unlawful agreement was reached—in situations where parallel conduct could just as well reflect independent action. *Twombly*, 550 U.S. at 556–57. In other words, conclusory inferential allegations of conspiracy and agreement do not push a complaint over the thresholds necessary to state an "entitle[ment] to relief," under Rule 8(a), when describing independent actors acting in a way that could well be expected in the absence of a preceding unlawful agreement. *See id.* at 557.

Plaintiff's civil conspiracy claim fails because his allegations are anything but clear, positive, and specific.  Plaintiff fails to allege facts supporting his claim that

24

Defendants agreed to defame him. Even parallel conduct and knowledge thereof is not enough—and Plaintiff does not even (properly) allege that. Independently—and, indeed, far more likely and common—Andrew and Susan Greenberg could just as well have supplied funds to support a son in legal jeopardy and to support his children (their grandchildren) without knowing what Joel would say, or had said, about Plaintiff, much less that any such statements were false. Likewise, Abby Greenberg could just have well provided support for Joel's defense without agreeing to defame anyone; the Greenberg Dental entities likely, if anything, paid compensation to their namesake founding shareholder and executive; A.B. could simply have asserted and pursued claims against Plaintiff for her own benefit, without any agreement with any other Defendant; and, obviously, Joel Greenberg could have implicated Plaintiff, with or without the assistance of counsel, in an effort to save himself from a longer prison sentence. In short, Plaintiff's scant allegations cannot support a claim for conspiracy.

## CONCLUSION

Based on the foregoing discussion and authorities, the Court should dismiss all counts of Plaintiff's Amended Complaint against Defendant, Abby Greenberg, with prejudice as repleading to state a claim is futile.

## LOCAL RULE 3.01(g) CERTIFICATION

On the afternoon of Monday, August 28, 2023, counsel for Defendant, Abby Greenberg, conferred with counsel for Plaintiff, Christopher Dorworth, via zoom on the issues raised in this Motion to Dismiss and the Plaintiff, Christopher Dorworth, opposes the relief sought.

Respectfully submitted,

/s/ Jason A. Perkins
Jason A. Perkins, Esq.
Florida Bar No. 0610852
CARLTON FIELDS, P.A.
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Phone:  (407) 849-0300
Fax:  (407) 648-9099
jperkins@carltonfields.com (primary)
mbryan@carltonfields.com (secondary)
dcarlucci@carltonfields.com (secondary)

*Attorney for Defendant, Abby Greenberg*

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that on Tuesday, August 29, 2023 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Jason A. Perkins*
Jason A. Perkins, Esq.
Florida Bar No. 0610852

26