United States District Court
Middle District of Florida
Orlando Division

CHRISTOPHER E. DORWORTH,

      *Plaintiff,*

v.                       **No. 6:23-00871**

JOEL MICAH GREENBERG,
ANDREW W. GREENBERG, SUSAN
GREENBERG, ABBY GREENBERG,
AWG, INC., GREENBURG DENTAL
ASSOCIATES, LLC, GREENBERG
DENTAL & ORTHODONTICS, P.A.,
GREENBERG DENTAL SPECIALTY
GROUP, LLC, and A.B.,

      *Defendants.*

_____

## DEFENDANT A.B.'S MOTION TO DISMISS

_____

## INTRODUCTION

Defendant A.B. is a victim of child sex trafficking. As set forth in detail in Joel Greenberg's guilty plea, A.B. was still a minor when Mr. Greenberg trafficked her for commercial sex acts for himself and his friends. *See* Plea Agreement at 28-32, United States v. Greenberg, No. 6:20-cr-0009 (M.D. Fla. May 14, 2021), ECF No. 105.[1] During the criminal prosecution, A.B. cooperated with authorities by detailing the abuse she suffered and Mr. Greenberg's attempts to obfuscate his conduct.

---

[1] "Courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage." *Harvey v. Soto*, 2016 WL 6275766, at *1 n.1 (M.D. Fla. Oct. 27, 2016) (quoting *U.S. ex rel. Osheroff v. Humana Inc.*, 776 F.3d 805, 812 n.4 (11th Cir. 2015)).

In this action, Plaintiff seeks to recast A.B. as Mr. Greenberg's partner in crime, a participant in a conspiracy to destroy Mr. Dorworth's reputation as revenge for his refusal to aid Mr. Greenberg's legal defense. In his original Complaint, Mr. Dorworth failed to attribute any actual statements or behavior to A.B., beyond vague references to grand jury testimony. In his Verified Amended Complaint (hereinafter, "FAC"), Mr. Dorworth supplements with conclusory, unsupported allegations as to elements of his claims. Ultimately, though, the picture is the same: A.B. was a victim (of both Greenberg *and* Dorworth) who cooperated with law enforcement. Those two facts about her are the sole reason that she is involved in this lawsuit. Any other allegations in the FAC lack factual support and plausibility, and they should be disregarded.

Additionally, the FAC improperly seeks to preempt any claims A.B. may have against Mr. Dorworth for raping and trafficking her by making a threadbare request for expansive declaratory judgment. This claim bears no relation to the rest of the disputes set forth in the FAC and is both procedurally and prudentially inapt for resolution through the present action.

## LEGAL STANDARD

"A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding such a motion, a court must "accept[] the factual allegations in the complaint as true and construe[] them in a light most favorable to the non-moving party." *Jones v. Coors Brewing Co.*,

2

378 F. Supp. 3d 1132, 1134 (M.D. Fla. 2019) (citing *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1269 (11th Cir. 2009)). However, a court need not accept as true legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While pleading "upon information and belief" is permissible, such allegations must be credited only "where that belief is based on factual information that makes the inference of culpability possible." *Tickling Keys, Inc. v. Transamerica Fin. Advisors, Inc.*, 305 F. Supp. 3d 1342, 1347 n.2 (M.D. Fla. 2018) (citation and internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## ARGUMENT

### I.   Defamation

Under Florida law, in order to state a claim for defamation, a plaintiff must allege "(1) publication; (2) falsity; (3) actor must act with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) statement must be defamatory." *Jews for Jesus, Inc. v. Rapp*, 997 So.2d 1098, 1106 (Fla. 2008) (citing Restatement (Second) of Torts §§ 558B, 580A-580B); *accord Zimmerman v. Buttigieg*,

3

521 F. Supp. 3d 1197, 1211 (M.D. Fla. 2021). Importantly, "[b]ecause the publication of a statement is a necessary element in a defamation action, only one who publishes can be subject to this form of tort liability." *Doe v. Am. Online, Inc.*, 783 So.2d 1010, 1017 (Fla. 2001). In turn, "[p]ublication requires that the statement be communicated to a third person." *Zimmerman*, 521 F. Supp. 3d at 1212 (citation and internal quotation marks omitted). Although it is "not necessarily require[d] that statements be set out verbatim" in a pleading, where "the cause of action for defamation is based on oral statements," a plaintiff still must "set out the substance of the spoken words with sufficient particularity to enable the court to determine whether the publication was defamatory." *Lipsig v. Ramlawi*, 760 So.2d 170, 184-85 (Fla. Dist. Ct. App. 2000) (quoting *Edward L. Nezelek, Inc. v. Sunbeam Television Corp.,* 413 So.2d 51, 55 (Fla. Dist. Ct. App 1982)). To assert a cause of action for defamation, a plaintiff must "set out the **substance** of each allegedly defamatory statement. . . ; the **date, place, and manner** of publication; **to whom each statement was made**; and **facts showing the damages flowing** from each statement." *Music with Mar, LLC v. Mr. Froggy's Friends, Inc.*, 2020 WL 7768941, at *3 (M.D. Fla. Dec. 30, 2020) (emphasis added).

As an initial matter, A.B. maintains that she has never provided any false information to anyone  relating to her experiences being trafficked and statutorily raped by Mr. Greenberg and others, much less at the behest of Mr. Greenberg. Mr. Greenberg's prosecution and guilty plea for these crimes clearly demonstrates this fact. However, even taking the contrary allegations within the FAC as true for purposes of

the present Motion, Mr. Dorworth fails to adequately allege a single instance on which A.B. committed the tort of defamation.

