UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHRISTOPHER R. DORWORTH,
      Plaintiff,                Case No.: 6:23-cv-00871-JA-DCI

v.

JOEL MICAH GREENBERG, ANDREW W.
GREENBERG, SUE GREENBERG, ABBY
GREENBERG, AWG, INC., GREENBERG
DENTAL ASSOCIATES, LLC, GREENBERG
DENTAL & ORTHODONTICS, P.A., GREENBERG
SPECIALTY GROUP, LLC, and A.B.,
      Defendants.
_____/

## MOTION TO DISMISS AMENDED COMPLAINT

The Defendant, JOEL GREENBERG, by and through his undersigned counsel, moves this Court to dismiss the Amended Complaint (Doc. 62) pursuant to Rules 8, 10, and 12 of the Federal Rules of Civil Procedure and 28 U.S.C. §§ 1331 and 1367. In support thereof, Defendant states the following:

### STATEMENT OF FACTS

#### Procedural History

After the Plaintiff filed his initial Complaint in state court on April 7, 2023, this action was removed to the Middle District of Florida on May 10, 2023. On June 19, 2023, Defendant, Joel Greenberg filed a Motion for a More Definite Statement, while the other Defendants filed motions to dismiss. *See, e.g,* Doc. 45; 48.  After

moving for various extensions of time, the Plaintiff filed his Amended Complaint on August 8, 2023. *See* Doc. 62.

### *Facts Regarding the Amended Complaint*

Like the first complaint, the Amended Complaint raises state conspiracy and defamation claims against Joel Greenberg. See Doc. 62. In contrast to the first Complaint, however, the Amended Complaint only keeps a single claim against Joel Greenberg under the federal Racketeer Influenced Corrupt Organizations Act (RICO), excising the other defendants from this claim, as well as eliminating the multiple substantive RICO counts contained in the first complaint. Moreover, it adds substantive and conspiracy Florida RICO claims against Greenberg. Finally, it still raises a claim for declaratory relief against AB. *See* Doc. 62.[1]

Although the Plaintiff amended the initial Complaint after the filing of the Defendants' motions, the pleading still incorporates the allegations of that unwieldy document. *See* Doc. 62 at ¶ 348. It also incorporates the four indictments returned in Joel Greenberg's case. *Id.* Furthermore, each count of the Amended Complaint incorporates all general allegations contained in paragraphs 37 to 397 of the pleading. *See* Doc. 62 at ¶¶ 398; 411; 429; 436; 444; 457; 465; and 477.

---

[1] At its denouement, the Amended Complaint is verified by the Plaintiff and inexplicably by his spouse Rebekah Dorworth, who is not a Plaintiff. Such a verification of course raises the specter of the Plaintiff's failure to join an indispensable party. *See* Fed.R.Civ.P. 19. Regardless, the verification is incorrect as it is made pursuant to Fla. Stat. 92.525 rather than under 28 U.S.C. § 1746.

The gravamen of the Amended Complaint is its contention that over a three-year period, the Defendants colluded and conspired through a RICO enterprise to falsely implicate the Plaintiff in child sex trafficking, and political "ghost schemes" to lessen the penalties in Joel Greenberg's criminal case or to help AB pursue civil claims against the Plaintiff and Matt Gaetz. *See* Doc. 62 at ¶¶ 8, 155. The Complaint alleges that Sue, Andy and the business entities financed the vast scheme including their financing of AB to falsely implicate the Plaintiff. *See id.* at ¶¶ 93-94.

Despite the incorporation of a seemingly infinite number of paragraphs, the Amended Complaint is plagued by a fundamental lack of plausible factual allegations. To be sure, although this action was filed some six months ago, the Amended Complaint states that it "is **likely** to have evidentiary support after a reasonable opportunity for further investigation, discovery and public record requests, some of which is currently pending." Doc. 62 at ¶ 41 (emphasis added). And therein lies the rub.  In the morass of all the allegations made in the Amended Complaint, as expanded by the incorporated four indictments and the 115-page initial Complaint, this admission finally provides a rare and clear statement of fact. That is, the Plaintiff's action was filed and endures without adequate evidentiary support.

Faced with an insufficient evidentiary basis, the Amended Complaint consistently relies on the Plaintiff's "information and belief" in 45 separate

paragraphs.[2] Of these 45 paragraphs, 32 of them refer to Joel Greenberg.[3] Further, the Complaint utilizes conclusory allegations masquerading as fact. Notably, when the Amended uses specific allegations, they often contradict each other or are not supported by the Plaintiff's evidence.

