UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| CHRISTOPHER E. DORWORTH,<br><br>        Plaintiff,<br><br>v.<br><br>JOEL MICAH GREENBERG, ANDREW W. GREENBERG, SUE GREENBERG, ABBY GREENBERG, AWG, INC., GREENBERG DENTAL ASSOCIATES, LLC, GREENBERG DENTAL & ORTHODONTICS, P.A., GREENBERG DENTAL SPECIALTY GROUP, LLC, and A.B.,<br><br>        Defendants. | Case No.: 6:23-CV-00871 |

**MEMORANDUM OF LAW IN OPPOSITION TO MOTION
BY ANDREW GREENBERG, SUE GREENBERG, AND
AWG, INC. TO DISMISS VERIFIED AMENDED COMPLAINT[1]**

---

[1] Plaintiff has requested an extension of time so that he may draft a response to the Greenbergs Motion in connection with the other Motions in this case, which are due October 10, 2023. Doc. 95. However, Plaintiff wishes to file this response timely as the motion for extension has not been ruled upon yet. If the Court is inclined to extend the time to respond to the Greenbergs' Motion to the deadline for the other motions, then undersigned counsel respectfully requests that this response be disregarded and that Plaintiff be permitted to file a response to the Greenbergs' Motion together with the other responses due on October 10, 2023.

## PRELIMINARY STATEMENT

Plaintiff Christopher E. Dorworth ("Dorworth") respectfully submits this Memorandum of Law in opposition to the motion by Defendants Andrew Greenberg ("Andrew"), Sue Greenberg ("Sue"), and AWG, Inc. ("AWG" and, collectively with Andrew and Sue, the "Greenbergs") to dismiss the Verified Amended Complaint (the "Complaint"). According to the Greenbergs' motion (the "Motion"), the Complaint allegations against them reduce to "mundane parental activity." Motion at 2. This simply is not true. The Greenbergs' child is the infamous criminal Joel Greenberg ("Joel"), and the Complaint specifically alleges that (as Joel confessed to Dorworth), Andrew and Sue conspired with Joel to commit state and federal crimes.

## FACTS

Joel Greenberg became one of the most corrupt politicians in Florida history by using his position as a county tax collector to steal more than $1.3 million through cryptocurrency theft, bribery of public officials, and kickbacks. According to Joel, Andrew assisted with at least some of these crimes. ¶ 86. Once Joel was indicted, he, his wife Abby, along with Andrew and Sue, embarked upon a conspiracy to avoid justice. First, they tried to convince Congressman Matt Gaetz and Dorworth, a well-known figure in Florida politics ¶ 14, to obtain a pardon from then-President Trump. ¶¶ 83 et seq. When Dorworth refused, Joel threatened him: "Joel Greenberg indicated that Dorworth, Gaetz, and others would be falsely implicated by Greenberg

if Dorworth and Gaetz did not help Joel mitigate his liability by obtaining a pardon" ¶¶ 88 et seq. Dorworth still refused. Joel then unsuccessfully tried to induce Gaetz and Dorworth to lobby for the firing of the AUSA who was prosecuting him. ¶ 106. Finally, in response to Dorworth's and Gaetz' continued refusals, Joel was for once true to his word, and set about falsely accusing Dorworth of various crimes, ¶¶ 118–123, 142, 146, 151, 155, 157, 163, 164, 170–175, 180, in the hope of obtaining "cooperation credit." ¶¶ 7, 183. Those efforts eventually failed, but only after causing both Dorworth and Gaetz considerable embarrassment and harm.

Central to this motion is the involvement of Joel's parents and AWG in Joel's nefarious activities. In dozens of paragraphs it sets forth in detail the ways in which the Greenbergs participated in the conspiracy by knowingly financing Joel's criminal activities. Twelve of those paragraphs are alleged upon information and belief. Another two dozen paragraphs are not so delimited. Most importantly, in his July 19, 2020 conversation with Plaintiff, Joel confessed that he and his parents had agreed to work together to commit misconduct. ¶¶ 92–94, 102–108. The Complaint contains some three dozen paragraphs specifying what the Greenbergs did. Yet, the Greenbergs claim it fails to adequately allege that they assisted Joel in his scheme to avoid justice. The Greenbergs' defense disintegrates upon analysis.

## DORWORTH ALLEGES WRONGDOING BY THE GREENBERGS

In their recitation of the legal standards governing dismissal, the Greenbergs overlook a variety of central elements. For example, *Bell Atl. v. Twombly*, 550 U.S. 544, 555–56 (2007) held, "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" and is sufficient "even if it appears that a recovery is very remote and unlikely."[2] As the Eleventh Circuit stated in *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1295–96 (2007), the "Supreme Court's most recent formulation of the pleading specificity standard is that 'stating such a claim requires a complaint with enough factual matter (taken as true) to **suggest**' the required element" (*quoting Twombly* at 555–56, emphasis added). Continuing to quote *Twombly*, *Watts* states:

> the rule "does not impose a probability requirement at the pleading stage," but instead "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. *Id.* It is sufficient if the complaint succeeds in "identifying facts that are **suggestive enough to render [the element] plausible**." *Id.*

*Id.* (emphasis added). Importantly, *ADA v. Cigna*, 605 F.3d 1283 (11th Cir. 2010), relied upon extensively by the Greenbergs, states that a "plaintiff need not offer direct evidence of a RICO agreement; the existence of conspiracy "may be inferred from the conduct of the participants." *Id.* at 1293. The Greenbergs even suggest that

---

[2] Nowhere in their six references to *Twombly* (Motion at 10, 12 (2x), 13, 21, and 24) do the Greenbergs acknowledge this central and oft-quoted holding.

