Appendix

Select Allegations Showing Involvement of Andrew and Sue Greenberg and AWG

(emphases supplied)

102. According to Greenberg, **Andrew and Sue Greenberg** and Greenberg Dental **and AWG** also agreed with Joel Greenberg and Abby Greenberg to pay any amounts necessary to obtain the pardon or firing of the prosecutor that Joel Greenberg was attempting to extort Dorworth and Gaetz to seek on his behalf.

103. According to Greenberg, **Andrew and Sue Greenberg and their companies** wanted to mitigate Joel Greenberg's liability and the scope of the investigation both to assist Greenberg's scheme and also in order to mitigate their own liability and prevent themselves from being drawn into the investigation.

126. **Andrew and Sue Greenberg, as well as AWG** and Greenberg Dental, agreed to provide funding to compensate Abby Greenberg and A.B. for **providing false reports and testimony** to the authorities and the federal grand jury.

127. **Andrew and Sue Greenberg, as well as AWG** and Greenberg Dental, also agreed to provide funding for expenses in connection with providing **false reports and testimony** to the authorities and the grand jury, including legal, investigative, and other expenses.

214. At this point [in 2021, when investigators found a thumb drive in Greenberg's car with child pornography], **Andrew and Sue Greenberg** still agreed to assist Greenberg financially and otherwise in **implicating others, including Dorworth**, Gaetz, and Beshears, in illegal activity even though they knew that Greenberg was involved in falsely implicating others, including through the illegal acts alleged herein.

294. **Andrew and Sue Greenberg**, and their companies Greenberg Dental and **AWG** agreed to provide, and Abby Greenberg and A.B. agreed to accept, compensation in exchange for participating in the process crimes intended to **falsely implicate Dorworth** and others.

298. According to Greenberg, **Greenberg's parents** stood ready and agreed to pay any amount for a pardon or firing of the prosecutor, whether or not such pardon or firing of the prosecutor would be obtained legally or through bribery.

306. **Andrew and Sue Greenberg** coordinated the material support of the Greenberg Enterprise.

307. As described more fully below, **Andrew Greenberg** funded coverups of Greenberg's misconduct.

318. **Greenberg's parents** purchased a home for Abby despite no obligation to do so in exchange for Abby agreeing to implicate others.

319. As stated by Abby Greenberg to Rebekah Dorworth, the **Greenbergs'** support vastly increased after Joel Greenberg was charged, and the support provided by **Andrew and Sue Greenberg** vastly exceeded any support reasonably necessary for the grandchildren or their son's wife.

320. This increased support was to reward and encourage Abby Greenberg's cooperation with the conspiracy.

332. As [Joel] Greenberg had stated to Dorworth in Summer 2020, **Andrew Greenberg** himself had criminal exposure because of his financial involvement in the illegal scheme involving the bitcoin investments and the SCTC.

334. Abby Greenberg had previously informed Rebekah Dorworth that the family member who provided Greenberg with the funds to cover the cryptocurrency theft was Defendant **Andrew Greenberg**.

335. Defendant **Andrew Greenberg** provided these funds with the specific intent that they would be used by Joel Greenberg to cover up the theft of cryptocurrency and thereby evade detection by the Secret Service. Doc. 90, Page 14.

336. **Andrew Greenberg** certainly knew the use of the funds was to aid the bitcoin scheme by helping evade detection and continue misconduct at the SCTC.

337. According to the Third Superseding Indictment, these funds were used as "a further part of the scheme and artifice to defraud." Doc. 90, Page 14.

338. These funds were submitted to the "[SCTC] with a cashier's check and a memorandum that falsely represented that "the $200,000 he had diverted had been used 'to provide liquidity for stablecoin project,' that the '[p]roject has been delayed until further notice,' and that the funds were returned." Doc. 90, Page 14.

388. Despite all of this, **the Greenbergs** provided extravagant aid to Greenberg, before, during, and most importantly, after his public role, knowing that this aid would be used to commit crimes, including those described herein.

389. The extent and impropriety of the Greenbergs' aid to Joel Greenberg is shown by their efforts to deny or minimize the aid.

390. For example, at sentencing, Greenberg's attorney claimed that "[a]s a result of his conduct, he lost his marriage. He lost his children. He was cut out of his parents' will completely. He's lost all financial support. And you'll see today his family is not here." Doc. 180, December 1, 2022 Sentencing Trans. at 14:1-4.

391. However, a seven-figure payment had been made on Greenberg's behalf to Seminole County for Restitution just a week prior. See Settlement Agreement and Checks, attached hereto as Exhibit 9.

393. The day before the $1.25 million payment, **Greenberg's parents** and their companies had negotiated to obtain release for Andrew Greenberg, Susan Greenberg, AWG, Inc. and other affiliated entities, presumably because the Greenbergs thought they had legal liability in connection with the misconduct. Id.

396. Two weeks after sentencing, another six-figure payment was made on Greenberg's behalf to Seminole County. Exhibit 9, id.

459. Defendants **Andrew Greenberg, Sue Greenberg**, Abby Greenberg, Greenberg Dental, **and AWG**, Inc., each possessed knowledge of Joel Greenberg, Abby Greenberg, and A.B.'s defamation.

460. **Defendants [referring to the defendants mentioned in ¶ 459]** each provided substantial assistance to Joel Greenberg and A.B. by providing financial resources to enable the defamatory actions, among other actions."

461. Defendants **[referring to the defendants mentioned in ¶ 459]** provided these resources with the knowledge and intent that they would be **used to harm Dorworth**, among other things.