UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| CHRISTOPHER E. DORWORTH,<br><br>*Plaintiff*,<br><br>v.<br><br>JOEL MICAH GREENBERG, ANDREW W. GREENBERG, SUSAN GREENBERG, ABBY GREENBERG, AWG, INC., GREENBERG DENTAL ASSOCIATES, LLC, GREENBERG DENTAL & ORTHODONTICS, P.A., GREENBERG DENTAL SPECIALTY GROUP, LLC, and A.B.,<br><br>*Defendants*. | Case No.: 6:23-cv-871-CEM-DCI |

**DEFENDANTS ANDREW GREENBERG,
SUSAN GREENBERG, AND AWG. INC'S RESPONSE IN OPPOSITION TO
PLAINTIFF'S PROVISIONAL MOTION FOR LEAVE TO AMEND**

## PRELIMINARY STATEMENT

Contravening public policies that protect parents from liability for the crimes of their adult children, encourage criminal defendants to cooperate with authorities, and recognize the frequent need for and reality of family members paying attorney's fees and restitution for family members accused of crimes, Plaintiff has twice made deficient attempts to state a claim against the Greenbergs[1] for such protected behavior. Now, Plaintiff requests "provisional" leave to amend yet again. Under either Rule 16 or Rule 15, Plaintiff's motion is due to be denied.

*First*, Rule 16 governs Plaintiff's motion because he asks for leave to make some (unspecified) amendment after the deadline to amend, in the (apparently anticipated) event the Court finds his pleading insufficient. In this way, Plaintiff asks through a different channel for the same relief that this Court has twice denied. Moreover, Plaintiff cannot show good cause under Rule 16 because that Rule requires the movant to show why the information they wish to add was unavailable before the deadline to amend and despite their diligence. But a diligent party knows the factual basis for their claim well ahead of the amendment deadline. Plaintiff has not shown good cause.

*Second*, even under Rule 15's more forgiving standard, Plaintiff is not entitled to leave to amend. What Plaintiff proposes to "add" by amendment is less than he has already pleaded. This is so because, after discovery, Plaintiff cannot allege in good faith that the Greenbergs have done anything more than pay their son's attorney's fees

---

[1] Throughout, this response refers to Defendants Andrew Greenberg, Susan Greenberg, and their closely held entity AWG, Inc. as "the Greenbergs."

2

and restitution and provide support to their grandchildren. These acts are not only innocent, but they are also *encouraged* at every turn by our legal system. Thus, the suggestion that such acts give rise to an inference of wrongdoing is not only incorrect, but patently so. Plaintiff's claims against the Greenbergs lack a good faith basis and are incurably flawed. So this Court should not allow this case to drag on longer than necessary. Plaintiff's "provisional" motion should be denied.

## BACKGROUND

After the Greenbergs—and other Defendants—moved to dismiss his original Complaint, *see* Doc. 45, Plaintiff filed an Amended Complaint, Doc. 62. Plaintiff thereby dropped, tacitly conceding the insufficiency of, allegations that the Greenbergs were directly involved in Joel Greenberg's crimes. *See, e.g.*, Doc. 1-1 ¶¶ 770–80. But Plaintiff shifted tack to accuse the Greenbergs of conspiracy—specifically federal and Florida RICO conspiracy (Counts II and IV), aiding and abetting defamation (Count VI), and civil conspiracy (Count VII).[2] According to Plaintiff—largely through conclusory and "information and belief" allegations—the Greenbergs financed Joel's attempts to evade liability for his many crimes by framing Plaintiff for child sex trafficking, obstruction of justice, and participating in "ghost candidate" schemes. *See, e.g.*, Doc. 62 ¶¶ 8, 388. Indeed, Plaintiff's Amended Complaint weaves a fantastical tale in which Joel, A.B. (a then-minor who Joel sex trafficked), Abby Greenberg (Joel's then wife), Joel's parents, and his parents' business entities conspired together over a

---

[2] Though the two claims are distinct, "liability for civil conspiracy is in substance the same thing as aiding and abetting liability." *K & S P'ship v. Cont'l Bank, N.A.*, 952 F.2d 971, 980 (8th Cir. 1991).

roughly three-year period to implicate Plaintiff.

