UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHRISTOPHER E. DORWORTH,

*Plaintiff*,

v.

JOEL MICAH GREENBERG,
ANDREW W. GREENBERG,
SUSAN GREENBERG, ABBY
GREENBERG, AWG, INC.,
GREENBERG DENTAL
ASSOCIATES, LLC, GREENBERG
DENTAL & ORTHODONTICS, P.A.,
GREENBERG DENTAL
SPECIALTY GROUP, LLC, and A.B.,

*Defendants*.

Case No.: 6:23-cv-871-JA-DCI

**DEFENDANTS ANDREW GREENBERG, SUSAN GREENBERG,
AND AWG, INC.'S CORRECTED[1] MOTION TO STAY DISCOVERY**

---

[1] This corrected motion removes an erroneous reference to "Ex. 1" on page four in reference to Plaintiff's Interrogatories.

## PRELIMINARY STATEMENT

Last month, the Eleventh Circuit reiterated its long-stated rule that "facial challenges to the legal sufficiency of a claim should be resolved before discovery begins." *Dvoinik v. Rolff*, No. 23-14147, 2024 WL 2974475, at *3 (11th Cir. June 13, 2024) (cleaned up) (quoting *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997)). This motion seeks to implement that longstanding rule. This case was removed to this Court in May 2023. And in August 2023, after Plaintiff amended his initial complaint in the face of motions to dismiss, all Defendants moved to dismiss Plaintiff's Amended Complaint. Docs. 77, 79, 80, 81, 82. Those motions remain pending.

Since then, the parties have engaged in wide-reaching discovery given the vast scope of Plaintiff's RICO claims. Anticipating a ruling on Defendants' motions to dismiss, Andrew and Susan Greenberg (the "Greenbergs") did not move to stay discovery, recognizing such motions are disfavored early in a case schedule and that the filing of a motion to dismiss does not alone entitle a defendant to a stay. As this Court has recognized, however, the Eleventh Circuit's promise that motions to dismiss will be resolved before discovery is not meaningless; parties should not bear endless discovery costs while meritorious motions to dismiss await decision.

Since discovery began in June 2023, the Greenbergs have spent hundreds of thousands of dollars responding to invasive requests that have done nothing to further Plaintiff's baseless claims. And just recently, two events have underscored the good cause to stay discovery.

First, Plaintiff filed a state court action against the Greenbergs based on (and cutting and pasting from) his underlying allegations in this case, as reflected in Exhibit 1. The most likely inference from Plaintiff's claim-splitting tactics is that even Plaintiff anticipates this case will be dismissed without leave to amend. Indeed, Plaintiff's new filing also signals that his discovery in this case is directed, at least in part, to litigation not before this Court.

Second, disputes during the deposition of Defendant A.B. (about questions probing potential counterclaims) highlighted another problem—the pleadings are not closed. Even if this Court were to deny the pending motions to dismiss (despite clear grounds for dismissal), there will be answers, affirmative defenses, possibly amended complaints and motions to dismiss, and (almost certainly) counterclaims and new parties introduced through third-party claims. Such pleadings would inevitably require this Court to reset its case management deadlines; require witnesses to *again* sit for depositions; and require this Court to prolong these proceedings. At least until the pleadings are closed, until this Court has determined that Plaintiff has stated a legally cognizable claim whose contours are clear to the parties (whose number may yet grow), the Greenbergs are entitled to a stay of discovery.

## BACKGROUND

Plaintiff filed his first, short-lived complaint on April 7, 2023. It spanned almost 100 pages, included nearly 1,000 paragraphs of allegations, and turned on a baseless, fanciful theory that the Greenbergs headed a vast criminal RICO enterprise dedicated

to illegally distributing drugs, profiting off public corruption, and was responsible for all of their son, Joel Greenberg's, bad acts. *See generally* Doc. 1-1.

On May 10, 2023, Defendants removed this case to this Court. Doc. 1. Soon after—on June 16, 2023—the Greenbergs moved to dismiss. Doc 45. On July 6, 2023, Plaintiff served extensive discovery on all Defendants—largely seeking responses and documents vaguely tied to his near 1,000 paragraph, would-be-moot complaint. *See, e.g.*, Plaintiff's Interrogatories to Andrew Greenberg (requesting that Andrew identify "transactions . . . that in any way relate to . . . any assertion in any . . . operative pleading at the time of your response.").

