Exhibit 1

| INDEX OF DISCOVERY REQUESTS AND RESPONSES | PDF PAGE NUMBER |
|---|---|
| Defendants Andrew Greenberg, Susan Greenberg, and AWG, Inc.'s First Requests for Production | 2 |
| Defendant Andrew Greenberg's First Set of Interrogatories to Plaintiff | 16 |
| Plaintiff's Answers to Defendants Andrew Greenberg, Sue Greenberg, and AWG, Inc.'s First Set of Interrogatories | 25 |
| Plaintiff's Responses to Defendants Andrew Greenberg, Sue Greenberg, and AWG, Inc.'s First Set of Requests for Production of Documents | 35 |
| Plaintiff's Amended and Supplemental Responses to Defendants Andrew Greenberg, Sue Greenberg, and AWG, Inc.'s First Set of Requests for Production of Documents | 58 |
| Plaintiff's Amended Answers to Defendants Andrew Greenberg, Sue Greenberg, and AWG, Inc.'s First Set of Interrogatories | 84 |

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| CHRISTOPHER E. DORWORTH, | |
| *Plaintiff*, | |
| v. | Case No.: 6:23-cv-00871 |
| JOEL MICAH GREENBERG, ANDREW W. GREENBERG, SUSAN GREENBERG, ABBY GREENBERG, AWG., INC., GREENBERG DENTAL ASSOCIATES, LLC, GREENBERG DENTAL & ORTHODONTICS, P.A., GREENBERG DENTAL SPECIALTY GROUP, LLC, and A.B., | |
| *Defendants.* | |

**DEFENDANTS ANDREW GREENBERG, SUSAN GREENBERG,
AND AWG, INC.'S FIRST REQUESTS FOR PRODUCTION**

Defendants Andrew Greenberg, Susan Greenberg, and AWG, Inc. ("the Greenbergs"), pursuant to Rules 26 and 34, Federal Rules of Civil Procedure, serve their First Request for Production of Documents to Plaintiff Christopher Dorworth ("Plaintiff") and request that he produce the following documents at the office of King, Blackwell, Zehnder & Wermuth, P.A., 25 East Pine Street, Orlando, Florida 32801, within thirty (30) days from the date of service of this request, for the purpose of inspection and/or copying as provided by applicable rules, or at a mutually agreeable date, time, and place or through an alternative method of production mutually agreeable to the parties (including, but not limited to, electronic production via email attachment or secure file transfer).

## DEFINITIONS

Except as specifically defined below, the terms used in these requests shall be defined and construed in accordance with the Federal Rules of Civil Procedure, wherever applicable. Any terms not so defined shall be given their ordinary meaning. Capitalized terms in the following definitions should be construed, as appropriate, to include lower-case versions.

1.     "Action" means the above-captioned proceeding.

2.     "Communication" means the transmittal or attempted transmittal, whether oral, written, through electronic means or otherwise, of information of any type, including, without limitation, the transmittal or attempted transmittal of information via email, text or instant message, social media, letter, facsimile, teletype, voicemail or voice message, written memorandum, note, report, summary, or other such means.

3.     "Transaction" means contracts, gifts, loans, transfers, payments, purchases, salary, bonuses, commissions, distributions, dividends, and any other payments made through any payment method. The terms "payment" and "payments" include amounts paid through any payment method, including, but not limited to, cash, cryptocurrency, real property, and personal property.

4.     "Verified Amended Complaint" means the Verified Amended Complaint filed by Plaintiff in this Action on August 8, 2023, including exhibits and documents attached or incorporated by reference therein. *See* Doc. 62. "Verified Amended Complaint" also includes any amended, supplemental, or successor complaint filed in this Action.

5.     "Verified Complaint" means the Verified Complaint that Plaintiff filed on April 7, 2023, in the Circuit Court of the Eighteenth Judicial Circuit in and for Seminole County, Florida, and the Verified Complaint in this Action, including exhibits and documents attached or incorporated by reference therein. *See* Doc. 1-1.

6.     "Document" is synonymous in meaning and scope to the term "document" as used in Federal Rule of Civil Procedure 34, covers "writings" and "recordings" as those terms are defined in Federal Rule of Evidence 1001, and includes, without limitation, any written or graphic matter or other means of preserving thought or expression and all tangible things from which information can

be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including but not limited to, data, ESI, correspondence, memoranda, notes, messages, letters, electronic mail, telegrams, teletype, telefax, bulletins, meetings or other communications, interoffice and intraoffice telephone calls, diaries, minutes, books, reports, studies, summaries, pamphlets, bulletins, printed matter, charts, ledgers, invoices, worksheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, canceled checks, statements, transcripts, statistics, surveys, magazine or newspaper articles, releases, graphic or aural records or representations of any kind (including without limitation photographs, digital images, video recordings, and motion pictures) and electronic, mechanical or electric records or representations of any kind (including without limitation tapes, cassettes, discs and records and information stored on computers such as system backups). "Document" also includes any and all drafts, alterations, modifications, changes and amendments of any of the foregoing.

7.      "Electronically stored information" or "ESI" includes any information created, stored, or best utilized with computer technology of any kind. It includes, but is not limited to, data, word-processing documents, spreadsheets, presentation documents, graphics, animations, images, email, text and instant messages (including attachments), audio, video and audiovisual recordings, voicemail stored on databases, networks, computers and computer systems, servers, archives, backup or disaster recovery systems, cloud-storage facilities, thumb drives, discs, CDs, DVDs, blu-ray discs, diskettes, tapes, cartridges and other storage media, caches, social media and other information that is stored on or accessible through the Internet, pagers, facsimile machines or services, personal digital assistants, handheld wireless devices, cellular telephones, and smartphones.

8.      "The Greenbergs" refers to Andrew Greenberg, Susan Greenberg, and AWG, Inc., Defendants in this Action.

9.      "Person" means not only natural persons, but also firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, trust groups, and organizations; federal, state, or local governments or government agencies, offices, bureaus, departments, or entities; other legal, business, or government entities; and all subsidiaries, affiliates, divisions, departments, branches, and other units thereof or any combination thereof.

10.     "Dorworth," "Plaintiff," "you," "your," and "yours," refers to Christopher Dorworth, the Plaintiff in this Action.

# INSTRUCTIONS

1.      Unless otherwise stated, the applicable time period for these requests shall be January 1, 2016, to the present.

2.      Each request for documents seeks production of all documents described therein and all attachments to such documents, and any file or other folders in which such documents are stored or filed in the ordinary course of business.

3.      You shall produce all requested documents, wherever located, that are in your possession, custody, or control, including documents that you have a right to obtain, or to compel the production of, from any third party, including, without limitation, banks or other financial institutions, phone carriers, internet service providers, and hosts of web-based or cloud-based email accounts or other online services.

4.      Use of the singular shall be deemed to include the plural and use of the masculine shall be deemed to include the feminine and neuter, as appropriate, and vice versa. The terms "and," "or," and "and/or" should be interpreted liberally, as conjunctive, disjunctive or both depending on the context, so that the fullest disclosure of information and documents is achieved.

5.      If you assert that any requested document is privileged or immune from discovery, please identify each such document fully, and provide the following information:

      a.  the type of document;

      b.  the date and manner of recording, creating or otherwise preparing the document;

      c.  the subject matter of the document;

      d.  the name and title or position of the person(s) who produced the document;

      e.  the name and title or position of the person(s) who received a copy of the document or to whom the contents of the document were otherwise disclosed;

      f.  the privilege or basis for immunity (e.g., self-incrimination, attorney-client communication) you assert with respect to the document; and

      g.  the facts you contend support your assertion of privilege or immunity.

6.      If you assert that any requested document has been lost, destroyed, or discarded, please identify each such document as completely as possible, and provide the following information:

      a.  the date of loss, destruction or discarding;

      b.  the circumstances of the loss, destruction or discarding; and

      c.  if destroyed or discarded:

          1)  the manner of destruction or discarding;

          2)  the reason for destruction or discarding;

          3)  the identity of the person who authorized the destruction or discarding; and

          4)  the identity of the person who destroyed or discarded the document.

7.      If a given request may be narrowly or more broadly construed, you should apply the broadest construction that will produce the most comprehensive response.

8.      In producing documents responsive to these requests, each document produced should include all attachments and enclosures referred to in the document or that were originally attached to or enclosed with the document to be produced.

## ELECTRONIC DOCUMENTS

Documents created, sent, or received in electronic format should be produced in their native electronic format with metadata preserved.

## DOCUMENTS TO BE PRODUCED

1.      All communications between or involving Plaintiff and A.B.

2.      All documents that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and A.B.

3.      All documents or communications that reference, discuss, regard, or relate to A.B., including by her name, any nickname, or under any pseudonym, such as "Vintage 99."

4.      All documents and communications that reference, discuss, reflect, regard, or relate to any one or more of the Greenbergs entering into any agreement with A.B. to pay A.B.'s attorney's fees.

5.      All documents and communications that reference, discuss, reflect, regard, or relate to any one or more of the Greenbergs entering into any transaction with A.B.

6.      All communications between or involving Plaintiff and Joel Greenberg.

7.      All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Joel Greenberg.

8.      All documents supporting your claim of financial harm stemming from your termination or resignation from Ballard Partners.

9.      All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Ballard Partners and Joel Greenberg.

10.     All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Ballard Partners and the Seminole County Tax Collector's Office, including any employee, contractor, consultant, attorney, advisor, agent, or representative of the Seminole County Tax Collector's Office.

11.     All communications between or involving Plaintiff and the Seminole County Tax Collector's Office, including any employee, contractor, consultant, attorney, advisor, agent, or representative of the Seminole County Tax Collector's Office.

12.     All documents and communications that reference, discuss, reflect, regard, or relate to any transaction between Plaintiff and the Seminole County Tax Collector's Office, including any employee, contractor, consultant, attorney, advisor, agent, or representative of the Seminole County Tax Collector's Office.

13.     All documents and communications that reference, discuss, reflect, regard, or relate to your employment relationship with Ballard Partners and one or

any combination of the following: (a) your performance, (b) compensation, (c) hours worked, (d) billing status, (e) company policies, and (d) relationships with other persons employed or otherwise associated with Ballard Partners.

14.    All Ballard Partners' policies, bylaws, regulations, employee handbooks, codes of conduct, or similar documents.

15.    Any employment agreement between Plaintiff and Ballard Partners.

16.    Any severance agreement between Plaintiff and Ballard Partners.

17.    All documents and communications that reference, discuss, reflect, regard, or relate to your termination or resignation from Ballard Partners.

18.    All communications involving any person employed or otherwise associated with Ballard Partners regarding one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

19.    All documents and communications that reference, discuss, reflect, regard, or relate to your efforts to seek employment while employed at Ballard Partners or after your termination or resignation from Ballard Partners.

20.    All payroll records, accounting records, and checks or other documents or communications that reference, discuss, reflect, or regard your wages, salary, bonuses, independent contractor income, distributions, dividends, and any of your other income or earnings in any capacity, whether as an employee, independent contractor, sole proprietor, partner, member or shareholder of an organization, or otherwise.

21.    All federal, state, and local income tax returns that you submitted, or that were submitted on your behalf, to a federal, state, or local government.

22.    All I.R.S. forms and schedules (including, but not limited to, Form W-2, Form 1099, and Schedule K-1) that reflect your wages, salary, bonuses, independent contractor income, distributions, dividends, and any other income or earnings in any

capacity, whether as an employee, independent contractor, sole proprietor, partner, member or shareholder of an organization, or otherwise.

23.    All financial statements for any entity or organization in which you have any ownership interest.  This request does not seek financial statements for entities or organizations listed on the following stock exchanges: New York Stock Exchange, Nasdaq, American Stock Exchange, Europe's STOXX 600, and London's FTSE.

24.    All documents and communications that reference, discuss, reflect, regard, or relate to any harm to Plaintiff's reputation as a result of the Greenbergs' alleged conduct referenced in the Verified Amended Complaint.  As noted in the Definitions above, Verified Amended Complaint includes any amended, supplemental, or successor complaint filed in this Action.

25.    All communications between or involving Plaintiff and Matt Gaetz.

26.    All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Matt Gaetz—or any staff person, family member, employee, contractor, consultant, attorney, advisor, agent, or representative of Matt Gaetz.

27.    All communications involving Matt Gaetz—or any staff person, family member, employee, contractor, consultant, attorney, advisor, agent, or representative of Matt Gaetz—that reference, discuss, regard, or relate to one or more of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes any amended, supplemental, or successor complaint filed in this Action.

28.    All communications between or involving Plaintiff and Halsey Beshears.

29.    All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Halsey Beshears.

30.    All communications involving Halsey Beshears that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above,

Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

31.     All documents or communications that reference, discuss, reflect, regard, or relate to state or federal investigations of Plaintiff related to any event or occurrence referenced in the Verified Complaint or Verified Amended Complaint.  As noted in the Definitions above, Verified Amended Complaint includes any amended, supplemental, or successor complaint filed in this Action.

32.     Any documents and communications supporting your allegation that the Greenbergs financed Joel's alleged defamatory and unlawful activities described in the Verified Amended Complaint with knowledge of those actions and with the intent that they be carried out.  As noted in the Definitions above, Verified Amended Complaint includes any amended, supplemental, or successor complaint filed in this Action.

33.     All communications between Plaintiff and any Defendant in this Action.

34.     All documents and communications that reference, discuss, reflect, regard, or relate to polygraph tests, including but not limited to polygraph tests referenced in the Verified Complaint or the Verified Amended Complaint. As noted in the Definitions above, Verified Amended Complaint includes any amended, supplemental, or successor complaint filed in this Action.

35.     All communications between or involving Plaintiff and the person referred to as "K.M." in the Verified Complaint.

36.     All communications involving the person referred to as "K.M." in the Verified Complaint that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

37.     All communications between or involving Plaintiff and Brianna Garcia.

38.     All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Brianna Garcia.

39.     All communications involving Brianna Garcia that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

40.     All documents that discuss, reflect, support, or show that Joel Greenberg or A.B. made defamatory statements about Plaintiff or containing the statements themselves.

41.     All communications between or involving Plaintiff and Michael Shirley.

42.     All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Michael Shirley.

43.     All communications involving Michael Shirley that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

44.     All communications between or involving Plaintiff and Joe Ellicott.

45.     All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Joe Ellicott.

46.     All communications involving Joe Ellicott that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

47.     All communications between or involving Plaintiff and Keith Ingersoll.

48.    All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Keith Ingersoll.

49.    All communications involving Keith Ingersoll that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

50.    All communications between or involving Plaintiff and Jestine Iannotti.

51.    All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Jestine Iannotti.

52.    All communications involving Jestine Iannotti that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

53.    All communications between Plaintiff and any other person regarding Iannotti's 2020 state senate campaign and any documents reflecting transactions involving Plaintiff and Iannotti's 2020 state senate campaign.

54.    All communications between or involving Plaintiff and Eric Foglesong.

55.    All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Eric Foglesong.

56.    All communications involving Eric Foglesong that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

57.     All communications between or involving Plaintiff and James H. Stelling.

58.     All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and James H. Stelling.

59.     All communications involving James H. Stelling that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

60.     All communications between or involving Plaintiff and Ben Paris.

61.     All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Ben Paris.

62.     All communications involving Ben Paris that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

63.     All communications involving any news reporting entity (including any newspaper, journal, online publication, magazine, or blog), or reporter, editor, employee, agent, volunteer, or proprietor thereof, that reference, discuss, regard, or relate to one or more of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any events or occurrences referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action.  As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

64.     All communications involving any other person that reference, discuss, regard, or relate to one or more of the following: (a) Joel Greenberg, (b) the

Greenbergs, (c) any events or occurrences referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action.  As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint. This Request does not seek communications solely between Plaintiff and his attorney, Michael Beltran.

65.    All documents or bank statements from any bank or transaction service, such as Venmo, CashApp, PayPal, Apple Cash, etc., that reference, discuss, regard, or relate to any transaction between Plaintiff and Joel Greenberg or any transaction between Plaintiff and any other person referenced in the Verified Complaint or the Amended Verified Complaint. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

66.    All communications with individuals other than your attorney(s) about your decision to file this lawsuit.

67.    All drafts, amendments, modifications, or prior, successive, revised, or alternate versions of any of the foregoing documents.

Respectfully submitted,

/s/ Frederick S. Wermuth
Frederick S. Wermuth (Lead Counsel)
Florida Bar No. 0184111
Dustin Mauser-Claassen
Florida Bar No. 0119289
Quinn Ritter
Florida Bar No. 1018135
KING, BLACKWELL, ZEHNDER &
WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com
dmauser@kbzwlaw.com
qritter@kbzwlaw.com

*Attorneys for Defendants Andrew Greenberg, Susan Greenberg, and AWG, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 14, 2023, I served a copy of the foregoing by electronic mail to all counsel of record.

*/s/ Frederick S. Wermuth*
Frederick S. Wermuth
Florida Bar No. 0184111

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHRISTOPHER E. DORWORTH,

  *Plaintiff*,

v.

JOEL MICAH GREENBERG,
ANDREW W. GREENBERG, SUSAN
GREENBERG, ABBY GREENBERG,
AWG., INC., GREENBERG DENTAL
ASSOCIATES, LLC, GREENBERG
DENTAL & ORTHODONTICS, P.A.,
GREENBERG DENTAL SPECIALTY
GROUP, LLC, and A.B.,

  *Defendants.*

Case No.: 6:23-cv-00871

## DEFENDANT ANDREW GREENBERG'S FIRST SET OF INTERROGATORIES TO PLAINTIFF

Defendant Andrew Greenberg, pursuant to Rules 26 and 33, Federal Rules of Civil Procedure, hereby serves this First Set of Interrogatories, and requests that Plaintiff provide answers to the following eleven (11) interrogatories, in writing and under oath, and serve a copy of its responses on the undersigned attorney within thirty (30) days from service of these interrogatories.

## DEFINITIONS

Except as specifically defined below, the terms used in these requests shall be defined and construed in accordance with the Federal Rules of Civil Procedure, wherever applicable. Any terms not so defined shall be given their ordinary meaning.

