Exhibit 2

| **PLAINTIFF'S DISCLOSURES AND DISCOVERY RESPONSES** | **PDF PAGE NUMBER** |
| --- | --- |
| Plaintiff's Rule 26 Disclosure | 2 |
| Plaintiff's Verified Answers to Defendant Abby Greenberg's Second Set of Interrogatories | 7 |
| Plaintiff's Amended Answers to Defendants Andrew Greenberg, Sue Greenberg, and AWG, Inc.'s First Set of Interrogatories | 13 |

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHRISTOPHER E. DORWORTH,

     Plaintiff,

v.

JOEL MICAH GREENBERG, ANDREW W.
GREENBERG, SUE GREENBERG, ABBY
GREENBERG, AWG, INC., GREENBERG
DENTAL ASSOCIATES, LLC, GREENBERG
DENTAL & ORTHODONTICS, P.A.,
GREENBERG DENTAL SPECIALTY GROUP,
LLC, and A.B.,

     Defendants.

Case No.: 6:23-CV-00871

---

## PLAINTIFF'S RULE 26 DISCLOSURE[1]

    Pursuant to Federal Rule of Civil Procedure 26(1)(A), Plaintiff hereby provides the

following initial disclosures:

**(i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment;**

-Each party to this action, c/o their respective counsel, knowledge regarding each of the allegations

in the pleadings that relate to them.

---

[1] Plaintiff previously provided a provisional Rule 26 Disclosure on June 29, 2023, under Rule 26 because the Court had not yet adopted the Case Management Report under the Case Management Order. (Doc. 51, July 5, 2023) However, the Court set the deadline for Initial Disclosure for August 4, 2023, and this document is Plaintiff's Initial Rule 26 Disclosure.

-Briana Garcia, contact information unknown, knowledge that Dorworth did not commit conduct alleged, knowledge regarding K.M. and testimony and statements to authorities, investigation, etc.

-Rebekah Dorworth, c/o undersigned counsel, knowledge regarding Joel and Abby Greenberg's attempt to obtain a pardon, knowledge exculpatory of Dorworth, including knowledge of Dorworth's habits, whereabouts, social life, etc., as well as Dorworth's damages.

-Richard Hornsby, Esq., Hornsby Law Firm, 1217 East Robinson Street, Orlando, FL 32801, 407-540-1551, knowledge regarding the investigation and A.B.'s demands.

-Curtis Holleman, P.O. Box 2241, Valrico, FL 33595, 813-766-2000, knowledge regarding polygraphs of Dorworth.

-Brian Beute, c/o Attorney David R. Bear, Esq., knowledge regarding Greenberg's misconduct towards Beute.

-Brian Ballard, c/o Ballard Partners, 201 East Park Avenue, 5th Floor, Tallahassee, FL 32301, 850.577.0444

-K.M., age unknown, friend of A.B., contact information unknown, knowledge regarding allegations in Complaint, testimony and statements to authorities, conduct by Greenberg and A.B.

-Joe Ellicott, c/o Attorney Robert Mandell, knowledge regarding allegations in Complaint, testimony and statements to authorities, conduct by Greenberg and A.B.

-Seminole County Sheriff's Office, investigation of Greenberg, etc.

-Vladimir St. Louis c/o Federal Bureau of Prisons, address unknown, knowledge regarding holding cell conversation with Joel Greenberg.

-Congressman Matt Gaetz, 805 E James Lee Blvd Crestview, FL 32539, (850) 479-1183, knowledge regarding Greenberg and Dorworth.

-Halsey Beshears, contact information unknown, knowledge regarding similar acts by Greenbergs against Beshears, investigation, and resulting damages.

-Ben Paris, knowledge regarding allegations against Ben Paris.

-Eric Foglesong, knowledge regarding allegations against Eric Foglesong.

-Fritz Scheller, Esq., knowledge regarding Greenberg's attempts to implicate Dorworth and others in his misconduct.

-David Webster, Esq., 1220 Commerce Park Dr Ste 207, Longwood, FL 32779, (407) 862-9222, knowledge regarding dissemination of derogatory information about Dorworth.

-John Clune, Esq., and Laura Wolf, Esq., knowledge regarding A.B.'s reports to the authorities and demands to Dorworth prompting the need for a declaration.

-Unknown Florida lawyer for A.B., knowledge regarding A.B.'s participation in investigation and payments for legal services for A.B.

-Federal Investigators, knowledge regarding the federal investigation.

-All witnesses in any cases disclosed as related cases.

-All persons mentioned in the pleadings.

**(ii) a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment;**
-Text messages with Greenberg.

-Limited documentation from PACER, Seminole Supervisor of Elections, State Division of Elections, Secretary of State Sunbiz, State Court Dockets, News Articles, Facebook Pages, Dorworth Polygraph Results.

-Documents showing Dorworth's earnings and business opportunities.

-Settlement Agreement between Greenbergs and Seminole County

-Demand Letter from A.B.

-Dockets from cases disclosed as related cases.

-All documents referenced in, included in, or attached to the pleadings, to the extent in Dorworth's possession.

-Letter from Vladimir St. Louis to counsel for Matt Gaetz.

-News coverage of investigation and prosecutions described in the pleadings.

-Correspondence regarding Beute investigation.

**<u>(iii) a computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered; and</u>**

-Dorworth's lost wages at Ballard Partners - $1 million per year, total to date, $2.5 million, and continuing.

-Dorworth's lost business opportunities - $2.5 million total.

-Dorworth's attorney fees – to be determined.

-Dorworth's harm to reputation - $5 million.

**(iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.**

-None known to Dorworth.

August 4, 2023.                                         Respectfully Submitted,

                                                        /s/Michael Paul Beltran
                                                        Michael P Beltran
                                                        Fla. Bar No. 0093184
                                                        Beltran Litigation, P.A.
                                                        4920 West Cypress St.
                                                        Suite 104 PMB 5089
                                                        Tampa, FL 33607
                                                        813-870-3073 (o)
                                                        mike@beltranlitigation.com
                                                        *Counsel for Plaintiff Dorworth*

## CERTIFICATE OF SERVICE

I will send a copy of the foregoing to all counsel of record.

                                                        /s/Michael Paul Beltran
                                                        Michael P Beltran

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

| | |
|---|---|
| CHRISTOPHER E. DORWORTH, | |
|     Plaintiff, | |
| v. | |
| JOEL MICAH GREENBERG, ANDREW W. GREENBERG, SUE GREENBERG, ABBY GREENBERG, AWG, INC., GREENBERG DENTAL ASSOCIATES, LLC, GREENBERG DENTAL & ORTHODONTICS, P.A., GREENBERG DENTAL SPECIALTY GROUP, LLC, and A.B., | Case No.: 6:23-CV-00871 |
|     Defendants. | |

**PLAINTIFF'S VERIFIED ANSWERS TO DEFENDANT ABBY GREENBERG'S SECOND SET OF INTERROGATORIES**

COMES NOW, Plaintiff Christopher E. Dorworth, and hereby submits his answers to Defendant Abby Greenberg's Second Set of Interrogatories. Plaintiff is applying ordinary dictionary definitions of terms and responding in accordance with the Federal Rules of Civil Procedure and rejects any attempt by Defendant to impose any additional or different requirements.

