UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHRISTOPHER E. DORWORTH,

     Plaintiff,

v.

JOEL MICAH GREENBERG, ANDREW     Case No.: 6:23-CV-00871
W. GREENBERG, SUE GREENBERG,
ABBY GREENBERG, AWG, INC.,
GREENBERG DENTAL ASSOCIATES,
LLC, GREENBERG DENTAL &
ORTHODONTICS, P.A., GREENBERG
DENTAL SPECIALTY GROUP, LLC,
and A.B.,

     Defendants.

## PLAINTIFF'S OPPOSITION TO MOTION TO STAY

Plaintiff Christopher Dorworth opposes the Corrected Motion to Stay (Doc. 135) filed by Defendants Andrew Greenberg, Sue Greenberg, and AWG, Inc.[1] In short, the Greenberg Defendants wish to prohibit Plaintiff from conducting discovery now that Defendants, collectively, have conducted large-scale discovery, including written discovery, the issuance of 62 non-party subpoenas, and the completion of multiple depositions, all while failing to provide any dates for the

---

[1] For purposes of this motion, the moving defendants will be referred to as the "Greenberg Defendants," and references to all defendants will be "Defendants."

Greenbergs' depositions until September 2024. In short, Defendants have conducted far more discovery than Plaintiff, and any expense entailed is entirely of Defendants' own making.[2] Defendants now seek to maintain their informational advantage while thwarting Plaintiff's discovery just as he is finally posed to take party depositions in September. The Court should not allow the Greenberg Defendants to reap the benefits of the discovery performed while stopping Plaintiff from pursuing his own.

If, however, the Court finds the Greenberg Defendants' argument persuasive, the Court should enter a stay prior to the July 23 and 24 depositions of Plaintiff and his spouse. Staying the matter after those depositions, but before the party defendants' depositions, would vastly increase Defendants' informational advantage while protecting themselves from deposition.

## I.      Stays Are Strongly Disfavored and Rarely Granted.

Staying a matter pending resolution of a dispositive motion is not the generally accepted discovery practice in this District.

> Normally, the pendency of a motion to dismiss or a motion for summary judgment will not justify a unilateral motion to stay discovery pending resolution of the dispositive motion. **Such motions for stay are rarely granted.** However, unusual circumstances may justify a stay of discovery in a particular case upon a specific showing of prejudice or undue burden.

---

[2] Indeed, counsel for Abby Greenberg, who has performed most of the discovery to date, is being paid by the Greenberg Defendants, as confirmed in a telephone call between counsel for Abby Greenberg and undersigned counsel.

M.D. Discovery 2021 § I.E.4 (emphasis added). Case law confirms that "[a] request to stay discovery pending a resolution of a motion is rarely appropriate unless the resolution of the motion will dispose of the entire case." *McCabe v. Foley*, 233 F.R.D. 683, 685 (M.D. Fla. 2006). "Motions to stay discovery are not favored because when discovery is delayed or prolonged it can create case management problems which impede the Court's responsibility to expedite discovery and cause unnecessary litigation expenses and problems." *U.S. v. Berkley Regional Ins. Co.*, 2015 WL 2452298 (M.D. Fla. May 21, 2015).

The instant case also does not meet the motion to stay standard set forth in *David v. United States*, No. 8:19-CV-2591-T-36JSS, 2020 WL 1862606, at *1 (M.D. Fla. Apr. 14, 2020), and quoted by Defendants, that there be an "immediate and clear" possibility that the Court will grant the Motion to Dismiss. Other than regurgitating their motion(s), Defendants provide no basis that this will be the outcome. Discovery to date shows extensive communications between Joel and his parents, including meetings with Joel's lawyers that his parents attended, as well as Joel being copied on emails that his parents[3] have logged as privileged. Discovery to date also shows seven-figure payments by Joel Greenberg's family to a wide range of entities in an apparent effort to promote Joel's unlawful activity.

---

[3] Greenberg Dental has also logged these documents. Because Andrew apparently used a company email for privileged personal communications, he appears to have waived the privilege.

