**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

..................................................
                                              :
**CHRISTOPHER E. DORWORTH,**                   :
                                              :          Case Number:
      Plaintiff,                              :          6:23-cv-00871-CEM-DCI
                                              :
                                              :          Orlando, Florida
v.                                            :          August 7, 2024
                                              :          10:00 AM - 10:39 AM
**JOEL MICAH GREENBERG;**                      :
**ANDREW W. GREENBERG;**                       :
**SUSAN GREENBERG;**                           :
**ABBY GREENBERG; AWG, INC.;**                 :
**GREENBERG DENTAL**                           :
**ASSOCIATES, LLC; GREENBERG**                 :
**DENTAL & ORTHODONTICS, P.A.;**               :
**GREENBERG DENTAL SPECIALTY**                 :
**GROUP, LLC; and A.B.,**                      :
                                              :
      Defendants.                             :
                                              :
.................................................:................

**TRANSCRIPT OF MOTION HEARING**
**RE: [138] ANDREW GREENBERG, SUSAN GREENBERG,**
**AND AWG, INC.'S MOTION TO COMPEL**
**BEFORE THE HONORABLE DANIEL C. IRICK**
**UNITED STATES MAGISTRATE JUDGE**

Audio Operator:  Tiffany Palmer
Proceedings recorded by electronic recording.
Transcript produced by computer-aided transcription.

Electronic recording transcribed by:
Heather Suarez, RDR, CRR, FCRR, FPR-C, CA CSR #14538
(407) 801-8921 | heather@stenosuarez.com
StenoSuarez, LLC, PO Box 3574, Orlando, Florida 32802

1               A P P E A R A N C E S

2    For the Plaintiff:

3            R. Alex Andrade, Esquire
             MOORE, HILL & WESTMORELAND, P.A.
4            350 West Cedar Street
             Maritime Place, Suite 100
5            Pensacola, Florida 32502

6    For Defendant Joel Micah Greenberg:

7            Fritz J. Scheller, Esquire
             FRITZ SCHELLER, PL
8            200 East Robinson Street
             Suite 1150
9            Orlando, Florida 32801

10   For Defendants Andrew W. Greenberg;
     Susan Greenberg; and AWG, Inc.:
11
             Frederick S. Wermuth, Esquire
12           Dustin M. Mauser-Claassen, Esquire
             Quinn B. Ritter, Esquire
13           KING, BLACKWELL, ZEHNDER & WERMUTH, P.A.
             25 East Pine Street
14           Orlando, Florida 32801

15   For Defendant Abby Greenberg:

16           Jason A. Perkins, Esquire
             CARLTON FIELDS, P.A.
17           200 South Orange Avenue
             Suite 1000
18           Orlando, Florida 32801

19   For Defendants Greenberg Dental Associates, LLC;
     Greenberg Dental & Orthodontics, P.A.;
20   and Greenberg Dental Specialty Group, LLC:

21           Kaitlyn P. Chomin, Esquire
             DEAN, MEAD, EGERTON, BLOODWORTH, CAPOUANO
22           & BOZARTH, P.A.
             420 South Orange Avenue
23           Suite 700
             Orlando, Florida 32801

24

25

1          P R O C E E D I N G S

2          (Proceedings commenced at 10:00 AM.)

3          **THE COURTROOM DEPUTY:**  Case Number 6:23-cv-871,

4   Christopher E. Dorworth v. Joel Micah Greenberg; Andrew

5   W. Greenberg; Susan Greenberg; Abby Greenberg; AWG, Inc.;

6   Greenberg Dental Associates, LLC; Greenberg Dental

7   & Orthodontics, P.A.; Greenberg Dental Specialty Group, LLC;

8   and A.B.

9          Counsel, please make your appearances for the record.

10         **MR. ANDRADE:**  Good morning, Your Honor.  Alex Andrade

11   on behalf of the plaintiff, Chris Dorworth.

12         **MR. WERMUTH:**  Fritz Wermuth on behalf of

13   Andrew Greenberg, Susan Greenberg, and AWG, Inc.

14         **MR. MAUSER-CLAASSEN:**  Dustin Mauser-Claassen, and

15   with us is Quinn Ritter.

16         **MR. PERKINS:**  Jason Perkins here for defendant

17   Abby Greenberg.

18         **MS. CHOMIN:**  Kaitlyn Chomin here for the Greenberg

19   Dental defendants.

20         **MR. SCHELLER:**  Good morning, Your Honor.

21   Fritz Scheller on behalf of Joel Greenberg.

22         **THE COURT:**  All right.  Good morning, everyone.

23         We're here to address the motion to compel, which,

24   for you-all's benefit, is the only motion currently referred to

25   me in this matter.  I know there's some other motions

1    outstanding, but I just wanted to note that at the outset.  For

2    example, the motion to continue discovery -- or stay discovery

3    in the case is not referred to me at this time.  So it's not

4    always obvious from the docket, but I at least wanted to make

5    you-all aware of that.

6            One thing I also mentioned at the beginning is that

7    when the case was called, of course, the defendant A.B. was

8    also mentioned.  I know there's a Rule 41 stipulation of

9    dismissal that's signed by both parties in the case, but

10   because the district judge has not yet acted on that,

11   technically they're still in the case, although they're, I

12   understand -- the absence of counsel based on what's been filed

13   in this case.  So I just wanted to put that out there too.

