# IN THE UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

| | |
|---|---|
| CHRISTOPHER E. DORWORTH,<br><br>    Plaintiff,<br>vs.<br><br>JOEL MICAH GREENBERG, ANDREW<br>W. GREENBERG, SUE GREENBERG,<br>ABBY GREENBERG, AWG, INC.,<br>GREENBERG DENTAL ASSOCIATES,<br>LLC, GREENBERG DENTAL &<br>ORTHODONTICS, P.A., GREENBERG<br>DENTAL SPECIALTY GROUP, LLC,<br>and A.B.,<br><br>    Defendants. | Civil Action No. 6:23-cv-00871 |

## PLAINTIFF'S MOTION FOR PROTECTIVE ORDER PURSUANT TO THIS COURT'S ORDER ENTERED ON AUGUST 7, 2024

## **TABLE OF CONTENTS**

I. PROCEDURAL BACKGROUND

II. PRIVILEGES ASSERTED

    a. Federal Rule of Criminal Procedure 6(e)6

    b. Attorney Client Privilege

    c. Work-Product Privilege

    d. Copyright Privilege

    e. Spousal/Husband Wife Privilege

        i. State Law Analysis

        ii. Federal Law Analysis

III. RISK OF PREJUDICE TO DEFENDANTS

IV. CONCLUSION

# **TABLE OF AUTHORITIES**

**Cases**                                                                                                         **Page(s)**

*Fisher v. United States,*
425 U.S. 391, 403, 48 L. Ed. 2d 39, 96 S. Ct. 1569 (1976)..........................................7

*United States v. Abrahams,*
905 F.2d 1276, 1283 (9th Cir. 1990).................................................................7

*United States v. Nobles,*
422 U.S. 225, 238 (1975)..................................................................................7

*Everbank v. Fifth Third Bank,*
2012 U.S. Dist. LEXIS 63212 (M.D. Fla. May 4, 2012).............................................8

*Hope for Families & Community Serv., Inc. v. Warren,*
No. 3:06-CV-1113-WKW, 2009 WL 1066525 (M.D. Ala. Apr. 21, 2009)................8

*Wolfle v. United States,*
291 U.S. 7, 13 (1934).........................................................................................9

*Townsend v. Marriott Hotel Servs., Inc.,*
2023 U.S. Dist. LEXIS 57144 (M.D. Fla. Mar. 30, 2023)......................................10

*Divine Motel Grp., LLC v. Rockhill Ins. Co.,*
2017 WL 9360890 (M.D. Fla. Feb. 2, 2017)........................................................10

*Erie R.R. Co. v. Tompkins,*
304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)..................................................10

*Tropical Mktg. & Consulting, LLC v. Glock, Inc.,*
2012 U.S. Dist. LEXIS 159697 (M.D. Fla. Nov. 7, 2012)................................. 11, 12

*Yokie v. State of Florida,*
773 So. 2d 115, 117 (Fla. 4th DCA 2000)..............................................................11

*Hanger Orthopedic Group, Inc. v. McMurray,*
181 F.R.D. 525, 530 (M.D. Fla. 1998)....................................................................11

*United States v. Singleton,*
260 F.3d 1295, 1297 (11th Cir. 2001)....................................................................12

*Trammel v. United States*,
445 U.S. 40 (1980)..................................................................................................12

*Michael K. Sheils Tr. v. Kuhn*,
2010 U.S. Dist. LEXIS 150053 (M.D. Fla. Feb. 26, 2010).........................................12

*Echeverria v. BAC Home Loans Servicing, LP*,
523 Fed. Appx. 675 (11th Cir. 2013).......................................................................15

*Army Aviation Heritage Found. & Museum, Inc. v. Buis*,
504 F. Supp. 2d 1254 (N.D. Fla. 2007)...................................................................16

*Lewis v. Storer Commc'ns, Inc.*,
642 F. Supp. 168, 171 (N.D. Ga. 1986)...................................................................16

**MOTION FOR ENTRY OF PROTECTIVE ORDER**

In compliance with this Court's order, dated August 7th, 2024 (Doc. 174), Plaintiff submitted an amended privilege log to opposing counsel of record on August 14th, 2024. Pursuant to Federal Rule of Civil Procedure 26(c)(1)(A) – (D), and for good cause shown, Plaintiff, Christopher Dorworth, brings this motion for entry of a protective order regarding his amended privilege log (attached as Exhibit 1).

