UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHRISTOPHER E. DORWORTH,

    *Plaintiff,*

v.

JOEL MICAH GREENBERG,
ANDREW W. GREENBERG,
SUSAN GREENBERG, ABBY
GREENBERG, AWG., INC.,
GREENBERG DENTAL
ASSOCIATES, LLC, GREENBERG
DENTAL & ORTHODONTICS, P.A.,
and GREENBERG DENTAL
SPECIALTY GROUP, LLC,

    *Defendants.*

Case No.: 6:23-cv-871-CEM-DCI

**ANDREW GREENBERG, SUSAN GREENBERG,
AND AWG, INC.'S RESPONSE IN OPPOSITION
TO PLAINTIFF'S MOTION FOR PROTECTIVE ORDER**

Andrew Greenberg, Susan Greenberg, and AWG, Inc. (the "Greenbergs") respectfully request that the Court deny Plaintiff's motion and in support state:

## PRELIMINARY STATEMENT

The way Plaintiff frames this case in his motion for protective order is telling. He describes this action as a narrow case seeking redress for "defamation per se and conspiracy." Doc. 180 at 5. But that grossly undersells the breadth of Plaintiff's claims. Plaintiff (frivolously) pleaded that a vast criminal conspiracy, knowingly funded by the Greenbergs, attempted to frame him for wrongdoing in violation of a federal statute drafted to tackle organized crime. In Plaintiff's revisionary view, he does not allege harm to his marriage—despite his and his wife's verified allegations claiming such harm. And even though the Court ordered him to do so, Plaintiff refuses to address his wife's verification of his amended complaint. In short, despite the Court's warning that past decisions "can't be walked back now," Plaintiff uses his motion for protective order to do just that. Doc. 179 at 16:2–5.

Reflecting his fire-and-forget approach to this litigation, Plaintiff's motion gives short shrift to the many issues the Court ordered him to address. On a most basic level, Plaintiff does not even engage with the relevant standard. Indeed, Plaintiff only cites Rule 26(c) twice—once in a perfunctory opening sentence and again when he demands that *the Greenbergs* make his showing for him. Doc. 180 at 4, 10. And when addressing each privilege he claims, Plaintiff's arguments are more gloss than substance. This is so even though the Court offered Plaintiff all the space he needed. Doc. 179 at 20:13–15 ("If, because there's so many different privileges, you think you need more pages

than 25, then just file a motion explaining that."). Indeed, despite the Court granting Plaintiff 25 pages, the substance of Plaintiff's motion spans only 14. *See generally* Doc. 180; Doc. 179 at 17:5. Plus, despite the Court's clear warning that failure "to address any particular document in your motion will result in a waiver," Doc. 179 at 17:16–17, Plaintiff does not address his allegedly inaccessible pre-July 2023 text messages with his wife—stating only that he "anticipate[d]" retaining an expert by the end of August. Doc. 180 at 10 n.2; Doc. 180-1 at 10.

Elsewhere, Plaintiff raises nonexistent privileges and consistently attempts to shift *his* burden onto the Greenbergs. But the Greenbergs have no burden, and Plaintiff—having made the decisions that put his allegedly privileged documents at issue—cannot un-ring the bell. Because Plaintiff has failed to show good cause supporting his motion. The Court should deny his motion for protective order.

## BACKGROUND

The Greenbergs moved to compel responses to certain requests for production and interrogatories. Doc. 138 at 1. In support, the Greenbergs argued that Plaintiff waived the spousal-communications privilege by putting his marriage's health at issue in his complaint and interrogatory responses. *Id.* at 2–3. The Greenbergs also argued that Plaintiff and his wife's joint verification of the amended complaint further waived the privilege. *Id.* at 2. Plaintiff responded in opposition to the Greenbergs' motion to compel, arguing (among other things) that his wife, Rebekah Dorworth, also holds the spousal-communications privilege and has not waived it. Doc. 142 at 1–2.

The Court then set the Greenbergs' motion for an August 7, 2024 hearing. Doc.

144. At that hearing, the Court correctly anticipated that the issues implicated by the Greenbergs' motion were broader than those the motion specifically addressed. And so, the Court ordered Plaintiff to file a motion for protective order "in relation to any communications [he] intend[s] to withhold as privileged." Doc. 179 at 16:6–16. The Court cautioned Plaintiff that he bore the burden to establish privilege and that "failing to address any particular document . . . will result in waiver." *Id.* at 17:16–17. Among other things, the Court specifically warned that it "need[s] to see briefing on why the verification of the complaint by the spouse in this case didn't waive" privilege. *Id.* at 15:20–16:5. On August 21, 2024, Plaintiff moved for a protective order. Doc. 180. The Greenbergs now respond in opposition.

