UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHRISTOPHER E. DORWORTH,

    *Plaintiff,*

v.

JOEL MICAH GREENBERG,
ANDREW W. GREENBERG,
SUSAN GREENBERG, ABBY
GREENBERG, AWG., INC.,
GREENBERG DENTAL
ASSOCIATES, LLC, GREENBERG
DENTAL & ORTHODONTICS, P.A.,
and GREENBERG DENTAL
SPECIALTY GROUP, LLC,

    *Defendants.*

Case No.: 6:23-cv-871-CEM-DCI

## DEFENDANTS' MOTION FOR ENTITLEMENT
## TO ATTORNEY'S FEES, COSTS, AND SANCTIONS

In 2017, Chris Dorworth—a former state legislator turned lobbyist—reveled in the prestige of connected friends, like Congressman Matt Gaetz, entertaining them with parties featuring illicit drugs and young women. Many women who attended Dorworth's parties were recruited and paid by his new protege, Joel Greenberg, a political novice recently elected to local office. But everything collapsed after Joel was indicted for stalking in June 2020. The ensuing investigation quickly turned to Joel's activities with A.B., ███████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████

A.B. then ███████████████████████ Soon afterward, Dorworth learned ███

███████████████████████████████████████████████████████

███████████████████████████████ Betraying his guilt, Dorworth

███████████████████████████████████████████████████████

Spinning a tale from a meeting and text exchange with Joel, Dorworth claimed that he was the victim of a conspiracy—that Joel was paying A.B.'s lawyers, controlling her testimony, and punishing Dorworth for refusing to try to convince then-President Trump to pardon Joel. Despite Dorworth's efforts, the investigation became national news in spring 2021, largely because it involved Congressman Gaetz. In early April, the *New York Times* confronted Dorworth with reports that the FBI was investigating whether he had sex with A.B. while she was a minor. Dorworth then quit his lobbying firm and then laid low for two years—only acting after A.B. threatened to sue him for sex trafficking and statutory rape at the end of 2022.

In a nearly 1,000 paragraph complaint, Dorworth swore under oath that he was the victim of a vast conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO). Dorworth—preposterously—accused Joel's ex-wife, Joel's parents, and dental-practice entities associated with Joel's father, of conspiring with Joel's sex trafficking victim, A.B., to falsely accuse Dorworth and Gaetz of sexual misconduct. This conspiracy's supposed goal was to help reduce Joel's sentence and retaliate for Dorworth's refusing to seek a pardon for Joel. In his complaint, Dorworth lied by claiming that he did not know if A.B. had been to his home and that he never met nor partied with A.B. He then repeated his lies and frivolous theories in a second complaint that he and his wife both verified under oath.

Though Dorworth's accusations were plainly false, it took great expense[1] to investigate and prove them false and baseless through over 16 months of proceedings. First, Dorworth's guest ledger from his gated community revealed that A.B. attended the July 15, 2017 party while she was a minor. A.B. and her friend K.M. then testified



They also testified that

Thus, notwithstanding Dorworth's effort to deflect and deny wrongdoing

[1] Pursuant to LR 7.01(b)(2), Defendants provide their respective fair estimates of the amount of fees and costs sought to be recovered: Andrew and Susan Greenberg and AWG, Inc. have incurred approximately $935,000 in attorney's fees and $1,086.63 in taxable costs. Andrew and Susan Greenberg have incurred an additional $28,810.67 in taxable costs. Abby Greenberg has incurred approximately $360,000 in attorney's fees and $35,844.89 in taxable costs. The Greenberg Dental entities incurred approximately $150,000 in attorney's fees.

by raising an entirely implausible and baseless claim of conspiracy, unrebutted evidence shows exactly why Dorworth became the subject of investigation.

In July 2024, Defendants also obtained Dorworth's cell phone location records, proving that he was present at the July 15, 2017 party. Even faced with these records, Dorworth ███████████████████████████████████████████ ██████ With such proof, Andrew, Susan, and Abby Greenberg served a Rule 11 motion on Dorworth's counsel. Beyond detailing unanimous firsthand testimony disproving any conspiracy, the motion cited new evidence. Most critically, the respected former federal prosecutor that Dorworth said Defendants had paid to secure false testimony from A.B. further refuted Dorworth's theory in a declaration explaining that he met A.B. only once, that he never represented A.B., that he was never paid to meet A.B., and that he was never contacted by any defendant but A.B.

During Dorworth's 21-day Rule 11 safe harbor period, an affidavit by B.G.—who Dorworth claimed ████████████████████████████████████ ██████—further proved Dorworth's claims false. B.G. confirmed that ████████████ ███████████████████████████████████████████████████████████ ████████████████████████ Two days after B.G. signed her affidavit and five days before the Rule 11 safe harbor period expired, Dorworth finally dismissed his entire case—effectively conceding its frivolousness from the start. Defendants now seek their reasonable attorney's fees under (1) Florida's RICO statute and (2) the Court's inherent powers. Defendants also seek to convert Dorworth's dismissal without prejudice to a dismissal with prejudice as a sanction under the Court's inherent power.

*First*, precisely because treble damages might tempt plaintiffs to improperly assert costly-to-defend RICO claims, Florida's RICO act allows defendants to recover their "attorney's fees and court costs" for claims pursued "without substantial fact or legal support." § 772.104(3), Fla. Stat. A defendant can make this showing even "after a plaintiff's voluntary dismissal of the claim." *Royal Palm Vill. Residents, Inc. v. Slider, Inc.*, No. 8:19-CV-874-CEH-SPF, 2021 WL 4452898, at *5 (M.D. Fla. Sept. 29, 2021); *see also Wardak v. Goolden*, No. 1:19-CV-21121-RAR, 2020 WL 6749171, at *5 n.4 (S.D. Fla. Sept. 8, 2020) (same).

Defendants' burden under § 772.104(3) is far, far lower than it would be under Florida's Rule 11 analogue—§ 57.105, Fla. Stat.—which itself "does not require a finding of frivolousness." *Martin Cnty. Conserv. All. v. Martin Cnty.*, 73 So. 3d 856, 858 (Fla. 1st DCA 2011); *Hartford Ins. of the Midwest v. Miller*, 681 So. 2d 301, 302 (Fla. 3d DCA 1996) (explaining that § 772.104(3)'s standard is "much less strict than that contained in Florida Statute section 57.105(1)"). This "less stringent" standard serves to "discourage frivolous Rico claims … because the stigma and burden of defending such claims is so great." *Miller*, 681 So. 2d at 302. Thus, though they can and will, Defendants need not show that Dorworth's claim was frivolous, that he lied, or that there was a "complete absence of a justiciable issue of either law or fact." *Id.* (citation omitted). As discussed below, Defendants need only show that Dorworth's RICO claim lacked substantial support (considering the evidence as it was when he dismissed)—a point Dorworth effectively conceded in dismissing his whole case to avoid a Rule 11 motion.

