# EXHIBIT 24

## IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL CIRCUIT
## IN AND FOR SEMINOLE COUNTY, FLORIDA

**CHRISTOPHER E. DORWORTH,**

    **Plaintiff,**

**v.**             Case No.: 2024-CA-001151

**JOEL MICAH GREENBERG, ANDREW
W. GREENBERG, SUE GREENBERG,
AWG, INC.,**

    **Defendants.**

_____

## <u>AMENDED COMPLAINT</u>

    COMES NOW the Plaintiff, Christopher E. Dorworth ("Dorworth"), by and through counsel, and for his Complaint against Defendants states and alleges as follows:

### <u>GENERAL ALLEGATIONS OF PARTIES, JURISDICTION AND VENUE</u>

    1.   Defendant JOEL GREENBERG is a convicted felon and current federal prisoner. He became one of the most corrupt politicians in Florida history by using his position as a county tax collector to steal more than One Million Dollars from the taxpayers of Seminole County through various schemes of cryptocurrency theft, bribery of public officials, and kickbacks. He also used the power of his office to engage in a child sex trafficking scheme.

    2.   Defendant Joel Greenberg is an individual and resident of Seminole County, Florida. He is the former elected constitutional officer and tax collector of Seminole County, Florida, and is presently an inmate incarcerated by the United States Bureau of Prisons. He is serving an 11-year sentence after pleading guilty to crimes including Underage Sex Trafficking, Wire Fraud, Stalking, Producing a Fake ID Card, and Bribery.

    3.   Plaintiff, Chris Dorworth, is an individual and resident of Seminole County, Florida. He is a former State Representative, Majority-Leader Designate and Speaker-Designate of the

Florida House of Representatives, and a prominent businessman. Plaintiff served as a lobbyist until March 2021. Plaintiff's practice as a lobbyist was negatively affected and rendered impracticable because of the actions of the Greenberg family, described herein.  Dorworth is a victim of many of Defendants' violations of law as set forth herein, having been threatened, extorted, defamed, falsely accused of crimes on fabricated evidence. Defendants tampered with evidence in order to compel Plaintiff to pursue (1) a pardon for Joel Greenberg's criminal activities and/or (2) termination or reassignment of the Assistant United States Attorney handling the investigation of Joel Greenberg.

4.      When Plaintiff refused to partake in these unlawful schemes, Joel Greenberg, with the active assistance of his family, falsely accused Plaintiff of involvement in, among other things, child sex trafficking and an illegal ghost candidate scheme, and Joel Greenberg attempted to frame Plaintiff for Joel Greenberg's own criminal actions involving the stalking and defamation of another individual, Brian Beute.

5.      Defendant ANDREW W. GREENBERG is an individual and resident of Seminole County, Florida. He is the father of Joel Greenberg and principal of AWG, Inc.

6.      Defendant SUE GREENBERG is an individual and resident of Seminole County, Florida. She is the wife of Andrew W. Greenberg and mother of Joel Greenberg.

7.      Defendants ANDREW W. GREENBERG, SUE GREENBERG, (collectively, "Greenberg family") are Joel's mother and father, and they and with and through the Defendant company they control, AWG, INC., have contributed financial support to and furthered Joel's criminal activities and assisted him in his various material attempts to evade or shift his culpability onto innocent third parties, such as the Plaintiff.

8.      Defendant AWG, Inc. is a Florida corporation with its principal address located in Forest City, Seminole County, Florida. AWG, Inc., is the business enterprise of the Greenberg

family.

9.      This is an action for damages exceeding fifty thousand dollars, exclusive of attorney fees, interest, and costs.  Plaintiff also reserves the right to submit record evidence of and for Court's allowance of amendment to seek further punitive damages in accordance with law.

10.      Plaintiff has retained undersigned counsel and is obligated to pay a reasonable fee for their services.

11.      This Court has general jurisdiction over the individual defendants pursuant to Section 48.193(1) and (2), Florida Statutes, because they reside in Florida and/or engage in business in the State of Florida.

12.      This Court has general jurisdiction over the business entity defendants pursuant to 48.193(2) because they are headquartered in Florida.

13.      Venue is proper in this Circuit pursuant to Section 47.011, Florida Statutes, because one or more Defendants reside in, or are headquartered in, Seminole County, Florida, and because the cause of action accrued in Seminole County, Florida as set forth throughout this Complaint.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

14.      Joel Greenberg is a predator, not just of women, as his conviction for human trafficking reflects, and not just for alleging that his political opponent was a child molester. Joel preyed on the taxpayers of Seminole County, enriching himself via criminal activities. When Joel Greenberg's illegal behavior was finally exposed, he then turned his predatory activity towards  former "friends," including Plaintiff.

