UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CHRISTOPHER R. DORWORTH,
    Plaintiff,                                 Case No.: 6:23-cv-00871-JA-DCI

v.

JOEL MICAH GREENBERG, ANDREW W.
GREENBERG, SUE GREENBERG, ABBY
GREENBERG, AWG, INC., GREENBERG
DENTAL ASSOCIATES, LLC, GREENBERG
DENTAL & ORTHODONTICS, P.A., GREENBERG
SPECIALTY GROUP, LLC, and A.B.,
    Defendants.
_____/

**DEFENDANT, JOEL GREENBERG'S, MOTION FOR ENTITLEMENT
TO ATTORNEY'S FEES AND SANCTIONS AGAINST PLAINTIFF,
CHRISTOPHER DORWORTH**

    The Defendant, JOEL GREENBERG, by and through his undersigned counsel, hereby moves this Honorable Court for his attorney's fees and sanctions. Mr. Greenberg's claim is based on 1) the Florida RICO statute; and (2) the Court's inherent powers.

### *STATEMENT OF FACTS*

#### *Background*

    On August 19, 2020, the Grand Jury returned its Second Superseding Indictment against Joel Greenberg charging him with various criminal offenses including sex trafficking of a then seventeen-year-old high school student with the

1

initials A.B. *See United States v. Greenberg*, Case No. (M.D. Fla. 2021), at DE 51.[1] On May 17, 2021, Mr. Greenberg pled guilty pursuant to a plea agreement to sex trafficking, identity theft, wire fraud, and conspiracy. *See* Docs. 105-106. Mr. Greenberg's plea agreement contained a substantial assistance provision that required him to cooperate with the Government. *See* Doc 105 at 9-10. The agreement further provided that Mr. Greenberg was required to be truthful and was subject to prosecution if he lied. *Id.* Furthermore, the plea agreement specified that none of the information Joel Greenberg provided pursuant to any proffers with the Government could be used against him to either raise his sentence or bring additional charges. *Id.* at 11.

The Government's investigation of Greenberg's sex trafficking crime was not limited to the Defendant's proffer. Rather, the United States Attorney's Office for the Middle District of Florida, as well as the Federal Bureau of Investigation and Untied States Secret Service, conducted an investigation that included, among other things, obtaining proffers from other defendants and interviewing witnesses including the young women entangled in the sex scheme. Such witnesses included young women, including young women with the initials KM, BG, KL, as well as the minor victim AB. KM, BG, and AB, in addition to other witnesses, also provided Grand Jury testimony.

During its investigation, the Government obtained documentary evidence

---

[1] The docket entries pertaining to Joel Greenberg's federal criminal case will utilize the abbreviation "DE." The docket entries pertaining to the instant matter will use the abbreviation "Doc."

including telephone records, text messages, emails, and financial evidence. In regard to the financial records, the Government obtained credit card and bank records, as well as evidence of Venmo payments to the young women from Greenberg and others. Based on the Government's investigation it found the following facts:

> Greenberg paid for commercial sex acts. In particular, Greenberg was involved in what are sometimes referred to as "sugar daddy" relationships where he paid women for sex, but attempted to disguise the payments as "school-related" expenses or other living expenses. Greenberg had an online account at a website that advertised itself as a place where "sugar daddies" could find "sugar babies" (referred to herein as the "Website"). Greenberg used an account at the Website to identify women whom he later paid to engage in commercial sex acts with him and others.
>
> . . .
>
> One of the individuals who Greenberg paid for commercial sex acts was a minor under the age of 18 for part of the time when Greenberg paid her to engage in commercial sex acts with him and others (referred to herein as the "Minor"). Greenberg met the Minor over the Internet on the Website.
>
> . . .
>
> After that, Greenberg and the Minor met at hotels in the Middle District of Florida, often with others, at which Greenberg and the Minor engaged in commercial sex acts. Greenberg engaged in commercial sex acts with the Minor in the Middle District of Florida at least seven times when she was a minor. During these commercial acts, Greenberg often would offer and supply the Minor and others with Ecstasy, which Greenberg would take himself as well. Oftentimes, Greenberg would offer to pay the Minor and others an additional amount of money to take Ecstasy. Greenberg also introduced the Minor to other adult men, who engaged in commercial sex acts with the Minor in the Middle District of Florida.

