# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**CHRISTOPHER E. DORWORTH,**

            **Plaintiff,**

**v.**                                        **Case No: 6:23-cv-871-CEM-DCI**

**JOEL MICAH GREENBERG et al.,**

            **Defendants.**

_____

# REPORT AND RECOMMENDATION

Before the undersigned are the following motions:

- Andrew Greenberg, Susan Greenberg, and AWG, Inc.'s Time-Sensitive Motion to Determine Confidentiality (Doc. 186);

- Defendants'[1] Motion for Entitlement to Attorney's Fees, Costs, and Sanctions (Doc. 194);

- Andrew Greenberg, Susan Greenberg, and AWG, Inc.'s Motion to Partially Seal the Redacted Portions of Their Motion for Entitlement to Fees, Costs, and Sanctions and to Seal Certain Exhibits Thereto (Doc. 195);

- Defendant, Joel Greenberg's, Motion for Entitlement to Attorney's Fees and Sanctions Against Plaintiff, Christopher Dorworth (Doc. 196);

- The McClatchy Company, LLC's Motion for Limited Intervention and for Access to Judicial Records (Doc. 204); and

- Plaintiff's Motion to Stay the McClatchy Company's Motion for Limited Intervention and for Access to Judicial Records (Doc. 209).

---

[1] Though styled as "Defendants'" motion, this motion was filed by Defendants Andrew, Susan, and Abby Greenberg, and AWG, Inc., Greenberg Dental Associates, LLC, Greenberg Dental & Orthodontics, P.A., and Greenberg Dental Specialty Group, LLC.  *See* Doc. 194 at 6 fn.2.

For the reasons stated herein, it is respectfully **RECOMMENDED** that Defendants'
motions for entitlement to attorney fees and for sanctions (Docs. 194 and 196) be **DENIED**, that
the motion to partially seal the motion for attorney fees (Doc. 195) be **DENIED**, that Defendants'
motion to determine confidentiality (Doc. 186) be **DENIED**, that the motion for limited
intervention and for access to judicial records (Doc. 204) be **GRANTED in part and DENIED
without prejudice in part**; and that Plaintiff's motion to stay consideration of the foregoing
motion (Doc. 209) be **DENIED as moot**.

### I.    Background

On May 10, 2023, Defendants removed this action from state court to this Court, invoking
federal question subject matter jurisdiction due to alleged violations of the federal RICO statute,
18 U.S.C. § 1964, contained within the initial Complaint.  Doc. 1.  Thereafter, Defendants filed
motions to dismiss.  Docs. 44; 45; 46; 47.  From the outset, Defendants asserted to the Court that
Plaintiff's factual allegations in the Complaint lacked any evidentiary support.  *See, e.g.*, Docs. 44;
45; 47.

On August 8, 2023, Plaintiff filed a verified Amended Complaint signed by Plaintiff and
his wife under the following declaration: "Under penalties of perjury, I declare that I have read the
Verified Amended Complaint, that I agree with the document, and that the facts stated therein are
true."  Doc. 62 at 63.  In the Amended Complaint, Plaintiff also invoked the Court's supplemental
jurisdiction pursuant to 28 U.S.C. § 1367 in relation to several state law claims—including a newly
added Florida RICO claim pursuant to Florida Statutes sections 772.103(3) and 772.103(4).  Doc.
62.  This litigation proceeded through discovery for about a year.

Then, on August 17, 2024, Defendants Andrew Greenberg, Susan Greenberg, Abby
Greenberg, and AWG, Inc. served a Rule 11 motion on Plaintiff, giving him until September 10,

2024 to avoid a Rule 11 motion by dismissing his allegedly frivolous claims.  Docs. 194 at 20; 194-18.

On September 5, 2024, Plaintiff filed a Notice of Voluntary Dismissal Without Prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).  Doc. 185.  Dismissal occurred immediately upon Plaintiff filing the Notice.  *Matthews v. Gaither*, 902 F.2d 877, 880 (11th Cir. 1990) ("The dismissal is effective immediately upon the filing of a written notice of dismissal, and no subsequent court order is required.").

The next day, Defendants Andrew Greenberg, Susan Greenberg, and AWG, Inc. (hereafter, the Family Defendants) filed a motion seeking to determine the confidentiality of certain discovery documents exchanged in this case pursuant to the parties' confidentiality agreement, revealing the Family Defendants' intent to file a motion for entitlement to attorney fees.  Doc. 186.  But before Defendants could file their motion for entitlement to attorney fees, Plaintiff filed a "Suggestion of Mootness," arguing that "[a]ny claim for substantive or procedural sanction fee entitlement by virtue of the voluntary dismissal is barred as moot" and unpreserved for this Court to decide.  Doc. 191 at 9.[2]

On September 9, 2024, Plaintiff amended his pending state court case—with many of the same allegations and filed against the Family Defendants and Defendant Joel Greenberg—to add claims for "false report of criminal conduct, defamation, witness tampering, and conspiracy."  Docs. 194 at 21; 194-24.  The amended pleading in that case did not include a Florida RICO claim

---

[2] Plaintiff's Suggestion of Mootness (Doc. 191) is not a filing recognized by the Court.  The Federal Rules of Civil Procedure and the Local Rules of the Middle District of Florida do not provide for a "suggestion of mootness" as a stand-alone filing.  Instead, a party seeking to raise the issue of mootness should either raise the issue in its response or file a separate motion in accordance with Local Rule 3.01.  Based on that, the Court directed briefing concerning its jurisdiction.  *See* Doc. 200.  Therefore, the undersigned disregards Plaintiff's Suggestion of Mootness as an improper filing under the rules governing filing papers in this Court.

or any claim against Abby Greenberg, Greenberg Dental Associates, LLC, Greenberg Dental & Orthodontics, P.A., or Greenberg Dental Specialty Group, LLC.  Doc. 194 at 21-22; 194-24.

Then, on September 19, 2024, the Family Defendants and Defendant Joel Greenberg (collectively, Defendants) filed separate motions seeking attorney fees and sanctions against Plaintiff.  Docs. 194 and 196 (collectively, the Entitlement Motions).  In the Entitlement Motions, Defendants seek: (1) attorney fees under Florida's RICO statute (i.e. Florida Statutes section 772.104(3)); (2) attorney fees as a sanction under the Court's "inherent power"; and (3) dismissal of this action with prejudice as a sanction under the Court's "inherent power."  *See, e.g.*, Doc. 194 at 24, 28-31; Doc. 196 at 10-11.  The asserted factual basis for fees and sanctions is that Plaintiff has no factual support for—and, in fact, lied about in the pleadings and during discovery—five core factual allegations, split into two groups:

- allegations in the initial Complaint (Doc. 1-1) and during discovery that:

    1. Plaintiff was not home on the night of July 15, 2017 and that he had never met or partied with A.B.; and

- allegations in the Amended Complaint (Doc. 62) that Andrew and Susan Greenberg:

    2. agreed to pay A.B. (¶¶ 27, 29, 92–93, 105, 126, 154, 294, 299–300, 312);

    3. had knowledge of the content of Joel's proffers (¶¶ 140–43, 308–09, 325);

    4. paid Joel's restitution for some nefarious purpose (¶¶ 232, 388–97), and

    5. bribed Abby for false testimony (¶¶ 126, 154, 294, 312); and

Doc. 194 at 17, 22.[3]

---

[3] The civil conspiracy count in the pending Amended Complaint in the state court case contains some of these allegations. *See* Doc. 194-24 at ¶¶ 38–55 and 97–101.

