UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**CHRISTOPHER E. DORWORTH,**

        **Plaintiff,**

v.                                          Case No. 6:23-cv-871-CEM-DCI

**JOEL MICAH GREENBERG,
ANDREW W. GREENBERG,
SUSAN GREENBERG, ABBY
GREENBERG, AWG, INC.,
GREENBERG DENTAL
ASSOCIATES, LLC,
GREENBERG DENTAL &
ORTHODONTICS, P.A.,
GREENBERG DENTAL
SPECIALTY GROUP, LLC,
FLORIDA CENTER FOR
GOVERNMENT
ACCOUNTABILITY,**

        **Defendants.**
_____/

**ORDER**

THIS CAUSE is before the Court on three motions regarding the confidentiality of certain documents, referred to collectively herein as the "Sealed Documents Motions": Andrew Greenberg, Susan Greenberg, and AWG, Inc.'s Time-Sensitive Motion to Determine Confidentiality (Doc. 186), to which Plaintiff filed a Response (Doc. 199); Andrew Greenberg, Susan Greenberg, and AWG, Inc.'s

Motion to Partially Seal (Doc. 195), to which Plaintiff filed a Memorandum in Support (Doc. 205); and the Motion for Limited Intervention and for Access to Judicial Record, filed by non-party The McClatchy company, LLC (Doc. 204), to which Plaintiff responded by filing a Motion to Stay (Doc. 209).

This cause is also before the Court on Defendants Andrew Greenberg, Susan Greenberg, AWG, Inc., Abby Greenberg, Greenberg Dental Associates, LLC, Greenberg Dental & Orthodontics, P.A., and Greenberg Dental Specialty Group, LLC's Motion for Attorney's Fees (Doc. 194), and Defendant Joel Greenberg's Motion for Attorney's Fees (Doc. 196), collectively referred to herein as "Motions for Attorney's Fees." Plaintiff filed a collective Response (Doc. 206) and Defendants filed Replies (Doc. Nos. 207 & 208), but the Response and Replies were limited to the issue of the Court's jurisdiction to decide the Motions for Attorney's Fees, (Sept. 20, 2024 Order, Doc. 200).

The United States Magistrate Judge issued a Report and Recommendation ("R&R," Doc. 217), recommending that the Motions for Attorney's Fees be denied, that the Sealed Documents Motions be denied except that The McClatchy Company, LLC be permitted to intervene for the limited purpose of making the request, and that Plaintiff's Motion to Stay be denied as moot. Defendants filed Objections (Doc. Nos. 218 & 219) and Requests for Oral Argument (Doc. Nos. 220 & 221). Plaintiff

did not respond to the Objections or the Request for Oral Argument. For the reasons set forth below, the reasoning of the R&R will be adopted in part.

### I. BACKGROUND

On December 1, 2022, Defendant Joel Greenberg was adjudicated guilty of sex trafficking of a minor, production of a false identification document, aggravated identity theft, wire fraud, stalking, and conspiracy to commit an offense against the United States. *United States v. Greenberg*, No. 6:20-cr-97-GAP-LHP, Judgment, Doc. 183. One of Joel's[1] former associates, Plaintiff Christopher Dorworth, alleges that when Joel was under investigation for these crimes, Joel conspired with the other Defendants to extort Plaintiff into assisting Joel with obtaining a pardon and with getting the investigating Assistant United States Attorney fired. (Am. Compl., Doc. 62, at 1–2). And when that failed, Plaintiff alleges that Joel turned against him and "falsely accused [Plaintiff] of being involved in, among other things, child sex trafficking, sex with a minor, prostitution, obstruction of justice, and an illegal ghost candidate scheme" to obtain favorable treatment by the Government in his own prosecution. (*Id.* at 2).

Plaintiff filed the original Complaint (Doc. 1-1) in state court, which was removed by Defendants. Plaintiff subsequently filed an Amended Complaint (Doc.

---

[1] Because most of the individual Defendants in this matter have the same last name, the Court will refer to them by their first names.