It must be noted that Mr. Dorworth has substantially reworked his allegations since his initial (verified) Complaint, though he purports to incorporate "further details" regarding his sprawling legal theories by reference in his FAC. *FAC* ¶ 348. In the interest of time, to the extent that Mr. Dorworth "incorporates" allegations of supposed defamation against A.B. that are not included in the FAC, A.B. incorporates herein her responses to same as presented in her Motion to Dismiss the original Complaint. *See Mot. to Dismiss*, ECF No. 46 at 5-10.

As with the original Complaint, in Count Five of the FAC, Mr. Dorworth alleges that "Defendant A.B. also made false statements regarding Dorworth, including: [(1)] Falsely averring Dorworth was involved in the scheme to sex traffic minors; [and (2)] Falsely averring Dorworth had sex with an underage A.B."[2] *FAC* ¶ 447. But a review of each specific factual allegation that even potentially supports Plaintiff's claim clearly shows that Mr. Dorworth does not allege any defamatory statements on the part of A.B.

---

[2] Mr. Dorworth does conclusorily allege that "Joel Greenberg and A.B. concocted a second narrative where Dorworth and Gaetz had engaged in obstruction of justice regarding the sexual misconduct charge" and that they, "and/or others acting at their behest," advanced this theory in Summer 2021. *FAC* ¶ 147, 148. However, the FAC includes absolutely *no* allegations supporting this claim. Indeed, beyond Mr. Dorworth's fanciful "information and belief" allegations, there is no indication that Mr. Greenberg and A.B. have ever spoken since 2020, at the latest, and Mr. Dorworth certainly does not provide the "who, what, when, and where" of any such statement from A.B. Regardless, A.B. takes the absence of allegations that A.B. falsely published statements about obstruction of justice in Count Five to mean that Mr. Dorworth does not pursue any such claim against A.B. *Compare FAC* ¶ 446(c) (alleging Mr. Greenberg falsely averred that Mr. Dorworth obstructed justice), *with id.* ¶ 447 (making no such allegation regarding A.B.).

A.      *Statements Prior to April 7, 2021 Are Outside the Statute of Limitations*

The statute of limitations for defamation claims in Florida is two years.  Fla. Stat. § 95.11(4)(h).  And, under Florida law, such an action accrues not upon discovery, but "at the time of the first publication or exhibition or utterance thereof in this state."  Fla. Stat. § 770.07.  Therefore, the statute of limitations on defamation actions runs two years after any associated publication.  *Wagner, Nugent, Johnson, Roth, Romano, Erikson, & Kupfer, P.A. v. Flanagan*, 629 So.2d 113, 114-15 (Fla. 1993).  Because Mr. Dorworth filed the present suit on April 7, 2023, he is unable to recover for any supposedly defamatory statement that was published prior to April 7, 2021.

It is admittedly unclear, from the face of the FAC, which allegedly defamatory statements Mr. Dorworth claims A.B. made prior to April 7, 2021.  To the extent that it is unclear exactly when such an alleged statement was made, Mr. Dorworth has failed to meet his pleading burden for such claims, which requires that he set forth not only the nature of the statement made, but when it was made and to whom.  *See Music with Mar, LLC*, 2020 WL 7768941, at *3.  However, several statements can be conclusively ruled out as providing Mr. Dorworth a right to relief.

In particular, any statements A.B. made to the grand jury or prosecutors prior to April 2021 are unquestionably stale.  These make up the bulk of the allegedly defamatory statements set forth in Mr. Dorworth's FAC.  *See FAC* ¶¶ 120-22, 136, 152-53.  So too would be any statements made to the press before that date, though Mr. Dorworth identifies no specific media statements before that date.

In the particular context of this case, one consequence of the statute of limitations having run on all statements before April 7, 2021 is that it is nearly impossible that any allegedly defamatory statement made by A.B. could have resulted in Mr. Dorworth's principal alleged damages: the loss of his consulting job.  Mr. Dorworth now seems to claim (though he does not directly allege) that he resigned from that position no later than April 9, 2021.[3]  *FAC* ¶ 359 n.1.  Therefore, in order to claim damages from his resignation as a result of defamation, Mr. Dorworth would need to allege a statement made *on* April 7, 2021 or later that caused his resignation, which occurred no later than April 9, 2021.  *See Wagner*, 629 So.2d at 114-15 (rejecting discovery rule as to defamation claims).  Mr. Dorworth's FAC is devoid of any allegations that A.B. made any such statement during these **two days.**

This Court should dismiss Mr. Dorworth's defamation claim (and any secondary claim relying on such conduct) to the extent it relies on statements made prior to April 7, 2021.  It likewise should dismiss Plaintiff's claim for damages arising from his resignation because (a) he previously signed a verified complaint in which he attested that he resigned in March 2021 and (b) the FAC includes insufficient

---

[3] In his original Verified Complaint, Mr. Dorworth alleged that he "served as a lobbyist prior to leaving the profession in March 2021."  *Compl.* ¶ 6.  Mr. Dorworth now incredibly attributes that allegation to "a typographical or drafting error."  *FAC* ¶ 359 n.1.  Mr. Dorworth verified the original Complaint, attesting under penalty of perjury that he had read it, agreed with it, and the facts therein were true.  *See Compl.* at 116.  It beggars belief that Mr. Dorworth would have overlooked such a fundamental error in only its sixth paragraph.  However, now that he has learned of the legal consequences of this admission, Mr. Dorworth's FAC no longer alleges the date on which he resigned.  Though he disputes "[a]ny implication from a previous draft of this pleading" that it was prior to April 9, 2021, *FAC* ¶ 359 n.1, he does not actually allege the date of his resignation or that it was later than April 7, 2021.

allegations to establish that A.B. made any defamatory statements during the actionable time period (on or after April 7, 2021) that led to Plaintiff's resignation.