For example, the Plaintiff alleges that AB's received financial benefits to falsely implicate the Plaintiff. Yet, the Amended Complaint also relies on an attached exhibit, which tells a completely different story. Doc. 62-7 at p. 6 (stating that Joel Greenberg asserted that AB would implicate the Plaintiff "cause she don't know better" and she might think that she could later sue him). Similarly, one paragraph states that AB directed racketeering activity to pursue a civil settlement, while a subsequent paragraph alleges that she falsely implicated the Plaintiff due to "inducement provided by Greenberg." *Compare* Doc. 62, ¶ 288 with ¶ 421.

Yet another example is found in the Plaintiff's assertion that, "[a]ccording to [Joel] Greenberg, authorities learned of Greenberg's misconduct with A.B. from electronic and other records, not from A.B." Doc. 62 at ¶ 112. For this proposition, Plaintiff cites texts attached as Exhibit 3 to his Amended Complaint Doc. 62-3. But, in the texts, Greenberg only states that A.B. does not want to talk and that he thinks "Venmo was the link" before saying, in reference to A.B., "my only concern is that I don't know what could possibly come out of their mouths." *Id*. at 2.

---

[2] *See* Doc. 62 at ¶¶  9, 26, 27, 29, 105, 116, 120, 121, 122, 142, 148, 151, 152, 153, 154, 161, 168, 173, 177, 212, 213, 228, 243, 275, 300, 305, 308, 312, 313, 314, 315, 325, 327, 349, 353, 356, 357, 358, 368, 369, 370, 374, 376, 392, and 397.

[3] *See id*. at 27, 29, 105, 116, 120, 122, 142, 148, 151, 153, 154, 161, 168, 173, 177, 212, 213, 228, 275, 300, 305, 308, 312, 313, 314, 325, 327, 349, 356, 358, 392, and 397.

The Amended Complaint contends that AB and her friend falsely implicated Plaintiff, Matt Gaetz and others regarding sexual impropriety before a grand jury in the Fall of 2020 at the "behest" of Joel Greenberg.  Doc. 61 at ¶ 120. Its next paragraph, however, contradicts this allegation in stating that AB and her "friend" testified before the grand jury in Fall 2020, at the "behest" of Assistant United States Attorney Todd Gee. *Id*. at ¶ 121.

The Complaint alleges that the district court in Greenberg's criminal case was concerned that his cooperation had diverted resources from legitimate investigations of the guilty to investigations of the Plaintiff and other innocent parties. Doc. 62 at ¶ 189. Yet, the Amended Complaint includes two paragraphs that belie this contention. That is, the Amended Complaint asserts the district court stated that "notwithstanding a long period of cooperation, we still have, admittedly, extensive investigations still ongoing with no end in sight." *Id*. at ¶ 186. Even the most expansive interpretation of this statement does not indicate that the court believed that government resources were being diverted away from legitimate criminal investigations to illegitimate ones. The Amended Complaint's subsequent citation to an article further underscores this point. *Id*. at ¶ 367 (citing *Judge scolds Justice Department for its investigations at hearing for Rep. Matt Gaetz's convicted associate/CNN Politics*).

Unfortunately, the examples above are not the exception as the Amended Complaint descends into a litany of speculation and innuendo, conjecture and

assumption. In the end, such a lamentable descent demonstrates that the Plaintiff's claims are without merit and must be dismissed.

## CERTIFICATION OF CONSULTATION

Pursuant to Local Rule 3.01(g), I consulted with counsel for the Plaintiff who advised that he opposed the relief requested in this motion.

## *MEMORANDUM OF LAW*

The first section of this memorandum focuses on the Plaintiff's federal RICO claim. This section demonstrates that the Plaintiffs' federal RICO claim (Count I) fails to state a claim under Fed. R. Civ. P 12(b)(6). Sections II and III examine the Plaintiff's federal RICO conspiracy claim and state RICO claims. These sections conclude that dismissal is warranted based on the arguments presented in Section I. Section IV and V establish that the dismissal of the Plaintiff's civil conspiracy and defamation is required based on their respective failure to state a claim. Because the Amended Complaint is a shotgun pleading, Section VI moves for dismissal.

## I.     The Amended Complaint fails to state a RICO claim (Count I)

This section demonstrates that the Amended Complaint's federal and state RICO claims must be dismissed under Rule 12 of the Federal Rules of Civil Procedure *See* Fed. R. Civ. P. 12(b)(6).