3

a "tacit agreement" may be inferred from factual allegations. Motion at 11.

<u>The Motion, Not the Complaint is "Teeming with Inconsistencies"</u>

The Motion claims that "a close chronological reading of Plaintiff's allegations shows that his entire theory is implausible and teeming with internal inconsistencies."[3] Motion at 5. However, it is the Greenbergs' recitation that is "inconsistent" with the pleading. The Greenbergs claim that Greenberg was charged on July 19, 2020, Motion at 5, but this was actually the date that Abby lured Rebekah Dorworth to the resort. ¶ 71. (Joel was charged on June 17, 2020, ¶ 65). The Greenbergs then incredibly claim that "Soon after—**Plaintiff does not say how soon**—Joel cornered Plaintiff and demanded that Plaintiff help him secure a preemptive pardon. *Id.* ¶¶ 72–90." Motion at 5. (emphasis supplied). The exact date of this encounter, July 19, 2020, the date the Greenbergs incorrectly use for Joel's charges, appears in the paragraph immediately preceding the range cited by the Greenbergs claiming Dorworth did not provide the date. ¶ 71. Further, it was Rebekah Dorworth, not Plaintiff, who was cornered by Joel. ¶ 82.

The Greenbergs continue to misconstrue the pleading as it relates to A.B. The Greenbergs claim that A.B. testified "about Joel" to a grand jury in August 2020. Motion at 6, citing ¶¶ 152 and 235. The cited paragraphs, however, state that A.B. met with prosecutors, ¶ 152, and that Joel tried to stop A.B. from testifying before

---

[3] Of course, these "inconsistency" contentions are, at most, credibility issues for the factfinder.

the grand jury. ¶ 235 (claiming obstruction). The distinction is important. According to Joel Greenberg, the authorities learned about Greenberg's misconduct with A.B. from electronic records, and not from A.B. ¶ 122 (citing Exhibit 3, Greenberg's text message to Dorworth).[4] Thus, there is nothing inconsistent with the Greenbergs paying A.B.[5] Nor is there anything inconsistent with (1) Greenberg first attempting to prevent the authorities from speaking to A.B. to prevent her from being forced to corroborate his misconduct, in an effort to avoid indictment for his crimes with A.B., and then, (2) after he was indicted for that conduct based upon electronic records, switching tactics and deciding to implicate Dorworth and others to obtain cooperation credit.[6] In fact, this is exactly what the Complaint alleges. ¶¶ 118-120. The Greenbergs call Plaintiff's allegations "muddled," possibly because they juxtapose events in reverse order, citing to ¶ 122 before ¶ 118, Motion at 6-7, despite the intervening ¶ 119 explaining Greenberg switched tactics once he indicted. Joel was indicated for sex crimes with A.B. on August 19, 2020. Although the Greenbergs claim that Joel was trying to prevent A.B. from cooperating with the

---

[4] The Greenbergs acknowledge all of this, but in a footnote. Page 6, n.5.

[5] Nor is the fact that A.B. recruited a friend to also implicate others inconsistent with the Greenberg's corrupt inducements to A.B. In fact, it shows the lengths that the Greenbergs and A.B. went to implicate Dorworth and others.

[6] The Greenbergs claim Joel could not mitigate his federal sentence by interviewing with state authorities who are "without jurisdiction to help Joel with his federal charges." Motion n. 6. They are plainly wrong. E.g. *United States v. Love*, 985 F.2d 732, 734-35 (3rd Cir. 1993). (holding "substantial assistance" credit under USSG 5K1.1 not limited to assistance to federal authorities).

authorities "around the same time" that she began to frame Dorworth, Motion at 6,[7]

this ignores the intervening indictment and Joel's change of strategy. ¶ 119. The

complaint alleges that in the late summer,[8] i.e. after Joel's indictment, Greenberg

began to attempt to falsely implicate Dorworth and others. ¶¶ 119 et seq. The

Greenbergs' brief, not Dorworth's pleading, is "teeming with inconsistencies."

Greenbergs' brief does not even fairly characterize the Complaint.[9]

---

[7] The Greenbergs' footnote on Page 6 engages in far more speculation than Dorworth's Complaint (the Greenbergs' characterization to the contrary), and continues to mischaracterize the pleading. First, they "surmise" that A.B. implicated and testified *against* Joel, despite no allegation or implication that she did. The paragraph they cite states that A.B. "testified or *was requested to testify*," (emphasis supplied) at various times from 2020-2022. Para 153. This does not mean that she testified *against* Joel Greenberg before he was indicted for crimes with her. In fact, from Joel Greenberg's text messages to Dorworth, it appears she did not. Exhibit 3. Further, even if A.B. was compelled by the Government to testify against her wishes, and did so, this is not inconsistent with her later conspiring with the Greenbergs to frame Dorworth and others.