The Greenbergs then filed a second motion to dismiss detailing that (1) Plaintiff had failed to allege *any* nonconclusory allegations of wrongdoing against the Greenbergs, Doc. 77 at 10–16; (2) Plaintiff had failed to allege a RICO enterprise, *id.* at 16–18; (3) Plaintiff had failed to allege that the Greenbergs agreed to enter a RICO conspiracy, *id.* at 19–21; (4) Plaintiff had failed to allege that the Greenbergs knowingly or substantially assisted—as to aid and abet—anyone in defaming Plaintiff, *id.* at 21–23; and (5) Plaintiff had failed to allege Florida-law civil conspiracy, *id.* at 23–25.

As the Greenbergs highlighted, the most apparent flaw in Plaintiff's Amended Complaint was its wholesale reliance on conclusory allegations. Plaintiff alleged, for example, that "[w]hen referring to acts performed by Joel Greenberg, Andrew Greenberg, or Sue Greenberg, any funding required for those acts came from AWG and/or Greenberg Dental with the knowledge of what the funding would be used for," Doc. 62 ¶ 25, and "[f]urther, upon information and belief, Andrew and Sue Greenberg agreed, at Joel Greenberg's behest, to provide money and other valuable consideration to Abby and A.B. in exchange for their cooperation [to defame Dorworth], and Abby Greenberg and A.B. agreed to participate, at Joel Greenberg's behest, in exchange for that consideration," *id.* ¶ 154; *see also* Doc. 77-1 (compiling conclusory allegations).

Worse still, the sum of Plaintiff's conclusory allegations is a theory that, because the Greenbergs paid Joel's attorney's fees, they must have known of every statement Joel made to the authorities *and* must have known whether each statement was true or false. *See* Doc. 77 at 8. Thus, the Greenbergs argued, Plaintiff's Amended Complaint

4

is subject to dismissal.

Plaintiff responded by asking for more time to respond, Doc. 95, and he only provisionally responded when this Court did not rule on that motion before Plaintiff's response deadline. Doc. 100. In responding to the Greenbergs motion to dismiss, Plaintiff tried to project confidence. But that confidence is belied by Plaintiff's wholesale reliance on material outside the four corners of his Amended Complaint. For example, Plaintiff argues that "the Greenbergs have confirmed in discovery that they paid over $2.2 million in connection with Joel's criminal charges, including attorney fees," Doc. 100 at 12, that "discovery confirms that the Greenbergs purchased a home for Abby Greenberg in late 2020," *id.* at 16 n.26, and that "Dorworth has learned in discovery that the Greenbergs messaged [Joel] Greenberg regarding legal strategy and even attended meetings and conference calls with the different lawyers who represented [Joel]," *id.* at 17; *see also id.* at 17 n.27.[3]

Around the same time, Plaintiff also twice moved to extend the deadline to amend his pleadings. Doc. 83. This Court granted the unopposed portion of Plaintiff's first motion, giving Plaintiff until September 30, 2023 to amend, but denied that motion to the extent it asked the Court to stretch the deadline beyond that date. Doc. 84. Then, Plaintiff again moved to extend the pleading deadline. Doc. 86. This Court found that Plaintiff's motion had not shown good cause to amend the deadline and denied the motion. Doc. 105.

---

[3] As discussed below, none of these facts can give rise to liability against the Greenbergs.

And if those motions left any doubt that Plaintiff well knows that his Amended Complaint fails to state a claim, he now moves for "an order allowing him to replead within 30 days of any order on the pending Motions to Dismiss, in the event that the Court deems that Plaintiff has not stated a claim as to any count or party." Doc. 104 at 1. Respectfully, Plaintiff has had more than enough time to state a claim against the Greenbergs. This Court should therefore deny his request for leave to amend.