On August 9th, Plaintiff filed his Amended Complaint, changing tack. Doc. 62. While confusingly purporting to incorporate his entire original complaint, his amended complaint now alleges that (rather than participating in all of Joel's crimes) the Greenbergs conspired with Joel to defame Plaintiff to help secure a lighter sentence for Joel's crimes. But Plaintiff's operative complaint (whatever it consists of)[2] remains deficient. For example, his amended complaint contains at least 42 "upon information and belief" allegations that should be disregarded. *See Sellstate Realty Sys. Network, Inc. v. Black*, 220CV00414JLBNPM, 2021 WL 354169, at *2–*3 (M.D. Fla. Feb. 2, 2021) (concluding that "upon information and belief" allegations could not be accepted as true because, as without other "well-pleaded facts to accept as true, the Court has no

---

[2] *See Bryant v. Norfolk S. R.R.*, No. 5:20-CV-00225-TES, 2020 WL 5521044, at *1 (M.D. Ga. Sept. 14, 2020) (explaining that incorporating, in their entirety, past complaints by reference improperly forces courts to "spen[d] considerable time attempting to understand which factual allegations support[] which claims for relief").

4

idea how plausible [plaintiff's] 'belief' might be"). And Plaintiff's allegations permit a plethora of innocent "obvious alternative explanations" for the Greenbergs' alleged behavior. *Doe v. Samford Univ.*, 29 F.4th 675, 689 (11th Cir. 2022) (quotation omitted). Plus, Plaintiff fails to state a claim for RICO conspiracy or aiding and abetting because he has alleged no *facts* suggesting an agreement by the Greenbergs. *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010) (explaining that conclusory allegations of agreement fail to state a RICO conspiracy claim). For these and other reasons, on August 22, 2023, the Greenbergs again moved to dismiss. Doc. 77.

Since that motion to dismiss, Plaintiff has served a host of further discovery requests on the Greenbergs. And in turn, the Greenbergs have hired an ESI vendor to recover just over a million documents from their personal computers, emails, and cell phones. Then, after sifting through those documents for responsiveness and privilege, the Greenbergs produced thousands of documents: from payments to attorneys to texts among family. All told, the Greenbergs have spent hundreds of thousands of dollars responding to Plaintiff's discovery requests. Even so, Plaintiff continues to demand invasive and improper financial discovery—apparently directed to his recently filed state-court complaint—and has continuously sought information from the Greenbergs protected by the attorney-client and work-product privileges.

Third parties, too, have incurred great expense. Over 60 non-party subpoenas have been served on third parties ranging from the federal government, to business, to schools, to individuals. And in response, thousands of pages of documents have been produced.

Likewise, depositions are in full swing. Five depositions have occurred—most of third parties who have been forced to bring and pay for their own counsel—seven more are set, and the parties are likely to seek leave to take even more. Plaintiff and his wife are set to be deposed later this month,[3] the Greenbergs in September, and many other third parties including sitting congressman Matt Gaetz. Each deposition requires the Greenbergs, Plaintiff, other defendants, or third parties to incur costs in preparation. Further, at nearly every deposition thus far, Plaintiff's counsel has expressed his intent to move to compel further production or testimony.

While this discovery goes on, the pleadings remain open. Plaintiff has already forecasted that he will seek to amend his complaint based on evidence learned in discovery, *see* Docs. 83, 86, which, if permitted, would likely require another round of motions to dismiss and further delay.[4] At the same time, Defendants' answers—if this Court were to allow any of Plaintiff's claims to go forward—will include affirmative defenses requiring additional discovery. More importantly, Defendant A.B. has all but announced her intent to file a counterclaim against Plaintiff and others with her answer. *See* Doc. 80 at 9 (claiming that Plaintiff committed "statutory rape and trafficking of A.B."); Doc. 46 at 2 ("Plaintiff improperly seeks to preempt any claims

---

[3] The Greenbergs have taken the position that Plaintiff waived his privilege over spousal communications, which will likely result in contentious motion practice, and, if the Greenbergs are correct, significantly broadened discovery from Plaintiff and his wife, Ms. Dorworth.

[4] Indeed, dismissal without prejudice would permit Plaintiff to file a second amended complaint.

A.B. may have against [him] for raping and trafficking her.").[5] Not only will that counterclaim raise new issues on which discovery is necessary, but it will also likely bring in additional third-party defendants who themselves are entitled to move to dismiss and to conduct their own discovery.

As a result, the unfortunate reality is that the current case management deadlines are likely mere place holders, because it is impractical for discovery to end on November 1, 2024, when all the claims in the action are not yet pleaded and when all the parties to the dispute are not yet before this Court. In all likelihood, even if the Court denied all motions to dismiss today, this case would still need at least six more months of discovery before dispositive motions. But there is no practical need to require the parties to endure the expense of untold additional discovery before the claims and parties have crystallized, if ever.