Page **1** of **9**

Capitalized terms in the following definitions should be construed, as appropriate, to include lower-case versions.

1.     "Action" means the above-captioned proceeding.

2.     "Communication" means the transmittal or attempted transmittal, whether oral, written, through electronic means or otherwise, of information of any type, including, without limitation, the transmittal or attempted transmittal of information via email, text or instant message, social media, letter, facsimile, teletype, voicemail or voice message, written memorandum, note, report, summary, or other such means.

3.     "Describe" means to explain with particularity, including the "who," "what," "where," "when," "why," and "how."

4.     "Document" is synonymous in meaning and scope to the term "document" as used in Federal Rule of Civil Procedure 34, covers "writings" and "recordings" as those terms are defined in Federal Rule of Evidence 1001, and includes, without limitation, any written or graphic matter or other means of preserving thought or expression and all tangible things from which information can be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including but not limited to, data, ESI, correspondence, memoranda, notes, messages, letters, electronic mail, telegrams, teletype, telefax, bulletins, meetings or other communications, interoffice and intraoffice telephone calls, diaries, minutes, books, reports, studies, summaries, pamphlets, bulletins, printed matter, charts, ledgers, invoices, worksheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, canceled checks, statements, transcripts, statistics, surveys, magazine or newspaper articles, releases, graphic or aural records or representations of any kind (including without limitation photographs, digital images, video recordings, and motion pictures) and electronic, mechanical or electric records or representations of any kind (including without limitation tapes, cassettes, discs and records and information stored on computers such as system backups). "Document" also includes any and all drafts, alterations, modifications, changes and amendments of any of the foregoing.

5.     "Electronically stored information" or "ESI" includes any information created, stored, or best utilized with computer technology of any kind. It includes, but is not limited to, data, word-processing documents, spreadsheets, presentation documents, graphics, animations, images, email, text and instant messages (including attachments), audio, video and audiovisual recordings, voicemail stored on databases, networks, computers and computer systems, servers, archives, backup or disaster

recovery systems, cloud-storage facilities, thumb drives, discs, CDs, DVDs, blu-ray discs, diskettes, tapes, cartridges and other storage media, caches, social media and other information that is stored on or accessible through the Internet, pagers, facsimile machines or services, personal digital assistants, handheld wireless devices, cellular telephones, and smartphones.

6.     "The Greenbergs" refers to Andrew Greenberg, Susan Greenberg, and AWG, Inc., Defendants in this Action.

7.     "Identify," as to a document, means to state the type of document; state the document's date, author(s), recipient(s), subject matter, attachments or appendices; identify persons who possess or were involved in making the document; state whether the document memorializes an oral communication in whole or any part; and state whether the document was transferred or otherwise associated with an oral communication.

8.     "Identify," as to an oral communication, means to state the content of the oral communication, state the date and time of the oral communication, state the means by which the oral communication occurred (e.g., in-person, telephonic, or electronic means), identify all persons present during the oral communication, state whether the oral communication was recorded by electronic or stenographic means, and state whether notes were taken by any person present during the oral communication.

9.     "Identify," as to electronically stored information, means to describe the electronically stored information, describe all electronic devices on which the electronically stored information is stored or maintained, and identify all persons who have custody, possession, or control over the electronically stored information or electronic devices.

10.     "Identify," as to an entity such as a government agency, firm, partnership, corporation, proprietorship, association, or other entity, means to state its full name and present or last known address.

11.     "Identify," as to a natural person, means that person's full name, last known address, home and business telephone numbers, present occupation or business affiliation, and present or last known place of employment, and job title or role.

12.     "Person" means not only natural persons, but also firms, partnerships, associations, corporations, subsidiaries, divisions, departments, joint ventures, proprietorships, syndicates, trust groups, and organizations; federal, state, or local governments or government agencies, offices, bureaus, departments, or entities; other

legal, business, or government entities; and all subsidiaries, affiliates, divisions, departments, branches, and other units thereof or any combination thereof.

13.    "Dorworth," "Plaintiff," "you," "your," and "yours," refers to Christopher Dorworth, the Plaintiff in this Action.

14.    "Transaction" means contracts, gifts, loans, transfers, payments, purchases, salary, bonuses, commissions, distributions, dividends, and any other payments made through any payment method. The terms "payment" and "payments" include amounts paid through any payment method, including, but not limited to, cash, cryptocurrency, real property, and personal property.

15.    "Verified Amended Complaint" means the Verified Amended Complaint filed by Plaintiff in this Action on August 8, 2023. *See* Doc. 62. "Verified Amended Complaint" also includes any amended, supplemental, or successor complaint filed in this Action.

16.    "Verified Complaint" means the Verified Complaint that Plaintiff filed on April 7, 2023, in the Circuit Court of the Eighteenth Judicial Circuit in and for Seminole County, Florida, and the Verified Complaint in this Action. *See* Doc. 1-1.

## INSTRUCTIONS

1.    Unless otherwise stated, the applicable time period for these requests shall be January 1, 2016, to the present.

2.    If the information requested in an interrogatory is not available or is unknown, state the efforts that were made to obtain the information, and, if known, identify the source from which the information might be obtained.

3.    If you are producing documents in lieu of or in addition to written answers, you are required to produce all documents including all electronically stored information or ESI, wherever located, in your possession, custody, or control, including documents that you have a right to compel the production from any third party, including financial institutions, phone companies, or internet, web-based, or cloud-based email or other service providers. Documents created, sent, or received in electronic format should be produced in their native electronic format with metadata preserved.

4.    If any privilege is claimed as to any information called for or as to any document or communication requested to be identified by an interrogatory, identify the privilege involved (e.g., attorney-client, work product, etc.) and state the basis for the claim of privilege as to each specific item of information, document, or

communication. If the privilege is claimed with respect to any information, identify each person who has knowledge of such information, or to whom such information has been communicated at any time and in any manner. Finally, if the privilege is claimed as to any document or communication, state the type of document or communication and the date thereof; identify each person who prepared or made the document or communication and each person, if any, who signed it; identify each person to whom the document or communication or any copy, summary, digest, or other description thereof was directed, circulated, or distributed; and identify each person now in possession of the document or communication or such copy, summary, digest, or other description.

5.     If any document has been destroyed that would have provided information responsive to these interrogatories or used or referenced in formulating Your answers to these interrogatories, please identify each such document—including the nature of the document and its contents, the person(s) who prepared or authored the document, the person(s) to whom the document was sent, and the date(s) on which the document was prepared and/or transmitted—and state the circumstances of its destruction, including the identity of the person who actually destroyed the document, the identity of any person who ordered or directed its destruction, the date and location of its destruction, and any policy or procedure that you contend allows, relates to, compels, or explains such destruction.

6.     Use of the singular shall be deemed to include the plural and use of the masculine shall be deemed to include the feminine and neuter, as appropriate, and vice versa. The terms "and," "or," and "and/or," should be interpreted liberally, as conjunctive, disjunctive, or both depending on the context, so that the fullest disclosure of information is achieved.

## INTERROGATORIES

### Interrogatory No. 1

Identify and Describe all oral or other communications, interactions, or transactions with A.B. or with third-parties that directly or indirectly reference A.B., including by name, nickname, or any pseudonym such as "Vintage 99."

*Consistent with the definitions of Identify and Describe above, your response should identify (a) each person who is a party or witness to each communication, interaction, or transaction, then explain with particularity (b) the substance of the communication, interaction, or transaction, (2) the date (or approximation), (3) the location, and (4) the words or action of each party to the communication, interaction, or transaction. This interrogatory does not seek communications solely between Plaintiff and his attorney, Michael Beltran.*

**Answer:**



**Interrogatory No. 2**

Identify and Describe every fact supporting your claim that the Greenbergs entered into an agreement to mitigate Joel Greenberg's criminal liability by falsely accusing Plaintiff of illegal activity.

**Answer:**



**Interrogatory No. 3**

Identify and Describe every fact supporting your allegations that the Greenbergs paid A.B. or paid A.B.'s attorney's fees.

**Answer:**



**Interrogatory No. 4**

Identify and Describe every fact supporting your allegations that the Greenbergs aided and abetted Joel Greenberg and A.B.'s alleged defamation.

**Answer:**



**Interrogatory No. 5**

Identify the facts of and Describe each occasion on which you allege in Plaintiff's Verified Amended Complaint a defamatory statement was made about you.

*Consistent with the definitions of Identify and Describe above, for each lettered bullet (e.g., a., b., c.) in paragraph 378—and any other defamatory statement Plaintiff claims was made about him—in Plaintiff's Verified Amended Complaint, Plaintiff's response should identify (a) each person who was a party or witness to each alleged defamatory statement, then explain in detail the: (b) statement, including, to the extent possible, the precise words communicated; (c) date(s) on which the statement was made (d) the person(s) who made the statement, (e) the person(s) to whom the statement was made; and (f) mode of communication (for example, in person or by telephone, letter, text, email).*

**Answer:**

**Interrogatory No. 6**

Identify the facts of and Describe Plaintiff's efforts—including all successes and failures—to secure alternative employment or income since resigning from Ballard Partners. For each alternative source of employment or income identified, identify the amount of income derived from that source, quarterly, up to the date of your answer.

**Answer:**

**Interrogatory No. 7**

Provide a calculation of the damages or other amounts you claim to be due from the Greenbergs in connection with your claims in your Verified Amended Complaint, broken down by category of damages or amounts claimed, the Defendant against whom each category of damages is sought, and the methodology of calculation for each such category.

**Answer:**

**Interrogatory No. 8**

Identify all messaging apps you used at any time between January 1, 2016 and the present. For each app, identify your corresponding username.

**Answer:**

**Interrogatory No. 9**

Identify the facts of and Describe all oral communications you had with any other person regarding your decision to initiate this Action.

*Consistent with the definitions of Identify and Describe above, your response should identify (a) each person who was a party or witness to each communication, then explain in detail the: (b) the substance of each communication; (c) date(s) of each communication, (d) the person(s) who initiated the communication, and (f) mode of communication (for example, in person or by telephone, letter, text, email). This interrogatory does not seek communications solely between Plaintiff and his attorney, Michael Beltran.*

**Answer:**

**Interrogatory No. 10**

Identify the facts of and Describe all physical or electronic documents or communications that relate to Defendants in this Action or the subject matter of this Action that were deleted or otherwise disposed of—including but not limited to unintentional deletion by, for example, document retention policies. Specifically, identify each document or communication that was deleted, its contents, why it was deleted, and when it was deleted.

**Answer:**

**Interrogatory No. 11**

Identify all persons with whom you have communicated in writing regarding any of the Defendants in this Action, any event or occurrence referenced in the Verified Amended Complaint, this Action, the Verified Complaint, the Verified Amended Complaint, and any filing in this Action.

**Answer:**

Respectfully submitted,

/s/ *Frederick S. Wermuth*
Frederick S. Wermuth (Lead Counsel)
Florida Bar No. 0184111
Dustin Mauser-Claassen
Florida Bar No. 0119289
Quinn Ritter
Florida Bar No. 1018135
KING, BLACKWELL, ZEHNDER &
WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com
dmauser@kbzwlaw.com
qritter@kbzwlaw.com

*Attorneys for Defendants Andrew Greenberg, Susan Greenberg, and AWG, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 16, 2023, I served a copy of the foregoing by electronic mail to all counsel of record.

/s/ *Frederick S. Wermuth*
Frederick S. Wermuth
Florida Bar No. 0184111

Page **9** of **9**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHRISTOPHER E. DORWORTH,

      Plaintiff,

v.

JOEL MICAH GREENBERG, ANDREW W.
GREENBERG, SUE GREENBERG, ABBY
GREENBERG, AWG, INC., GREENBERG
DENTAL ASSOCIATES, LLC, GREENBERG
DENTAL & ORTHODONTICS, P.A.,
GREENBERG DENTAL SPECIALTY GROUP,
LLC, and A.B.,

      Defendants.

Case No.: 6:23-CV-00871

**PLAINTIFF'S ANSWERS TO DEFENDANTS ANDREW GREENBERG, SUE
GREENBERG, AND AWG, INC.'S FIRST SET OF INTERROGATORIES**

COMES NOW, Plaintiff Christopher E. Dorworth, and hereby submits his answers to

Defendants Andrew Greenberg, Sue Greenberg, and AWG, Inc.'s First Set of Interrogatories.

Plaintiff is applying ordinary dictionary definitions of terms and responding in accordance with

the Federal Rules of Civil Procedure and rejects any attempt by Defendants to impose any

additional or different requirements.

**ANSWERS TO INTERROGATORIES**

**Interrogatory No. 1**

Identify and Describe all oral or other communications, interactions, or transactions with
A.B. or with third-parties that directly or indirectly reference A.B., including by name, nickname,
or any pseudonym such as "Vintage 99."

*Consistent with the definitions of Identify and Describe above, your response should identify (a)*
*each person who is a party or witness to each communication, interaction, or transaction, then*
*explain with particularity (b) the substance of the communication, interaction, or transaction, (2)*
*the date (or approximation), (3) the location, and (4) the words or action of each party to the*

*communication, interaction, or transaction. This interrogatory does not seek communications solely between Plaintiff and his attorney, Michael Beltran.*

**Answer:** Plaintiff has no memory of ever interacting with A.B. He did not ever meet her at a hotel, and he does not recall her ever coming to his house.

The request to "identify and describe oral or other communications with third parties that directly or indirectly reference A.B." is overly broad. It is not limited to communications to/from specific individuals or groups of individuals, such as the media or law enforcement. It is also not limited to particular topics, such as A.B.'s demand letter to Plaintiff or A.B.'s allegations against Plaintiff. Due to overbreadth, the interrogatory also may seek information protected by attorney-client privilege, husband-wife privilege, or other recognized privileges. In addition, a communication directly or indirectly referencing "A.B.," without more, is not relevant to Plaintiff's claims or Defendants' defenses. Due to the overbreadth, Plaintiff has not performed a search for responsive documents and is not withholding any documents Plaintiff would, however, note that DORWORTH000535, produced in response to A.B.'s requests for production, contains responsive information. See also the Exhibits to the Amended Complaint.

**Interrogatory No. 2**

Identify and Describe every fact supporting your claim that the Greenbergs entered into an agreement to mitigate Joel Greenberg's criminal liability by falsely accusing Plaintiff of illegal activity.

**Answer:** See Complaint and Amended Complaint. See also Joel Greenberg's statements described in the "Greenberg Presses Dorworth and Others for a Pardon or other Mitigation of his Exposure" Section of the Amended Complaint. See also documents produced by Abby Greenberg, Joel Greenberg, Sue Greenberg, and Andrew Greenberg, including AbbyGreenberg000212-000218. See also Exhibits 1, 3, 7 and 8 to Amended Complaint. See A.B.'s demand letter and news reports regarding the Investigation into Dorworth. Discovery is just beginning. This answer may be supplemented.

**Interrogatory No. 3**

Identify and Describe every fact supporting your allegations that the Greenbergs paid A.B. or paid A.B.'s attorney's fees.

**Answer:** Joel Greenberg admitted to Plaintiff during breakfast at Another Broken Egg in Heathrow, Florida, in July 2020, that his parents were taking care of A.B. to make the problem go away. See also Exhibit 3 to Amended Complaint and the Complaint and Amended Complaint, generally. See also Joel Greenberg's statements described in the "Greenberg Presses Dorworth and Others for a Pardon or other Mitigation of his Exposure" Section of the Amended Complaint. See also documents produced by Abby Greenberg and Joel Greenberg, including AbbyGreenberg000212-000218. Discovery is just beginning. This answer may be supplemented.

**Interrogatory No. 4**

Identify and Describe every fact supporting your allegations that the Greenbergs aided and abetted Joel Greenberg and A.B.'s alleged defamation.

**Answer:** See answers to Interrogatory Nos. 2 and 3.

**Interrogatory No. 5**

Identify the facts of and Describe each occasion on which you allege in Plaintiff's Verified Amended Complaint a defamatory statement was made about you.

*Consistent with the definitions of Identify and Describe above, for each lettered bullet (e.g., a., b., c.) in paragraph 378—and any other defamatory statement Plaintiff claims was made about him— in Plaintiff's Verified Amended Complaint, Plaintiff's response should identify (a) each person who was a party or witness to each alleged defamatory statement, then explain in detail the: (b) statement, including, to the extent possible, the precise words communicated; (c) date(s) on which the statement was made (d) the person(s) who made the statement, (e) the person(s) to whom the statement was made; and (f) mode of communication (for example, in person or by telephone, letter, text, email).*

**Answer:** Responsive information is detailed at Paragraphs 349 to 381 of the Verified Amended Complaint, including evidence citations.

**Interrogatory No. 6**

Identify the facts of and Describe Plaintiff's efforts—including all successes and failures— to secure alternative employment or income since resigning from Ballard Partners. For each

alternative source of employment or income identified, identify the amount of income derived from that source, quarterly, up to the date of your answer.

**Answer:** Plaintiff resigned his position after Defendants falsely made allegations against Plaintiff in connection with the investigation into criminal activity by Joel Greenberg, in an effort to obtain cooperation credit and reduce Joel Greenberg's prison sentence. Plaintiff received severance from Ballard Partners, DORWORTH000727-DORWORTH000732. Plaintiff would like to reestablish his lobbying practice; however, he has met with only limited success. He earned $50,000 from a client in 2022 and $50,000 from another client in 2023. Plaintiff believes a new agreement will be reached with a client imminently. Plaintiff objects to identifying these clients on the basis of third party privacy. Disclosure of the client identities would also likely harm Plaintiff since it is anticipated the clients would not provide him with further business or referrals if their documents and strategies are potentially subject to discovery. If the new contract is secured, Plaintiff will register his association, which is publicly available at www.floridalobbyist.gov.