**ANSWERS TO INTERROGATORIES, SET TWO**

**INTERROGATORY NO. 1:**

Please describe in full and complete detail your daily activities on Wednesday, June 21, 2017 including, without limitation, your physical and/or geographic location on that date; the people, if any, that you interacted with on that date; the work, if any, that you conducted on that

date; the bars, if any, that you visited on that date; and the hotels, if any, that you visited on that date.

**ANSWER:** On June 20, 2017, Dorworth, his seven-month pregnant wife, and two children from a prior marriage were on vacation at their home in Highlands, North Carolina. The photos produced at DORWORTH002117 – DORWORTH002118 were taken June 20, 2017, at 12:02 p.m. and 4:13 p.m., respectively, and the metadata reflects that they were taken in Highlands.

To the best of Dorworth's recollection, they drove home to Lake Mary, Florida, on Wednesday, June 21, though it is possible they traveled during the overnight of June 20-21. (On rare occasions, they would opt to drive at night to bypass crowded roads and allow Rebekah to sleep for more of the trip.) Bank statements were not available for June 2017, which would reflect the date and location Dorworth used his debit card to purchase gas during the trip.

The Dorworths' habit when driving home from Highlands was to wake and complete the washing and drying of sheets before leaving at approximately 10 a.m. Leaving at 10 a.m. allowed them to miss the worst of both morning and evening rush-hour traffic in Atlanta. Absent unusual delays, when leaving Highlands at 10 a.m., depending on stops for their dog, they would arrive at their Lake Mary home around 6:45-7:30 p.m.

When arriving home from a nine-hour drive following a family trip, it was not Dorworth's practice to then turn around and leave Rebekah home alone with his two children from his first marriage. (This would have been especially true given she was seven months pregnant at the time.) There is luggage to unpack, laundry to start, the dog to be taken out and fed, etc. Dorworth's kids were 14 and 16 at the time, and even though they were good travelers, they could still get over-tired and cranky – just like adults.

At no time, on June 21, 2017, or otherwise, did Dorworth meet A.B. at a hotel, have sex with A.B., give Joel Greenberg any money to pay for sex, nor did Dorworth pay A.B. for sex. That did not happen.

**INTERROGATORY NO. 2**:

Please describe in full and complete detail your daily activities on Thursday, June 22, 2017 including, without limitation, your physical and/or geographic location on that date; the people, if any, that you interacted with on that date; the work, if any, that you conducted on that date; the bars, if any, that you visited on that date; and the hotels, if any, that you visited on that date.

**ANSWER:** Dorworth's 3-week summer bloc with his 14- and 16-year old kids ended Thursday, June 22. Although the custody order stated the bloc ended at 9:00 a.m., Dorworth does not recall what time the kids actually left his home. It was not unusual for them to leave later, particularly during summer vacation when they could sleep in and their mother was working. Dorworth does not have any text messages, calendar entries, or photos that indicate what or where he was on that date six and a half years ago. However, he absolutely did not, on June 22 or otherwise, meet A.B. at a hotel, have sex with A.B., give Joel Greenberg any money to pay for sex, or pay A.B. for sex. That did not happen.

**INTERROGATORY NO. 3**:

Please describe in full and complete detail the physical or geographical location of Rebekah Dorworth during the weekend of July 15, 2017.

**ANSWER:** Rebekah was at an IBTTA conference in Dallas, Texas, the weekend of July 15, 2017.

**INTERROGATORY NO. 4:**

Please describe in full and complete detail the emotional distress damages that you purportedly sustained as a result of the activities described in the Verified Amended Complaint that you currently value at two million five hundred thousand dollars ($2,500,000).

**ANSWER:** Defendants claimed Plaintiff had sex with a minor, framed him for the false sexual assault of a minor allegations Joel Greenberg made against Brian Beute, and claimed that Plaintiff illegally participated in a ghost candidate scheme. As a very happily married man, father of a young daughter, former Speaker Designate of the Florida House, lobbyist, and land developer, Defendants' malicious and pervasive lies about him pervaded nearly every relationship that Dorworth had and caused significant mental anguish. As detailed in the VAC, Dorworth lost his Job at Ballard Partners, and his relationships with governmental and publicly traded clients were damaged the most. Dorworth lost nearly all of his clientele when he left Ballard. Defendants' lies put strains on his relationship with his wife. Dorworth lives in fear that his young daughter may someday hear the lies that Defendants have purveyed. Numerous other persons, too numerous to describe or quantify here, have limited or stopped dealings with Dorworth due to Defendants' allegations. It would be impossible to exhaustively list all of the ways in which Plaintiff has experienced emotional distress. Dorworth suffered many millions of dollars in reputational, emotional, and financial damages.

Date: January 11, 2024

/s/Michael Paul Beltran
Michael P Beltran
Fla. Bar No. 0093184
Beltran Litigation, P.A.
4920 West Cypress St.
Suite 104 PMB 5089
Tampa, FL 33607
813-870-3073 (o)
mike@beltranlitigation.com
*Counsel for Plaintiff Dorworth*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the date listed above, a copy of the foregoing document was served by email on all counsel of record:

| | |
|---|---|
| Frederick S. Wermuth<br>  fwermuth@kbzwlaw.com<br>Dustin Mauser-Claassen<br>  dmauser@kbzwlaw.com<br>Quinn Ritter<br>  qritter@kbzwlaw.com<br>***Counsel for Andrew Greenberg***<br>***Sue Greenberg, and AWG, Inc.*** | Michael J. Furbush<br>  mfurbush@deanmead.com<br>Michaela N. Kirn<br>  mkirn@deanmead.com<br>***Counsel for Greenberg Dental Entities*** |
| Jesse Unruh<br>  jesse@spirelawfirm.com<br>Christopher W. Ford<br>  ford@hbcboulder.com<br>Laura Wolf<br>  laura@spark-law.com<br>***Counsel for A.B.*** | Jason A. Perkins<br>  jperkins@carltonfields.com<br>Chelsey J. Clements<br>  cclements@carltonfields.com<br>Jason F. Bullinger<br>  jbullinger@carltonfields.com<br>***Counsel for Abby Greenberg*** |
| Fritz Scheller<br>  fscheller@flusalaw.com<br>***Counsel for Joel Greenberg*** | |

<u>/s/Michael Paul Beltran</u>
Michael P Beltran

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I, Christopher E. Dorworth, declare under penalty of perjury that I have reviewed Plaintiff's Answers to Interrogatories, Set Two, and Responses to Requests for Production, Set Three, served by Abby Greenberg and that the information contained therein is true and correct to the best of my knowledge, information, and belief.

Christopher E. Dorworth
Date: January 11, 2024

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHRISTOPHER E. DORWORTH,

      Plaintiff,

v.

JOEL MICAH GREENBERG, ANDREW W.
GREENBERG, SUE GREENBERG, ABBY
GREENBERG, AWG, INC., GREENBERG
DENTAL ASSOCIATES, LLC, GREENBERG
DENTAL & ORTHODONTICS, P.A.,
GREENBERG DENTAL SPECIALTY GROUP,
LLC, and A.B.,

      Defendants.