Next, the Greenberg Defendants resort to, of all cases, *Clinton v. Jones*, 520 U.S. 681, 706 (1997), where the United States Supreme Court <u>rejected</u> a stay for, of all people, the sitting President of the United States. The Greenberg Defendants fail to explain why they deserve a remedy denied under those circumstances. *Id.* The Greenberg Defendants do little better with their citation to mine-run cases. Doc 135 at 8, citing *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1560 (11th Cir. 1985) (reversing and remanding because "[t]he magistrate's curtailment of discovery except as to the availability of rental funds was also an abuse of discretion.")

Nor is *Dvoinik v. Rolff* availing. No. 23-14147, 2024 WL 2974475, at *3 (11th Cir. June 13, 2024). There, serial pro se litigants had their complaint dismissed for shotgun pleading and apparent lack of a claim. There was no stay of discovery; rather, there was a dismissal on the merits because the plaintiffs failed to show any wrongdoing by any person. The Greenberg Defendants do not explain how this case justifies their requested remedy of a stay of discovery midway through depositions.

If, consistent with *McCabe*, this Court takes a "preliminary peek at the merits of [the] dispositive motion[s]," it is apparent pending motions to dismiss are not "clearly meritorious and truly case dispositive."[4] *McCabe* at 685 (internal quotations omitted).

---

[4]Briefly, Dorworth easily meets the pleading standard. He is in a position to provide additional detail at this juncture, and many of the allegations against the Defendants are both corroborated by information and discovery obtained or by Joel's own statements.

In fact, the Greenberg Defendants themselves seemingly acknowledge this fact. They seek relief far beyond a stay pending ruling on a dispositive motion. Instead, they ask this Court stay the matter until *pleadings are closed*. Doc 135, page 3.[5] They also reference the need for additional defenses, parties, claims, and counterclaims. *Id.* at pp. 6-7. The Greenberg Defendants all but acknowledge that Plaintiff's claims will survive. The reason Defendants have moved to stay discovery now is not due to any new action filed in state court, nor new 11th Circuit caselaw, but rather because their own depositions are upcoming, and they apparently cannot deny under oath the allegations of the Amended Complaint.

It is worth noting that the Greenberg Defendants' motion was filed on July 5, 2024, eighteen days before the scheduled July 23-24 depositions of Plaintiff and his wife. The timing is curious, given Plaintiff's opposition is not technically due until Friday, July 19, leaving only a single business day – Monday, July 22 – for the matter to be submitted to the Court prior to the depositions. The facts discussed herein

---

[5] The extravagant nature of this request is apparent from its scope. The Greenbergs request that all discovery in this case as long as any pleadings remain open. Defendants do not explain why Dorworth should await discovery on his affirmative claims while motion practice continues on any pleadings filed by Defendants. Taken to its logical conclusion, Dorworth would need to await any further discovery on his affirmative claims while (1) Defendants draft and file answers and affirmative defenses, (2) Dorworth replies or moves against such pleadings, and, (3) conceivably Defendants direct any motions to any reply. Further, A.B. threatens to file Counterclaims, and those counterclaims have been threatened for over a year. Doc. 49, Page 2. The Greenbergs do not explain why they waited over a year for discovery to proceed before raising the issue of the counterclaims requiring additional discovery. Further, the Greenbergs do not explain why, other than A.B.'s and her counsel's refusal to answer questions at deposition about any possible counterclaims, discovery cannot proceed as normal pending the closing of the pleadings.

demonstrate the instant motion is simply an attempt to further their unfair tactical advantage.[6] Defendants apparently hope the Motion will be granted only after Dorworth and his wife are deposed, but before Defendants sit in September.

## II.   Neither Plaintiff's Fraudulent Conveyance Lawsuit nor A.B.'s Deposition Testimony Warrant a Stay.

Defendants argue that Plaintiff's filing of a fraudulent conveyance action and A.B.'s unjustified refusal to answer questions at her deposition suddenly change the equation regarding discovery.

Dorworth filed the fraudulent conveyance claim against the Greenberg Defendants simply to preserve his rights, lest the Greenbergs later claim such a lawsuit untimely. The new filing is **not** based upon the same claims as in this case. The fraudulent conveyance lawsuit is directed at enforcing a judgment against Joel Greenberg in the instant case, as discovery and other information learned by Plaintiff confirms that Defendants engaged in fraudulent transfers of Joel Greenberg's assets.