14           I denied the motions without prejudice, frankly, on

15   A.B. just to make sure the parties understood those weren't at

16   issue today as far as I'm concerned and just to kind of move

17   past that, hopefully, and just deal with the motion we have

18   here.

19           I also had a lot of -- it seemed like a lot of

20   requests for additional briefing and things in the case.  I'll

21   just say that -- you know, you-all might not be aware of this

22   depending on how many cases you've had in front of me or since

23   we've had this standing order on discovery, but generally what

24   I like to do in these situations and why we have the order on

25   discovery is to have the parties kind of state pretty short,

1    you know, 500 words or less kind of what's going on in the

2    case, what the issue is, and then I have a hearing as soon as

3    possible.  I set this one out about two weeks because I wanted

4    specifically to have it in person so in order to have -- give

5    you-all an opportunity to do that.  Often, in these kind of

6    situations, I'll set it by Zoom within a couple days so that we

7    can address these discovery issues kind of right away.

8            So when I do that, I want to kind of understand the

9    issues.  I want to set the stage for briefing.  I want to make

10   sure the briefing is in the right order, which is something I'm

11   going to address today.  I don't necessarily think it should be

12   the defendant's being -- going first in this instance because

13   the burden concerning privilege is on the plaintiff in this

14   situation.  So I also want to set that straight and make sure

15   we're -- we're on the right place there.

16           And I have some questions about the privilege log.

17   So I want to make sure that we all have kind of the right

18   setting before we start briefing this issue.

19           So that's why we're here.  So I don't intend to

20   resolve the motion today, and so that's why I didn't want the

21   additional briefing at this stage, but I do have several

22   questions about the motion and the privilege log, and so I want

23   to kind of get to those first.

24           That being said, I want to make sure the parties have

25   an opportunity to kind of say whatever they'd like to say at

1    the outset; so I'm going to kind of go around the room.

2           Anything from the plaintiff before we get started?

3           **MR. ANDRADE:**  Your Honor, just to confirm, about

4    the -- the topic that we're here to resolve today or about the

5    case in general?

6           **THE COURT:**  Well, either one.  I mean, look.  That's

7    one of the reasons why I have an in-person hearing like this --

8    is because I don't think we've had one in this case yet.  I

9    think we've had some Zoom hearings.  But I want to see if

10   there's any case management issues I can address, anything else

11   you-all would like to raise.  It doesn't mean I'll be able to

12   resolve it, but I can at least set the stage for it.  So if

13   there's something you want to discuss now or at the end after

14   the motion, either way is fine.

15          **MR. ANDRADE:**  Well, Your Honor, it's nice to meet you

16   in person.

17          My firm -- Moore, Hill & Westmoreland -- recently

18   took on this case.  Since taking on this case, we have entered

19   a resolution and settlement agreement with defendant A.B.  My

20   understanding is, generally speaking, this -- this lawsuit is

21   defamation, civil RICO, and one request for declaratory relief

22   related to liability specifically regarding A.B.  Because of

23   the settlement agreement, I believe that declaratory relief no

24   longer needs to be sought, and I believe that that may provide

25   us the opportunity in the very near future to request leave to

1    amend the complaint and hopefully resolve and clarify some of

2    the discrepancies and simplify the case and -- and the conflict

3    overall.

4          Related to this motion, I would just say that I

5    appreciate opposing counsel's willingness and ability to confer

6    with me on these topics and our sincere attempts up to right

7    before you walked in to try and resolve this without your --

8    your involvement.

9          **THE COURT:**  Well, I appreciate that.  I mean, that's

10    a -- that's a good question.  Look.  There's a lot of motions

11    to dismiss pending, and I'm sure Judge Mendoza would like to

12    know if there's going to be an amendment and if that

13    amendment's going to be agreed by the party and if those

14    motions to dismiss are going to become moot before he rules on

15    them.  So if that's something that's going to be an issue,

16    you know, and if you-all can work that out, it would be great

17    to know that.

18          **MR. WERMUTH:**  Well, on behalf of the Greenbergs, who

19    are Andrew Greenberg, Susan Greenberg, and AWG, Inc., we're

20    going to oppose any -- any amendment in this matter.  Our

21    motion's been pending almost a year on the motion to dismiss.

22    We're approaching the end of the discovery deadline.  And our

23    position in this case, it's frivolous, and -- and giving them

24    another opportunity to amend is just basically extending the

25    pain that we have suffered through verified complaints that are

1  improperly verified.  So --

2           **THE COURT:**  Sure.  I can appreciate that.  And so

3  that's why this is probably going to have to be briefed.

4           And so, you know, if you want to amend, you'll

5  probably -- you'll have to file a motion, and then you-all can

6  oppose, and we'll deal with that.  But I guess my -- my point

7  is just if you're going to do that, you should do it because

8  every day that you wait makes it less and less likely that it's

9  going to be granted, if at all.  I mean, I'm not saying it's

10  going to be granted, but it's even less likely the more you

11  wait.

12           But I appreciate, Mr. Wermuth, your position on that.

13           Anything else before we get started from the

14  plaintiff?

15           **MR. ANDRADE:**  No, Your Honor.

16           **THE COURT:**  From any of the defendants?

17           **MR. WERMUTH:**  Not at this time, Your Honor.

18           **THE COURT:**  All right.  So one of the things -- and

19  I, frankly, don't necessarily need just argument on this.  I

20  want to set out some issues that I want to address, and then I

21  want to set the schedule debriefing on this issue -- is -- one

22  is I like to take this back to the discovery requests.  Okay?