In support of this Motion, Plaintiff submits the accompanying Memorandum of Law below.

**MEMORANDUM OF LAW IN SUPPORT OF MOTION
FOR ENTRY OF PROTECTIVE ORDER**

**I.   PROCEDURAL BACKGROUND**

Plaintiff alleges that Defendants committed acts constituting defamation per se and conspiracy which caused harm to Plaintiff and his reputation. To that end, Plaintiff filed his verified amended complaint (Doc. 62) on August 8, 2023.

On August 14th, 2023, Defendants Andrew Greenberg, Susan Greenberg, and AWG, Inc. served their First Request for Production on Plaintiff (the "RFP") (attached as Exhibit 2).

Within the RFP, certain requests, numbered 1, 24, 25, 26, 27, 28, 31, 37, 38, 39, 40, 63 & 64 requested documents which necessarily included communications between Plaintiff and his wife, Rebekah Dorworth, as well as documents in

5

Plaintiff's possession which originated within the context of a Federal Grand Jury and investigation by the U.S. Department of Justice.

Plaintiff asserted the following privileges regarding the documents Plaintiff withheld from production and included in his amended privilege log: Federal Rule of Criminal Procedure 6(e)6 (records, orders and subpoenas relating to grand-jury proceedings), attorney client privilege, work product, copyright and spousal privilege.[1]

For ease of reference, Plaintiff will address each privilege asserted separately below.

## II.  PRIVILEGES ASSERTED

Good cause exists for the entry of a protective order regarding the documents and communications identified in Plaintiff's privilege log, as the documents identified do not contain information not otherwise discoverable by Defendants, relate to communications between attorneys and Plaintiff's spouse which were engaged in with the expectation of privacy customarily protected in these circumstances. Furthermore, as it relates to claims of privilege regarding a Federal Grand Jury, a U.S. Department of Justice investigation and the claims of copyright, Plaintiff would be required to seek leave of third parties in order to avoid liability of the violation of other legal and contractual protections benefitting or protecting specific third parties.

---

[1] On August 19th, 2024, Defendants propounded their 2nd Request for Production (numbers 68 – 81) which again involves communications between Plaintiff and his wife, Rebekah Dorworth, to which Plaintiff will inevitably be forced to seek the same protections sought in this Motion.

### A. Federal Rule of Criminal Procedure 6(e)6

On or about December 28th, 2020, Plaintiff received a federal grand jury subpoena from the U.S. Department of Justice. The subpoena, identified as No. 1 in the amended privilege log, contained requests for specific information by the U.S. Department of Justice. Similarly, No. 2 and No. 3 of Plaintiff's amended privilege log identify documents received during the course of a grand jury proceeding. Rule 6(e)6 of the Federal Rules of Criminal Procedure requires that such document be kept "under seal to the extent and as long as necessary to prevent disclosure of a matter occurring before a grand jury."

In an abundance of caution, Plaintiff has listed these documents as privileged, and believes a petition may be required, under Rule 6(e)(3)(E)(i), to permit Plaintiff's production of such documents.

Plaintiff requests the Court determine, pursuant to Rule 6 of the Federal Rules of Criminal Procedure, whether Plaintiff is permitted to produce such documents, or whether a protective order regarding these three documents is warranted.

### B. Attorney Client Privilege

Documents numbers 4 – 15 of Plaintiff's amended privilege log refer to documents Plaintiff received from his attorney Richard Hornsby, Esq. The documents were created and transmitted for the purpose of seeking legal advice from a professional legal advisor in his capacity as such, the communications

7

related to that purpose and they were made in confidence by either Plaintiff as the client, or Richard Hornsby as Plaintiff's attorney.