## MEMORANDUM OF LAW

Rule 26(b)(1) permits parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The Rule "strongly favor[s] full discovery whenever possible." *Tomlinson v. Beach Island Resort Lessees Ass'n, Inc.*, No. 6:23-cv-30, 2023 WL 10947152, at *1 (M.D. Fla. June 26, 2023). For this reason, a "party resisting discovery has a heavy burden of showing why the requested discovery should not be permitted." *Id.* (cleaned up). To meet that burden, Plaintiff "must show that 'good cause' exists" by "mak[ing] a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statement supporting the need for a protective order." *Id.*

In his motion, Plaintiff argues that Federal Rule of Criminal Procedure 6(e)(6), attorney-client privilege, work-product privilege, copyright privilege, and the spousal-

3

communications privilege apply. Doc. 180 at 6. The Greenbergs address each privilege in turn, demonstrating that, because Plaintiff has not made the requisite showing, the Court should deny his motion.

## I. Federal Rule of Criminal Procedure 6(e)(6) does not bar Plaintiff from producing items 1, 2, and 3 on his privilege log.

Plaintiff states that item 1 on his privilege log is a December 2020 grand jury subpoena and that items 2 and 3 are "documents received during the course of the grand jury proceeding." Doc. 180 at 7. Plaintiff argues that Federal Rule of Criminal Procedure 6(e)(6) bars him from disclosing these documents to the Greenbergs. *Id.* In turn, Rule 6(e)(6) states that "[r]ecords, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury." Fed. R. Crim. P. 6(e)(6). Plaintiff argues that, under this Rule, he cannot disclose the withheld documents without an order under Rule 6(e)(3)(E)(i).[1] Doc. 180 at 7. Plaintiff is mistaken.

Plaintiff's argument misreads Rule 6(e) by skipping straight to its sixth subsection. But the very first relevant subsection makes clear that Rule 6(e) imposes "[n]o obligation . . . on any person except in accordance with Rule 6(e)(2)(B)." Fed. R. Crim P. 6(e)(2)(A). In turn, Rule 6(e)(2)(B) lists those persons bound by the grand jury

---

[1] Rule 6(e)(3)(E)(i) applies when a party is seeking grand jury records *from the government*. *See Fed. Election Comm'n v. Rivera*, 333 F.R.D. 282, 283 (S.D. Fla. 2019) (applying Rule 6(e)(3)(E)(i) to a petition to obtain records "in the custody of the United States Attorney for the Southern District of Florida."); *see also United States v. Aisenberg*, 358 F.3d 1327, 1336, 1352 (11th Cir. 2004) (applying Rule 6(e)(3)(E)(i) to reverse order directing "the government" to "disclose all grand jury transcripts"). Because, as explained below, Plaintiff is not bound by Rule 6(e), Rule 6(e)(3)(E)(i) is irrelevant to Plaintiff's motion.

secrecy requirement—only grand jurors, government lawyers, and court employees. *See* Fed. R. Crim. P. 6(e)(2)(B) (i)–(vii). Thus, "Rule 6(e)(2)(B) does not impose a secrecy requirement on grand jury witnesses"—like Plaintiff. *Lockheed Martin Corp. v. Boeing Co.*, 393 F. Supp. 2d 1276, 1279 (M.D. Fla. 2005). For that reason, Rule 6(e) "does not provide for a privilege or protection upon which a witness may rely to withhold documents and information related to a grand jury investigation." *Id.*

And while "Courts in this circuit have used their authority to prevent witnesses from disclosing information given to a grand jury in a limited number of circumstances," *id.*, the party *resisting* disclosure bears the burden to show that such protection is warranted, *see id.* at 1280. Plaintiff has not even attempted to make the relevant showing here.[2] The Court should thus deny Plaintiff's motion as to items 1, 2, and 3.

## II. Plaintiff has waived the attorney-client and work-product privileges by placing his communications with Richard Hornsby at issue.

Plaintiff next argues that items 4 through 15 are protected by the attorney-client and work-product privileges based solely on the fact that they were not disclosed to a third party. Doc. 180 at 8. But disclosure is not the only way a party may waive the attorney-client or work-product privileges.