*Second*, this Court has the inherent power to impose sanctions when a party acts in subjective bad faith, *Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020), such as when a party repeatedly lies under oath, *Obukwelu v. Bd. of Trs. Fla. State Univ.*, 837 F. App'x 686, 688 (11th Cir. 2020). Sanctions may include awarding fees. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991). Beyond fees, the Court's inherent powers include broad "discretion … to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 44–45. On top of awarding fees, the Court should use that power to convert Dorworth's dismissal without prejudice into one with prejudice—something the Court may do even after a notice of voluntary dismissal. *See Zow v. Regions Fin. Corp.*, 595 F. App'x 887, 889 (11th Cir. 2014) (affirming conversion of voluntary dismissal under Rule 41(a)(1)(A)(i) to dismissal with prejudice). Here, Dorworth plainly acted in bad faith when he lied under oath for over 16 months—from his first complaint to his deposition about a month before dismissing this action. Defendants thus meet the standards for this Court to award attorney's fees and impose the sanction of dismissal with prejudice against Dorworth.[2]

## BACKGROUND

**I. On July 15, 2017, Dorworth attended a party at his home featuring illicit drugs and young females, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮**

After Joel was first elected to office in 2016, Dorworth befriended, worked, and socialized with Joel. *See* Doc. 1-1 ¶¶ 211, 213, 222. By summer 2017, Joel was

---

[2] Throughout, "Defendants" refers to the parties bringing this motion: Andrew, Susan, and Abby Greenberg, and AWG, Inc., Greenberg Dental Associates, LLC, Greenberg Dental & Orthodontics, P.A., and Greenberg Dental Specialty Group, LLC.

regularly meeting teen girls and women in their early twenties through a website and recruiting them for sex with himself and others in exchange for compensation. ███████

███████████████████████████████████████████████████████████████. *See* Ex. 1 at 23:2–23, 26:2–8.[3]

On July 15, 2017, ██████ and others attended one of multiple parties at Dorworth's home that involved "alcohol; cocaine; middle-aged men; and young attractive females." Doc. 183-2 ¶ 24; Ex. 2 ¶¶ 16, 19. This party sits at the heart of this case. A.B. testified ███████████████████████. Ex. 1 at 77:11–20. Both ███████████

███████████████████████████████ *Id.* at 84:3–10. A.B. testified that she ████████████████████████████████████,[4] once on ███████

██████████████████████[5] *Id.* at 107:7–25. A.B. testified that Dorworth saw ███████

████████████████████████████████████████████████████████████████

██████████ *Id.* at 108:10–22. She also testified to █████████████████████████

██████ that evening. *Id.* at 101:13–102:8. In turn, Dorworth testified that A.B.'s

---

[3] Because, though confidentiality designations under the parties' confidentiality agreement, Dorworth has claimed that many of the documents relevant to this motion are subject to protection from disclosure under applicable law, Defendants are contemporaneously filing a motion to seal Exhibits 1, 2, 4, 11, 12, 13, 19, and 27. Defendants do not believe these exhibits should be maintained under seal and ask that the Court deny the motion to seal and permit filing on the open docket. In the interim, however, the Court may access these exhibits as attachments to Defendants' motion to seal.

[4] At his deposition, Dorworth ██████████████████████████████████████████████ Ex. 1 at 96:21–25 ███████████████ ██████████ Dorworth claimed that ███████████████. Doc. 183-5 at 347:12–13 ██████████ ████████████████████████████████████████████ But Dorworth's wife, Rebekah Dorworth, testified that "[y]ou can see the pool out of a couple of bedrooms" in the Dorworth home that she would describe as guest bedrooms. Doc. 181-1 at 398:17–20. Though a minor point, it neatly encapsulates Dorworth's refusal to tell the truth under oath.

[5] Ms. Dorworth confirmed the presence of an air hockey table in her house during this time period. Doc. 181-1 at 261:1–9.

testimony about her ████████████████████████████████████████████

Doc. 183-5 at 353:16–18.[6] But B.G., another attendee at that party, confirmed A.B.'s

testimony under penalty of perjury. Ex. 2 (Doc.) ¶ 16 ███████████████████████

████████████████████████████████████████████████████████████████

K.M., ██████████, also attended the party. *See* Ex. 3 at 6; Doc. 181-1 at

252:23–253:8 (Ms. Dorworth confirming that a July 15, 2017 video depicts K.M. at

Dorworth's home). K.M. recounted ██████████████████████████. Ex. 4 at

27:20–28:3. She also observed ████████████████████████

██████████████████████. *Id.* at 31:3–21. Both K.M. and A.B. ██████████████

██████████████████████. Ex. 4 at 32:19–33:17. K.M. took ██████

██████████████ *id.* at 38:11–12, and saw ███████████████████, *id.* at 41:2–5.

From her experience that evening, K.M. testified ████████████████████████

██████████████████████. *Id.* at 318:25–319:3.

## II. Three years later, Joel was indicted and a broader investigation ensued.

In June 2020, Joel was indicted for stalking a political opponent. After further

investigation, Joel was charged with and ultimately pleaded guilty to sex trafficking a

child (A.B.) and to identity theft, wire fraud, stalking, and conspiracy. *See* Ex. 5 at 1–

---

[6] Dorworth designated his entire deposition transcripts confidential *after* he dismissed this action and *after* those transcripts were filed on the record. He has made no effort to remove those transcripts from the record. Even so, to avoid any accusation that Defendants have somehow violated the parties' confidentiality agreement, Defendants have redacted portions of this motion citing Doworth's deposition transcripts.

[7] Falsely maintaining that he had never met A.B., Dorworth also testified that—████████████████

██████ Doc. 183-5 at 352:14–353:15.

2. Soon after his first indictment, Joel allegedly confronted Rebekah Dorworth at a resort, saying "that it would be better for everyone if he got a pardon" and expressing concern that Gaetz and another man might have criminal exposure if people found out they had sex with A.B. Doc. 181-1 at 352:12–18, 354:1–14, 359:16–360:13.

Dorworth, in his verified complaints, recounted meeting Joel soon after that alleged incident. Doc. 1-1 ¶¶ 362–391; *see also* Doc. 62 ¶¶ 91–98. In allegations later contradicted by Dorworth's sworn testimony, Dorworth alleged that Joel's statements at that meeting included that Joel "was concerned about his exposure for sexual misconduct with A.B," Doc. 62 ¶ 91, that Joel "was paying for A.B.'s attorney's fees in an attempt to shape her testimony so that he could avoid charges" and that Joel "and his parents would seek A.B.'s cooperation by 'paying her off,'" *id.* ¶¶ 92–93. [8] Dorworth claimed that, when he refused Joel's request that he help Joel seek a pardon, Joel "threatened to 'make this a problem for everyone' by falsely claiming that Dorworth, … Gaetz, and others were involved in [Joel's] criminal actions." *Id.* ¶ 98.