15.      When Plaintiff refused to participate in a scheme to obtain a pardon for Joel Greenberg and refused to participate in removing or firing the Assistant United States Attorney investigating Joel, Defendants concocted unlawful and criminal schemes, and engaged in a pattern

of fabricating and tampering with evidence, and witnesses, bullying or defaming others or making false reports of crimes to aid in or cover up criminal, unethical and unlawful activity by Defendants.

16.     A relevant actor serving on behalf of Joel Greenberg's various criminal schemes during events herein is identified as "A.B." in official criminal proceedings (initially, a minor enlisted in the child sex-trafficking by Joel Greenberg) is an individual and, upon information and belief, is a resident of the State of Colorado.

17.     When Plaintiff Dorworth refused to participate in Defendants' schemes, Defendants engaged in an intentional, malicious and untruthful campaign against Plaintiff that disparaged Plaintiff's reputation, including the gross and unfounded allegation and false criminal reports that Plaintiff Dorworth engaged in inappropriate sexual behavior with a minor, and resulted in Plaintiff losing his employment and standing in the community. As a result of Defendants' actions, Dorworth lost his job, reputation, and more.

18.     As a result of Defendants' activities, Plaintiff Dorworth brought this and related federal claims litigation against Defendants.

19.     To aid his schemes and defeat civil liability to Plaintiff for Joel Greenberg's unlawful acts that damaged him, Joel Greenberg, in concert with his parents Andrew and Sue Greenberg, and family business entity AWG, Inc., fraudulently conveyed assets amongst and between themselves to dilute Joel's financial resources and make those financial assets unavailable to creditors and potential creditors, including Plaintiff Dorworth.

### *Joel Greenberg's Seeking of and Ending Professional Association with Dorworth*

20.     Plaintiff has worked since 2015 as a registered lobbyist for other tax collectors and governmental organizations entities. Plaintiff met Joel Greenberg in October of 2016, but was not any part of the campaign to elect Joel Greenberg as Tax Collector. Plaintiff did not contribute to the

campaign of Joel Greenberg or his Republican primary opponent in 2016.

21.     Joel Greenberg asked Plaintiff to become a lobbyist for the Seminole County  Tax Collector. In 2017, Dorworth and Ballard Partners registered to represent the Seminole County Tax Collector's Office.

22.     As his office's lobbyist, Joel Greenberg often demanded that Plaintiff threaten public officials with political consequences at the hand of Joel Greenberg if they did not do what he requested. Plaintiff always refused such demands, and was uncomfortable continuing in the role as lobbyist for the Seminole County Tax Collector; as a result, after the 2019 Florida legislative session, Dorworth withdrew as lobbyist for the Seminole County Tax Collector's Office. Dorworth refused Joel  Greenberg's later efforts to rehire him.

23.     After Dorworth withdrew from representation, neither Dorworth nor any of his family members had business or financial dealings with Joel Greenberg, the Seminole County Tax Collector's Office, or any other members of the Greenberg family.

### Joel Greenberg's Criminal Schemes and Convictions

24.     Joel Greenberg was initially indicted on two felonies but was aware of pending investigations that would ultimately lead to a total of 33 felony counts against him.

25.      Joel Greenberg was charged with those 33 federal criminal counts in his 2020 indictment – all felonies – 29 of which occurred during his time in office. The counts variously involved his methods of acquiring public office, abuse of public office and numerous criminal schemes conducted while in public office and relying upon official powers available through it.

26.     As part of Joel Greenberg's plea deal, 27 charges were dropped, and Greenberg plead guilty to the remaining six. Joel Greenberg plead guilty to the remaining six, admitted his guilt to the facts of these 6 criminal charges and was given an 11-year sentence in conviction for the

following crimes material to the issues in this case: Underage Sex Trafficking, Wire Fraud, Stalking, Producing a Fake ID Card, and Bribery

27.     Joel Greenberg <u>pled guilty</u> to the following crimes:

    a.     Sex trafficked a 17 year-old girl, A.B.;

    b.     Produced false identification cards using surrendered and outdated driver' licenses before they were destroyed

    c.     Impersonated another person using identification information and documents retained by the tax collector's office

    d.     Committed wire fraud in conducting his impersonation of Dorworth and stalking of Beute

    e.     Committed wire and mail fraud to stalk a political opponent and others, and unlawfully and anonymously accused a political opponent of having sex with an underage student, simultaneously trying to frame Dorworth for having done so.

    f.     Conspired to steal cryptocurrency that he then used to obtain his reelection as tax collector.