> Greenberg's payments for commercial sex acts with the Minor involved several facilities and instrumentalities of interstate commerce. For example, Greenberg and the Minor used their cell phones in the Middle District of Florida to call or text each other on or about April 24, 2017, June 4, 2017, June 5, 2017, June 6, 2017, June 7, 2017, June 8, 2017, June 9, 2017, June 17, 2017, June 22, 2017, June 23, 2017, June 24, 2017, June 25, 2017, June 26, 2017, June 28, 2017, June 30, 2017, **July 14, 2017, July 15, 2017**, July 23 2017, July 24, 2017, and July 30, 2017, many of which calls or texts were for the purpose of scheduling times to meet to engage in commercial sex acts.
>
> . . .
>
> At times, Greenberg used his access to the Florida Driver and Vehicle Information Database (known as "DAVID") to look up and investigate his sexual partners. Those searches were not authorized and violated the federal Driver's Privacy Protection Act, and they had nothing to do with any legitimate activities of the Tax Collector's Office. One of the individuals whom Greenberg searched for in the DAVID system was the Minor. On or about September 4, 2017 at 1:29 p.m., Greenberg ran a search for the Minor, because he had reason to believe that the Minor was under the age of 18.

*Greenberg Plea Agreement*, DE 105 at 28-31 (emphasis added).

Based on Joel Greenberg's cooperation, the Government moved for a 10-level guideline departure. *See* DE 154. The Government's motion stated that that Mr. Greenberg provided truthful testimony to the Government. *Id*. Taking the Government's motion into account, the Court sentenced Mr. Greenberg to 132 months in the Bureau of Prisons. DE 183.

### *Dorworth's Complaint*

After the Plaintiff filed his initial Complaint in state court, the action was removed to the Middle District of Florida on May 10, 2023. Over the course of 115 pages and 918 paragraphs, the Complaint raised numerous claims against the

4

Defendants including five various claims under the Federal Racketeer Influenced Corrupt Organizations Act (RICO), as well as three state claims based on defamation and civil conspiracy. Doc. 1-1 at 102-114. Numerous paragraphs asserted allegations that were not relevant to any of the claims but rather designed to cast aspersions on Joel Greenberg beyond his federal crimes. For example, paragraphs 57-62 of the Complaint described Joel Greenberg's adolescent struggles with attention deficit disorder and Tourette's Syndrome. *Id.* at ¶¶ 57-62. In a similar way, paragraphs 64 and 66 detailed Greenberg's failures in school. *Id.* at ¶¶ 64; 66.  The Amended Complaint also directed its contempt to the other defendants. It provided gratuitous allegations concerning alleged venereal diseases, the minor victim's adult film career, as well as suggesting that the Defendant Greenberg Dental was a racist pill mill.[2] *See* Doc. 1-1 at ¶¶ 19, 260, 270, 368, 370-71, 447, and 472.

Regardless of the attacks on Joel Greenberg (unquestionably an easy mark) and the other Defendants, the Complaint descended into the implausible, if not the ludicrous – concocting a theory that the Defendants, including the minor victim and a dental company, formed a RICO Enterprise to falsely implicate the Plaintiff.

---

[2] Stripping away the rhetorical niceties that underpin most federal pleadings, the Amended Complaint is suffused with the Plaintiff's inescapable venom for the Defendants. But as this motion establishes, the drafting of a federal pleading in a venomous, if not spiteful, spirit has generated a Complaint that disregards the factual in favor of the speculative.

*See*, *e.g*, Doc. 1 at ¶¶ 4, 29. Without any basis in fact or law, the Amended Complaint alleged:

> Upon Information and belief, the Greenberg Racketeering Enterprise underwrote a massive effort to falsely implicate Plaintiff and others in misconduct, either in retaliation for their failure to aid Greenberg in escaping accountability, or in a misguided attempt to obtain a further reduction in his sentence for "cooperating' with the Government.