The Family Defendants attached 27 exhibits to their Entitlement Motion.  Docs. 194-1 to 194-27.  In compliance with the parties' confidentiality agreement (Doc. 199-1), the Family Defendants redacted portions of the text of their Entitlement Motion and either redacted or entirely withheld (through the use of placeholders) eight of the 27 exhibits attached to the Motion. [4]  Along with their Entitlement Motion, the Family Defendants filed a motion seeking to file a complete, unredacted version of their Entitlement Motion and its supporting exhibits (the unredacted version of their Entitlement Motion and its attachments hereafter referred to collectively as, the Documents).[5]  Doc. 195 (hereafter, the Motion to File the Documents).[6]

---

[4] Joel Greenberg's motion for fee entitlement contains no redactions or exhibits (Doc. 196) but refers to exhibits attached to the Family Defendants' motion for fee entitlement.  Doc. 194.

[5] Though the Court describes the request as one to file "unredacted" versions of the Documents, the request is actually to file minimally redacted versions—the Family Defendants request that certain redactions are maintained (1) concerning the identifying information of the young women (some of whom were minors at the time these events transpired) who allegedly attended parties at Plaintiff's home and (2) as required by Federal Rule of Civil Procedure 5.2.

[6] A note is due about why the Court is calling the Family Defendants' motion (i.e. Doc. 195) a motion "to file" the Documents when it is styled somewhat awkwardly as the Family Defendants' "Motion to Partially Seal the Redacted Portions of Their Motion for Entitlement to Fees, Costs, and Sanctions and to Seal Certain Exhibits Thereto."  Doc. 195.  Despite the title of the motion, the Family Defendants explain that they seek permission to file the Documents on the public docket of this case in unredacted form.  Doc. 195 at 2-4.  In other words, the Family Defendants filed a motion "to seal," but the substance of that request is to publicly file the Documents, not seal them.  This apparent disconnect between title and substance is an artifact of the interplay between the Local Rule and the parties' confidentiality agreement.  In the confidentiality agreement, the parties agreed to a standard provision that requires a party to file a motion to seal prior to filing with the court any document designated as "confidential" by a party during discovery.  Doc. 199-1 at 9.  The Family Defendants filed a motion "to seal" because they seek to file the Documents, Plaintiff designated as "confidential" pursuant to the confidentiality agreement during discovery.  Though the filing of a motion to seal was required by the agreement, the Family Defendants do not actually believe that sealing is appropriate, hence the actual substantive request within the motion.  Regardless, filing a "motion to seal" allows any interested party or non-party to support the sealing of the Documents (*see* Local Rule 1.11(c)) and it allows the Court to consider the Documents under a temporary seal (to determine only whether they should be sealed) by operation of Local Rule 1.11(b)(8).  This process allows the issue of sealing the Documents to ripen for the

In reviewing the Entitlement Motions, though, the undersigned was concerned that Defendants made only passing and conclusory references to the Court's jurisdiction to consider the requested sanctions in a post-Rule 41(a)(1) dismissal context. Thus, considering the flurry of post-dismissal filings, the Court ordered that Plaintiff "respond to the pending motions for fee entitlement (Docs. 194; 196) but may only address the Court's jurisdiction to consider the request for fee entitlement." Doc. 200. Plaintiff filed a consolidated response, as directed, and argued that the Court lacked jurisdiction to consider Defendants' requests for attorney fees under the Florida RICO statute or sanctions under the Court's inherent power. Doc. 206. Defendants filed separate replies. Docs. 207; 208.

In the meantime, non-party The McClatchy Company, LLC (hereafter, the Miami Herald) filed a Motion for Limited Intervention and for Access to Judicial Records, seeking public access to the Documents. Doc. 204. Plaintiff then filed a motion to stay the Miami Herald's motion to unseal pending this Court's resolution of the Entitlement Motions. Doc. 209. The Miami Herald filed a response in opposition to Plaintiff's Motion to Stay. Doc. 210.

On December 5, 2024 and December 10, 2024, non-parties Orlando Sentinel Communications Company LLC and Florida Center for Government Accountability filed separate motions to intervene for the limited purpose of joining in the Miami Herald's motion seeking public access to the Documents. Docs. 211; 213. This Court struck the non-party motions for

---

Court's consideration with full briefing from any interested party or non-party, as occurred here. Further, it is important to remember that there is no court order in this case allowing the Documents to be under seal. The Documents remain under seal only by operation of the Local Rule, temporarily, and for the limited purpose of allowing the Court to consider the motion to seal. If a motion to seal is denied in this context, the Documents that are temporarily under seal by operation of the Local Rule are often deleted from the Court record or returned to the filer.

failing to comply with Local Rule 3.01 and improperly moving for "joinder" in a motion filed by another party.  Docs. 215; 216.

In sum, the Family Defendants and the non-party intervenor seek to have the Documents filed on the public docket.  Plaintiff argues that this Court lacks jurisdiction to impose sanctions at this juncture and the Documents should not be publicly filed.  The foregoing matters are referred to the undersigned and ripe for consideration.

## II.    Discussion

A plaintiff's "Rule 41(a)(1) voluntary dismissal disposes of the entire action . . . and the district court is immediately deprived of jurisdiction over the merits of the case[.]"  *Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258, 1265 (11th Cir. 2021) (citing *Anago Franchising, Inc. v. Shaz, LLC*, 677 F.3d 1272, 1279 (11th Cir. 2012) ("A district court loses all power over determinations of the merits of a case when it is voluntarily dismissed.")).

However, following a Rule 41(a)(1) voluntary dismissal, a court retains jurisdiction over a limited set of collateral issues.  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990) ("It is well established that a federal court may consider collateral issues after an action is no longer pending.").  Indeed, "even when a voluntary dismissal disposes of an entire action, district courts retain jurisdiction to consider at least five different types of collateral issues: costs, fees, contempt sanctions, Rule 11 sanctions, and motions to confirm arbitral awards." *Absolute Activist*, 998 F.3d at 1266; *see also Shelton v. Schar*, 2018 WL 3636698, at *1, 2 (M.D. Fla. Apr. 23, 2018) (finding, in the context of a request for attorney fees under the Florida RICO statute, that "there is no jurisdictional impediment to awarding fees against the former Plaintiffs" following the filing of a Rule 41(a) voluntary dismissal while a motion to dismiss was pending).

The Supreme Court's opinion in *Cooter*, though in the context of a request for sanctions under Federal Rule of Civil Procedure 11, is particularly instructive here:

> It is well established that a federal court may consider collateral issues after an action is no longer pending. . . . Like the imposition of costs, attorney's fees, and contempt sanctions, the imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate. Such a determination may be made after the principal suit has been terminated.

496 U.S. at 395-96. Further, the Court went on to explain that:

> Because a Rule 11 sanction does not signify a district court's assessment of the legal merits of the complaint, the imposition of such a sanction after a voluntary dismissal does not deprive the plaintiff of his right under Rule 41(a)(1) to dismiss an action without prejudice. "[D]ismissal ... without prejudice" is a dismissal that does not "operat[e] as an adjudication upon the merits," Rule 41(a)(1), and thus does not have a res judicata effect. Even if a district court indicated that a complaint was not legally tenable or factually well founded for Rule 11 purposes, the resulting Rule 11 sanction would nevertheless not preclude the refiling of a complaint. Indeed, even if the Rule 11 sanction imposed by the court were a prohibition against refiling the complaint (assuming that would be an "appropriate sanction" for Rule 11 purposes), the preclusion of refiling would be neither a consequence of the dismissal (which was without prejudice) nor a "term or condition" placed upon the dismissal (which was unconditional), see Rule 41(a)(2).
>
> The foregoing interpretation is consistent with the policy and purpose of Rule 41(a)(1), which was designed to limit a plaintiff's ability to dismiss an action.