62), alleging claims against Joel; his father, Andrew Greenberg; his mother, Susan Greenberg; his ex-wife Abby Greenberg; the sex-trafficking victim in Joel's criminal case, A.B.; a Greenberg family business, AWG, Inc.; and several related Greenberg dental companies, Greenberg Dental Associates, LLC, Greenberg Dental & Orthodontics, P.A., and Greenberg Dental Specialty Group, LLC (collectively, "Greenberg Dental"), (*id.* at 3–4).[2] The Amended Complaint alleged the following claims: Federal Civil RICO against Joel (Count I); Federal Civil RICO against all Defendants (Count II); Florida Civil RICO against Joel (Count III); Florida Civil RICO against Joel, Andrew, Susan, Abby, and A.B. (Count IV); Defamation against Joel, A.B., and Abby (Count V); Aiding and Abetting Defamation against Andrew, Susan, Abby, Greenberg Dental, and AWG (Count IV); Civil Conspiracy against all Defendants (Count VII); and Declaratory Relief against A.B. (Count VIII). (*Id.* at 50–61).

After approximately a year of litigation in this Court, counsel for Andrew, Susan, and AWG, Inc. served on Plaintiff a Rule 11 Motion for Sanctions. (Aug. 17, 2024 Email, Doc. 194-18, at 2). Within the twenty-one day safe harbor period, Plaintiff dismissed this case without prejudice. (Notice of Voluntary Dismissal, Doc. 185, at 1). Defendants then filed the pending Motions for Attorney's fees. Joel,

---

[2] The claims against A.B. have been dismissed with prejudice. (Aug. 9, 2024 Order, Doc. 176).

Andrew, Susan, and Abby seek fees under the Florida Civil RICO statute, and all Defendants[3] seek sanctions[4] under the Court's inherent authority.

Additionally, all Defendants except Joel filed a version of their Motion for Attorney's Fees and exhibits thereto under seal pursuant to the parties' confidentiality agreement. Defendants, however, do not believe this information is properly designated as confidential. The McClatchy Company, which operates the Miami Herald newspaper, similarly argues that these documents should be unsealed.

## II.  LEGAL STANDARD

Pursuant to 28 U.S.C. § 636(b)(1), when a party makes a timely objection, the Court shall review *de novo* any portions of a magistrate judge's report and recommendation concerning specific proposed findings or recommendations to which an objection is made. *See also* Fed. R. Civ. P. 72(b)(3). *De novo* review "require[s] independent consideration of factual issues based on the record." *Jeffrey S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 513 (11th Cir. 1990) (per curiam). The district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

---

[3] This does not include the previously dismissed with prejudice Defendant, A.B.
[4] The requested sanctions include fees, costs, and a dismissal with prejudice.

### III. ANALYSIS

#### A. Attorney Fees under Florida Civil RICO

The Florida Civil RICO attorney's fee provision provides in relevant part: "The defendant shall be entitled to recover reasonable attorney's fees and court costs in the trial and appellate courts upon a finding that the claimant raised a claim which was without substantial fact or legal support." Fla. Stat. § 772.104(a). Along with the Motions for Attorney's Fees, Defendants submitted evidence that had not been previously part of the Court record. Because there was no prior review of the merits in this case and it was dismissed without prejudice, the Magistrate Judge questioned whether this Court could consider the newly filed evidence. (Doc. 217 at 10).

As the R&R acknowledges, "even when a voluntary dismissal disposes of an entire action, district courts retain jurisdiction to consider at least five different types of collateral issues: costs, fees, contempt sanctions, Rule 11 sanctions, and motions to confirm arbitral awards." (Doc. 217 at 7 (quoting *Absolute Activist Value Master Fund Ltd. v. Devine*, 998 F.3d 1258, 1266 (11th Cir. 2021)). Importantly, this is because otherwise "an enterprising plaintiff could abuse the judicial system but nevertheless get off scot[-]free by voluntarily dismissing its case under Rule 41(a)(1)(A)(i)." *Absolute Activist Value Master Fund Ltd.*, 998 F.3d at 1266. Nevertheless, the R&R concluded that, while the Motions for Attorney's Fees could

be considered, the record could not be supplemented post-dismissal. Defendants object to this conclusion.

The Court agrees with the R&R that the bulk of the applicable case law involves the merits of the Florida Civil RICO claim being addressed in some fashion prior to dismissal or where it was voluntarily dismissed with prejudice. (Doc. 217 at 10–11). Thus, the attorney's fees determination in those cases only required a review of the existing record at the time of dismissal. From there, the R&R concludes that the Court is not permitted to review evidence filed post-dismissal.

In support, the R&R relies on a report and recommendation from a different case, which came to the same conclusion. (Doc. 217 at 12 (relying on *Royal Palm Vill. Residents, Inc. v. Slider*, No. 8:19-cv-874-CEH-SPF, 2021 WL 4876391, at *4 (M.D. Fla. Aug. 2, 2021)). However, the reviewing district court rejected that portion of the report and recommendation, holding the opposite. *Royal Palm Village Residents, Inc. v. Slider*, No. 8:19-cv-874-CEH-SPF, 2021 WL 4452898, at *5 & n.3 (M.D. Fla. Sept. 29, 2021).