B.   *Any Statements to Grand Juries or in This Litigation Are Absolutely Privileged and Cannot Form the Basis for Defamation Liability*

Even if most of the statements Mr. Dorworth alleges A.B. made to the grand jury were not time barred, Florida law is clear that any testimony made to a grand jury is absolutely privileged and cannot be the basis of a defamation claim.  Because "[t]he office of the grand jury is investigative, as well as accusatory, . . . it is within the province of that arm of the courts to determine the truth of testimony provided to it." *Buchanan v. Miami Herald Pub. Co.*, 206 So.2d 465, 468 (Fla. 3d Dist. App. 1968).  The Florida Supreme Court has recognized this principle, confirming that when allegedly defamatory statements are made to grand juries, they are "clearly within the scope of the judicial proceedings privilege."  *Fridovich v. Fridovich*, 598 So.2d 65, 67 n.3 (Fla. 1992); *see also Miller v. Support Collection Unit Westchester Cty.*, 2010 WL 767043, at *8 (M.D. Fla. Mar. 5, 2010) ("[I]n Florida, testimony received by a constituted grand jury has long been considered as privileged and cannot be the basis for a cause of action for libel or slander, or conspiracy for libel or slander.").  Thus, to the extent Plaintiff bases his defamation claims on statements to grand juries, these claims must be dismissed.

For similar reasons, Mr. Dorworth's apparent suggestion that A.B.'s filings in this case further defame him, *see FAC* ¶¶ 377, 482-84, are without merit.  The same absolute privilege that applies to grand jury testimony applies to "defamatory statements made in the course of judicial proceedings . . . so long as the statements are

relevant to the subject of inquiry." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So.2d 606, 607 (Fla. 1994). Any statements regarding Mr. Dorworth's statutory rape and trafficking of A.B. in this case are surely relevant to this inquiry, in which Plaintiff seeks a declaration that he did not rape or traffic A.B.

C.     *Any Remaining Alleged Defamatory Statements Are Either Implausible or Inadequately Pled*

Mr. Dorworth appears to identify only two statements that were potentially made by A.B. after April 7, 2021 and outside of the litigation context, such that they could possibly support a defamation claim against her.[4] First, Mr. Dorworth identifies a CNN article from late 2022, quoting language that:

> [t]wo women who attended parties with Greenberg and Gaetz previously told CNN that the men also regularly socialized together at sex parties in the Orlando area that featured local political figures, young women, Venmo payments, alcohol and drugs, including cocaine and ecstasy.

*FAC* ¶ 367 (quoting CNN article at https://www.cnn.com/2022/11/30/politics/joel-greenberg-matt-gaetz-investigation-hearing/index.html). First, the cited article nowhere mentions or identifies Mr. Dorworth or A.B.. Second, Mr. Dorworth fails to reveal in his FAC that the words "sex parties" in the quote above contain a link to an April 14, 2021 article setting forth what these two women "previously told CNN."

---

[4] Mr. Dorworth does not appear to allege in the FAC that a letter from A.B. to his attorney notifying Mr. Dorworth of claims against him was defamatory. Any such claim would be spurious, as the tort of defamation requires publication to a third-party other than the subject, and only Mr. Dorworth publicized this letter, specifically through the instant litigation. *Zimmerman v. Buttigieg*, 521 F. Supp. 3d 1197, 1212 (M.D. Fla. 2021) ("Since the interest protected is that of reputation, it is essential to tort liability for either libel or slander that the defamation be communicated to some one other than the person defamed" (citation omitted)).

*Id.* In that article, *Women Detail Drug Use, Sex and Payments After Late-Night Parties with Gaetz and Others*, CNN POLITICS, https://www.cnn.com/2021/04/14/politics/gaetz-parties-women-drug-use-sex-payments/index.html, CNN reported, "Both women said that they never saw anyone at the parties who appeared to be underage. **Neither has spoken with federal investigators**, they said." *Id.* (emphasis added). In short, this story is neither defamatory (as it fails to make any statements about Mr. Dorworth's conduct), nor is it plausible that A.B., who was underage at those parties and (according to Mr. Dorworth's own allegations) spoke with investigators prior to April 2021, is one of the two women identified as a source.

Second, Mr. Dorworth alleges that on April 8, 2021, he was contacted by a New York Times reporter who informed him that she had spoken with "multiple people" who said that the FBI was investigating Mr. Dorworth for having sex with A.B. while she was underage. *FAC* ¶ 355; *FAC*, Ex. 8. Mr. Dorworth follows this with three further allegations, all "[u]pon information and belief," that "one of the Defendants in this action," "A.B. . . ., either directly or through an intermediary," and "Abby Greenberg, Joel Greenberg, and possibly Andrew and Sue Greenberg" provided information to this reporter. *FAC* ¶¶ 356-58. Plaintiff adds no factual basis to support these allegations, let alone the pertinent details required to be pled, *see Music with Mar, LLC*, 2020 WL 7768941, at *3, and they should be rejected on that basis alone.

Further, the reporter stated, at 9:34 AM on April 8, 2021, that she was planning to publish the story "today," rendering it implausible that any statements made by

sources were made on or after April 7, 2021. *FAC*, Ex. 8. Nor does Mr. Dorworth allege that they were.

Even more significantly, it does not appear that the information provided by the reporter to Mr. Dorworth was untrue. Although Mr. Dorworth alleges that A.B. told the New York Times that he had engaged in sexual misconduct with her, *FAC* ¶ 357, the reporter's text message stated only that she had been told "that the investigation has expanded and the FBI is scrutinizing whether you also had sex with" A.B. *FAC*, Ex. 8. Mr. Dorworth has previously acknowledged that the investigation looked into whether he had sex with A.B. *See Compl.* ¶¶ 459-68, 485-93. Because a statement must be false to be defamatory, any statement to the New York Times to the effect that the investigation had expanded is therefore not defamation.