A. *Standard of Review*

In evaluating a Rule 12(b)(6) motion to dismiss, a district court must accept the factual allegations set forth in the complaint as true and draw all reasonable

inferences in the plaintiff's favor. *See Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014). Nevertheless, a complaint must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Although a Plaintiff is not required to present "detailed factual allegations," a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Thus, a complaint that "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Twombly*, 555 U.S. at 557). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 at 555. A complaint should be dismissed where a plaintiff has not "nudged [its] claims across the line from conceivable to plausible[.]" *Id.* at 570.

In making this assessment of plausibility, the first step in evaluating a complaint under Federal Rule of Civil Procedure 12(b)(6) is to cast aside all conclusory statements—that is, "formulaic recitations" of the elements of a claim and legal conclusions without adequate factual support. *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1310 (11th Cir. 2022) (dismissing RICO conspiracy claim based on formulaic recitations); *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (on a motion to dismiss, the court "identif[ies] conclusory allegations and then discard[s] them"); *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010) (explaining that, when "analyzing [a]

conspiracy claim under the plausibility standard," the "first task is to eliminate any allegations in [the] complaint that are merely legal conclusions.").

As the following discussion demonstrates, the complaint fails to state a RICO claim for multiple reasons. Such a comprehensive failure is predicated on the fact that the Plaintiff has attempted to invoke federal jurisdiction by transforming the criminal offenses of a single Defendant into a RICO Enterprise. Confronted with this impenetrable barrier, the Amended Complaint relies on the conceivable rather than plausible, abandons facts in the process and descends into the absurd.

B.    *Elements of a RICO claim*

Enacted in 1970, RICO prohibits racketeering activity connected to interstate commerce. *See Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1348 (11th Cir. 2016).[4]  Pursuant to the federal RICO statute, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c).

To establish a federal RICO claim, a plaintiff must establish six elements: "that the defendants (1) operated or managed (2) an enterprise (3) through a pattern (4) of racketeering activity that included at least two predicate acts of

---

[4] Similarly, the Florida RICO Act was enacted to address the state's problem with organized crime. The original declared purpose of Florida's RICO Act was to target organized crime and to prevent organized criminal organizations from infiltrating and corrupting legitimate businesses. *See* Ch. 77-334, Preamble, 1977 Florida Laws.

racketeering, which (5) caused (6) injury to the business or property of the plaintiff." *See Cisneros v. Petland*, 972 F.3d 1204, 1211 (11ᵗʰ Cir. 2020) (citation omitted).[5] The failure to adequately plead any one of these elements constitutes a failure to state a claim upon which relief may be granted. *Id.* (citing Fed. R. Civ. P. 12(b)(6)).[6]

Furthermore, "[c]ourts look with particular scrutiny at claims for a civil RICO, given the statute's damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies." *See Purchase Real Estate Grp., Inc. v. Jones*, 05 CV 10859, 2010 WL 3377504, at *6 (S.D.N.Y. Aug. 24, 2010) (concluding particular scrutiny is required for civil RICO claims to ensure that the RICO statute is used for the purposes intended by Congress) Accordingly, "courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" *Flexborrow LLC v. TD Auto Finance LLC*, 255 F.Supp. 3d 406, 414 (E.D.N.Y. 2017). Such is the case here.

### 1-2. Operation of an Enterprise

The Plaintiff's RICO claim fails to establish that the Defendants operated a RICO enterprise. Concerning the element of management or operation, the

---

[5] Like its federal counterpart, under Florida RICO, [i]t is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a *pattern of racketeering activity* or the collection of an unlawful debt." Fla. Stat. 895.03(3) (emphasis added).

[6] Florida courts look to the federal law for interpretation since the federal and Florida RICO statutes are substantially similar. *Lugo v. State,* 845 So.2d 74, 96 n. 39 (Fla.2003) (since "Florida['s] RICO statute ... is patterned after its federal counterpart ... Florida courts may look to federal RICO decisions as persuasive authority");

Supreme Court has concluded that RICO requires that the defendant participated "in the operation or management of the enterprise." *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993) "Under this standard, a person may not be held liable merely for taking directions and performing tasks that are "necessary and helpful to the enterprise" or for providing "goods and services that ultimately benefit the enterprise." *Flexborrow LLC v. TD Auto Finance LLC*, 255 F.Supp. 3d. 406, 415 (E.D.N.Y. 2017) (citation omitted).

Instead, "the RICO defendant must have played '*some* part in directing [the enterprise's] affairs.'" *Id.* (citation omitted); *see also Reves,* 507 U.S. at 179 (stating that a defendant must have had "some part in directing [the enterprise's] affairs"). The Plaintiff has failed to plead, let alone demonstrate, any facts showing that each individual Defendant took some part in directing the affairs of a RICO enterprise.