[8] The Summer ended on September 21, 2020. "Late summer," ¶ 122, obviously refers to activities after August 19, 2020. ¶ 118.

[9] Not only does the Greenbergs' brief mischaracterize the pleading, it also mischaracterizes the caselaw. For example, the Greenbergs' quotation of *Hopkins v. Hosemann*, No. 19-60662, 2023 WL 4990543, at *12 (5th Cir. Aug. 4, 2023), omits the full quote and substitutes "Plaintiff's theory of the case" (outside quotes) for "the dissent's argument." C.f. Motion at 8 and *Hopkins* at *12 (upholding the "Plaintiff's theory of the case," but disagreeing with the dissent).

<u>The Pertinent Complaint Allegations</u>[10]

Further, the Motion argues that the Complaint makes no "non-conclusory" allegations of wrongdoing against the Greenbergs.[11] This too is incorrect. As is detailed below, the Complaint makes literally dozens of non-conclusory allegations. On June 17, 2020 Joel was indicted. ¶ 39. On July 19, 2020 (32 days later) Joel Greenberg's wife, Abby Greenberg, lured Dorworth's wife Rebekah to a resort, assuring Rebekah that "Joel would not be present," ¶ 74, which turned out to be false. ¶¶ 77, 82. Later, Joel told Dorworth that he was concerned about "his exposure for sexual misconduct with A.B." ¶ 91. Joel then explained his parents' role in his initial scheme (emphasis added):

> 92. Greenberg told Dorworth that he was paying for A.B.'s attorney's fees in an attempt to shape her testimony so that he could avoid charges.[12]

> 93. Greenberg also told Dorworth that he **and his parents** would seek A.B.'s cooperation by "paying her off" and that he had determined that A.B. would accept such inducement.

> 94. Greenberg told Dorworth that **his family and their businesses** would pay any amount necessary to obtain a pardon.

---

[10] Although Defendants complain that the original Complaint and criminal indictments are incorporated into the Amended Complaint, all necessary allegations for the amended complaint are stated therein, without reference to other documents. Plaintiff simply included the other pleadings by reference to provide additional context and information, and to ensure that Defendants cannot take advantage of any inadvertent omission of a fact in the redrafted document. To the extent that this creates, rather than avoids, an issue with the pleading, the other documents can be disregarded, as no Defendant has raised any omission of information from the other pleadings in its Motion.

[11] The Greenbergs use the word "conclusory" 26 times in the Motion. However, they ignore a plethora of non-conclusory allegations, as detailed herein.

[12] Joel did this with assistance from his parents. (¶ 300).

These are obviously straightforward statements of fact, sourced straight from Joel. And, read fairly, these paragraphs allege that at some point between June 17 and July 19, 2020,[13] Joel and his parents entered into a conspiracy to induce A.B. to commit perjury, and further to obtain a pardon by "paying" people. The Complaint then details how Andrew and Sue and AWG became involved. See Appendix, Allegations Showing Involvement of Andrew and Sue Greenberg and AWG. Of the 30 paragraphs listed in the Appendix and above, over half (¶¶ 102, 103, 298, 306, 307, 318, 320, 332, 334, 336, 388-390, 396, 460, and 461) are not even referenced in the Motion.[14] The Motion is classic strawman: The complaint it attacks is not the actual pleading. Unlike the Strawman Complaint, the real Complaint details a conspiracy involving the Greenbergs to extort, defame, and falsely accuse Dorworth.

---

[13] These allegations suffice to overcome the *Twombly* rule that a "conclusory allegation of agreement at some unidentified point" is inadequate. Motion at 21. Indeed, even the heightened pleading requirements of Rule 9(b) are subject to relaxed pleading requirements where the Plaintiff lacks access to the exact facts of the claim. *Corley v. Rosewood Care Center*, 142 F.3d 1041, 1051 (7th Cir. 1998).

[14] An additional 14 paragraphs of the Complaint contain allegations about the Greenbergs that are alleged upon information and belief (¶¶ 105, 154, 213, 305, 306, 307, 308, 312, 313, 314, 315, 327, 392, and 397). Comparison with the 30 paragraphs referenced above, each of which manifestly contains well-pleaded facts, shows that the facts pleaded are quite sufficient to render the I&B paragraphs plausible. *See, Daisy v. Pollo Operations*, Case No: 2:14-cv-564-FtM-38CM, at *10 (M.D. Fla. Mar. 27, 2015): "The *Twombly* plausibility standard does not prevent a plaintiff from "pleading facts alleged upon information and belief where the belief is based on factual information that makes the inference of culpability plausible. *See Iqbal*, 556 U.S. at 678" (internal quotation marks omitted). *Accord, Zausner Foods Corp. v. Blandin*, No. 22-22660-CIV-SINGHAL, at *9 (S.D. Fla. Aug. 16, 2023): "The 176-page Complaint features detailed and highly-specific factual allegations. … Though Plaintiff relies on information and belief to bolster its substantive allegations, this comes as no surprise given the nature of its claims. Plaintiff is requesting an equitable accounting because it suspects foul play and is not able to prove as much at the motion to dismiss stage."