## ARGUMENT

I. **Plaintiff improperly attempts to end-run around this Court's prior orders and Rule 16.**

On September 5, 2023, this Court granted in part and denied in part Plaintiff's motion to extend the deadline to amend the pleadings, giving Plaintiff until September 30, 2023 to amend, rather than the November 3, 2023 deadline Plaintiff sought. Doc. 84. Then, Plaintiff once again sought to move the pleading deadline to November 3, 2023, asking the Court to hold open Plaintiff's ability to amend while Plaintiff received discovery. Doc. 86. But this Court denied that second motion, explaining that Plaintiff had not shown good cause because, among other things, "Plaintiff's unsupported speculation regarding future events does not satisfy the good cause standard." Doc. 105 at 3.

Now, Plaintiff asks for the same thing by different means: filing a "provisional" motion for leave to amend on the day his deadline to amend ran. Plaintiff asks this Court to allow him to amend his pleadings "in the event that the Court deems that Plaintiff has not stated a claim as to any court or party." Doc. 104 at 1. In other words,

despite failing to show good cause, and while remaining agnostic about his need for amendment, Plaintiff asks again for the very relief this Court just denied: holding open his ability to amend past the amendment deadline. This Court should reject this undercover motion for reconsideration.

Rule 16, which Plaintiff again fails to address, governs his motion because Plaintiff seeks leave to amend his complaint *after* the deadline to do so has run. *Insight Sec., Inc. v. Deutsche Bank Tr. Co. Ams.*, No. 21-12817, 2022 WL 2313980, at *6 (11th Cir. June 28, 2022) ("[T]he standard to amend a scheduling order is for good cause regardless of when a party seeks the amendment."). Rule 16's good cause standard requires Plaintiff to show why the information supporting his amendment was unavailable before the deadline ran. *See Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998).

Here, Plaintiff's expressed cause is even more inadequate than in his original motion. Before, Plaintiff asked the Court to hold open his deadline to amend while he reviewed discovery for some *possible* basis for amendment. But now, Plaintiff essentially asks the Court to hold open amendment in the event that he fails to state a claim against any party. Of course, if a party should know anything well ahead of the deadline to amend, it is the factual basis for their claim. *See* Fed. R. Civ. P. 11(b). In sum, then, Plaintiff has not come even remotely close to articulating good cause as to why he should be allowed to amend his pleadings after the amendment deadline. For this reason, this Court should deny his provisional motion for leave to amend.

## II. Even if Rule 16 did not apply, Plaintiff is not entitled to leave to amend under Rule 15.

### A. The Precondition and Standard for Amendment.

As a precondition, "[a] plaintiff who moves for leave to amend a complaint must either attach a copy of the proposed amendment to the motion or set forth the substance thereof." *United States ex rel. 84Partners, LLC v. Nuflo, Inc.*, 79 F.4th 1353, 1363 (11th Cir. 2023) (quotations omitted). Here, Plaintiff sets out—in a short bullet pointed list—only the most general contours of his proposed amendment, repeatedly referencing "Defendants" as an undifferentiable group. And the very "provisional" nature of Plaintiff's motion reflects no meaningful effort to state the substance of a plausible claim, let alone specific to the Greenbergs. For this reason alone, this Court should deny Plaintiff's motion.

Further, had Plaintiff bothered once again to retread his claims against the Greenbergs, premised on parental support, Rule 15 requires this Court to ask (1) whether Plaintiff has engaged in "undue delay, bad faith or dilatory motive," (2) whether Plaintiff has "repeated[ly] fail[ed] to cure deficiencies by amendments previously allowed," (3) whether amendment would "undu[ly] prejudice . . . the opposing party," and (4) whether amendment is futile. *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1340 (11th Cir. 2014) (quoting *Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv. Inc.*, 556 F.3d 1232, 1241 (11th Cir. 2009)). Plaintiff's motion for leave to amend implicates each factor.

8

B. **Amendment is Futile.**

The Greenbergs begin with the factor most relevant here: futility of amendment. Amendment is futile because the theory underpinning Plaintiff's claims against the Greenbergs runs contrary not only to the law governing conspiracy,[4] but to some of the most basic principles underpinning our criminal justice system; no permutation of allegations can sustain it.

To see why, it is useful to start with the allegations Plaintiff wants to add by amendment. Doc. 104 ¶ 7. First, Plaintiff says that he would add allegations showing that "Defendants" supplied defamatory information to news media, that "Defendants" used agents to defame Plaintiff, and that "Greenberg's statements about the investigation and prosecution to other Defendants and to third parties" revealed "that there was no basis for implicating Dorworth or others." *Id.* ¶ 7a–c.