Indeed, before the scope of Plaintiff's claims are determined—if they survive at all—it makes little sense to proceed with over a half dozen more depositions (including a deposition of Congressman Gaetz), thousands of more documents of production from both parties and non-parties, and the host of disputes that discovery is likely to entail.  To save their own resources, those of various third parties, and the resources of this Court, the Greenbergs now move to stay discovery until the pleadings close.

---

[5] The Amended Complaint reflects that A.B. sent Plaintiff and Congressman Gaetz a pre-suit demand letter before this case was filed. *See* Doc. 62 ¶ 221. To the extent A.B.'s opposition to this motion is based on pursuing discovery via depositions of Plaintiff or Congressman Gaetz, A.B. will not be prejudiced, as such discovery can be more appropriately obtained after the pleadings are closed and after any such claims are filed—either in this case or in a separate action.

## ARGUMENT

This Court's inherent authority to control its docket includes broad discretion to stay discovery. *Clinton v. Jones*, 520 U.S. 681, 706 (1997); *see also Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1560 (11th Cir. 1985) ("[A] magistrate has broad discretion to stay discovery pending decision on a dispositive motion."). And the Eleventh Circuit has stated in no uncertain terms that "[f]acial challenges to the legal sufficiency of a claim or defense, such as a motion to dismiss based on failure to state a claim for relief, should . . . be resolved before discovery begins." *Chudasama*, 123 F.3d at 1367. That is especially so when, as here, "the challenged claim will significantly expand the scope of allowable discovery." *Cotton v. Mass. Mut. Life Ins.*, 402 F.3d 1267, 1292 (11th Cir. 2005); *see also In re HomeAdvisor, Inc. Litig.*, No. 16-CV-01849-PAB-KLM, 2019 WL 12473434, at *6 (D. Colo. Dec. 16, 2019) (explaining that "RICO case[s] are complex cases 'likely to be more than usually costly,'" and so "burdensome discovery in RICO cases during the pendency of a motion to dismiss may be inappropriate." (quoting *Blevins v. Aksut*, No. 15-00120-CG-B, 2015 WL 2098017, at *2 (S.D. Ala. Apr. 17, 2015))).

This does not mean "that discovery should be stayed whenever a defendant files a motion to dismiss," *David v. United States*, No. 8:19-CV-2591-T-36JSS, 2020 WL 1862606, at *1 (M.D. Fla. Apr. 14, 2020), but it *does* mean that "courts should not delay ruling on a likely meritorious motion to dismiss while undue discovery costs mount," *Koock v. Sugar & Felsenthal, LLP*, Case No. 8:09-cv-609-T-17EAJ, 2009 WL

2579307, at *2 (M.D. Fla. Aug. 19, 2009)). Indeed, "[t]rial courts have a responsibility to properly manage pretrial discovery in order to avoid a waste of resources" and, in the right circumstances, "[g]ranting a discovery stay until an impending motion to dismiss is resolved is a proper exercise of that responsibility." *Brexendorf v. Bank of Am., N.A.*, No. 617CV2065ORL37GJK, 2018 WL 7252955, at *4 (M.D. Fla. Nov. 15, 2018) (quoting *Rivas v. Bank of N.Y. Mellon*, 676 F. App'x 926, 932 (11th Cir. 2017)). This is because staying discovery during the pendency of a motion to dismiss helps avoid "unnecessary costs to the litigants and to the court system." *Chudasama*, 123 F.3d at 1367–68; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558–59 (2007) (encouraging exposure of implausible claims "at the point of minimum expenditure of time and money by the parties and the court").

The general test in this District for whether a stay is necessary requires the Court to "balance the harm produced by a delay in discovery against the possibility that the motion will be granted and entirely eliminate the need for such discovery." *David*, 2020 WL 1862606, at *1 (quoting *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997)). In weighing the relative harms, this Court "may take a preliminary peek at the merits of the purportedly dispositive motion to determine if, on the motion's face, there appears to be an immediate and clear possibility that the Court will grant the motion, which supports entering a stay." *Id.* at *1 (quotations omitted). Here, that test weighs strongly in favor of a stay.