In 2023, Plaintiff had a very general discussion with Brian Ballard about rejoining Ballard Partners. Although Ballard seemed open to the idea, he indicated Plaintiff would rejoin at a much lower compensation level than when he left. Although no offer was made or numbers discussed, given Plaintiff's familiarity with Ballard Partners business model, Plaintiff understood Ballard's comment as indicating compensation around $180,000 to $200,000. Although it will take time given Defendants' harm to his reputation, Plaintiff believes he can rebuild his income faster on his own, so no further discussions were held with Ballard.

Plaintiff has also engaged in land development, both while at Ballard Partners and after his departure. He was involved in the proposed River Cross development, which was unsuccessful. Although Dorworth had been discussing a settlement with the County in or around 2020, Joel Greenberg published statements accusing his political opponent, Brian Beute, of having a sexual

relationship with a minor at the school where Beute worked. Greenberg created the false impression that these statements were made by Plaintiff, since Beute was also then-President of Save Rural Seminole, the organization opposed to the River Cross development. Settlement negotiations stopped thereafter, resulting in damages as yet undetermined but thought to be in the 9-figure range.

Plaintiff currently has a land development project in Oviedo that is under review with Seminole County. He is also involved in preliminary work for a confidential project proposal located in southwest Florida. No profit has been realized from these projects.

On or about October 7, 2022, Plaintiff purchased the Oxford Sports Pub and Secret Society in Altamonte Springs, Florida. He operated the restaurant until structural issues with the leased space necessitated closure on or around August 15, 2023. No profit was realized.

**Interrogatory No. 7**

Provide a calculation of the damages or other amounts you claim to be due from the Greenbergs in connection with your claims in your Verified Amended Complaint, broken down by category of damages or amounts claimed, the Defendant against whom each category of damages is sought, and the methodology of calculation for each such category.

**Answer:** Defendants are jointly and severally liable for all damages. At this time, Plaintiff's best estimate of his damages is the following:

- Lost Wages $2.5M and counting ($1M per year for 2.5 years), less severance.

- Loss of employment benefits: Estimated at $100,000 and counting ($40,000 per year for 2.5 years).

- Loss of earning capacity: To be determined.

- Loss of existing and future business opportunities: Damages resulting from the cessation of River Cross development property exchange negotiations are in the 9-figure range.

- Emotional distress: $2.5M.

- Treble damages for RICO claims: not less than $15.3 million, calculated as

   3x($2.5M+$100k+$2.5M).

- Attorney fees: Confidential and to be determined at conclusion of the litigation.

Discovery is just beginning. This answer may be supplemented or modified.

**Interrogatory No. 8**

Identify all messaging apps you used at any time between January 1, 2016 and the present. For each app, identify your corresponding username.

**Answer:** Plaintiff used iMessage, Whatsapp, and Signal. To the extent the username is something

other than a phone number (e.g., iMessage), the username was Chris Dorworth.

**Interrogatory No. 9**

Identify the facts of and Describe all oral communications you had with any other person regarding your decision to initiate this Action.

*Consistent with the definitions of Identify and Describe above, your response should identify (a) each person who was a party or witness to each communication, then explain in detail the: (b) the substance of each communication; (c) date(s) of each communication, (d) the person(s) who initiated the communication, and (f) mode of communication (for example, in person or by telephone, letter, text, email). This interrogatory does not seek communications solely between Plaintiff and his attorney, Michael Beltran.*

**Answer:** Plaintiff objects to this interrogatory, as Plaintiff's "decision to initiate this Action" is

not relevant to Plaintiff's claims or Defendants' defenses. It is not an element of any of Plaintiff's

counts or Defendants' affirmative defenses. It is also so overbroad that it may encompass

information protected by the attorney-client privilege, work product doctrine, husband-wife

privilege, or other recognized privilege.

**Interrogatory No. 10**

Identify the facts of and Describe all physical or electronic documents or communications that relate to Defendants in this Action or the subject matter of this Action that were deleted or otherwise disposed of—including but not limited to unintentional deletion by, for example, document retention policies. Specifically, identify each document or communication that was deleted, its contents, why it was deleted, and when it was deleted.

**Answer:** Prior to receiving the December 28, 2020, grand jury subpoena, Plaintiff maintained an auto delete setting on his phone for text messages, which is standard in the lobbying industry. Once Dorworth received the subpoena, he deactivated the auto delete. Specific to Joel Greenberg, Plaintiff does not possess text messages with him other than those that were produced to the Government, DORWORTH000535-DORWORTH000537, previously produced. Plaintiff does not recall the contents of other text messages with Joel Greenberg but states no text messages concerned arrangements for sex with A.B. because that did not happen.

With regard to email, Plaintiff lost access to his Ballard Partners emails upon his departure. He does not know the status of those emails, although Ballard Partners has produced documents pursuant to subpoena.

**Interrogatory No. 11**

Identify all persons with whom you have communicated in writing regarding any of the Defendants in this Action, any event or occurrence referenced in the Verified Amended Complaint, this Action, the Verified Complaint, the Verified Amended Complaint, and any filing in this Action.

**Answer:** Plaintiff, himself or through counsel, have communicated with the following:

- Joel Greenberg, DORWORTH000535-DORWORTH000537.

- Ben Paris, DORWORTH000672-DORWORTH000673.

- Congressman Matt Gaetz, DORWORTH000341-DORWORTH000349.

- Counsel for A.B., DORWORTH000204-DORWORTH000234.

- Vince Citro, DORWORTH000283-DORWORTH000284.

- Media, DORWORTH000642–DORWORTH000649, DORWORTH000733-DORWORTH000734.

- Counsel for Michael Shirley, DORWORTH000757.

Plaintiff has also communicated in writing with his attorneys, Richard Hornsby and the undersigned. Plaintiff does not interpret this interrogatory as requesting information regarding each such correspondence; however, to avoid a waiver argument, Plaintiff states the contents of such communications are protected by attorney-client privilege.

Date: November 1, 2023

/s/Michael Paul Beltran
Michael P Beltran
Fla. Bar No. 0093184
Beltran Litigation, P.A.
4920 West Cypress St.
Suite 104 PMB 5089
Tampa, FL 33607
813-870-3073 (o)
mike@beltranlitigation.com
*Counsel for Plaintiff Dorworth*

## <u>CERTIFICATE OF SERVICE</u>

  I certify that on the date listed above, a copy of the foregoing document was served by email on all counsel of record:

Frederick S. Wermuth
  [fwermuth@kbzwlaw.com](mailto:fwermuth@kbzwlaw.com)
Dustin Mauser-Claassen
  [dmauser@kbzwlaw.com](mailto:dmauser@kbzwlaw.com)
Quinn Ritter
  [qritter@kbzwlaw.com](mailto:qritter@kbzwlaw.com)
***Counsel for Andrew Greenberg***
***Sue Greenberg, and AWG, Inc.***

Michael J. Furbush
  [mfurbush@deanmead.com](mailto:mfurbush@deanmead.com)
Michaela N. Kirn
  [mkirn@deanmead.com](mailto:mkirn@deanmead.com)
***Counsel for Greenberg Dental Entities***

Jesse Unruh
  [jesse@spirelawfirm.com](mailto:jesse@spirelawfirm.com)
Christopher W. Ford
  [ford@hbcboulder.com](mailto:ford@hbcboulder.com)
Laura Wolf
  [laura@spark-law.com](mailto:laura@spark-law.com)
***Counsel for A.B.***

Jason A. Perkins
  [jperkins@carltonfields.com](mailto:jperkins@carltonfields.com)
Chelsey J. Clements
  [cclements@carltonfields.com](mailto:cclements@carltonfields.com)
Jason F. Bullinger
  [jbullinger@carltonfields.com](mailto:jbullinger@carltonfields.com)
***Counsel for Abby Greenberg***

Fritz Scheller
  [fscheller@flusalaw.com](mailto:fscheller@flusalaw.com)
***Counsel for Joel Greenberg***

       <u>/s/Michael Paul Beltran</u>
       Michael P Beltran

**VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I, Christopher E. Dorworth, declare under penalty of perjury that I have reviewed the foregoing Answers to Interrogatories served by Andrew Greenberg, Sue Greenberg, and AWG, Inc., and that the information contained therein is true and correct to the best of my knowledge, information, and belief.

_____
Christopher E. Dorworth

Date: November 1, 2023

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| CHRISTOPHER E. DORWORTH,<br><br>        Plaintiff,<br><br>v.<br><br>JOEL MICAH GREENBERG, ANDREW W. GREENBERG, SUE GREENBERG, ABBY GREENBERG, AWG, INC., GREENBERG DENTAL ASSOCIATES, LLC, GREENBERG DENTAL & ORTHODONTICS, P.A., GREENBERG DENTAL SPECIALTY GROUP, LLC, and A.B.,<br><br>        Defendants. | Case No.: 6:23-CV-00871 |

**PLAINTIFF'S RESPONSES TO DEFENDANTS ANDREW GREENBERG,
SUE GREENBERG, AND AWG, INC.'S
FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

COMES NOW, Plaintiff Christopher E. Dorworth, and hereby submits his responses to Defendants Andrew Greenberg, Sue Greenberg, and AWG, Inc.'s First Set of Requests for Production of Documents. Plaintiff is applying ordinary dictionary definitions of terms and responding in accordance with the Federal Rules of Civil Procedure and rejects any attempt by Defendants to impose any additional or different requirements.

## RESPONSES TO REQUESTS FOR PRODUCTION

1.      All communications between or involving Plaintiff and A.B.

**Response:** None other than communications through counsel, DORWORTH000204-DORWORTH000234.

2.      All documents that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and A.B.

**Response:** None.

3.      All documents or communications that reference, discuss, regard, or relate to A.B., including by her name, any nickname, or under any pseudonym, such as "Vintage 99."

**Response:** See DORWORTH000535-DORWORTH000537, DORWORTH000204-DORWORTH000234, and DORWORTH000642-DORWORTH000649.

4.      All documents and communications that reference, discuss, reflect, regard, or relate to any one or more of the Greenbergs entering into any agreement with A.B. to pay A.B.'s attorney's fees.

**Response:** See DORWORTH000535-DORWORTH000537.

5.      All documents and communications that reference, discuss, reflect, regard, or relate to any one or more of the Greenbergs entering into any transaction with A.B.

**Response:** See DORWORTH000535-DORWORTH000537.

6.      All communications between or involving Plaintiff and Joel Greenberg.

**Response:** See DORWORTH000535-DORWORTH000537.

7.      All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Joel Greenberg.

**Response:** None. Plaintiff did not engage in transactions with Joel Greenberg. To the extent that Defendants are requesting documents reflecting transactions with Ballard Partners, Plaintiff no longer has access to Ballard Partners files or communications. Other than noted below, Plaintiff retained no responsive file materials or copies upon his departure from Ballard Partners. Such documents have been produced by Ballard Partners and the parties are directed to that

production. Plaintiff has also obtained documents from his lawyer from his production to the Government which contain transactions between Ballard Partners and entities controlled by Joel Greenberg. Those documents will be produced as well.

8.     All documents supporting your claim of financial harm stemming from your termination or resignation from Ballard Partners.

**Response:** See DORWORTH000285-DORWORTH000339 and DORWORTH000722-DORWORTH000732, see also production from Ballard Partners.

9.     All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Ballard Partners and Joel Greenberg.

**Response:** None in his possession, custody, or control. Plaintiff no longer has access to Ballard Partners files or communications. Other than noted below, Plaintiff retained no responsive file materials or copies upon his departure from Ballard Partners. Such documents have been produced by Ballard Partners and the parties are directed to that production. Plaintiff has also obtained documents from his lawyer from his production to the Government which contain transactions between Ballard Partners and entities controlled by Joel Greenberg. Those documents will be produced as well.

10.     All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Ballard Partners and the Seminole County Tax Collector's Office, including any employee, contractor, consultant, attorney, advisor, agent, or representative of the Seminole County Tax Collector's Office.

**Response:** None in his possession, custody, or control. Plaintiff no longer has access to Ballard Partners files or communications. Other than noted below, Plaintiff retained no responsive file materials or copies upon his departure from Ballard Partners. Such documents have been

produced by Ballard Partners and the parties are directed to that production. Plaintiff has also obtained documents from his lawyer from his production to the Government which contain transactions between Ballard Partners and entities controlled by Joel Greenberg. Those documents will be produced as well.

11.     All communications between or involving Plaintiff and the Seminole County Tax Collector's Office, including any employee, contractor, consultant, attorney, advisor, agent, or representative of the Seminole County Tax Collector's Office.

**Response:** To the extent this request seeks communications between Plaintiff and Joel Greenberg, see DORWORTH000535-DORWORTH000537. Such documents have been produced by Ballard Partners. Plaintiff has also obtained documents from his lawyer from his production to the Government which contain communications between Ballard Partners and entities controlled by Joel Greenberg. Those documents will be produced as well.

To the extent this request seeks communications between Plaintiff and the Seminole County Tax Collector's Office concerning lobbying activities, Plaintiff states this work was performed while he was an employee of Ballard Partners, and he no longer has access to Ballard Partners files or communications. Except as noted above, Plaintiff retained no responsive file materials or copies upon his departure from Ballard Partners.

To the extent this request seeks any other communications, Plaintiff does not believe he has communicated with any such persons other than as necessary to renew vehicle registration, pay property taxes, and other such functions of the Seminole County Tax Collector's Office. Such documents are not relevant to Joel Greenberg, Plaintiff's work for the Seminole County Tax Collector's Office, or any other allegation at issue herein, and Plaintiff objects to their production. In light of the foregoing objection, no search has been performed for such documents.

12.     All documents and communications that reference, discuss, reflect, regard, or relate to any transaction between Plaintiff and the Seminole County Tax Collector's Office, including any employee, contractor, consultant, attorney, advisor, agent, or representative of the Seminole County Tax Collector's Office.

**Response:** To the extent this request seeks communications between Plaintiff and the Seminole County Tax Collector's Office concerning lobbying activities, Plaintiff states this work was performed while he was an employee of Ballard Partners, and he no longer has access to Ballard Partners files or communications. Such documents have been produced by Ballard Partners. Plaintiff has also obtained documents from his lawyer from his production to the Government which contain communications between Ballard Partners and entities controlled by Joel Greenberg. Those documents will be produced as well. Except as noted above, Plaintiff retained no responsive file materials or copies upon his departure from Ballard Partners.

To the extent this request seeks any other communications, Plaintiff does not believe he has communicated with any such persons other than as necessary to renew vehicle registration, pay property taxes, and other such functions of the Seminole County Tax Collector's Office. Such documents are not relevant to Joel Greenberg, Plaintiff's work for the Seminole County Tax Collector's Office, or any other allegation at issue herein, and Plaintiff objects to their production. In light of the foregoing objection, no search has been performed for such documents.

13.     All documents and communications that reference, discuss, reflect, regard, or relate to your employment relationship with Ballard Partners and one or any combination of the following: (a) your performance, (b) compensation, (c) hours worked, (d) billing status, (e) company policies, and (d) relationships with other persons employed or otherwise associated with Ballard Partners.

**Response:** Plaintiff objects to the extent that this request calls for "all documents" that could conceivably relate to these matters. By way of example only, documents reflecting Plaintiff's "compensation" could include everything he has ever done during the time periods that involved expenditure of funds. Similarly, documents reflecting "relationships" has no limitation or definition.

Other than discussed herein, Plaintiff possesses no documents responsive to (a), (d), or (e). Any documents showing Plaintiff's "performance" have been produced by Ballard or would be other than that have been produced or will be produced in response to other requests. Plaintiff has no documents showing a performance evaluation or the like. Documents showing Plaintiff's performance of his work have been produced by Ballard. Plaintiff did not retain any such documents except for those in the possession of his criminal attorney which were produced to the Government and which will be produced to Defendants. With regard to subpart (b), see DORWORTH000722-DORWORTH000726. Plaintiff objects to subpart (f) [the second subpart (d)], as "documents and communications [regarding] relationships with other persons employed or otherwise associated with Ballard Partners" is vague and Plaintiff does not understand what Defendants are requesting. If Defendants wish to clarify what is sought by subpart (f), Plaintiff will reevaluate the objection.

14.     All Ballard Partners' policies, bylaws, regulations, employee handbooks, codes of conduct, or similar documents.

**Response:** Plaintiff is not in possession of responsive documents.

15.     Any employment agreement between Plaintiff and Ballard Partners.

**Response:** Plaintiff is not in possession of responsive documents other than his severance agreement, DORWORTH000727-DORWORTH000732.

16.     Any severance agreement between Plaintiff and Ballard Partners.

**Response:** See DORWORTH000727-DORWORTH000732.

17.     All documents and communications that reference, discuss, reflect, regard, or relate to your termination or resignation from Ballard Partners.

**Response:** See DORWORTH000727-DORWORTH000732. Other than these, any such documents would be publicly available news articles, some of which have been cited or produced.

18.     All communications involving any person employed or otherwise associated with Ballard Partners regarding one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

**Response:** None in his possession, custody, or control. Plaintiff no longer has access to Ballard Partners files or communications. Plaintiff retained no responsive file materials or copies upon his departure from Ballard Partners. Such documents have been produced by Ballard Partners. Plaintiff has also obtained documents from his lawyer from his production to the Government which contain communications between Ballard Partners and entities controlled by Joel Greenberg. Those documents will be produced as well.

19.     All documents and communications that reference, discuss, reflect, regard, or relate to your efforts to seek employment while employed at Ballard Partners or after your termination or resignation from Ballard Partners.

**Response:** With regard to efforts to seek employment while employed at Ballard Partners, no documents exist.

With regard to efforts to seek employment after his departure from Ballard Partners, Plaintiff states that in 2023, Plaintiff had a very general discussion with Brian Ballard about rejoining Ballard Partners. Although Ballard seemed open to the idea, he indicated Plaintiff would rejoin at a much lower compensation level than when he left. Although no offer was made or numbers discussed, given Plaintiff's familiarity with Ballard Partners' business model, Plaintiff understood Ballard's comment as indicating compensation around $180,000 to $200,000. Although it will take time given Defendants' harm to his reputation, Plaintiff believes he can rebuild his income faster on his own, so no further discussions were held with Ballard. No documents exist regarding the discussion.