Case No.: 6:23-CV-00871

---

**PLAINTIFF'S AMENDED ANSWERS TO DEFENDANTS ANDREW GREENBERG,
SUE GREENBERG, AND AWG, INC.'S FIRST SET OF INTERROGATORIES**

COMES NOW, Plaintiff Christopher E. Dorworth, and hereby submits his supplemental answers to Defendants Andrew Greenberg, Sue Greenberg, and AWG, Inc.'s First Set of Interrogatories. Plaintiff is applying ordinary dictionary definitions of terms and responding in accordance with the Federal Rules of Civil Procedure and rejects any attempt by Defendants to impose any additional or different requirements.

**AMENDED ANSWERS TO INTERROGATORIES**

**Interrogatory No. 1**

Identify and Describe all oral or other communications, interactions, or transactions with A.B. or with third-parties that directly or indirectly reference A.B., including by name, nickname, or any pseudonym such as "Vintage 99."

*Consistent with the definitions of Identify and Describe above, your response should identify (a) each person who is a party or witness to each communication, interaction, or transaction, then explain with particularity (b) the substance of the communication, interaction, or transaction, (2) the date (or approximation), (3) the location, and (4) the words or action of each party to the*

*communication, interaction, or transaction. This interrogatory does not seek communications solely between Plaintiff and his attorney, Michael Beltran.*

**Answer:** Plaintiff has no memory of ever interacting with A.B. He did not ever meet her at a hotel, and he does not recall her ever coming to his house.

The request to "identify and describe oral or other communications with third parties that directly or indirectly reference A.B." is overly broad. It is not limited to communications to/from specific individuals or groups of individuals, such as the media or law enforcement. It is also not limited to particular topics, such as A.B.'s demand letter to Plaintiff or A.B.'s allegations against Plaintiff. Due to overbreadth, the interrogatory also may seek information protected by attorney-client privilege, husband-wife privilege, or other recognized privileges. In addition, a communication directly or indirectly referencing "A.B.," without more, is not relevant to Plaintiff's claims or Defendants' defenses. Due to the overbreadth, Plaintiff has not performed a search for responsive documents and is not withholding any documents Plaintiff would, however, note that DORWORTH000535, produced in response to A.B.'s requests for production, contains responsive information. See also the Exhibits to the Amended Complaint.

**Amended Answer: Plaintiff has no memory of ever interacting with A.B. He did not ever meet her at a hotel, and he does not recall her ever coming to his house. Following a diligent search and reasonable inquiry, Plaintiff refers Defendants to DORWORTH 000535- DORWORTH 000537, DORWORTH 000204 – DORWORTH 000234, and DORWORTH 000642-DORWORTH 000649, previously produced. Privileged written and oral communications occurred with Plaintiff's attorney, Richard Hornsby, and Plaintiff's spouse. See Plaintiff's January 5, 2024, privilege log. Plaintiff objects to identifying the content of privileged communications.**

**Interrogatory No. 2**

Identify and Describe every fact supporting your claim that the Greenbergs entered into an agreement to mitigate Joel Greenberg's criminal liability by falsely accusing Plaintiff of illegal activity.

**Answer:** See Complaint and Amended Complaint. See also Joel Greenberg's statements described in the "Greenberg Presses Dorworth and Others for a Pardon or other Mitigation of his Exposure" Section of the Amended Complaint. See also documents produced by Abby Greenberg, Joel Greenberg, Sue Greenberg, and Andrew Greenberg, including AbbyGreenberg000212-000218. See also Exhibits 1, 3, 7 and 8 to Amended Complaint. See A.B.'s demand letter and news reports regarding the Investigation into Dorworth. Discovery is just beginning. This answer may be supplemented.

**Amended Answer: In a conversation between Joel Greenberg and Plaintiff Dorworth that occurred shortly after Joel Greenberg confronted Rebekah Dorworth at the Marriott hotel, Joel Greenberg said that he was concerned about his exposure for sexual misconduct with A.B. Greenberg told Dorworth that he was paying for A.B.'s attorney's fees in an attempt to shape her testimony so that he could avoid charges. Greenberg also told Dorworth that he and his parents would seek A.B.'s cooperation by "paying her off" and that he had determined that A.B. would accept such inducement. Greenberg told Dorworth that his family and their businesses would pay any amount necessary to obtain a pardon. Dorworth refused to participate in Greenberg's scheme. Greenberg then threatened to "make this a problem for everyone" by falsely claiming that Dorworth, Congressman Matt Gaetz, and others were involved in Greenberg's criminal actions.**

**Greenberg then demanded that Dorworth lobby for the prosecutor investigating Greenberg to be fired. Dorworth again refused to participate in Greenberg's scheme. Greenberg again threatened to "make this a problem for everyone" by falsely claiming that**

Dorworth, Congressman Matt Gaetz, and others were involved in Greenberg's criminal actions.

During the conversation Joel Greenberg had with Rebekah Dorworth at the Marriott, Joel stated that he was concerned that his father, Andrew Greenberg, had criminal exposure because of Andrew's financial involvement in an illegal scheme involving bitcoin investments and the SCTC. Joel Greenberg stated that Gaetz should know that investigators were looking through his Venmo records and that "he didn't know what any of them would say." Joel Greenberg indicated that Dorworth, Gaetz, and others would be falsely implicated by Greenberg if Dorworth and Gaetz did not help Joel mitigate his liability by obtaining a pardon. Joel Greenberg also indicated that he was concerned that Abby Greenberg's participation in misconduct would be revealed if the investigation proceeded.

On August 14, 2020, Greenberg claimed in a text to Dorworth that A.B. did not wish to speak to the authorities. See Texts Between Greenberg and Dorworth, Exhibit 3 to the Amended Complaint. At this time, Joel Greenberg was aware that the grand jury was investigating him for misconduct with A.B. Indeed, at this time, the grand jury was about to indict Greenberg for offenses involving A.B. According to Greenberg, authorities learned of Greenberg's misconduct with A.B. from electronic and other records, and not from A.B. Id.

Greenberg had previously stated that A.B. would do what Greenberg wanted in exchange for material support and attorney fees. In the texts with Dorworth, Greenberg claimed he was paying for A.B.'s lawyer. Id. In these texts, Greenberg also acknowledged that Dorworth had "done nothing wrong." Id. Upon information and belief, when Greenberg stated that A.B. did not wish to speak to the authorities he also meant that he did not wish

A.B. to speak to the authorities and had induced her or attempted to induce her to not speak to the authorities or testify before the grand jury. Id.

According to Greenberg, Andrew and Sue Greenberg and Greenberg Dental and AWG also agreed with Joel Greenberg and Abby Greenberg to pay any amounts necessary to obtain the pardon or firing of the prosecutor that Joel Greenberg was attempting to extort Dorworth and Gaetz to seek on his behalf.

According to Joel Greenberg, Andrew and Sue Greenberg and their companies wanted to mitigate Joel Greenberg's liability and the scope of the investigation both to assist Greenberg's scheme and also in order to mitigate their own liability and prevent themselves from being drawn into the investigation.