The only information that is cut and pasted is general background information about the case, not substantive claims. If Plaintiff anticipated a dismissal with prejudice in this case, he would certainly not file the same claims in state court, let

---

[6] As shown by the Greenberg Defendants' citation to *Chudasama v. Mazda Motor*, 123 F.3d 1353, 1367 (11th Cir. 1997), any motion to stay should be filed "before discovery begins," not after the Greenbergs have gained a tactical advantage by taking discovery while resisting Plaintiff's attempts.

alone different claims directed at enforcing a judgment he would obtain in this action.

As for any suggestion that Plaintiff anticipates a dismissal based upon a newly filed action, this is wrong. A privilege log produced in this action refers to "fraudulent conveyance." *See* Exhibit L, excerpts from the Greenberg Dental Entities' February 27, 2024, Privilege Log. Further, Dorworth has learned since filing his Amended Complaint that Seminole County also threatened to pursue a fraudulent conveyance action against the Greenberg Defendants based upon Joel Greenberg's divestment of his $5 million net worth (apparently to his parents and their company) in the months after his criminal charges. This lawsuit is not "claim splitting." Instead, it relies upon the underlying claims against Joel Greenberg here. If Dorworth desired discovery simply for that action, presumably he would have propounded it in that action. Instead, Dorworth filed the new action simply to preserve his position against any argument that it was not timely filed if asserted after a judgment is obtained in this action.

As to A.B.'s unjustified refusal to answer questions during her deposition, the Greenberg Defendants do not explain how a defendant's improper refusal to answer questions at a deposition that was noticed and taken by other defendants justifies a stay. If that were the law, then defendants could notice each other's depositions (as they did as to A.B.), refuse to answer questions, and then justify an indefinite stay.

Instead, A.B. should answer questions about any potential counterclaims, which she claims would arise from the same facts as this case. The fact that these claims have been brandished repeatedly, but not filed, is a substantial part of the reason that Dorworth shough relief in the first place. Doc 116, Pages 64-71. This does not justify any stay.

### III.  A Stay Would Unfairly Prejudice Plaintiff given the Discovery Conducted to Date.

If the Greenberg Defendants have paid hundreds of thousands of dollars in attorney fees, it is because they are bankrolling attorney fees for – at a minimum – themselves, Joel Greenberg, and Abby Greenberg.

Counsel for Defendant Abby Greenberg has taken the lead for Defendants regarding discovery. Although the Greenberg Defendants' Motion to Stay cites burden on non-parties due to more than 60 subpoenas served, they failed to note that those subpoenas were issued by Defendants. [7] Abby Greenberg *alone* has issued 60 non-party subpoenas. Exhibit A, Summary of Abby Greenberg's Non-Party

---

[7] Defendants' use of passive voice is no accident. ("Third parties too, have incurred great expense. Over 60 non-party subpoenas *have been served* . . .") Doc. 135, Page 3 (emphasis supplied). Defendants used passive voice because Defendants issued 62 of the 63 subpoenas in this case. In fact, one witness recently reported to undersigned counsel that the process server claimed she had served "a hundred" subpoenas. Perhaps the process server had lost count. Although some of the subpoenas have yielded valuable information (such as gate logs and other information showing, along with other information, that Dorworth could not have been at the location(s) at the times claimed by Defendants), many have yielded no information at all. See Exhibit A. Defendants do not explain how the expense already incurred to third parties in their ineffective effort to justify their defamatory statements weighs in favor of a stay at this stage of litigation.

Subpoenas as of May 24, 2024.[8] The Greenberg Defendants and Defendant A.B. noticed one non-party subpoena each, totaling 62 non-party subpoenas by Defendants.[9]

On the other end of the spectrum, Plaintiff has not been able to complete the most basic of discovery – depositions of Defendants.[10] Of the completed depositions, Abby Greenberg noticed four of the five. Defendants are poised to depose Plaintiff, his wife, and Congressman Gaetz before any party defendant sits for deposition.

The deposition scheduling process began January 19, 2024, with counsel for Abby Greenberg requesting availability for depositions of Defendant A.B. and five fact witnesses. Exhibit B, Abby Greenberg 01/19/24 Email. On January 26, Plaintiff replied to the email and requested that depositions of the remaining defendants occur during the same timeframe. Plaintiff received no responses to his request, but all counsel provided availability for the depositions requested by Abby Greenberg.