23  So what's at issue to me is Requests for Production 3 and 31

24  and Interrogatories 1 and 9.  Right?  That -- that's what --

25  that's what's at issue in the motion to compel.

1    And so in relation to those -- and I've gone back and

2    look at those, and I look at those in comparison to the

3    privilege log that I've now gotten on the record; and, frankly,

4    I can't tell what's what.  Right?  I mean, this is a pretty

5    basic privilege log.  It doesn't tell me whether or not these

6    documents are withheld in relation to any particular requests

7    for production or interrogatory.  Are they only those documents

8    that are relevant to the requests for production or

9    interrogatories?  And, also, are each one of these things in

10    dispute?

11    So what I'm going to require is an additional

12    privilege log that ties the items withheld on the basis of

13    privilege to a discovery request.  That's a -- that's just an

14    absolute minimum requirement.

15    I want to ask the defendants too, you know, what

16    additional information they think is necessary on the privilege

17    log in order for them to respond to a motion asserting that

18    privilege.  To me, at a minimum, I need the discovery request.

19    And then I want to also ask whether all of these are

20    in dispute, and that may require additional conferral, though.

21    So I guess, on the plaintiff's side -- I mean, let me

22    ask you that.  Is there any issue with this -- you being able

23    to tie these to actual discovery requests?

24    **MR. ANDRADE:**  No, Your Honor.

25    **THE COURT:**  Okay.  This privilege log that you gave

1   me -- is this limited to, you know, this -- the at-issue

2   discovery requests, or is this privilege log related kind of to

3   all discovery requests?

4           **MR. ANDRADE:**  Your Honor, I cannot provide you a

5   factual breakdown within the privilege log of each item that's

6   listed as privilege.  My understanding and -- and my -- I can

7   confirm that it's not simply related to the marital privilege.

8   So we can provide a more detailed log and -- and revise the log

9   that was provided to opposing counsel.

10          **THE COURT:**  Yeah.  I got that, I mean, because

11  it's -- one of the things it does state is the kind of

12  privilege that's being asserted here; but, I mean, your answer

13  is -- goes right to my problem, which is I have a motion to

14  compel that relates to four discovery requests and a privilege

15  log that -- so I don't know what's at issue in relation to

16  those four discovery requests here.  So that's -- that's kind

17  of my first issue.

18          Mr. Wermuth.

19          **MR. WERMUTH:**  Yeah.  I'd like to speak on this issue.

20  I mean, I think on a -- at a basic level, the deficiencies in

21  the privilege log are obviously deficiencies of his

22  predecessor, but they're also just waivers of the right to

23  assert a privilege.  He identified the -- the spousal privilege

24  in that privilege log all the way down the -- starting at

25  page 4 to the bottom.

1    And -- and, you know, the problem we've got is that

2    this is a microcosm of a bigger issue, that he's -- that

3    plaintiff and his wife are asserting that the marital

4    privilege, not just as to these documents but all manner of

5    communications they have.  We're now seeing that in

6    depositions.  So I think this issue itself is going to spawn

7    potentially a number of motions to compel unless there's just

8    a -- you know, a decision on the basic issue of has the

9    privilege been waived by affirmative act.  And so that's what I

10   was here to present to you today, and so I'm ready to do that

11   if you'd like me to.

12        **THE COURT:**  Well, one, I'm not going to resolve that

13   issue today.

14        **MR. WERMUTH:**  Yeah.

15        **THE COURT:**  Two, you know, you've moved to compel

16   four categories of documents.  That's the only thing that's

17   before the Court.  So without knowing which of these allegedly

18   privileged documents relate to those four discovery requests,

19   I'm not going to compel them.  Right?  I'm only going to compel

20   the things that you requested.  I would only compel responses

21   to Requests for Production 3 and 31 and Interrogatories 1 and

22   9.  Right?  I wouldn't compel anything further, because that's

23   what you requested.

24        So I don't know what documents on this chart relate

25   to those discovery requests, and I don't think plaintiff's

1    counsel does either; and so part of the reason for that is

2    because they just came in the case.

3         And I will say that when you come in the case and you

4    immediately settle one of the defendants out, it looks to me

5    like they're making good progress, and I'm not going to

6    necessarily, you know, stymie that at this point.  So I

7    don't -- I don't -- I think that they're acting diligently in

8    whatever they're doing right now at least.

9         I mean, I don't have a motion before me to find that,

10   you know, all -- all marital privilege is waived for any

11   purpose in this case whatsoever from the beginning of time,

12   which it kind of sounds like is what you're requesting.

13        MR. WERMUTH:  Well, if you just look at our first

14   request that we identified as Request 31, "All documents and

15   communications that reference, discuss, reflect, regard, or

16   relate to the state of the federal investigations of plaintiffs

17   related to any event or occurrence referenced in the verified

18   complaint or amended" -- "or the amended verified complaint" --

19   I mean, we have hundreds and hundreds and hundreds of

20   allegations, and all of the communications that you see on the

21   log are during this litigation, and so it's -- you know, they

22   must have identified these documents in regard to this pending

23   litigation and may be responsive to that response.

24        I mean, I guess I'm anticipating and see a problem of

25   them coming back now and trying to argue that they're not

1    relevant to these particular responses.  And are -- are we

2    going to have an in camera review to determine the

3    responsiveness to these?  Or --

4         **THE COURT:**  I don't know yet.  We're going to brief

5    the issue, and then I'm going to decide whether or not we have

6    an in camera review.