To invoke the attorney-client privilege, a party must demonstrate that there was: (1) a communication between client and counsel, which (2) was intended to be and was in fact kept confidential, and (3) made for the purpose of obtaining or providing legal advice. *Fisher v. United States*, 425 U.S. 391, 403, 48 L. Ed. 2d 39, 96 S. Ct. 1569 (1976); *United States v. Abrahams*, 905 F.2d 1276, 1283 (9th Cir. 1990).

These documents consist of communications relaying information about a criminal investigation by Richard Hornsby to Plaintiff as Plaintiff's attorney. There is no evidence that such documents were ever transmitted or provided to anyone other than Plaintiff within the confines of his attorney-client relationship with Richard Hornsby, and such documents were prepared principally or exclusively to assist in anticipated or ongoing litigation.

### C.  Work-Product Privilege

Plaintiff claims the work-product privilege over the same documents identified in his amended privilege log (numbers 4 – 15) for which Plaintiff argues the attorney client privilege also applies.

The attorney work product privilege "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238 (1975).

8

At the time documents 4 - 13 were created, either by Plaintiff or by his attorney, Plaintiff and his attorney were aware that Plaintiff was, in some way, involved in an investigation by the U.S. Department of Justice.

Similarly, at the time documents 14 – 15 were created, Plaintiff, through his attorney, had received a demand letter from attorneys representing the former defendant, A.B., and Plaintiff understood that A.B. intended to bring suit against himself and others.

Work product immunity attaches to documents that are prepared by attorneys and their agents in anticipation of litigation. *Everbank v. Fifth Third Bank*, 2012 U.S. Dist. LEXIS 63212, at *6 (M.D. Fla. May 4, 2012) *citing Hope for Families & Community Serv., Inc. v. Warren*, No. 3:06-CV-1113-WKW, 2009 U.S. Dist. LEXIS 46009, 2009 WL 1066525, at *8-9 (M.D. Ala. Apr. 21, 2009). In this circumstance, all documents listed as privileged under the work-product privilege meet the requirement that they were prepared in anticipation of litigation.

Once established, the qualified privilege of work product can be rebutted only if a party can demonstrate both a substantial need for materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. *Id.*

Because no party has made such a demonstration as to the need for these materials, or that they are unable to obtain equivalent documents without undue hardship, Plaintiff respectfully requests this Court grant this request for a

protective order over documents listed as privileged sue to their nature as attorney work-product.

### D. Copyright Privilege

Documents 16 – 18 of Plaintiff's amended privilege log relate to drafts of sections of a book subject to copyright by a 3rd party, Bombadier Books, an imprint of the publishing company, Post Hill Press. The drafts relate to a book authored by non-party, Matt Gaetz, entitled "Firebrand." *September 22, 2020 ISBN-13: 9781642937640.* Pursuant to Federal Rule of Civil Procedure 26(c)(1)(B) & (G), Plaintiff requests a protective order be granted, requiring Defendants obtain permission of the copyright owner, Bombadier Books, prior to Plaintiff's production of these records, as the copyright notice prohibits the transmission of any part of the book without the permission of the publisher.

### E. Spousal/Husband Wife Privilege

The remaining documents referenced within Plaintiff's amended privilege log are text messages exchanged between Plaintiff and his wife, Rebekah Dorworth (documents 20 – 59).[2] The basis for the claim of privilege is that these are confidential, communications between a husband and wife, and that the "… protection of marital confidences, regarded as so essential to the preservation of the marriage relationship as to outweigh the disadvantages to the administration of justice which the privilege entails." *Wolfle v. United States*, 291 U.S. 7, 13 (1934).

---

[2] Plaintiff has retained the services of an expert in digital forensics and is diligently pursuing the recovery of his text messages prior to July 6, 2023. Upon the completion of the expert's review, Plaintiff will supplement the privilege log or provide a report to opposing counsel regarding the messages in question.