A party may waive both privileges by (1) taking an affirmative act that (2) puts the communications at issue and (3) creates a situation where the "application of the

---

[2] And even if Plaintiff had attempted to make the relevant showing, he could not do so. Here, as in *Lockheed Martin*, "[t]here is no showing that . . . subjects or targets of the grand jury . . . have not already been revealed." *Id.* Indeed, by Plaintiff's own allegations, *see* Doc. 62 ¶ 42 (alleging investigation ended in 2023), "the grand jury investigation at issue ha[s] ended and the [persons] that were investigated but not charged [are] already well known," *Lockheed Martin*, 393 F. Supp. 2d at 1280.

privilege would . . . den[y] the opposing party access to information vital to his defense." *Hearn v. Rhay*, 68 F.R.D. 574, 581 (E.D. Wash. 1975) (addressing attorney-client privilege); *see also Mir v. L-3 Commc'ns Integrated Sys., L.P.*, 315 F.R.D. 460, 470 (N.D. Tex. 2016) ("[O]pinion work product may be disclosed when the holder waives the protection by placing the protected material 'at issue' in the litigation.").

Plaintiff's central claim in this case is that he was falsely accused of misconduct with a minor, and thus wrongfully subjected to a criminal investigation. Doc. 1-1 ¶ 459; Doc. 62 ¶¶ 119–22. To that end, Plaintiff relays a host of actions his counsel took in his defense. Doc. 1-1 ¶¶ 466–80, 484, 509, 513–19, 523–26, 667–71; Doc. 62 ¶¶ 144–45, 149–50, 165–66.[3] Plaintiff claims that, excluding the withheld documents, he has produced Mr. Hornsby's entire file in support of his claim. *See* Ex. 1 (producing "[n]on-privileged portions of Richard Hornsby's file"). In short, Plaintiff has put the truth of the allegations against him at issue by filing this lawsuit. And he has further put his communications with Mr. Hornsby at issue by using the actions Mr. Hornsby took in his defense as evidence that he was, in fact, falsely accused. By doing so, Plaintiff has made the withheld documents vital to the Greenbergs' defense.

Similarly, in *Hearn*, prison officials waived attorney-client privilege by raising qualified immunity as an affirmative defense because the privileged communications

---

[3] Plaintiff also testified to the content of his communications with Mr. Hornsby regarding the investigation. Ex. 5 at 37:10–13, 39:19–20, 338:6–14, 300:6–25; Ex. 6 at 131:8–11. For this added reason, Plaintiff has waived privilege as to his communications with Mr. Hornsby. *See, e.g.*, *Wilcox v. Andalusia City Sch. Bd. of Educ.*, 682 F. Supp. 3d 1019, 1036 (M.D. Ala. 2023) ("It is well-settled that … the client waives the privilege by testifying about portions of attorney-client communications . . . .").

might show that the officials knew their conduct was unlawful. 68 F.R.D. at 582–83. Here, Plaintiff claims that Defendants must have supplied information about him to the government. *See, e.g.*, Doc. 62 ¶¶ 119–27. But Hornsby's documents could show that Plaintiff knew of possible witnesses to relevant events—other than those he has sued here—who might have testified against Plaintiff.[4] Or the documents could show that Plaintiff knows he actually did the things he claims Defendants falsely accused him of doing. Put another way, if these documents show that Plaintiff was under investigation because he in fact took part in the events underlying the allegations against him, they would go to the underlying truth of Plaintiff's allegations—a defense to defamation. These items are thus vital to defending Plaintiff's claims and Plaintiff has waived privilege by putting them at issue.

### III. The "copyright privilege" does not bar Plaintiff from disclosing items 16, 17, and 18.

Plaintiff has also withheld drafts that "relate to a book authored by non-party, Matt Gaetz." Doc. 180 at 10. As to these documents, Plaintiff asks the Court to enter a protective order requiring the Greenbergs to obtain publisher Bombardier Books's permission "prior to Plaintiff's production of these records, as the copyright notice prohibits the transmission of any part of the book without the permission of the publisher." *Id.* This argument is meritless.

To start, there is no copyright privilege, and Plaintiff does not even attempt to

---

[4] There were, in fact, such witnesses. For example, L.P., a woman who attended parties at Plaintiff's house in the summer of 2017, has averred that she gave grand jury testimony regarding Plaintiff's activities. Ex. 2 ¶ 30.

argue otherwise. *See Grundberg v. Upjohn Co.*, 137 F.R.D. 372, 388 (D. Utah 1991) ("[T]he copyright law does not prohibit the disclosure of information and does not make nonconfidential documents confidential."). Plus, Plaintiff has made no "particular and specific demonstration of fact . . . supporting the need for a protective order." *Tomlinson*, 2023 WL 10947152, at *1. Instead, Plaintiff simply cites the rule governing protective orders and asks the Court to shift the burden to the Greenbergs.