On August 14, 2020—after Dorworth's alleged meeting with Joel—Joel messaged Dorworth, first saying that he wanted the U.S. Attorney investigating him fired. Doc. 62-3 at 2. Referring to A.B. by an alias, Joel then said that he was having to pay for A.B. to retain a lawyer, that investigators wanted her to talk, that he believed

---

[8] At his deposition, despite testifying ███████████████████████, Doc. 183-6 at 34:3–4, Dorworth gave an entirely different story of the meeting recounted under oath in his complaint. Dorworth testified that ████████████████████████████████████████████████████████ ██████████ *Id.* at 26:13–24 ██████████████████████████████████████████████ ████████████████████████████████████ *id.* at 62:11–20 (testifying that █████ ████████████ Dorworth gave both stories under oath; at least one was a lie.

"Venmo was the link," and that he needed Dorworth's help. *Id.* Dorworth sharply retorted, "I have nothing to do with any of this …. Not. Fucking. Cool.," *id.*, to which Joel protested, "I'm trying to let everyone know who came into contact with these girls" and "I would think you'd want to at least have a heads up if some chick says she partied at your house …. ," *id.* Dorworth says ████████████████████████ -████ Doc. 183-6 at 66:25–67:6.

**III. As Joel and Dorworth exchanged messages, A.B. ████████████████.**

Before dismissing this action, Dorworth claimed that Joel's alleged statements at their last meeting—and in their last exchange—show that Joel (and by extension his parents and AWG, Inc.) paid a lawyer named Andrew Searle to shape A.B.'s testimony. Dorworth ████████████████████████████████████████ ████████████████████████████ *See* Doc. 183-5 at 226:20–228:16; Ex. 6 at 6–7; Ex. 7 at 11. All evidence (and common sense) stands to the contrary.

At A.B.'s first meeting with a detective on about August 14, 2024, she ██████ ████████████████████████████████████████. Ex. 1 at 131:7–11. ████████████████████, A.B. plainly didn't conspire with anyone to lessen Joel's criminal liability—Joel was indicted days later for sex trafficking A.B., and her report would *support* Joel's indictment and conviction.[9] *See* Ex. 8.

Dorworth's speculation about A.B.'s meeting with Searle is also baseless. *See*

---

[9] Defendants noted this absurdity in Dorworth's theory in their motions to dismiss his claims last year, highlighting that Joel being charged and convicted with sex trafficking A.B. is inconsistent with Dorworth's claim that Defendants conspired with A.B. to reduce Joel's sentence. Doc. 77 at 7–8; Doc. 79 at 10. Dorworth dismissed his claims while those motions were pending.

Ex. 9 ¶¶ 7–8; *see also* Ex. 1 at 276:19–22; *id.* at 138:11–17. Indeed, before A.B. briefly

met Searle, she had *already* met with a detective █████████████████████████

████—as reflected in the snapchat exchange on which Dorworth relies, Ex. 6 at 6–7

(K.M. telling Joe Ellicott that A.B. is meeting the detective "now," before Ellicott re-

sponds to give K.M. Searle's number to pass on to A.B.). A.B. never hired Searle and

██████████████████████████████████ Ex. 1 at 138:16–17, 283:12–14; Ex. 9

¶ 8.[10] Dorworth's own counsel elicited testimony █████████████████████████

████████ Ex. 1 at 254:7–16, and that ████████████████████████████████

████████████ *id.* at 254:18–19. A.B. also testified that █████████████████

█████████, *id.* at 140:25–141:7, or said that ████████████████████████

██████████████████ *id.* at 143:13–24. Searle confirmed there was no agreement with

any third-party to pay for his meeting with A.B. and that he never was paid. Ex. 9 ¶ 9;

*see also* Ex. 10 at 2, 6, 10 (Greenbergs confirming under oath they never paid A.B.'s

attorney). And Defendants did not even try to pay A.B.'s fees, as no defendant (except

A.B.) ever contacted Searle. Ex. 9 ¶ 10.

 Rather than conspiring against Dorworth, A.B. █████████████████, Ex. 1 at

138:18–21, ██████████████████████████████████████████████████████

*id.* at 141:13–25, and then ██████████████████, *see id.* at 133:7–25. At this point,

Defendants could not possibly have controlled A.B.—much less to the end Dorworth

alleges—as she █████████████████████████████████████████████████

---

[10] Similarly, K.M. testified that A.B. ██████████████████████████████████, as she

██████████████████████████. Ex. 4 at 280:10–14, 351:8–20.

████████████████████████████████████████████████████████████████████

████████████████████████████████ *Id.* at 132:1–133:25. Indeed, A.B. told the FBI

████████████████████████████████████████████████████████████████████

*Id.* at 132:20–21. Obviously, that would upend a conspiracy to lessen Joel's criminal

liability, as would A.B. providing the same testimony, as she did, ████████████████

████████████████. *Id.* at 375:6–14, 376:1–7. Simply put, it was frivolous for Dor-

worth to allege and maintain his theory about Defendants hiring a lawyer to help A.B.

provide statements ████████████████ to authorities.

**IV. Dorworth learned** ██████████████████████████████████████████
**██████████, then he lied to investigators as part of a cover up.**

Soon after A.B. ████████████████████████, Gaetz and B.G. told Dorworth that

████████████████████████████████████████████████████████████████████

*See* Ex. 11 at 2; Doc. 183-5 at 292:6–19. Dorworth also ████████████████████████

████████████████████████. *See* Doc. 183-5 at 287:4–11. He says ████████████████

████████████████████████████████████████████████████████ *See id.* at

287:10–11. For support, ████████████████████████████████████████████████████

████████████████████████████████████████. *See* Doc. 183-5 at

320:12–18; *see also* Doc. 1-1 ¶ 520. But Dorworth did, in fact, know A.B. and he was

at the party.

In December 2020, Dorworth received a federal subpoena, Doc. 180 at 7, and

then ████████████████████████████████████ Doc. 183-5 at 36:13–19. He claims

that ████████████████████████████████████████████████████████████████████

*Id.* at 38:7–17. Dorworth ███████████████████████████████████████

███████████████████████████ *Id.* at 85:17–86:2. Indeed, Dorworth recounted

███████████████████████████ *Id.* at 37:14–23. In doing so, Dor-

worth violated 18 U.S.C. § 1001, something he later accused Defendants of doing.

Doc. 62 ¶ 473.

   Dorworth then perpetuated his lies. In a May 7, 2021 letter to investigators,

Dorworth's lawyer, Mr. Hornsby, ████████████████████████████████

███████████████████████████████████████████████, Ex. 13 at 1, but

claimed ██████████████████████ *Id.* at 2. He then provided ████████

███████████████████████████████████████████████████████████████

████████████████ *Id.* at 1, 5. Hornsby claimed ███████████████

███████████████████████ concluding that ████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████. *Id.* at 1–2. And in an October 4, 2021

letter to investigators, Hornsby claimed ████████████████████████████

███████████████████████████████████████████████████████████████

████████████████. Ex. 11 at 2–3. From this, Hornsby claimed it was ████████

███████████████████████████████████████████████████████████████

███████████████████████████ *Id.* at 3.