28.     Greenberg also committed additional uncharged felonies, such as perjury, false statements, and obstruction of justice, all of which negatively impacted Plaintiff.

29.     Joel Greenberg utilized his elected position as a constitutional officer and Seminole County Tax Collector to traffic an underaged woman for sex and elude detection.

30.     Joel Greenberg used customers' discarded licenses at the tax office to make fake licenses, which were used to facilitate commercial sex acts.

31.     Between fall 2018 to mid-2020, Joel Greenberg produced a false Puerto Rico

driver's license containing Greenberg's photo but the name and personal info of E.J.C.C.

32.     Joel Greenberg also used the state's driver's license system (D.A.V.I.D.) to obtain the photograph and license number of A.B. for sex trafficking purposes and also used D.A.V.I.D. to track Dorworth and his other political targets.

33.     Joel Greenberg wrote and mailed anonymous letters to the administration of Trinity Preparatory School about his political opponent, Brian Beute. Joel Greenberg contrived a false set of social media accounts to portray false complaints and false evidence that Beute was involved in school related sexual misconduct and racism.  Joel Greenberg contrived these in such a way as to make it appear that Dorworth were somehow responsible for creating the social media accounts in order to cover up his own culpability in fabricating them.

34.     Joel Greenberg was sentenced to eleven (11) years imprisonment for his crimes.

35.     The claims at issue chiefly relate to Joel Greenberg's efforts to cover up, evade or mitigate his responsibility for his crimes in order to influence or leverage Plaintiff as a pawn, or to make him a scapegoat to mitigate his own criminal sentence.  Greenberg's family materially participated in his efforts at evasion, cover up, mitigation and manipulation of facts to damage and influence Plaintiff to that end.

36.     In April of 2019, Joel Greenberg arrived unannounced at the personal residence of Dorworth with a lengthy subpoena for records from the United States Secret Service, and asked Plaintiff's advice as to who to hire for legal representation.

37.     Dorworth read the subpoena and advised Joel Greenberg to hire Vincent Citro "Citro", to represent him in the investigation.

### Greenberg's Parents Support of His Schemes and Efforts to Evade Convictions

38.     Without the resources of the Greenberg's parents, Joel Greenberg would have

lacked the resources to recruit women for sex as well as the governmental tools necessary to aid and abet his human trafficking operation.

39.     The Greenberg family's support of Greenberg's criminal and other unlawful schemes giving rise to Plaintiff's claims was negligent, grossly negligent and reckless, without care for the substantial injuries caused to others, including minors and innocent third parties such as Plaintiff caused by Joel Greenberg's pattern and capacity for wrongdoing that was well-known to them.

40.     The Greenberg family directly and indirectly supplied Joel Greenberg with $246,000 in funds to seek election to the Seminole County Tax Collector's Office.

41.     The Greenberg family's financial assistance accounted for over 97% of Joel Greenberg's campaign funding, and those funds resulted in Joel Greenberg being elected as tax collector, a position the Greenberg family knew Joel Greenberg was unqualified to fill, and one that provided Joel Greenberg with access to government resources and privileged, highly sensitive, personal identifying information about private citizens.

42.     The Greenberg family paid all fines and restitution necessary to minimize the prison sentence of Joel Greenberg, including $1.25 million to Seminole County, Florida, $590,000 to the federal government and $300,000 to Brian Beute and his family.

43.     As an elected official, Joel Greenberg was required to file financial disclosure forms. These forms reveal that the Greenberg family, through AWG, Inc., provided 100% of the financial support permitting Joel Greenberg's massive criminal schemes.

44.     The Greenberg family had long funded Joel Greenberg's sexual appetites through payments from AWG, Inc. Joel used these funds to pay women for sex, which payments to women on behalf of Joel Greenberg predated his election to Seminole County Tax Collector and continued

afterward.

45.     Upon information and belief, the Greenberg family underwrote a massive effort to falsely implicate Plaintiff and others in misconduct, either in retaliation for their failure to aid Joel Greenberg in escaping accountability, or in a misguided attempt to obtain a further reduction in his sentence for "cooperating" with the Government.

46.     Following Joel Greenberg's indictment, attorney Fritz Scheller who represented Joel Greenberg, openly advocated for authorities to prosecute as many other people as possible for the purpose of reducing his client's sentence. Scheller's representation and his "shadow investigation" were entirely funded by the Greenberg family, as Joel Greenberg had no financial resources of his own to pay Scheller.