Doc 1 at ¶ 31.

Rather than abandoning the excesses of the initial Complaint, the Plaintiff perpetuated the nonsense by filing an Amended Complaint on August 8, 2024. *See* Doc. 62. To make matters worse, the new pleading incorporated the allegations of the first complaint. *See id*. at ¶ 348. It also incorporated the four indictments returned in Joel Greenberg's case. *Id*.

Like the first Complaint, the Amended Complaint raised state conspiracy and defamation claims against Joel Greenberg. Doc. 62. While it kept a single Federal RICO claim against Joel Greenberg, the Amended Complaint also added substantive and conspiracy Florida RICO claims against Joel Greenberg. *See id*.[3] Plagued by a non-existent evidentiary basis, the Amended Complaint consistently relied on the Plaintiff's "information and belief" in 45 separate paragraphs.[4] And like the first Complaint, the Amended Complaint contended that over a three-year

---

[3] At its denouement, the Amended Complaint is verified by the Plaintiff and inexplicably by his spouse Rebekah Dorworth, who is not a Plaintiff. As Ms. Dorworth's deposition established, she verified the Amended Complaint, notwithstanding her lack of knowledge of multiple allegations in the pleading. *See* Doc. 181-1 at 308-309.

[4] *See* Doc. 62 at ¶¶ 9, 26, 27, 29, 105, 116, 120, 121, 122, 142, 148, 151, 152, 153, 154, 161, 168, 173, 177, 212, 213, 228, 243, 275, 300, 305, 308, 312, 313, 314, 315, 325, 327, 349, 353, 356, 357, 358, 368, 369, 370, 374, 376, 392, and 397.

period, the Defendants colluded and conspired through a RICO enterprise to falsely implicate the Plaintiff in child sex trafficking, and political "ghost schemes" to lessen the penalties in Joel Greenberg's criminal case or to help AB pursue civil claims against the Plaintiff and Matt Gaetz. *See* Doc. 62 at ¶¶ 8, 155. The Plaintiff further speculated that this "vast scheme" was financed by Andrew and Susan Greenberg, as well as the Greenberg Dental entities. *See id.* at ¶¶ 93-94. In the absence of evidence, the Plaintiff's ire embraced the slanderous:

> When the Greenbergs were unable to extort and bribe Joels way out of trouble, Defendants turned to numerous acts of perjury, lies, obstruction, false statements, witness tampering, and bribery to induce state and federal prosecutors to falsely charge Plaintiff and other prominent and former government officials with crimes, all in an attempt to mitigate Joel Greenberg's prison sentence, exact revenge on Dorworth and others for failing to assist their improper activity and for other improper purposes.

Doc. 62 at ¶ 6.

Concerning the Defendants Abby Greenberg Joel Greenberg, and the minor victim AB, the Amended Complaint asserted that these defendants "agreed that they would provide false information to the authorities and the federal grand jury regarding Dorworth, Matt Gaetz and others." *Id.* at ¶ 123. And further argued that Joel Greenberg directed "A.B. and her friend" to falsely implicate the Plaintiff, Dorworth, and Gaetz in their Grand Jury testimony. *Id.* at ¶ 120. Turning to Joel Greenberg's proffers, the Plaintiff alleged upon his information and belief that Joel Greenberg lied to federal authorities during most if not all of these proffers. *Id.* at ¶ 142.

7

In sum, these were audacious, but implausible claims. As such, they are the product of conjecture, rather than evidence, and they of course depend on a series of preposterous premises. That is, that a minor victim would come to an agreement with both her perpetrator and his ex-wife to commit crimes. That as part of this scheme, the minor victim would implicate her perpetrator Joel Greenberg in sex crimes before mitigating his sentence through false testimony. It asserts the premise that AB's friend would also agree to commit perjury. It requires the trier of fact to accept the proposition that Joel Greenberg would consistently lie in his proffers with the Government, in the face of its corroborating evidence, thus exposing him to greater sentencing exposure and additional criminal liability. *See*, *e.g*, 18 U.S.C. § 1001 (criminalizing false statements to federal law enforcement). Finally, one of the Amended Complaint's most egregious tenets is the notion that the corporate defendants, as well as Andrew and Susan Greenberg, would both participate in and fund "numerous acts of perjury, lies, obstruction, false statements, witness tampering, and bribery . . . " Doc. 62 at ¶ 6.