*Id*. at 396-97. Thus, the Court concluded that:

> a voluntary dismissal does not eliminate the Rule 11 violation. Baseless filing puts the machinery of justice in motion, burdening courts and individuals alike with needless expense and delay. Even if the careless litigant quickly dismisses the action, the harm triggering Rule 11's concerns has already occurred. Therefore, a litigant who violates Rule 11 merits sanctions even after a dismissal. Moreover, the imposition of such sanctions on abusive litigants is useful to deter such misconduct. If a litigant could purge his violation of Rule 11 merely by taking a dismissal, he would lose all incentive to "stop, think and investigate more carefully before serving and filing papers." Amendments to Federal Rules of Civil Procedure, 97 F.R.D. 165, 192 (1983) (Letter from Judge Walter Mansfield, Chairman, Advisory Committee on Civil Rules) (Mar. 9, 1982).

*Id*. at 398.

But of course, Rule 11 is not the basis for fees in this case, though the undersigned will

return to it in relation to the Court's inherent power.  Here, Defendants seek fees under Florida's

RICO statute and the Court's inherent power.  Each of these bases will be discussed separately.

### A.    The Request for Fees Under Florida's RICO Statute

Florida's RICO statute provides for attorney fees "upon a finding that the claimant raised

a claim which was without substantial fact or legal support."  Fla. Stat. § 772.104(3). [7]  The

Eleventh Circuit has described the operation of the statute as follows:

> The Florida courts have explained that in awarding fees to a defendant under
> chapter 772.104, "it is not necessary that the court find a complete absence of a
> justiciable issue of either law [or] fact. The trial court must only find that the claim
> lacked substantial fact or legal support." *Hartford Ins. Co. of the Midwest v. Miller*,
> 681 So.2d 301, 302 (Fla. 3d DCA 1996) (internal quotation marks and citations
> omitted). This standard is less stringent than the standard for awarding attorneys'
> fees under other Florida statutory provisions, such as chapter 57.105, which allows
> for an attorneys' fee award in any civil action that is found to have been brought
> frivolously or in bad faith. *See Foreman v. E.F. Hutton & Co., Inc.*, 568 So.2d 531,
> 532 (Fla. 3d DCA 1990) ("The legislature's clear intent in wording section 772.104
> as it did was to discourage RICO claims lacking either legal or factual substance by
> setting a less stringent standard for a fee award than the bad faith standard of section
> 57.105."). The intent of the Florida legislature in adopting this less stringent
> standard was "to discourage frivolous RICO claims or claims brought for the
> purpose of intimidation because the stigma and burden of defending such claims is
> so great." *Miller*, 681 So.2d at 302.

*Johnson Enterprises of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1330–31 (11th Cir.

1998).  The Circuit continued: "Florida courts consistently have held that 'defendants are entitled

to fees under section 772.104 where civil RICO counts were dismissed with prejudice or a verdict

---

[7] "Federal courts adjudicating state law claims, including claims brought under the court's
supplemental jurisdiction, must apply the substantive law of the state along with the procedural
law of the federal system."  *Shelton v. Schar*, 2018 WL 6261485, at *1 (M.D. Fla. Oct. 18, 2018)
(citing *Horowitch v. Diamond Aircraft Indus., Inc.*, 645 F.3d 1254, 1257 (11th Cir. 2011)), *report
and recommendation found moot due to parties' settlement* (M.D. Fla. Feb. 12, 2019).  "Statutes
allowing for the recovery of attorney's fees generally apply in federal court because they reflect
the substantive policy of the state."  *Schalamar Creek Mobile Homeowner's Ass'n, Inc. v. Adler*,
2021 WL 6617451, at *2 (M.D. Fla. Dec. 7, 2021), *report and recommendation adopted sub nom.
Atwood v. Adler*, 2022 WL 180794 (M.D. Fla. Jan. 20, 2022).

was directed in the defendant's favor,' and have explained that 'a defendant may still be entitled to fees on the RICO count even if the plaintiff ultimately prevails on other counts.'" *Id.* at 1331 (quoting *Miller*, 681 So.2d at 302). In *Johnson*, the Circuit affirmed an award of fees for the Florida RICO claim where the district court found the award appropriate after directing a verdict in favor of the defendants. *Id.*

But this case goes beyond *Johnson* and begs the question in the context of a section 772.103(4) motion for attorney fees following a Rule 41(a)(1)(A)(i) dismissal: what may a court consider when its fee entitlement decision must be based upon "a finding that the claimant raised a claim which was without substantial fact or legal support"? § 772.104(3), Fla. Stat. Defendants seek to have this Court decide whether they have met the statutory standard based upon evidence not part of the judicial record at the time of voluntary dismissal. In other words, to make judicial determinations on contested questions of fact based on the presentation of entirely new evidence. Defendants provide no legal support for that proposition.

To the contrary, federal district courts considering attorney fee requests under section 772.104(3) overwhelmingly look to the judicial record already before them. As one court noted, the "analysis to impose fees under section 772.104 is a difficult task. There is very little case law guiding the Court on the meaning of 'without substantial factual or legal support.'" *Colite Int'l, Inc. v. Robert L. Lipton, Inc.*, 2007 WL 9698300, at *5 (S.D. Fla. Mar. 13, 2007) (quoting *Marcus v. Miller*, 663 So. 2d 1340, 1342 (Fla. 4th DCA 1995)). That said, a fee award under section 772.104(3) most reliably occurs following a court's dismissal with prejudice of a Florida RICO claim, a circumstance which courts have consistently found sufficient to trigger fees under the statute. *See DJ Lincoln Enterprises, Inc. v. Google, LLC*, 2022 WL 3754182, at *1 (S.D. Fla. Aug. 30, 2022) ("Plaintiff's assertion that § 772.104(3) requires something more than a 'with prejudice'

dismissal is unsupported."); *Filippova v. Mogilevsky*, 2019 WL 1216150, at *3 (S.D. Fla. Feb. 14,

2019) (finding that the district judge "dismissed the Florida RICO count with prejudice, which in

and of itself is sufficient to satisfy the requirements of the pertinent Florida statute [(i.e. section

772.104)] pursuant to the relevant case law"), *report and recommendation adopted*, 2019 WL

1216205 (S.D. Fla. Mar. 7, 2019); *Colite Int'l*, 2007 WL 9698300, at *4, 5 (finding claims to be

without substantial legal or factual support where the complaint was amended several times and

the claims were ultimately dismissed with prejudice); *Hartford Ins. Co. v. Miller*, 681 So.2d 301,

302 (Fla. 3d DCA 1996) ("the district courts have consistently held that defendants are entitled to

fees under section 772.104 where civil RICO counts were dismissed with prejudice or a verdict

was directed in the defendant's favor"); *see also Foreman v. E.F. Hutton & Co.*, 568 So.2d 531,

532 (Fla. 3d DCA 1990) (attorney's fees awarded under section 772.104 where RICO count was

dismissed with prejudice and case disposed of on the pleadings); *Whispering Pines Mobile

Homeowners' Ass'n, Inc. v. Wallach*, 2020 WL 9455632, at *2 (M.D. Fla. Oct. 14, 2020), *report

and recommendation adopted*, 2020 WL 9455606 (M.D. Fla. Dec. 2, 2020) ("While courts have

found that a dismissal with prejudice is tantamount to a finding that a claim was raised without

substantial fact or legal support, [] here, the dismissal was without prejudice.") (citing *Bahrakis v.