The R&R also relies on *Wardak v. Goolden*, No. 1:19-cv-21121-RAR, 2020 WL 6749171, at *5 (S.D. Fla. Sept. 8, 2020), *report and recommendation adopted*, No. 19-CIV-21121-RAR, 2020 WL 6748032 (S.D. Fla. Nov. 17, 2020). But there, the defendant argued that the dismissal without prejudice was "sufficient grounds" in and of itself "for the Court to find that the complaint was without substantial

factual or legal support" and award attorney's fees under the Florida Civil RICO statute. *Id.*[5] The *Wardak* Court rejected this argument, noting that while a dismissal with prejudice, in and of itself, has been used to justify an attorney's fee award, there is no such authority supporting reliance on only a without prejudice dismissal. *Id.* at *5–6. But here, unlike in *Wardak*, Defendants do not rely solely on the without prejudice dismissal—they supplemented their Motions for Attorney's Fees with evidence.

Nevertheless, the Court agrees with the R&R that legal authority on this issue is sparse. Defendants, and this Court independently, have only been able to locate one case that appears to address a factually similar scenario, albeit under a different but analogous statute. In *Nodal v. Infinity Auto Insurance Co.*, the defendant sought an award of attorney's fees under the Florida civil theft statute. 50 So. 3d 721, 723 (Fla. 2d DCA 2010). That statue contains an attorney's fee provision that is substantively identical to the Florida Civil RICO provision. Fla. Stat. § 772.11(1) ("The defendant is entitled to recover reasonable attorney's fees and court costs in the trial and appellate courts upon a finding that the claimant raised a claim that was without substantial fact or legal support."). In *Nodal*, the trial court denied the

---

[5] The *Wardak* defendants also argued that the court had made a determination on the merits because there had been a Magistrate recommendation that the Florida Civil RICO claims be dismissed, but the *Wardak* Court rejected this argument because the recommendation was not a determination on the merits. *Wardak*, 2020 WL 6749171, at *3. Again, the *Wardak* defendants relied on the recommendation in and of itself, they did not seek to supplement the determination with evidence that the plaintiff could not have stated a claim.

defendant's motion for attorney's fees for the same reason recommended in the R&R—there was nothing on the record at the time of the without prejudice voluntary dismissal that would support a finding that the underlying claims were without legal or factual support. *Id.* The Florida appellate court rejected this conclusion and determined that the trial court should have considered the evidence submitted by the defendants with their post-dismissal motion for attorney's fees. *Id.* at 723–24 ("But in fact there was evidence in the record on this very issue. [The defendants] filed documents to support their motions, and [the plaintiff] filed evidence in opposition.").

Because this involves a determination of Florida law, in the absence of an indication that the Florida Supreme Court would decide the issue differently, the Court must defer to the Florida appellate courts. *Struck v. Wal-Mart Stores E., LP*, No. 21-11012, 2021 U.S. App. LEXIS 32455, at *4 (11th Cir. Nov. 1, 2021) (quoting *Geary Distrib. Co. v. All Brand Imps., Inc.*, 931 F.2d 1431, 1434 (11th Cir. 1991)). Accordingly, under *Nodal*, the Court is permitted to review evidence submitted post-dismissal to determine the issue of attorney's fees under Florida's Civil RICO statute.

Next, the R&R raises "potential jurisdictional and comity-based concerns" about the Court considering the Florida Civil RICO attorney's fee request. (Doc. 217 at 15). Specifically, the R&R discusses cases where Courts decline to exercise

supplemental jurisdiction over state law claims once all federal claims have been disposed of. (*Id.*). The Court appreciates the logic of the R&R's assessment in this particular situation—where the attorney's fee issue necessarily implicates the merits of the underlying claim—and acknowledges that in such a situation, the line between exercising jurisdiction over the claim versus over the collateral issue of attorney's fees becomes somewhat blurred. However, the Court finds it appropriate to exercise collateral jurisdiction over the attorney's fee issue. *PTA-FLA, Inc. v. ZTE USA, Inc.*, 844 F.3d 1299, 1309 (11th Cir. 2016) ("Preserving jurisdiction over collateral issues is 'consistent with the policy and purpose of Rule 41(a)(1) . . . .' [E]ven after an action is dismissed for lack of jurisdiction, district courts may still award costs and attorney's fees . . . ." (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 397 (1990)).