D.    *Mr. Dorworth Caused His Own Damages, Not Defendants*

Despite Plaintiff's claims of a sweeping smear campaign, Mr. Dorworth has in fact been the major source of his own harms. Returning briefly to the reporter's texts, it is notable that Mr. Dorworth does not allege that such an article was ever published. In fact, it does not appear that the New York Times ran an article on April 8, 2021 publicizing that Plaintiff was under investigation for statutory rape. Because these facts were never published prior to Mr. Dorworth's resignation, that publicity cannot have caused him to have lost his job. Mr. Dorworth's preemptive resignation, in fear that some negative information might become public, does not establish the necessary link between A.B.'s alleged statements and his alleged injury. The only person who

had received notice of the potential article was Mr. Dorworth, and defamation requires publication to a third party.  *See Zimmerman*, 521 F. Supp. 3d at 1212.

Mr. Dorworth has also claimed damage to his reputation.  *See, e.g.*, *FAC* ¶¶ 454. However, he has not described any such reputational harms or the manner in which they were caused.   In reality, it appears the first public account of Plaintiff's involvement in the sex trafficking and rape of A.B. was based on an interview of and documents provided **by Mr. Dorworth** to NBC News.[5]  *See* Marc Caputo, *The Justice Department's Sex Trafficking Investigation into Rep. Matt Gaetz Seems Stalled, Attorneys Say*, NBC News, https://www.nbcnews.com/politics/justice-department/justice-departments-sex-trafficking-investigation-rep-matt-gaetz-seems-rcna49229   (Oct.   8, 2022).   Outside of the October 2022 article, only this lawsuit itself ever caused the publication of these allegations against Mr. Dorworth.

Because Mr. Dorworth has not alleged even a single defamatory statement made by A.B. that is within the statute of limitations and not subject to an absolute privilege, he has failed to state a claim for defamation against A.B.  Plaintiff's failure to identify any actual damages resulting from any alleged defamation further undermines any right to relief.  For these reasons, A.B. respectfully asks this Court to dismiss Count Five for defamation against A.B.

---

[5] While this and following news articles are not specifically cited in the FAC, they are central to Mr. Dorworth's claims of reputational damage and several are referenced in the Complaint.  Further, this Court may "judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," pursuant to Federal Rule of Evidence 201.  *Paez v. Sec'y, Fla. Dep't of Corr.*, 947 F.3d 649, 651 (11th Cir. 2020) (quoting Fed. R. Evid. 201(b)(2)).

## II.    Civil Conspiracy

"To state a cause of action for civil conspiracy, a plaintiff must plead (1) an agreement between two or more parties; (2) to do an unlawful act or a lawful act by unlawful means; (3) the execution of some overt act in pursuance of the conspiracy; and (4) damage to the plaintiff as a result of said acts." *Logan v. Morgan, Lewis & Bockius LLP*, 350 So.3d 404, 412 (Fla. Dist. Ct. App. 2022) (citation and internal quotation marks omitted).  In addition, because "[t]here is no freestanding cause of action in Florida for 'civil conspiracy,'" a plaintiff must also "allege an underlying independent tort." *Teiera v. Lincoln Lending Servs., LLC*, 271 So.3d 97, 103 (Fla. Dist. Ct. App. 2019). Although there is no requirement that each member of a conspiracy act in furtherance of the scheme, an alleged conspirator is not liable unless they "know of the scheme and assist in it in some way." *Gilison v. Flagler Bank*, 303 So.3d 999, 1004-05 (Fla. Dist. Ct. App. 2020).  Finally, while "a conspiracy may be proven by circumstantial evidence, this may be done 'only when the inference sought to be created by such circumstantial evidence outweighs all reasonable inferences to the contrary.'" *Raimi v. Furlong*, 702 So.2d 1273, 1284 (Fla. Dist. Ct. App. 1997) (quoting *Diamond v. Rosenfeld*, 511 So.2d 1031, 1034 (Fla. Dist. Ct. App. 1987)).

The basis of Plaintiff's civil conspiracy claim is an alleged plot to "disseminate or assist in disseminating false information about Dorworth" in a defamatory manner. *FAC* ¶ 466; *see also id.* ¶ 470 (alleged conspiracy violates Florida Statutes Chapter 836,

governing defamation and similar claims).[6]   However, the FAC does not include any facts to support that A.B. actually agreed to participate in this plot or even that A.B. ever spoke with Mr. Greenberg about Mr. Dorworth, much less the dates or approximate substance of such conversations.  Instead, it offers merely the conclusory allegation that "Greenberg, A.B., and Abby agreed" to provide false information to authorities regarding Mr. Dorworth.  *FAC* ¶ 123.  This Court should disregard such empty pleading of elements without factual support.