Instead, the Amended Complaint provides a series of conclusory statements concerning the individual Defendants. *See* Doc. 62 at ¶¶ 285-288. Thus, it asserts, without any specificity, that Joel Greenberg is the protagonist of the Greenberg Enterprise who coordinated many of its activities. *Id.* at ¶ 285. In turn, Andrew and Sue Greenberg controlled the funding and Abby Greenberg and AB directed racketeering activity. *Id.* at ¶¶ 286-288. Notably, the Amended Complaint states little about the business Enterprises other than that these entities funded the Greenbergs' lifestyles – a non-RICO predicate. Because the Amended Complaint improperly characterizes these conclusory statements as factual allegations, they should be disregarded by this Court. *See Diverse Power, Inc. v. City of LaGrange,*

*Ga.*, 934 F.3d 1270, 1273 (11th Cir. 2019) (quoting *Twombly*, 550 U.S. at 555). Furthermore, such sparseness in the allegations demonstrates that the Plaintiff has not only failed to establish that the individual Defendants managed or operated an Enterprise, but also have failed to show that a RICO Enterprise even existed.

In this latter context, a RICO enterprise is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). In the instant case, the Plaintiffs have alleged the existence of an "association-in-fact" enterprise. See Doc. 62 at ¶ 264. An "association-in-fact enterprise is simply a continuing unit that functions with a common purpose." *Boyle*, 556 U.S. 938, 948 (2009). To plead an association-in-fact enterprise, a plaintiff must allege that the defendants share three structural features: (1) a common purpose; (2) relationships among the associates, and (3) "longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id.* at 944. Applying these elements to the instant case demonstrates the Plaintiff's essential failure to establish the Enterprise element.

Concerning the formation of Enterprise, the Amended Complaint approaches the incredible, if not ludicrous. It suggests that the "Greenberg Enterprise" existed for decades and formed when the Defendant Sue Greenberg gave birth to their son Joel Greenberg. Doc. 62 at ¶¶ 267; 282. It makes the remarkable conclusory assertion, without any factual support, that all Defendants, including AB, associated to further the Greenbergs' lifestyle, as well as Joel

Greenberg's activities including: his campaign for tax collector, the maintenance of his office and the mitigation of his and their liability. *Id*. at ¶¶ 277-78.  It states in conclusory fashion that the Defendants joined the RICO Enterprise in 2020. *Id*. at ¶ 293. And then for the next 25 paragraphs relating to the Greenberg Enterprise, it eschews facts in favor of conclusory statements.  *See id*. at ¶¶ 264-290. In fact, of the 26 paragraphs related to the Greenberg Enterprise, approximately 17 are conclusory statements. *See id*. at ¶¶ 264, 265; 267, 270, 275 (upon information and belief); 276, 277, 278, 281, 283, 284-290. When this Court ignores these conclusory statements as directed by the Eleventh Circuit, nothing establishing a RICO Enterprise remains.

The reason for this failure is simple. The Plaintiff has premised his Complaint on the conceivable, or rather the improbable, instead of basing it on the unobtainable, to wit, the plausible. Indeed, to accept the Plaintiff's RICO claim, one must accept a series of irrational premises that provide its foundation. That is, that Joel Greenberg colluded with his victim AB to falsely implicate the Plaintiff to reduce the former's criminal liability or alternatively so that AB could bring a civil lawsuit against Gaetz and the Plaintiff.

As part of the scheme, AB, Abby Greenberg, Joel Greenberg and AB's unidentified "friend" committed separate crimes by providing false information to the grand jury or the Government. *See* Doc 62 at ¶¶ 120, 237. As an aside, it is telling that the false testimony provided by four separate individuals, who could have been prosecuted for lying, coincidentally matched. As part of the scheme, AB

implicated Greenberg in sex trafficking but they continued to maintain a close relationship. *Id.* at 231. Furthermore, although AB implicated Greenberg, she colluded with the entity to lessen his liability and her own, though she had none.

As part of the scheme, Greenberg's parents (and Abby Greenberg) not only knew of AB, but also financially supported the minor AB. *Id.* at ¶¶ 275, 289, 300. As part of the scheme, Andrew Greenberg, Sue Greenberg and the Defendant entities provided the necessary funding to AB and Abby Greenberg. *Id.* at ¶ 304. Although AB was a listed victim of Joel Greenberg in his criminal case, she associated with the Enterprise to further the Greenbergs' lifestyle. Id. at ¶ 277.