## THE COMPLAINT ADEQUATELY ALLEGES
## <u>WRONGDOING BY THE GREENBERGS</u>

The Greenbergs contend the Complaint does not accuse them of wrongdoing:

> All Plaintiff can muster is that "[Joel] Greenberg . . . told Dorworth that he and his parents would seek A.B.'s cooperation by 'paying her off' . . . [,] that he had determined that A.B. would accept such inducement," and that "[Joel] Greenberg told Dorworth that his family and their businesses would pay any amount necessary to obtain a pardon." Doc. 62 ¶¶ 93–94.[15] Neither allegation goes so far as to claim that the Greenbergs actually agreed to do anything (only that Joel said they would). And even accepting that the Greenbergs would somehow "pay off" A.B. (whatever that might mean)[16] or would pay to get their son a pardon, neither fact suggests that the Greenbergs agreed to be party to a conspiracy to defame Plaintiff.

Motion at 14. This argument has two subparts: First, that the complaint does not allege that "the Greenbergs actually agreed to do anything (only that Joel said they would)"; and second that the complaint has no allegations that "suggest[] that the Greenbergs agreed to be party to a conspiracy to defame Dorworth." Id. As to the first, Joel told Dorworth that his parents would support his scheme, and indeed they

---

[15] The Greenbergs suggest in their Motion that because Vladimir St. Louis did not suggest in his letter that A.B. was bribed (as opposed to tampered with) by Joel that "the exhibit controls." Of course, another exhibit clearly shows that Joel intended to pay for A.B.'s lawyer, which offer is corroborated in other discovery. Doc. 62-3. The Greenbergs cite *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Circuit 2016), dealing with a conflict between assertions about a particular exhibit, and content of the actual exhibit, not a supposed conflict between two exhibits. In this case, any inconsistency is between Joel's various accounts. Further, there is nothing inconsistent with A.B. being tampered or bribed by Joel and also wishing to extract a payment from Dorworth.

[16] This is but one of many misleading asides contained in the Motion. The phrase "pay off" does not appear in the Complaint. ¶ 93 reads, "Greenberg also told Dorworth that he and his parents would seek A.B.'s cooperation by 'paying her off' and that he had determined that A.B. would accept such inducement." Surely, the Greenbergs' professed ignorance about what "paying someone off" means is insincere. In any event, ¶¶ 27 ("A.B. was compensated by the Greenbergs to provide false testimony") and 92 ("Greenberg told Dorworth that he was paying for A.B.'s attorney's fees in an attempt to shape her testimony so he could avoid charges") make the meaning of the term clear to any fair reader of the Complaint.

did. Everything Joel said would happen did happen. See e.g. ¶ 107.

Some of the paragraphs of the Complaint that allege the Greenbergs "agreed to be party to a conspiracy" commence with "According to Greenberg" or otherwise set forth the source. However, most do not (and of course need not[17]) provide such evidentiary-level support. ¶¶ 214, 294 306, 307, 318, 335, 338, 459–61. Moreover, it is nonsensical to suggest that, because the Complaint provides sourcing ("Joel said they would") it is weaker than if it did not provide such evidence. For instance, examine how ¶ 102 (quoted above) reads both with and without the "Joel said they would" phrasing. The actual ¶ 102 reads:

> 102. According to Greenberg, Andrew and Sue Greenberg and Greenberg Dental and AWG also agreed with Joel Greenberg and Abby Greenberg to pay any amounts necessary to obtain the pardon or firing of the prosecutor that Joel Greenberg was attempting to extort Dorworth and Gaetz to seek on his behalf.

Here is a revised version, without sourcing:

> 102. Andrew and Sue Greenberg and Greenberg Dental and AWG also agreed with Joel Greenberg and Abby Greenberg to pay any amounts necessary to obtain the pardon or firing of the prosecutor that Joel Greenberg was attempting to extort Dorworth and Gaetz to seek on his behalf.

The Greenbergs assert that because the actual Complaint provides the source (a con-

---

[17] *Nodell v. Nicky's Rest. Equipment*, 0:22-CV-62164-AUGUSTIN-BIRCH, 2023 WL 185480 at *3 (S.D. Fla. Jan. 13, 2023) ("As for whether Plaintiffs have evidentiary support for their allegations, that is a matter left for a later stage of this litigation."); *Blair v. Philips Elecs.*, Case No: 8:16-cv-3529-T-30JSS, slip op. at *4 (M.D. Fla. Feb. 28, 2017) ("Plaintiff need not provide evidentiary support or even detailed information as to why he thinks these advertising practices are deceptive or unfair. He need only provide Defendant with notice of the practices he thinks are deceptive or unfair.")