These allegations reflect a key and repeated deficiency in Plaintiff's claims against the Greenbergs—the Greenbergs are not guilty of everything Joel might do simply by parental support. In his motion, note that Plaintiff meshes all Defendants together, as he has in his previous two complaints: he does not claim that he can in good faith allege that *the Greenbergs* interacted with the media regarding Plaintiff, only that some unnamed group of "Defendants" did. *Id.* ¶7a. So too, *Joel* may have made statements to third parties indicating that he had no basis to implicate Plaintiff. *Id.* ¶7c.

---

[4] Though he does not say, again rendering his motion insufficient, Plaintiff would presumably reallege the same claims made in his most recent complaint: federal and Florida RICO conspiracy, aiding and abetting defamation, and civil conspiracy.

9

But again, that knowledge is not imputed to the Greenbergs simply because they are Joel's parents. Nor has Plaintiff even tried to allege circumstances from which one could plausibly infer such knowledge on the Greenbergs' part—much less knowledge and support of any statements implicating Dorworth, let alone in a non-privileged setting.

More significant is what Plaintiff *does not* claim he can allege. Plaintiff does not suggest that the Greenbergs communicated with A.B., conspired with A.B., paid A.B.'s attorney's fees, paid A.B. directly, or offered to do any combination of the above. Nor does Plaintiff allege—nor could he allege—that he can plead facts showing that the Greenbergs agreed to enter any conspiracy, or that they even knew that Joel's allegations against Plaintiff were false. Having received discovery and sworn interrogatory responses from the Greenbergs and others, Plaintiff cannot make such allegations in good faith.

All Plaintiff can allege is that the Greenbergs paid for Joel's lawyers and restitution and gave financial support to Abby Greenberg, the now sole-supporting parent of their two grandchildren—*that's it*. To allow a claim to move forward on these facts alone defies many of the public policies underlying our criminal justice system and would render tortuous several of the activities directly contemplated by the bar rules, federal criminal rules, and basic tort law.

Yes, the Greenbergs paid attorney's fees on Joel's behalf. But that is not unusual. *See* Comments to R. Reg. Fla. Bar. 4-1.8(f). ("Lawyers are frequently asked to represent a client under circumstances in which a third person will compensate the

10

lawyer, in whole or in part. *The third person might be a relative or friend . . . .*" (emphasis added)). Yet Plaintiff takes this mine-run activity—expressly contemplated by the Florida Bar Rules—and offers it as prima facie proof of wrongdoing.

Likewise, criminal defendants offer information to the authorities *all the time*. Indeed, many legal doctrines recognize and encourage such activity. The federal sentencing guidelines, for example, allow a sentencing court to depart from the sentencing guidelines when a defendant has provided truthful, reliable testimony or information to the government. U.S. Sent'g Guidelines Manual § 5K1.1(a). But the law goes further, offering qualified privileges to those who provide information in support of a criminal prosecution, even when that information turns out to be false. *See Fridovich v. Fridovich*, 598 So. 2d 65, 68 (Fla. 1992) ("The fundamental public policy underlying the judicial proceedings privilege as it applies to preliminary investigations is the need to encourage free and unhindered communication to assist the authorities in detecting and prosecuting perpetrators of criminal activity."); *cf.* Restatement (Second) of Torts § 587 (1977) ("A . . . defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding."). So too, witnesses who testify to a grand jury are entitled to absolute immunity from civil suit—including for conspiracy. *Rehberg v. Paulk*, 566 U.S. 356, 360 (2012).

Did the Greenbergs encourage their son to provide truthful testimony to state and federal investigators? Of course they did. And the law encourages the Greenbergs' behavior. Plaintiff has pleaded no facts to suggest that the Greenbergs encouraged Joel to lie to investigators and he does not propose to do so now. Thus, the Greenbergs are not subject to civil or criminal liability for paying Joel's attorney's fees or for encouraging Joel to cooperate with authorities.