**A. This Court will likely grant the Greenbergs' motion to dismiss, obviating the need for further expansive and costly discovery.**

A preliminary peek at the Greenbergs' motion to dismiss shows an immediate and clear likelihood that the Court will grant the motion. Plaintiff's complaint fails across the board: (1) Plaintiff has failed to allege *any* nonconclusory allegations of wrongdoing against the Greenbergs, Doc. 77 at 11–16; (2) Plaintiff has failed to allege a RICO enterprise, *id.* at 16–28; (3) Plaintiff has failed to allege the Greenbergs agreed to enter a RICO conspiracy, *id.* at 19–21; (4) Plaintiff has failed to allege the Greenbergs knowingly or substantially assisted anyone—and thus aided and abetted—in defaming Plaintiff, *id.* at 21–23; and (5) Plaintiff has failed to allege Florida-law civil conspiracy, *id.* at 23–25. In short, after two attempts, Plaintiff offers nothing but conclusory, deficient allegations against the Greenbergs.

The following conclusory allegations—which are characteristic of Plaintiff's amended complaint—provide telling examples of his complaint's naked insufficiency:

> 25. When referring to acts performed by Joel Greenberg, Andrew Greenberg, or Sue Greenberg, any funding required for those acts came from AWG and/or Greenberg Dental with the knowledge of what the funding would be used for.
>
> . . .
>
> 29. Upon information and belief, A.B. received other compensation from Joel Greenberg and/or other members of the Greenberg Enterprise.

Doc. 62 ¶¶ 25, 29; *see also* Doc. 77-1 (compiling conclusory allegations). [6] This Court must disregard such allegations. *See McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (on a motion to dismiss, the court "identif[ies] conclusory allegations and then discard[s] them").

Worse still, the sum of Plaintiff's conclusory allegations is a theory that (a) the Greenbergs must have paid Joel's fees in his criminal case because Joel lacked the means to pay, and (b) because they paid Joel's fees, the Greenbergs must have known of every statement Joel made to the authorities *and* whether each statement was true or false. *See id.* at 8–9. By extension, the Greenbergs must be responsible for all of Joel's actions. Plaintiff's fanciful theory falls far short of the *Twombly/Iqbal* standard. The Greenbergs' pending motion to dismiss will likely dispose of Plaintiff's claims.

Given the extreme tenuousness of Plaintiff's claims against the Greenbergs, the burdens of further discovery are grossly disproportionate and discovery so far has proven voluminous and burdensome. As noted above, the Greenbergs have been forced to hire an ESI vendor to go through their personal computers, emails, and phones. Then, the Greenbergs sorted through a vast number of documents to produce thousands of deeply personal documents and communications. Thousands of

---

[6] Discovery has further demonstrated how frivolous these claims are. Plaintiff has uncovered no payments from the Greenbergs to A.B. (because none exist). And A.B. and a third party who also testified before a grand jury in connection with the investigation into Joel Greenberg have both testified, under oath at deposition, that they do not know the Greenbergs, have never communicated with the Greenbergs, and have never accepted payment from the Greenbergs. Indeed, A.B. and the third party testified that *nobody* paid A.B.'s attorney's fees on her behalf—as Plaintiff alleges the Greenbergs did—and that A.B. gave only truthful testimony to law enforcement and never communicated with news media.

documents might not be a lot for a corporate defendant, but it is crushing for private individuals, as evidenced by the hundreds of thousands of dollars the Greenbergs have been forced to expend. And now, Plaintiff's recently filed state-court complaint signals an effort to expand discovery in this case even further to support claims Plaintiff anticipates pursuing in state court when this Court likely dismisses his case.

This voluminous discovery demonstrates why, though the presence of RICO claims is *not* a per se ground to stay discovery, courts have "been more receptive to granting a motion to stay discovery where plaintiffs allege a RICO violation against defendants, given the often-burdensome nature of RICO discovery." *Lawson v. Rubin*, No. 17-CV-6404 (BMC), 2018 WL 11402165, at *1 (E.D.N.Y. Jan. 25, 2018); *see also Guajardo v. Martinez*, No. 2:14-CV-450, 2015 WL 12831683, at *2 (S.D. Tex. Dec. 22, 2015) (stay warranted "[b]ecause Plaintiffs allege complex claims under civil RICO, Defendants' concerns about the cost and inconvenience of discovery are reasonable").[7] In short, on one side of the ledger, the Greenbergs have borne great burdens in discovery thus far and will bear great burdens going forward. On the other, Plaintiff is unlikely to ever state a claim.