20.     All payroll records, accounting records, and checks or other documents or communications that reference, discuss, reflect, or regard your wages, salary, bonuses, independent contractor income, distributions, dividends, and any of your other income or earnings in any capacity, whether as an employee, independent contractor, sole proprietor, partner, member or shareholder of an organization, or otherwise.

**Response:** To the extent this request seeks documents pertaining to Plaintiff's lobbying employment with Ballard Partners, see W2s produced at DORWORTH000722-DORWORTH000726. Documents have also been produced by Ballard Partners.

To the extent this request seeks Plaintiff's 2020-2021 tax returns and 2019 IRS Wage and Income Transcript, see DORWORTH000285-DORWORTH000339. Plaintiff is in the process of amending his 2019 tax return and will produce the amended return when available, which is anticipated to be within thirty days. Plaintiff objects to producing documents prior to 2019 as they are not relevant to his damages and would reflect other business not damaged by Defendants.

To the extent this request seeks other documents, Plaintiff objects, as such documents are not relevant to Plaintiff's damages and reflect other business not damaged by Defendants.

21.     All federal, state, and local income tax returns that you submitted, or that were submitted on your behalf, to a federal, state, or local government.

**Response:** To the extent this request seeks tax returns for 2020 and 2021, see DORWORTH000289-DORWORTH000339. To the extent this request seeks Plaintiff's 2019 IRS Wage and Income Transcript, see DORWORTH000285-DORWORTH000288. Plaintiff is in the process of amending his 2019 tax return and will produce the amended return when available, which is anticipated to be within thirty days. Plaintiff objects to producing documents prior to 2019 as they are not relevant to his damages and would reflect other business not damaged by Defendants.

22.     All I.R.S. forms and schedules (including, but not limited to, Form W-2, Form 1099, and Schedule K-1) that reflect your wages, salary, bonuses, independent contractor income, distributions, dividends, and any other income or earnings in any capacity, whether as an employee, independent contractor, sole proprietor, partner, member or shareholder of an organization, or otherwise.

**Response:** To the extent this request seeks Plaintiff's W2s from Ballard Partners, see DORWORTH000722-DORWORTH000726. Plaintiff objects to producing documents prior to 2019, as they are not relevant to his damages. Documents have also been produced by Ballard Partners.

To the extent this request seeks tax returns for 2020 and 2021, see DORWORTH000289-DORWORTH000339. To the extent this request seeks Plaintiff's 2019 IRS Wage and Income Transcript, see DORWORTH000285-DORWORTH000288. Plaintiff is in the process of

amending his 2019 tax return and will produce the amended return when available, which is anticipated to be within thirty days. Plaintiff objects to producing documents prior to 2019 as they are not relevant to his damages and would reflect other business not damaged by Defendants.

23.　　All financial statements for any entity or organization in which you have any ownership interest.  This request does not seek financial statements for entities or organizations listed on the following stock exchanges: New York Stock Exchange, Nasdaq, American Stock Exchange, Europe's STOXX 600, and London's FTSE.

**Response:** Dorworth has interests in the following entities:

- CED Strategies, LLC.

- IBW Public Affairs, Inc.

- River Cross Land Company.

- Heathrow Transport Partners, LLC.

- C. Jordan Enterprises. This was the original entity that owned the Oxford Sports Pub and Secret Society. Plaintiff purchased it when purchasing the restaurant.

- Raconteur Restaurant Group Inc. After purchasing C. Jordan Enterprises, Plaintiff transferred operation of the restaurant to this entity.

- Nirvana, FL, LLC

- Graceland Homes, Inc.

No financial statements exist for any of the foregoing entities; however, some financial information may be reflected on Plaintiff's tax returns.

Plaintiff also owns 20% interest in Aquaticus Plants, LLC. If financial statements exist, they are not within Plaintiff's possession, custody, or control.

24.     All documents and communications that reference, discuss, reflect, regard, or relate to any harm to Plaintiff's reputation as a result of the Greenbergs' alleged conduct referenced in the Verified Amended Complaint.   As noted in the Definitions above, Verified Amended Complaint includes any amended, supplemental, or successor complaint filed in this Action.

**Response:** See Exhibits 1, 3, 7, and 8 to Amended Complaint. See also DORWORTH000001-DORWORTH000203, DORWORTH000204-DORWORTH000210, and other news articles regarding the investigation into Plaintiff and the allegations made by A.B. against Plaintiff.

25.     All communications between or involving Plaintiff and Matt Gaetz.

**Response:** Plaintiff objects to the request for documents and communications with Congressman Matt Gaetz as overly broad and not limited to documents relevant to Plaintiff's claims or Defendants' defenses, such as documents concerning Defendants or the allegations at issue. Plaintiff and Congressman Gaetz are personal friends. They communicate on issues having nothing to do with the allegations at issue, e.g., their families, sports, and politics generally. Such communications are not relevant to Plaintiff's claims or Defendants' defenses. Plaintiff is withholding documents on the basis of the objection. However, Plaintiff has not texted with Gaetz about this case or any matters addressed in the operative pleading, and so there are no relevant documents.

As noted herein, Plaintiff will be producing non-privileged portions of Richard Hornsby's file within two weeks, including materials provided to the Government in response to an information subpoena. Plaintiff believes documents regarding Mr. Gaetz are contained therein, though none relate to Plaintiff's claims or Defendants' defenses. By producing these documents,

Plaintiff does not waive the foregoing objection to producing other documents or communications unrelated to Defendants or the allegations at issue.

26.     All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Matt Gaetz—or any staff person, family member, employee, contractor, consultant, attorney, advisor, agent, or representative of Matt Gaetz.

**Response:** None.

27.     All communications involving Matt Gaetz—or any staff person, family member, employee, contractor, consultant, attorney, advisor, agent, or representative of Matt Gaetz—that reference, discuss, regard, or relate to one or more of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes any amended, supplemental, or successor complaint filed in this Action.

**Response:** See DORWORTH000341-DORWORTH000350.

28.     All communications between or involving Plaintiff and Halsey Beshears.

**Response:** Plaintiff objects to the request for all communications as overly broad and not limited to documents relevant to Plaintiff's claims or Defendants' defenses, such as documents concerning Defendants or the allegations at issue. Plaintiff and Mr. Beshears are personal friends and communicate on issues having nothing to do with the allegations at issue, e.g., their families and a wedding in which Plaintiff's daughter was a flower girl. Such communications are not relevant to Plaintiff's claims or Defendants' defenses. Plaintiff is withholding documents on the basis of the objection.

29.     All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Halsey Beshears.

**Response:** None.

30.     All communications involving Halsey Beshears that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

**Response:** None.

31.     All documents or communications that reference, discuss, reflect, regard, or relate to state or federal investigations of Plaintiff related to any event or occurrence referenced in the Verified Complaint or Verified Amended Complaint.  As noted in the Definitions above, Verified Amended Complaint includes any amended, supplemental, or successor complaint filed in this Action.

**Response:** Plaintiff was represented by Richard Hornsby with regard to a grand jury subpoena issued to Plaintiff. Nonprivileged portions of Richard Hornsby's file will be produced within two weeks. A privilege log will be provided for any documents withheld.

32.     Any documents and communications supporting your allegation that the Greenbergs financed Joel's alleged defamatory and unlawful activities described in the Verified Amended Complaint with knowledge of those actions and with the intent that they be carried out. As noted in the Definitions above, Verified Amended Complaint includes any amended, supplemental, or successor complaint filed in this Action.

**Response:** See DORWORTH000535-DORWORTH000537. Plaintiff also had verbal communication with Joel Greenberg.

33.    All communications between Plaintiff and any Defendant in this Action.

**Response:** See DORWORTH000535-DORWORTH000537 and DORWORTH000204-DORWORTH000234.

34.    All documents and communications that reference, discuss, reflect, regard, or relate to polygraph tests, including but not limited to polygraph tests referenced in the Verified Complaint or the Verified Amended Complaint. As noted in the Definitions above, Verified Amended Complaint includes any amended, supplemental, or successor complaint filed in this Action.

**Response:** See DORWORTH000538-DORWORTH000641.

35.    All communications between or involving Plaintiff and the person referred to as "K.M." in the Verified Complaint.

**Response:** None.

36.    All communications involving the person referred to as "K.M." in the Verified Complaint that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

**Response:** None.

37.    All communications between or involving Plaintiff and Brianna Garcia.

**Response:** See DORWORTH 000756.

38.     All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Brianna Garcia.

**Response:** None.

39.     All communications involving Brianna Garcia that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

**Response:** None, other than the text noted above.

40.     All documents that discuss, reflect, support, or show that Joel Greenberg or A.B. made defamatory statements about Plaintiff or containing the statements themselves.

**Response:** See DORWORTH000409-DORWORTH000527, DORWORTH000204-DORWORTH000210, DORWORTH000642, and news articles regarding the investigation into Plaintiff. See also the Verified Amended Complaint and exhibits thereto.

41.     All communications between or involving Plaintiff and Michael Shirley.

**Response:** Plaintiff objects to the request for all communications as overly broad and not limited to documents relevant to Plaintiff's claims or Defendants' defenses, such as documents concerning Defendants or the allegations at issue. Plaintiff and Mr. Shirley are acquaintances who communicated on a potential consulting opportunity, though Mr. Shirley was not ultimately retained. Such communications are not relevant to Plaintiff's claims or Defendants' defenses. Plaintiff is withholding two documents on the basis of the objection.

42.     All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Michael Shirley.

**Response:** None.

43.     All communications involving Michael Shirley that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

**Response:** Plaintiff was listed as a potential defense witness in the matter of *U.S. vs Michael Shirley* but had no communication, oral or written, with any member of Shirley's defense team or Michael Shirley and did not testify. Undersigned counsel did reach out to Shirley's defense team after the trial to request information but did not receive any response. See DORWORTH 000757.

44.     All communications between or involving Plaintiff and Joe Ellicott.

 **Response:** Plaintiff performed a search and located no text messages with Ellicott. Dorworth's last communication with Ellicott was around the time Joel Greenberg was first indicted and was a phone call.

45.     All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Joe Ellicott.

**Response:** None.

46.     All communications involving Joe Ellicott that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event

or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

**Response:** None.

47.     All communications between or involving Plaintiff and Keith Ingersoll.

**Response:** None.

48.     All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Keith Ingersoll.

**Response:** None.

49.     All communications involving Keith Ingersoll that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

**Response:** None.

50.     All communications between or involving Plaintiff and Jestine Iannotti.

**Response:** None.

51.     All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Jestine Iannotti.

**Response:** None.

52.     All communications involving Jestine Iannotti that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

**Response:** None.

53.     All communications between Plaintiff and any other person regarding Iannotti's 2020 state senate campaign and any documents reflecting transactions involving Plaintiff and Iannotti's 2020 state senate campaign.

**Response:** None.

54.     All communications between or involving Plaintiff and Eric Foglesong.

**Response:** Plaintiff objects to the request for all communications as overly broad and not limited to documents relevant to Plaintiff's claims or Defendants' defenses, such as documents concerning Defendants or the allegations at issue. Plaintiff and Mr. Foglesong are personal friends and communicate on issues having nothing to do with the allegations at issue, e.g., their families, sports, current events. Such communications are not relevant to Plaintiff's claims or Defendants' defenses. Plaintiff is withholding documents on the basis of the objection.

55.     All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Eric Foglesong.

**Response:** In or around 2020, Plaintiff loaned Eric Foglesong $500 for Foglesong's spouse's dental work and was paid back the next week. Plaintiff performed a search for documents regarding the transaction but located none.

56.     All communications involving Eric Foglesong that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

**Response:** None.

57.     All communications between or involving Plaintiff and James H. Stelling.

**Response:** Plaintiff objects to the request for all communications as overly broad and not limited to documents relevant to Plaintiff's claims or Defendants' defenses, such as documents concerning Defendants or the allegations at issue. Plaintiff and Mr. Stelling are personal friends and former business partners, and they communicate on issues having nothing to do with the allegations at issue, e.g., their families, current events, and daily life. Such communications are not relevant to Plaintiff's claims or Defendants' defenses. Plaintiff is withholding documents on the basis of the objection.

58.     All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and James H. Stelling.

**Response:** Dorworth had no financial transactions with Jim Stelling since he first met Joel Greenberg in 2016 through the filing of this lawsuit. Dorworth objects to providing any records from timeframes before or after that period and withholds documents on that basis.

59.     All communications involving James H. Stelling that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the

Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

**Response:** None.

60.     All communications between or involving Plaintiff and Ben Paris.

**Response:** Plaintiff objects to the request for all communications as overly broad and not limited to documents relevant to Plaintiff's claims or Defendants' defenses, such as documents concerning Defendants or the allegations at issue. For a time, Ben Paris worked for Plaintiff at the Oxford Sports Pub and Secret Society and they communicated on issues having no relevance to Plaintiff's claims or Defendants' defenses. Plaintiff is withholding documents on the basis of the objection.

61.     All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Ben Paris.

**Response:** Ben Paris worked for Plaintiff at the Oxford Sports Pub and Secret Society for approximately six months while Paris was between jobs. Plaintiff is performing a search for Paris's wage information. This response will be supplemented.

62.     All communications involving Ben Paris that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

**Response:** See DORWORTH000672-DORWORTH000673.

63.     All communications involving any news reporting entity (including any newspaper, journal, online publication, magazine, or blog), or reporter, editor, employee, agent, volunteer, or proprietor thereof, that reference, discuss, regard, or relate to one or more of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any events or occurrences referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action.  As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

**Response:** See DORWORTH000642-DORWORTH000649 and DORWORTH000733-DORWORTH000734.

64.     All communications involving any other person that reference, discuss, regard, or relate to one or more of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any events or occurrences referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action.  As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint. This Request does not seek communications solely between Plaintiff and his attorney, Michael Beltran.

**Response:** Other than as previously addressed in response to other requests, none, other than communications between Plaintiff and his attorney, Richard Hornsby, which are subject to attorney-client privilege, and which are presumably also excluded from the scope of the request.

65.     All documents or bank statements from any bank or transaction service, such as Venmo, CashApp, PayPal, Apple Cash, etc., that reference, discuss, regard, or relate to any transaction between Plaintiff and Joel Greenberg or any transaction between Plaintiff and any other

person referenced in the Verified Complaint or the Amended Verified Complaint. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

**Response:** Plaintiff believes he wrote a check to Sue Greenberg for $1,000 in connection with a charity dinner in or around 2019, but is not in possession of the document. No other responsive documents exist.

66.    All communications with individuals other than your attorney(s) about your decision to file this lawsuit.

**Response:** None.

67.    All drafts, amendments, modifications, or prior, successive, revised, or alternate versions of any of the foregoing documents.

**Response:** Not applicable.

Date: November 1, 2023

/s/Michael Paul Beltran
Michael P Beltran
Fla. Bar No. 0093184
Beltran Litigation, P.A.
4920 West Cypress St.
Suite 104 PMB 5089
Tampa, FL 33607
813-870-3073 (o)
mike@beltranlitigation.com
*Counsel for Plaintiff Dorworth*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the date listed above, a copy of the foregoing document was served by email on all counsel of record:

Frederick S. Wermuth
    fwermuth@kbzwlaw.com
Dustin Mauser-Claassen
    dmauser@kbzwlaw.com
Quinn Ritter
    qritter@kbzwlaw.com
***Counsel for Andrew Greenberg***
***Sue Greenberg, and AWG, Inc.***

Michael J. Furbush
    mfurbush@deanmead.com
Michaela N. Kirn
    mkirn@deanmead.com
***Counsel for Greenberg Dental Entities***

Jesse Unruh
    jesse@spirelawfirm.com
Christopher W. Ford
    ford@hbcboulder.com
Laura Wolf
    laura@spark-law.com
***Counsel for A.B.***

Jason A. Perkins
    jperkins@carltonfields.com
Chelsey J. Clements
    cclements@carltonfields.com
Jason F. Bullinger
    jbullinger@carltonfields.com
***Counsel for Abby Greenberg***

Fritz Scheller
    fscheller@flusalaw.com
***Counsel for Joel Greenberg***

/s/Michael Paul Beltran
Michael P Beltran

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| CHRISTOPHER E. DORWORTH,<br><br>     Plaintiff,<br><br>v.<br><br>JOEL MICAH GREENBERG, ANDREW W.<br>GREENBERG, SUE GREENBERG, ABBY<br>GREENBERG, AWG, INC., GREENBERG<br>DENTAL ASSOCIATES, LLC, GREENBERG<br>DENTAL & ORTHODONTICS, P.A.,<br>GREENBERG DENTAL SPECIALTY GROUP,<br>LLC, and A.B.,<br><br>     Defendants. | Case No.: 6:23-CV-00871 |

**PLAINTIFF'S AMENDED AND SUPPLEMENTAL RESPONSES TO DEFENDANTS
ANDREW GREENBERG, SUE GREENBERG, AND AWG, INC.'S
FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS**

COMES NOW, Plaintiff Christopher E. Dorworth, and hereby submits his supplemental responses to Defendants Andrew Greenberg, Sue Greenberg, and AWG, Inc.'s First Set of Requests for Production of Documents. Plaintiff is applying ordinary dictionary definitions of terms and responding in accordance with the Federal Rules of Civil Procedure and rejects any attempt by Defendants to impose any additional or different requirements.

**AMENDED AND SUPPLEMENTAL
RESPONSES TO REQUESTS FOR PRODUCTION**

1.    All communications between or involving Plaintiff and A.B.

**Response:** None other than communications through counsel, DORWORTH000204-DORWORTH000234.

2.      All documents that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and A.B.

**Response:** None.

3.      All documents or communications that reference, discuss, regard, or relate to A.B., including by her name, any nickname, or under any pseudonym, such as "Vintage 99."