Abby Greenberg was particularly concerned about the fact that her husband was the only person being prosecuted and wanted others within their circle to be prosecuted as well. To this end, Abby agreed to provide, and agreed to assist others in providing, false testimony to the federal grand jury to induce indictment of other persons. Andrew and Sue Greenberg, as well as AWG and Greenberg Dental, agreed to provide funding to compensate Abby Greenberg and A.B. for providing false reports and testimony to the authorities and the federal grand jury. Andrew and Sue Greenberg, as well as AWG and Greenberg Dental, also agreed to provide funding for expenses in connection with providing false reports and testimony to the authorities and the grand jury, including legal, investigative, and other expenses.

On January 30, 2021, Stone told Greenberg that Gaetz had supposedly opposed Greenberg's pardon. With any hope of a pardon off the table, Greenberg's only solution was to implicate others and pursue cooperation credit, whether or not his victims had actually

done anything wrong. Greenberg therefore determined to redouble his efforts to frame Gaetz, Dorworth, and other high-value targets.

In late 2020 or early 2021, Congressman Matt Gaetz and Florida Department of Business and Professional Regulation Secretary Halsey Beshears received federal grand jury subpoenas. It was apparent from these subpoenas that Joel Greenberg was attempting to frame them with the assistance of A.B. and others. Greenberg and A.B. claimed to the federal grand jury and others that Gaetz, Dorworth, and others had participated in sexual misconduct with A.B.

Andrew and Sue Greenberg, and their companies Greenberg Dental and AWG agreed to provide, and Abby Greenberg and A.B. agreed to accept, compensation in exchange for participating in the process crimes intended to falsely implicate Dorworth and others. Given Greenberg's low six-figure personal wealth shown on his Amended 2019 Form 6, it would have been impossible for Greenberg to have covered the vast expenses he incurred himself. Further, Greenberg's access to funds was vastly reduced in 2020, after he was charged, as he lost his job, he was unable to continue stealing, and the Government began imposing restrictions on his activity. Greenberg could not have paid multimillion dollar restitution amounts, let alone his legal fees, without support from his parents and the companies.

According to Greenberg, Greenberg's parents stood ready and agreed to pay any amount for a pardon or firing of the prosecutor, whether or not such pardon or firing of the prosecutor would be obtained legally or through bribery. Further, Greenberg certainly could not have provided material support to Abby Greenberg and A.B. without assistance from his parents and the companies.

Upon information and belief, for example, when Joel Greenberg said that he was paying for A.B.'s lawyer, he was either referring to payments made by his parents or their companies, or he was referring to money he had obtained from them for that purpose and with their knowledge of how it would be used. According to Greenberg, he paid for AB's legal fees, to induce her to corroborate Greenberg's false allegations against others.

Thus, Joel Greenberg required and received support from other members of the Greenberg Enterprise, including Andrew Greenberg, Sue Greenberg, AWG, and Greenberg Dental, both before and after his indictment. Nearly every act performed by Greenberg required support by the Greenberg Enterprise, which he received. Greenberg Dental and AWG funded all the activities of the Greenberg Enterprise.

Upon information and belief, AWG is used by the Greenberg family, including Sue, Andrew, and Joel Greenberg, as an alter ego and personal piggy bank, to funnel funds from Greenberg Dental for numerous purposes, including illegal acts described in this Complaint and previous pleadings and in Greenberg's indictments. Andrew and Sue Greenberg coordinated the material support of the Greenberg Enterprise.

Andrew Greenberg, Sue Greenberg, Greenberg Dental, and AWG have paid Joel Greenberg's attorney fees to facilitate Greenberg's defense, which largely consisted of his proffers in preparation for grand jury testimony against Dorworth and others. Andrew Greenberg, Sue Greenberg, AWG, and Greenberg Dental and/or AWG knew that Greenberg was using these proffers and his testimony to falsely implicate Dorworth and others. Knowledge by individual Defendants Andrew Greenberg, Sue Greenberg, and Joel Greenberg is imputed to AWG and Greenberg Dental, as they acted as agents for the companies.

Further, the companies, by making payments under the circumstances, had knowledge of the wrongfulness of their conduct in enabling the racketeering alleged herein. Upon information and belief, each payment by AWG and/or Greenberg Dental was not a bona fide payment of salary, compensation, dividends, or distributions, but was a specific payment made for the benefit of Joel Greenberg, Abby Greenberg, or A.B. with knowledge that the payments were facilitating improper or illegal conduct.

Upon information and belief, Sue Greenberg assisted Andrew Greenberg with all of his conduct herein. Upon information and belief, Sue Greenberg encouraged and conspired with Abby Greenberg to assist in the Greenberg Enterprise. Upon information and belief, in exchange, Sue Greenberg served as Abby Greenberg's paymaster, and provided funds, housing, vacations, and other material support to Abby Greenberg in connection with her assistance to the conspiracy. Abby Greenberg also agreed to assist in the Greenberg Enterprise because she was aggrieved by the fact that Greenberg was the only person in Central Florida political circles who had been charged, and she wanted others to be charged as well:

> Investigator: Was she at all upset about kind of this crumbling in on you guys, and other people are out there that are not --
> Joel: Yeah.
> Investigator: -- getting in trouble?
> Joel: Yeah.
> Investigator: So would she be friendly if there was something -- would she be friendly to talk to us?
> Joel: Yeah.
>
> . . .
>
> Joel: She has -- there's no love lost.
> Counsel: There's no -- there's no allegiance.
> Joel: There's no allegiance anymore. She -- she doesn't want anything to do with these people, anybody we've discussed.
> Investigator: Okay.

> Joel: She's furious that I'm the one that's taken the fall for a lot of this stuff.
> Counsel: She's very -- informed me that she'd be very receptive to any needs.

Jailhouse Interview, Exhibit 1 to the Amended Complaint, at 39:8-20; 40:4-17.

For these reasons, Abby Greenberg has supported the Greenbergs' illegal scheme despite Joel Greenberg's misconduct, the divorce, and the poor situation that Joel Greenberg created for Abby and the children. Greenberg's parents purchased a home for Abby despite no obligation to do so in exchange for Abby agreeing to implicate others. As stated by Abby Greenberg to Rebekah Dorworth, the Greenbergs' support vastly increased after Joel Greenberg was charged, and the support provided by Andrew and Sue Greenberg vastly exceeded any support reasonably necessary for the grandchildren or their son's wife. This increased support was to reward and encourage Abby Greenberg's cooperation with the conspiracy.

Even after Greenberg was jailed in 2021 for violating the conditions of his release, the racketeering activity continued, and Greenberg was able to effectuate his plan. For example, Greenberg could no longer travel to meetings or even conduct unmonitored telephone calls. Instead, Greenberg relied upon help from the individual members of the Greenberg Enterprise and on money from AWG and Greenberg Dental.

In particular, Greenberg's family helped to direct others, including Abby Greenberg and A.B., in smearing Dorworth and others through false reports and false testimony to state and federal authorities.      Upon information and belief, the Greenbergs received and paid the bills of the lawyers and therefore knew of all of the activity in the case. As such, the Greenbergs knew that Greenberg was disseminating false information about Dorworth and others to the authorities and the press. Upon information and belief, Sue Greenberg and Abby Greenberg helped Joel Greenberg effectuate his plan while he was incarcerated.