Plaintiff requested Defendants' depositions **at least ten more times** before any dates were offered – on February 14, March 6, March 24, March 25, April 8,

---

[8] This document has been prepared by counsel for Abby Greenberg and periodically circulated to counsel of record. This is the last version that was circulated.

[9] Plaintiff served one non-party duces tecum subpoena accompanying a notice of deposition. However, objections were served, and Plaintiff proceeded with the deposition without it.

[10] This excludes the deposition of A.B., which was noticed by Abby Greenberg and completed on June 24, 2024.

April 28, April 30, May 3, May 7, and May 15.[11] *See* Exhibit C, Collection of Emails Requesting Defendants' Depositions. Plaintiff did not receive a single concrete date until Thursday, May 16, when counsel for the Greenberg Defendants stated Andrew Greenberg and Sue Greenberg could be produced for deposition the week of September 3 through 6, more than seven months after Plaintiff's first request.[12] *See* Exhibit K.

Dorworth patiently used the conferral process, only to be subjected to a motion to stay when he is finally poised to make progress. In short, it is certainly not Plaintiff who has caused deposition expense; Plaintiff was barely able to achieve scheduling without resorting to motion practice.[13]

At this time, there are 10 depositions scheduled to occur between July and September that the parties have painstakingly coordinated. During that scheduling, no Defendant suggested that discovery should be stayed. Even when they had the opportunity to oppose Plaintiff's Motion for Leave to Depose Joel Greenberg, they

---

[11] Due to email chain length, only the email containing Plaintiff's request is included, with the request highlighted for ease of reference. Portions not relevant have been redacted. Plaintiff is happy to substitute full, unredacted versions at the request of Defendants or the Court.

[12] On May 20, counsel for Abby Greenberg offered to produce her on September 11 (Exhibit J); on May 31, counsel for Greenberg Dental offered June dates for James Katsur's deposition.

[13] The Greenbergs' claim that Dorworth has "had a year" to conduct discovery is belied by the fact that they insisted on setting all of the Greenberg depositions in September 2024, and failed to even provide any dates until May 2024. Further, the Greenbergs' broaching of the motion to stay was in direct response to (and on the same email chain as) Dorworth's follow-up to obtain improperly privilege-logged documents and other discovery in a follow-up to the one deposition he has been permitted to conduct to date.

did not. See Docs 132 (unopposed Motion for Leave to Depose Joel Greenberg) and 133 (order granting same). Now that depositions have been set (and in some cases rescheduled by Defendants one or more times), the Greenberg Defendants propose to scuttle all of the work in coordinating the depositions based upon their assessment of the case or the state of discovery.

Yet at the same time, as the Greenberg Defendants announce with much jubilation, they "have taken the position that Plaintiff waived his privilege over spousal communications, which will likely result in contentious motion practice, and, if the Greenbergs are correct, significantly broadened discovery from Plaintiff and his wife, Ms. Dorworth." Doc 135 at fn 3. Again, the Greenberg Defendants are causing their own expenses.[14]

The Greenberg Defendants do not explain why, if they disagree with Plaintiff's claims so vociferously, they paid for so much discovery only to belatedly move for a stay. They also do not explain how Dorworth could have made better progress when they insisted on delaying depositions until September and have stonewalled producing relevant, non-privileged documents.

---

[14] The Greenbergs' claims of "suffer[ing] the stress of having a deeply personal aspects of their lives probed by a hostile party," Doc. 135, are at substantial variance with their own announced intention to seek indisputably privileged communications between Dorworth and his wife, all based upon unarticulated grounds. Any discovery that has been provided by the Greenbergs was produced without objection. The Greenbergs have objected to other discovery, including indisputably relevant discovery regarding the allegations of the operative pleading. It was Dorworth's follow-ups and conferrals directed toward this discovery that apparently provoked a sudden Motion to Stay Discovery.

In summary, the fact remains that Plaintiff, who originally requested deposition dates in *January*, is not set to take any party deposition until September 4. Defendants, not Plaintiff, drove expenditure on discovery in this case. Defendants have requested and received more extensive in invasive paper discovery, issued infinitely more subpoenas, and initiated motion practice, all before Plaintiff. Defendants have received the benefits of discovery yet seek to prevent Plaintiff from doing the same.