7         **MR. WERMUTH:**  Well, I'm just concerned because we do

8    have an approaching discovery deadline and we've had to do a

9    great deal of discovery under a short period of time with very

10   difficult parties to schedule.

11        **MR. ANDRADE:**  Your Honor, if I may.

12        **THE COURT:**  No.  I'm just not going to go back and

13   forth and back and forth and back and forth.  So we're going to

14   address these issues in a second.

15        But, I mean, one thing we're going to do is I'm only

16   going to decide issues that are brought before me.  I mean, I

17   think that's a -- kind of a first principle that I do in

18   relation to discovery and I think that any judge does.  And

19   then I'm not just going to decide things kind of in a vacuum.

20        I mean, if you want a motion to waive privilege for

21   any purpose whatsoever related to any topic concerning this

22   husband and wife pair, I mean, good luck with that.  You can

23   file a motion.  If you want to address privilege in relation to

24   actual discovery requests, then we can do that too, and I think

25   that's what we've done so far as to these four discovery

1     requests, and that's what I'm prepared to set briefing on and

2     to -- to address.

3             You know, this is -- this is clearly very contentious

4     litigation, and it's been since the beginning, but I'm not

5     going to get caught up in that.  I'm just going to go by the

6     rules and look at the discovery requests and go down one by

7     one.  So I'm not going to make any kind of big overarching

8     decisions in relation to anything because, you know, one side

9     or the other thinks the -- the case is completely frivolous.

10    I mean, if it is, great.  You can file Rule 11 sanctions and do

11    whatever you need to do in relation to the case, but I'm just

12    only going to resolve the issues that are before me.

13            MR. WERMUTH:  If I may speak on just --

14            THE COURT:  No.  Just -- Mr. Wermuth, just hold on.

15    We're just going to -- I'm going to -- I'm looking at the

16    papers right now.  I still have more questions for the

17    plaintiff, and then I'll let your side have all the time you

18    want.

19            MR. WERMUTH:  Okay.

20            THE COURT:  And I know that discovery is coming up

21    soon in this case; but, you know, one of the things I -- I look

22    at in that regard is kind of the timing of things.  So my

23    understanding is the amended discovery requests that were

24    served here that are subject to the motion to compel were

25    served on February 5, 2024, and the motion I have is on

1    July 15, 2024, you know, five months later.  So not all of the

2    delay is due to the plaintiff in this case.

3          On the plaintiff's side, a couple issues concern me

4    and I hope will be addressed in further briefing on this issue.

5    One is this assertion that the messages -- the iPhone

6    messages are not reasonably recoverable.  I don't buy that.

7    You know, hopefully you can figure this out now that you're in

8    the case, but a tip for you is to not just look on the iPhone

9    and scroll down them but go to the iCloud account and get the

10   backups of the text messages, which should all be there and, if

11   they're not, would be subject to spoliation concerns, I'm sure.

12         So they're there.  You need to obtain them.  You need

13   to log them too to the extent they're relevant to requests for

14   production or interrogatories in the case.  So that needs to be

15   addressed as well.  That -- that paragraph at the end of the

16   response is not going to cut it in that regard.

17         The other issue, which I think needs to be addressed

18   here, is the -- you know, waiver is going to be, obviously, an

19   issue in relation to further briefing on this concerning the

20   marital confidential communications privilege.  I'm going to

21   need to see briefing on why the verification of the complaint

22   by the spouse in this case didn't waive.  And to the extent

23   that Mr. Dorworth has waived by making the complaint and then

24   you assert that "Well, she hasn't waived either," well, she

25   verified the complaint.  So it seems to me that if he's waived

1   based on allegations in the case, so has she.

2           So that's a -- that's a concern.  And I know it

3   wasn't your decision, but it happened, and it can't be walked

4   back now.  So, you know, that's a serious concern for your

5   client.

6           How I intend to do this is for you to submit an

7   additional privilege log for you-all to confer and tell me --

8   and then for you -- for you to file a motion -- a protective

9   order, frankly, in relation to any communications you intend to

10  withhold as privileged.  I think this needs to happen as to

11  every communication that's responsive to a discovery request

12  that you intend to hold back as confidential, not just the four

13  at issue here, because I'm sure that once you identify which

14  discovery request they're responsive to, you would just get a

15  motion to compel by the other side.  So to -- to a large

16  extent, this briefing is going to be --

17          I mean, is that fair, Mr. Wermuth, that if they

18  withhold on the basis of marital privilege, you're going to

19  move to compel?

20          **MR. WERMUTH:**  That is fair, yes.

21          **THE COURT:**  Okay.  So that's why we want to

22  short-circuit that.  Okay?  So every -- every communication

23  that you intend to withhold on the basis of marital privilege

24  communication needs to be at issue and briefed in your motion.

25  And it's your burden.  And, you know, I -- I hew very close to

1    the burden of the moving party in all privileged situations:

2    attorney-client, marital privilege, whatever, work product.  So

3    it's really going to be your burden, and if you don't meet the

4    burden, those communications are going to be turned over.

5           You'll get 25 pages of that motion, and you can

6    attach to it whatever you need to attach to it.  You need to

7    reference specifically all the documents -- I mean, I just

8    recently did an order in which I denied attorney-client

9    privilege, and one of the primary bases was the legal briefing

10   in the motion had no connection or -- to the privilege log.

11   There was no way for me to tell what legal argument applied to

12   what particular document, and so it was waived.