The communications span the dates between July 7, 2023 and December 12, 2023. Plaintiff filed his lawsuit against Defendants on April 7, 2023 in the Florida Circuit Court, in and for Seminole County, Florida.

The communications listed relate to Plaintiff's work to comply with discovery requests, and Plaintiff's discussions with his wife about the case itself. The only two participants in these communications are Plaintiff and his wife.

### i.    State Law Analysis

While this Court possesses subject-matter jurisdiction in this case due to Plaintiff's claim under the federal RICO statute[3], the vast majority of Plaintiff's claims are Florida common-law claims for defamation, aiding and abetting defamation, civil conspiracy, and declaratory relief. [Doc. 62]. This court has jurisdiction over these Florida common-law claims through supplemental jurisdiction.

In civil actions, when State law supplies the rule of decision, the privilege of a witness or person is determined in accordance with State law.

When exercising diversity or supplemental jurisdiction over state law claims, courts generally apply state law to substantive issues and federal law to procedural issues. *Townsend v. Marriott Hotel Servs., Inc.*, No. 6:21-cv-2071-ACC-LHP, 2023 U.S. Dist. LEXIS 57144, at *7-8 (M.D. Fla. Mar. 30, 2023); *see also Divine Motel Grp., LLC v. Rockhill Ins. Co.*, No. 3:14-cv-31-J-34JRK, 2017

---

[3] Racketeer Influenced and Corrupt Organizations Act, codified at 18 U.S.C. §§ 1961–68

11

U.S. Dist. LEXIS 46488, 2017 WL 9360890, at *4 (M.D. Fla. Feb. 2, 2017) (*citing Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)).

If Florida law is to be applied to the claims for which this Court possesses supplemental jurisdiction, then an analysis of § 90.504 Florida Statutes is justified to determine what protections of the husband-wife privilege should be extended in this case.

The Florida Supreme Court has explained that: "communications between husband and wife made in the course of their marriage relationship and while they are married and living together are privileged and may not be disclosed by one without the consent of the other party." *Brown v. May*, 76 So. 2d 652, 653 (Fla. 1954).

"Strong public policy supports the privilege and "marital communications are presumed confidential absent evidence to the contrary."" *Tropical Mktg. & Consulting, LLC v. Glock, Inc.*, No. 6:12-cv-1388-Orl-36TBS, 2012 U.S. Dist. LEXIS 159697, at *11 (M.D. Fla. Nov. 7, 2012)(*citing Yokie v. State of Florida*, 773 So. 2d 115, 117 (Fla. 4th DCA 2000)).

Among the factors the Court should consider in determining whether spouses have a reasonable expectation of privacy are "the nature of the message and the circumstances under which it was delivered." *Hanger Orthopedic Group, Inc. v. McMurray*, 181 F.R.D. 525, 530 (M.D. Fla. 1998).

The privilege is one that belongs to both spouses and cannot be waived without the other's consent. *Tropical Mktg*, 2012 U.S. Dist. LEXIS 159697, at *12; *citing Brown*, 76 So. 2d at 653.

Plaintiff's argument, in the context of whether Florida's statutorily recognized privileges should apply or whether federally recognized privileges should apply is that Fed. R. Evid. 501 calls for the application of Florida's statutorily codified privileges as substantive law. *Tropical Mktg*. 2012 U.S. Dist. LEXIS 159697, at *10 (M.D. Fla. Nov. 7, 2012)("Florida law determines whether the husband-wife privilege protects these communications. Fed. R. Evid. 501.")

### ii. Federal Law Analysis

In an abundance of caution, Plaintiff includes the below review of federal standards on the question of privilege related to communications between a husband and wife.

Under federal law, generally "[t]here are two recognized types of marital privilege: the marital confidential communications privilege and the spousal testimonial privilege." *United States v. Singleton*, 260 F.3d 1295, 1297 (11th Cir. 2001), *citing Trammel v. United States*, 445 U.S. 40, 50-51, 100 S.Ct. 906, 63 L.Ed.2d 186 (1980).