And though the Greenbergs bear no burden on this issue, they note that the parties have entered into a confidentiality agreement in line with the Court's case management order. *See* Doc. 51 at 2–3. That agreement allows a party to designate as confidential materials that "[c]ontain or refer to confidential or sensitive information of . . . third parties," Ex. 3 at 2, and sharply limits the use of confidential materials, *id.* at 5–6. This agreement provides all the protection necessary for these allegedly privileged documents. If Plaintiff believes it does not, the burden should be on him—not the Greenbergs—to obtain Bombardier's permission to disclose items 16, 17, and 18. For these reasons, the Court should deny Plaintiff's motion as to items 16, 17, and 18.

**IV.   The Court should reject Plaintiff's spousal privilege arguments because Plaintiff failed to brief issues identified by the Court and because Plaintiff and his wife have waived the spousal-communications privilege.**

Finally, Plaintiff argues that the spousal-communications privilege protects items 20 through 59 and some as-of-yet-undetermined number of unrecovered messages. Doc. 180 at 10. This argument fails for at least three reasons. *First*, the Court should deny Plaintiff's motion outright because it fails to address issues and documents

8

the Court ordered him to address. *Second*, the Court should deny Plaintiff's motion because Plaintiff and his wife waived any privilege by placing spousal communications at issue—claiming damages for marital harm and using spousal communications to argue that Plaintiff's allegations are true. *Third*, the Court should deny Plaintiff's motion because Plaintiff and his wife have waived the privilege by selectively disclosing communications during their depositions. The Greenbergs address each issue in turn.

### A. The Court should deny Plaintiff's motion as to spousal-communications because Plaintiff has failed to address issues and documents the Court directed him to address.

Before addressing Plaintiff's substantive arguments, the Greenbergs address two threshold deficiencies in Plaintiff's motion.

*First*, the Court should deny Plaintiff's motion as to communications with his wife because Plaintiff failed to address issues relevant to the waiver analysis as ordered by the Court. At the August 7th hearing, the Court stated: "I'm going to need to see briefing on why the verification of the complaint by the spouse in this case didn't waive." Doc. 179 at 15:21–22. But beyond one reference to the "verified amended complaint" in Plaintiff's recitation of the procedural background, the words "verify" or "verified" do not even appear in his motion. Doc. 180 at 5. A motion that fails to address issues identified by the Court as pertinent to a privilege analysis cannot possibly show good cause. For this reason alone, this Court should deny Plaintiff's motion as to the spousal-communications privilege.

*Second*, Plaintiff failed to address unrecovered text messages. In his original privilege log, Plaintiff stated that "text messages between himself and Rebekah Dorworth

prior to July 2023 are not reasonably accessible." Doc. 170-1 at 9. Plaintiff stated that he "met with personnel at Apple's Genius Bar" but that "they were unable to resolve the problem." *Id.* Plaintiff, however, declined to take further action to recover said texts because they were "all inevitably privileged." *Id.* At the hearing on the Greenbergs' motion to compel, the Court stated plainly, "I don't buy that." Doc. 179 at 15:6. The Court then stated that Plaintiff needed "to obtain" the texts and "log them too to the extent they're relevant to requests for production or interrogatories in the case." *Id.* at 15:12–16. The Court later added that failure "to address any particular document in your motion will result in a waiver." *Id.* at 17:16–17. Later, in an endorsed order directing Plaintiff to file the instant motion and to provide an updated log, the Court stated that "failure to file such a motion as directed, log a responsive document or communication as privileged, or address a logged document or communication in such a motion will result in the waiver of any claimed privilege." Doc. 174.