   But the grand jury's focus on Dorworth and his home is not evidence of a re-

tributive RICO conspiracy; the grand jury's focus on Dorworth is evidence that inves-

tigators received truthful testimony. And that testimony could have come various

partygoers outside of the alleged RICO conspiracy—there were at least ▮.[11] Ex. 2 ¶ 12;
Ex. 4 at 128:20–23.

**V. Using his lies to investigators, Dorworth sues to preempt A.B.'s claims.**

In December 2022, the same month Joel was sentenced, A.B. sent Dorworth a
demand letter announcing her intention to sue him for sex trafficking and statutory
rape. *See* Doc. 62 ¶ 479. On April 7, 2023, Dorworth filed his first verified complaint,
seeking a declaration that he never had sex with A.B. or paid her for sex.[12] Doc. 1-1 at
114–15. The verified complaint was also replete with immaterial, impertinent, and
scandalous material about Abby Greenberg, that was offered only to malign and em-
barrass her. Those allegations—which did not support any factual element of any
claim against Abby or any other party—were ultimately withdrawn.

But Dorworth went further: across 918 paragraphs, he theorized a RICO enter-
prise—consisting of Joel, Joel's parents Andrew and Susan, Joel's ex-wife Abby,
AWG, Inc., and three Greenberg Dental Entities, *id.* ¶¶ 10–17—claiming they tried
but failed to extort him either to seek a pardon for Joel or to have the prosecutor in-
vestigating Joel reassigned, *id.* ¶ 3. Defendants, he claims, then conspired to "falsely
accuse[] Dorworth of being involved in, among other things, child sex trafficking and

---

[11] All witness who testified about the party reported the presence of more young women—in addition
to K.M., B.G., and A.B. Ex. 12 at 49:1–6; Doc. Ex. 1 at 116:2–3 (discussing the ▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮"); Ex. 4 at 128:20–129:7 (▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮). Any, or all, of these women could also have, and likely did, testify before
the grand jury—as L.P. admits she did. Doc. 183-2 ¶ 30 (L.P. stating that she "testified to a grand jury
about the parties at the Dorworth Residence in the Summer and Fall of 2017").

[12] In filings before the Court, Dorworth conceded that A.B.'s claims against him were "a substantial
part of the reason that [he] shough [sic] relief in the first place." Doc. 139 at 8.

an illegal ghost candidate scheme" in retribution. *Id.* ¶ 4. To that end, Defendants allegedly "compensated" A.B. "to provide false testimony … against" Dorworth, *id.* ¶ 20, by "paying A.B.'s attorney fees," *id.* ¶¶ 800(c), (d). Dorworth further claimed that the alleged enterprise violated RICO by funding Joel's criminal defense, *id.* ¶¶ 672–74, and by paying Joel's restitution, *id.* ¶¶ 690–93. Based on these (factually baseless) allegations, Dorworth asserted several claims, including RICO conspiracy.

Dorworth also repeated the false story Hornsby's letter relayed to federal authorities: that Joe Ellicott invited A.B. to Dorworth's house but that Dorworth does not know whether A.B. ever took Ellicott up on that invitation. *Id.* ¶¶ 440–45; Doc. 183-5 at 86:2–3. Dorworth likewise claimed that he "has never, to the best of his recollection, met, … , communicated, or interacted in any way with A.B." Doc. 1-1 ¶ 439; *see also id.* ¶¶ 419, 423 (claiming Dorworth never met A.B. and "never 'partied' with A.B. at his house"). These allegations were clearly false.

After Defendants removed this case to federal court and filed motions to dismiss, Dorworth filed a second verified complaint, incorporating his entire first complaint. Doc. 62 ¶ 348. To it, Dorworth also added a claim for conspiracy under Florida's RICO statute, § 772.103(4), Fla. Stat., against Andrew, Susan, and Abby Greenberg, Doc. 62 at 54–55. Across 498 paragraphs, Dorworth attempted to fix his failure to allege any facts supporting his claim that Defendants agreed to his claimed conspiracy—largely through at least 45 allegations based solely on "information and belief."[13]

---

[13] Doc. 62 ¶¶ 9, 26–27, 29, 105, 116, 120–22, 142, 148, 151–54, 161, 168, 173, 177, 212–13, 228, 243, 275, 300, 305, 308, 312–15, 325, 327, 349, 353, 356–58, 368–70, 374, 376, 392, 397.

Dorworth also expanded the conspiracy's alleged goal to obtaining cooperation credit for Joel through false testimony. *Id.* ¶ 7. For support, he devoted an entire section of his second complaint to his strange claim that any assistance Joel's parents provided him "exceeded" "normal or lawful assistance from parents to a son," and Dorworth alleged that Joel's parents paid his restitution and settled potential claims by Seminole County against themselves and Joel. *Id.* at 48, ¶¶ 391–97.

Elsewhere, he claimed that Joel's parents knew of all activity in Joel's case—including what information Joel provided to the government and whether it was true—because they were paying Joel's lawyer. *See id.* ¶¶ 325–26. And perhaps most bizarrely, Dorworth claimed, again upon information and belief, that Joel's parents' support to Abby Greenberg—the suddenly financially vulnerable mother of two of their grand-children—was somehow a bribe for false testimony. *See id.* ¶¶ 314–15. When Defend-ants again moved to dismiss, Joel's parents highlighted the absurdity of these claims, noting that the Florida Bar rules expressly contemplate a third party paying for an-other's attorney, that the Middle District's own website contains instructions on how to pay another's criminal restitution, and that "there is no 'reasonable' limit of support to grandchildren beyond which a presumption of liability arises." Doc. 122 at 7–8.

Dorworth's absurd claims never had a factual basis. Ms. Dorworth, who also verified the amended complaint, began to testify—before being interrupted and coached by the Dorworth family's attorney to not reveal their "legal strategy"—that she and Dorworth made allegations upon information and belief with the hope they would "find out" in discovery. *See* Doc. 181-1 at 309:13–18. Thus, even at this early

point in the case, Dorworth's claims lacked fact or legal support *and* were subject to dismissal. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007) (requiring "plausible grounds to infer an agreement").