47.     The Greenberg family also paid attorney David Webster in relation to Joel Greenberg's criminal prosecution. Upon information and belief, David Webster's main role related to Joel Greenberg's criminal prosecution was to contact journalists and obtain media coverage implicating the individuals, including Plaintiff, who the Greenberg family desired to target.

48.     The DOJ also noted in its indictment that Joel Greenberg "would and did use funds obtained from a family member" in attempting to cover up the cryptocurrency scheme, and upon information and belief, the unnamed family member is Andrew Greenberg and/or Sue Greenberg, as they have been consistently engaged in financially assisting Joel Greenberg in his unlawful campaign against Plaintiff and Joel Greenberg does not have the financial capability of writing a $200,000 check for such efforts.

49.     As the Greenberg family were aware of Joel Greenberg's ongoing criminal enterprise, they utilized resources derived from AWG, Inc., to sustain Joel Greenberg in office, allow him to escape detection for his crimes, and to mitigate his exposure, both during and after

his time in office.

50.     Once it became evident that Joel Greenberg would serve a prison sentence for his crimes, Joel Greenberg began seeking a federal pardon from then-President Donald J. Trump through persons, like Plaintiff, he believed would have the ability to obtain a pardon.

51.     Joel Greenberg first threatened Rebekah Dorworth, Plaintiff's wife, then threatened Plaintiff that unless Plaintiff undertook all necessary efforts to obtain a pardon from President Trump, Joel Greenberg would embroil Plaintiff in Joel Greenberg's criminal investigation. Greenberg told Rebekah Dorworth that "it would be better for everyone if I (Joel Greenberg) got a pardon."

52.     Joel Greenberg told Plaintiff that he and his family were "willing to pay any amount of money to Ballard Partners to get him (Joel Greenberg) pardoned and make this all go away."

53.     Plaintiff informed Greenberg that due to the nature of the crime, human sex trafficking of a minor, that Plaintiff could not accept that engagement or propose it to Ballard.

54.     After Plaintiff refused to participate in the pursuit of a pardon, the Greenberg family conspired with Joel Greenberg and others to defame Plaintiff and falsely accuse Plaintiff of crimes in order to leverage or influence him to accomplish their ends and/or retaliate against him.

55.     The Greenberg family also demanded, via threat of prosecution, that Plaintiff use all available means to have then-Assistant U.S. Attorney (and current U.S. Attorney) Roger Handberg fired from his position to stop the prosecution and conviction of Joel Greenberg.

### *Impact on Plaintiff*

56.     After Plaintiff refused to acquiesce to these additional demands, Joel Greenberg, in concert with the Greenberg family, conspired to defame Plaintiff and falsely accuse Plaintiff of crimes associated with Joel Greenberg.

57.     Though he had no other personnel issues or conflicts that would have led to his termination or resignation, once the false accusations against Plaintiff became publicly known, Plaintiff was required to leave his seven-figure employment at Ballard. Because of the nature of the accusations and scrutiny of the subsequent federal investigation risked harming Ballard's clients, Plaintiff's job was no longer feasible.

58.     Plaintiff was required to incur significant expense to rebut the false accusations of crime and other false allegations against him promoted by Joel Greenberg, personally, and through his attorney Scheller, Greenberg's family and others alleged herein.

59.     Each above-mentioned crime and unlawful act by Defendants victimized Plaintiff by causing a substantial financial loss and impacting his reputation and mental and emotional wellbeing.

60.     Plaintiff's substantial loss and injury is directly and proximately caused by the violations listed above.

## COUNT I
## ACTION FOR FALSE REPORT OF CRIMINAL CONDUCT
### (*Valladares v. Bank of Am. Corp*., 197 So. 3d 1 (Fla. 2016))

61.     Plaintiff alleges all General Allegations as part of this cause of action.

62.     Joel Greenberg recklessly, with gross negligence or intentionally and culpably made reports to law enforcement falsely accusing Plaintiff of criminal conduct.

63.     Joel Greenberg fabricated claims of Plaintiff's conduct that Grenberg could then report to authorities to damage and/or leverage Plaintiff for his own purposes.