Not surprisingly, because the Amended Complaint is founded on a series of irrational premises, there is no evidence to support it. The Plaintiff admitted this fact in stating that it "is **likely** to have evidentiary support after a reasonable opportunity for further investigation, discovery and public record requests, some of which is currently pending." Doc. 62 at ¶ 41 (emphasis added). And therein lies the rub. In the morass of all the speculative allegations made in the Amended Complaint, as expanded by the incorporated four indictments and the 115-page

8

initial Complaint, this admission finally provided a rare and clear statement of fact. That is, the Plaintiff's action was filed and perpetuated without adequate evidentiary support. Consequently, the Amended Complaint's insufficient facts never raised it beyond a speculative level – a fatal deficiency that the Plaintiff hoped to cure through the discovery process.[5]

At her deposition, Rebecca Dorworth admitted, before her attorney's intervention, that the Dorworths' strategy was to verify a Complaint with the hope that the discovery process would provide evidence supporting their claims. *See* Doc. 181-1 at 309:13-18. But a strategy predicated on hope rather than a good-faith factual basis is an unsuitable, if not deluded, approach to prosecuting a federal action. This is especially true since the discovery process failed to produce any evidence which raised the Plaintiff's claims above mere speculation and implausibility.

### *The Discovery Process*

During the 16 months of this litigation, the Defendants collectively produced over 120,000 documents, answered some 40 separate discovery requests and sat through approximately 60 hours of depositions. Notwithstanding the scope and breadth of the Plaintiff's investigation, he failed to find a scintilla of evidence supporting his remarkable claim that the Defendants engaged in a vast RICO conspiracy scheme to falsely implicate him.

---

[5] As a master class in speculation, the Amended Complaint runs afoul of the *Twombly* standard that governs federal complaints. *See Bell Atlantic v. Twombly*, 550 U.S. 544 (2007).

Moreover, the Plaintiff failed to find evidence that Joel Greenberg and Abby Greenberg agreed with the minor victim to engage in the crimes of lying to federal authorities and the Grand Jury. Similarly, there was no evidence that Joel Greenberg encouraged AB and her friend to lie to the Grand Jury. And in the face of the Government's written confirmation of Joel Greenberg's truthfulness, the Plaintiff could not uncover any facts that the former consistently lied in his proffers. Finally, despite his hope and speculation, Plaintiff never found evidence that the Defendants came to any sort of agreement or participated in a vast RICO enterprise to falsely implicate Dorworth and others.

Instead, the discovery taken in this case generated evidence that disproved the Plaintiff's claims. Moreover, during the litigation, the Plaintiff offered sworn written and oral testimony that was patently false. *See List of Plaintiff's Falsehoods,* filed under seal as Exhibit 27 to Defendant's Motion for Entitlement to Attorneys' Fees, Costs and Sanctions (Doc. 194). Such falsity was established by multiple witnesses and documentary evidence. *See generally* Ex. 27; *see also* Exhibits 1, 2 & 4, filed under seal to Defendants' Motion for Entitlement to Attorneys' Fees, Costs and Sanctions (Doc. 194).

## Memorandum of Law

Against this backdrop, Joel Greenberg moves for his attorney fees based on two grounds. First, Mr. Greenberg is entitled to fees under the Florida Rico Statute since the Plaintiff has brought his state RICO claim without facts or legal support.

Second, Mr. Greenberg is entitled to an award of the attorney fees under the inherent power of this Court.