Zimmerman*, 2020 WL 4734929 (M.D. Fla. Aug. 14, 2020)).  In other cases, the determination is

made based upon the decisions on motions to dismiss,[8] decisions at summary judgment,[9] or

---

[8] *See, e.g.*, *Colite Int'l*, 2007 WL 9698300, at *4 (finding fees appropriate under section 772.104
after the court dismissed a Florida RICO claim at the pleading stage).

[9] *See, e.g.*, *Gray v. Novell, Inc.*, 2010 WL 2593608, at *11 (M.D. Fla. Feb. 22, 2010), *report and
recommendation adopted*, 2010 WL 2612328 (M.D. Fla. June 28, 2010) (finding that plaintiff's
Florida RICO claim lacked a substantial factual basis after granting summary judgment).

decisions related to trial.[10]  At least two courts have even found that fees under the statute were appropriate following a Rule 41(a)(1) voluntary dismissal, but in both those cases the court relied upon judicial findings it made in dismissing the plaintiff's pleading prior to the ultimate Rule 41(a)(1) dismissal.  *See Bahrakis*, 2020 WL 4734929 at *2; *Shelton*, 2018 WL 6261485, at *2.

But the undersigned is unaware of any federal court considering new evidence post-Rule 41(a)(1) dismissal in relation to a request for fees under section 772.104(3).  Indeed, in considering such a fee request, a court in this district concluded that the voluntarily dismissal prior to any judicial determination of the merits of the claim prevented the court from making the finding necessary to award fees under the statute:

> Based on the line of cases awarding fees under § 772.104 when a dismissal with prejudice is entered and the specific facts of this case to the contrary, the undersigned cannot find that Plaintiffs' Florida RICO claims were "without substantial fact or legal support" or that an award of fees is warranted.

*Royal Palm Vill. Residents, Inc. v. Slider*, 2021 WL 4876391, at *4 (M.D. Fla. Aug. 2, 2021), *report and recommendation adopted in part, rejected in part sub nom*. 2021 WL 4452898 (M.D. Fla. Sept. 29, 2021), *aff'd sub nom.* 57 F.4th 960 (11th Cir. 2023).  Here, prior to dismissal, the Court made no finding concerning the sufficiency of the claim.    Thus, as in *Royal Palm*, the undersigned recommends that the Court cannot now determine the sufficiency of the Florida RICO claim and, as such, the undersigned recommends that fees should not be awarded pursuant to section 772.104(3).

---

[10] *See, e.g.*, *Hall v. Ins. Corp. of Brit. Columbia*, 2024 WL 4092888, at *16 (M.D. Fla. July 11, 2024) (following a bench trial, relying on the order granting a directed verdict in awarding fees under section 772.104(3)); *Soltero v. Swire Dev. Sales, Inc.*, 2013 WL 12340902, at *1, 6 (S.D. Fla. Mar. 8, 2013) (considering the trial record in determining that fees under section 772.104(3) were not warranted).

And the Court emphasizes that Defendants have presented no authority for the proposition that the Court should consider evidence not before the Court prior to dismissal—whether attached to the Entitlement Motion or at a hearing—when deciding whether fees under section 772.104(3) are appropriate here. Indeed, at least one other court has recently faced a similar request by a defendant with a similar dearth of authority for their proposition:

> Of course, the Court here never made a finding with respect to the merits of the action given that Plaintiff dismissed the action before the Court had an opportunity to consider the Report and Recommendation. The fact that the procedural posture of the matter is a dismissal without prejudice cannot be overlooked. Defendant Golden takes the position that the dismissal without prejudice is sufficient grounds for the Court to find that the complaint was without substantial factual or legal support. ECF No. 10.
>
> Defendant Golden advances that argument without authority, and indeed, neither Defendant provided a single authority where a dismissal under Rule 41(a)(1) served as the basis for an award under Section 772.104(3). *See Absolute Activist Value Master Fund Ltd. v. Devine*, No. 215CV328FTM29MRM, 2019 WL 3491962, at *12 (M.D. Fla. Aug. 1, 2019), reconsideration denied, No. 215CV328FTM29MRM, 2019 WL 4594589 (M.D. Fla. Sept. 23, 2019) (declining to award fees noting that although the case was dismissed with prejudice, it did not result in a directed verdict, summary judgment, or even a dismissal on the merits); *Filippova v. Mogilevsky*, No. 18-80044-CIV, 2019 WL 1054256, at *3 (S.D. Fla. Feb. 8, 2019), report and recommendation adopted, No. 18-80044-CIV, 2019 WL 1050697 (S.D. Fla. Feb. 19, 2019) (finding that a dismissal with prejudice is in and of itself sufficient to satisfy the requirements of Section 772.104(3)); *Johnson*, 162 F.3d at 1331 (11th Cir. 1998) (citing *Hartford Ins. Co. of the Midwest v. Miller*, 681 So.2d 301, 302 (Fla. 3d DCA 1996)) (noting that Florida courts consistently have held that "defendants are entitled to fees under section 772.104 where civil RICO counts were dismissed with prejudice or a verdict was directed in the defendant's favor," and have explained that "a defendant may still be entitled to fees on the RICO count even if the plaintiff ultimately prevails on other counts.").
>
> However, the fact that there was no judgment on the merits does not necessarily preclude attorneys' fees and costs. Indeed, the undersigned identified one case where a court found that the complaint lacked "substantial fact or legal support" after a dismissal under Rule 41(a). *Shelton v. Schar*, No. 5:17-CV-86-OC-PGBPRL, 2018 WL 4289654, at *2 (M.D. Fla. Aug. 23, 2018), report and recommendation adopted, No. 5:17-CV-86-OC-40PRL, 2018 WL 5084703 (M.D. Fla. Sept. 7, 2018). There, however, the court made that finding on the grounds that the pleading was a frivolous, shotgun complaint. *Id*. Although the undersigned

ultimately found that the matter should be dismissed, this was not a shotgun pleading nor did the undersigned make any finding that the matter was frivolous.

*Wardak v. Goolden*, 2020 WL 6749171, at *5–6 (S.D. Fla. Sept. 8, 2020), *report and recommendation adopted*, 2020 WL 6748032 (S.D. Fla. Nov. 17, 2020). Relying upon much of the same authority before the Court now, the *Wardak* court came to a similar conclusion—it considered the record already before it and declined to award fees under section 772.104(3). But even the court in *Wardak* had more of a pre-dismissal record than is now before the Court. In *Wardak*, the court had an un-ruled-upon report and recommendation that was pending at the time of the Rule 41(a)(1) dismissal, and one that recommended dismissal no less. Here, there is no such judicial record of findings upon which to base a section 772.104(3) finding, even if just a recommendation. Here, there is no pre-dismissal judicial determination concerning the Florida RICO claim, so the undersigned recommends that the Court go no further in considering the sufficiency of Plaintiff's Florida RICO claim and deny the request for fees under section 772.104(3).[11]

All that said, the foregoing is based upon a determination that the Court exercises subject matter jurisdiction over the request for attorney fees under the Florida statute. But the undersigned writes further to raise potential jurisdictional and comity-based concerns. Upon the voluntary dismissal of this case, which is here based on a federal question, there is a colorable argument that the Court should decline to exercise supplemental jurisdiction on any collateral issues arising from

---

[11] Finally, the undersigned notes that there exists a line of cases in the Southern District of Florida that suggest that a hearing is appropriate at the conclusion of a case when a Florida RICO claim is voluntarily dismissed or withdrawn by amendment to a pleading, but the case continues. *See Plain Bay Sales, LLC v. Gallaher*, 2019 WL 3426250, at *5 (S.D. Fla. Jan. 9, 2019); and *Alphamed Pharms. Corp. v. Arriva Pharms., Inc.*, No. 03-20078-CIV, 2005 WL 8155975, at *1–2 (S.D. Fla. Feb. 9, 2005). The undersigned is not convinced that such a situation is analogous here, nor do those cases make clear the nature of such a hearing.

the now-dismissed state law claims.  Indeed, as will be discussed, some courts that have dismissed for lack of subject matter jurisdiction cases that included a Florida RICO claim have then declined to exercise supplemental jurisdiction over a subsequently filed motion for attorney fees under 772.104(3).