Just because the Court can look at the additional evidence, however, does not mean that it must do so here. Plaintiff's Amended Complaint was verified by both Plaintiff and his wife, non-party Rebekah Dorworth, (Doc. 62 at 63), and he attached nine exhibits in support of his allegations, (Doc. Nos. 62-1–62-9). The alleged RICO conspiracy is multifaceted. Plaintiff alleges that even pre-indictment, Joel was setting Plaintiff up to take the fall for the actions that ultimately formed the basis of Joel's stalking charge, which did result in Plaintiff being investigated for those crimes before Joel was ultimately identified as the culprit. (Doc. 62 at 7–8). Plaintiff

supported these verified allegations with a contemporaneous letter from the victim's attorney at the time accusing Plaintiff of being involved. (*See generally* April 9, 2021 Email, Doc. 62-2).

Once Joel was under investigation, Plaintiff alleges that Joel conspired with his then-wife, Abby, to pressure Plaintiff into helping Joel obtain a pardon by cornering Plaintiff's wife and threatening to falsely incriminate Plaintiff if he did not cooperate. (Doc. 62 at 9–12). These allegations were verified by Rebekah. (*Id.* at 63). It is further alleged that Joel implicated his parents and their businesses in this scheme by representing that they would be willing to pay any price necessary to obtain a pardon. (*Id.* at 12).

Among other things, Plaintiff alleges that once the hope of a pardon was gone, Joel decided his only path to a lower prison sentence was to falsely incriminate others in his wrongdoing, with Plaintiff being a primary target. (*Id.* at 16). Part of this scheme allegedly included bribing A.B. and convincing her to offer false testimony. (*Id.* at 15–16). Plaintiff concludes that this funding must have come from Joel's parents and their companies based on Joel's prior representations about paying for a pardon and because Joel did not have the funds himself. (*See id.* at 15, 37).

This alleged scheme is supported by a letter from another federal inmate, Vladimir St. Louis, who shared a cell with Joel while awaiting hearings at the federal courthouse. (*See generally* St. Louis Letter, Doc. 62-7). According to St. Louis's

letter, Joel was questioning him on how to get a lower sentence, specifically asking about providing incriminating information about other people. (*Id.* at 5). During this conversation, Joel apparently "said that he fabricated numerous events and told investigators that he was the one arranging for the girl to hook up with other people" and that "the girl probably would go along with it cause she don't know anybetter . . . [and] she might think that she can file a lawsuit afterwards." (*Id.* at 6). When St. Louis asked Joel "why was he making up stuff about his colleagues?" Joel allegedly responded, "if they were the ones in his shoes, they would fabricate stuff about him as well just to get a time-cut." (*Id.* at 7). In addition to this letter, Plaintiff attached a screenshot of text messages between himself and Joel, where Joel states that he is "having to pay for [redacted]'s lawyer," which Plaintiff alleges refers to A.B. (Doc. 62-3 at 2).

Finally, Plaintiff alleges that Joel and Abby conspired to falsely accuse Plaintiff of illegally paying an individual to run against a political opponent—what the parties refer to as the "ghost candidate" scheme. (Doc. 62 at 19). This information came in part from a jailhouse interview with Joel. (Doc. 62-1 at 24).

The Florida Civil RICO Defendants argue that there is no substantial basis to support these allegations because evidence gathered during discovery disproves them. The arguments in this regard read like a closing argument, citing evidence that contradicts Plaintiff's evidence. However, the very nature of such an argument

requires a finding of fact and weighing of credibility. Indeed, much of the evidence referenced is competing testimony from Plaintiff and A.B. Just because there is contradictory evidence and if this case were tried to conclusion Defendants may ultimately prevail, it does not mean that there was not a substantial basis of law or fact to bring the Florida Civil RICO claims. *See Ayala v. Interavia Spares & Servs.*, 350 So. 3d 388, 391 (Fla. 4th DCA 2022) (rejecting the argument that "to prevail on a claim is to demonstrate the opposing position lacked substantial fact or legal support" under the identical civil theft attorney's fee provision and explaining that it is explicitly not a prevailing party provision).[6]

Moreover, the Motions for Attorney's Fees focus almost exclusively on evidence that Plaintiff attended a party where A.B. was present, that he saw her engaging in sexual conduct at that party, and that the RICO Defendants did not pay for A.B.'s attorney. Even crediting the RICO Defendants' version of the story and accepting that all the underlying evidence is consistent with their representations, it only undermines a portion of the Florida Civil RICO claims. As explained above, the alleged conspiracy is multifaceted. The RICO Defendants do not address the allegations of falsely implicating Plaintiff in Joel's stalking charges, an attempt to unlawfully procure a pardon, or the ghost candidate scheme. Nor do they address the

---

[6] Similarly, despite Defendants' arguments to the contrary, Plaintiff did not concede the frivolous nature of his claims by dismissing them. He dismissed them without prejudice and, as noted by Defendants, re-alleged many of the underlying facts in his separate state court lawsuit.

allegation that A.B. agreed to implicate Plaintiff and others so that she could sue them for monetary gain.