At most, Plaintiff alleges that Mr. Greenberg stated that "he was paying for A.B.'s attorney's fees ***in an attempt to*** shape her testimony so that he could avoid charges."  *FAC* ¶ 92 (emphasis added).   In other words, the only time that Mr. Dorworth was ever informed about the alleged conspiracy, A.B. *had not agreed* to participate, and Mr. Greenberg merely intended to "attempt" to persuade her.  Plaintiff additionally relies on Mr. Greenberg's statement that A.B. "doesn't want to talk to" investigators as evidence that Mr. Greenberg "did not wish A.B. to speak to the authorities and he had induced her or attempted to induce her not to speak to the authorities or testify before the grand jury."  *FAC* ¶ 116.  Mr. Dorworth's gloss on this text message is without basis and contrary to historical reality.[7]

---

[6] Mr. Dorworth also alleges that the supposed conspiracy violated Florida Statutes Chapter 772, which constitutes Florida's civil RICO statute.  Mr. Dorworth actually alleges two claims under Florida's civil RICO statute in the FAC, but he only includes A.B. in his claim for RICO conspiracy.  *See FAC* Count Four.  In other words, Mr. Dorworth appears to fashion his civil conspiracy claim against A.B. as a conspiracy to conspire.  Needless to say, such a legal claim is essentially meaningless.

[7] Mr. Dorworth also attaches a letter from a jailhouse informant detailing a conversation Mr. Greenberg supposedly had on March 23, 2021.  *FAC*, Ex. 7.  In that conversation, Mr. Greenberg supposedly stated that A.B. "probably would go along with" Mr. Greenberg's alleged smear campaign "cause she don't know any better."  *Id.* at 6.  He also allegedly stated that "she might think she can

Even if properly alleged, the agreement Plaintiff suggests between Mr. Greenberg and A.B. fails to meet the plausibility standard. The FAC cannot ignore that Mr. Greenberg was prosecuted for and pled guilty to sex trafficking A.B., largely based upon her testimony against him. Evidently, then, Mr. Greenberg's efforts to pay for A.B.'s attorneys to control her testimony failed. Under any plausible scenario, if Mr. Greenberg controlled A.B.'s testimony, he would have used that control to prevent himself from being convicted for sex crimes. A much more plausible scenario is that Mr. Greenberg was simply lying about paying A.B.'s attorneys and controlling her testimony, while A.B. cooperated with prosecutors with total disregard for Mr. Greenberg's preferences. While this Court must generally accept the allegations in the FAC as true at this procedural stage, that does not require the Court to endorse wholly fanciful scenarios. *See, e.g.*, *Fifth Third Bank v. Qureshi*, 2009 WL 10706060, at *1 ("Whether the non-conclusory facts alleged state a plausible claim for relief depends on whether they allow the Court 'to infer more than the mere possibility of misconduct.' [*Iqbal*, 556 U.S. at 679.] The Court generally will not make such an inference if there is an 'obvious alternative explanation' for the alleged wrong. *Twombly*, 550 U.S. at 567.").

Seeming to recognize this implausibility in his original account of the supposed conspiracy, in his FAC Mr. Dorworth postulates a new motivation for A.B. to

---

file a lawsuit afterwards." *Id.* Leaving aside the credibility of a verified letter from a prisoner who cannot spell Matt Gaetz's name but who can identify and locate Mr. Gaetz's private attorney, this conversation would once again confirm that A.B. had not agreed to join any conspiracy.

sabotage his reputation: her own desire to bring legal claims against him in the future. *See, e.g., FAC* ¶¶ 220-21.   However, even if true, this motive complicates Mr. Dorworth's conspiracy theory.  It is not clear that, acting independently of the Greenbergs and for her own purposes, A.B. would be participating in the conspiracy at all.  Why would the Greenbergs pay A.B.'s attorney fees if she was using that representation to provide evidence harmful to Joel Greenberg?  If A.B. was impugning Mr. Dorworth for her own purposes, not the Greenbergs, was this activity truly in furtherance of the "Greenberg conspiracy" and evidencing an agreement to serve its ends?  The FAC supplies no answers to these questions.

Further, as set forth *supra*, the FAC fails to allege even a single defamatory statement by A.B.  Because civil conspiracy is nothing more than a procedural mechanism to assign liability for an underlying tort, *Teiera*, 271 So.3d at 103, any claim for civil conspiracy based on A.B.'s statements must fail.

Finally, even if the FAC did state a claim for civil conspiracy against A.B., the available damages are limited in just the same way as for defamation.  Because civil conspiracy is not its own cause of action and is merely a manner of assigning liability for an underlying tort, it adopts the statute of limitations of the underlying tort, in this case two years for defamation.  As Mr. Dorworth has failed to identify any defamatory statement by A.B. that caused him injury within the statute of limitations, he has also failed to establish such injury as a result of the conspiracy.  For these reasons, A.B. respectfully asks that the Court dismiss Count Seven against her.

### III.    Civil RICO

Mr. Dorworth includes two federal RICO claims and two Florida RICO claims in the FAC, alleging a wide variety of supposed racketeering conduct.  A.B. is only named as a defendant in Count Two, which alleges a conspiracy to violate RICO under 18 U.S.C. § 1962(d), and Count Four, which alleges a conspiracy to violate Florida's RICO statute.  "Because of the similarities between Florida and federal RICO acts, Florida looks to federal authority regarding the interpretation and application of its act." *Palmas Y Bambu, S.A. v. E.I. Dupont De Nemours & Co.*, 881 So.2d 565, 570 n.1 (Fla. 3d Dist. App. 2004) (collecting cases).  Accordingly, these claims will be treated together here.

In order to state a claim under § 1962(d), a plaintiff must allege "an illegal agreement to violate a substantive provision of the RICO statute." *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1269 (11th Cir. 2004).  "If the underlying cause of action is not viable, the conspiracy claim must also fail." *Spain v. Brown & Williamson Tobacco Corp.*, 363 F.3d 1183, 1199 (11th Cir. 2004) (citation and internal quotation marks omitted).  Further, a plaintiff must establish the RICO conspiracy claim itself in one of two ways: "(1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010).