Faced with a tapestry of the absurd, this Court must look to the plausible. That is, AB, as a victim, would not collude with her perpetuator. And as a victim, Joel Greenberg, AB would not act to further the Greenbergs' lifestyle or to lessen his liability. In order to avoid criminal liability, AB, Joel Greenberg, Abby Greenberg and AB's friend all made truthful statements to the grand jury or the Government. Thus, their testimony was consistent not because it was false, but because it was true. The Greenbergs provided financial support to Joel Greenberg because he was their son and he needed it. The business entities provided money to Andrew and/or Sue Greenberg because they were their companies and they earned it.

Although the Amended Complaint reveals a conflict between the plausible and implausible, its reliance on the latter is fatal to its claim of a RICO Enterprise in the current case.

### 3-4.   *Pattern of Racketeering*

Another substantial deficiency in the complaint is its failure to show the required pattern of racketeering activity. For RICO purposes, the presence of an Enterprise is not enough since the Plaintiff must also show that the Enterprise conducted its affairs through a pattern of racketeering. *Reves,* 507 U.S. at 177–79.

Title 18, U.S.C. § 1961 defines "racketeering activity" as "any act which is indictable" under specified provisions of Title 18, including mail fraud, wire fraud, extortion, and bank fraud. 18 U.S.C. § 1961(1)(B). In turn, a "pattern of racketeering activity," requires "at least two acts of racketeering activity." 18 U.S.C. §§ 1962(c), 1961(5). A plaintiff must put forward enough facts with respect to each predicate act to make it independently indictable as a crime.

"Beyond establishing the existence of a RICO enterprise, a plaintiff must allege that *each defendant* participated in the affairs of the enterprise through a 'pattern of racketeering activity[.]'" *Cisneros*, 972 F.3d at 1215. *See also*, *DeFalco v. Bernas,* 244 F.3d 286, 306 (2d Cir.2001)( "When bringing a RICO claim against multiple defendants, the plaintiff must allege that each defendant committed two or more predicate acts"). Thus, "[i]n determining whether a pattern has been stated against any particular defendant, the court considers only the alleged offenses in which that defendant was purportedly involved, directly or indirectly, or for which that defendant bears some responsibility." *See* Gregory P. Joseph, *Civil RICO: A Definitive Guide* § 11.D.2.c., at 198 (5th ed.).

A review of the Complaint indicates that the Plaintiffs have failed to establish that the Greenberg Enterprise conducted its affairs through a pattern of racketeering. To establish the required pattern of racketeering, the Amended Complaint provides a list of at least 20 offenses. *See* Doc. 62 at ¶¶ 234-254. Although these allegations of criminality primarily and clearly involved Joel Greenberg, the Amended Complaint circumvents this problem in making the conclusory allegation that the "Defendants engaged and conspired to engage in the violation of numerous federal and state statutes, all through the Greenberg Enterprise . . ." *Id.* at ¶ 233.

Despite this ambitious assertion, the Amended Complaint provides little, if any facts, demonstrating that the individual Defendants committed these criminal acts. Instead, its racketeering section merely lists the individual criminal activities of Joel Greenberg and fails to provide a nexus between these activities and the purported Greenberg Enterprise. *See id.* at ¶¶ 340-348.

And that in the end that is the essential problem with the Complaint. It takes the acts of Joel Greenberg and imputes them to all the Defendants to create a RICO Enterprise, regardless of whether such assignations bear any logic. As the co-defendants point out, "a one-man show" does not make a RICO enterprise. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 283 (5th Cir. 1992). Rather, a RICO enterprise exists only "where a group of persons associates, formally or informally, with the purpose of conducting illegal activity." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1264 (11th Cir. 2004) (quoting *United States v. Hewes*, 729 F.2d 1302, 1311

(11th Cir. 1984)). But being forced to impute liability to all based on the one is the expected result of a claim that is based on a series of irrational premises that fall far short of conceivability, let alone plausibility. To sum up, the Plaintiff's RICO claims may be full of sound and fury, but they are still absurd nonetheless.[7]

## II. The Plaintiff has failed to state a federal RICO conspiracy claim (Count II)

In Count II, the Plaintiff alleges that all the Defendants, not just Joel Greenberg, conspired to commit federal RICO. *See* Doc. 62 at ¶ 291. The resolution to this conspiracy is simple. Because the Plaintiff has failed to establish the existence of a substantive RICO claim, he cannot establish that the Defendant conspired to commit a violation that did not exist. *See Cisneros*, 972 F.3d at 1124,

While the resolution to this claim is relatively simple, further discussion regarding the Amended Complaint's allegations supporting the conspiracy is instructive since its deficiencies exemplify the greater deficiencies in the overall Complaint. Indeed, the conspiracy claim provides an array of contentions marred by contradiction and implausibility and perpetuated without evidentiary support. Specific allegations supporting the purported "RICO Conspiracy" are found in 36 paragraphs. *See id*. ¶¶ 291-327. Nine of these allegations must be disregarded since they are based on information and belief. *Id*. at ¶¶ 300, 305, 308, 312, 313, 314,