fession by a member of the conspiracy), it is defective. Of course, without the sourcing, the Greenbergs would have branded the allegation "conclusory."[18]

The second subpart of the argument is that the Complaint lacks factual allegations indicating that the Greenbergs "agreed to be party to a conspiracy to defame Plaintiff." Perhaps the Greenbergs' Strawman Complaint lacks sufficient allegations, but the actual Complaint is filled with allegations that the Greenbergs participated in a conspiracy to defame Dorworth. The false and defamatory statements the Greenberg Defendants enabled through their financial support are set forth in detail in ¶¶ 445–455, and the Greenbergs' involvement is described:

> 294. Andrew and Sue Greenberg, and their companies Greenberg Dental and AWG agreed to provide, and Abby Greenberg and A.B. agreed to accept, compensation in exchange for participating in the process crimes intended to falsely implicate Dorworth and others.[19]

> 459. Defendants Andrew Greenberg, Sue Greenberg, Abby Greenberg, Greenberg Dental, and AWG, Inc., each possessed knowledge of Joel Greenberg, Abby Greenberg, and A.B.'s defamation.[20]

---

[18] Note that the Greenbergs wish to have it both ways: Where evidentiary support is not provided, they complain—And when evidentiary support **is** provided, they still complain.

[19] This allegation in particular distinguishes this case from *Lawrence v. BofA*, 455 F. App'x 904 (11th Cir. 2012), and *Twitter v. Taamneh*, 598 U.S. 471, 500 (2023), which involved what the Supreme Court called "passive nonfeasance."

[20] This allegation in particular distinguishes this case from *B-Smith Enters. v. BofA*, No. 22-11383, 2023 WL 2034419 (11th Cir. Feb. 16, 2023), where the complaint was dismissed because it did not allege that the defendant had any knowledge of the wrongdoing. The Greenbergs also cite *Doe v. Samford* Univ., 29 F.4th 675, 688 (11th Cir. 2022), for the proposition that a complaint which permits "obvious alternative explanations … [that] suggest lawful conduct" is insufficient. To come within the holdings of these cases, the Greenbergs' Strawman Complaint merely alleges that they financially supported their son. Missing from the Strawman Complaint are the many allegations in the real Complaint showing that support was provided **for the specific purpose** of aiding Joel in committing crimes.

460. Defendants each provided substantial assistance to Joel Greenberg and A.B. by providing financial resources to enable the defamatory actions, among other actions.

461. Defendants provided these resources with the knowledge and intent that they would be used to harm Dorworth, among other things.[21]

Although the Greenbergs claim that "Plaintiff only offers supposition" and "inference" that they provided resources for Joel's attorney fees and other aid to the scheme, Motion at 9, the Greenbergs have confirmed in discovery that they paid over $2.2 million in connection with Joel's criminal charges, including attorney fees. Finally, the Greenbergs argue that Andrew's repaying money stolen by Joel from the Tax Collector's Office, "does not suggest that he was a knowing party to a civil

---

[21] These allegations render obvious the difference between this case and cases cited by the Greenbergs (Motion, p. 1) for the proposition that parents are not generally liable for the torts of their adult children. In *Carney v. Gambel*, 751 So. 2d 653, 654 (Fla. 4th DCA 1999), the parents were not liable when their adult son attacked a security guard. To make the facts of *Carney* apposite here, the parents would have had to **aid** their son in attacking the security guard. Similarly, in *K.G. v. S.B.*, 46 Cal.App.5th 625, 628 (Cal. Ct. App. 2020), the question posed was "whether a father who provides financial support for his adult son may be held liable for the death of his son's girlfriend by overdose on methamphetamine allegedly purchased or supplied by the adult son." To make *K.G.* apposite, the father would have had to give the son money **with the intention** that the son buy drugs for his girlfriend. Of course, the most important difference between *K.G.* and this case is that the girlfriend willingly took the drugs on which she overdosed, here Dorworth was an innocent and unknowing victim of the Greenbergs. Lastly, in *Knight v. Merhige*, 133 So.3d 1140 (Fla. 4th DCA 2014), the Court held that a mother and father were not liable for a shooting committed by their adult son at a Thanksgiving Dinner. Importantly, the parents did not provide the firearm, help the son procure it, or do anything other than invite him to the Thanksgiving dinner, a very common thing for parents to do. Here, of course, the parents provided material support to Greenberg through the racketeering enterprise over a continuous period of time (as opposed to a one-off shooting) when they knew that their aid was being used by Greenberg to commit improper acts against others. Moreover, any financial support provided by the parents in *Merhige* was for living and personal assistance, not for taking over a tax collector office and running an "independent investigation," or the other extraordinary aid that the Greenberg family rendered to Joel. In short, the Greenbergs did far more than bring Joel into the "family circle," they deliberately aided and abetted his criminal conduct for years, and then used further resources in support of an unlawful attempt to insulate themselves and Greenberg from liability.

or criminal conspiracy." Motion at 15. However, what the Complaint actually alleges is that the Greenbergs entered into the conspiracy to mitigate not just Joel's liability but also their own, ¶¶ 103, 332, and that the funds were provided **with the intent**[22] to cover up the cryptocurrency theft in which Andrew was involved. ¶¶ 332, 334, 335, 336, 391, 393, 396. Moreover, unlike other payments, the Greenbergs suggest no "innocent explanation" for the repayment of stolen funds. The Greenberg's argument addresses their Strawman Complaint, not the real Complaint.