So too, payment of restitution on behalf of a third party is routine and encouraged. This Court's own website provides instructions on how to pay restitution on another's behalf. *See* United States Probation, Middle District of Florida, *Payment Instructions* https://www.flmp.uscourts.gov/payment-instructions (last visited Oct. 10, 2023) ("Pay.gov can also be used to make payments on behalf of another person. To do so, you will need the debtor's case number. Select 'Third Party Payer' when completing the online form and enter your own contact information."). The idea that such payments should give rise to an inference of wrongdoing is absurd.

Finally, the Greenbergs cannot let pass Plaintiff's repeated insistence that their support to Abby Greenberg "exceeded any reasonable or necessary aid to support their grandchildren." Doc. 100 at 17. If there is a single case, from anywhere in this country, that establishes a threshold of "reasonable" financial support to grandchildren, beyond which an inference of wrongdoing arises, the Greenbergs would like to see it. The Greenbergs have worked hard for their money, and if they wish to spend every red cent of it on their grandchildren, whether it is "necessary" or not, they have a right to do so without legal consequence.

Plaintiff's theory of liability against *the Greenbergs* is at its core absurd, and it runs contrary to some of the most basic assumptions underlying our justice system. No matter what permutation of allegations Plaintiff pieces together, the Greenbergs paying Joel's attorney's fees, restitution, and financially supporting their ex-daughter-in-law and grandchildren cannot, as a matter of law, state a claim for conspiracy of any form. Amendment is futile.

### C. Plaintiff has acted in bad faith and with a dilatory motive.

Throughout this case's pendency, Plaintiff has steadfastly avoided responding to the Greenbergs arguments on their merits. Rather, Plaintiff has amended, sought extension after extension, and even after finally responding to the Greenbergs motion to dismiss (and only then because this Court had not yet ruled on another motion for extension), he now seeks "provisional" leave to amend yet again.

At the same time, Plaintiff's pending discovery requests are grossly overbroad and designed to inflict maximum pain on the Greenbergs. Though his claims concern actions taken in 2020 and later, Plaintiff's initial requests to the Greenbergs cast a wide temporal net (over seven and a half years) and include any transactions that in any way relate to Joel, his former wife Abby (specifically including their divorce), any (of over 1,500) paragraphs in the complaints, all correspondence regarding the criminal charges brought against Joel, all correspondence regarding Joel's campaign for office, all financial records relating to cryptocurrency, over seven and half years of cell phone records, all state and federal tax returns, all financial records relating to vehicles driven

by Joel and Abby, three separate real properties, and all financial records relating to the Greenbergs' trusts. *See, e.g.*, **Exhibit 1**, Request for Production to Sue Greenberg.

Plaintiff's second set of document requests, **Exhibit 2**, is even worse. Plaintiff requests "[c]ommunications to and from those persons identified in your initial disclosures as likely to have discoverable information" and "[d]ocuments, other than communications . . . , that refer or relate to persons . . . identified in your initial discovery disclosures." **Ex**. **2**, at 2. The request imposes no temporal limit.

The premise of this overbroad inquest was merely that the Greenbergs, as could well be expected of defendants denying a conspiracy, identified all of the alleged co-conspirator defendants, including Abby Greenberg, Joel Greenberg, Susan Greenberg, Andrew Greenberg, and four entities related to Andrew Greenberg's employment as a dentist, as likely to have discoverable information—to independently contradict Plaintiff's claims. In effect then, Plaintiff demands access to nearly every document in the Greenbergs' possession—spanning every facet of their lives. Every document ever, for example, related to Abby—wedding plans, children's birthdays, holiday plans—or related to Joel—his birth certificate, 3rd grade report card, anything. And worst of all, anything as to Andrew and Susan, related to their spouse of decades.

Finally, Plaintiff recently issued a third expansive request for discovery to the Greenbergs. *See* **Exhibit 3**, Request for Production, Set 3 to Andrew and Sue Greenberg. These requests again cover a seven-and-a-half-year period and request, for example, all information related to Susan and Andrew's "annual compensation,"

donations to political campaigns, any communications regarding their son's criminal charges, and documents showing the Greenbergs' relationship with a host of persons and companies. Responding to these requests has already cost the Greenbergs a vast amount of time and resources.