### B. Any delay in discovery will cause no real harm to Plaintiff.

Even if this Court were to deny the Greenbergs' motion to dismiss, a stay would not harm Plaintiff. He has already enjoyed the opportunity to wage a year of

---

[7] This is likely also, at least in part, because Civil RICO claims "are notoriously difficult to plead plausibly and . . . are rarely successfully pleaded." *Cao v. Landco H & L, Inc.*, No. 120CV01180ENVRML, 2022 WL 3997746, at *2 (E.D.N.Y. Sept. 1, 2022).

unnecessarily extensive discovery. And, as noted above, given that affirmative defenses and likely counterclaims (and additional parties) are forthcoming if Plaintiff manages to state any viable claim, the schedule currently set out in the Court's case management order would invariably change. A stay thus will not deprive Plaintiff of the time to collect the discovery he needs (even setting aside the fact that he has already had a year) because this Court will have to grant additional time for discovery after the pleadings close. What's more, staying discovery until the close of the pleadings will also save all parties, including *Plaintiff*, the expense of retreading ground already covered in past discovery to address new claims and defenses.

### C. Balancing the interests, this Court should stay discovery.

Plaintiff stands to lose little; the Greenbergs face needless waste of resources. Indeed, the Greenbergs have already lost a small fortune defending facially deficient claims that should be dismissed. On the other hand, Plaintiff has had a year to conduct discovery. The Greenbergs have spent thousands on ESI vendors, depositions, and the like, and suffered the stress of having a deeply personal aspects of their lives probed by a hostile party. Their interest in preventing further cost and intrusion greatly outweighs Plaintiff's interest in continuing with discovery before the issues in this case have crystalized and when, if he ever states a claim, he will almost certainly have the benefit of an extended discovery period to continue pursuing discovery.

In short, the Greenbergs' motion "raises potentially meritorious challenges to the complaint," challenges that "outweigh any harm to Plaintiff that a delay in discovery or case management would cause." *David*, 2020 WL 1862606, at *2 (citing

*George & Co. LLC v. Cardinal Indus., Inc.*, No. 218CV154FTM38MRM, 2019 WL 1468514, at *2 (M.D. Fla. Feb. 19, 2019) and *Duo-Regen Techs., LLC v. 4463251 Canada, Inc.*, No. 8:13-CV-2108-T-27TBM, 2014 WL 12618711, at *1 (M.D. Fla. Feb. 14, 2014)). "Accordingly, good cause has been shown," and this Court should stay discovery pending resolution of Defendants' motions to dismiss. *Id.* at *2.

## CONCLUSION

The Greenbergs have submitted to over a year of discovery that has done nothing but undermine Plaintiff's facially deficient claims. And given that the pleadings are still open and subject to change, it is likely if not certain that (if this Court does not dismiss) many more months of discovery lie ahead. The Greenbergs should not be forced to incur the further expense of that discovery until this Court has determined that Plaintiff has stated a legally cognizable claim and the scope of counter claims and defenses is crystallized. Accordingly, this Court should stay discovery until it has a chance to consider fully the Greenbergs' pending motions to dismiss and the issues have crystallized. This Court should stay all discovery until the pleadings close.

## LOCAL RULE 3.01(g) CERTIFICATION

Undersigned counsel has conferred by telephone with counsel for all parties. Undersigned counsel conferred with counsel for Plaintiff on July 5. Plaintiff opposes this motion. Undersigned counsel conferred with counsel for A.B. on July 5. A.B. opposes the motion. Abby Greenberg agrees with the relief requested in this motion. Joel Greenberg agrees with the relief requested in this motion. The Greenberg Dental Entities agree with the relief requested in this motion.

Respectfully submitted,

/s/ *Frederick S. Wermuth*
Frederick S. Wermuth (Lead Counsel)
Florida Bar No. 0184111
Dustin Mauser-Claassen
Florida Bar No. 0119289
Quinn Ritter
Florida Bar No. 1018135
KING, BLACKWELL, ZEHNDER &
WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com
dmauser@kbzwlaw.com
qritter@kbzwlaw.com

*Attorneys for Defendants Andrew Greenberg, Susan Greenberg, and AWG, Inc.*

William E. Peters, Jr.
Florida Bar No. 50230
WICKER SMITH O'HARA MCCOY &
FORD, P.A.
515 E. Las Olas Boulevard
SunTrust Center, Suite 1400
Ft. Lauderdale, FL 33301
Telephone: (954) 847-4800
Facsimile: (954) 760-9353
WPeters@wickersmith.com
ftlcrtpleadings@wickersmith.com

*Attorney for Defendants Andrew Greenberg and Susan Greenberg*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 5, 2024 I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Frederick S. Wermuth*
Frederick S. Wermuth
Florida Bar No. 0184111