**Response:**   See   DORWORTH000535-DORWORTH000537,   DORWORTH000204-DORWORTH000234, and DORWORTH000642-DORWORTH000649.

**Amended Response: Following a diligent search and reasonable inquiry, Plaintiff refers Defendants to DORWORTH 000535 – DORWORTH 000537, DORWORTH 000204 - DORWORTH 000234, and DORWORTH 000642 - DORWORTH000649. Privileged written and oral communications occurred with Plaintiff's attorney, Richard Hornsby, and Plaintiff's spouse. See January 5, 2024, privilege log.**

4.      All documents and communications that reference, discuss, reflect, regard, or relate to any one or more of the Greenbergs entering into any agreement with A.B. to pay A.B.'s attorney's fees.

**Response:** See DORWORTH000535-DORWORTH000537.

5.      All documents and communications that reference, discuss, reflect, regard, or relate to any one or more of the Greenbergs entering into any transaction with A.B.

**Response:** See DORWORTH000535-DORWORTH000537.

6.      All communications between or involving Plaintiff and Joel Greenberg.

**Response:** See DORWORTH000535-DORWORTH000537.

7.      All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Joel Greenberg.

**Response:** None. Plaintiff did not engage in transactions with Joel Greenberg. To the extent that Defendants are requesting documents reflecting transactions with Ballard Partners, Plaintiff no longer has access to Ballard Partners files or communications. Other than noted below, Plaintiff retained no responsive file materials or copies upon his departure from Ballard Partners. Such documents have been produced by Ballard Partners and the parties are directed to that production. Plaintiff has also obtained documents from his lawyer from his production to the Government which contain transactions between Ballard Partners and entities controlled by Joel Greenberg. Those documents will be produced as well.

8.      All documents supporting your claim of financial harm stemming from your termination or resignation from Ballard Partners.

**Response:** See DORWORTH000285-DORWORTH000339 and DORWORTH000722-DORWORTH000732, see also production from Ballard Partners.

9.      All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Ballard Partners and Joel Greenberg.

**Response:** None in his possession, custody, or control. Plaintiff no longer has access to Ballard Partners files or communications. Other than noted below, Plaintiff retained no responsive file materials or copies upon his departure from Ballard Partners. Such documents have been produced by Ballard Partners and the parties are directed to that production. Plaintiff has also obtained documents from his lawyer from his production to the Government which contain transactions between Ballard Partners and entities controlled by Joel Greenberg. Those documents will be produced as well.

**Supplemental Response: Non-privileged portions of Richard Hornsby's file have been produced at DORWORTH 000766-DORWORTH 002114.**

10.     All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Ballard Partners and the Seminole County Tax Collector's Office, including any employee, contractor, consultant, attorney, advisor, agent, or representative of the Seminole County Tax Collector's Office.

**Response:** None in his possession, custody, or control. Plaintiff no longer has access to Ballard Partners files or communications. Other than noted below, Plaintiff retained no responsive file materials or copies upon his departure from Ballard Partners. Such documents have been produced by Ballard Partners and the parties are directed to that production. Plaintiff has also obtained documents from his lawyer from his production to the Government which contain transactions between Ballard Partners and entities controlled by Joel Greenberg. Those documents will be produced as well.

**Supplemental Response: Non-privileged portions of Richard Hornsby's file have been produced at DORWORTH 000766-DORWORTH 002114.**

11.     All communications between or involving Plaintiff and the Seminole County Tax Collector's Office, including any employee, contractor, consultant, attorney, advisor, agent, or representative of the Seminole County Tax Collector's Office.

**Response:** To the extent this request seeks communications between Plaintiff and Joel Greenberg, see  DORWORTH000535-DORWORTH000537. Such documents have been produced by Ballard Partners. Plaintiff has also obtained documents from his lawyer from his production to the Government which contain communications between Ballard Partners and entities controlled by Joel Greenberg. Those documents will be produced as well.

To the extent this request seeks communications between Plaintiff and the Seminole County Tax Collector's Office concerning lobbying activities, Plaintiff states this work was

performed while he was an employee of Ballard Partners, and he no longer has access to Ballard Partners files or communications. Except as noted above, Plaintiff retained no responsive file materials or copies upon his departure from Ballard Partners.

To the extent this request seeks any other communications, Plaintiff does not believe he has communicated with any such persons other than as necessary to renew vehicle registration, pay property taxes, and other such functions of the Seminole County Tax Collector's Office. Such documents are not relevant to Joel Greenberg, Plaintiff's work for the Seminole County Tax Collector's Office, or any other allegation at issue herein, and Plaintiff objects to their production. In light of the foregoing objection, no search has been performed for such documents.

**Amended Response: To the extent this request seeks communications between Plaintiff and Joel Greenberg, see DORWORTH 000535-DORWORTH 000537. Such documents have been produced by Ballard Partners. Plaintiff has also obtained documents from his lawyer from his production to the Government which contain communications between Ballard Partners and entities controlled by Joel Greenberg. Those documents have been produced at DORWORTH 000766-DORWORTH 002114.**

**To the extent this request seeks communications between Plaintiff and the Seminole County Tax Collector's Office concerning lobbying activities, Plaintiff states this work was performed while he was an employee of Ballard Partners, and he no longer has access to Ballard Partners files or communications. Except as noted above, Plaintiff retained no responsive file materials or copies upon his departure from Ballard Partners.**

**To the extent this request seeks any other communications, Plaintiff does not believe he has communicated with any such persons other than as necessary to renew vehicle registration, pay property taxes, and other such functions of the Seminole County Tax**

**Collector's Office. Such documents are not relevant to Joel Greenberg, Plaintiff's work for the Seminole County Tax Collector's Office, or any other allegation at issue herein, and Plaintiff objects to their production. In light of the foregoing objection, no search has been performed for documents concerning Plaintiff's payment of property taxes, vehicle registration renewals, and other such routine functions of the Seminole County Tax Collector's Office.**

12.     All documents and communications that reference, discuss, reflect, regard, or relate to any transaction between Plaintiff and the Seminole County Tax Collector's Office, including any employee, contractor, consultant, attorney, advisor, agent, or representative of the Seminole County Tax Collector's Office.

**Response:** To the extent this request seeks communications between Plaintiff and the Seminole County Tax Collector's Office concerning lobbying activities, Plaintiff states this work was performed while he was an employee of Ballard Partners, and he no longer has access to Ballard Partners files or communications. Such documents have been produced by Ballard Partners. Plaintiff has also obtained documents from his lawyer from his production to the Government which contain communications between Ballard Partners and entities controlled by Joel Greenberg. Those documents will be produced as well. Except as noted above, Plaintiff retained no responsive file materials or copies upon his departure from Ballard Partners.

To the extent this request seeks any other communications, Plaintiff does not believe he has communicated with any such persons other than as necessary to renew vehicle registration, pay property taxes, and other such functions of the Seminole County Tax Collector's Office. Such documents are not relevant to Joel Greenberg, Plaintiff's work for the Seminole County Tax

Collector's Office, or any other allegation at issue herein, and Plaintiff objects to their production. In light of the foregoing objection, no search has been performed for such documents.

**Amended Response: To the extent this request seeks communications between Plaintiff and the Seminole County Tax Collector's Office concerning lobbying activities, Plaintiff states this work was performed while he was an employee of Ballard Partners, and he no longer has access to Ballard Partners files or communications. Such documents have been produced by Ballard Partners. Plaintiff has also obtained documents from his lawyer from his production to the Government which contain communications between Ballard Partners and entities controlled by Joel Greenberg. Those documents have been produced at DORWORTH 000766-DORWORTH 002114. Except as noted above, Plaintiff retained no responsive file materials or copies upon his departure from Ballard Partners.**

**To the extent this request seeks any other communications, Plaintiff does not believe he has communicated with any such persons other than as necessary to renew vehicle registration, pay property taxes, and other such functions of the Seminole County Tax Collector's Office. Such documents are not relevant to Joel Greenberg, Plaintiff's work for the Seminole County Tax Collector's Office, or any other allegation at issue herein, and Plaintiff objects to their production. In light of the foregoing objection, no search has been performed for documents concerning Plaintiff's payment of property taxes, vehicle registration renewals, and other such routine functions of the Seminole County Tax Collector's Office.**

13.    All documents and communications that reference, discuss, reflect, regard, or relate to your employment relationship with Ballard Partners and one or any combination of the following: (a) your performance, (b) compensation, (c) hours worked, (d) billing status, (e)

company policies, and (d) relationships with other persons employed or otherwise associated with Ballard Partners.

**Response:** Plaintiff objects to the extent that this request calls for "all documents" that could conceivably relate to these matters. By way of example only, documents reflecting Plaintiff's "compensation" could include everything he has ever done during the time periods that involved expenditure of funds. Similarly, documents reflecting "relationships" has no limitation or definition.

Other than discussed herein, Plaintiff possesses no documents responsive to (a), (d), or (e). Any documents showing Plaintiff's "performance" have been produced by Ballard or would be other than that have been produced or will be produced in response to other requests. Plaintiff has no documents showing a performance evaluation or the like. Documents showing Plaintiff's performance of his work have been produced by Ballard. Plaintiff did not retain any such documents except for those in the possession of his criminal attorney which were produced to the Government and which will be produced to Defendants. With regard to subpart (b), see DORWORTH000722-DORWORTH000726. Plaintiff objects to subpart (f) [the second subpart (d)], as "documents and communications [regarding] relationships with other persons employed or otherwise associated with Ballard Partners" is vague and Plaintiff does not understand what Defendants are requesting. If Defendants wish to clarify what is sought by subpart (f), Plaintiff will reevaluate the objection.

14.     All Ballard Partners' policies, bylaws, regulations, employee handbooks, codes of conduct, or similar documents.

**Response:** Plaintiff is not in possession of responsive documents.

15.     Any employment agreement between Plaintiff and Ballard Partners.

**Response:** Plaintiff is not in possession of responsive documents other than his severance agreement, DORWORTH000727-DORWORTH000732.

16.     Any severance agreement between Plaintiff and Ballard Partners.

**Response:** See DORWORTH000727-DORWORTH000732.

17.     All documents and communications that reference, discuss, reflect, regard, or relate to your termination or resignation from Ballard Partners.

**Response:** See DORWORTH000727-DORWORTH000732. Other than these, any such documents would be publicly available news articles, some of which have been cited or produced.

**Amended Response: See DORWORTH 000727-DORWORTH000 732. Other than these, any such documents would be publicly available news articles, some of which have been cited or produced. See DORWORTH 000001-DORWORTH 000203.**

18.     All communications involving any person employed or otherwise associated with Ballard Partners regarding one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

**Response:** None in his possession, custody, or control. Plaintiff no longer has access to Ballard Partners files or communications. Plaintiff retained no responsive file materials or copies upon his departure from Ballard Partners. Such documents have been produced by Ballard Partners. Plaintiff has also obtained documents from his lawyer from his production to the Government which contain communications between Ballard Partners and entities controlled by Joel Greenberg. Those documents will be produced as well.

**Supplemental Response: Non-privileged portions of Richard Hornsby's file have been produced at DORWORTH 000766-DORWORTH 002114.**

19.     All documents and communications that reference, discuss, reflect, regard, or relate to your efforts to seek employment while employed at Ballard Partners or after your termination or resignation from Ballard Partners.

**Response:** With regard to efforts to seek employment while employed at Ballard Partners, no documents exist.

With regard to efforts to seek employment after his departure from Ballard Partners, Plaintiff states that in 2023, Plaintiff had a very general discussion with Brian Ballard about rejoining Ballard Partners. Although Ballard seemed open to the idea, he indicated Plaintiff would rejoin at a much lower compensation level than when he left. Although no offer was made or numbers discussed, given Plaintiff's familiarity with Ballard Partners' business model, Plaintiff understood Ballard's comment as indicating compensation around $180,000 to $200,000. Although it will take time given Defendants' harm to his reputation, Plaintiff believes he can rebuild his income faster on his own, so no further discussions were held with Ballard. No documents exist regarding the discussion.

20.     All payroll records, accounting records, and checks or other documents or communications that reference, discuss, reflect, or regard your wages, salary, bonuses, independent contractor income, distributions, dividends, and any of your other income or earnings in any capacity, whether as an employee, independent contractor, sole proprietor, partner, member or shareholder of an organization, or otherwise.

**Response:** To the extent this request seeks documents pertaining to Plaintiff's lobbying employment with Ballard Partners, see W2s produced at DORWORTH000722-DORWORTH000726. Documents have also been produced by Ballard Partners.

To the extent this request seeks Plaintiff's 2020-2021 tax returns and 2019 IRS Wage and Income Transcript, see DORWORTH000285-DORWORTH000339. Plaintiff is in the process of amending his 2019 tax return and will produce the amended return when available, which is anticipated to be within thirty days. Plaintiff objects to producing documents prior to 2019 as they are not relevant to his damages and would reflect other business not damaged by Defendants.

To the extent this request seeks other documents, Plaintiff objects, as such documents are not relevant to Plaintiff's damages and reflect other business not damaged by Defendants.

21.     All federal, state, and local income tax returns that you submitted, or that were submitted on your behalf, to a federal, state, or local government.

**Response:** To the extent this request seeks tax returns for 2020 and 2021, see DORWORTH000289-DORWORTH000339. To the extent this request seeks Plaintiff's 2019 IRS Wage and Income Transcript, see DORWORTH000285-DORWORTH000288. Plaintiff is in the process of amending his 2019 tax return and will produce the amended return when available, which is anticipated to be within thirty days. Plaintiff objects to producing documents prior to 2019 as they are not relevant to his damages and would reflect other business not damaged by Defendants.

22.     All I.R.S. forms and schedules (including, but not limited to, Form W-2, Form 1099, and Schedule K-1) that reflect your wages, salary, bonuses, independent contractor income, distributions, dividends, and any other income or earnings in any capacity, whether as an

employee, independent contractor, sole proprietor, partner, member or shareholder of an organization, or otherwise.

**Response:** To the extent this request seeks Plaintiff's W2s from Ballard Partners, see DORWORTH000722-DORWORTH000726. Plaintiff objects to producing documents prior to 2019, as they are not relevant to his damages. Documents have also been produced by Ballard Partners.

To the extent this request seeks tax returns for 2020 and 2021, see DORWORTH000289-DORWORTH000339. To the extent this request seeks Plaintiff's 2019 IRS Wage and Income Transcript, see DORWORTH000285-DORWORTH000288. Plaintiff is in the process of amending his 2019 tax return and will produce the amended return when available, which is anticipated to be within thirty days. Plaintiff objects to producing documents prior to 2019 as they are not relevant to his damages and would reflect other business not damaged by Defendants.

23.    All financial statements for any entity or organization in which you have any ownership interest.  This request does not seek financial statements for entities or organizations listed on the following stock exchanges: New York Stock Exchange, Nasdaq, American Stock Exchange, Europe's STOXX 600, and London's FTSE.

**Response:** Dorworth has interests in the following entities:

- CED Strategies, LLC.

- IBW Public Affairs, Inc.

- River Cross Land Company.

- Heathrow Transport Partners, LLC.

- C. Jordan Enterprises. This was the original entity that owned the Oxford Sports Pub and Secret Society. Plaintiff purchased it when purchasing the restaurant.

- Raconteur Restaurant Group Inc. After purchasing C. Jordan Enterprises, Plaintiff transferred operation of the restaurant to this entity.

- Nirvana, FL, LLC

- Graceland Homes, Inc.

No financial statements exist for any of the foregoing entities; however, some financial information may be reflected on Plaintiff's tax returns.

Plaintiff also owns 20% interest in Aquaticus Plants, LLC. If financial statements exist, they are not within Plaintiff's possession, custody, or control.

24.     All documents and communications that reference, discuss, reflect, regard, or relate to any harm to Plaintiff's reputation as a result of the Greenbergs' alleged conduct referenced in the Verified Amended Complaint.  As noted in the Definitions above, Verified Amended Complaint includes any amended, supplemental, or successor complaint filed in this Action.

**Response:**  See Exhibits 1, 3, 7, and 8 to Amended Complaint. See also DORWORTH000001-DORWORTH000203,  DORWORTH000204-DORWORTH000210,  and other news articles regarding the investigation into Plaintiff and the allegations made by A.B. against Plaintiff.

25.     All communications between or involving Plaintiff and Matt Gaetz.

**Response:** Plaintiff objects to the request for documents and communications with Congressman Matt Gaetz as overly broad and not limited to documents relevant to Plaintiff's claims or Defendants' defenses, such as documents concerning Defendants or the allegations at issue. Plaintiff and Congressman Gaetz are personal friends. They communicate on issues having nothing to do with the allegations at issue, e.g., their families, sports, and politics generally. Such communications are not relevant to Plaintiff's claims or Defendants' defenses. Plaintiff is

withholding documents on the basis of the objection. However, Plaintiff has not texted with Gaetz about this case or any matters addressed in the operative pleading, and so there are no relevant documents.

As noted herein, Plaintiff will be producing non-privileged portions of Richard Hornsby's file within two weeks, including materials provided to the Government in response to an information subpoena. Plaintiff believes documents regarding Mr. Gaetz are contained therein, though none relate to Plaintiff's claims or Defendants' defenses. By producing these documents, Plaintiff does not waive the foregoing objection to producing other documents or communications unrelated to Defendants or the allegations at issue.

**Supplemental Response: Plaintiff incorporates the above objections, and continues to object to producing documents and communications unrelated to the Defendants or the allegations at issue. That said, non-privileged portions of Richard Hornsby's file produced at DORWORTH 000766-DORWORTH 002114 contain certain responsive documents. In addition, DORWORTH 002115-DORWORTH 002116 reflects a December 14, 2023, text message from Matt Gaetz to Plaintiff regarding an apology letter from Joel Greenberg.**

26.     All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Matt Gaetz—or any staff person, family member, employee, contractor, consultant, attorney, advisor, agent, or representative of Matt Gaetz.

**Response:** None.

27.     All communications involving Matt Gaetz—or any staff person, family member, employee, contractor, consultant, attorney, advisor, agent, or representative of Matt Gaetz—that reference, discuss, regard, or relate to one or more of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this

Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes any amended, supplemental, or successor complaint filed in this Action.