Andrew Greenberg, Sue Greenberg, and AWG have previously provided material support to assist Joel Greenberg in avoiding responsibility for his crimes, and in some cases, acting as an accessory after the fact. Among other things, Joel Greenberg stole bitcoin from the Seminole County Tax Collector's office. Third Superseding Indictment, Doc. 90, Pages 10-20. Joel Greenberg also used Seminole County Tax Collector money to purchase bitcoin that was converted to Greenberg's own use. Third Superseding Indictment, Doc. 90, Pages 10-20. Greenberg's family, including his father, Andrew Greenberg, was aware of and involved in Greenberg's bitcoin scheme.

As Greenberg had stated to Dorworth in Summer 2020, Andrew Greenberg himself had criminal exposure because of his financial involvement in the illegal scheme involving the bitcoin investments and the SCTC. According to the federal indictment, a family member later provided funds to Greenberg to  submit a cashier's check to cover Greenberg's theft from the SCTC and escape detection. Doc. 90, Page 14. Abby Greenberg had previously informed Rebekah Dorworth that the family member who provided Greenberg with the funds to cover the cryptocurrency theft was Defendant Andrew Greenberg. Defendant Andrew Greenberg provided these funds with the specific intent that they would be used by Joel Greenberg to cover up the theft of cryptocurrency and thereby evade detection by the Secret Service. Doc. 90, Page 14.

Greenberg would have had to have provided a compelling justification to Andrew Greenberg to obtain $200,000, and Andrew Greenberg certainly knew the use of the funds was to aid the bitcoin scheme by helping evade detection and continue misconduct at the SCTC. According to the Third Superseding Indictment, these funds were used as "a further part of the scheme and artifice to defraud." Doc. 90, Page 14. These funds were submitted to

the "[SCTC] with a cashier's check and a memorandum that falsely represented that "the $200,000 he had diverted had been used 'to provide liquidity for stablecoin project,' that the '[p]roject has been delayed until further notice,' and that the funds were returned." Doc. 90, Page 14.

Andrew Greenberg, Sue Greenberg, and AWG were also aware of Joel Greenberg's attempt to frame Joel's lawyer (who is also his former uncle) with possession of child pornography. In 2019, Greenberg falsely accused Brian Beute of sexual impropriety with students. Also in 2019, Joel Greenberg received a subpoena. Richard Sierra, an attorney at the SCTC and former uncle of Joel Greenberg, advised Greenberg to comply with the subpoena.

Greenberg attempted to enlist Richard Sierra in covering up his crimes or failing to comply with the subpoena, but Richard Sierra insisted that Greenberg comply with the subpoena. In 2021, investigators found a thumb drive in Greenberg's car with child pornography. Greenberg told federal investigators he downloaded the child pornography to frame Sierra. https://www.gazettextra.com/news/nation_world/former-seminole-county-tax-collector-joel-greenberg-collected-child-pornography-to-frame-in-house-attorney/article_8cf77147-458b-53af-992c-c99d1fcfb955.html

Upon information and belief, Greenberg retaliated against Richard Sierra because Sierra did not assist Greenberg in covering up his crimes in response to the subpoena.

Upon information and belief, Andrew and Sue Greenberg learned of this attempt to frame a family member and Joel's attempt to enlist him in defying the subpoena. At this point, Andrew and Sue Greenberg still agreed to assist Greenberg financially and otherwise in implicating others, including Dorworth, Gaetz, and Beshears, in illegal activity even

though they knew that Greenberg was involved in falsely implicating others, including through the illegal acts alleged herein.

Greenberg shared his plans with his associates, people he encountered, the government, and the public, and did not keep secret his illegal scheme to falsely implicate and accuse others. For example, Greenberg telephoned his friend Joe Ellicott from jail on a recorded line and bragged and joked about Matt Gaetz being pulled into a child sex trafficking investigation.

Joel Greenberg also bragged about his scheme to falsely implicate Matt Gaetz and Dorworth and others to inmate Vladimir St. Louis who he met in a holding cell and during transport between the Orange County Jail and the Federal Courthouse. See April 5, 2021 Letter from Vladimir St. Louis to Attorney Kirshner, Exhibit 7 to the Amended Complaint. Joel Greenberg bragged to St. Louis that he "fabricated numerous events" and told investigators that he arranged for A.B. to "hook up" with other people. Id. at 3-4.

When asked by St. Louis what A.B. would say to investigators, Greenberg said that "the girl probably would go along with it." Id. Furthermore, Greenberg said that A.B. would "go along" with the allegations so that "she can file a lawsuit afterwards." Id. at 4. Indeed, at or around the time that federal authorities decided not to charge Dorworth and Gaetz, A.B. sent correspondence to Dorworth and Gaetz demanding compensation based upon her false allegations of impropriety and attempting to monetize a presuit settlement, presumably to avoid further publication of any allegations.

Greenberg told St. Louis that he told investigators (falsely) that he arranged an encounter between A.B. and "a former lobbyist for Donald Trump." Id. at 4. Greenberg was

referring to Dorworth as the "former lobbyist for Donald Trump" because Dorworth's firm, Ballard Partners, had lobbied for the Trump Organization.

Greenberg told St. Louis that he was pointing the finger at Republicans because he thought that the prosecutors and investigators were Democrats. Id. at 3. Greenberg thought that law enforcement would be more likely to believe Greenberg's lies if they were directed toward Republicans. Id. at 3. When asked by St. Louis why Greenberg was fabricating lies about his colleagues, Greenberg said "that if they were the ones in his shoes, they would fabricate stuff about him as well just to get a time-cut." Id. at 5.

According to the conversation between Greenberg and St. Louis, Greenberg would mitigate the vast majority of his prison sentence if he were able to help secure convictions of persons such as Gaetz and Dorworth. Id. at 3. Upon information and belief, Joel Greenberg also kept his coconspirators and others informed of his intent, as he spoke about it on recorded lines and openly to other inmates in confinement.

Even after he was charged and disgraced, Joel Greenberg kept a close relationship with his coconspirators. See Jailhouse Interview, Exhibit 1 to the Amended Complaint at 41:35-41 (indicating that he speaks to his mom and dad, has a friendly relationship with Abby). Greenberg kept a close relationship with Abby Greenberg, who was his former wife, and who knowingly corroborated many of his false allegations and who was kept in the fold through material support from his parents. Greenberg also kept a close relationship with A.B., who he previously had a sexual relationship with and who he claimed to be able to control by providing material support through his parents and their companies. Greenberg also kept a close relationship with his parents and their companies, who provided material

support for his inducements to others, his attorney fees for his elaborate scheme, and even paid his restitution.

The Greenberg Enterprise knew of Greenberg's propensity to commit crimes generally and to falsely accuse people of sex crimes in particular, and yet it systematically supported him in such conduct both before and after his indictment. The Greenberg Enterprise has not just supported Joel Greenberg, it has gone far beyond merely keeping Joel Greenberg within the family circle and providing basic support. In fact, the Greenberg Enterprise has supported Joel Greenberg's improper conduct to such an extent that it has repeatedly placed others within the zone of harm of acts that it enabled Greenberg to commit. Whatever limitations Greenberg had, or however much his parents loved him, they had no right to knowingly assist him in committing crimes.