## IV.    The Request for Stay Appears Disingenuous.

The Greenberg Defendants first notified Plaintiff of their intent to move for a stay on Tuesday, July 2, 2024, at 8:06 p.m., shortly before the long holiday weekend. Exhibit D, p. 3. On Friday, July 5, counsel for Plaintiff responded with questions regarding the scope of the proposed stay and whether it would be accompanied by a motion to continue case management deadlines. *Id.* at pp. 2-3. The same day, which was a Court holiday, counsel for the Greenberg Defendants demanded a response as to whether Plaintiff would oppose the motion. *Id.* at pp. 1-2. They followed up at 3:43 p.m. EDT[15] stating they intended to file their motion by 5:00 p.m., again, on a holiday weekend. Counsel for Plaintiff made himself available for a meet and confer phone call, which took place between 4:08 and 4:33 p.m. Exhibit E, p. 1 (Beltran

---

[15] The first email in the chain states a time of 2:43 CDT, reflecting the time zone where the email was opened. The remaining time stamps in the chain reflect EDT.

email). The Greenberg Defendants refused to negotiate or compromise during the meet and confer. In fact, the undersigned was informed "it is yes or no" as to whether the motion would be opposed. The undersigned had no choice but to oppose the motion, which was ultimately filed at 5:54 p.m.

Despite complaining to the Court on July 5 about the amount of money spent on discovery (largely due to their own actions), the Greenberg Defendants spent the next week acting in a manner utterly contrary to their motion to stay. At 5:13 p.m. on July 5 – just 30 minutes after the meet and confer requesting a stay – counsel for the Greenberg Defendants sent a three-page letter demanding communications between Plaintiff and his wife. The letter demanded a meet and confer by July 9 (the Tuesday after the holiday weekend) and threatened a motion to compel. Exhibit E, p. 2 (showing time of email); Exhibit F (letter forwarded).

Then, on Friday, July 12, the Greenberg Defendants served a notice of intent to issue subpoena to Plaintiff's spouse, Rebekah Dorworth with sixteen (16) duces tecum requests for communications on a number of different subjects, many of which are unlimited in time. Exhibit G. They also requested Plaintiff's position on a motion to seal Plaintiff's privilege log, and demanded Plaintiff update his initial disclosures. Exhibits H and I.

Indeed, as Plaintiff was finalizing this opposition on July 15, the Greenberg Defendants filed both the Motion to Seal (Doc 137) and Motion to Compel (Doc 138). As the saying goes, actions speak louder than words.

## V.      Movants' RICO Case Law Does Not Support a Stay.

The Greenberg Defendants' motion cites RICO case law purportedly supporting a stay. It is not as strong as the Greenberg Defendants posit. For example, they remove context from a quotation in *Lawson v. Rubin*, No. 17-CV-6404 (BMC), 2018 WL 11402165 (E.D.N.Y. Jan. 25, 2018). The relevant excerpt from the Greenberg Defendants' motion is below:

> This voluminous discovery demonstrates why, though the presence of RICO claims is *not* a per se ground to stay discovery, courts have "been more receptive to granting a motion to stay discovery where plaintiffs allege a RICO violation against defendants, given the often-burdensome nature of RICO discovery." *Lawson v. Rubin*, No. 17-CV-6404 (BMC), 2018 WL 11402165, at *1 (E.D.N.Y. Jan. 25, 2018); *see also Guajardo v. Martinez*, No. 2:14-CV-450, 2015 WL 12831683, at *2 (S.D. Tex. Dec. 22, 2015) (stay warranted "[b]ecause Plaintiffs allege complex claims under civil RICO, Defendants' concerns about the cost and inconvenience of discovery are reasonable").[7]

Doc. 135 at p. 12. By saying "courts have 'been more receptive,'" they imply the *Lawson* court said that. However, the *Lawson* court actually said: "As defendants point out, at least one court has been more receptive…"

> When deciding whether to stay discovery, courts may also consider the nature and complexity of the action, whether some or all defendants have moved to stay, the type of motion, and the posture of the litigation. Josie-Delerme v. Am. Gen. Fin. Corp., No. CV 2008-3166, 2009 WL 497609, at *1 (E.D.N.Y. Feb. 26, 2009). As defendants point out, at least one court has been more receptive to granting a motion to stay discovery where plaintiffs allege a RICO violation against defendants, given the often-burdensome nature of RICO discovery. See, e.g., Major, Lindsey & Africa, LLC v. Mahn, No. 10 CIV 4329, 2010 WL 3959609, at *2 (S.D.N.Y. Sept. 7, 2010) (staying all discovery pending the court's decision on defendant's motion to dismiss the RICO claims).