13          And so whatever you -- you know, you need to number

14   your privilege log, and you need to make sure that whatever

15   legal arguments you're making relate to specific entries on the

16   privilege log, and failing to do that or failing to address any

17   particular document in your motion will result in a waiver.

18          Another thing that concerns me is -- I was kind of

19   doing just general research on this, on the issue of waiver

20   when one spouse waives and one doesn't.  I mean, even assuming

21   that the verification of the complaint didn't waive privilege

22   in this case, which it might have -- you know, just looking

23   through cases -- there's this one case.  *United States*

24   *v. Brown*, which is at 634 F.2d 819.  It's a former

25   Fifth Circuit case.  There's some discussion in there stating

1   that, quote, "The confidential marital communications privilege

2   was not intended to allow one spouse to provide his or her own

3   version of a particular communication while preventing the

4   other version from being disclosed."

5          So while there's this concept that, you know, both --

6   both parties have to admit if you end up using it at trial and

7   he testifies and -- or she testifies and he -- you know,

8   there's a lot of issues that could happen here; and, you know,

9   I'm concerned about kind of a lack of case law on this area.

10         This is a criminal case.  Most of these cases are

11  criminal cases.  You may have to go outside the circuit to find

12  relevant civil cases, and then that's just going to be

13  persuasive if it's persuasive.  And so the Court might have to

14  make a decision in relation to that.

15         So I just raise these issues not because I think

16  *Brown* is necessarily controlling in this case at this time --

17  maybe I will -- but because there's some open issues concerning

18  this -- this concept of waiver, and I think it's going to be

19  fairly significant in resolution of the privilege here.

20         The other thing I want to understand is on this

21  privilege log that was turned over, there is a lot of other

22  privileges: attorney-client privilege, copyright privilege.  I

23  don't know if those privileges relate to any of the discovery

24  requests at this time, but are those -- I assume those are

25  privileges you'll intend to address as well?

1    **MR. ANDRADE**:  Yes, Your Honor.  My understanding of

2    your -- your instruction so far has been to outline and more

3    specifically explain each privilege that's been claimed.  I

4    believe the copyright is related to drafts of a book by a

5    potential fact witness, Congressman Gaetz in this case; and we

6    will provide further briefing on that as well in the motion

7    that we intend to file.

8        **THE COURT**:  And then -- well, let me, I guess --

9    Mr. Wermuth, let me ask you a couple specific questions so I

10   can understand what questions I need to ask the other side.

11       On this documents withheld, there's documents

12   withheld from -- on the basis of redactions.  Are -- are those

13   at issue here?  Are those documents that you want the ones

14   withheld because of redaction?

15       **MR. WERMUTH**:  Yes.  We're going to be seeking the

16   redacted -- redacted documents in particular.  There's quite a

17   few financial records that have been -- that have been redacted

18   that reflect transactions around the time and events that --

19   that occurred that plaintiff has put at issue in this case.

20       **THE COURT**:  Okay.  Understood.

21       And then there's documents -- there's a category of

22   documents withheld from Richard Hornsby's file.  There's a lot

23   of attorney-client privilege.  Are you seeking those

24   attorney-client privilege documents?

25       **MR. WERMUTH**:  I will be seeking those documents

1    because they basically put -- they're basically using

2    attorney-client work basically to advance a civil claim in this

3    case.

4         THE COURT:  And then there's this Rule 6, which I

5    assume is grand jury secrecy.  Are you seeking those documents?

6         MR. WERMUTH:  Yes.

7         THE COURT:  Okay.  And then there is -- there are

8    three copyright documents.  Are you seeking those documents?

9         MR. WERMUTH:  Very likely, we will.

10        THE COURT:  Okay.  And then the rest is privileged --

11   marital spouse privilege documents.

12        So I think you're going to have to address all of

13   these various privileges.  If, because there's so many

14   different privileges, you think you need more pages than 25,

15   then just file a motion explaining that.

16        Also, I want you-all to confer further on this.

17   I mean, I don't really understand the redaction withholdings.

18   You know, if -- if you-all can confer and just turn over the

19   redacted documents, then that'll resolve that issue and no

20   further briefing will be required.

21        I also, frankly, don't understand the Rule 6 grand

22   jury secrecy arguments.  I understand grand jury secrecy pretty

23   well, and I don't understand how a witness in this situation is

24   going to have privilege in relation to these documents to

25   withhold them.  So, you know, if you think so, okay, but you

1    can brief it.  But, if not, you can turn those documents over.

2          I'm also not fully understanding the copyright

3    privilege here that's at issue.  Again, that's probably

4    something I'd confer about.

5          The other issue is that based on the briefing that I

6    received, it may be that I have to do an in camera review.  If

7    you think an in camera review is appropriate, either side, ask

8    for it.  It doesn't mean that I'll do it, but it will be

9    interesting to know your position on that, as to whether or not

10    I should do it.  So I'll -- I'll take that into consideration

11    as well.

12          For the plaintiff, those are, I think, the issues I

13    have.  Any questions?  Concerns?  (Indiscernible)?

14        **MR. ANDRADE:**  No, Your Honor.  Earlier I was going

15    to -- to say that we can most likely request an in camera

16    review to resolve some of the marital privilege issues and

17    disputes sooner rather than later, hopefully this week, if that

18    would help resolve some of the concerns.  But based on the

19    additional privileges that need to be briefed, I'm unclear

20    about --

21        **THE COURT:**  And why do you think an in camera review

22    would quickly resolve some of the marital privilege issues?