The marital communications privilege, which is the privilege asserted by Plaintiff in this case, "excludes information privately disclosed between husband and wife in the confidence of the marital relationship." *Michael K. Sheils Tr. v.*

13

*Kuhn*, No. 6:08-cv-1704-Orl-DAB, 2010 U.S. Dist. LEXIS 150053, at *5 (M.D. Fla. Feb. 26, 2010)(citing *Trammel,* at 51, 100 S. Ct. at 912-13.

The privilege applies, generally, only to utterances, and not to "acts." *Id.* at 6.

In this circumstance, the privilege is being asserted over text message communications between Plaintiff and his wife, not to any acts or circumstances which would tend to support an argument that the privilege has been waived.

### III.   RISK OF PREJUDICE TO DEFENDANTS

Plaintiff brings this motion for protective order in compliance with this Court's order [Doc. 174] denying Defendants Andrew Greenberg, Susan Greenberg and AWG, Inc.'s Motion to Compel [Doc. 138].

Defendants' argument for the need to obtain communications between Plaintiff and his wife is that their text message communications are relevant and discoverable in this case to adequately assess the risk of damages and evidence of harm to Plaintiff's marriage.

To justify their need to invade the communications between Plaintiff and his wife, Defendants claimed that Plaintiff listed his wife as "having knowledge" of his damages within his Rule 26 Disclosure, and listed his marriage, generally, among the list of aspects of his life which may have caused him emotional distress damages.

In their Motion to Compel [Doc. 138], Defendants argue that Plaintiff placed his marriage at issue sufficient to justify their intrusion into his private

14

communications with his wife because of a single paragraph in Plaintiff's Complaint. Doc. 62 ¶ 408 ("Each above-mentioned crime victimized Dorworth by . . . impacting his . . . marriage."). Notably, the paragraph Defendants cite is not associated with any count applicable to Defendants.

Paragraph 408 of Plaintiff's Complaint [Doc. 62] is included in Count 1, against Defendant Joel Greenberg only.

Defendants, Andrew Greenberg, Susan Greenberg and AWG, Inc. then cite to Plaintiff's response to Andrew Greenberg's First Interrogatories, where Plaintiff simply stated "Emotional distress: $2.5M" in response to Defendants' interrogatory request for Plaintiff's damages assessment. Doc. 138-2.

Finally, to justify invading the private communications between Plaintiff and his wife, Defendants cited to the below paragraph in Plaintiff's Response to another Defendant, Abby Greenberg's Second Interrogatories, No. 4.:

*"Defendants claimed Plaintiff had sex with a minor, framed him for the false sexual assault of a minor allegations Joel Greenberg made against Brian Beute, and claimed that Plaintiff illegally participated in a ghost candidate scheme. As a very happily married man, father of a young daughter, former Speaker Designate of the Florida House, lobbyist, and land developer, Defendants' malicious and pervasive lies about him pervaded nearly every relationship that Dorworth had and caused significant mental anguish. As detailed in the VAC, Dorworth lost his Job at Ballard Partners, and his relationships with governmental and publicly*

15

*traded clients were damaged the most. Dorworth lost nearly all of his clientele when he left Ballard. Defendants' lies put strains on his relationship with his wife. Dorworth lives in fear that his young daughter may someday hear the lies that Defendants have purveyed. Numerous other persons, too numerous to describe or quantify here, have limited or stopped dealings with Dorworth due to Defendants' allegations. It would be impossible to exhaustively list all of the ways in which Plaintiff has experienced emotional distress. Dorworth suffered many millions of dollars in reputational, emotional, and financial damages."*

### A.      Emotional Distress Damages

Defendants cannot argue in good faith that Plaintiff's text messages between himself and his wife will yield anything of relevance in this case. Both Plaintiff and Plaintiff's wife have testified to being happily married and having a trusting and transparent marriage.