In his updated log, however, Plaintiff did not log pre-July 2023 text messages, nor did he request more time to do so. Instead, he stated that "Plaintiff maintains that text messages between himself and Rebekah Dorworth prior to July 2023 are not reasonably accessible, even after review [of] their iCloud database." Doc. 180-1 at 9. Plaintiff then stated that he was "seeking to retain an expert" and that he "anticipates securing the services of such expert within the month, and will supplement this production or privilege log in the event such records are retrieved and are responsive." *Id.* at 10. On August 16th, after receiving Plaintiff's updated log, counsel for the Greenbergs inquired into the status of the unrecovered text messages. Ex. 4 at 3–4. Counsel

for Plaintiff responded that he would hopefully be able to address the issue in more detail "by next week" after consulting with an expert. *Id.* at 2. Counsel for the Greenbergs then requested more detail, warning that "[w]e are concerned about being prejudiced by further delay." *Id.* Counsel for Plaintiff replied that he would "hopefully" be able to address the Greenbergs' concerns by the 19th. *Id.* at 1. After hearing nothing on the 19th, counsel for the Greenbergs followed up on the 20th, again warning that the Greenbergs believed further delay would be prejudicial. *Id.* Counsel for Plaintiff did not respond. *See id.*

As stated above, Plaintiff then filed his motion for protective order, attaching the updated privilege log. The motion did not address the unrecovered text messages beyond stating in a footnote that "Plaintiff has retained the services of an expert" and that "Plaintiff will supplement the privilege log or provide a report to opposing counsel regarding the messages in question." Doc. 180 at 10 n.2. This does not comply with the Court's order. If Plaintiff was unable to recover the relevant texts ahead of his Court-imposed deadlines, he should have sought an extension of time to respond. And as the Greenbergs noted to Plaintiff, every delay ahead of the fast-approaching November discovery deadline prejudices them. Ex. 4 at 1. Even now—flouting the Court's directive as well as his self-imposed deadline—Plaintiff still has not submitted a supplemental privilege log or updated the Court (or the Greenbergs) on his progress.

Because Plaintiff has failed to address his and his wife's joint verification of his amended complaint, and because Plaintiff has failed to log pre-July 2023 text messages and address them in his motion for protective order, this Court should deny Plaintiff's

motion as to items 20 through 59 and any pre-July 2023 text messages.

## B. Plaintiff has waived the spousal-communications privilege by placing privileged communications at issue.

The spousal-communications privilege may be waived when a party puts privileged communications at issue. Such waiver occurs, as with other privileges, when a party places the communications at issue (1) through an affirmative act that (2) makes the communication "relevant to the case" in a circumstance where (3) applying the privilege would "deny [an] opposing party access to information that was vital to the opposing party's defense." *England v. Las Vegas Metro. Police Dep't*, No. 207CV01238PMPGWF, 2008 WL 11389179, at *2 (D. Nev. June 10, 2008).[5] This doctrine flows from the principle that, when a party makes its privileged communications relevant to an action, it cannot then use the privilege to prevent opponents "from effectively challenging such evidence." *GAB Bus. Servs., Inc. v. Syndicate 627*, 809 F.2d 755, 762 (11th Cir. 1987). That is because privileges are shields, not swords. *Id.*

Here, Plaintiff and his wife have put their communications at issue in two ways: by (1) claiming entitlement to damages for marital harm and (2) using privileged communications to support the truth of Plaintiff's claims.

### 1. Plaintiff placed his spousal communications at issue by claiming (and then disclaiming) marital harm.

Starting with marital harm, Plaintiff's operative complaint—which both

---

[5] Because this case is before the Court on federal-question jurisdiction, federal law governs all privilege issues. *Hancock v. Hobbs*, 967 F.2d 462, 466 (11th Cir. 1992) ("[T]he federal law of privilege governs [in a federal question case] even where the evidence sought might be relevant to a pendent state claim.").

Plaintiff and his wife verify under oath as true—and discovery responses put Plaintiff's spousal communications at issue by alleging marital harm as one basis for damages. Doc. 62 ¶ 408 ("Each above-mentioned crime victimized Dorworth by . . . impacting his . . . marriage."); Doc. 138-2 at 3 (listing Rebekah Dorworth as having knowledge of "Dorworth's damages"); *id.* at 10 (responding to request that Plaintiff "describe in . . . detail the [$2.5 million] emotional distress damages [he] purportedly sustained" by claiming that "Defendants' lies put strains on his relationship with his wife"); *id.* at 36 (claiming "Emotional distress: $2.5M").

At the threshold, allowing Plaintiff and his wife to claim marital harm through sworn allegations, but preventing the Greenbergs "from effectively challenging such evidence," is the exact harm the at-issue-waiver doctrine is designed to protect against. *See GAB Bus. Servs.*, 809 F.2d at 762. Put another way, denying the Greenbergs access to any independent evidence of marital harm that might exist would, in practical terms, allow Plaintiff and his wife to stipulate to the existence of marital harm.