## VI. After lying in his complaints, Dorworth repeatedly lies during discovery.

After twice verifying allegations that he never met or partied with A.B., Dorworth had to maintain that fiction to pursue this case. So Dorworth lied repeatedly in discovery about his location on July 15, 2017. To a request for admission, Dorworth again repeated his story from Hornsby's letter, concluding that he "cannot admit or deny whether A.B. was present at his home" on July 15, 2017. Ex. 14 at 1–2. Unprompted, Dorworth also produced a July 1, 2024 declaration from his friend, Morris, averring he "understand[s]" the picture of him that Dorworth ███████████████ was taken on July 15, 2017. Ex. 15 ¶ 11. Morris otherwise averred in generalities that he and Dorworth would go boating "usually late afternoon until sunset," that he and Dorworth would celebrate their birthdays together in mid-July, that—after boat trips— he and Dorworth would "invariably socialize well into the evening and night," and that he believes Dorworth "is a good person." *Id.* ¶¶ 4–14.

Defendants also asked Ms. Dorworth about the July 15th party. She testified that she was in Texas at the time. Doc. 181-1 at 383:25–384:2; *see also* Ex. 16 at 3. Still, Ms. Dorworth testified that Dorworth was not home the night of July 15, 2017 because he spent the night at Morris's house. Doc. 181-1 at 234:15–17, 241:4–9, 457:9–10. ███████████████████████████████, Doc. 183-5 at 295:15–17, and despite knowing it was false, took no action to correct it. He also likely induced said testimony.

*Id.* at 56:13–14 ("I prepped with my husband and with my attorney separately.").

Then, Dorworth testified that he ███████████████████████████ ███████████. Doc. 183-5 at 177:1–2 ████████████████████████████ ████████████████████████. After that, he said that he ███████████████████████ ███████████████████████████████████████████████████. *Id.* at 177:3–12, 242:11–12, 244:1–245:2. Then Dorworth committed to his earlier lies with fabricated equivocation, ████████████████████████████████████████████████



████████████████████████████████████████████████ *Id.* at 156:17-23, 244:5–12, 245:12–14, 281:17-25, 285:2-5, 309:21-310:6; Doc. 183-6 at 121:19-22, 122:11-24, 209:18-24, 217:13-16, 218:10-17.

These sworn statements are demonstrably false. Besides A.B., K.M., and B.G.'s sworn statements, all ████████████████████████, objective cell-tower data shows Dorworth was home the night of July 15, 2017—far from Morris' house.

## VII. Objective cell-tower records confirm that Dorworth lied under oath.

Defendants obtained Dorworth's cell phone records, which show the location of the cell tower(s), and the side of the cell site antenna, used to transmit calls and texts to and from Dorworth's cell phone. Defendants retained an expert, Aaron Weiss, to

---

[14] *Id.* at 86:6–87:4, 245:3–22; 247:11–24, 248:19–24; 255:14–256:7, 247:11–16; *see also* Doc. 183-6 at 96:11–14; 110:2–7; 114:12–17; 118:6–14; 209:21–22; 211:2–8.

examine this data. *See generally* Ex. 17. At his deposition, Dorworth repeatedly testified

████████████████████████████████████████████████████████

████████████████████████████████████████████ Doc. 183-5 at

255:7–13; Doc. 183-6 at 95:15–23, 96:8–10. But Dorworth's cell phone records cannot

be reconciled with his testimony regarding his location during the July 15th party.

Most relevant here, between 5:28 p.m. and 6:35 p.m., Dorworth's phone sent

and received multiple calls and texts using a cell tower next to Lake Maitland, where

he boated that afternoon with Morris. Ex. 17 at 8. Then, at 6:40 p.m., Dorworth spoke

with his wife for five minutes, 24 seconds. *See id.* at 9. This call first connected to the

Lake Maitland cell tower but switched to a cell tower roughly 4.5 miles north of Lake

Maitland and less than 0.1 miles East of I-4. *Id.* This began a series of cell-tower con-

nections that "indicate[] travel from the Lake Maitland … area at approximately 06:45

PM to the Heathrow area at approximately 07:17 PM." *Id.* at 10. That period tracks

the roughly 30-minute drive from Lake Maitland to Dorworth's home in Heathrow—

████████████████████████████████████████. Ex. 13 at 1; *see also* Ex. 17 at 10.

Then, from 7:52 p.m. that night until 11:05 a.m. the next morning, "all cell site

connections are to [a tower], . . . 0.6 miles S/SW from Dorworth's house." Ex. 17 at

10 (labeling this tower the "Home Tower"). On other days and times when gate rec-

ords show Dorworth at home, Dorworth's phone consistently connected to the Home

Tower. *Id.* at 11. The Home Tower is nine miles from Morris's house and Dorworth's

calls connected to the North-facing side of the tower—pointed *away* from Morris's

house and *towards* Dorworth's nearby home. *Id.* at 10. "[T]here are at least 37 cell sites

18

in closer proximity to Morris' house than" this tower. *Id.* There are also geologic ob-

stacles between the Home Tower and Morris's house that would impede connection.

*Id.* Based on this information, Defendants' cell records expert concluded that "Dor-

worth arrived at []his home within a few minutes after 07:17 PM and remained there

until at least 11:05 AM on 7/16/2017" and "it is doubtlessly not feasible for Dor-

worth's phone to connect to the Home Tower while at Morris's house." *Id.* at 11. Alt-

hough Dorworth said he would retain an expert to examine the cell phone data, Doc.

183-6 at 97:20–23, he did not do so. His expert deadline of September 3, 2024, came

and went without any expert disclosures. Doc. 51 at 2.

This unrebutted, objective evidence places Dorworth at home during the party,

showing both that Dorworth lied to investigators about his whereabouts on July 15th

and that Dorworth has repeatedly maintained that lie under oath in this case.[15]

## VIII. Facing a Rule 11 motion and overwhelming evidence he lied under oath, Dorworth dismissed this action—but not before deposing Andrew and Susan Greenberg in bad faith.

On August 17, 2024, Andrew, Susan, and Abby Greenberg and AWG, Inc.

served a Rule 11 motion on Dorworth, giving him until September 10, 2024 to avoid

a Rule 11 motion by dismissing his frivolous claims. Ex. 18. Further, on September 3,

2024, B.G. signed an affidavit—cited above—stating that "███████████████████

---

[15] This evidence fits other evidence that Dorworth knew—in direct contrast with his sworn allega-
tions—exactly who A.B. was long before Joel was indicted. For example, an April 3, 2020 text chain
produced in discovery shows that ████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████

██████████████████████████████████████████████████

█████████ and that "███████████████████████████████████

███████████████████████." Ex. 2 ¶¶ 13, 16. Dorworth had earlier testified that B.G.

██████████████████████████████████████████████████

███████████████████ Doc. 183-5 at 285:2–9. Thus, by September 3, 2024, Dorworth

was facing a Rule 11 motion based in large part on objective cell phone location evidence disproving his sworn testimony and an affidavit from an admittedly independent

third party ████████████████████████████████████

Even so, on September 4th and 5th, Dorworth's counsel deposed Andrew and Susan Greenberg, respectively. And at 7:27 p.m. the night before Andrew's deposition, Dorworth's counsel emailed counsel for the Greenbergs stating, "I just filed a … cross notice of deposition in the state court fraudulent transfer case for the deposition tomorrow." Ex. 20 at 1. The cross notice called for deposing Andrew Greenberg on topics for Dorworth's separate, state court fraudulent transfer action—which had not yet been served on any defendant. *Compare* Ex. 21 (state court notice), *with* Ex. 22 (federal notice). Plainly—already planning to dismiss to avoid sanctions—Dorworth pressed ahead with the Greenbergs' depositions to support an equally-frivolous state court action before that complaint was served and before discovery had opened in that case. Indeed, on September 5th, Dorworth voluntarily dismissed this action. Doc. 185.