64.     Variously, Joel Greenberg made false accusations about Dorworth to law enforcement officials and others in furtherance of his criminal schemes and to avoid or mitigate his culpability for them. Joel Greenberg:

a.    Falsely accused Plaintiff of involvement in a scheme to sex traffic minors;

b.    Falsely accused Plaintiff of sex with an underage woman (A.B.);

c.    Falsely accused Plaintiff of involvement in an attempt to obstruct justice through witness tampering;

d.    Falsely accused Plaintiff of Joel Greenberg's own attempted framing of a political opponent (Beute) for racist conduct and sex acts with minors (similar to those Joel Greenberg later accused Plaintiff and others of).

e.    Falsely accused Plaintiff of involvement in a 3d party ghost candidate scheme. The "ghost candidate" issue was an attempt to frame Plaintiff for financial support of a ghost candidate scheme being investigated by law enforcement. Joel Greenberg tried to fabricate a link between Plaintiff and the finances for that campaign. Plaintiff had made none of the purported money transfers for any such campaign via PayPal, CashApp, Venmo, etc. asserted in that regard.  Because of the absence of any evidence supporting Greenberg's claim, Joel Greenberg then accused Plaintiff of borrowing cash from a third party, which was also false.

65.    Because of Joel Greenberg's false accusations, Plaintiff was made the subject of an intensive investigation into Joel Greenberg's actual criminal associates. Plaintiff was ultimately not arrested and was cleared of any charges after cooperating in the investigation caused by Joel Greenberg's false claims.

66.    Plaintiff incurred substantial expense in legal representation and other costs associated with cooperating in the investigation and ensuring that his innocence was not tainted by the false reports Joel Greenberg had used to trigger that investigation.

67.     Plaintiff reserves the right to submit record evidence of and for Court's allowance of amendment to seek further punitive damages in accordance with law.

**COUNT II**
**ACTION FOR SPOLIATION**
**BY WITNESS TAMPERING, DESTRUCTION**
**& FABRICATION OF EVIDENCE**

68.     Plaintiff alleges all General Allegations as part of this cause of action.

69.     Joel Greenberg defamed Plaintiff in part by false reports to authorities of sexual involvement with A.B. and falsely associating Plaintiff with Joel Greenberg's own criminal schemes at the tax collector's office, among others.

70.     Joel Greenberg engaged in a grandiose scheme of extortion in attempts to secure a presidential pardon and the firing of the Assistant U.S. Attorney handling his criminal case.

71.      Joel Greenberg violated Florida law by obstructing, influencing, or impeding the federal investigation by falsely accusing Plaintiff of misconduct in an attempt to punish Plaintiff for refusing to help him, and causing investigators to include Plaintiff in the criminal investigation. Joel Greenberg was motivated by a desire to punish Plaintiff and by the possibility that he could obtain concessions on his own sentence if others he accused were ultimately prosecuted.

72.     Joel Greenberg spoiled and destroyed critical evidence that substantially impaired Plaintiff's ability to prove Joel Greenberg's defamation against him, and to prove his innocence of any involvement in Joel Greenberg's schemes.

73.     Joel Greenberg's spoliations of such evidence included, but were not limited to:

a.      Tampering with a witness, A.B. to induce her to testify falsely in an official proceeding and make baseless demands against Plaintiff by offering her pecuniary benefit or gain and paying for her lawyer in

Joel Greenberg's criminal matter;

b.   Tampering with a witness A.B. by misleading her with a hope of a baseless monetary settlement with Plaintiff if she testified falsely in an official proceeding to support Joel Greenberg's scheme to evade or mitigate his crimes.

c.   Threatening Plaintiff that Joel Greenberg would falsely implicate him in Joel Greenberg's crimes if Plaintiff did not act to assist Joel Greenberg in evading responsibility for them.

d.   Negating Plaintiff's own potential testimony against Joel Greenberg, as Plaintiff was viewed as a potential witness to some of Joel Greenberg's crimes involving the Seminole County tax collector's office.

74.   Joel Greenberg had a legal duty pursuant to §914.22(1)(f), Fla. Stat. not to induce others such as A.B. to testify falsely so as to substantially impair Plaintiff's ability to prove his claims of defamation that the reports regarding A.B. and reports of any involvement by Plaintiff in Joel Greenberg's sex-trafficking, public corruption and financial crime schemes were false.

75.   Greenberg's parents and their company had a legal duty not to contribute, in a reckless or grossly negligent manner, materially and financially to Joel Greenberg's inducement of false testimony that substantially impaired Plaintiff's ability to prove his claims of defamation regarding reports of any involvement by Plaintiff in Joel Greenberg's sex-trafficking, public corruption and financial crime schemes.

76.   Joel Greenberg's witness tampering by financial inducements destroyed the value of A.B.'s evidence to prove and vindicate Plaintiff's defamation claim and innocence of crimes because

she was paid by Joel Greenberg to help him falsely portray those nonexistent crimes. Truthful and untainted testimony by A.B. would have proved Plaintiff's defamation claim that Joel Greenberg's reports of his involvement in Joel Greenberg's sex-trafficking scheme were false.