### I. Joel Greenberg is entitled to fees under Florida's RICO statute

Count IV of the Amended Complaint asserted a claim for Florida law RICO conspiracy against "all individual Defendants." Doc. 62 at 54–55. Pursuant to § 772.104(3) of the Florida Statutes, "[a] successful defendant in a civil RICO action can recover fees when the RICO claim is 'without substantial fact or legal support.'" *Royal Palm Village Residents, Inc. v. Slider, Inc.*, No. 8:19-CV-874-CEH-SPF, 2021 WL 4452898, at *1 (M.D. Fla. Sept. 29, 2021)(citations omitted)  A defendant can make this showing even "after a plaintiff's voluntary dismissal of the claim." *Id.* at *5. Concerning the "without substantial fact or legal support" standard, Florida courts have applied the "less stringent[ly]" to "discourage frivolous Rico claims … because the stigma and burden of defending such claims is so great." *Hartford Ins. of the Midwest v. Miller*, 681 So. 2d 301, 302 (Fla. 3d DCA 1996).

Thus, the Defendants' burden is far lower than the burden attached to motion brought under Fed, R. Civ. P. 11 or its Florida analogue. *See Miller*, 681 So. 2d at 302 (explaining that § 772.104(3)'s standard is "much less strict than that contained in Florida Statute section 57.105(1)"). Accordingly, a defendant need only show that Dorworth's lacked sufficient support "to take the question to the jury." *See State v. Morales*, 460 So. 2d 410, 415 (Fla. 2d DCA 1984) (quotation omitted) (defining "substantial evidence"). Such a showing is apparent since the Plaintiff's Amended Complaint was predicated on speculation rather than evidence

11

and the 16-month discovery process only managed to produce evidence contradicting Dorworth's claims.

Notably, the Plaintiffs' voluntary dismissal of his Amendment Complaint on September 5, 2022 (Doc. 185), does not foreclose Greenberg's request for attorney fees. Indeed, the Court has jurisdiction to consider this motion. *See Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 395–96 (1990) (explaining that "it is well established that a federal court may consider collateral issues after an action is no longer pending," including awarding costs and attorney's fees); *Shelton v. Schar*, No. 5:17-CV-86-OC-PGBPRL, 2018 WL 3636698, at *1–3 (M.D. Fla. Apr. 23, 2018) (citing *Cooter & Gell* and rejecting argument that the Court lacked jurisdiction to consider a post notice of voluntary dismissal motion for fees under § 772.104(3)). Separately, as a matter of Florida law, Defendants can make the requisite showing even "after [Dorworth's] voluntary dismissal of the claim." *Royal Palm Vill.*, 2021 WL 4452898, at *5.

"Courts look with particular scrutiny at claims for a civil RICO, given the statute's damaging effects on the reputations of individuals alleged to be engaged in RICO enterprises and conspiracies." *See Purchase Real Estate Grp., Inc. v. Jones*, 05 CV 10859, 2010 WL 3377504, at *6 (S.D.N.Y. Aug. 24, 2010) (concluding particular scrutiny is required for civil RICO claims to ensure that the RICO statute is used for the purposes intended by Congress) Accordingly, "courts should strive to flush out frivolous RICO allegations at an early stage of the

12

litigation.'" *Flexborrow LLC v. TD Auto Finance LLC*, 255 F.Supp. 3d 406, 414 (E.D.N.Y. 2017).

To prove a RICO conspiracy, a plaintiff must prove that the defendants either "agreed to the overall objective of the conspiracy" or "agreed to commit two predicate acts." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293 (11th Cir. 2010).[6] After extensive discovery over a 16-month period, the Plaintiff has failed to produce any evidence supporting his RICO claim.

A critical aspect of this case is that A.B. and others attended one of multiple parties at Dorworth's home that involved "alcohol; cocaine; middle-aged men; and young attractive females." Doc. 183-2 ¶ 24; Ex. 2 ¶¶ 16, 19; *see also* Exhibit 3, attached hereto. The Plaintiff's asserted that Joel Greenberg made false statements regarding Dorworth's participation in a party at which A.B. was present at his residence on July 15, 2017. Rather than producing evidence of such dishonesty, the discovery process revealed that Greenberg's contention was true. Indeed, phone records and sworn witness testimony, both through affidavits and depositions, established Dorworth's presence at the party on July 15, 2017. *See* Ex. 1 at 77:11–20; 108:10–22; 101:13–102:8; Ex. 2 at ¶ 16, Ex. 4 at 32:19–33:17 & 318:25–319:3. *See also Weiss Affidavit*, at Doc. 194-17.