Section 1367(a) provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a).  The statute "defines the permissible boundaries for the exercise of supplemental jurisdiction; that is, it delineates the power of the federal courts to hear supplemental claims and claims against supplemental parties."  *Estate of Amergi ex rel. Amergi v. Palestinian Authority*, 611 F.3d 1350, 1366 (11th Cir. 2010) (citation and internal quotation marks omitted).

District courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if:

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c)(1)-(4).  "If one of these four statutory factors applies, courts may also consider additional factors, which include judicial economy, convenience, fairness to the parties, and whether all the claims would be expected to be tried together."  *Amergi*, 611 F.3d at 1366 (citation

and internal quotation marks omitted). The Eleventh Circuit also weighed in on discretionary

supplemental jurisdiction in a recent published opinion:

> Although the district court has discretion, concerns of federalism—namely, of
> federal courts of limited jurisdiction weighing in on state law—counsel in favor of
> dismissing state-law claims after the federal claims are dismissed. "We have
> encouraged district courts to dismiss any remaining state claims when, as here, the
> federal claims have been dismissed prior to trial." *Raney v. Allstate Ins. Co.*, 370
> F.3d 1086, 1089 (11th Cir. 2004). The Supreme Court has also put a thumb on the
> scale: "[I]n the usual case in which all federal-law claims are eliminated before
> trial, the balance of factors . . . will point toward declining to exercise [pendent]
> jurisdiction . . . ." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).
> A district court, exercising its already broad discretion, will rarely err by declining
> supplemental jurisdiction after the federal claims that supported its jurisdiction are
> dismissed.

*Silas v. Sheriff of Broward Cty., Fla.*, 55 F.4th 863, 866, 2022 WL 17662925, at *2 (11th Cir. Dec.

14, 2022).

And well before *Silas*, a handful of federal courts in Florida declined to exercise

supplemental jurisdiction over a request for fees under section 772.104(3) once the underlying

Florida RICO claim was dismissed. In *Corcel Corp., Inc. v. Ferguson Enterprises*, *Inc.*, 2013 WL

12084487, at *1–3 (S.D. Fla. Oct. 4, 2013), the court granted a motion to dismiss the federal claims

in a federal question case and declined to exercise supplemental jurisdiction over the remaining

state law claims, including a claim under the Florida RICO statute. The *Corcel* court declined to

exercise supplemental jurisdiction over the request for fees under section 772.104(3), relying on a

circuit decision concerning similar state statutes. *Id*. (citing *Laborers Local 938 Joint Health &

Welfare Trust Funds v. B.R. Starnes Co. of Fl.*, 827 F.2d 1454, 1458 (11th Cir. 1987) ("Given that

the federal court dismissed the case for lack of subject matter jurisdiction and the merits of the

state claims have yet to be tried, it would be inappropriate to award fees under either of [ ] Florida

[Statutes §§ 713.29 and 57.105] at this time"). Distinguishing an unpublished Eleventh Circuit

case, the court explained its decision as follows:

16

Defendants claim they are entitled to fees under the Florida state RICO statute. In support, they rely on *Prime Ins. Syndicate, Inc. v. Soil Tech Distributers, Inc.*, 270 Fed.Appx. 962 (11th Cir. 2008). That case was brought under diversity jurisdiction and the pleadings did not satisfy the amount in controversy. *Id*. at 963. As such, the district court dismissed with leave to re-file. *Id*. The plaintiff did not refile or appeal and the district court awarded the defendant fees and costs under Florida Statute 627.428(1).2 *Id*. The Eleventh Circuit ruled that the award of attorney's fees was "collateral to the merits of the case and was therefore in the court's jurisdiction, even after the court determined it lacked subject matter jurisdiction over the underlying suit." *Id*. at 964-65.

The Court does not find this case persuasive. To begin, unlike the *Starnes* case upon which this Court is relying, *Prime Ins*. is not binding precedent. Moreover, as explained by the Court in *Prime Ins*., the statute there in question "[did] not require an insured party to succeed on the merits of a case in order to recover attorney's fees." Id. at 964. Thus, in *Prime Ins*., the award of fees was unrelated to a determination of the merits of the claim. Here, however, in order to award Defendants fees and costs, the Court would have to make a merits based determination that Plaintiff's claim was "without substantial fact or legal support." Having refused to exercise jurisdiction over the Florida RICO claim, it would be inappropriate for this Court to decide that merits based question.

2013 WL 12084487, at *2–3. The *Corcel* court relied on other decisions as well. *See Design Pallets, Inc. v. Gray Robinson*, 583 F. Supp. 2d 1282 (M.D. Fla. 2008) (declining to exercise supplemental jurisdiction over Florida RICO claim and subsequent request for fees under section 772.104(3) after granting summary judgment on federal claims); *Maale v. Kirchgessner*, 2011 WL 1549058 (S.D. Fla. Apr. 22, 2011) (a similar outcome in the FDUTPA context).

Thus, there is authority to suggest that the Court may alternatively find that it declines to exercise supplemental jurisdiction over the request for fees under section 772.104(3). However, based on the overwhelming weight of the decisions in which district courts in Florida have considered section 772.104(3) fee requests post-dismissal, the undersigned primarily recommends that the Court consider the request, but do so only based upon (1) the record before the Court prior to dismissal and (2) the legal arguments made in the Entitlement Motions. Indeed, the undersigned reiterates that Defendants cite no case in which, after a Rule 41(a)(1) dismissal, a court considered

new evidence in deciding whether the Florida RICO claim "was without substantial fact or legal

support." And, given that the Rule 41(a)(1)(A)(i) dismissal occurred in the absence of any judicial

determination concerning the legal or factual basis of the Florida RICO claim, "the undersigned

cannot find that Plaintiffs' Florida RICO claims were 'without substantial fact or legal support' or

that an award of fees is warranted." *Royal Palm Vill. Residents, Inc.*, 2021 WL 4876391, at *4.

### B.    The Request for Sanctions Under the Court's Inherent Power

As will be discussed, the undersigned finds that the Court has jurisdiction pursuant to its

inherent power to consider Defendants' request for sanctions, but the undersigned respectfully

recommends that the Court not exercise its inherent power to sanction Plaintiff.

The "inherent powers of the federal courts include the authority to fashion sanctions for

conduct that abuses the judicial process." *J.C. Penney Corp., Inc. v. Oxford Mall, LLC*, 100 F.4th

1340, 1346 (11th Cir. 2024) (citing *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107

(2017)). As already addressed, the Supreme Court in *Cooter* held that a court retained jurisdiction

to consider a Rule 11 sanctions motion following a Rule 41(a)(1) voluntary dismissal. *Cooter*,

496 U.S. at 384. Similarly, "a district court may address a sanctions motion based on its inherent

powers . . . even if it lacks jurisdiction over the underlying case." *Hyde v. Irish*, 962 F.3d 1306,

1310 (11th Cir. 2020). This is so because "sanctions under a court's inherent powers[,]". . . "do

not require a court to rule on the merits of the underlying case." *Id.* "[T]he purpose of the sanctions

outlasts the end of the case." *Id.* As such, even though Plaintiff voluntarily dismissed this action,

the Court still may consider whether it should exercise its inherent power to sanction Plaintiff for

pre-dismissal conduct.