To be clear, the Court is not making a factual determination here. The RICO Defendants may be correct that Plaintiff is lying and fabricating the allegations in the Amended Complaint to avoid his own culpability. But they may not be. They simply have not carried their burden to establish that there was not a sufficient basis for Plaintiff to bring his Florida Civil RICO claim.

### B. Inherent Power

Next the R&R determines that this Court has jurisdiction to consider Defendants' request for sanctions under the Court's inherent powers, but that it should decline to award such sanctions. Defendants object to this recommendation.

Courts have the inherent power to police those appearing before them. *Purchasing Power, LLC v. Bluestem Brands, Inc.*, 851 F.3d 1218, 1223 (11th Cir. 2017) (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 46 (1991)). "This includes the power to fashion an appropriate sanction for conduct which abuses the judicial process." *Hernandez v. Acosta Tractors, Inc.*, 898 F.3d 1301, 1306 (11th Cir. 2018) (internal quotations omitted) (quoting *Purchasing Power, LLC*, 851 F.3d at 1223). "A court may exercise this power . . . 'to sanction a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Purchasing Power*, 851 F.3d at 1223 (quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013)).

For the same reasons addressed in the Florida Civil RICO section, Defendants have not shown that sanctions are appropriate at this time.

## IV. SEALED DOCUMENTS MOTIONS

As to the Sealed Documents Motions, the R&R concluded that it need not determine the confidentiality of the referenced documents and whether they should be filed under seal because the Court does not need to look at those documents for the determination of the at-issue Motions. While Defendants objected to the Court not reviewing the documents, no party objected to the conclusion that if the Court does not review it, there is no need to determine the confidentiality and that the proposed sealed exhibits should be returned.

As explained above, the Court did not review the sealed versions of the underlying exhibits. Instead, it was sufficient to assume they supported the statements set forth in the Motions for Attorney's Fees. Therefore, the R&R's conclusion that those exhibits are not part of the judicial record and should be returned to the filer pursuant to the Local Rules will be adopted. However, in coming to its decision, the Court was required to review the sealed version of Defendants Andrew, Susan, AWG, Inc., Abby, and Greenberg Dental's Motion for Attorney's Fees ("Sealed Motion," Doc. 195-3).[7] Therefore, the Court must now consider whether that document should remain under seal.

---

[7] Joel did not file a sealed version of his Motion for Attorney's Fees.

"The operations of the courts and the judicial conduct of judges are matters of utmost public concern," and "[t]he common-law right of access to judicial proceedings, an essential component of our system of justice, is instrumental in securing the integrity of the process," *Romero v. Drummond Co.*, 480 F.3d 1234, 1245 (11th Cir. 2007) (first quoting *Landmark Commc'ns, Inc. v. Virginia*, 435 U.S. 829, 839 (1978) then quoting *Chicago Tribune Co. v. Bridgestone/Firestone, Inc.*, 263 F.3d 1304, 1311 (11th Cir. 2001)). "[W]hen applying the common-law right of access federal courts traditionally distinguish between those items which may properly be considered public or judicial records and those that may not; the . . . public presumptively ha[s] access to the former, but not to the latter." *F.T.C. v. AbbVie Products LLC*, 713 F.3d 54, 62 (11th Cir. 2013) (quoting *Chicago Tribune Co.*, 263 F.3d at 1311). "A motion that is 'presented to the court to invoke its powers or affect its decisions,' whether or not characterized as dispositive," is a judicial record "subject to the public right of access." *Romero*, 480 F.3d at 1246.

"This right of access is not absolute, however." *Id.* at 1245. "The common law right of access may be overcome by a showing of good cause, which requires 'balanc[ing] the asserted right of access against the other party's interest in keeping the information confidential.'" *Id.* at 1246 (quoting *Chicago Tribune*, 263 F.3d at 1309). "[W]hether good cause exists . . . is . . . decided by the nature and character of the information in question." *Id.* (quoting *Chicago Tribune*, 263 F.3d at 1315).