Mr. Dorworth's RICO claims are not the model of clarity, and they make egregious use of shotgun pleading.  *See, e.g.*, *FAC* ¶ 411 (incorporating allegations including, "in particular," three sections amounting to approximately 300

paragraphs).  Indeed, paragraph 348 (which is incorporated in each RICO claim) purports to incorporate the entire original Complaint, akin to loading a shotgun with shotguns.  The FAC fails to separate out the individual members of the enterprise and their supposed contributions to the enterprise's goals.  To the extent (if any) that Mr. Dorworth's RICO claims against A.B. extend beyond those acts specifically attributed to her, the FAC fails to afford A.B. fair notice of the basis of the claims against her. Where plaintiffs "lump[] all the defendants together in each claim and provid[e] no factual basis to distinguish their conduct," dismissal is appropriate under Rule 8. *See Pierson v. Orlando Regional Healthcare Sys., Inc.*, 619 F. Supp. 2d 1260, 1273 (M.D. Fla. 2009).  Mr. Dorworth's group pleading here similarly justifies dismissal.

To establish A.B.'s liability in connection with a RICO conspiracy, Plaintiff must show either that A.B. agreed to commit two predicate acts or that she agreed to the overall objective of the conspiracy.  Even taking the FAC at its word, A.B. never agreed to commit any predicate acts.  To the extent that this claim relies on predicate acts of defamation—and these are the only potential acts that support Mr. Dorworth's alleged damages of reputational and professional harm—"it is firmly established that defamation and many other similar allegations do not provide the requisite predicate for RICO violations." *Kimm v. Lee*, 2005 WL 89386, at *5 (S.D.N.Y. Jan. 13, 2005); *see also Bela Vista Contractors, Inc. v. Tierra Del Mar Condominium Ass'n*, 2015 WL 10857529, at *4 (S.D. Fla. Oct. 2, 2015) ("[S]lander or libel under state law . . . are not predicate acts." (citing *Dowbenko v. Google Inc.*, 582 F. App'x 801, 806 (11th Cir. 2014) and *Rock v. BAE Sys., Inc.*, 556 F. App'x 869, 872 (11th Cir. 2014))).  Perjury similarly

is not a predicate act. *Trump v. Clinton*, 2022 WL 4119433, at *15 (S.D. Fla. Sept. 22, 2022) ("[P]erjury and falsifying documents are not RICO predicate acts.").

The FAC also provides no non-conclusory indication that A.B. agreed to *anything*, with *anyone*, much less that she agreed to the overall objective of the conspiracy: "reducing or eliminating Joel Greenberg's criminal liability." *FAC* ¶ 417. While Mr. Dorworth provides a boilerplate allegation that A.B. agreed to the conspiracy, *FAC* ¶ 123, he also tacitly acknowledges that she had no interest in mitigating Joel's liability by ascribing to her a separate motive for allegedly defaming Mr. Dorworth, *FAC* ¶ 289 (describing the common goal of the enterprise as benefiting and mitigating exposure for Joel, "and in A.B.'s case, creating an opportunity for civil claims"). According to the FAC, A.B. acted as alleged for her own interest, which was not shared by any other member of the supposed enterprise. These threadbare allegations pointing directly to A.B.'s alleged independent goals from the enterprise are not sufficient to plead a *conspiratorial* plot against Plaintiff.[8]

Because Mr. Dorworth has failed to state claims for conspiracy to violate federal or Florida RICO, A.B. respectfully asks this Court to dismiss Counts Two and Four.

---

[8] Even if A.B. did accept legal fees from Mr. Greenberg (though she did not), this allegation alone would not establish that she agreed to cooperate with the enterprise. "[W]hen determining whether the complaint crosses the line between possibility and plausibility of entitlement to relief, courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Doe v. Samford Univ.*, 29 F.4th 675, 686 (11th Cir. 2022) (internal citations and quotation marks omitted); *see also Twombly,* 550 U.S. at 554 (allegations of wrongdoing were not plausible because the facts alleged were "consistent with [liability], but just as much in line with a wide swath of" lawful conduct). Unlike nearly every other player named in this lawsuit, A.B. was not a savvy and connected politician, nor did she have access to millions of dollars to protect her legal interests. Given her circumstances, there would be nothing inherently criminal about A.B. accepting help to pay for legal counsel, even if true.

## IV.   Declaratory Judgment

Finally, Mr. Dorworth seeks a declaratory judgment from this Court that he has never had sexual contact with A.B., that he has not compensated A.B. for sexual acts, and that he is not liable to A.B. for any allegations to that effect.   *FAC* ¶ 478.   In his original Complaint, he based his entitlement to such declaratory judgment solely on a letter from A.B.'s counsel offering to discuss a private resolution of claims she has against Mr. Dorworth for his having trafficked her.   *See Compl.* ¶¶ 912-16; *FAC* ¶¶ 479-83, 487-88.   Now, Mr. Dorworth additionally describes A.B.'s response to the lawsuit he himself publicly filed as being some form of harassment campaign.   *See FAC* ¶¶ 484-85 (describing A.B.'s Motion to Dismiss and an article about same (with no comment from A.B. or her counsel) as "issu[ing] accusations" and "brandish[ing] the threat of litigation against Dorworth").