---

[7] *Life's but a walking shadow, a poor player, that struts and frets his hour upon the stage, and then is heard no more. It is a tale . . . full of sound and fury, signifying nothing.*

    -William Shakespeare, Macbeth, Act 5, Scene 5, 19-28 (1603)

315, 325 & 327.  At least 17 allegations are conclusory in nature. *Id.* at ¶¶ 292, 293, 294, 300, 305, 306, 309, 312, 313, 314, 315, 318, 320, 324, 325, 326 & 327.

And there is of course contradiction, implausibility and the absurd, sometimes even in the same paragraph. For example, paragraph 293 asserts that "[e]ach Defendant joined the conspiracy no later than summer 2020 when the Defendants agreed to influence each other's testimony with the common purpose of falsely implicating others including Dorworth." In addition to its conclusory nature, this paragraph contradicts a preceding allegation in the complaint asserting that AB was related to the Greenberg Enterprise at the "earliest in 2022." *See id.* at ¶ 281.  It is also implausible. To be sure, it contends that Joel Greenberg's parents and wife, as well as the business entities, had an ongoing relationship with AB, a young woman who the Complaint denigrates as a mistress, porn star, and prostitute (chivalry is certainly dead), to each commit federal crimes.

### III.   The state RICO claims must be Dismissed (Counts III & IV)

Count III and IV must be dismissed for the same obvious deficiencies as the federal RICO claim. *See*, *e.g*, *Cisneros*, 972 F.3d at 1221 (dismissing Georgia state claim since was identical to Plaintiff's federal RICO claim and thus suffered from the same defects).

### IV.   Plaintiff has failed to state a claim for Defamation (Count V).

To assert a cause of action for defamation, a plaintiff must "set out the substance of each allegedly defamatory statement. . . ; the date, place, and manner of publication;

to whom the statement was made; and facts showing the damages flowing from each statement." *See Bezeau v. Cable Equip. Servs., Inc.*, 2015 WL 3540009, at *4 (S.D. Fla. May 27, 2015). As the following discussion demonstrates, there is very little of that in the Amended Complaint.

Furthermore, to the extent the alleged statements were published by Abby Greenberg to Joel Greenberg, they are not actionable as communications between spouses and are absolutely privileged. *See* Restatement (Second) of Torts § 592 ("A husband or a wife is absolutely privileged to publish to the other spouse defamatory matter concerning a third person."). Additionally, to the extent the alleged statements were published in grand jury proceedings, they are absolutely privileged and cannot form the basis for a defamation claim by Plaintiff. *See Buchanan v. Miami Herald Pub. Co.*, 206 So. 2d 465, 467-68 (Fla. 3d DCA 1968); *State v. Tillet*, 111 So. 2d 716, 721-22 (Fla. 2d DCA 1959). Finally, a two-year statute of limitations period applies to defamation claims under Florida law. See Fla. Stat. § 95.11(4)(g).

The Amended Complaint includes a section entitled "Allegations Pertinent to Defamation Allegations" which provides the primary basis for its defamation claim. *See id* at ¶   Said section contains 32 separate paragraphs. Doc. 62 at ¶¶ 349—381. Nearly a third of these allegations are based on "information and belief" and should be disregarded. *See id.* at ¶¶ 349, 350, 353, 356, 357, 358, 368, 369, 374, and 376. Deconstructing this section shows the essential failure of the claim. Paragraph 349 asserts that "Upon information and belief, Joel Greenberg has defamed Dorworth at each interview with the authorities." *Id.* at ¶ 349. Because it is based on information

and belief and is also conclusory, the Amended Complaint fails to provide facts concerning the place, substance and "to whom each statement was made . . ." *See, e.g,. Bezeau,* 2015 WL 3540009, at *4. Unsurprisingly, the Amended Complaint shows no facts demonstrating the damages flowing from each of these unknown statements made during the interviews. Finally, six of the ten alleged interviews with the Government occurred on or before April 1, 2021, and thus any defamatory statements made during these interviews are barred by the two-year statute of limitations.

In the next paragraph, the Amended Complaint then in conclusory fashion alleges that Joel Greenberg caused these statements to be published either individually or through his agents. Doc. 62 at ¶ 350. Because it is conclusory in nature, the Plaintiff again fails to provide the who, what, where, when of these statements and fails to specify the damages flowing from each of these individual statements.