In context, the payment by the Greenbergs of Joel's seven-figure obligations clearly shows consciousness of guilt. First, the Greenbergs disguised the fact that they were the source of the funds, by using an intermediary. ¶ 392. Then, they insisted on receiving a general release, benefitting both them and their companies. ¶ 393. Finally, a week later, Joel misled the sentencing Court by gratuitously distancing himself from the family that had just provided funds for the payment of restitution. ¶ 390 ("He's lost all financial support"). These facts are consistent only with minds burdened with guilt. There is no "innocent explanation."

---

[22] *Cf.* Motion, p. 22: "So too here, merely financially supporting a child does not carry a duty to ensure that support will never indirectly or incidentally contribute to later crime." But, the Complaint does not allege a "duty to ensure"; it alleges that the financial support was given with the specific intent that it be used to commit a crime. For this same reason, *ZP No. 54 v. Fidelity & Deposit,* 917 So.2d 368 (Fla. 5th DCA 2005) (Motion, p. 22) is inapposite. There, a bonding company was sued as an accomplice to fraud, even though the complaint did not allege that the defendant issued the bond intending to further fraud. By contrast, Dorworth is not suing a bail bondsman, bank, communications provider, or others who provided routine services that Joel used to further his scheme. Here, the Complaint repeatedly alleges that the Greenbergs provided Joel with funds for the specific purpose of, among other things, harming Dorworth.

## DORWORTH ADEQUATELY ALLEGES A RICO ENTERPRISE INVOLVING THE GREENBERGS

In *Boyle v. United State*s, 129 S.Ct. 2237, 2241 (2009) is the leading Supreme Court case on the enterprise requirement, but is not cited by the Greenbergs. There, the Court held that even a loosely organized group without a leader or long term plan constituted a RICO enterprise. *Id*. *Boyle* requires only "three structural features: a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." *Id*. at 2244. The Greenberg Enterprise's purpose was to falsely implicate Dorworth, the members of the enterprise were related through family, business, and personal ties, and these relationships endured for sufficiently long – several years at least – to permit the members to pursue that purpose. As for the conspiracy requirement, in *Salinas v. United States*, 522 U.S. 52 (1997), also omitted by the Greenbergs, the Court found that (1) RICO conspiracy is "even more comprehensive" than other conspiracy law, (2) supporters of a conspiracy are as guilty as the perpetrators, and (3) people who do not commit a substantive offense may be liable for RICO conspiracy. *Id*. at 63-64. The Complaint adequately alleges that the Greenbergs agreed to participate in the conspiracy to defame Plaintiff.[23] *Cisneros v. Petland*, 972 F.3d 1204, 1220 (11th

---

[23] The Greenbergs' reliance on *Twombly* (Motion, p. 21) as an example of a case where a complaint was dismissed for insufficiently pleading an agreement is misplaced, for there the Court held that "the complaint leaves no doubt that the plaintiffs rest their § 1 claim on descriptions of parallel

Cir. 2020), cited by the Greenbergs, states "RICO conspiracy can be found through the conduct of the alleged participants or from circumstantial evidence of a scheme."

The Greenbergs argue that the Complaint inadequately alleges an underlying enterprise, and that it inadequately alleges that the Greenbergs agreed to join in a conspiracy to violate RICO. Neither claim survives analysis. The Greenbergs assert:

> Thus, Plaintiff must "plausibly allege that the participants shared the purpose of . . . [exonerating Joel] through a particular criminal course of conduct"— not an innocent alternative. … That is where he fails. Plaintiff has not alleged sufficient "concrete facts"—only "sweeping, general, and conclusory" allegations—to rebut possible innocent and "obvious alternative" purposes.

Motion at 17. As shown above, the Complaint alleges in "concrete" detail that the Greenbergs joined a criminal conspiracy, did so with the intent of committing crimes, and in fact committed crimes.[24] "Innocent" explanations belong in testimony given by the Greenbergs to a jury, they need not be negated in the Complaint.[25] In

---

conduct and not on any allegation of actual agreement." 550 U.S. at 564. Here, an agreement is repeatedly alleged.

[24] As for the suggestion that Plaintiff "offers only conclusory allegations" about the Greenbergs' agreement to the conspiracy, the litany of allegations cited includes only a single paragraph, ¶ 214, from The RICO Conspiracy section of the pleading. Motion at 9.