And now, Plaintiff not only asks for leave to amend if his complaint is dismissed, but he also asks for another 30 days to do so. Doc. 104 at 1. Plaintiff's objective is clear, drag this case out as long as possible, avoid the merits at all costs, and inflict maximum expense on the Greenbergs. This Court should end Plaintiff's abuse of process.

### D. Plaintiff has repeatedly failed to cure pleading deficiencies.

Across two attempts, Plaintiff has failed to state a claim. In his first complaint, Plaintiff simply accused the Greenbergs of sundry RICO violations. Then, in his amended complaint, Plaintiff attempted to shore up those allegations by alleging—in a completely conclusory fashion—that every act the Greenbergs allegedly took was taken with the intent to violate the law. Both complaints fall woefully short of the applicable pleading standard. *See* Doc. 45; Doc. 77. Plaintiff has had plenty of chances to state a claim, he is not entitled to another.

Anticipating this argument, Plaintiff makes much of the fact that in *American Dental Association v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010), which the Greenbergs rely on for an entirely different point, "the plaintiff was given two opportunities to replead." Doc. 104 ¶ 9. But *Cigna* sets out no hard and fast rule. Rather, entitlement to leave to amend turns on whether Plaintiff has satisfied Rule 15. Indeed, just as Plaintiff

15

can point to cases where a plaintiff received three chances to amend, the Greenbergs can point to cases where the plaintiff only received two. *See, e.g.*, *Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (finding that "the district court properly denied [the plaintiff's] motion to file a second amended complaint" because amendment was futile).

Plaintiff asks for a third bite at the apple. But Plaintiff is plainly incapable of remedying his complaints' flaws; indeed, it appears that any new complaint would actually offer less, *see* section II.B. *supra*. Plaintiff has repeatedly failed to state a claim, cannot state a claim, and should not receive additional chances to do so.

### E. Further amendment would prejudice the Greenbergs.

Finally, amendment would unduly prejudice the Greenbergs. With nothing but conclusory allegations, Plaintiff has dragged the Greenbergs into lengthy and highly expensive litigation. The Greenbergs have already incurred substantial costs moving to dismiss two needlessly prolix and insufficient complaints. Now, Plaintiff would have them respond to a third, which, as explained in depth above, cannot remedy the flaws in his previous two complaints. Beyond the expense, Plaintiff's discovery requests broadly probe one of the most embarrassing and painful moments of the Greenbergs' lives. Having failed to state a claim, Plaintiff should not be permitted to carry on harrying the Greenbergs in the apparent hope of extracting some settlement. The Greenbergs, thus, would be unduly prejudiced by further amendment.

## CONCLUSION

For the above reasons, this Court should deny Plaintiff's provisional motion for leave to amend.

        Respectfully submitted,

        /s/ *Frederick S. Wermuth*
        Frederick S. Wermuth (Lead Counsel)
        Florida Bar No. 0184111
        Dustin Mauser-Claassen
        Florida Bar No. 0119289
        Quinn Ritter
        Florida Bar No. 1018135
        KING, BLACKWELL, ZEHNDER & WERMUTH, P.A.
        P.O. Box 1631
        Orlando, FL 32802-1631
        Telephone: (407) 422-2472
        Facsimile: (407) 648-0161
        fwermuth@kbzwlaw.com
        dmauser@kbzwlaw.com
        qritter@kbzwlaw.com

        *Attorneys for Defendants Andrew Greenberg, Susan Greenberg, and AWG, Inc.*

        /s/ *William E. Peters, Jr.*
        William E. Peters, Jr.
        Florida Bar No. 50230
        WICKER SMITH O'HARA MCCOY & FORD, P.A.
        515 E. Las Olas Boulevard
        SunTrust Center, Suite 1400
        Ft. Lauderdale, FL 33301
        Telephone: (954) 847-4800
        Facsimile: (954) 760-9353
        WPeters@wickersmith.com
        ftlcrtpleadings@wickersmith.com

        *Attorney for Defendants Andrew Greenberg and Susan Greenberg*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 16, 2023 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Frederick S. Wermuth*
Frederick S. Wermuth
Florida Bar No. 0184111