**Response:** See DORWORTH000341-DORWORTH000350.

**Supplemental Response: See also DORWORTH 002115-DORWORTH 002116.**

28.      All communications between or involving Plaintiff and Halsey Beshears.

**Response:** Plaintiff objects to the request for all communications as overly broad and not limited to documents relevant to Plaintiff's claims or Defendants' defenses, such as documents concerning Defendants or the allegations at issue. Plaintiff and Mr. Beshears are personal friends and communicate on issues having nothing to do with the allegations at issue, e.g., their families and a wedding in which Plaintiff's daughter was a flower girl. Such communications are not relevant to Plaintiff's claims or Defendants' defenses. Plaintiff is withholding documents on the basis of the objection.

29.      All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Halsey Beshears.

**Response:** None.

30.      All communications involving Halsey Beshears that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

**Response:** None.

31.     All documents or communications that reference, discuss, reflect, regard, or relate to state or federal investigations of Plaintiff related to any event or occurrence referenced in the Verified Complaint or Verified Amended Complaint.  As noted in the Definitions above, Verified Amended Complaint includes any amended, supplemental, or successor complaint filed in this Action.

**Response:** Plaintiff was represented by Richard Hornsby with regard to a grand jury subpoena issued to Plaintiff. Nonprivileged portions of Richard Hornsby's file will be produced within two weeks. A privilege log will be provided for any documents withheld.

32.     Any documents and communications supporting your allegation that the Greenbergs financed Joel's alleged defamatory and unlawful activities described in the Verified Amended Complaint with knowledge of those actions and with the intent that they be carried out. As noted in the Definitions above, Verified Amended Complaint includes any amended, supplemental, or successor complaint filed in this Action.

**Response:** See DORWORTH000535-DORWORTH000537.  Plaintiff also had verbal communication with Joel Greenberg.

33.     All communications between Plaintiff and any Defendant in this Action.

**Response:** See DORWORTH000535-DORWORTH000537 and DORWORTH000204-DORWORTH000234.

34.     All documents and communications that reference, discuss, reflect, regard, or relate to polygraph tests, including but not limited to polygraph tests referenced in the Verified Complaint or the Verified Amended Complaint. As noted in the Definitions above, Verified Amended Complaint includes any amended, supplemental, or successor complaint filed in this Action.

**Response:** See DORWORTH000538-DORWORTH000641.

35.    All communications between or involving Plaintiff and the person referred to as "K.M." in the Verified Complaint.

**Response:** None.

36.    All communications involving the person referred to as "K.M." in the Verified Complaint that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

**Response:** None.

37.    All communications between or involving Plaintiff and Brianna Garcia.

**Response:** See DORWORTH 000756.

**Supplemental Response: See also DORWORTH 001940-DORWORTH 001950, that were contained within the Hornsby file.**

38.    All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Brianna Garcia.

**Response:** None.

39.    All communications involving Brianna Garcia that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As

noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

**Response:** None, other than the text noted above.

40.    All documents that discuss, reflect, support, or show that Joel Greenberg or A.B. made defamatory statements about Plaintiff or containing the statements themselves.

**Response:**    See    DORWORTH000409-DORWORTH000527,    DORWORTH000204-DORWORTH000210, DORWORTH000642, and news articles regarding the investigation into Plaintiff. See also the Verified Amended Complaint and exhibits thereto.

41.    All communications between or involving Plaintiff and Michael Shirley.

**Response:** Plaintiff objects to the request for all communications as overly broad and not limited to documents relevant to Plaintiff's claims or Defendants' defenses, such as documents concerning Defendants or the allegations at issue. Plaintiff and Mr. Shirley are acquaintances who communicated on a potential consulting opportunity, though Mr. Shirley was not ultimately retained. Such communications are not relevant to Plaintiff's claims or Defendants' defenses. Plaintiff is withholding two documents on the basis of the objection.

42.    All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Michael Shirley.

**Response:** None.

43.    All communications involving Michael Shirley that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As

noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

**Response:** Plaintiff was listed as a potential defense witness in the matter of *U.S. vs Michael Shirley* but had no communication, oral or written, with any member of Shirley's defense team or Michael Shirley and did not testify. Undersigned counsel did reach out to Shirley's defense team after the trial to request information but did not receive any response. See DORWORTH 000757.

44.     All communications between or involving Plaintiff and Joe Ellicott.

**Response:** Plaintiff performed a search and located no text messages with Ellicott. Dorworth's last communication with Ellicott was around the time Joel Greenberg was first indicted and was a phone call.

45.     All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Joe Ellicott.

**Response:** None.

46.     All communications involving Joe Ellicott that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

**Response:** None.

47.     All communications between or involving Plaintiff and Keith Ingersoll.

**Response:** None.

48.     All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Keith Ingersoll.

**Response:** None.

49.     All communications involving Keith Ingersoll that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

**Response:** None.

50.     All communications between or involving Plaintiff and Jestine Iannotti.

**Response:** None.

51.     All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Jestine Iannotti.

**Response:** None.

52.     All communications involving Jestine Iannotti that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

**Response:** None.

53.     All communications between Plaintiff and any other person regarding Iannotti's 2020 state senate campaign and any documents reflecting transactions involving Plaintiff and Iannotti's 2020 state senate campaign.

**Response:** None.

54.     All communications between or involving Plaintiff and Eric Foglesong.

 **Response:** Plaintiff objects to the request for all communications as overly broad and not limited to documents relevant to Plaintiff's claims or Defendants' defenses, such as documents concerning Defendants or the allegations at issue. Plaintiff and Mr. Foglesong are personal friends and communicate on issues having nothing to do with the allegations at issue, e.g., their families, sports, current events. Such communications are not relevant to Plaintiff's claims or Defendants' defenses. Plaintiff is withholding documents on the basis of the objection.

55.     All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Eric Foglesong.

**Response:** In or around 2020, Plaintiff loaned Eric Foglesong $500 for Foglesong's spouse's dental work and was paid back the next week. Plaintiff performed a search for documents regarding the transaction but located none.

56.     All communications involving Eric Foglesong that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

**Response:** None.

57.   All communications between or involving Plaintiff and James H. Stelling.

**Response:** Plaintiff objects to the request for all communications as overly broad and not limited to documents relevant to Plaintiff's claims or Defendants' defenses, such as documents concerning Defendants or the allegations at issue. Plaintiff and Mr. Stelling are personal friends and former business partners, and they communicate on issues having nothing to do with the allegations at issue, e.g., their families, current events, and daily life. Such communications are not relevant to Plaintiff's claims or Defendants' defenses. Plaintiff is withholding documents on the basis of the objection.

58.   All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and James H. Stelling.

**Response:** Dorworth had no financial transactions with Jim Stelling since he first met Joel Greenberg in 2016 through the filing of this lawsuit. Dorworth objects to providing any records from timeframes before or after that period and withholds documents on that basis.

59.   All communications involving James H. Stelling that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

**Response:** None.

60.   All communications between or involving Plaintiff and Ben Paris.

**Response:** Plaintiff objects to the request for all communications as overly broad and not limited to documents relevant to Plaintiff's claims or Defendants' defenses, such as documents

concerning Defendants or the allegations at issue. For a time, Ben Paris worked for Plaintiff at the Oxford Sports Pub and Secret Society and they communicated on issues having no relevance to Plaintiff's claims or Defendants' defenses. Plaintiff is withholding documents on the basis of the objection.

61.    All documents and communications that reference, discuss, reflect, regard, or relate to transactions between Plaintiff and Ben Paris.

**Response:** Ben Paris worked for Plaintiff at the Oxford Sports Pub and Secret Society for approximately six months while Paris was between jobs. Plaintiff is performing a search for Paris's wage information. This response will be supplemented.

62.    All communications involving Ben Paris that reference, discuss, regard, or relate to one or any combination of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any event or occurrence referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

**Response:** See DORWORTH000672-DORWORTH000673.

63.    All communications involving any news reporting entity (including any newspaper, journal, online publication, magazine, or blog), or reporter, editor, employee, agent, volunteer, or proprietor thereof, that reference, discuss, regard, or relate to one or more of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any events or occurrences referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action.  As noted in the Definitions above, Verified Amended Complaint

includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

**Response:** See DORWORTH000642-DORWORTH000649 and DORWORTH000733-DORWORTH000734.

64.    All communications involving any other person that reference, discuss, regard, or relate to one or more of the following: (a) Joel Greenberg, (b) the Greenbergs, (c) any events or occurrences referenced in the Verified Amended Complaint, (d) this Action, (e) the Verified Complaint, (f) the Verified Amended Complaint, and (g) any filing in this Action.  As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint. This Request does not seek communications solely between Plaintiff and his attorney, Michael Beltran.

**Response:** Other than as previously addressed in response to other requests, none, other than communications between Plaintiff and his attorney, Richard Hornsby, which are subject to attorney-client privilege, and which are presumably also excluded from the scope of the request.

65.    All documents or bank statements from any bank or transaction service, such as Venmo, CashApp, PayPal, Apple Cash, etc., that reference, discuss, regard, or relate to any transaction between Plaintiff and Joel Greenberg or any transaction between Plaintiff and any other person referenced in the Verified Complaint or the Amended Verified Complaint. As noted in the Definitions above, Verified Amended Complaint includes the Verified Amended Complaint and any amended, supplemental, or successor complaint.

**Response:** Plaintiff believes he wrote a check to Sue Greenberg for $1,000 in connection with a charity dinner in or around 2019, but is not in possession of the document. No other responsive documents exist.

66.     All communications with individuals other than your attorney(s) about your decision to file this lawsuit.

**Response:** None.

67.     All drafts, amendments, modifications, or prior, successive, revised, or alternate versions of any of the foregoing documents.

**Response:** Not applicable.

Date: February 5, 2024                    /s/Michael Paul Beltran
                                          Michael P Beltran
                                          Fla. Bar No. 0093184
                                          Beltran Litigation, P.A.
                                          4920 West Cypress St.
                                          Suite 104 PMB 5089
                                          Tampa, FL 33607
                                          813-870-3073 (o)
                                          mike@beltranlitigation.com
                                          *Counsel for Plaintiff Dorworth*

## CERTIFICATE OF SERVICE

I certify that on the date listed above, a copy of the foregoing document was served by email on all counsel of record:

Frederick S. Wermuth
    fwermuth@kbzwlaw.com
Dustin Mauser-Claassen
    dmauser@kbzwlaw.com
Quinn Ritter
    qritter@kbzwlaw.com
***Counsel for Andrew Greenberg***
***Sue Greenberg, and AWG, Inc.***

Michael J. Furbush
    mfurbush@deanmead.com
Michaela N. Kirn
    mkirn@deanmead.com
***Counsel for Greenberg Dental Entities***

Jesse Unruh
    jesse@spirelawfirm.com
Christopher W. Ford
    ford@hbcboulder.com
Laura Wolf
    laura@spark-law.com
***Counsel for A.B.***

Jason A. Perkins
    jperkins@carltonfields.com
Chelsey J. Clements
    cclements@carltonfields.com
Jason F. Bullinger
    jbullinger@carltonfields.com
***Counsel for Abby Greenberg***

Fritz Scheller
    fscheller@flusalaw.com
***Counsel for Joel Greenberg***

/s/Michael Paul Beltran
Michael P Beltran

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHRISTOPHER E. DORWORTH,

      Plaintiff,

v.

JOEL MICAH GREENBERG, ANDREW W.
GREENBERG, SUE GREENBERG, ABBY
GREENBERG, AWG, INC., GREENBERG
DENTAL ASSOCIATES, LLC, GREENBERG
DENTAL & ORTHODONTICS, P.A.,
GREENBERG DENTAL SPECIALTY GROUP,
LLC, and A.B.,

      Defendants.

Case No.: 6:23-CV-00871

---

**PLAINTIFF'S AMENDED ANSWERS TO DEFENDANTS ANDREW GREENBERG, SUE GREENBERG, AND AWG, INC.'S FIRST SET OF INTERROGATORIES**

      COMES NOW, Plaintiff Christopher E. Dorworth, and hereby submits his supplemental answers to Defendants Andrew Greenberg, Sue Greenberg, and AWG, Inc.'s First Set of Interrogatories. Plaintiff is applying ordinary dictionary definitions of terms and responding in accordance with the Federal Rules of Civil Procedure and rejects any attempt by Defendants to impose any additional or different requirements.

**AMENDED ANSWERS TO INTERROGATORIES**

**Interrogatory No. 1**

      Identify and Describe all oral or other communications, interactions, or transactions with A.B. or with third-parties that directly or indirectly reference A.B., including by name, nickname, or any pseudonym such as "Vintage 99."

*Consistent with the definitions of Identify and Describe above, your response should identify (a) each person who is a party or witness to each communication, interaction, or transaction, then explain with particularity (b) the substance of the communication, interaction, or transaction, (2) the date (or approximation), (3) the location, and (4) the words or action of each party to the*

*communication, interaction, or transaction. This interrogatory does not seek communications solely between Plaintiff and his attorney, Michael Beltran.*

**Answer:** Plaintiff has no memory of ever interacting with A.B. He did not ever meet her at a hotel, and he does not recall her ever coming to his house.

The request to "identify and describe oral or other communications with third parties that directly or indirectly reference A.B." is overly broad. It is not limited to communications to/from specific individuals or groups of individuals, such as the media or law enforcement. It is also not limited to particular topics, such as A.B.'s demand letter to Plaintiff or A.B.'s allegations against Plaintiff. Due to overbreadth, the interrogatory also may seek information protected by attorney-client privilege, husband-wife privilege, or other recognized privileges. In addition, a communication directly or indirectly referencing "A.B.," without more, is not relevant to Plaintiff's claims or Defendants' defenses. Due to the overbreadth, Plaintiff has not performed a search for responsive documents and is not withholding any documents Plaintiff would, however, note that DORWORTH000535, produced in response to A.B.'s requests for production, contains responsive information. See also the Exhibits to the Amended Complaint.

**Amended Answer: Plaintiff has no memory of ever interacting with A.B. He did not ever meet her at a hotel, and he does not recall her ever coming to his house. Following a diligent search and reasonable inquiry, Plaintiff refers Defendants to DORWORTH 000535-DORWORTH 000537, DORWORTH 000204 – DORWORTH 000234, and DORWORTH 000642-DORWORTH 000649, previously produced. Privileged written and oral communications occurred with Plaintiff's attorney, Richard Hornsby, and Plaintiff's spouse. See Plaintiff's January 5, 2024, privilege log. Plaintiff objects to identifying the content of privileged communications.**

**Interrogatory No. 2**

Identify and Describe every fact supporting your claim that the Greenbergs entered into an agreement to mitigate Joel Greenberg's criminal liability by falsely accusing Plaintiff of illegal activity.

**Answer:** See Complaint and Amended Complaint. See also Joel Greenberg's statements described in the "Greenberg Presses Dorworth and Others for a Pardon or other Mitigation of his Exposure" Section of the Amended Complaint. See also documents produced by Abby Greenberg, Joel Greenberg, Sue Greenberg, and Andrew Greenberg, including AbbyGreenberg000212-000218. See also Exhibits 1, 3, 7 and 8 to Amended Complaint. See A.B.'s demand letter and news reports regarding the Investigation into Dorworth. Discovery is just beginning. This answer may be supplemented.

**Amended Answer: In a conversation between Joel Greenberg and Plaintiff Dorworth that occurred shortly after Joel Greenberg confronted Rebekah Dorworth at the Marriott hotel, Joel Greenberg said that he was concerned about his exposure for sexual misconduct with A.B. Greenberg told Dorworth that he was paying for A.B.'s attorney's fees in an attempt to shape her testimony so that he could avoid charges. Greenberg also told Dorworth that he and his parents would seek A.B.'s cooperation by "paying her off" and that he had determined that A.B. would accept such inducement. Greenberg told Dorworth that his family and their businesses would pay any amount necessary to obtain a pardon. Dorworth refused to participate in Greenberg's scheme. Greenberg then threatened to "make this a problem for everyone" by falsely claiming that Dorworth, Congressman Matt Gaetz, and others were involved in Greenberg's criminal actions.**

**Greenberg then demanded that Dorworth lobby for the prosecutor investigating Greenberg to be fired. Dorworth again refused to participate in Greenberg's scheme. Greenberg again threatened to "make this a problem for everyone" by falsely claiming that**

Dorworth, Congressman Matt Gaetz, and others were involved in Greenberg's criminal actions.

During the conversation Joel Greenberg had with Rebekah Dorworth at the Marriott, Joel stated that he was concerned that his father, Andrew Greenberg, had criminal exposure because of Andrew's financial involvement in an illegal scheme involving bitcoin investments and the SCTC. Joel Greenberg stated that Gaetz should know that investigators were looking through his Venmo records and that "he didn't know what any of them would say." Joel Greenberg indicated that Dorworth, Gaetz, and others would be falsely implicated by Greenberg if Dorworth and Gaetz did not help Joel mitigate his liability by obtaining a pardon. Joel Greenberg also indicated that he was concerned that Abby Greenberg's participation in misconduct would be revealed if the investigation proceeded.

On August 14, 2020, Greenberg claimed in a text to Dorworth that A.B. did not wish to speak to the authorities. See Texts Between Greenberg and Dorworth, Exhibit 3 to the Amended Complaint. At this time, Joel Greenberg was aware that the grand jury was investigating him for misconduct with A.B. Indeed, at this time, the grand jury was about to indict Greenberg for offenses involving A.B. According to Greenberg, authorities learned of Greenberg's misconduct with A.B. from electronic and other records, and not from A.B. Id.

Greenberg had previously stated that A.B. would do what Greenberg wanted in exchange for material support and attorney fees. In the texts with Dorworth, Greenberg claimed he was paying for A.B.'s lawyer. Id. In these texts, Greenberg also acknowledged that Dorworth had "done nothing wrong." Id. Upon information and belief, when Greenberg stated that A.B. did not wish to speak to the authorities he also meant that he did not wish

A.B. to speak to the authorities and had induced her or attempted to induce her to not speak to the authorities or testify before the grand jury. Id.