The Greenbergs were aware of Greenberg's propensity to commit crimes and acknowledged the same. Many people, including Greenberg's mother, knew that when he stepped into the public arena, he would inevitably commit crimes, as he did. Despite all of this, the Greenbergs provided extravagant aid to Greenberg, before, during, and most importantly, after his public role, knowing that this aid would be used to commit crimes, including those described herein. The extent and impropriety of the Greenbergs' aid to Joel Greenberg is shown by their efforts to deny or minimize the aid.

For example, at sentencing, Greenberg's attorney claimed that "[a]s a result of his conduct, he lost his marriage. He lost his children. He was cut out of his parents' will completely. He's lost all financial support. And you'll see today his family is not here." Doc. 180, December 1, 2022 Sentencing Trans. at 14:1-4. However, a seven-figure payment had been made on Greenberg's behalf to Seminole County for Restitution just a week prior. See

Settlement Agreement and Checks, Exhibit 9 to the Amended Complaint. Upon information and belief, Greenberg's parents had arranged through intermediaries including AWG and/or Greenberg Dental, to cover Greenberg's restitution before sentencing.

The day before the $1.25 million payment, Greenberg's parents and their companies had negotiated to obtain release for Andrew Greenberg, Susan Greenberg, AWG, Inc. and other affiliated entities, presumably because the Greenbergs thought they had legal liability in connection with the misconduct. Id.

In fact, Greenberg's counsel had acknowledged in a filing with the federal court that "the restitution issue involves multiple parties." Doc. 117, Page 2, Para. 6. Based upon the payment and negotiation of the Settlement Agreement, Greenberg's counsel was presumably referring to some or all of the other Defendants here, even though Greenberg was the only person charged in his case.

Two weeks after sentencing, another six-figure payment was made on Greenberg's behalf to Seminole County. Exhibit 9 to the Amended Complaint. Upon information and belief, and based upon Greenberg's amended financial disclosures, Greenberg lacked the funds to make this payment, and the Greenbergs covered it for him.

In addition to the foregoing facts, Plaintiff states that Andrew Greenberg, Sue Greenberg, and AWG have paid for all of Joel Greenberg's attorney fees. See, e.g., Andrew000053-000055, Andrew000079, Susan000719. They have also paid for Abby Greenberg's attorney fees associated with this action.

See documents produced by Abby Greenberg, Joel Greenberg, Sue Greenberg, and Andrew Greenberg, including AbbyGreenberg000212-000218. See also Exhibits 1, 3, 7 and 8 to Amended Complaint. See also DORWORTH 000204-DORWORTH 000210,

DORWORTH 000001-DORWORTH 000203, and other equally available news reports

regarding the Investigation into Dorworth. Discovery is just beginning. This answer may be

supplemented.

**Interrogatory No. 3**

Identify and Describe every fact supporting your allegations that the Greenbergs paid A.B.
or paid A.B.'s attorney's fees.

**Answer:** Joel Greenberg admitted to Plaintiff during breakfast at Another Broken Egg in

Heathrow, Florida, in July 2020, that his parents were taking care of A.B. to make the problem go

away. See also Exhibit 3 to Amended Complaint and the Complaint and Amended Complaint,

generally. See also Joel Greenberg's statements described in the "Greenberg Presses Dorworth and

Others for a Pardon or other Mitigation of his Exposure" Section of the Amended Complaint. See

also documents produced by Abby Greenberg and Joel Greenberg, including

AbbyGreenberg000212-000218. Discovery is just beginning. This answer may be supplemented.

**Amended Answer: Joel Greenberg admitted to Plaintiff during breakfast at Another Broken**

**Egg in Heathrow, Florida, in July 2020, that his parents were taking care of A.B. to make**

**the problem go away.**

**On August 14, 2020, Greenberg claimed in a text to Dorworth that A.B. did not wish**

**to speak to the authorities. See Texts Between Greenberg and Dorworth, Exhibit 3 to the**

**Amended Complaint. At this time, Joel Greenberg was aware that the grand jury was**

**investigating him for misconduct with A.B. Indeed, at this time, the grand jury was about to**

**indict Greenberg for offenses involving A.B. According to Greenberg, authorities learned of**

**Greenberg's misconduct with A.B. from electronic and other records, and not from A.B. Id.**

**Greenberg had previously stated that A.B. would do what Greenberg wanted in exchange**

**for material support and attorney fees. In the texts with Dorworth, Greenberg claimed he**

was paying for A.B.'s lawyer. Id. In these texts, Greenberg also acknowledged that Dorworth had "done nothing wrong." Id. Upon information and belief, when Greenberg stated that A.B. did not wish to speak to the authorities he also meant that he did not wish A.B. to speak to the authorities and had induced her or attempted to induce her to not speak to the authorities or testify before the grand jury. Id.

Greenberg told Dorworth that he and his parents would seek A.B.'s cooperation by "paying her off" and that he had determined that A.B. would accept such inducement. Upon information and belief, and according to Greenberg, he had agreed with his parents that they would fund, through their companies, any lobbying, bribes, payments, or legal fees necessary to obtain A.B.'s cooperation in reporting or testifying falsely, or to fund any effort to obtain a pardon.

According to Greenberg, Andrew and Sue Greenberg and their companies wanted to mitigate Joel Greenberg's liability and the scope of the investigation both to assist Greenberg's scheme and also in order to mitigate their own liability and prevent themselves from being drawn into the investigation.

See also documents produced by Abby Greenberg and Joel Greenberg, including AbbyGreenberg000212-000218. Discovery is just beginning. This answer may be supplemented.

**Interrogatory No. 4**

Identify and Describe every fact supporting your allegations that the Greenbergs aided and abetted Joel Greenberg and A.B.'s alleged defamation.

**Answer:** See answers to Interrogatory Nos. 2 and 3.

**Amended Answer: See amended answers to Interrogatory Nos. 2 and 3.**

**Interrogatory No. 5**

Identify the facts of and Describe each occasion on which you allege in Plaintiff's Verified Amended Complaint a defamatory statement was made about you.

*Consistent with the definitions of Identify and Describe above, for each lettered bullet (e.g., a., b., c.) in paragraph 378—and any other defamatory statement Plaintiff claims was made about him—in Plaintiff's Verified Amended Complaint, Plaintiff's response should identify (a) each person who was a party or witness to each alleged defamatory statement, then explain in detail the: (b) statement, including, to the extent possible, the precise words communicated; (c) date(s) on which the statement was made (d) the person(s) who made the statement, (e) the person(s) to whom the statement was made; and (f) mode of communication (for example, in person or by telephone, letter, text, email).*

**Answer:** Responsive information is detailed at Paragraphs 349 to 381 of the Verified Amended Complaint, including evidence citations.