*See Lawson*, 2018 WL 11402165 at *1 (highlight added). Though their quotation is *technically* accurate, it was used in a manner suggesting broader adoption of the proposition.

Moreover, *Lawson* denied a stay on facts analogous to the instant case:

> As a preliminary matter, the Court notes that, while plaintiffs have alleged a RICO conspiracy, **the nature of the alleged conspiracy and the number and type of defendants involved means that discovery in this case is likely to be significantly less burdensome than in the average (commercial) RICO case.** As plaintiffs point out, defendants are all individuals or single-purpose entities and there are only seven of them, two of which are an individual John Doe and a John Doe Company. And because (to the Court's knowledge), neither party has yet served any discovery requests, this Court is not presented with the situation in Thomas v. New York City Department of Education, No. 09-CV-5167, 2010 WL 3709923, at *4 (E.D.N.Y. Sept. 14, 2010), where the court granted the motion to stay discovery in part because plaintiffs' discovery requests were "wide-ranging," "extremely broad," and bore "little relevance to the claims."
>
> ….
>
> Finally, the merits of defendants' motions to dismiss are not so obvious as to justify delaying discovery in what appears to be a case of normal breadth and complexity. Without expressing any opinion as to the outcome of defendants' motions, the Court notes that all of the motions are hotly contested by plaintiffs. Although defendants have alleged multiple grounds to dismiss, this case not nearly as clear-cut as Thomas,

> 2010 WL 3709923, at *4, where the plaintiffs had all but conceded that they had failed to adequately state a cause of action as to at least one claim and where the court thought that at least some of the claims were likely to be moot.

*Lawson* at *1-2 (emphasis added). The instant case presents the same, small-scale RICO claims involving eight defendants and a scheme to help Joel Greenberg avoid criminal liability by, among other things, falsely accusing Plaintiff of having sex with Defendant A.B. when she was 17 years old.

The Greenberg Defendants' reliance on *Guajardo v. Martinez*, No. 2:14-CV-450, 2015 WL 12831683 (S.D. Tex. Dec. 22, 2015), is also not persuasive. The plaintiffs in *Guajardo* filed a RICO complaint based off a related action between the same parties. They seemingly had not investigated their RICO facts prior to filing suit. *Guajardo* at *1-2 ("Additionally, Plaintiffs represent that they have begun an investigation into the facts of the case that formed the basis of their pleadings. The Court infers that Plaintiffs' allegations that form the basis of their RICO claims developed from discovery in a related case…which involved the same parties."). The same is not true in the instant case. In short, the Greenberg Defendants' RICO case law is unpersuasive and, in fact, supports Plaintiff's opposition.

WHEREFORE, Plaintiff respectfully requests the Court deny the Greenberg Defendants' Motion to Stay. In the event, the Court grants any of the leave requested, Plaintiff requests that it do so in a manner that does not expand the informational

advantage already amassed by Defendants, and consider the fact that Plaintiff and

his wife will be deposed on July 23 and 24, 2024.

Date: July 16, 2024.                          Respectfully submitted,

                                              /s/Michael Paul Beltran
                                              Michael P Beltran
                                              Fla. Bar No. 0093184
                                              Beltran Litigation, P.A.
                                              4920 West Cypress St.
                                              Suite 104 PMB 5089
                                              Tampa, FL 33607
                                              813-870-3073 (o)
                                              mike@beltranlitigation.com
                                              *Counsel for Plaintiff Dorworth*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the date listed above, a copy of the foregoing document was filed via CM/ECF, which will serve all counsel of record.

<u>/s/Michael Paul Beltran</u>
Michael P Beltran