23        **MR. ANDRADE:**  I believe that some of the predicates

24    that have been argued about marital privilege have not been

25    established by opposing counsel.  There are communications that

1   have occurred by the plaintiff and plaintiff's wife in the

2   presence of others, and in those circumstances the marital

3   privilege has not been used or claimed; but those predicate

4   questions about which communications were private and which

5   communications have occurred with third parties haven't been

6   established by opposing counsel.

7       **THE COURT:**  I don't understand having been -- I don't

8   know that opposing counsel has any burden right now.  What do

9   you mean by that?  Because it's your burden to establish that

10  any communication is privileged.

11      **MR. ANDRADE:**  Yes, Your Honor.  And we're going to

12  provide the more explicit explanation for those marital

13  privileges.  I was just laying out that those would be a major

14  issue in what we explained.

15      **THE COURT:**  But what do you mean?  To me -- I want to

16  go back to your first point, though -- is that you said that if

17  I did an in camera review quickly, it would resolve some of

18  these issues.  How so?

19      **MR. ANDRADE:**  The documentary evidence that's the

20  subject of the main motion to compel was disputed prior to the

21  deposition testimony that there were -- there were requests to

22  provide additional briefing on.  I think I might just be

23  getting ahead of myself thinking through the case and trying to

24  resolve it.

25      **THE COURT:**  Well, I mean, if there's something -- I'm

1   not -- again, I'm still not understanding what you're saying.

2   I mean, look.  If there's -- I don't know how I would look at

3   the allegedly privileged marital communications and determine

4   whether or not they were subject to the privilege without you

5   establishing that to me through briefing or otherwise.  So not

6   fully getting that, because, I mean, if you're just going to

7   show me that they are communications between a husband and

8   wife, that's not sufficient.  You still have to brief it and

9   establish all the elements of it.

10      **MR. ANDRADE:**  Yes, Your Honor.

11      **THE COURT:**  Okay.  All right.  All right.  On the

12  defense side, that's what I intend to do, and I intend to give

13  you-all 14 days to respond to their motion, and then we'll

14  hopefully resolve everything on the privilege log.

15      And that's my goal, Mr. Wermuth.  I can't do really

16  anything other than that.  The privilege log will tell me

17  whether or not it's responsive to a discovery request, and then

18  their briefing will tell me whether or not it's privileged

19  in -- in combination with yours, obviously.

20      Anything else on the motions?  Clarifications or

21  anything?

22      **MR. WERMUTH:**  Well, no, Your Honor.  I think what it

23  means is we'll probably have to file motions to compel on

24  the -- on the deposition testimony of -- of plaintiff's wife

25  and plaintiff now.

1    THE COURT:  Yeah.  I mean, you -- you may have to.  I

2    don't know what happened there at the deposition testimony.

3    It's impossible for me to rule on it on this record.  I mean,

4    if -- if you -- it may be that my order on these documents

5    resolves it, but if you feel that you need to file an addition

6    motion -- an additional motion to compel in relation to that --

7    MR. WERMUTH:  I guess I don't because I think our

8    position is going to be pretty cut and dry on the affirmative

9    act side of this; so --

10    THE COURT:  Yeah.  I mean, if there's -- you know,

11    the way for the deposition question and answers to come before

12    me would hopefully be for you to identify exactly the question

13    and answers that are at issue and then compel further answers

14    to those questions.  Just to kind of do it just in a vacuum as

15    to, you know, topics, I don't really know.  I would have to go

16    question by question.

17    MR. WERMUTH:  I understand, Your Honor.

18    THE COURT:  So if that's what you intend to do,

19    then -- then keep that in mind.  And you still need to comply

20    with the order and discovery motions; so you'd file a short

21    motion, we'd come back and do this, and we'd kind of go through

22    it.  Hopefully you-all confer as to exactly the Q and A's that

23    are at issue.  You'd present those to me as an attachment to

24    the motion, and then we'd probably have the same briefing

25    schedule go forward in relation to those.  That's how I would

1    intend to resolve that.

2              And to short-circuit that whole process, you could

3    file a motion for protective order in relation to any Q and A's

4    after you-all confer.  I mean, I think that would be -- that

5    would save us an in-person hearing.  But -- but, if not, we can

6    all come back and do this again.  That's fine with me.

7              So anything else from the defense?

8              MR. WERMUTH:  Not at this time, Your Honor.

9              THE COURT:  Okay.  When's the discovery deadline in

10   this case?

11             MR. WERMUTH:  I believe it's November 1st.

12             THE COURT:  Okay.  So, I mean, this should be done

13   before the discovery deadline.  I mean, it's going to be -- I'm

14   going to give them 14 days to do all the things, which is give

15   you a new privilege log within 7 days and then file their

16   motion within 14 days from today, and then you-all will have

17   14 days to respond, and then I'll resolve it as expeditiously

18   as I can, which will be before the discovery deadline -- I can

19   tell you that -- so that you would get whatever documents you

20   need before the discovery deadline.

21             MR. WERMUTH:  Got you.  Thank you.

22             THE COURT:  All right.  That's all.  Anything else in

23   the case at all at this time that I can address from the

24   plaintiff?

25             MR. ANDRADE:  No, Your Honor.  I appreciate your

1    time.

2              **THE COURT:**  From any of the defendants?

3              **MR. WERMUTH:**  No, Your Honor.

4              **UNIDENTIFIED SPEAKER:**  Your Honor, at the -- at the

5    risk of --

6              **THE COURT:**  Yeah.