Plaintiff has not claimed loss of physical or emotional consortium with his wife as damages in this case. Plaintiff's emotional distress over how Defendants' defamatory statements would affect his relationships with every member of his family, his colleagues and his friendships, cannot be proven or disproven by his private communications with his wife. Their texts are wholly irrelevant to the question of damages for Plaintiff's individually experienced emotional distress.

Plaintiff's claim for emotional distress is awardable only under his common-law claims for defamation. The measure of damages under both the federal RICO

and Florida RICO statutes prevents an award of damages for emotional distress. *Echeverria v. BAC Home Loans Servicing, LP*, 523 Fed. Appx. 675 (11th Cir. 2013) (Home mortgagor's alleged emotional distress, if proven, did not constitute injury to business or property, and thus could not be basis for claims under Racketeer Influenced and Corrupt Organizations Act.) Because 18 U.S.C.S. § 1964(c) contemplates recovery for any person injured in their business or property, Defendant's cannot use a reference to emotional distress in Plaintiff's RICO claims as the justification to treat the damages sought as anything other than the basic claim for mental suffering awardable within a common-law per se defamation claim.

Within the context of a defamation claim, the damages awardable for mental and emotional distress are those that arise from a claimant's injured feelings, mental anguish and personal and public humiliation. *Army Aviation Heritage Found. & Museum, Inc. v. Buis*, 504 F. Supp. 2d 1254, 1259 (N.D. Fla. 2007) *citing Gertz v. Welch, Inc.,* 418 U.S. 323, 349, 94 S. Ct. 2997, 41 L. Ed. 2d 789 (1974).

Damages in the nature of emotional distress are recognized as distinct from damages which may properly flow from the loss of marital privileges occasioned by a spouse's injury. *Lewis v. Storer Commc'ns, Inc.*, 642 F. Supp. 168, 171 (N.D. Ga. 1986).

Because Plaintiff does not allege loss of consortium as the basis for his emotional distress, the communications between Plaintiff and his wife are not relevant to the question of whether or not he suffered emotional distress as a result

17

of Defendants' actions. The damage inherent in a loss of consortium claim is damage to the marital relationship caused by the injury to consortium claimant's spouse. Because both Plaintiff and his wife have testified that their marriage is strong, and that their relationship is trusting and transparent, Plaintiff cannot recover damages under a loss of consortium claim in this present case.

The relevance of Plaintiff's relationship with his wife is nearly non-existent in this case, in so far as it may affect the measure of damages for Plaintiff's emotional distress.

## IV.   CONCLUSION

Plaintiff is not seeking or alleging damages which would necessitate a comparison of his relationship with his wife before and after the alleged conduct which caused him harm. The spousal privileges asserted relate to communications between Plaintiff's wife and himself and no other party.

Because Plaintiff has an identifiable interest in maintaining the sanctity of his marital communications and should not be required to subject his marital communications to such scrutiny without an identifiable basis for its relevance in this case, Plaintiff moves for a protective order prohibiting the production of his text messages between himself and his wife.

## LOCAL RULE 301(G) CERTIFICATION

On August 7 and 16, counsel for Plaintiff conferred with counsel for Defendants in person and via telephone on the issues raised in this motion. Defendants oppose the sought relief.

18

***/S/ R. Alex Andrade***
R. Alex Andrade
Florida Bar No. 111337
George R. Mead, II
Florida Bar No. 096490
Charles F. Beall, Mr.
Florida Bar No. 66944
emead@mhw-law.com
cbeall@mhw-law.com
aandrade@mhw-law.com
tstokes@mhw-law.com
kalbini@mhw-law.com
hmalone@mhw-law.com
MOORE, HILL & WESTMORELAND, P.A.
350 West Cedar Street
Maritime Place, Suite 100
Pensacola FL 32502
Telephone: (850) 434-3541
*Counsel for Plaintiff, Christopher E. Dorworth*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY this 21st day of August, 2024, a true and correct copy of the foregoing was electronically filed via the Court's CM/ECF system, which will automatically serve notice of this filing via e-mail notification to all registered counsel of record.

***/S/ R. Alex Andrade***
R. Alex Andrade