Denying the Greenbergs access to Plaintiff's spousal communications also denies them the opportunity to establish alternative sources of marital harm. For example, the evidence shows that Plaintiff drinks heavily, but both he and his wife testified that Plaintiff's drinking does not negatively impact their marriage. Ex. 5 at 344:21–345:22, 345:7–22; Doc. 181-1 at 127:21–129:18, 132:14–133:23. The Court should allow the Greenbergs to probe whether Plaintiff's drinking is a contributing source of marital harm. Similarly, Plaintiff and his wife both testified that they have an honest and truthful relationship, but if their marital communications reveal untruthfulness, it

could show that Plaintiff's lack of candor is an alternative cause of marital harm or strain. Doc. 181-1 at 125:14–126:9, 194:9–21, 232:1–233:5; Ex. 5 at 25:11–27:15.

Resisting the straightforward conclusion that Plaintiff and his wife have waived the spousal-communications privilege by claiming damages for marital harm, Plaintiff makes two arguments. Plaintiff argues (1) that his allegation of marital harm applies only to Joel and (2) that he could not, and does not, seek damages for marital harm. As explained below, however, Plaintiff's claim of marital harm is also relevant to the truth of his underlying allegations and both his and his wife's credibility. And even addressing Plaintiff's arguments on their own terms, they fail.

*First*, Plaintiff argues that his allegations of marital harm only apply to Joel's actions. This is so, Plaintiff says, because his allegation in paragraph 408 of his dual-verified amended complaint—alleging that Joel's actions harmed his marriage—is contained within a count against Joel. Doc. 180 at 15. That argument is meritless because Plaintiff alleges that the Greenbergs are derivatively liable for Joel's acts as co-conspirators. *See* Doc. 62 ¶¶ 411–28 (alleging RICO conspiracy); *In re Managed Care Litig.*, 430 F. Supp. 2d 1336, 1344 (S.D. Fla. 2006) ("[A] civil RICO conspiracy claim allows persons who are responsible for an injury, but did not actually participate in the injury-causing activity, to be held liable." (quotations omitted)).

*Second*, Plaintiff argues that he and his wife could not have put their communications at issue by alleging marital harm because, despite their claims, they could never recover damages based on marital harm. To start, Plaintiff acknowledges his various discovery responses alleging marital harm as part of emotional damages, but he then

dismisses them because emotional damages are not available under RICO. Doc. 180 at 15–17. Plaintiff further argues that emotional distress damages for defamation are distinct from damages for loss of consortium. *Id.* at 17. Plaintiff concludes that he is not seeking, and could not seek, damages for harm to his marriage "[b]ecause both Plaintiff and his wife have testified that their marriage is strong, and that their relationship is trusting and transparent." Doc. 180 at 18.

But while Plaintiff disclaims entitlement to *loss of consortium* damages, he notably does not disclaim that friction in his marriage caused the "mental anguish" that makes up some portion of his emotional distress damages. *See* Doc. 180 at 17–18. And when such an argument is ultimately made, the Greenberg's will have nothing to offer in rebuttal without independent evidence—i.e., marital communications. For this reason, the status of Plaintiff's marriage is still very much relevant to his claim for damages, and the Court should reject Plaintiff's belated attempt to change course.

More importantly, marital harm is relevant to far more than damages. For one, Plaintiff and his wife's oral testimony in deposition that they have *not* suffered marital harm runs directly contrary to their claim in a verified complaint that their marriage had been harmed. Doc. 62 ¶ 408. It also runs directly contrary to allegations in the sworn discovery responses discussed in Plaintiff's motion. Beyond damages then, spousal communications would also be relevant to Plaintiff and his wife's credibility because Plaintiff's marriage either suffered harm (in which case Plaintiff and his wife are now lying) or it did not suffer harm (in which case Plaintiff and his wife were lying before but are now telling the truth).

And setting aside credibility, the health of Plaintiff's marriage is also relevant to the underlying truth of Plaintiff's claims. This is so because Plaintiff and his wife now claim that their healthy marriage proves that Plaintiff's claims are true (under the apparent theory that a happily married man could never cheat or lie). Ms. Dorworth testified at length that she and Plaintiff have a transparent, honest relationship, which forms the basis of her belief that Plaintiff was not present for key events in this case. Doc. 181-1 at 125:14–126:9, 194:9–21, 232:1–233:5. Ms. Dorworth likewise testified that Plaintiff was not at a party at their home on July 15, 2017, where a minor was present and naked, but she refused to state how she knew, citing "marital privilege." *Id.* at 243:22–25, 244:25–245:3. In other words, Plaintiff and his wife now allege that their healthy marriage means that Plaintiff must have been falsely accused. But that too makes their spousal communications vital to the Greenbergs' defense, as the Greenbergs will otherwise have no way to counter these allegations.