On September 9, 2024, Dorworth amended his state court case—adding claims for false report of criminal conduct, witness tampering, defamation, and conspiracy. *See generally* Ex. 24. Dorworth's new complaint abandons all claims against Abby

Greenberg and the Greenberg Dental entities and also abandons his Florida RICO claims in their entirety. Still, incredibly, Dorworth *continues* to claim "[u]pon information and belief" that the Greenbergs paid A.B.'s attorney's fees and goes so far as to claim *his* attorney's fees in this action as damages. *Id.* ¶¶ 78–79.

That Dorworth continues to assert a debunked theory on "information and belief" that has been disproven through 16 months of litigation, eight depositions, approximately 75 non-party subpoenas, extensive written discovery, and thousands of documents emphasizes that he possesses *zero* evidence that Andrew and Susan Greenberg did *anything* other than pay their child's attorney's fees—something even Dorworth said ███████████████████████. Doc. 183-6 at 12:21–13:2 ███

███████████████████████████████████████████████).[16]

In sum, Dorworth pleaded that Andrew and Susan Greenberg (i) agreed to pay A.B., Doc. 62 ¶¶ 27, 29, 92–93, 105, 126, 154, 294, 299–300, 312, 324 (ii) had knowledge of the content of Joel's proffers, *id.* ¶¶ 140–43, 308–09, 325, (iii) paid Joel's restitution for some nefarious purpose, *id.* ¶¶ 232, 388–97, and (iv) bribed Abby for false testimony, *id.* ¶¶ 126, 154, 294, 312, 324. But Dorworth has discovered zero

---

[16] There was also affirmative evidence demonstrating that Abby Greenberg never conspired against Dorworth. For example, Abby Greenberg attested in interrogatory answers that she never met A.B. and has never spoken to A.B. A.B. likewise testified that she has never met or communicated with Abby Greenberg. *See* Ex. 1 at 29:2–6. Abby Greenberg also attested that she never testified before a grand jury. And on the two occasions that Abby Greenberg spoke to law enforcement investigating Joel Greenberg, Abby never discussed: (a) A.B.; (b) Christopher Dorworth; (c) any interactions that may have occurred between A.B. and Christopher Dorworth before the July 15, 2017 party at the Dorworth Residence; and (d) any facts and circumstances arising out of and/or relating to the July 15, 2017 party at the Dorworth Residence. *See* Ex. 23 at 35. In turn, because Abby never provided the government with the testimony Dorworth claims she did, Andrew and Susan's payments to her were not bribes for false testimony.

evidence that Andrew or Susan agreed with anyone to obstruct justice.[17] Dorworth has discovered zero evidence that Anderw or Susan sought to influence anyone's testimony—either by paying A.B.'s attorneys either directly or indirectly, by paying Joel's legal fees or restitution, or by providing financial support to Abby (and their grandchildren). Dorworth has discovered zero evidence that Defendants knew of Joel's proffers relating to Dorworth or of AB's existence. Dorworth has discovered zero evidence that Defendants agreed with anyone to extort Dorworth through any means. And Dorworth has discovered zero evidence that Defendants agreed to or sought to provide *any* false information about Dorworth to *anyone* at *any* time, or even had knowledge of *anyone* doing so. Dorworth's claims were frivolous both when he filed and now. Defendants thus seek a finding of entitlement to attorney's fees and costs and sanctions against Dorworth.

## MEMORANDUM OF LAW

Through two salaciously abusive complaints, Dorworth sought millions in treble damages based on conspiracy theories and lies. Then, facing irrefutable evidence

---

[17] While hard to believe, Dorworth's RICO conspiracy claims against the Greenberg Dental entities are even more contrived than his claims against the other Defendants. He alleges that "any funding required for" actions taken by Andrew and Susan Greenberg "came from AWG and/or Greenberg Dental with the knowledge of what the funding would be used for." *See* Doc. 62 ¶¶ 25, 308; *see also* Doc. 183-6 at 182:6–8 ███████████████████████████████████████████████ ███████████████████████████████. However, Dorworth has adduced no evidence at all to support his allegations that Greenberg Dental has any connection whatsoever to Joel Greenberg besides the name "Greenberg" or that Greenberg Dental ever paid any money to facilitate Joel Greenberg's defense in his criminal case. Doc. 183-5 at 187:2-6, 192:6-14, 193:5-8, 195:24-25. Additionally, there is no record evidence that anyone acting on behalf of Greenberg Dental ever conspired with anyone to do anything that injured Dorworth in any way.

of his lies (presented in a Rule 11 motion) Dorworth dismissed his entire frivolous case and RICO claims. Defendants are thus entitled to their reasonable fees and costs under at least two fonts. *First*, Andrew, Susan, and Abby Greenberg are entitled to fees under Florida's RICO statute. *Second*, Defendants are entitled to fees as a sanction under the Court's inherent power. Finally, Defendants are entitled to a dismissal with prejudice as a sanction under the Court's inherent power.

## I. Andrew, Susan, and Abby Greenberg are entitled to fees under Florida's RICO statute as Dorworth's claim lacked substantial fact or legal support.

Count IV of Dorworth's amended complaint asserted a Florida law RICO conspiracy theory against "all individual Defendants." Doc. 62 at 54–55. Florida's RICO statute entitles defendants to fees and costs when a plaintiff brings a claim "without substantial fact or legal support." § 772.104(3), Fla. Stat. This "less stringent standard" serves to "discourage frivolous Rico claims." *Miller*, 681 So. 2d at 302. To award fees and costs under § 772.104(3), the Court need not "find a complete absence of a justiciable issue of either law of fact." *Id.* at 302 (quotation omitted). Rather, the Court need only find that Dorworth's claim lacked substantial fact or legal support.

Further, Defendants need not rebut the possibility that future evidence *could have* substantially supported Dorworth's claims, as the absence of support is measured from the point of dismissal. *See Nodal v. Infinity Auto Ins. Co.*, 50 So. 3d 721, 724 (Fla. 2d DCA 2010) (applying an identical standard and stating, "[i]f … a plaintiff chooses to voluntarily dismiss its suit at a point when no record evidence supports the factual or legal basis [for the claim], then a defendant is entitled to recover attorney's fees and

costs expended in challenging the action.").