77.     Because A.B. has exposed herself to criminal liability as a result of Joel Greenberg's procurement of her false testimony and official statements to authorities, she could not recant without risk of criminal liability in doing so. Her present false testimony implicating Plaintiff is worthless because Greenberg tainted it with his financial inducement and her exposure to criminal liability for its falsity; permanently and irrevocably making her honest testimony unavailable to Plaintiff.

78.     Plaintiff was damaged in the value of his defamation claim and in the fees he spent in litigating it in federal court by Joel Greenberg's destruction of evidence by witness tampering.

79.     Upon information and belief, at Joel Greenberg's request, A.B. was compensated by provision of an attorney and otherwise by the Greenberg family to provide false testimony for compensation in furtherance of Joel Greenberg and his family's extortion of, and retaliation against, Plaintiff.

80.     Once Joel Greenberg's unlawful activity was known to all involved and the entire world, the Greenberg family acted unlawfully to assist witness tampering and fabrication of false evidence to falsely accuse and to defame Plaintiff.

81.     Plaintiff also reserves the right to submit record evidence of and for Court's allowance of amendment to seek further punitive damages in accordance with law.

## <u>COUNT III</u>
## DEFAMATION

82.     Plaintiff alleges all General Allegations as part of this cause of action.

83.     Joel Greenberg defamed Plaintiff to law enforcement and to numerous individuals by statements and leaks to media outlets, more specifically, he:

a. Falsely accused Plaintiff of involvement in the scheme to sex traffic minors;

b. Falsely accused Plaintiff of sex with an underage woman (A.B.);

c. Falsely accused Plaintiff of involvement in an attempt to obstruct justice through witness tampering;

d. Falsely accused Plaintiff in a "ghost candidate" scheme involving the 2020 Florida Senate District Nine election and incurred campaign finance violations in furtherance of the scheme;

e. Falsely impersonated Plaintiff in communications to the employer of Joel Greenberg's political opponent and creating social media accounts made to suggest Plaintiff created them.

84. Joel Greenberg also falsely alleged Plaintiff had an extramarital affair. On two separate occasions during his Jailhouse interview with prosecutors, Joel Greenberg suggested Plaintiff was having an extramarital affair with his female attorney. These statements became part of Joel Greenberg's discoverable file with the Florida Department of Law Enforcement and, as a result of discovery requests in other cases, have been placed into the public domain.

85. At no time did Dorworth and his attorney have an extramarital affair.

86. Defendant Joel Greenberg provided financial remuneration to A.B. for the purpose of defaming Plaintiff.

87. Defendants Andrew Greenberg, Sue Greenberg, and AWG, Inc., each possessed knowledge of Joel Greenberg's defamation.

88. Defendants each provided substantial assistance to Joel Greenberg and A.B. by providing financial resources to enable defamatory statements against Plaintiff and others.

89.     Defendants provided these resources with the knowledge and intent that they would be used to harm Plaintiff and others.

90.     As a result of Defendants' aiding and abetting defamation, Plaintiff has been significantly injured, including, but not limited to, suffering substantial financial loss and damage to his reputation and livelihood.

91.     Plaintiff is entitled to a judgment for compensatory damages, costs of suit, and all other relief the Court deems just and proper.

92.     Plaintiff also reserves the right to submit record evidence of and for Court's allowance of amendment to seek further punitive damages in accordance with law.

## COUNT IV
## CONSPIRACY

93.     Plaintiff alleges all General Allegations as part of this cause of action.

94.     Defendants conspired to create, finance, and disseminate false information and false accusations to law enforcement officials about Plaintiff and to spoliate, tamper with witnesses or otherwise destroy or fabricate evidence.

95.     Defendants agreed to, and knowingly did, disseminate or assist in disseminating false information to officials about Plaintiff including false charges to law enforcement officials, and to spoliate, tamper with witnesses or otherwise destroy or fabricate evidence.

96.     Each Defendant was aware of an overall plan to harm Plaintiff's reputation, business, and livelihood.

97.     Each Defendant acted to further the plan to harm Plaintiff's reputation. Defendant Joel Greenberg facilitated payments to A.B. of funds provided by AWG, Inc. and or the Greenberg family, to repeatedly defame Dorworth.

98.     Defendants Andrew Greenberg, Sue Greenberg, and AWG, Inc., each possessed knowledge of Joel Greenberg and A.B.'s defamation.

99.     Defendants each provided substantial assistance to Joel Greenberg by providing financial resources to enable the defamatory actions, among other actions.

100.    Defendants Andrew, Sue Greenberg, and AWG, Inc. also paid David Webster and Fritz Scheller to further perpetuate the defamatory statements about Plaintiff to members of the press.