---

[6] *See Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1308 (11th Cir. 2022) ("[T]he analysis of both the federal and state RICO claims is the same."); *Lugo v. State,* 845 So.2d 74, 96 n. 39 (Fla.2003) (since "Florida['s] RICO statute ... is patterned after its federal counterpart ... Florida courts may look to federal RICO decisions as persuasive authority").

The Plaintiff further failed to prove that the Defendants agreed, as part of their RICO scheme, to fund AB to lie to the federal government and to testify falsely before the Grand Jury. Putting aside the inconvenient fact that AB's testimony was true, the Plaintiff could not find evidence showing either the agreement or the funding. Nevertheless, the Plaintiff persisted in the contention by relying primarily on the argument that Andrew Searle, an esteemed attorney and honorable man, received funding from the Greenberg enterprise, to carry out the scheme. While such a speculation is absurd on its face, it is also belied by Andrew Searle's affidavit – a simple and forthright declaration that states he never received a dime from any of the Defendants. *See* Doc. 194-9. And it should go without saying that the Plaintiff failed to uncover any evidence establishing that that the Defendants committed numerous acts of "perjury, lies, obstruction, false statements, witness tampering, and bribery."

In the end, the Plaintiff's failures were unavoidable. When a Complaint is predicated on the implausible, with its handmaidens of conjecture and speculation, the result is what we have in the instant case: a pleading that is a tale of sound and fury, signifying nothing. *See* William Shakespeare, *Macbeth*, Act 5, Scene 5, 19-28 (1603)

Because Dorworth's claim was without substantial basis in fact or law, Joel Greenberg is entitled to his reasonable fees under § 772.104(3), Fla. Stat.

I.  **Joel Greenberg is entitled to fees and dismissal with prejudice under this Court's inherent powers because Dorworth brought and maintained this action in bad faith.**

Confronted with a meritless complaint, brought without evidence and suffused with speculation, the Court may impose sanctions for "bad faith," vexatious, wonton, or "oppressive" behavior. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-46 (1991). A court is empowered to bring such sanctions after a voluntary dismissal of the underlying case. *See Hyde v. Irish*, 962 F.3d 1306, 1310 (11th Cir. 2020)("[A] district court may address a sanctions motion based on its inherent powers … even if it lacks jurisdiction over the underlying case."); *see also Fid. Land Tr. Co., LLC v. Mortg. Elec. Registration Sys., Inc.*, No. 6:12-CV-1367-ORL-37, 2012 WL 6720994, at *3 (M.D. Fla. Dec. 4, 2012) (recommending that the court grant a motion for sanctions under the Court's inherent power filed *after* a notice of voluntary dismissal).

To impose such sanctions, the Court must find that the sanctioned party acted in "subjective bad faith." *Irish*, 962 F.3d at 1310 (emphasis deleted). Permissible sanctions include fees and dismissal with prejuidice. *Chambers*, 501 U.S. at 45–46 (fees); *Obukwelu v. Bd. of Trs. Fla. State Univ.*, 837 F. App'x 686, 687–88 (11th Cir. 2020)(dismissal). Even when a party has voluntarily dismissed their claim, the Court may convert that dismissal into one with prejudice as a sanction because doing so does "not require a determination on the merits." *Zow*

*v. Regions Fin. Corp.*, 595 F.App'x 887 888 (11th Cir. 2014).[7]

The Court should sanction Dorworth under its inherent power because the "record demonstrates that [he] acted willfully and in bad faith" by filing two verified complaints with unsupported, egregious and defamatory assertions against a minor victim, a dental company and the defendant's ex-wife and parents. In attacking Joel Greenberg for his proffers and directing his venom at a minor victim (who he dismissed as an adult entertainment star), the Plaintiff sought to usurp the federal criminal justice system which is based on cooperation of defendants and more importantly the protection of victims.