But what if, as here, the allegedly sanctionable conduct falls within the scope of Rule 11?

The year after *Cooter*, the Supreme Court in *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991),

considered the interplay between a court's inherent power and Rule 11. In *Chambers*, the district

court was faced with sanctionable conduct by a party—including the "falsity of the pleadings"—

some of which "did not become apparent until after the trial on the merits[.]" 501 U.S. at 41. Due

to the timing and the nature of the conduct at issue, the district court deemed Rule 11 "insufficient"

and imposed sanctions pursuant to the court's inherent power, and this even though some of the

conduct at issue fell within the scope of Rule 11. *Id*. Recounting the history and nature of courts'

inherent power, the Supreme Court concluded as follows:

> There is, therefore, nothing in the other sanctioning mechanisms or prior cases
> interpreting them that warrants a conclusion that a federal court may not, as a matter
> of law, resort to its inherent power to impose attorney's fees as a sanction for bad-
> faith conduct. This is plainly the case where the conduct at issue is not covered by
> one of the other sanctioning provisions. But neither is a federal court forbidden to
> sanction bad-faith conduct by means of the inherent power simply because that
> conduct could also be sanctioned under the statute or the Rules. A court must, of
> course, exercise caution in invoking its inherent power, and it must comply with
> the mandates of due process, both in determining that the requisite bad faith exists
> and in assessing fees, *see Roadway Express*, *supra*, at 767, 100 S.Ct., at 2464.
> Furthermore, when there is bad-faith conduct in the course of litigation that could
> be adequately sanctioned under the Rules, the court ordinarily should rely on the
> Rules rather than the inherent power. But if in the informed discretion of the court,
> neither the statute nor the Rules are up to the task, the court may safely rely on its
> inherent power.

*Chambers*, 501 U.S. at 50; *see also In re Engle Cases*, 283 F. Supp. 3d 1174, 1241 (M.D. Fla.

2017) ("A court may sanction an attorney pursuant to its 'inherent power' to police behavior that

undermines the judiciary's ability to achieve the just, orderly, and expeditious disposition of

cases.").

The Eleventh Circuit has reiterated that a court's inherent power remains available as a

sanction mechanism even if other rules or statutes might apply. But the Circuit has explained that

"[g]enerally, if appropriate sanctions can be imposed under provisions such as Rule 11, courts

should not exercise their inherent power." *Peer v. Lewis*, 606 F.3d 1306, 1315 (11th Cir. 2010)

(*citing* Fed. R. Civ. P. 11 advisory committee note of 1993). In *Peer*, the court explained that Rule

11 was insufficient because the offending lawyer—Rosenbaum—withdrew from the case before the sanctionable conduct was discovered:

> In this case, Rosenbaum knowingly filed a baseless claim and then withdrew from the case before opposing counsel had the opportunity to discover that Rosenbaum had Peer's credit report (showing no access) before Rosenbaum filed the FCRA claim. While the filing of a meritless claim is normally the purview of Rule 11, Rule 11 cannot be extended to Rosenbaum's conduct without vitiating the intent of Rule 11(c)(2)'s safe harbor provision. The purpose of Rule 11(c)(2)'s safe harbor provision is to allow an attorney who violates Rule 11 to correct the alleged violation within twenty-one days without being subject to sanctions. Fed.R.Civ.P. 11 advisory committee note of 1993. This provision assumes that the attorney who filed the offensive pleading is still in the case. When the attorney who violated Rule 11 withdraws from the case prior to opposing counsel obtaining clear evidence of the violation, a party cannot move for sanctions under Rule 11 because the offending attorney no longer has the authority to correct or withdraw the challenged pleading. Therefore, Rule 11 does not allow parties to protect themselves from "hit and run" abuse of the judicial process.

606 F.3d at 1315. Because the lawyer was no longer in the case, the Circuit found Rule 11 insufficient and remanded the case to the district court to determine whether it should exercise its inherent power to sanction the lawyer. *Id*. at 1316–17.

If faced with a close case, the Eleventh Circuit has given guidance that directly points district courts to *Chambers*:

> If a district court is unsure whether to sanction a party under its inherent powers, it should look to the guidance of the Supreme Court in *Chambers*. The purpose of the inherent power is both to vindicate judicial authority without resorting to contempt of court sanctions and to make the non-violating party whole. *See Chambers*, 501 U.S. at 45–46, 111 S.Ct. at 2133. The inherent power must be exercised with restraint and discretion. This power is not a remedy for protracted litigation; it is for rectifying disobedience, regardless of whether such disobedience interfered with the conduct of the trial. *See id*. at 44, 111 S.Ct. at 2132.

*Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1225 (11th Cir. 2017). In declining to exercise its inherent power, the Circuit in *Purchasing Powers* concluded:

> Courts considering whether to impose sanctions under their inherent power should look for disobedience and be guided by the purpose of vindicating judicial authority. None of these concerns are present here.

*Id.*; *see also Thomas v. Tenneco Packaging Co., Inc.*, 293 F.3d 1306, 1320 (11th Cir. 2002) ("Due to the scope of the inherent powers vested in federal courts, however, it is necessary that such courts exercise caution in invoking their inherent power.") (cleaned up); *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001) ("Because the court's inherent power is so potent, it should be exercised with restraint and discretion.") (cleaned up), *abrogated on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639 (2008).

Here, Rule 11 was up to the task.  When the Family Defendants finally availed themselves of it, Rule 11 served its purpose by causing Plaintiff to voluntarily dismiss this action within the safe harbor period.  Further, Rule 11 remained available to Defendants for over a year, but only the Family Defendants used it, and that use caused the dismissal of the entire action.  Thus, because Rule 11 remained a viable tool in this case for over a year and, in fact, when used, served its purpose, the Court "should rely on the Rules rather than the inherent power."  *Chambers*, 501 U.S. at 50.  As such, it is recommended that the Court should not further consider Defendants' request for the Court to exercise its inherent power.

But even if the Court deems Rule 11 insufficient due to the pools of spilt ink and treasure expended prior to voluntary dismissal, and even if this was a close call (and the undersigned suggests that it is not), the undersigned takes heed of the Eleventh Circuit's guidance in *Purchasing Power*.  In declining to exercise its inherent power, the Circuit in *Purchasing Powers* directed that courts "should look for disobedience and be guided by the purpose of vindicating judicial authority."  851 F.3d at 1225 (11th Cir. 2017).  Here, Defendants identify no disobedience by Plaintiff, and there is little vindication of judicial authority at issue.  Of course, if an allegation is made falsely, judicial interests are involved.  But, again, Rule 11, is available for that circumstance.

And this is not a case like *Peer*, where the offending lawyer was beyond the reach of Rule 11 because the falsity of the allegation he made was discovered after he withdrew from the case.

Also, another case is pending now: a state court case involving many of the same parties and allegations. Indeed, the Family Defendants complain in their Motion for Entitlement that Plaintiff's "new state court complaint incredibly *continues* to allege that the Greenbergs are liable to him because they financed false testimony against him—though now apparently alleging in the alternative that such aid may have been negligent." Doc. 194 at 30 (emphasis in original). Also, Defendants add that Plaintiff "*again* alleges '[u]pon information and belief' that the Greenbergs paid A.B.'s attorney's fees*, id.* ¶ 79, and goes so far as to claim *his* fees from this action as damages, *id.* ¶ 78, and claims entitlement to punitive damages, *id.* ¶ 81." *Id.* (emphasis in original). So, even if the Court deemed Rule 11 insufficient, principles of comity militate against exercising inherent power to determine the validity of allegations that a state court is now considering in what is, in many ways, the same action as this one.[12]

Regardless, even if the Court further considers the Entitlement Motions, the undersigned recommends that the Court not exercise its inherent power. The Eleventh Circuit has recently explained the standard that a moving party must meet to invoke a court's inherent power:

> The "key to unlocking" that power is a finding of bad faith. *Id.* But a blank conclusion that a party acted in bad faith is not enough; the court instead needs to make specific findings about which conduct justifies sanctions. *DeLauro*, 645 F.3d at 1304. And those findings must show "subjective bad faith," meaning intentional and not just reckless behavior. *Purchasing Power*, 851 F.3d at 1224–25. Still, that intent can be inferred "if an attorney's conduct is so egregious that it could only be committed in bad faith." *Id.*

---

[12] The undersigned does not further address concepts of abstention because it is recommended that the Court not exercise its inherent power.