"In balancing the public interest in accessing court documents against a party's interest in keeping the information confidential, courts consider, among other factors, whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents." *Id.*

Here, the Sealed Motion was presented to the Court to invoke its powers. Additionally, the Court was unable to reach a decision on the merits of the issue by reviewing only the redacted, unsealed version—the information contained in the Sealed Motion was central to the request. Thus, the Sealed Motion unquestionably constitutes a judicial record and is subject to the right of access.

Plaintiff nevertheless argues that there is good cause to keep it sealed. Primarily, Plaintiff argues that because he dismissed this case, there is nothing further to do in this case and suggests that the Sealed Motion was filed for improper purposes. As discussed above, the Court properly has jurisdiction to review post-dismissal requests for attorney's fees. There was nothing improper about the filing of the Sealed Motion. Moreover, Plaintiff has only dismissed this case without prejudice, and all parties acknowledge that many of his underlying factual allegations have now been reasserted in a separate state court lawsuit. Thus, while

this case is at its conclusion, Defendants still have a legitimate interest in contesting those allegations, which they do as part of the Sealed Motion.

Plaintiff also indicates that he has a privacy interest in the substance of the Sealed Motion because it "includes scandalous and salacious statements of fact." (Doc. 209 at 4). This is, quite frankly, rich coming from Plaintiff whose Complaint and Amended Complaint are at least as inflammatory as the Sealed Motion, if not more. Additionally, the Sealed Motion is not rife with ad hominem attacks; it contains relevant counterpoints to Plaintiff's allegations in this case. And while the Court concluded that the record was not sufficient at this point to award sanctions against Plaintiff, there is similarly no basis to conclude that Defendants made arguments that were wholly unsupported or made in bad faith.

Moreover, this case involves matters of public importance as it contains allegations of criminal and unethical behavior by public figures. And this importance is not limited to Plaintiff's allegations of wrongdoing, but also Defendants' arguments in opposition to those allegations.

Plaintiff was the one who filed this suit and put directly at issue whether he was involved with any of the underlying criminal and unethical activities of which he was accused. It can come as no surprise to Plaintiff that the truthfulness of his allegations would be a critical part of this litigation. The public's right to access the Sealed Motion far outweighs any interest Plaintiff has in keeping it under seal.

## V. CONCLUSION

In accordance with the foregoing, it is **ORDERED** and **ADJUDGED** as follows:

1. The Report and Recommendation (Doc. 217) is **ADOPTED in part** and **REJECTED in part**.

2. Andrew Greenberg, Susan Greenberg, and AWG, Inc.'s Time-Sensitive Motion to Determine Confidentiality (Doc. 186) is **DENIED as moot**.

3. Andrew Greenberg, Susan Greenberg, and AWG, Inc.'s Motion to Partially Seal (Doc. 195) is **DENIED**.

4. The Motion for Limited Intervention and for Access to Judicial Record, filed by non-party The McClatchy company, LLC (Doc. 204) is **GRANTED in part** and **DENIED in part**.

    a. It is **GRANTED** insofar as The McClatchy Company seeks to intervene and seeks to have the Sealed Motion placed on the public docket.

    b. However, the Court will delay the unsealing by seven days to afford Plaintiff time to seek an emergency stay from the Eleventh Circuit if he so chooses.

    c. It is otherwise **DENIED**.

    d. **On October 7, 2025**, the Clerk is directed to unseal the Sealed Motion for Attorney's Fees (Doc. 195-3). The Clerk is also directed to return the remaining proposed sealed exhibits (Doc. Nos. 195-4 through 195-11) to the filer and remove them from the electronic docket in accordance with the Court's Local Rules.

5. Plaintiff's Motion to Stay (Doc. 209) is **DENIED as moot**.

6. Defendants Andrew Greenberg, Susan Greenberg, AWG, Inc., Abby Greenberg, Greenberg Dental Associates, LLC, Greenberg Dental & Orthodontics, P.A., and Greenberg Dental Specialty Group, LLC's Motion for Attorney's Fees (Doc. 194) is **DENIED**.

7. Defendant Joel Greenberg's Motion for Attorney's Fees (Doc. 196) is **DENIED**.

8. The Requests for Oral Argument (Doc. Nos. 220 & 221) are **DENIED**.

**DONE** and **ORDERED** in Orlando, Florida on September 30, 2025.



CARLOS E. MENDOZA
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record