Although this action was initially filed in Florida state court, because the Florida Declaratory Judgment Act is merely a "procedural mechanism rather than a substantive rule of decision," the federal Declaratory Judgment Act, 28 U.S.C. § 2201, applies to this claim following removal.   *Daytona Beach Riverhouse, Inc. v. Chubb Custom Ins. Co.*, 2014 WL 12611320, at *3 (M.D. Fla. Mar. 20, 2014) (internal quotation marks omitted).   "Like all claims, a request for declaratory relief is subject to the standing doctrine," which is established if an "actual controversy"—the same as Article III's "case or controversy" requirement—exists.   *Methelus v. Sch. Bd. of Collier Cty.*, 2017 WL 3421470, at *2 (M.D. Fla. Aug. 9, 2017).   To establish a case or controversy, "a party must show that '(1) [it] is likely to suffer a future injury; (2) [it] is likely to suffer the

injury at the hands of the [opposing party]; and (3) the relief [it] seeks will likely prevent the injury from occurring.'" *Id.* (quoting *Navellier v. Florida*, 672 F. App'x 925, 928 (11th Cir. 2016)).  In order to establish an injury in fact, a litigant "must point to a 'legally protected interest' that [the opposing party] ha[s] allegedly invaded. *Methelus*, 2017 WL 3421470, at *3.  "No legally cognizable injury arises unless an interest is protected by statute or otherwise." *Id.* (quoting *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 980 (11th Cir. 2005)).

Mr. Dorworth's claim for declaratory relief subverts the purposes of the Declaratory Judgment Act.  "The purpose of a declaratory judgment is to determine parties' rights and duties without having to resort to a tort or breach of contract as a prerequisite to a judicial determination." *Dimuccio v. D'Ambra*, 750 F. Supp. 495, 498 (M.D. Fla. 1990).  In other words, the purpose of the Act and its procedural mechanism is to allow parties to resolve ripe legal disputes without requiring litigants to "bet the farm" by potentially violating each other's rights to gain admission to court.

Plaintiff, by contrast, primarily seeks to resolve his legal liability for a tort that occurred years ago.  Declaratory judgment was not intended for tortfeasors to preemptively seek absolution for their past actions, let alone at a time and in a forum of their choosing.  Mr. Dorworth, moreover, does not even identify the specific dispute he seeks to resolve through his request, as he asks for a declaration that "he is not liable to [A.B.] for any allegations described in this pleading," without specifying a particular theory of relief. *FAC* ¶¶ 496.  A.B. could potentially bring any number of claims against Mr. Dorworth were she to pursue her legal rights, but Mr. Dorworth asks this Court

to canvass any possible source of liability without limitation.  That Plaintiff is unable to specify the nature of the declaration he seeks to receive demonstrates that the parties' dispute is not yet ripe for determination.  *Devs. Sur. & Indem. Co. v. Archer W. Contractors, LLC*, 2017 WL 6947785, at \*3 (M.D. Fla. Apr. 17, 2017).

Further, Mr. Dorworth has failed to identify any legally protected interest that would be violated by A.B. in the absence of a declaratory judgment, as is necessary to establish standing.  Simply put, Mr. Dorworth has no legal right not to be sued by A.B. for harms he caused her.  Admittedly, the prospect of future litigation often plays a role in justifying declaratory judgment actions.  However, those suits predominantly concern the established legal rights of potential litigants, such as are set forth in a contract or insurance policy.  Here, Mr. Dorworth appears to assume some right not to be civilly sued for his personal conduct where no such right exists.  In the absence of "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," Mr. Dorworth has not established standing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

In his FAC, Mr. Dorworth adds slightly to his request for declaratory judgment. In addition to determining whether he is liable to A.B., Mr. Dorworth seeks to determine "whether A.B. is liable to him, and whether A.B. is entitled to claim in the press or in legal documents that Dorworth is liable to her or committed misconduct." *FAC* ¶ 491.  Although Plaintiff does not elaborate on either question, the first (concerning A.B.'s liability) appears to be duplicative of the rest of this lawsuit.

Presumably, the Court's resolution of Mr. Dorworth's stated claims would answer this question and declaratory judgment would be purely superfluous.

Regarding the second, the declaratory judgment Mr. Dorworth appears to seek (that A.B. is not "entitled" to make claims that he "is liable to her or committed misconduct") is either duplicative of his original request for a declaration that he is not liable to her or is a prior restraint on speech.  A prior restraint is a law "forbidding certain communications when issued in advance of the time that such communications are to occur."  *Alexander v. United States*, 509 U.S. 544, 550 (1993) (emphasis in original).  In *Murray Energy Holdings Co. v. Mergermarket USA, Inc.*, 2016 WL 3365422 (S.D. Ohio June 17, 2016), a district court considered a similar claim.  Reasoning that "the prior-restraint doctrine does not apply only to injunctions but to all 'administrative and judicial orders that block expressive activity before it can occur,'" *id.* at *8 (quoting *Polaris Amphitheater Concerts, Inc. v. City of Westerville*, 267 F.3d 503, 506 (6th Cir. 2001)), the court held that a declaratory judgment forbidding future publication would not be justified absent "extraordinary reasons" such as national security concerns.  *Id.*  Attempts "to arrest the future speech of a defendant as a result of his past conduct [would] operate[] like a censor, and as such violates First Amendment protections against prior restraint of speech."  *Id.* (citation omitted).  Plaintiff has made no showing of "extraordinary reasons" justifying a prior restraint, which is also outside the bounds of the Declaratory Judgment Act's purpose.

Even if Mr. Dorworth properly stated a claim for declaratory judgment (though he did not), this Court has discretion not to hear this claim.  *Ameritas Variable Life Ins.*

*Co. v. Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (the Declaratory Judgment Act "confers a discretion on courts" and "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so" (citation omitted)).  This Court has many reasons before it to dismiss Mr. Dorworth's request.  First, the declaratory judgment Count does not belong in this case.  The rest of the allegations in the FAC, including the other seven Counts, all concern an alleged scheme by Defendants to malign Mr. Dorworth and the supposed damages he suffered as a result.  By contrast, Count Eight solely targets a potential tort suit by A.B. settling the rights between those two individual parties, without any relationship to the supposed Greenberg Enterprise (once Mr. Dorworth's duplicative and unconstitutional requests are disregarded).  Plaintiff cites no justification for this claim beyond A.B.'s mention of a potential future lawsuit against him and her defense in this publicly filed lawsuit.  *See FAC* ¶¶ 479, 484.  Put another way, resolution of the declaratory judgment claim would not meaningfully assist in determining issues in this broader litigation.