Although it manages to do slightly better in the following paragraph, the next assertion is still woefully inadequate. Indeed, the assertion states that Joel Greenberg published a statement to Trump asserting that Dorworth housed parties where men including Gaetz paid to have sex. *Id.* at ¶ 352. It does not present any facts specifying how this statement specifically damaged Dorworth, rather than Gaetz, and is not listed in the alleged defamatory statements under Count V. *See id.* at 446. Regardless, because the Amended Complaint asserts that this statement was made in December 2020 or January 2021 (Doc. 62 at ¶ 130), the claim would be barred by the two-year limitations period.

The Amended Complaint subsequently states that "[u]pon information and belief, one of the Defendants leaked false information concerning allegations of sexual misconduct." Doc. 62 at ¶ 355-356. Because it is based upon information and belief, it should be disregarded. To be sure, it provides no facts concerning the identity of the defendant.

Before leaving this last alleged defamatory statement, one additional point should be made. The allegation's reliance on "information and belief" reveals a consistent theme in the complaint. That is, the Amended Complaint is characterized by a lack of evidence. Consequently, conjecture replaces proof, speculation replaces evidence.

In addition to the foregoing defamatory statements purportedly made by Greenberg, Count V provides a laundry list of additional defamatory statements allegedly made by Joel Greenberg. *See id.* at ¶¶ 446(a-h). Most of these statements are time barred or are subject to privilege. The Defendant's statement concerning the Plaintiff's involvement in sex trafficking with a minor and his sexual relations with AB was apparently made before April 2021 and thus would be time-barred under F.S. §. *See* id. at ¶ 144 (stating that Dorworth took a polygraph on these allegations in April 2021). The allegation that Greenberg falsely implicated Dorworth in obstruction is based on information and belief and thus has no evidentiary support. *See id*. at ¶ 148. To the extent the claim is based on Greenberg's alleged grand jury testimony, then it would also be subject to privilege. *Buchanan,* 206 So. 2d at 467-68. Assuming, arguendo, that the Plaintiff's claim about Joel Greeneberg's actions with Beute

constitute defamation, the alleged "statement' occurred far beyond the 2-year limitations period. *See id.* at 62 (stating that the conduct occurred in 2019 or 2020).

Concerning the remaining alleged defamatory statements, they suffer from the same defect as all the defamatory statements listed in the Amended Complaint. That is, the Plaintiff does not plead facts showing the damages flowing from each of the defamatory statements. *See Bezeau v. Cable Equip. Servs., Inc.*, Case No. 14–24538–CIV, 2015 WL 3540009, at *4 (S.D. Fla. May 27, 2015) ("If CES intends to plead a separate claim for defamation it must set out the substance of each allegedly defamatory statement on which it is proceeding; the date, place, and manner of publication; to whom each statement was made; and facts showing the damages flowing from each statement.").

## V.   Plaintiff has failed to state a claim for civil conspiracy against (Count VII)

As a preliminary matter, Plaintiff's civil conspiracy claim fails because the underlying tort of defamation against A.B., Abby Greenberg, and Joel Greenberg fails. *See Buckner*, 403 So. 2d at 1027 ("To support a cause of action for conspiracy to defame, it is . . . incumbent upon a plaintiff to properly allege those elements which would establish a defamation").

Turning to another issue, pleading a successful civil conspiracy claim requires pleading "a conspiracy between two or more parties . . . to do an unlawful act or to do a lawful act by unlawful means." *Walters v. Blankenship*, 931 So. 2d 137, 140 (Fla. 5th DCA 2006).  To satisfy that requirement, Plaintiff must provide "clear, positive and

specific allegations; general allegations of conspiracy are not sufficient." *Parisi v. Kingston*, 314 So. 3d 656, 661 (Fla. 3d DCA 2021). Plaintiff must also allege the conspiracy's scope, its participants, and when the agreement occurred. *See In re Chiquita Brands Int'l, Inc. Alien Tort Stat. & S'holder Deriv. Litig.*, 690 F. Supp. 2d 1296, 1311 (S.D. Fla. 2010). And as with RICO, in pleading an agreement between parties to conspire, a bare assertion of an agreement is insufficient to make that claim plausible. *Almanza*, 851 F.3d at 1068.

Even parallel conduct among parties cannot support a plausible inference of an agreement. *See id.* at 1068. More than allegations of parallel conduct, a plaintiff must plead factually "suggestive" allegations—ones raising a *plausibility* that a preceding unlawful agreement was reached—in situations where parallel conduct could just as well reflect independent action. *Twombly*, 550 U.S. at 556–57. In other words, conclusory inferential allegations of conspiracy and agreement do not push a complaint over the thresholds necessary to state an "entitle[ment] to relief," under Rule 8(a), when describing independent actors acting in a way that could well be expected in the absence of a preceding unlawful agreement. *See id.* at 557.