[25] The Greenbergs claim Plaintiff is required to plead facts sufficient "to allow this Court to **rule out** those innocent explanations." Motion at 18 (emphasis added). The Greenbergs claim Plaintiff to anticipate any possible "innocent explanations" for the allegations, and then preemptively rebut them in the complaint. This is, of course, inconsistent with the pleading standards. The only authority provided by the Greenbergs for this assertion is *Tan v. Quick Box, LLC*, No. 3:20-CV-01082, 2020 WL 7226440, at *23 (S.D. Cal. Dec. 8, 2020), (miscited by the Greenbergs as "T**am**,") but this relies in turn upon *Eclectic Properties v. Marcus & Millichap*, 751 F.3d 990, 999 (9th Cir. 2014), which is not discussed by the Greenbergs. This is not surprising: In *Eclectic,* the alleged fraud was that properties were sold to the plaintiffs at three times their value, but the Court held that real estate prices fluctuated, particularly during the recession during the relevant time. *Id.* at 999. Further, the Court noted that the complaint asserted defendants had purchased the properties from independent parties for twice the alleged value, and had spent the remaining third on

*Singh v. NYCTL,* 14-2558, 2016 WL 3962009 (S.D.N.Y. 2016), the plaintiff alleged that the defendant "should have known" rather than did know. Similarly, in *Parm v. National Bank*, 242 F.Supp.3d 1321 (N.D. Ga. 2017), "Plaintiff's allegations … essentially attempt to recast a contractual relationship as a RICO enterprise."

<u>The Greenbergs' Involvement in the Enterprise</u>

The Greenbergs claim that instead of showing that the Greenbergs agreed to the overall objective of the conspiracy, he offers only "conclusory claims" that "the Greenbergs provided money to Joel and Abby Greenberg with the knowledge and desire that it would be used further" the scheme. Motion at 19. To the contrary, the Complaint alleges that the Greenbergs agreed to participate in Joel's felonious scheme. ¶¶ 93, 94, 102, 126, 127, 214, 294, 306. Many of the supposedly "Conclusory Allegations," in the Greenbergs "Appendix" are not conclusory at all. E.g. ¶ 318 (alleging that the Greenbergs purchased a home for Abby Greenberg).[26] Other allegations are sourced from reliable sources. E.g. ¶ 331 (alleging Andrew Greenberg's role in covering up the bitcoin scheme, as alleged in the indictment, see

---

improvements, thus removing any gain to defendants. *Id*. at 999. Lastly, the "alternative explanation," that the increased value was due to the existence of long-term leases enhancing the property value, also appeared in the complaint. *Id*. at 998. Nowhere does *Eclectic* indicate that the plaintiff was obligated to negate any innocent explanation. The court merely noted that numerous innocent explanations appeared on the face of the complaint. *Id*. Nor does *Cisneros v. Petland*, 972 F.3d 1204, 1211 (11th Cir. 2020), which the Greenbergs imply supports this proposition, Motion at 17, contain the word "innocent" at all. There, the participants were merely alleged to be following a franchisor's model for operating their franchises at a profit. *Id*. at 1212.

[26] In fact, discovery confirms the Greenbergs purchased a home for Abby Greenberg in late 2020.

¶ 333 citing Third Superseding Indictment Doc. 90, Page 14).[27]

Any notion of an innocent explanation is rebutted by facts showing the Greenbergs' knowledge of an active involvement in the scheme. For example, the Complaint shows that the Greenbergs received bills for the work performed by the attorneys, thus showing their knowledge of Joel and the attorneys' activity. ¶ 93. Further, the Complaint shows that Greenberg openly discussed his scheme with anybody who would listen, including his parents. ¶¶ 204-232 (Section titled "Greenberg's Continued Attempts to Frame Others Were Well Known to Members of the Greenberg Enterprise and Even the General Public, and Greenberg Discussed this Scheme Openly and He was Caught Framing Others During this Time.") In fact, Dorworth has learned in discovery that the Greenbergs messaged Greenberg regarding legal strategy and even attended meetings and conference calls with the different lawyers who represented Greenberg. Although the Greenbergs incredibly claim that there are "no non-conclusory allegations" that Defendants knew of A.B.'s existence, they of course knew of Joel's indictment for misconduct with her. ¶ 118. The Greenbergs' imply that some of their actions had innocent explanations, for example, their provision of aid to Abby Greenberg, but they fail to account for that fact that this aid vastly increased just after Joel was charged, and exceeded any reasonable or necessary aid to support their grandchildren. ¶¶ 319-320. Of course,

---

[27] This fact has also been confirmed in discovery.

there is no innocent explanation for funding payoffs to A.B. ¶ 93, supra.

## **DORWORTH SHOWS AIDING AND ABETTING DEFAMATION**

Count VI of the Complaint alleges that the Greenbergs aided and abetted the

defamation repeatedly committed upon Dorworth. The Greenbergs argue that:

> Plaintiff's aiding and abetting claim … fails because … Plaintiff has
> not (and cannot) allege that the Greenbergs were culpable through
> either knowledge of Joel's alleged defamatory actions or through
> providing substantial assistance to advance those actions.

Motion at 21-22. The Greenbergs are once again referring to their Strawman

Complaint and not to the real Complaint, for the real Complaint alleges:

> 126. Andrew and Sue Greenberg, as well as AWG and Greenberg Dental,
> agreed to provide funding to compensate Abby Greenberg and A.B. for
> providing false reports and testimony to the authorities and the federal grand
> jury.