According to Greenberg, Andrew and Sue Greenberg and Greenberg Dental and AWG also agreed with Joel Greenberg and Abby Greenberg to pay any amounts necessary to obtain the pardon or firing of the prosecutor that Joel Greenberg was attempting to extort Dorworth and Gaetz to seek on his behalf.

According to Joel Greenberg, Andrew and Sue Greenberg and their companies wanted to mitigate Joel Greenberg's liability and the scope of the investigation both to assist Greenberg's scheme and also in order to mitigate their own liability and prevent themselves from being drawn into the investigation.

Abby Greenberg was particularly concerned about the fact that her husband was the only person being prosecuted and wanted others within their circle to be prosecuted as well. To this end, Abby agreed to provide, and agreed to assist others in providing, false testimony to the federal grand jury to induce indictment of other persons. Andrew and Sue Greenberg, as well as AWG and Greenberg Dental, agreed to provide funding to compensate Abby Greenberg and A.B. for providing false reports and testimony to the authorities and the federal grand jury. Andrew and Sue Greenberg, as well as AWG and Greenberg Dental, also agreed to provide funding for expenses in connection with providing false reports and testimony to the authorities and the grand jury, including legal, investigative, and other expenses.

On January 30, 2021, Stone told Greenberg that Gaetz had supposedly opposed Greenberg's pardon. With any hope of a pardon off the table, Greenberg's only solution was to implicate others and pursue cooperation credit, whether or not his victims had actually

done anything wrong. Greenberg therefore determined to redouble his efforts to frame Gaetz, Dorworth, and other high-value targets.

In late 2020 or early 2021, Congressman Matt Gaetz and Florida Department of Business and Professional Regulation Secretary Halsey Beshears received federal grand jury subpoenas. It was apparent from these subpoenas that Joel Greenberg was attempting to frame them with the assistance of A.B. and others. Greenberg and A.B. claimed to the federal grand jury and others that Gaetz, Dorworth, and others had participated in sexual misconduct with A.B.

Andrew and Sue Greenberg, and their companies Greenberg Dental and AWG agreed to provide, and Abby Greenberg and A.B. agreed to accept, compensation in exchange for participating in the process crimes intended to falsely implicate Dorworth and others. Given Greenberg's low six-figure personal wealth shown on his Amended 2019 Form 6, it would have been impossible for Greenberg to have covered the vast expenses he incurred himself. Further, Greenberg's access to funds was vastly reduced in 2020, after he was charged, as he lost his job, he was unable to continue stealing, and the Government began imposing restrictions on his activity. Greenberg could not have paid multimillion dollar restitution amounts, let alone his legal fees, without support from his parents and the companies.

According to Greenberg, Greenberg's parents stood ready and agreed to pay any amount for a pardon or firing of the prosecutor, whether or not such pardon or firing of the prosecutor would be obtained legally or through bribery. Further, Greenberg certainly could not have provided material support to Abby Greenberg and A.B. without assistance from his parents and the companies.

Upon information and belief, for example, when Joel Greenberg said that he was paying for A.B.'s lawyer, he was either referring to payments made by his parents or their companies, or he was referring to money he had obtained from them for that purpose and with their knowledge of how it would be used. According to Greenberg, he paid for AB's legal fees, to induce her to corroborate Greenberg's false allegations against others.

Thus, Joel Greenberg required and received support from other members of the Greenberg Enterprise, including Andrew Greenberg, Sue Greenberg, AWG, and Greenberg Dental, both before and after his indictment. Nearly every act performed by Greenberg required support by the Greenberg Enterprise, which he received. Greenberg Dental and AWG funded all the activities of the Greenberg Enterprise.

Upon information and belief, AWG is used by the Greenberg family, including Sue, Andrew, and Joel Greenberg, as an alter ego and personal piggy bank, to funnel funds from Greenberg Dental for numerous purposes, including illegal acts described in this Complaint and previous pleadings and in Greenberg's indictments. Andrew and Sue Greenberg coordinated the material support of the Greenberg Enterprise.

Andrew Greenberg, Sue Greenberg, Greenberg Dental, and AWG have paid Joel Greenberg's attorney fees to facilitate Greenberg's defense, which largely consisted of his proffers in preparation for grand jury testimony against Dorworth and others. Andrew Greenberg, Sue Greenberg, AWG, and Greenberg Dental and/or AWG knew that Greenberg was using these proffers and his testimony to falsely implicate Dorworth and others. Knowledge by individual Defendants Andrew Greenberg, Sue Greenberg, and Joel Greenberg is imputed to AWG and Greenberg Dental, as they acted as agents for the companies.

Further, the companies, by making payments under the circumstances, had knowledge of the wrongfulness of their conduct in enabling the racketeering alleged herein. Upon information and belief, each payment by AWG and/or Greenberg Dental was not a bona fide payment of salary, compensation, dividends, or distributions, but was a specific payment made for the benefit of Joel Greenberg, Abby Greenberg, or A.B. with knowledge that the payments were facilitating improper or illegal conduct.

Upon information and belief, Sue Greenberg assisted Andrew Greenberg with all of his conduct herein. Upon information and belief, Sue Greenberg encouraged and conspired with Abby Greenberg to assist in the Greenberg Enterprise. Upon information and belief, in exchange, Sue Greenberg served as Abby Greenberg's paymaster, and provided funds, housing, vacations, and other material support to Abby Greenberg in connection with her assistance to the conspiracy. Abby Greenberg also agreed to assist in the Greenberg Enterprise because she was aggrieved by the fact that Greenberg was the only person in Central Florida political circles who had been charged, and she wanted others to be charged as well:

> Investigator: Was she at all upset about kind of this crumbling in on you guys, and other people are out there that are not --
> Joel: Yeah.
> Investigator: -- getting in trouble?
> Joel: Yeah.
> Investigator: So would she be friendly if there was something -- would she be friendly to talk to us?
> Joel: Yeah.
>
> . . .
>
> Joel: She has -- there's no love lost.
> Counsel: There's no -- there's no allegiance.
> Joel: There's no allegiance anymore. She -- she doesn't want anything to do with these people, anybody we've discussed.
> Investigator: Okay.

Joel: She's furious that I'm the one that's taken the fall for a lot of this stuff.
Counsel: She's very -- informed me that she'd be very receptive to any needs.

Jailhouse Interview, Exhibit 1 to the Amended Complaint, at 39:8-20; 40:4-17.

For these reasons, Abby Greenberg has supported the Greenbergs' illegal scheme despite Joel Greenberg's misconduct, the divorce, and the poor situation that Joel Greenberg created for Abby and the children. Greenberg's parents purchased a home for Abby despite no obligation to do so in exchange for Abby agreeing to implicate others. As stated by Abby Greenberg to Rebekah Dorworth, the Greenbergs' support vastly increased after Joel Greenberg was charged, and the support provided by Andrew and Sue Greenberg vastly exceeded any support reasonably necessary for the grandchildren or their son's wife. This increased support was to reward and encourage Abby Greenberg's cooperation with the conspiracy.

Even after Greenberg was jailed in 2021 for violating the conditions of his release, the racketeering activity continued, and Greenberg was able to effectuate his plan. For example, Greenberg could no longer travel to meetings or even conduct unmonitored telephone calls. Instead, Greenberg relied upon help from the individual members of the Greenberg Enterprise and on money from AWG and Greenberg Dental.

In particular, Greenberg's family helped to direct others, including Abby Greenberg and A.B., in smearing Dorworth and others through false reports and false testimony to state and federal authorities.      Upon information and belief, the Greenbergs received and paid the bills of the lawyers and therefore knew of all of the activity in the case. As such, the Greenbergs knew that Greenberg was disseminating false information about Dorworth and others to the authorities and the press. Upon information and belief, Sue Greenberg and Abby Greenberg helped Joel Greenberg effectuate his plan while he was incarcerated.

Andrew Greenberg, Sue Greenberg, and AWG have previously provided material support to assist Joel Greenberg in avoiding responsibility for his crimes, and in some cases, acting as an accessory after the fact. Among other things, Joel Greenberg stole bitcoin from the Seminole County Tax Collector's office. Third Superseding Indictment, Doc. 90, Pages 10-20. Joel Greenberg also used Seminole County Tax Collector money to purchase bitcoin that was converted to Greenberg's own use. Third Superseding Indictment, Doc. 90, Pages 10-20. Greenberg's family, including his father, Andrew Greenberg, was aware of and involved in Greenberg's bitcoin scheme.

As Greenberg had stated to Dorworth in Summer 2020, Andrew Greenberg himself had criminal exposure because of his financial involvement in the illegal scheme involving the bitcoin investments and the SCTC. According to the federal indictment, a family member later provided funds to Greenberg to  submit a cashier's check to cover Greenberg's theft from the SCTC and escape detection. Doc. 90, Page 14. Abby Greenberg had previously informed Rebekah Dorworth that the family member who provided Greenberg with the funds to cover the cryptocurrency theft was Defendant Andrew Greenberg. Defendant Andrew Greenberg provided these funds with the specific intent that they would be used by Joel Greenberg to cover up the theft of cryptocurrency and thereby evade detection by the Secret Service. Doc. 90, Page 14.

Greenberg would have had to have provided a compelling justification to Andrew Greenberg to obtain $200,000, and Andrew Greenberg certainly knew the use of the funds was to aid the bitcoin scheme by helping evade detection and continue misconduct at the SCTC. According to the Third Superseding Indictment, these funds were used as "a further part of the scheme and artifice to defraud." Doc. 90, Page 14. These funds were submitted to

the "[SCTC] with a cashier's check and a memorandum that falsely represented that "the $200,000 he had diverted had been used 'to provide liquidity for stablecoin project,' that the '[p]roject has been delayed until further notice,' and that the funds were returned." Doc. 90, Page 14.

Andrew Greenberg, Sue Greenberg, and AWG were also aware of Joel Greenberg's attempt to frame Joel's lawyer (who is also his former uncle) with possession of child pornography. In 2019, Greenberg falsely accused Brian Beute of sexual impropriety with students. Also in 2019, Joel Greenberg received a subpoena. Richard Sierra, an attorney at the SCTC and former uncle of Joel Greenberg, advised Greenberg to comply with the subpoena.

Greenberg attempted to enlist Richard Sierra in covering up his crimes or failing to comply with the subpoena, but Richard Sierra insisted that Greenberg comply with the subpoena. In 2021, investigators found a thumb drive in Greenberg's car with child pornography. Greenberg told federal investigators he downloaded the child pornography to frame Sierra. https://www.gazettextra.com/news/nation_world/former-seminole-county-tax-collector-joel-greenberg-collected-child-pornography-to-frame-in-house-attorney/article_8cf77147-458b-53af-992c-c99d1fcfb955.html

Upon information and belief, Greenberg retaliated against Richard Sierra because Sierra did not assist Greenberg in covering up his crimes in response to the subpoena.

Upon information and belief, Andrew and Sue Greenberg learned of this attempt to frame a family member and Joel's attempt to enlist him in defying the subpoena. At this point, Andrew and Sue Greenberg still agreed to assist Greenberg financially and otherwise in implicating others, including Dorworth, Gaetz, and Beshears, in illegal activity even

though they knew that Greenberg was involved in falsely implicating others, including through the illegal acts alleged herein.

Greenberg shared his plans with his associates, people he encountered, the government, and the public, and did not keep secret his illegal scheme to falsely implicate and accuse others. For example, Greenberg telephoned his friend Joe Ellicott from jail on a recorded line and bragged and joked about Matt Gaetz being pulled into a child sex trafficking investigation.

Joel Greenberg also bragged about his scheme to falsely implicate Matt Gaetz and Dorworth and others to inmate Vladimir St. Louis who he met in a holding cell and during transport between the Orange County Jail and the Federal Courthouse. See April 5, 2021 Letter from Vladimir St. Louis to Attorney Kirshner, Exhibit 7 to the Amended Complaint. Joel Greenberg bragged to St. Louis that he "fabricated numerous events" and told investigators that he arranged for A.B. to "hook up" with other people. Id. at 3-4.

When asked by St. Louis what A.B. would say to investigators, Greenberg said that "the girl probably would go along with it." Id. Furthermore, Greenberg said that A.B. would "go along" with the allegations so that "she can file a lawsuit afterwards." Id. at 4. Indeed, at or around the time that federal authorities decided not to charge Dorworth and Gaetz, A.B. sent correspondence to Dorworth and Gaetz demanding compensation based upon her false allegations of impropriety and attempting to monetize a presuit settlement, presumably to avoid further publication of any allegations.

Greenberg told St. Louis that he told investigators (falsely) that he arranged an encounter between A.B. and "a former lobbyist for Donald Trump." Id. at 4. Greenberg was

referring to Dorworth as the "former lobbyist for Donald Trump" because Dorworth's firm, Ballard Partners, had lobbied for the Trump Organization.

Greenberg told St. Louis that he was pointing the finger at Republicans because he thought that the prosecutors and investigators were Democrats. Id. at 3. Greenberg thought that law enforcement would be more likely to believe Greenberg's lies if they were directed toward Republicans. Id. at 3. When asked by St. Louis why Greenberg was fabricating lies about his colleagues, Greenberg said "that if they were the ones in his shoes, they would fabricate stuff about him as well just to get a time-cut." Id. at 5.

According to the conversation between Greenberg and St. Louis, Greenberg would mitigate the vast majority of his prison sentence if he were able to help secure convictions of persons such as Gaetz and Dorworth. Id. at 3. Upon information and belief, Joel Greenberg also kept his coconspirators and others informed of his intent, as he spoke about it on recorded lines and openly to other inmates in confinement.

Even after he was charged and disgraced, Joel Greenberg kept a close relationship with his coconspirators. See Jailhouse Interview, Exhibit 1 to the Amended Complaint at 41:35-41 (indicating that he speaks to his mom and dad, has a friendly relationship with Abby). Greenberg kept a close relationship with Abby Greenberg, who was his former wife, and who knowingly corroborated many of his false allegations and who was kept in the fold through material support from his parents. Greenberg also kept a close relationship with A.B., who he previously had a sexual relationship with and who he claimed to be able to control by providing material support through his parents and their companies. Greenberg also kept a close relationship with his parents and their companies, who provided material

support for his inducements to others, his attorney fees for his elaborate scheme, and even paid his restitution.

The Greenberg Enterprise knew of Greenberg's propensity to commit crimes generally and to falsely accuse people of sex crimes in particular, and yet it systematically supported him in such conduct both before and after his indictment. The Greenberg Enterprise has not just supported Joel Greenberg, it has gone far beyond merely keeping Joel Greenberg within the family circle and providing basic support. In fact, the Greenberg Enterprise has supported Joel Greenberg's improper conduct to such an extent that it has repeatedly placed others within the zone of harm of acts that it enabled Greenberg to commit. Whatever limitations Greenberg had, or however much his parents loved him, they had no right to knowingly assist him in committing crimes.

The Greenbergs were aware of Greenberg's propensity to commit crimes and acknowledged the same. Many people, including Greenberg's mother, knew that when he stepped into the public arena, he would inevitably commit crimes, as he did. Despite all of this, the Greenbergs provided extravagant aid to Greenberg, before, during, and most importantly, after his public role, knowing that this aid would be used to commit crimes, including those described herein. The extent and impropriety of the Greenbergs' aid to Joel Greenberg is shown by their efforts to deny or minimize the aid.

For example, at sentencing, Greenberg's attorney claimed that "[a]s a result of his conduct, he lost his marriage. He lost his children. He was cut out of his parents' will completely. He's lost all financial support. And you'll see today his family is not here." Doc. 180, December 1, 2022 Sentencing Trans. at 14:1-4. However, a seven-figure payment had been made on Greenberg's behalf to Seminole County for Restitution just a week prior. See

Settlement Agreement and Checks, Exhibit 9 to the Amended Complaint. Upon information and belief, Greenberg's parents had arranged through intermediaries including AWG and/or Greenberg Dental, to cover Greenberg's restitution before sentencing.

The day before the $1.25 million payment, Greenberg's parents and their companies had negotiated to obtain release for Andrew Greenberg, Susan Greenberg, AWG, Inc. and other affiliated entities, presumably because the Greenbergs thought they had legal liability in connection with the misconduct. Id.

In fact, Greenberg's counsel had acknowledged in a filing with the federal court that "the restitution issue involves multiple parties." Doc. 117, Page 2, Para. 6. Based upon the payment and negotiation of the Settlement Agreement, Greenberg's counsel was presumably referring to some or all of the other Defendants here, even though Greenberg was the only person charged in his case.

Two weeks after sentencing, another six-figure payment was made on Greenberg's behalf to Seminole County. Exhibit 9 to the Amended Complaint. Upon information and belief, and based upon Greenberg's amended financial disclosures, Greenberg lacked the funds to make this payment, and the Greenbergs covered it for him.

In addition to the foregoing facts, Plaintiff states that Andrew Greenberg, Sue Greenberg, and AWG have paid for all of Joel Greenberg's attorney fees. See, e.g., Andrew000053-000055, Andrew000079, Susan000719. They have also paid for Abby Greenberg's attorney fees associated with this action.

See documents produced by Abby Greenberg, Joel Greenberg, Sue Greenberg, and Andrew Greenberg, including AbbyGreenberg000212-000218. See also Exhibits 1, 3, 7 and 8 to Amended Complaint. See also DORWORTH 000204-DORWORTH 000210,

DORWORTH 000001-DORWORTH 000203, and other equally available news reports regarding the Investigation into Dorworth. Discovery is just beginning. This answer may be supplemented.

**Interrogatory No. 3**

Identify and Describe every fact supporting your allegations that the Greenbergs paid A.B. or paid A.B.'s attorney's fees.

**Answer:** Joel Greenberg admitted to Plaintiff during breakfast at Another Broken Egg in Heathrow, Florida, in July 2020, that his parents were taking care of A.B. to make the problem go away. See also Exhibit 3 to Amended Complaint and the Complaint and Amended Complaint, generally. See also Joel Greenberg's statements described in the "Greenberg Presses Dorworth and Others for a Pardon or other Mitigation of his Exposure" Section of the Amended Complaint. See also documents produced by Abby Greenberg and Joel Greenberg, including AbbyGreenberg000212-000218. Discovery is just beginning. This answer may be supplemented.