**Amended Answer: Upon information and belief, Joel Greenberg has defamed Dorworth at each interview with the authorities as set forth above by accusing him of crimes. Greenberg has also, individually, and through agents, including Defendants, caused these same allegations to be published in the media. Greenberg has even published such statements to President Trump.**

> **For example, according to the Daily Beast:**
>
> **In a pre-emptive 2020 pardon request to then President Donald Trump, the disgraced Seminole County tax collector wrote that Dorworth—identified as a "prominent lobbyist for Ballard Partners"—hosted parties at his home where a number of men, specifically including Gaetz, paid to have sex with young girls, including A.B.**

**GOP Lobbyist Chris Dorworth in Matt Gaetz Case Accused of Rape in Court Docs (thedailybeast.com)**

**Upon information and belief, A.B. has defamed Dorworth by alleging to the authorities, before the grand jury, and to the media that Dorworth committed sexual misconduct. A.B.'s defamation to the authorities regarding Dorworth is set forth above and herein.**

On April 8, 2021, Dorworth was contacted by text by a New York Times reporter regarding allegations of sexual misconduct. See New York Times Texts, attached to the Amended Complaint as Exhibit 8. Upon information and belief, one of the Defendants in this action leaked false and derogatory information about Dorworth to the New York Times. Further, upon information and belief, A.B. falsely claimed to the New York Times, either directly or through an intermediary, that Dorworth had engaged in sexual misconduct with her.

Upon information and belief, other Defendants here, including Abby Greenberg, Joel Greenberg, and possibly Andrew and Sue Greenberg, provided information to the New York Times reporter, which resulted in the Times reporter contacting Dorworth.

When Dorworth informed his employer, Ballard Partners, that he had been falsely implicated in the investigation, he was nonetheless compelled to resign his $1 million per year role with Ballard. Chris Dorworth, longtime associate of Matt Gaetz, resigns from Ballard Partners (floridapolitics.com). Dorworth's lobbying practice consisted of many Fortune-500 and government clients. Lobbyists must publicly disclose their clients, and government entities must generally disclose their expenditures on lobbyists. These clients are accountable to shareholders, citizens, and the public, and cannot employ a lobbyist who is being investigated for criminal wrongdoing, particularly of the nature alleged by Defendants.

Given the highly competitive nature of lobbying, and the nature of Dorworth's practice and clientele, it would have been impossible for Dorworth to continue to lobby successfully after the allegations that were disseminated by Defendants were publicized. For these reasons, Ballard had no choice but to require Dorworth's resignation, lest it risk reputational harm and loss of clientele. In fact, Dorworth still suffers business injury from

the defamation by Defendants and must further clear his name beyond the obtaining of a nonprosecution decision by the Government.

A.B. and others at her behest continued to defame Dorworth and others with similar allegations for several years afterwards. For example, according to an article in late 2022, "[t]wo women who attended parties with Greenberg and Gaetz previously told CNN that the men also regularly socialized together at sex parties in the Orlando area that featured local political figures, young women, Venmo payments, alcohol, and drugs, including cocaine and ecstasy." [Judge scolds Justice Department for its slow investigations at hearing for Rep. Matt Gaetz's convicted associate | CNN Politics](#)

Upon information and belief, A.B. was one of the two women who were sources for the story above. Further, upon information and belief, A.B. also issued similar and false allegations about Dorworth to CNN. Upon information and belief, A.B. also defamed all persons who she accused of "sex trafficking," particularly to the extent she claimed she was underage.

A.B.'s failure to disclose in all her communications that she had (1) lied about her age and (2) accepted payment for her own misconduct, was highly misleading and defamatory by implication, even if her story were true, which it was not. In fact, Judge Presnell found that even Greenberg's conduct on this issue was overstated by the Government and A.B. because she was "essentially a prostitute." Doc. 180, Sentencing Transcript 43:1-2.

Abby Greenberg falsely accused Dorworth of being involved in the ghost candidate scheme described above. Upon information and belief, Abby Greenberg was the source for the New York Times story, which covered the allegation against Dorworth about the ghost candidate scheme. Abby Greenberg also disseminated information about the false sexual

misconduct allegations to the press. Upon information and belief, Abby Greenberg has disseminated information about the false sexual misconduct allegations to the Daily Beast on multiple occasions.

The Daily Beast has republished false sexual misconduct allegations about Dorworth repeatedly, including most recently when it published such allegations on July 8, 2023. [GOP Lobbyist Chris Dorworth in Matt Gaetz Case Accused of Rape in Court Docs (thedailybeast.com)](https://thedailybeast.com)

Joel Greenberg issued numerous false statements about Dorworth, including, but not limited to the following:

a.       Falsely averring Dorworth was involved in the scheme to sex traffic minors, as alleged in the RICO Section herein;

b.       Falsely averring Dorworth had sex with an underage A.B., as alleged in the RICO Section herein;

c.       Falsely averring Dorworth was involved in an attempt to obstruct justice through witness tampering, as alleged in the RICO Section herein;

d.       Falsely averring Dorworth was involved in the ghost candidate scheme involving the 2020 Florida Senate District Nine election and incurred campaign finance violations in furtherance of the scheme, Jailhouse Interview, Exhibit 1 to the Amended Complaint at 8:14-42, 50:23-24;

e.       Falsely impersonating Dorworth in communications to the employer of Joel Greenberg's political opponent and creating social media accounts made to suggest Dorworth was behind them, as alleged in the RICO Section herein;

      f.      **Falsely describing Dorworth and others as a "mafia" with a criminal agenda, Jailhouse Interview, Exhibit 1 to the Amended Complaint at 10:20-22;**

      g.      **Falsely averring Dorworth was having an extramarital affair with his female attorney, Jailhouse Interview, Exhibit 1 to the Amended Complaint, Page 31:40-41, and**

      h.      **Falsely averring Dorworth borrowed money from Jim Stelling to avoid detection in acquiring prostitutes and drugs. Jailhouse Interview, Exhibit 1 to the Amended Complaint at 27:33-49.**

**Each one of these statements was made by Greenberg, and/or repeated or corroborated by A.B. and Abby Greenberg, with an improper motive to harm Dorworth. Greenberg knew each of these allegations were false, as he sent a text to Dorworth acknowledging that "[y]ou've done nothing wrong." Greenberg Texts, Exhibit 3 to the Amended Complaint. Each Defendant acted with improper motive in issuing their respective false statements.**

**Interrogatory No. 6**

Identify the facts of and Describe Plaintiff's efforts—including all successes and failures—to secure alternative employment or income since resigning from Ballard Partners. For each alternative source of employment or income identified, identify the amount of income derived from that source, quarterly, up to the date of your answer.

**Answer:** Plaintiff resigned his position after Defendants falsely made allegations against Plaintiff in connection with the investigation into criminal activity by Joel Greenberg, in an effort to obtain cooperation credit and reduce Joel Greenberg's prison sentence. Plaintiff received severance from Ballard Partners, DORWORTH000727-DORWORTH000732. Plaintiff would like to reestablish his lobbying practice; however, he has met with only limited success. He earned $50,000 from a client in 2022 and $50,000 from another client in 2023. Plaintiff believes a new agreement will be

reached with a client imminently. Plaintiff objects to identifying these clients on the basis of third party privacy. Disclosure of the client identities would also likely harm Plaintiff since it is anticipated the clients would not provide him with further business or referrals if their documents and strategies are potentially subject to discovery. If the new contract is secured, Plaintiff will register his association, which is publicly available at www.floridalobbyist.gov.

In 2023, Plaintiff had a very general discussion with Brian Ballard about rejoining Ballard Partners. Although Ballard seemed open to the idea, he indicated Plaintiff would rejoin at a much lower compensation level than when he left. Although no offer was made or numbers discussed, given Plaintiff's familiarity with Ballard Partners business model, Plaintiff understood Ballard's comment as indicating compensation around $180,000 to $200,000. Although it will take time given Defendants' harm to his reputation, Plaintiff believes he can rebuild his income faster on his own, so no further discussions were held with Ballard.