7              **UNIDENTIFIED SPEAKER:**  -- having multiple lawyers

8    talk, if you'll indulge me for one moment.

9              **THE COURT:**  Sure.

10             **UNIDENTIFIED SPEAKER:**  I've seen a host -- a motion

11   to seal come through, and -- and I know Your Honor is -- is

12   well-informed of the new rule, having had a hand in it, and I

13   wanted to get the Court's view of -- of -- of the procedure for

14   filing a motion when you're -- when you're seeking to seal the

15   opposing side's confidentially designated information.  I want

16   to see if we've done it right, and I want to basically avoid

17   any further issues, if we can.

18             **THE COURT:**  You know, it's -- it's -- it's not --

19   it's not as clear as it could be in the rule, and so, you know,

20   to the extent I had a hand in that, I apologize.  But,

21   you know, one of the issues I have is that I am opposed in

22   general and have written many orders on this point to sealing

23   public proceedings, and I don't think we should have secret

24   motions or secret orders or anything like that.

25             Understand also that anything you file, if it is

1   sealed, when I issue an order on it, whatever I say is not

2   going to be sealed because we're not going to order secret

3   orders in this case.  And then if it was important, I'm going

4   to say whatever was in the sealing.  Right?  And if it wasn't

5   important, well, then I probably didn't need it under seal.

6   Right?  I mean, do you understand what I'm saying?

7            This is a case of public importance.  It is one that

8   there may be media interest in, and it's one that involves

9   important issues.  And the interest in sealing this to

10  protect -- I'm not seeing any confidentialities that would

11  really overwhelm the First Amendment right for the public to

12  see this case, especially when a plaintiff brings claims in

13  relation to their marriage and spouses and the kind of intimate

14  issues in this case which are laid out in extreme detail in

15  the -- in the complaint.  I am unlikely to seal anything

16  because it all seems relevant.  It's been made relevant by the

17  allegations in the complaint.

18           So you're unlikely to see a sealing order in this

19  case unless it's really warranted.  Maybe the A.B. situation

20  would have been, and we did an order to show cause in relation

21  to A.B., and I didn't need to do anything further because

22  they're out of the case.

23           To the extent -- just so it's clear, to the extent

24  that A.B. is still in the case as a nonparty, because we've

25  referenced A.B., it's fine to reference A.B. as A.B. because

1    they're no longer a party.  So the same issues concerning

2    litigating through a pseudonym don't apply in this case because

3    they're a witness or nonparty, however you want to see them.

4             But I think as far as the procedure goes in this

5    situation, I think that if you're obligated by your

6    confidentiality agreement to file a motion to seal because

7    something's been designated as confidential and the agreement

8    was that you must file a motion to seal, then file a motion to

9    seal.  Tell me in that motion whether or not you think it

10   should be sealed.  If you don't think it should be sealed, just

11   say that; and then, frankly, the obligation is on the other

12   side within 14 days, under the new rule, to file a brief in

13   support.  If the other side does not file a brief in support of

14   a seal, it will not be sealed.  I will not seal based on a

15   confidentiality agreement alone.  So hopefully that answers the

16   question.

17            So just -- just file a motion to seal as required.

18   The other side has 14 days to respond.  If they don't respond,

19   it's not sealed.  If they do respond, I'll enter an order.

20            **UNIDENTIFIED SPEAKER**:  Thank you, Your Honor.  That

21   does answer the question.

22            **THE COURT**:  Okay.

23            **UNIDENTIFIED SPEAKER**:  And one other nitpicky-type --

24            **THE COURT**:  Yeah.

25            **UNIDENTIFIED SPEAKER**:  -- question.  When the motion

1    itself is something that we would have to file under seal under

2    that rubric, is that motion pending before the Court before

3    it --

4              THE COURT:  It is not.

5              UNIDENTIFIED SPEAKER:  It is not.  Okay.  So kind of

6    what we did with filing the -- the redacted version -- that's

7    how you get it before Your Honor?  Okay.

8              THE COURT:  That is.  Yeah.

9              UNIDENTIFIED SPEAKER:  Appreciate that.  Thanks for

10   the clarification.

11             THE COURT:  Yeah.  I mean, I think that you need to

12   file a motion -- yeah, it's -- it's a -- it's a -- it's not a

13   great procedural process currently.  So -- but, yeah, it's not

14   pending until it's actually filed as a motion.  If you want to

15   file your motion under seal, then it's not pending until you

16   get permission to file it under seal, and then you'll be

17   ordered to file it.  So the order, which you haven't seen in

18   this case, will just say, "Now you have permission to file the

19   motion under seal."

20             But look.  I am unlikely to allow a motion to be

21   filed under seal.  I mean, if -- if the Court's going to rule

22   on and issue an order based on the information that's sealed,

23   the information's going to be public.  It just doesn't make a

24   whole lot of sense to me, I mean, just talking about it.

25             I think it's -- it's a better practice in this

1    situation to file whatever motion you need to file, reference

2    maybe obliquely information that would be in an attachment, and

3    then request permission to file the attachment under seal.

4    Right?  Because then the motion gets before the Court.  The

5    attachment doesn't necessarily need to be in front of the Court

6    just yet.  Frankly, I have the attachment because it's attached

7    to the motion to seal; so I'm seeing what's at issue.  That's

8    probably the best practice.  If you need, like, a quick result

9    on something, that's probably the best practice.

10           **UNIDENTIFIED SPEAKER:**  That's very helpful.  Thank

11   you, Your Honor.