For these reasons, Plaintiff and his wife have waived the spousal-communications privilege by placing the health of their marriage at issue.

### 2. *Plaintiff and his wife placed their spousal communications at issue by jointly verifying Plaintiff's complaint.*

Even ignoring Plaintiff's claim of marital harm (the only issue Plaintiff addresses in his motion), Plaintiff and his wife still placed their spousal communications at issue by mutually verifying Plaintiff's complaint based on spousal communications. To start, many of the allegations in Plaintiff's original verified complaint are plainly based on conversations between Plaintiff and his wife. *Compare* Doc. 1-1 ¶ 331 ("When

asked how she was coping, Abby Greenberg smiled and stated seriously to Rebekah, '[her] marriage had never been better' and referenced the spending money, vacations, and gifts . . . ."), *with* Ex. 5 at 114:1–5 (Plaintiff testifying that "Abby was going around, . . . she had told Rebekah that she had never been happier because the Greenbergs had bought her a house . . . ."); *compare* Doc. 1-1 ¶¶ 449–58 (discussing Joel's arrest for violating his pretrial release), *with* Ex. 5 at 116:19–21 (Plaintiff testifying that "I remember when Rebekah relayed the story to me."); *compare* Doc. 1-1 ¶¶ 781–90 (discussing an incident at the J.W. Marriott for which Plaintiff was not present), *with* Ex. 5 at 380:7–21 (Plaintiff recounting a contemporaneous conversation with Ms. Dorworth regarding incident); *see also* Ex. 6 at 14:8–16:11 (Plaintiff recounting conversation with Ms. Dorworth regarding the same incident after Plaintiff's counsel told him, "you can answer it").

Ms. Dorworth then vouched for the accuracy of these allegations by verifying the amended complaint, which incorporated the first complaint by reference. *See* Doc. 62 ¶ 348. And in turn, Ms. Dorworth's knowledge of many of the allegations she verified in the amended complaint comes from her conversations with Plaintiff. *See* Doc. 181-1 at 33:18–24 (Ms. Dorworth testifying that her knowledge of allegations in the complaint comes from conversations with Plaintiff); *id.* at 304:16–305:4 (same).

Because Plaintiff and his wife relied on their spousal communications when providing their sworn statement of this case, any communications between Plaintiff and his wife regarding the allegations they jointly verified are vital to the Greenbergs defense. To state the obvious, if the story told in spousal communications deviates

from the story told in the verified complaints, such information would be highly relevant both to the merits of the claim and impeachment.

In short, because Plaintiff and his wife have vouched for the truth of each other's statements under oath, those statements are at issue and this Court should deny Plaintiff's motion as to his spousal communications.

### D. In addition to placing privileged communications at issue, Plaintiff and his wife have waived any privilege through selective disclosure.

Compounding the waiver discussed above, Plaintiff and his wife have also waived the spousal-communication privilege by selectively disclosing spousal communications to support Plaintiff's claims. The spousal-communications privilege may be waived by disclosure. *Bila v. RadioShack Corp.*, No. 03-10177-BC, 2004 WL 2713270, at *16 (E.D. Mich. Nov. 22, 2004) (finding that "marital privilege for confidential communications no longer protected . . . conversations from disclosure since the plaintiff himself disclosed them" and thus "the plaintiff's asserting of a privilege to prevent the deposition of his wife is invalid"); *see also United States v. Gen. Mar. Mgmt. (Portugal) L.D.A.*, No. CRIM.A. C-08-393, 2008 WL 2810594, at *3 (S.D. Tex. July 21, 2008) (collecting cases). Further, when a spouse discloses a communication, that disclosure defeats the purpose of the privilege and thus waives the privilege for both spouses "regardless of which spouse disclosed the communication." *Knepp v. United Stone Veneer, LLC*, No. CIV. A. 4:06-CV-1018, 2007 WL 2597936, at *4 (M.D. Pa. Sept. 5, 2007); *cf. United States v. Brock*, 724 F.3d 817, 821 (7th Cir. 2013).