Importantly, Defendants can make this showing even after a voluntary dismissal. As a matter of federal law, the Court has jurisdiction to consider this motion. *See Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 395–96 (1990) (explaining that "it is well established that a federal court may consider collateral issues after an action is no longer pending," including awarding costs and attorney's fees); *Shelton v. Schar*, No. 5:17-CV-86-OC-PGBPRL, 2018 WL 3636698, at *1–3 (M.D. Fla. Apr. 23, 2018) (citing *Cooter & Gell* and rejecting argument that the Court lacked jurisdiction to consider a post notice of voluntary dismissal motion for fees under § 772.104(3)). Separately, as a matter of Florida law, Defendants can show that Dorworth's claim lacked support even "after [Dorworth's] voluntary dismissal of the claim." *Royal Palm Vill.*, 2021 WL 4452898, at *5.

With that in mind, Dorworth's RICO conspiracy claim plainly lacked substantial fact or legal support and would have failed under almost any standard. Most basically, Dorworth premised his case on a perjurious lie: that he was not home on the night of July 15, 2017 and that he had never met or partied with A.B. In response to this motion, Dorworth will likely assert that factual disputes exist as to whether his statements were false—they don't. But for argument's sake, straining to give Dorworth's testimony a non-perjurious interpretation, the best he can offer is that he does not believe he was at the July 15, 2017 party and does not know if A.B. was there. That would not constitute a substantial factual basis supporting his claim. Nor would Dorworth's self-serving amnesia rebut the testimony of the young women that have

sworn he was there and did meet A.B.

Still, that question should not distract the Court from the larger issue under Florida's RICO statute: whether there was a substantial fact or legal basis for Dorworth's claim. Even if Dorworth did not attend the party (objective evidence shows he did) and even if he never met A.B. (he did), there is still no evidence supporting his RICO claim. Nothing shows that Defendants bribed A.B.—indeed, unrebutted evidence shows that ███████████████████████████████████████████ ███████████████████████████████████. Nothing shows that Defendants bribed Abby. Nothing shows that Defendants had any knowledge regarding the content of Joel's proffers. And nothing shows that Defendants agreed to anything. In other words, Defendants ask that the Court not miss the forest for the trees. The simple fact is that there was never evidence supporting Dorworth's RICO claims.

To prove a RICO conspiracy, a plaintiff must prove that the defendants either "agreed to the overall objective of the conspiracy" or "agreed to commit two predicate acts." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010).[18] Over almost a year and a half of discovery—wherein Plaintiff served over 40 separate sets of written discovery requests across all defendants and deposed 4 alleged members of the conspiracy—Dorworth discovered zero evidence that any defendant agreed to make false statements about Dorworth, to bribe or encourage any other defendant to make false statements about Dorworth, or to finance any other Defendant's efforts to

---

[18] *See Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1308 (11th Cir. 2022) ("[T]he analysis of both the federal and state RICO claims is the same.").

make false statements about Dorworth. Indeed, all Dorworth could ever hang his hat on was his claim that Defendants paid Searle to guide A.B.'s testimony. But that evaporated when Searle confirmed that he met A.B. once, that he was never paid for that meeting, and that he was never contacted by any defendant other than A.B. Ex. 9 ¶¶ 7–10. Indeed, Dorworth conceded that—at the time he dismissed this action—he lacked any evidence supporting his claim that the Greenbergs bribed A.B. when he again alleged that they did so "[u]pon information and belief" in his post-dismissal state court complaint. Ex. 24 ¶ 79. Dorworth similarly conceded his entire RICO conspiracy claim had no basis in fact or law when he dismissed this action in the face of a pending Rule 11 motion and then dropped any allegation that Defendants violated Florida's RICO act when repleading his claims in state court. *See generally* Ex. 24; *cf. Derek Runion v. Bernard*, No. 2:20-CV-718-JLB-MRM, 2022 WL 18492498, at \*5, \*7 (M.D. Fla. Jan. 17, 2022) (finding fee entitlement under an identical standard when the plaintiff "abandoned [the] claim in response to Defendants' motion to dismiss the amended complaint"). He further conceded the frivolity of his claims against the Greenberg Dental entities and Abby Greenberg when he dropped them from his new action completely. *See* Ex. 24.

And rather than suggesting conspiracy, unrebutted testimony shows that investigators targeted Dorworth when A.B. independently implicated him and Joel and others in having sex with her as a minor; then, the dominoes continued to fall when a host of young women testified about a July 15, 2017 sex party at Dorworth's home. Objective, unrebutted, evidence shows that Dorworth and then-age-17 A.B. were present at

that party at Dorworth's home on July 15, 2017; that Dorworth (reflecting his guilt) obstructed the investigation into his and Gaetz's misconduct by ███████████ ██████████████████████████████████████████████████ ██████████████ Then, repeating the same lies he told investigators, Dorworth filed this suit in bad faith to preempt a potential lawsuit from A.B. for sex trafficking and statutory rape. Because Dorworth's claim was without substantial basis in fact or law, Andrew, Susan, and Abby Greenberg are entitled to their reasonable fees under § 772.104(3), Fla. Stat.

## II. Defendants are entitled to fees and dismissal with prejudice under this Court's inherent powers because Dorworth brought and maintained this action in bad faith.

Under its inherent powers, the Court may impose sanctions for "bad faith," vexatious, wonton, or "oppressive" behavior, *Chambers*, 501 U.S. at 44–46, even after a voluntary dismissal of the underlying case, *see Irish*, 962 F.3d at 1310 ("[A] district court may address a sanctions motion based on its inherent powers … even if it lacks jurisdiction over the underlying case."); *Haviland v. Specter*, 561 F. App'x 146, 150 (3d Cir. 2014); *see also Fid. Land Tr. Co., LLC v. Mortg. Elec. Registration Sys., Inc.*, No. 6:12-CV-1367-ORL-37, 2012 WL 6720994, at *3 (M.D. Fla. Dec. 4, 2012) (recommending that the court grant a motion for sanctions under the Court's inherent power filed *after* a notice of voluntary dismissal). To impose such sanctions, the Court must find that the sanctioned party acted in "subjective bad faith." *Irish*, 962 F.3d at 1310 (emphasis deleted). Permissible sanctions include fees and dismissal with prejudice. *Chambers*, 501 U.S. at 45–46 (fees); *Obukwelu*, 837 F. App'x at 687–88 (dismissal). Relevant here,

even when a party has voluntarily dismissed their claim, the Court may convert that dismissal into one with prejudice as a sanction because doing so does "not require a determination on the merits." *Zow*, 595 F. App'x at 888.[19]

The Court should sanction Dorworth under its inherent power because the "record demonstrates that [he] acted willfully and in bad faith" by failing, "multiple times, to truthfully respond in interrogatories[,] … sworn depositions," and verified complaints. *Obukwelu*, 837 F. App'x at 689.[20] In two verified complaints, a response to a request for admission, two days of deposition testimony, and an unverified interrogatory response, Dorworth lied that he was not home the night of July 15, 2017 and that he had never met A.B. Worse still, those lies represented a continuation of ███████ ████████████████████████ in an attempt to obstruct a criminal investigation.[21]

Dorworth further lied when he claimed, for example, that ███████████████████ *Compare* Doc. 183-5 at 356:10 (Dorworth testifying that ███████████████████ ███████████████████████████ *with* Doc. 183-2 ¶¶ 24–27 (L.P. averring that she attended multiple parties at the Dorworth Residence in the summer of 2017,

---

[19] On its own motion, the Court could also order Dorworth to show cause under Federal Rule of Civil Procedure 11(c)(3) why his voluntary dismissal should not be converted to a dismissal with prejudice as a non-monetary sanction under Federal Rule of Civil Procedure 11(c)(4). *See Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1315 (11th Cir. 2021) ("[W]here the client has made a knowing factual misrepresentation or is the mastermind behind the frivolous case, [Rule 11] sanctions against a client are appropriate." (quotations omitted)).