101.    Defendants provided these resources with the knowledge and intent that they would be used to harm Plaintiff, among other things.

102.    As a result of Defendants' aiding and abetting defamation, Plaintiff has been significantly injured, including, but not limited to, suffering a substantial financial loss and damage to his reputation and livelihood.

103.    As a direct and proximate result of the conspiracy, Plaintiff has been significantly injured, including, but not limited to, suffering a substantial financial loss and damage to his reputation and livelihood.

104.    Defendants intentionally, willfully, and wantonly conspired and acted grossly negligent or recklessly in concert with one another to disregard and to injure the rights of Plaintiff.

105.    Plaintiff is entitled to a judgment for compensatory damages, costs of suit, and all other relief the Court deems just and proper.

106.    Plaintiff is entitled to a judgment for compensatory damages, costs of suit, and all other relief the Court deems just and proper.

107.    Plaintiff also reserves the right to submit record evidence of and for Court's

allowance of amendment to seek further punitive damages in accordance with law.

## COUNT V
## ACTION FOR FRAUDULENT TRANSFER
## & REMEDIES PURSUANT TO §726.108

108.     Plaintiff alleges all General Allegations as part of this cause of action.

109.     This is an action to avoid and recover a fraudulent transfer pursuant to § 726.106(1)

of the Florida Statutes. Section 726.106(1), Florida Statutes, provides:

> A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

110.     After Joel Greenberg's misconduct came to light, the Greenberg Family sought to

conceal the total assets of Joel Greenberg.

111.     As an elected official in Florida, Joel Greenberg is responsible for filing a Form 6,

full and public financial disclosure, with the Florida Commission on Ethics. The Form 6 is a

statutorily mandated disclosure for elected officials in Florida that receive compensation for their

service that must be filed on an annual basis.

112.     Greenberg filed financial disclosures for 2016, when he was first elected, 2017,

2018, 2019 and 2020.

113.     On these disclosures, Greenberg was obligated to disclose his income, his net worth,

assets, and liabilities. It is both an ethical and criminal violation to lie or misrepresent information

on a Form 6, which requires all assets valued at over $1,000 to be individually listed.

114.     According to these statutory disclosures, nearly all of Joel Greenberg's primary

sources of income were AWG, Inc. and nearly all his wealth is derived from AWG, Inc., including

stock ownership and income.

115.    On his Form 6's filed from 2016-2020, Joel Greenberg listed his net worth at between $6,208,800 and $5,857,135, and well over 90% of that net worth was in $5,500,000 of AWG Inc. stock.

116.    On his Form 6 filed in 2016 Joel Greenberg listed his income as $400,000, exclusively from AWG. Inc.

117.    On June 9, 2020, three days before his indictment was unsealed and he was arrested, Joel Greenberg filed his Form 6 for the 2019 year and stated that he earned $140,263 from Seminole County and $391,776 from AWG, Inc.

118.    On June 23, 2020, the Department of Justice unsealed an indictment against Joel Greenberg, his home was raided at dawn, and he was arrested.

119.    After posting bail, Joel Greenberg resigned as Seminole County Tax Collector.

120.    On October 2, 2020, Joel Greenberg submitted an amended Form 6 for 2019. In which he retroactively stripped both assets and income. Joel Greenberg's stated net worth, as of December 31, 2019, decreased from $5,857,135 to $322,030; his stated ownership of AWG, Inc. stock was removed, and his stated income from AWG was retroactively reduced from $391,776 to $175,000.

121.    On his various accounts listed on the Form 6 and amended Form 6, Joel Greenberg's cash in a Merrill Lynch bank account was reduced from $224,000 to zero and his cash in a Fairwinds account was reduced from $52,000 to $18,030.

122.    In his other Form 6 assets, his Jewelry, Furniture and Household Items listed for 2019 were reduced in the amendment, from $85,500 to $60,000, and his primary residence, with a value of $624,000 and a mortgage of $480,000, and his listed vehicles were all changed.

123.    The Greenberg Family materially assisted in the disposition of the assets Joel Greenberg formerly had reported from 2016 to 2020 before he was indicted and arrested in order to defraud Joel Greenberg's creditors, including Plaintiff; the $5.5 million of AWG, Inc. stock and $251,513 that retroactively disappeared in an amended report was a ham-handed fraudulent effort to conceal Joel Greenberg's assets from his creditors.

124.    The reductions demonstrate that Defendants had control over the resources allocated to Joel Greenberg and intentionally engaged in fraudulent conveyances of those resources to hide those resources from creditors and potential creditors.