Faced with a lack of evidence supporting his claims, the Plaintiff was unrepentant – turning his attacks at Attorney Andrew Searle and asserting falsehoods under oath throughout the litigation process. As Exhibit 27 demonstrates, this litigation was plagued by the Plaintiff's multiple falsehoods.

Moreover, Dorworth caused his wife to verify false statements under oath in his amended verified complaint. *See* Doc. 181-1 at 33:18–24. And he failed to intervene when she repeated such lies during her deposition. But of course, the Plaintiff cannot help himself. Although aware that his implausible claims do not have a factual basis, the Plaintiff has continued his vendetta against Joel Greenberg

---

[7] On its own motion, the Court could also order Dorworth to show cause under Federal Rule of Civil Procedure 11(c)(3) why his voluntary dismissal should not be converted to a dismissal with prejudice as a non-monetary sanction under Federal Rule of Civil Procedure 11(c)(4). *See Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1315 (11th Cir. 2021) ("[W]here the client has made a knowing factual misrepresentation or is the mastermind behind the frivolous case, [Rule 11] sanctions against a client are appropriate." (quotations omitted)).

16

and his parents in state court. *See* State Complaint, at Doc. 194-24. Dorworth's state court complaint *continues* to allege that the Greenbergs are liable to him because they financed false testimony against him—though now apparently alleging in the alternative that such aid may have been negligent. *Id.* at ¶¶ 38–55. Furthermore, and inexplicably, Dorworth continues *to* allege that "[u]pon information and belief," the Greenbergs paid A.B.'s attorney's fees. *Id.* at ¶ 79. Is here any better example of subjective bad faith? The Court should now act to ensure that bad faith litigants like Dorworth cannot freely impose the Court's power to his own illegitimate ends—defiling "the very temple of justice"—and then get away with impunity. *Chambers*, 501 U.S. at 46.

The Court should therefore employ its inherent power to defend the judicial process's legitimacy by ordering Dorworth to pay Defendants' fees incurred in defending this frivolous action and by converting his dismissal without prejudice into one with prejudice.

## **CONCLUSION**

Approximately 16 months ago, the Plaintiff filed a Complaint and started a litigation process that eschewed evidence in favor of the absurd. And from that ignominious genesis, and after 16 months, the Plaintiff only accomplishment was to place this matter in a dark wood[8] -- a morass of rabid condemnation and wild conjecture. In the end, who knows what lurks in the heart of men, let alone

---

[8] *See* Dante Alighieri, *La Divina Commedia, Inferno*, Canto I (1472) ("Midway through this life we borne upon I found myself in a dark wood where the way of truth was wholly lost and gone").

17

Dorworth. And who knows what motivates a Plaintiff to abuse the court system to pursue claims against Defendants, which he knows are not true. Regardless, federal courts should not provide the canvas for his ill-advised agenda – an agenda that never pursued the truth but rather sought its perversion.

Based on the foregoing discussion and authorities, the Court should grant Defendants' motion for fee entitlement.[9]

## CERTIFICATION OF CONSULTATION

Pursuant to Local Rule 3.01(g), I consulted with counsel for the Plaintiff who advised that they opposed the relief requested in this motion.

Respectfully submitted,

*/s/ Fritz Scheller*
Fritz Scheller
Florida Bar No. 183113

---

[9] Pursuant to Local Rule 7.01(b)(2), the Defendant provides his fair estimate of the amount of fees sought to be recovered: Joel Greenberg has incurred approximately $289,770 in attorney's fees.

18

## **CERTIFICATE OF SERVICE**

On September 19, 2024, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to all parties of record.

>
> */s/ Fritz Scheller*
> Fritz Scheller
> Florida Bar No. 183113
> 200 E. Robinson St., Suite 1150
> Orlando, Florida 32801
> PH:   (407) 792-1285
> FAX: (407) 649-1657
> fscheller@flusalaw.com
> *Attorney for Defendants*