*J.C. Penney*, 100 F.4th at 1346.  Indeed, a movant must establish subjective bad faith "either (1)

with direct evidence of the attorney's subjective bad faith or (2) with evidence of conduct 'so

egregious that it could only be committed in bad faith.'"  *Hyde*, 962 F.3d at 1310 (*citing*

*Purchasing Powe*r, 851 F.3d at 1224–25).  "Evidence of recklessness alone won't suffice."  *Id*.

The evidence a court looks to must be "in the context of the case."  *Purchasing Powe*r, 851 F.3d

at 1225.  In *Purchasing Power*, for example, the issue revolved around the citizenship of a party,

and the court looked to "(1) [the respondent]'s removal burden, (2) [the respondent]'s submissions

to the court, and (3) [the movant]'s efforts to identify [a party]'s citizenship."  *Id*.  In *Hyde*, the

conduct at issue was the alleged inclusion of false allegations in a complaint.  962 F.3d at 1310–

11.  In considering evidence that purportedly contradicted the allegations in the complaint, the

Circuit found that the district court did not abuse its discretion in declining to invoke its inherent

power to sanction because there were other "just-as-plausible" readings of the contradictory

evidence and "even if the exhibit did prove that the allegations were false, [the movant] hasn't

shown that any falsity arose from more than mere negligence."  *Id*. at 1311.[13]

    As directed in *Purchasing Power*, the undersigned looks to the context of the case in

deciding whether to recommend that the Court exercise its inherent power to sanction.  The

convergence of three contextual points drives the undersigned's analysis: (1) the nature of the

allegedly sanctionable falsities; (2) the current procedural posture of the case; and (3) the

procedural mechanism that Defendants seek to have this Court utilize to reach their desired

outcome.

---

[13] The Circuit also upheld the district court's finding that the motion was untimely because of the
three-year delay in bringing it.  *Id*. ("If Irish were right that the falsity of the allegations was so
obvious from the face of the complaint, then he should have raised his concern when the complaint
was first filed (or at least closer in time to that point).").

As to the allegedly sanctionable falsities, Defendants identify generally a first group of statements only within the initial Complaint and identify specifically a second group of four allegations in the Amended Complaint.[14]   First, Defendants assert that the crux of Plaintiff's falsities are the allegations in the initial Complaint (Doc. 1-1) that, generally, "[Plaintiff] was not home on the night of July 15, 2017 and that he had never met or partied with A.B."  Doc. 194 at 25.   Second Defendants assert that there are 35 paragraphs in the 498-paragraph Amended Complaint (Doc. 62) that relate to allegedly false allegations that Andrew and Susan Greenberg agreed to pay A.B. (¶¶ 27, 29, 92–93, 105, 126, 154, 294, 299–300, 312, 324), had knowledge of the content of Joel Greenberg's proffers (¶¶ 140–43, 308–09, 325), paid Joel Greenberg's restitution for some nefarious purpose (¶¶ 232, 388–97), and bribed Abby Greenberg for false testimony (¶¶ 126, 154, 294, 312, 324).  *Id*. at 22.

The interplay between the two groups of allegedly false allegations in the initial and Amended Complaint is worth noting, as is the interplay with the procedural posture of this case. All the allegedly false allegations appeared—in at least some form—in the initial Complaint. Indeed, Defendants filed motions to dismiss the initial Complaint and, in doing so, called out the lack of any evidentiary support for Plaintiff's allegations.  *See generally* Docs. 45; 47.  That was in June 2023.  So, since at least June 2023, Defendants—themselves under the strictures of Rule 11—have told the Court in filed papers that the factual contentions in Plaintiff's verified pleading lack evidentiary support.  Less than two months later, those motions to dismiss were mooted by the filing of the eight-count, 498-paragraph Amended Complaint.  Doc. 62.  As far as the

---

[14] The undersigned is cognizant that Defendants allege in the Entitlement Motions that Plaintiff reiterated these alleged falsities during discovery and that Plaintiff allegedly "allowed" his wife, a non-party, to testify falsely.  The undersigned has considered the alleged reiteration of the falsities during discovery in making this recommendation.

undersigned can tell,[15] when Plaintiff filed the Amended Complaint in August 2023, Plaintiff entirely removed the first group of allegedly false allegations.[16]  More than a year later, on August 17, 2024, the Family Defendants served the Rule 11 motion on Plaintiff, giving him until September 10, 2024 to avoid a Rule 11 motion by dismissing his frivolous claims.  Docs. 194 at 20; 194-18.  Defendant Joel Greenberg never even sought to avail himself of Rule 11.  During the Rule 11 safe harbor period, Plaintiff voluntarily dismissed the Amended Complaint.  Docs. 185; 194 at 21.

Now, following the safe-harbor-period dismissal of the allegedly offending pleading, Defendants seek to have the Court exercise its inherent power not just to award fees, but to impose the most severe sanction permissible, the dismissal with prejudice of a claim that the Court has not substantively considered during this litigation.  And in doing so, Defendants seek to have this Court utilize an extreme and unusual procedural mechanism to reach their desired outcome.  To unlock the Court's inherent power, Defendants rely not upon the judicial record of the case prior to dismissal, but upon documentary evidence not previously before the Court, much of it obtained during discovery but never made part of the judicial record prior to dismissal.  Indeed, Defendants

---

[15] The undersigned notes that the Family Defendants state, without citation to the record, that "[i]n two verified complaints. . ., Dorworth lied that he was not home the night of July 15, 2017 and that he had never met A.B."  Doc. 194 at 29.  To the extent the Family Defendants are referring to the initial Complaint and the Amended Complaint, the Court is unaware of these specific allegations re-appearing in the Amended Complaint, and Defendants provide no citation for their reappearance in either of their motions.  *See* Doc. 62.  To be clear, some of Plaintiff's amended allegations relate to A.B., but Plaintiff does not reallege those specific facts.  *Id.*

[16] In their Entitlement Motions, Defendants attempt to address the timing of the Motion by stating that their Motion is based, in part, on evidence obtained in July and September 2024.  *See, e.g.*, Doc. 194 at 3–4.  But interestingly, that "new" evidence has to do with the first group of allegedly false allegations—those involving Plaintiff's knowledge of A.B. and presence at the July 15, 2017 party.  *See id.*  There is no explanation in the Entitlement Motions as to why Defendants waited over a year to avail themselves of Rule 11 concerning the second group of allegedly false allegations.

seek to file publicly the Documents—including an unredacted version of the Family Defendants'
Entitlement Motion and several of the attachments to that Motion, which are discovery documents
designated as confidential pursuant to the parties' confidentiality agreement. Essentially, what
Defendants ask this Court to do is to reopen these proceedings—whether through consideration of
documentary evidence not previously part of the judicial record or through an evidentiary
hearing—to allow Defendants to disprove certain allegations in Plaintiff's dismissed pleading.