Moreover, there is no need for Plaintiff to litigate these issues in the present suit.  He could alternatively file a motion to dismiss or motion for summary judgment in any potential future action by A.B. asserting the same arguments he anticipates making here.  *See Angora Enterprises, Inc. v. Condominium Ass'n of Lakeside Village, Inc.*, 796 F.2d 384, 387-88 (11th Cir. 1986) (observing that a court may refuse declaratory relief if an alternative remedy exists that is better or more effective); *Penn Tank Lines, Inc. v. Jackson*, 2018 WL 465977, at *4 (N.D. Ala. Jan. 18, 2018) ("The court finds that declaratory relief serves no useful purpose in this action because, as noted above,

Plaintiffs can obtain the same relief by filing a motion to dismiss invoking immunity if Mr. Jackson brings his lawsuit against the estate."). Plaintiff fails to offer any reason why this Court should expand this case's scope to litigate these issues *now* as opposed to litigating them, in the normal course, should a suit be filed later.[9] In the absence of any such showing, this Court should "decline[] to give [Plaintiff] a general shield to thwart future litigation." *Methelus*, 2017 WL 3421470, at *3.

## CONCLUSION

In light of the above, A.B. respectfully requests that the Court enter an Order dismissing Counts Two, Four, Five, Seven, and Eight of the FAC against A.B., as well as any further relief the Court deems just and appropriate. Prejudicial dismissal is warranted as this is Plaintiff's second verified complaint, and any further amendments would be futile.

## LOCAL RULE 3.01(g) CERTIFICATION

I hereby certify that on August 28, 2023, counsel for Plaintiff (Christopher Ford) conferred with counsel for Plaintiff via Zoom, who opposes the requested relief.

---

[9] And indeed, there are practical reasons to allow these claims to be resolved in the normal course. Among other things, if this Court concluded that Mr. Dorworth is liable to A.B. for the alleged conduct (or even that he cannot show he is *not* liable), then A.B. would be required to file her own lawsuit anyway, as A.B would still need to establish the existence and extent of damages. Plaintiff fails to show that resolving A.B.'s claims here would be more efficient even if he prevailed, but such a process would undoubtedly be less efficient if he failed to establish his innocence.

Dated: August 29, 2023

Respectfully submitted,

*s/ Stephen Shaw*

Laura B. Wolf, Esq.* (Lead Counsel)
Colorado Bar #46833
Stephen Shaw, Esq.*
Colorado Bar #56720
Spark Justice Law LLC
1035 Osage Street, Suite 836
Denver, CO 80204
(303) 802-5390
laura@spark-law.com
steve@spark-law.com

Christopher W. Ford, Esq.*
Colorado Bar #28632
Jonathan Boonin, Esq.*
Colorado Bar #23113
Hutchinson Black and Cook, LLC
921 Walnut Street, Suite 200
Boulder, CO 80302
(303) 442-6514
chris.ford@hbcboulder.com
jonathan.boonin@hbcbolder.com

Jesse Ian Unruh
Florida Bar No. 92121
Spire Law, LLC
2572 West State Road 426, Suite 2088
Oviedo, FL 32765
(407) 494-0135
jesse@spirelawfirm.com

*Attorneys for Defendant A.B.*

* *Pro hac vice* admission

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 29, 2023, a copy of the foregoing document was

served on the following counsel of record:

Michael Paul Beltran
Beltran Litigation, P.A.
4920 West Cypress St. Suite 104 PMB 5089
Tampa, FL 33607
813-870-3073
mike@beltranlitigation.com

**Attorney for Plaintiff Christopher Dorworth**

Fritz J. Scheller
Fritz Scheller, PL
Suite 1150
200 E Robinson St
Orlando, FL 32801
407/792-1285
Fax: 407/513-4146
Email: fscheller@flusalaw.com

**Attorney for Defendant Joel Micah Greenberg**

Dustin Michael Mauser-Claassen
Frederick S. Wermuth
King, Blackwell, Zehnder & Wermuth, PA
P.O. Box 1631
Orlando, FL 32802-1631
407422-2472
Fax: 407-648-0161
Email: dmauser@kbzwlaw.com
Email: fwermuth@kbzwlaw.com
Quinn B. Ritter
25 East Pine Street
Orlando, FL 32801
407-422-2472
Fax: 407-648-0161
Email: qritter@kbzwlaw.com

27

**Attorneys for Defendants Andrew W. Greenberg, Susan Greenberg, AWG, Inc.**

Jason A. Perkins
Chelsey Joiner Clements
Carlton Fields Jorden Burt, PA
PO Box 1171
Orlando, FL 32802-1171
407/849-0300
Fax: 407/648-9099
Email: jperkins@carltonfields.com
Email: cclements@carltonfields.com
**Attorneys for Defendant Abby Greenberg**

Allison P. Barkett
Michael J. Furbush
Michaela Kirn
Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, PA
420 S. Orange Ave, Suite 700
Orlando, FL 32801
407-841-1200
Fax: 407-423-1831
Email: mfurbush@deanmead.com
Email: mkirn@deanmead.com
**Attorneys for Defendants Greenberg Dental Associates, LLC, Greenberg Dental
& Orthodontics, P.A., Greenberg Dental Specialty Group, LLC**

*s/ Stephen Shaw*
Stephen Shaw