Plaintiff's civil conspiracy claim fails because his allegations are anything but clear, positive, and specific. Despite multiple and extreme efforts to meet his pleading burden, Plaintiff fails to allege facts supporting his claim that Defendants agreed to defame him. Even parallel conduct and knowledge thereof is not enough—and Plaintiff does not even (properly) allege that. Independently—and, indeed, far more likely and common—Andrew and Susan Greenberg could just as well have supplied

funds to support a son in legal jeopardy and to support his children (their grandchildren) without knowing what Joel would say, or had said, about Plaintiff, much less that any such statements were false.  Likewise, Abby Greenberg could just have well provided support for Joel's defense without agreeing to defame anyone; the Greenberg Dental entities likely, if anything, paid compensation to their namesake founding shareholder and executive; A.B. could simply have asserted and pursued claims against Plaintiff for her own benefit and because she was a victim. without any agreement with any other Defendant, and, obviously, Joel Greenberg could have implicated Plaintiff, with or without the assistance of counsel, in an effort to save himself from a longer prison sentence.  In short, Plaintiff's scant allegations cannot support a claim for conspiracy.

## VI.   The Complaint must be dismissed as a Shotgun Pleading, (All Counts)

Because the Amended Complaint constitutes a shotgun pleading, it must be dismissed under Rules 8 and 10 of the Federal Rules of Civil Procedure, which provide the minimum standards for complaints. *See Kendall v. Boston Scientific Corp*, 6:17-cv-1888-Orl-37GJK, 2017 WL 6042020, at *1 (M.D. Fla. Dec. 6, 2017). Rule 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief."  In turn, Rule 10(b) further provides:

> A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim

founded on a separate transaction or occurrence—and each defense other than a denial—must be stated in a separate count or defense.

Failing to adhere to Rules 8(a) and 10(b) results in an impermissible "shotgun pleading." *See Kendall,* 2017 WL 6042020, at *2 (citing *Weiland,* 792 F.3d at 1320). *Kendall* noted that a shotgun pleading may "begin with a long list of general allegations" that are "incorporated by reference into each count of the complaint." *Id.* (citation omitted). This defect identified in *Kendall* is present in the Amended Complaint. In the pleading Complaint, each count and prayer for relief relies on all preceding general allegations in the Amended Complaint. Such a pleading represents the stereotypical shotgun pleading. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n.9 (11th Cir. 1997) (noting the "all-too-typical shotgun pleading" is one in which the first paragraph of every count "incorporates by reference" all preceding factual allegations).

Although the counts do assert specific facts in support of the claim, this does not cure the problem. Because the individual counts again rely on every preceding general allegation, Joel Greenberg is still confronted with the problem of having to determine which general allegations, as well as which exhibits, support each claim. Thus, the "complaint is a perfect example of "shotgun" pleading . . . in that it is virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." *See Anderson v. Dist. Bd. Of Trs. Of Central Fla. Cmty. Coll.,* 77 F.3d 364, 366 (11th Cir. 1996).

Further exacerbating this problem is the Amended Complaint's incorporation of the first Complaint, which numbered 115 pages and contained 918 paragraphs, as well as the four indictments in Joel Greenberg's criminal case. Doc. 62 at ¶ 348. Such a voluminous incorporation results in a shotgun pleading and injects needless confusion and inconsistencies into this already complex matter. *Bryant v. Norfolk S. R.R.*, No. 5:20-CV-00225-TES, 2020 WL 5521044, at *1 (M.D. Ga. Sept. 14, 2020); *cf. Zurich Am. Ins. Co. v. S.-Owners Ins.* Co., 314 F. Supp. 3d 1284, 1303 n.10 (M.D. Fla. 2018).

## **CONCLUSION**

Based on the foregoing discussion and authorities, the Court should dismiss all counts of Plaintiff's Amended Complaint against Defendant, Joel Greenberg, with prejudice as repleading to state a claim is futile.

Respectfully submitted,

*/s/ Fritz Scheller*
Fritz Scheller
Florida Bar No. 183113

## **CERTIFICATE OF SERVICE**

On August 29, 2023, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all parties of record.

*/s/ Fritz Scheller*
Fritz Scheller
Florida Bar No. 183113
200 E. Robinson St., Suite 1150
Orlando, Florida 32801
PH:   (407) 792-1285
FAX: (407) 649-1657
fscheller@flusalaw.com
*Attorney for Defendants*

26