> 127. Andrew and Sue Greenberg, as well as AWG and Greenberg Dental,
> also agreed to provide funding for expenses in connection with providing
> false reports and testimony to the authorities and the grand jury, including
> legal, investigative, and other expenses.

> 294. Andrew and Sue Greenberg, and their companies Greenberg Dental and
> AWG agreed to provide, and Abby Greenberg and A.B. agreed to accept,
> compensation in exchange for participating in the process crimes intended to
> falsely implicate Dorworth and others.

> 306. Andrew and Sue Greenberg coordinated the material support of the
> Greenberg Enterprise.

> 459. Defendants Andrew Greenberg, Sue Greenberg, Abby Greenberg,
> Greenberg Dental, and AWG, Inc., each possessed knowledge of Joel
> Greenberg, Abby Greenberg, and A.B.'s defamation.

> 460. Defendants [referring to the defendants mentioned in ¶ 459] each
> provided substantial assistance to Joel Greenberg and A.B. by providing
> financial resources to enable the defamatory actions, among other actions."

18

> 461. Defendants [referring to the defendants mentioned in ¶ 459] provided these resources with the knowledge and intent that they would be used to harm Dorworth, among other things.

Contrary to the Greenbergs' assertion, the Complaint alleges both that they were "culpable through … knowledge of Joel's alleged defamatory actions," and that they "provid[ed] substantial assistance to advance those actions."

## **DORWORTH SHOWS A CIVIL CONSPIRACY**

Count VI of the Complaint alleges a civil conspiracy to illegally defame Dorworth. At page 24 of the Motion, the Greenbergs argue:

> Plaintiff fails to allege facts supporting his claim that Defendants agreed to defame him. Plaintiff does not allege any meeting or gathering of the Defendants where they discussed their shared objective to minimize Joel's liability and defame Plaintiff. In fact, Plaintiff does not identify any communication between the members of the alleged conspiracy for any purpose at all. Likewise, there are no non-conclusory allegations that the Greenbergs, the Greenberg Dental entities, or Abby even knew of A.B.'s existence. … In short, all of the "conspirators" conduct is equally suggestive of independent, parallel conduct without any collusion—and, indeed, innocent conduct….

This claim that Dorworth needs to allege a "meeting or gathering" and "identify [a] communication" runs afoul of the *Twombly* rule quoted above that a complaint "does not need detailed factual allegations." 550 U.S. at 556. As discussed previously, the Complaint alleges that sometime during a 32 day period in June–July, 2020, the Greenbergs agreed to participate in Joel's felonious scheme. ¶¶ 93, 94, 102, 126, 127, 214, 294, 306. The Complaint also repeatedly alleges that the Greenbergs were

19

aware of A.B.'s existence. ¶¶ 93, 126, 294, 459, 460. If the Greenbergs want further details, they can obtain them in discovery. The further claim that the Greenbergs' conduct is "equally suggestive of independent, parallel conduct without any collusion—and, indeed, innocent conduct" has been repeatedly refuted above.[28] Only in the Strawman Complaint can one infer "innocent conduct."

## **CONCLUSION**

The Court should deny the Motion. Should the Court find the Complaint deficient in any respect, Dorworth requests leave to replead, to correct any remaining shortcoming.[29] Finally, if the Court dismisses the Federal RICO claims without leave to replead, it should decline supplemental jurisdiction over the balance of the case,[30] including the Florida RICO, and remand the state law claims to the 18th Circuit, from which they were removed, for further proceedings there.

Filed: September 26, 2023.                    Respectfully Submitted,

                                              /s/ Michael Paul Beltran
                                              Michael P Beltran

---

[28] To find "parallel conduct," the Greenbergs would have the Court believe that Joel Greenberg, Abby Greenberg, and A.B. each decided independently to falsely implicate Dorworth without any coordination between them or inducement from the Greenbergs. Presumably, the Court is to infer that Andrew Greenberg's provision of $200,000 to cover up the bitcoin scheme was innocent (without any explanation), the Greenbergs paid the lawyer bills without reviewing them or inquiring regarding the progress of Joel's case, and Abby Greenberg and A.B. provided false information to prosecutors about Dorworth for no apparent reason.

[29] For example, in *ADA v. Cigna*, 605 F.3d 1283 (11th Cir. 2010), relied upon extensively by the Greenbergs, the plaintiff was given two opportunities to replead after seriatim court orders dismissing the complaint for failure to state a claim. *Id.* at 1287-88.

[30] *See e.g. Carlsbad Technology v. HIF Bio*, 129 S.Ct. 1862, 1869 (2009) (dismissing removed RICO claim and remanding state law claims to state court).

Fla. Bar No. 0093184
Beltran Litigation, P.A.
4920 West Cypress St.
Suite 104 PMB 5089
Tampa, FL 33607
813-870-3073 (o)
mike@beltranlitigation.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I will file a copy of the foregoing on the Court's electronic system, which will send a copy to all counsel of record.

/s/Michael Paul Beltran
Michael P Beltran

21