**Amended Answer: Joel Greenberg admitted to Plaintiff during breakfast at Another Broken Egg in Heathrow, Florida, in July 2020, that his parents were taking care of A.B. to make the problem go away.**

**On August 14, 2020, Greenberg claimed in a text to Dorworth that A.B. did not wish to speak to the authorities. See Texts Between Greenberg and Dorworth, Exhibit 3 to the Amended Complaint. At this time, Joel Greenberg was aware that the grand jury was investigating him for misconduct with A.B. Indeed, at this time, the grand jury was about to indict Greenberg for offenses involving A.B. According to Greenberg, authorities learned of Greenberg's misconduct with A.B. from electronic and other records, and not from A.B. Id. Greenberg had previously stated that A.B. would do what Greenberg wanted in exchange for material support and attorney fees. In the texts with Dorworth, Greenberg claimed he**

was paying for A.B.'s lawyer. Id. In these texts, Greenberg also acknowledged that Dorworth had "done nothing wrong." Id. Upon information and belief, when Greenberg stated that A.B. did not wish to speak to the authorities he also meant that he did not wish A.B. to speak to the authorities and had induced her or attempted to induce her to not speak to the authorities or testify before the grand jury. Id.

Greenberg told Dorworth that he and his parents would seek A.B.'s cooperation by "paying her off" and that he had determined that A.B. would accept such inducement. Upon information and belief, and according to Greenberg, he had agreed with his parents that they would fund, through their companies, any lobbying, bribes, payments, or legal fees necessary to obtain A.B.'s cooperation in reporting or testifying falsely, or to fund any effort to obtain a pardon.

According to Greenberg, Andrew and Sue Greenberg and their companies wanted to mitigate Joel Greenberg's liability and the scope of the investigation both to assist Greenberg's scheme and also in order to mitigate their own liability and prevent themselves from being drawn into the investigation.

See also documents produced by Abby Greenberg and Joel Greenberg, including AbbyGreenberg000212-000218. Discovery is just beginning. This answer may be supplemented.

**Interrogatory No. 4**

Identify and Describe every fact supporting your allegations that the Greenbergs aided and abetted Joel Greenberg and A.B.'s alleged defamation.

**Answer:** See answers to Interrogatory Nos. 2 and 3.

**Amended Answer: See amended answers to Interrogatory Nos. 2 and 3.**

**Interrogatory No. 5**

Identify the facts of and Describe each occasion on which you allege in Plaintiff's Verified Amended Complaint a defamatory statement was made about you.

*Consistent with the definitions of Identify and Describe above, for each lettered bullet (e.g., a., b., c.) in paragraph 378—and any other defamatory statement Plaintiff claims was made about him—in Plaintiff's Verified Amended Complaint, Plaintiff's response should identify (a) each person who was a party or witness to each alleged defamatory statement, then explain in detail the: (b) statement, including, to the extent possible, the precise words communicated; (c) date(s) on which the statement was made (d) the person(s) who made the statement, (e) the person(s) to whom the statement was made; and (f) mode of communication (for example, in person or by telephone, letter, text, email).*

**Answer:** Responsive information is detailed at Paragraphs 349 to 381 of the Verified Amended Complaint, including evidence citations.

**Amended Answer: Upon information and belief, Joel Greenberg has defamed Dorworth at each interview with the authorities as set forth above by accusing him of crimes. Greenberg has also, individually, and through agents, including Defendants, caused these same allegations to be published in the media. Greenberg has even published such statements to President Trump.**

**For example, according to the Daily Beast:**

**In a pre-emptive 2020 pardon request to then President Donald Trump, the disgraced Seminole County tax collector wrote that Dorworth—identified as a "prominent lobbyist for Ballard Partners"—hosted parties at his home where a number of men, specifically including Gaetz, paid to have sex with young girls, including A.B.**

**GOP Lobbyist Chris Dorworth in Matt Gaetz Case Accused of Rape in Court Docs (thedailybeast.com)**

**Upon information and belief, A.B. has defamed Dorworth by alleging to the authorities, before the grand jury, and to the media that Dorworth committed sexual misconduct. A.B.'s defamation to the authorities regarding Dorworth is set forth above and herein.**

On April 8, 2021, Dorworth was contacted by text by a New York Times reporter regarding allegations of sexual misconduct. See New York Times Texts, attached to the Amended Complaint as Exhibit 8. Upon information and belief, one of the Defendants in this action leaked false and derogatory information about Dorworth to the New York Times. Further, upon information and belief, A.B. falsely claimed to the New York Times, either directly or through an intermediary, that Dorworth had engaged in sexual misconduct with her.

Upon information and belief, other Defendants here, including Abby Greenberg, Joel Greenberg, and possibly Andrew and Sue Greenberg, provided information to the New York Times reporter, which resulted in the Times reporter contacting Dorworth.

When Dorworth informed his employer, Ballard Partners, that he had been falsely implicated in the investigation, he was nonetheless compelled to resign his $1 million per year role with Ballard. Chris Dorworth, longtime associate of Matt Gaetz, resigns from Ballard Partners (floridapolitics.com). Dorworth's lobbying practice consisted of many Fortune-500 and government clients. Lobbyists must publicly disclose their clients, and government entities must generally disclose their expenditures on lobbyists. These clients are accountable to shareholders, citizens, and the public, and cannot employ a lobbyist who is being investigated for criminal wrongdoing, particularly of the nature alleged by Defendants.

Given the highly competitive nature of lobbying, and the nature of Dorworth's practice and clientele, it would have been impossible for Dorworth to continue to lobby successfully after the allegations that were disseminated by Defendants were publicized. For these reasons, Ballard had no choice but to require Dorworth's resignation, lest it risk reputational harm and loss of clientele. In fact, Dorworth still suffers business injury from

the defamation by Defendants and must further clear his name beyond the obtaining of a nonprosecution decision by the Government.

A.B. and others at her behest continued to defame Dorworth and others with similar allegations for several years afterwards. For example, according to an article in late 2022, "[t]wo women who attended parties with Greenberg and Gaetz previously told CNN that the men also regularly socialized together at sex parties in the Orlando area that featured local political figures, young women, Venmo payments, alcohol, and drugs, including cocaine and ecstasy." [Judge scolds Justice Department for its slow investigations at hearing for Rep. Matt Gaetz's convicted associate | CNN Politics](#)

Upon information and belief, A.B. was one of the two women who were sources for the story above. Further, upon information and belief, A.B. also issued similar and false allegations about Dorworth to CNN. Upon information and belief, A.B. also defamed all persons who she accused of "sex trafficking," particularly to the extent she claimed she was underage.

A.B.'s failure to disclose in all her communications that she had (1) lied about her age and (2) accepted payment for her own misconduct, was highly misleading and defamatory by implication, even if her story were true, which it was not. In fact, Judge Presnell found that even Greenberg's conduct on this issue was overstated by the Government and A.B. because she was "essentially a prostitute." Doc. 180, Sentencing Transcript 43:1-2.

Abby Greenberg falsely accused Dorworth of being involved in the ghost candidate scheme described above. Upon information and belief, Abby Greenberg was the source for the New York Times story, which covered the allegation against Dorworth about the ghost candidate scheme. Abby Greenberg also disseminated information about the false sexual

misconduct allegations to the press. Upon information and belief, Abby Greenberg has disseminated information about the false sexual misconduct allegations to the Daily Beast on multiple occasions.

The Daily Beast has republished false sexual misconduct allegations about Dorworth repeatedly, including most recently when it published such allegations on July 8, 2023. GOP Lobbyist Chris Dorworth in Matt Gaetz Case Accused of Rape in Court Docs (thedailybeast.com)

Joel Greenberg issued numerous false statements about Dorworth, including, but not limited to the following:

a.      Falsely averring Dorworth was involved in the scheme to sex traffic minors, as alleged in the RICO Section herein;

b.      Falsely averring Dorworth had sex with an underage A.B., as alleged in the RICO Section herein;

c.      Falsely averring Dorworth was involved in an attempt to obstruct justice through witness tampering, as alleged in the RICO Section herein;

d.      Falsely averring Dorworth was involved in the ghost candidate scheme involving the 2020 Florida Senate District Nine election and incurred campaign finance violations in furtherance of the scheme, Jailhouse Interview, Exhibit 1 to the Amended Complaint at 8:14-42, 50:23-24;

e.      Falsely impersonating Dorworth in communications to the employer of Joel Greenberg's political opponent and creating social media accounts made to suggest Dorworth was behind them, as alleged in the RICO Section herein;

f.      Falsely describing Dorworth and others as a "mafia" with a criminal agenda, Jailhouse Interview, Exhibit 1 to the Amended Complaint at 10:20-22;

g.      Falsely averring Dorworth was having an extramarital affair with his female attorney, Jailhouse Interview, Exhibit 1 to the Amended Complaint, Page 31:40-41, and

h.      Falsely averring Dorworth borrowed money from Jim Stelling to avoid detection in acquiring prostitutes and drugs. Jailhouse Interview, Exhibit 1 to the Amended Complaint at 27:33-49.

Each one of these statements was made by Greenberg, and/or repeated or corroborated by A.B. and Abby Greenberg, with an improper motive to harm Dorworth. Greenberg knew each of these allegations were false, as he sent a text to Dorworth acknowledging that "[y]ou've done nothing wrong." Greenberg Texts, Exhibit 3 to the Amended Complaint. Each Defendant acted with improper motive in issuing their respective false statements.

**Interrogatory No. 6**

Identify the facts of and Describe Plaintiff's efforts—including all successes and failures— to secure alternative employment or income since resigning from Ballard Partners. For each alternative source of employment or income identified, identify the amount of income derived from that source, quarterly, up to the date of your answer.

**Answer:** Plaintiff resigned his position after Defendants falsely made allegations against Plaintiff in connection with the investigation into criminal activity by Joel Greenberg, in an effort to obtain cooperation credit and reduce Joel Greenberg's prison sentence. Plaintiff received severance from Ballard Partners, DORWORTH000727-DORWORTH000732. Plaintiff would like to reestablish his lobbying practice; however, he has met with only limited success. He earned $50,000 from a client in 2022 and $50,000 from another client in 2023. Plaintiff believes a new agreement will be

reached with a client imminently. Plaintiff objects to identifying these clients on the basis of third party privacy. Disclosure of the client identities would also likely harm Plaintiff since it is anticipated the clients would not provide him with further business or referrals if their documents and strategies are potentially subject to discovery. If the new contract is secured, Plaintiff will register his association, which is publicly available at www.floridalobbyist.gov.

In 2023, Plaintiff had a very general discussion with Brian Ballard about rejoining Ballard Partners. Although Ballard seemed open to the idea, he indicated Plaintiff would rejoin at a much lower compensation level than when he left. Although no offer was made or numbers discussed, given Plaintiff's familiarity with Ballard Partners business model, Plaintiff understood Ballard's comment as indicating compensation around $180,000 to $200,000. Although it will take time given Defendants' harm to his reputation, Plaintiff believes he can rebuild his income faster on his own, so no further discussions were held with Ballard.

Plaintiff has also engaged in land development, both while at Ballard Partners and after his departure. He was involved in the proposed River Cross development, which was unsuccessful. Although Dorworth had been discussing a settlement with the County in or around 2020, Joel Greenberg published statements accusing his political opponent, Brian Beute, of having a sexual relationship with a minor at the school where Beute worked. Greenberg created the false impression that these statements were made by Plaintiff, since Beute was also then-President of Save Rural Seminole, the organization opposed to the River Cross development. Settlement negotiations stopped thereafter, resulting in damages as yet undetermined but thought to be in the 9-figure range.

Plaintiff currently has a land development project in Oviedo that is under review with Seminole County. He is also involved in preliminary work for a confidential project proposal located in southwest Florida. No profit has been realized from these projects.

On or about October 7, 2022, Plaintiff purchased the Oxford Sports Pub and Secret Society in Altamonte Springs, Florida. He operated the restaurant until structural issues with the leased space necessitated closure on or around August 15, 2023. No profit was realized.

**Interrogatory No. 7**

Provide a calculation of the damages or other amounts you claim to be due from the Greenbergs in connection with your claims in your Verified Amended Complaint, broken down by category of damages or amounts claimed, the Defendant against whom each category of damages is sought, and the methodology of calculation for each such category.

**Answer:** Defendants are jointly and severally liable for all damages. At this time, Plaintiff's best estimate of his damages is the following:

- Lost Wages $2.5M and counting ($1M per year for 2.5 years), less severance.

- Loss of employment benefits: Estimated at $100,000 and counting ($40,000 per year for 2.5 years).

- Loss of earning capacity: To be determined.

- Loss of existing and future business opportunities: Damages resulting from the cessation of River Cross development property exchange negotiations are in the 9-figure range.

- Emotional distress: $2.5M.

- Treble damages for RICO claims: not less than $15.3 million, calculated as 3x($2.5M+$100k+$2.5M).

- Attorney fees: Confidential and to be determined at conclusion of the litigation.

Discovery is just beginning. This answer may be supplemented or modified.

**Interrogatory No. 8**

Identify all messaging apps you used at any time between January 1, 2016 and the present. For each app, identify your corresponding username.

**Answer:** Plaintiff used iMessage, Whatsapp, and Signal. To the extent the username is something other than a phone number (e.g., iMessage), the username was Chris Dorworth.

**Interrogatory No. 9**

Identify the facts of and Describe all oral communications you had with any other person regarding your decision to initiate this Action.

*Consistent with the definitions of Identify and Describe above, your response should identify (a) each person who was a party or witness to each communication, then explain in detail the: (b) the substance of each communication; (c) date(s) of each communication, (d) the person(s) who initiated the communication, and (f) mode of communication (for example, in person or by telephone, letter, text, email). This interrogatory does not seek communications solely between Plaintiff and his attorney, Michael Beltran.*

**Answer:** Plaintiff objects to this interrogatory, as Plaintiff's "decision to initiate this Action" is not relevant to Plaintiff's claims or Defendants' defenses. It is not an element of any of Plaintiff's counts or Defendants' affirmative defenses. It is also so overbroad that it may encompass information protected by the attorney-client privilege, work product doctrine, husband-wife privilege, or other recognized privilege.

**Amended Answer: Plaintiff had separate conversations with his attorney, Michael Beltran, and his wife. The contents of these conversations are privileged. Plaintiff also spoke with his father, who supported Plaintiff's decision.**

**Interrogatory No. 10**

Identify the facts of and Describe all physical or electronic documents or communications that relate to Defendants in this Action or the subject matter of this Action that were deleted or otherwise disposed of—including but not limited to unintentional deletion by, for example, document retention policies. Specifically, identify each document or communication that was deleted, its contents, why it was deleted, and when it was deleted.

**Answer:** Prior to receiving the December 28, 2020, grand jury subpoena, Plaintiff maintained an auto delete setting on his phone for text messages, which is standard in the lobbying industry. Once

Dorworth received the subpoena, he deactivated the auto delete. Specific to Joel Greenberg, Plaintiff does not possess text messages with him other than those that were produced to the Government, DORWORTH000535-DORWORTH000537, previously produced. Plaintiff does not recall the contents of other text messages with Joel Greenberg but states no text messages concerned arrangements for sex with A.B. because that did not happen.

With regard to email, Plaintiff lost access to his Ballard Partners emails upon his departure. He does not know the status of those emails, although Ballard Partners has produced documents pursuant to subpoena.

## Interrogatory No. 11

Identify all persons with whom you have communicated in writing regarding any of the Defendants in this Action, any event or occurrence referenced in the Verified Amended Complaint, this Action, the Verified Complaint, the Verified Amended Complaint, and any filing in this Action.

**Answer:** Plaintiff, himself or through counsel, have communicated with the following:

- Joel Greenberg, DORWORTH000535-DORWORTH000537.

- Ben Paris, DORWORTH000672-DORWORTH000673.

- Congressman Matt Gaetz, DORWORTH000341-DORWORTH000349.

- Counsel for A.B., DORWORTH000204-DORWORTH000234.

- Vince Citro, DORWORTH000283-DORWORTH000284.

- Media, DORWORTH000642–DORWORTH000649, DORWORTH000733-DORWORTH000734.

- Counsel for Michael Shirley, DORWORTH000757.

Plaintiff has also communicated in writing with his attorneys, Richard Hornsby and the undersigned. Plaintiff does not interpret this interrogatory as requesting information regarding

each such correspondence; however, to avoid a waiver argument, Plaintiff states the contents of

such communications are protected by attorney-client privilege.

Date: February 5, 2024                    /s/Michael Paul Beltran
                                          Michael P Beltran
                                          Fla. Bar No. 0093184
                                          Beltran Litigation, P.A.
                                          4920 West Cypress St.
                                          Suite 104 PMB 5089
                                          Tampa, FL 33607
                                          813-870-3073 (o)
                                          mike@beltranlitigation.com
                                          *Counsel for Plaintiff Dorworth*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the date listed above, a copy of the foregoing document was served by email on all counsel of record:

Frederick S. Wermuth
    fwermuth@kbzwlaw.com
Dustin Mauser-Claassen
    dmauser@kbzwlaw.com
Quinn Ritter
    qritter@kbzwlaw.com
***Counsel for Andrew Greenberg***
***Sue Greenberg, and AWG, Inc.***

Michael J. Furbush
    mfurbush@deanmead.com
Michaela N. Kirn
    mkirn@deanmead.com
***Counsel for Greenberg Dental Entities***

Jesse Unruh
    jesse@spirelawfirm.com
Christopher W. Ford
    ford@hbcboulder.com
Laura Wolf
    laura@spark-law.com
***Counsel for A.B.***

Jason A. Perkins
    jperkins@carltonfields.com
Chelsey J. Clements
    cclements@carltonfields.com
Jason F. Bullinger
    jbullinger@carltonfields.com
***Counsel for Abby Greenberg***

Fritz Scheller
    fscheller@flusalaw.com
***Counsel for Joel Greenberg***

<u>/s/Michael Paul Beltran</u>
Michael P Beltran