Plaintiff has also engaged in land development, both while at Ballard Partners and after his departure. He was involved in the proposed River Cross development, which was unsuccessful. Although Dorworth had been discussing a settlement with the County in or around 2020, Joel Greenberg published statements accusing his political opponent, Brian Beute, of having a sexual relationship with a minor at the school where Beute worked. Greenberg created the false impression that these statements were made by Plaintiff, since Beute was also then-President of Save Rural Seminole, the organization opposed to the River Cross development. Settlement negotiations stopped thereafter, resulting in damages as yet undetermined but thought to be in the 9-figure range.

Plaintiff currently has a land development project in Oviedo that is under review with Seminole County. He is also involved in preliminary work for a confidential project proposal located in southwest Florida. No profit has been realized from these projects.

On or about October 7, 2022, Plaintiff purchased the Oxford Sports Pub and Secret Society in Altamonte Springs, Florida. He operated the restaurant until structural issues with the leased space necessitated closure on or around August 15, 2023. No profit was realized.

**Interrogatory No. 7**

Provide a calculation of the damages or other amounts you claim to be due from the Greenbergs in connection with your claims in your Verified Amended Complaint, broken down by category of damages or amounts claimed, the Defendant against whom each category of damages is sought, and the methodology of calculation for each such category.

**Answer:** Defendants are jointly and severally liable for all damages. At this time, Plaintiff's best estimate of his damages is the following:

- Lost Wages $2.5M and counting ($1M per year for 2.5 years), less severance.

- Loss of employment benefits: Estimated at $100,000 and counting ($40,000 per year for 2.5 years).

- Loss of earning capacity: To be determined.

- Loss of existing and future business opportunities: Damages resulting from the cessation of River Cross development property exchange negotiations are in the 9-figure range.

- Emotional distress: $2.5M.

- Treble damages for RICO claims: not less than $15.3 million, calculated as 3x($2.5M+$100k+$2.5M).

- Attorney fees: Confidential and to be determined at conclusion of the litigation.

Discovery is just beginning. This answer may be supplemented or modified.

**Interrogatory No. 8**

Identify all messaging apps you used at any time between January 1, 2016 and the present. For each app, identify your corresponding username.

**Answer:** Plaintiff used iMessage, Whatsapp, and Signal. To the extent the username is something

other than a phone number (e.g., iMessage), the username was Chris Dorworth.

**Interrogatory No. 9**

Identify the facts of and Describe all oral communications you had with any other person regarding your decision to initiate this Action.

*Consistent with the definitions of Identify and Describe above, your response should identify (a) each person who was a party or witness to each communication, then explain in detail the: (b) the substance of each communication; (c) date(s) of each communication, (d) the person(s) who initiated the communication, and (f) mode of communication (for example, in person or by telephone, letter, text, email). This interrogatory does not seek communications solely between Plaintiff and his attorney, Michael Beltran.*

**Answer:** Plaintiff objects to this interrogatory, as Plaintiff's "decision to initiate this Action" is

not relevant to Plaintiff's claims or Defendants' defenses. It is not an element of any of Plaintiff's

counts or Defendants' affirmative defenses. It is also so overbroad that it may encompass

information protected by the attorney-client privilege, work product doctrine, husband-wife

privilege, or other recognized privilege.

**Amended Answer: Plaintiff had separate conversations with his attorney, Michael Beltran,**

**and his wife. The contents of these conversations are privileged. Plaintiff also spoke with his**

**father, who supported Plaintiff's decision.**

**Interrogatory No. 10**

Identify the facts of and Describe all physical or electronic documents or communications that relate to Defendants in this Action or the subject matter of this Action that were deleted or otherwise disposed of—including but not limited to unintentional deletion by, for example, document retention policies. Specifically, identify each document or communication that was deleted, its contents, why it was deleted, and when it was deleted.

**Answer:** Prior to receiving the December 28, 2020, grand jury subpoena, Plaintiff maintained an

auto delete setting on his phone for text messages, which is standard in the lobbying industry. Once

Dorworth received the subpoena, he deactivated the auto delete. Specific to Joel Greenberg, Plaintiff does not possess text messages with him other than those that were produced to the Government, DORWORTH000535-DORWORTH000537, previously produced. Plaintiff does not recall the contents of other text messages with Joel Greenberg but states no text messages concerned arrangements for sex with A.B. because that did not happen.

With regard to email, Plaintiff lost access to his Ballard Partners emails upon his departure. He does not know the status of those emails, although Ballard Partners has produced documents pursuant to subpoena.

**Interrogatory No. 11**

Identify all persons with whom you have communicated in writing regarding any of the Defendants in this Action, any event or occurrence referenced in the Verified Amended Complaint, this Action, the Verified Complaint, the Verified Amended Complaint, and any filing in this Action.

**Answer:** Plaintiff, himself or through counsel, have communicated with the following:

- Joel Greenberg, DORWORTH000535-DORWORTH000537.

- Ben Paris, DORWORTH000672-DORWORTH000673.

- Congressman Matt Gaetz, DORWORTH000341-DORWORTH000349.

- Counsel for A.B., DORWORTH000204-DORWORTH000234.

- Vince Citro, DORWORTH000283-DORWORTH000284.

- Media, DORWORTH000642–DORWORTH000649, DORWORTH000733-DORWORTH000734.

- Counsel for Michael Shirley, DORWORTH000757.

Plaintiff has also communicated in writing with his attorneys, Richard Hornsby and the undersigned. Plaintiff does not interpret this interrogatory as requesting information regarding

each such correspondence; however, to avoid a waiver argument, Plaintiff states the contents of

such communications are protected by attorney-client privilege.

Date: February 5, 2024

/s/Michael Paul Beltran
Michael P Beltran
Fla. Bar No. 0093184
Beltran Litigation, P.A.
4920 West Cypress St.
Suite 104 PMB 5089
Tampa, FL 33607
813-870-3073 (o)
mike@beltranlitigation.com
*Counsel for Plaintiff Dorworth*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the date listed above, a copy of the foregoing document was served by email on all counsel of record:

Frederick S. Wermuth
    fwermuth@kbzwlaw.com
Dustin Mauser-Claassen
    dmauser@kbzwlaw.com
Quinn Ritter
    qritter@kbzwlaw.com
***Counsel for Andrew Greenberg***
***Sue Greenberg, and AWG, Inc.***

Michael J. Furbush
    mfurbush@deanmead.com
Michaela N. Kirn
    mkirn@deanmead.com
***Counsel for Greenberg Dental Entities***

Jesse Unruh
    jesse@spirelawfirm.com
Christopher W. Ford
    ford@hbcboulder.com
Laura Wolf
    laura@spark-law.com
***Counsel for A.B.***

Jason A. Perkins
    jperkins@carltonfields.com
Chelsey J. Clements
    cclements@carltonfields.com
Jason F. Bullinger
    jbullinger@carltonfields.com
***Counsel for Abby Greenberg***

Fritz Scheller
    fscheller@flusalaw.com
***Counsel for Joel Greenberg***

/s/Michael Paul Beltran
Michael P Beltran