12           **THE COURT:**  Yeah.  Yeah.

13           Mr. -- Mr. Scheller.

14           **MR. SCHELLER:**  Thank you, Your Honor.  I'm sorry.  I

15   just -- this is the only time I have you.  So --

16           I -- you kind of preempted what I was going to bring

17   to the Court's attention.  I think the confidentiality

18   designations is going to be causing a great deal of litig- --

19   unnecessary litigation in this case.  I'm undesignating

20   anything for that -- produced in discovery.  I think -- and

21   I'll confer with counsel, my comrades, and opposing counsel.  I

22   don't think we should be -- I think this designation has gone

23   way out of hand.  This is a public -- you -- you said it

24   accurately and quite -- quite -- with a great deal of insight.

25   I think we need to go forward and remove these designations.

1    **THE COURT:**  Well, I mean, that's up to you-all.  You

2    can do whatever process you need to do.

3            One of the issues is, though, you know, it's --

4    it's -- I understand that the situations are time sensitive in

5    a certain respect.  Okay?  I mean, they are.  But look.  If

6    you-all are working diligently on the case, then you'll get the

7    time that's necessary.  I'm not making any determinations

8    concerning diligence now; but, of course, that's the standard

9    in order to extend deadlines.  So guidelines will be extended

10   if you're working diligently, I think.  I mean, obviously, I

11   can't speak for the district judge in relation to trial and

12   dispositive motions and things like that, but I'm going to do

13   my best in relation to that.

14           But you also have to realize -- and, you know, this

15   is a Judge Mendoza case; so I feel comfortable saying that he's

16   entered orders in many, many cases saying, "Look.  The Court's

17   in an emergency situation right now as far as staffing and --

18   and motions."  And so I have, you know, I think, like, 6- or

19   700 cases.

20           So when I get, like, a time-sensitive motion to seal

21   in a case, it's not coming to the top of my -- it's not the

22   most important thing.  I know this is a big case for you-all,

23   but I just have so many cases that it's just not going to --

24   it's just unreasonable to expect the Court to -- to rule on a

25   motion to seal within, you know, a day or even five days based

1    on our current schedule and caseload.  And until that's

2    resolved, I mean, that's -- that's -- you know, civil cases are

3    taking a lower priority.

4           MR. SCHELLER:  Yes.  And I think I was painfully

5    inarticulate, as always.  What I was trying to say is you're

6    right.  If we're going to have to start doing these sealings

7    all the time, it's going to be a constant barrage of motions,

8    and so I -- just telegraphing to the Court that I think, after

9    conferring with counsel, I may file a motion as to overall

10   designation as to all documents.

11          THE COURT:  Yeah.  I can't speak to it right now.  I

12   mean, just as it comes.

13          MR. ANDRADE:  Thank you, Your Honor.

14          THE COURT:  Yeah.

15          MR. ANDRADE:  I believe, just for -- for the Court's

16   information, we have begun the process of de-designating entire

17   transcripts, and we've sort of begun working through the

18   process of providing information to opposing counsel on much

19   more specific references within that transcript that we believe

20   may be sensitive enough to justify the confidentiality.  We'll

21   continue working through that.  Understanding -- trying to work

22   through -- between the confidentiality agreement and the local

23   rule, we are diligently working on doing our best to eliminate

24   some of the more unnecessary disputes regarding what is and is

25   not confidential.

1      **THE COURT:**  I -- I mean, I appreciate, Mr. Scheller,

2    what you're saying and what you're saying as well now.

3        I mean, look.  A great example is this privilege log.

4    How is this privilege log -- should be -- I mean, it shouldn't

5    be sealed.  I mean, it's just ridiculous.  And so the fact that

6    there was litigation over whether or not the privilege log

7    should be sealed is kind of insane, but I know that was the

8    prior case; so --

9      **MR. ANDRADE:**  And we de-designated that, Your Honor.

10     **THE COURT:**  Yeah.  So, I mean, if that's -- if that's

11   an example of what's, you know, designated as confidential,

12   well, it shouldn't be.

13       I mean, and, think too, that if we're talking about

14   motions to compel, then attachments to them are probably more

15   likely to be sealable because that's the Eleventh Circuit case

16   law -- is that discovery doesn't have -- but once we move into

17   dispositive motions especially, I mean, just -- I -- you know,

18   sealing is highly unlikely in relation to dispositive motion

19   attachments or the motions themselves.  So just keep that in

20   mind as we go forward.

21       I mean, I think that was a good discussion.  Anything

22   else from plaintiff?

23     **MR. ANDRADE:**  No, Your Honor.  Thank you.

24     **THE COURT:**  Sorry.  Anything else from any of

25   defense?

1          **UNIDENTIFIED SPEAKER:**  No, Your Honor.

2          **THE COURT:**  All right.  Thank you.  We'll be in

3    recess.

4          **MR. SCHELLER:**  Thank you, Your Honor.

5       (Proceedings concluded at 10:39 AM.)

**CERTIFICATE OF REPORTER**


I, HEATHER SUAREZ, RDR, CRR, FCRR, FPR-C, CA CSR,

DO HEREBY CERTIFY that the foregoing is a correct transcription

of the official electronic sound recording of the proceedings

in the above-titled matter.


DATED this 13th day of August 2024.


Heather Suarez
Registered Diplomate Reporter
Certified Realtime Reporter
Federal Certified Realtime Reporter
Florida Professional Reporter-Certified #790
California Certified Shorthand Reporter #14538