To start, Plaintiff disclosed spousal communications without objection during

his deposition; elsewhere, however, Plaintiff's counsel objected to such disclosure. *Compare* Ex. 6 at 14:8–16:11(Plaintiff recounting privileged conversation with Ms. Dorworth after Plaintiff's counsel told him, "you can answer it"), *with* Ex. 5 at 117:12–14 ("I would just object if it solicits any marital privilege communication between my client and his wife . . . .").

Similarly, in Ms. Dorworth's deposition, Plaintiff's counsel *specifically* elicited privileged communications about ▮REDACTED▮ . *See* Doc. 181-1 at 436:5–15[6] ("▮REDACTED▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ?"). But elsewhere Ms. Dorworth raised her own objection to discussing marital "problems." *Id.* at 118:8–11 ("[T]hat's privileged communications. So I'm not going to share with you."). Similarly, Ms. Dorworth testified that ▮REDACTED▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮—a spousal communication—which Plaintiff's former counsel bizarrely elicited to rebut a sex trafficking victim's description ▮▮▮ ▮▮▮▮▮▮▮ . *Id.* at 433:7–22. Given Plaintiff's apparent belief that these communications are relevant, their disclosure entitles the Greenbergs to discover other spousal communications relevant to this action.

In another disclosure, Ms. Dorworth prefaced her statement by saying "well, it's privileged" before relaying what Plaintiff had told her about a conversation with

---

[6] Plaintiff has designated much of this testimony confidential, which the Greenbergs have challenged under their confidentiality agreement. The Greenbergs understand that Plaintiff may soon file a motion requesting a protective order as to his confidentiality designations, which the Greenbergs oppose. Because the Greenbergs cannot delay this response until after Plaintiff's forthcoming motion is resolved, they have redacted the relevant portions above. The Greenbergs will file an unredacted version of any redacted document as directed by the Court.

his ex-wife in which Plaintiff's ex-wife denied that Plaintiff had ever used escorts. *Id.* at 103:5–17. Elsewhere, Ms. Dorworth stated, "I know I'm not supposed to talk about it" before testifying to her conversations with her husband about a party at their house. *Id.* at 333:23–334:9; *see also* Ex. 2 ¶¶ 15–23 (describing same).

In sum, both Plaintiff and his wife have testified to the contents of spousal communications in an effort to support Plaintiff's claims. By doing so, they have created an additional basis for waiver of the spousal-communications privilege.[7] *Knepp*, 2007 WL 2597936, at *5 (disclosure of privileged communications waives privilege "as to all communications on the same subject matter").

## CONCLUSION

Because Plaintiff has failed to establish his entitlement to a protective order, this Court should deny Plaintiff's motion for protective order.

Dated: September 4, 2024                    Respectfully submitted,

                                            */s/ Frederick S. Wermuth*
                                            Frederick S. Wermuth (Lead Counsel)
                                            Florida Bar No. 0184111
                                            Dustin Mauser-Claassen

---

[7] Plaintiff cited two cases in his response to the Greenbergs' motion to compel for the proposition that *both* spouses must waive the privilege. Both are distinguishable. First, both cases involved criminal defendants, who, of course, did not initiate their own prosecutions and thus did not put their spousal communications at issue. *In re Grand Jury Investigation of Hugle* involved a spouse seeking to prevent disclosure of communications by the other spouse *before* it occurred. 754 F.2d 863, 864 (9th Cir. 1985). And in *United States v. Neal*, law enforcement enticed a defendant's wife with the carrot of immunity (and the stick of possible prosecution) to surreptitiously record her husband and bait him into making incriminating statements. 532 F. Supp. 942, 948 (D. Colo. 1982). Though the court analyzed the case as presenting a spousal-communications privilege issue, the communications were never confidential—as the wife knew they recorded—and the court was clearly bothered by the FBI's conversion of wife into a warrantless wiretapper of her husband. *Id.* at 947. Indeed, the court noted that the facts implicated serious Fourth and Fifth Amendments concerns as well. *Id.* at 950–51. At any rate, both spouses have waived the privilege here, as discussed above.

Florida Bar No. 0119289
Quinn Ritter
Florida Bar No. 1018135
KING, BLACKWELL, ZEHNDER
 & WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com
dmauser@kbzwlaw.com
qritter@kbzwlaw.com

*Attorneys for Defendants Andrew Greenberg, Susan Greenberg, and AWG, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 4, 2024 I electronically filed the fore-going with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Frederick S. Wermuth*
Frederick S. Wermuth
Florida Bar No. 0184111