[20] As further evidence of Doworth's bad faith, Defendants note that this frivolous action is part of a ongoing pattern of abusive litigation. In a separate case before the Court, Judge Conway found that Dorworth's claims were "completely unreasonable, groundless, and bordering on bad faith." Ex. 26 at 45.

[21] For the Court's benefit, Defendants have also created a compendium of Dorworth's false statements. Ex. 27.

one of which included a sexual encounter with Dorworth). And even after receiving a Rule 11 letter, Dorworth then served interrogatory responses doubling down on his lies. *See* Ex. 25. Dorworth also caused his wife to verify false statements under oath in his amended verified complaint. *See* Doc. 181-1 at 33:18–24. And he watched without intervening when she repeated those lies during her deposition.

Even still, faced with irrefutable evidence that he had perjured himself, Dorworth refused to abandon his crusade against Andrew and Susan Greenberg. Recycling many of his original allegations, Dorworth's new state court complaint incredibly *continues* to allege that the Greenbergs are liable to him because they financed false testimony against him—though now apparently alleging in the alternative that such aid may have been negligent. Ex. 24 ¶¶ 38–55. *But see Carney v. Gambel*, 751 So. 2d 653, 654 (Fla. 4th DCA 1999) ("No Florida decision has imposed liability upon the parents of an adult child for intentional acts simply because the child may be financially dependent on … his or her parents."). Elsewhere, Dorworth suggests that campaign donations may give rise to liability. Ex. 24 ¶ 41. But the former speaker designate of the Florida House, Doc. 1-1 ¶ 6, surely knows that such contributions are constitutionally protected, *see McCutcheon v. Fed. Election Comm'n*, 572 U.S. 185, 191 (2014) (noting the First Amendment guarantees "[t]he right to participate in democracy through political contributions"). Perhaps most incredibly, Dorworth *again* alleges "[u]pon information and belief" that the Greenbergs paid A.B.'s attorney's fees, *id.* ¶ 79, and goes so far as to claim *his* fees from this action as damages, *id.* ¶ 78, and claims entitlement to punitive damages, *id.* ¶ 81.

Dorworth has demonstrated total contempt for the judicial system. At the outset of the government's investigation into Joel, Dorworth lied to ███ to protect himself and his friends. Then, seeking millions of dollars in damages, he turned those same lies against the Greenbergs. After lying in his very first filing, Dorworth went on to lie at every stage of this litigation. And when finally confronted with irrefutable evidence that he lied, Dorworth simply dismissed this action and is now *repeating* his false allegations in another court. Dorworth's actions epitomize subjective bad faith. The Court should now act to ensure that bad faith litigants like Dorworth cannot freely twist the Court's power to his own illegitimate ends—defiling "the very temple of justice"—and then get away with impunity. *Chambers*, 501 U.S. at 46. The Court should therefore employ its inherent power to defend the judicial process's legitimacy by ordering Dorworth to pay Defendants' fees incurred in defending this frivolous action and by converting his dismissal without prejudice into one with prejudice.

## CONCLUSION

For the above reasons, the Court should grant the Defendants' motion for entitlement to fees and costs and convert Dorworth's dismissal into one with prejudice.

## LOCAL RULE 3.01(g) CERTIFICATION

Counsel for the Greenbergs conferred with counsel for Dorworth regarding this motion by video teleconference on September 13, 2024 and by email on September 18, 2024 and September 19, 2024. Plaintiff opposes the requested relief.

Dated: September 19, 2024                    Respectfully submitted,

/s/ Frederick S. Wermuth
Frederick S. Wermuth (Lead Counsel)
Florida Bar No. 0184111
Dustin Mauser-Claassen
Florida Bar No. 0119289
Quinn Ritter
Florida Bar No. 1018135
KING, BLACKWELL, ZEHNDER
 & WERMUTH, P.A.
P.O. Box 1631
Orlando, FL 32802-1631
Telephone: (407) 422-2472
Facsimile: (407) 648-0161
fwermuth@kbzwlaw.com
dmauser@kbzwlaw.com
qritter@kbzwlaw.com

*Attorneys for Defendants Andrew Greenberg, Susan
Greenberg, and AWG, Inc.*

William E. Peters, Jr.
Florida Bar No. 50230
WICKER SMITH O'HARA MCCOY &
FORD, P.A.
515 E. Las Olas Boulevard
SunTrust Center, Suite 1400
Ft. Lauderdale, FL 33301
Telephone: (954) 847-4800
Facsimile: (954) 760-9353
WPeters@wickersmith.com

*Attorney for Defendants
Andrew Greenberg and Susan Greenberg*

/s/ Jason A. Perkins
Jason A. Perkins, Esq.
Florida Bar No. 0610852
CARLTON FIELDS, P.A.
200 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Phone: (407) 849-0300

Fax: (407) 648-9099
jperkins@carltonfields.com (primary)
mbryan@carltonfields.com (secondary)
dcarlucci@carltonfields.com (secondary)

*Attorney for Defendant, Abby Greenberg*

/s/ *Michael J. Furbush*
Michael J. Furbush
Florida Bar No. 70009
Michaela N. Kirn
Florida Bar No. 1018863
Kaitlyn Chomin
Florida Bar No. 1026114
Dean Mead, Egerton, Bloodworth, CA-
POUANO & Bozarth, P.A.
420 S. Orange Avenue, Suite 700
Orlando, FL 32801
Tel: 407-841-1200
Fax: 407-423-1831
mfurbush@deanmead.com (Primary)
mkirn@deanmead.com (Primary)
kchomin@deanmead.com (Primary)
mgodek@deanmead.com (Secondary)

*Attorneys for Greenberg Dental Associates, LLC,*
*Greenberg Dental & Orthodontics, P.A., and*
*Greenberg Dental Specialty Group, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 19, 2024 I electronically filed the fore-going with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Frederick S. Wermuth*
Frederick S. Wermuth
Florida Bar No. 0184111