125.    Upon information and belief, in an attempt to shield his assets from liabilities arising from his criminal misconduct and liabilities toward his victims, the reduction in assets held by Joel Greenberg between the June 9, 2020 Form 6 and the amended Form 6 on October 2, 2020 was accomplished by transfer and/or conveyance of those assets and/or interests from Joel Greenberg to Andrew Greenberg, Sue Greenberg and AWG, Inc.

126.    Joel's amended Form 6 for 2019 did not accurately reflect his finances as of the end of 2019, but rather reflected his fraudulent transfers after his indictment.

127.    Joel Greenberg relinquished assets, including but not limited to his ownership interest in and distributions from AWG, Inc. to Andrew and Sue Greenberg and/or to AWG, Inc.

128.    At the time of the alleged transfers and/or conveyances, Defendants knew and/or reasonably should have believed that those transfers and conveyances were fraudulent and/or that Joel Greenberg had debts and/or would incur debts beyond his ability to pay as those debts became due.

129.    Seminole County issued a demand to Defendants for compensation for Joel Greenberg's misconduct on the basis that the facts set forth in this Complaint give rise to, among

other things, a fraudulent transfer, and the Defendants negotiated this debt and the transfer issue with the Seminole County Tax Collector for several months.

130.    Defendants Andrew Greenberg, Susan Greenberg, and AWG, Inc. then arranged for payment of seven-figure restitution sums to Seminole County on behalf of Joel Greenberg, six-figure payments to the Federal Small Business Administration to avoid further criminal liability, and a six-figure restitution payment to Brian Beute.  In doing so, Defendants have already acknowledged and materially admitted their participation in and liability for fraudulent transfer.

131.    The transfers and/or conveyances to and amongst the Defendants were made with the "actual intent to hinder, delay, or defraud any creditor of the debtor," including but not limited to facts demonstrating:

    a.    The transfer or obligation was to an insider.

    b.    The debtor retained possession or control of the property transferred after the transfer.

    c.    The transfer or obligation was concealed.

    d.    Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.

    e.    The transfer was of substantially all the debtor's assets.

    f.     The debtor removed or concealed assets.

    g.    The value of the consideration received by the debtor was not reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.

    h.    The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

        i.        The Transfer occurred shortly before or shortly after a substantial

debt was incurred.

132.    Defendant Joel Greenberg received less than reasonably equivalent value in exchange for the transfer of nearly or substantially all (>90%) of his assets and monies to Defendants Andrew Greenberg, Sue Greenberg and AWG, Inc.

133.    Defendant Joel Greenberg was insolvent at the time of the transfer, or became insolvent as a result of the transfer.

134.    Plaintiff is authorized to recover the portion of assets transferred due and owing under any Final Judgment.

**GENERAL PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Chris Dorworth respectfully requests an order of this Court entering judgment in his favor on each and all of his claims and awarding the following relief and remedies:

       a.     Compensatory damages in an amount to be determined at trial;

       b.     If established of record as required by law and if permitted to be pleaded by the Court, such punitive or exemplary damages as allowed according to law;

       c.     Avoidance of the transfer of Joel Greenberg's assets to the extent necessary to satisfy these claims;

       d.     Attachment of  AWG, Inc. stock or other provisional remedy against the asset transferred or other property of the transferee;

       e.     Injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

       f.     Appointment of a receiver to take charge of the asset transferred or of other property of the transferee;

       g.     Such other relief as the circumstances may require.

       h.     Reasonable attorney fees;

i.      Costs and expenses incurred in this litigation; and

j.      Such other and further relief as the Court deems just and warranted.

## JURY TRIAL DEMAND

PLAINTIFF DEMANDS TRIAL BY JURY as to all counts so triable.

Respectfully Submitted,

*/S/ George R. Mead*
George R. Mead, II
Florida Bar No. 096490
Charles F. Beall, Mr.
Florida Bar No. 66944
R. Alex Andrade
Florida Bar No. 111337
emead@mhw-law.com
cbeall@mhw-law.com
aandrade@mhw-law.com
tstokes@mhw-law.com
kalbini@mhw-law.com
hmalone@mhw-law.com
MOORE, HILL & WESTMORELAND, P.A.
350 West Cedar Street
Maritime Place, Suite 100
Pensacola FL 32502
Telephone: (850) 434-3541
*Counsel for Plaintiff, Christopher E. Dorworth*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was filed electronically via the Court's

E-Filing Portal on this 9th day of September, 2024. The submission will be electronically served to

all parties pursuant to Florida Rules of Judicial Administration.

*/S/ George R. Mead*
George R. Mead, II