But recall the allegedly false allegations in the Amended Complaint: that Andrew and
Susan Greenberg agreed to pay A.B.; had knowledge of the content of Joel Greenberg's proffers;
paid Joel Greenberg's restitution for some nefarious purpose; and bribed Abby Greenberg for false
testimony. And recall the standard for unlocking the Court's inherent power: subjective bad faith
on the part of Plaintiff. In the context of inherent power, the Court is not simply considering
whether those allegations lacked a substantial basis, or even whether they are false. The Court
must consider not only whether they are false but that, if they are false, whether Plaintiff made the
allegations in subjective bad faith. To do this, Defendants give the Court deposition transcripts
and documentary evidence and invite the Court to determine that (1) it believes the witnesses'
deposition testimony, (2) it agrees with Defendants' interpretation of the documentary evidence
and finds no just-as-plausible explanation for it; (3) and it infers, based on that evidence, that
Plaintiff acted in subjective bad faith in making specific factual allegations. Either the Court makes
that highly speculative finding or it conducts a post-dismissal mini trial on the falsity of—and
subjective bad faith of Plaintiff concerning—certain, cherry-picked allegations in a 498-paragraph
pleading. Defendants' proposed procedural mechanism at this juncture is not just without legal
support, it makes no sense. And not to put too fine a point on it, Defendants have offered no
decision where a court exercised its inherent power to achieve Defendants' desired result in

26

Defendants' desired way.  It is neither an efficient use of judicial resources nor a vindication of

judicial authority for the Court to protract this litigation further to consider an issue *and* evidence

that was never before the Court while the case was open, and especially where Rule 11 already

played a crucial and meaningful role.

To be clear, in making this recommendation, the undersigned relies upon neither the

unredacted version of the Family Defendants' Entitlement Motion nor the attachments that

Defendants seek to file under seal—i.e., the Documents.  There is no need given the public

pleadings and allegations that are now a part of the record.  Nor does the undersigned have need

of any further response from Plaintiff to the Entitlement Motions.  The findings made herein are

based on the assertions and allegations in the Entitlement Motions as they appear on the public

docket.  The undersigned respectfully recommends that the Court decline to exercise its inherent

power and terminate this litigation.

### C.    The Motions Concerning the Documents

The motions concerning the Documents remain for consideration.

In the Motion to File the Documents (Doc. 195), the Family Defendants seek to publicly

file the Documents supporting their Entitlement Motion.  Because the undersigned recommends

denial of the Entitlement Motions without consideration of the Documents, the undersigned

recommends that the Motion to File be denied.  To be clear, at issue are only eight of the 27 exhibits

supporting the Family Defendants' Entitlement Motion and some minimal redactions to that

Motion quoting or summarizing those exhibits.  The public docket reflects what those documents

are, they are listed in the Motion to File the Documents.  *See* Doc. 195 at 2.  The Documents

include three deposition transcripts (Ex. 1, 4, 12), one affidavit (Ex. 2), two letters from Plaintiff's

attorney (Ex. 11, 13), some text messages between Defendant Joel Greenberg and Plaintiff

concerning A.B. (Ex. 19), and a compilation of the alleged falsities (Ex. 27).  The undersigned

required none of that to consider the Entitlement Motions.  As such, there is neither a basis to file

the Documents on the public docket, nor a basis to file them under seal.  *See* Local Rule 1.11(b).

Similarly, there is no basis, at this procedural juncture, to consider the Family Defendants'

motion to determine the confidentiality of the discovery documents in this case.  Doc. 186.  The

Family Defendants provide neither controlling nor persuasive legal authority for the Court to go

back, post-Rule 41(a)(1) voluntary dismissal, and determine the confidentiality of the discovery

documents in this case.  And if the Court accepts the undersigned's recommendation concerning

sanctions and attorney fees, there is no purpose to doing so.

The undersigned next turns to the Miami Herald's Motion for Limited Intervention and for

Access to Judicial Records.  Doc. 204.  The common law right of public access, a presumption

that the public has access to what goes on in civil courts, "attaches only to 'items which may

properly be considered public or judicial records'—not to any and all materials produced during

discovery[.]"  *Callahan v. United Network for Organ Sharing*, 17 F.4th 1356, 1361 (11th Cir.

2021) (quoting *Chi. Trib. Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir.

2001)).  The Eleventh Circuit has held that "a substantive pretrial motion need not be dispositive

for the rule to apply; any motion 'presented to the court to invoke its powers or affect its decisions'

is subject to the public right of access." *Callahan*, 17 F.4th at 1362 (quoting *Romero v. Drummond

Co. Inc.*, 480 F.3d 1234, 1245–46 (11th Cir. 2007)).

Returning to footnote six *supra* of this Report, the undersigned reiterates that the

Documents only exist on the docket of this case by operation of a Local Rule, and not by operation

of the order of a judge in this case.  Though the Documents currently exist as sealed docket entries

and are accessible to the Court, the Court has not entered an order permitting the Documents to be

filed on the public docket or under seal.  Further, in making this recommendation, the undersigned

does not rely on the substance of the Documents.  Accordingly, the Documents are not "public or judicial records" and the Court treats them as discovery materials subject to the parties' confidentiality agreement.  Thus, although the Miami Herald's motion is due to be granted to the extent that it may intervene for consideration of its request, the Miami Herald has not met the standard necessary to access the Documents given that the Documents have not been relied upon by the Court in considering the Entitlement Motions.  Thus, the Miami Herald's motion is due to be denied without prejudice to the extent it seeks "unsealing" of the Documents.[17]  As this is simply a report and recommendation, this litigation may continue, and circumstances may change; the Miami Herald may object to this report or renew its request as appropriate.

Finally, the undersigned notes that a contrary ruling would open the possibility that a party may attempt to make confidential discovery materials judicial records subject to First Amendment protections simply by filing a paper and attaching them.[18]  This could be a serious concern in a case in which a party—even if well-intentioned—seeks to utilize the court's filing mechanisms to engage in an attempt at public name-clearing.

### III.    Conclusion

The undersigned respectfully **RECOMMENDS** that:

1) Defendants' Motion for Entitlement to Attorney's Fees, Costs, and Sanctions (Doc. 194) be **DENIED**;

2) Defendant, Joel Greenberg's Motion for Entitlement to Attorney's Fees and Sanctions Against Plaintiff, Christopher Dorworth (Doc. 196) be **DENIED**;

---

[17] This recommendation also moots Plaintiff's motion to stay.  Doc. 209.

[18] The Local Rules also require that a party seeking to seal a document establish not only that sealing the document is necessary, but also that filing the document is necessary.  Local Rule 1.11(b).  Here, filing the Documents is not necessary.

3) Andrew Greenberg, Susan Greenberg, and AWG, Inc.'s Motion to Partially Seal the Redacted Portions of Their Motion for Entitlement of Fees, Costs, and Sanctions and to Seal Certain Exhibits Thereto (Doc. 195) be **DENIED**;

4) Andrew Greenberg, Susan Greenberg, and AWG, Inc.'s Time Sensitive Motion to Determine Confidentiality (Doc. 186) be **DENIED**;

5) The McClatchy Company LLC's Motion for Limited Intervention and for Access to Judicial Records (Doc. 204) be **GRANTED in part** to the extent they may intervene to seek the unsealing of court records and **DENIED without prejudice in part** to the extent that they seek the unsealing of the Documents; and

6) Plaintiff's Motion to Stay the McClatchy Company's Motion for Limited Intervention and for Access to Judicial Records (Doc. 209) be **DENIED as moot**.

## NOTICE TO PARTIES

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to serve and file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on January 23, 2025.

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE